# EXHIBIT C

Exhibit C
Page 47





# Employment-Related Mass Claims Protocol

## (Version 2.0)

**SEPTEMBER 29, 2021**



Exhibit C
Page 48

**INTERNATIONAL INSTITUTE FOR CONFLICT PREVENTION AND RESOLUTION**
30 EAST 33RD STREET, 6TH FLOOR, NEW YORK, NY 10016, USA
T: +1 212.949.6490 · INFO@CPRADR.ORG · WWW.CPRADR.ORG

# WHAT IS THE EMPLOYMENT-RELATED MASS CLAIMS PROTOCOL?

The full Protocol should be read carefully and in consultation with a lawyer because this process affects each individual's (or Claimant's) legal rights.

The full Protocol can be found below.

## BACKGROUND:

**Arbitration is a private process where a neutral third-party (known as the arbitrator) acts like a judge and resolves a case for two or more parties. One of the benefits of proceeding in arbitration is that resolution can occur more quickly than would be the case in courts, especially when courts are backlogged, as they often are.**

Sometimes contracts require employees or others to use arbitration to try to resolve their legal disputes with their employer. Sometimes, even if the parties did not agree in their contracts to use arbitration, they can agree to do so after the disputes arise. Either way, where many individuals (sometimes thousands) have brought arbitration cases against a single entity, it is often difficult for the arbitration provider to process these cases toward resolution as quickly and efficiently as one side or both sides would like. That is why we developed the Employment-Related Mass Claims Protocol (the Protocol).

The International Institute for Conflict Prevention and Resolution (CPR) is an arbitration provider. CPR developed the Protocol to help with the administration of many similar claims (30 or more) filed with CPR against one employer.

Differentiating features of the Protocol include:

- requiring within the Protocol itself that certain due process protections be afforded to employees or others who file cases;
- establishing a novel fee structure that does not require the Employer to pay all filing fees up-front;
- committing to nominating a diverse pool of arbitrators from which the parties will choose the arbitrators who ultimately will resolve their cases;
- including innovative mechanisms to encourage all parties to reach a faster resolution of their cases; and
- providing the parties with more options as to how they wish to proceed.

As a commitment to the parties, the Protocol also sets forth its procedures in detail so that the parties may understand what is expected of them and are provided a practical pathway toward resolution. CPR is also willing to work with the parties on agreed-upon variations to these procedures.

Exhibit C
Page 49

Page 2

## PROTOCOL PROCESS SUMMARY:

When 30 or more similar claims against one employer are filed with CPR, the Protocol uses the decisions from test cases (a randomly selected initial round of arbitrations) to provide examples for a mediator (a neutral third-party who helps the parties find a solution). While the test cases go forward, the others will stand by. This should, in most circumstances, take about six months.

Once the test cases result in decisions, CPR will remove information from the decisions that would identify the Claimants, and give copies of the now anonymous decisions to the mediator. Using these examples, the mediator will try for 90 days to assist the parties to establish a process for resolving all of the remaining cases. This would be a "global solution."

If a global solution is reached by the parties to the mediation, but the individual Claimant does not like it, the Claimant can proceed to an individual arbitration of the case by a neutral arbitrator.

If a global solution is not reached, the company or the individual parties can choose to either proceed in court or in arbitration. If the company chooses to go to court, all cases will proceed in court. If the company chooses to proceed in arbitration, each Claimant will still have the opportunity to decide to go to court instead of arbitration.

Any questions regarding this Protocol should be referred to cprneutrals@cpradr.org.

Exhibit C
Page 50

Page 3

# Employment-Related Mass Claims Protocol (Version 2.0)

(See Glossary of Terms used herein at end of the Protocol)

Any time greater than 30 individual employment-related arbitration cases[1] of a nearly identical nature are, or have been, filed with CPR against the same Respondent(s), where Respondent(s) and Claimants have agreed to arbitrate such cases in accordance with any of the Rules promulgated by CPR governing arbitrations, and where each Claimant has been afforded the Due Process Protections specified on CPR's website,[2] then the parties agree that this Protocol[3] shall apply to any such arbitration cases for which an arbitrator has not yet been appointed[4] (collectively, the "Initial Mass Arbitrations").[5] All parties also agree that cases are of a "Nearly Identical" nature if they arise out of a factual scenario and raise legal issues so similar one to another that application of the Protocol to the number of cases at issue will reasonably result in an efficient and fair adjudication of the cases. To the extent the parties agree on the application of the Protocol to particular cases, they shall so advise CPR, and CPR shall confirm application of the Protocol.[6] To the extent the parties disagree on the application of the Protocol to particular cases, the disagreeing party shall advise CPR, and CPR shall appoint a standing arbitrator ("Administrative Arbitrator") to determine the Protocol's applicability.[7] In an effort to expedite resolution of any such dispute by the Administrative Arbitrator, the parties agree the Arbitrator may set forth such procedures as are necessary to resolve any disputes promptly. The arbitrator fees for work by the Administrative Arbitrator shall be paid by Respondent(s).[8]

1. Any time multiple arbitrations are filed with CPR against the same Respondent(s), Claimants filing the arbitrations, in addition to serving the Notice of Arbitration(s) required in CPR's Rules, must complete the Excel spreadsheet for each of the arbitrations per the template provided by CPR on its website, and provide a copy to Respondent(s). Failure to do so will result in rejection of the filings by CPR. With the prior consent of CPR, an omnibus Notice of Arbitration covering the cases of multiple claimants may be permissible.
2. As specified on CPR's website, to the extent these protections are not afforded to each Claimant, CPR will decline to administer the proceeding, and this Protocol shall not apply.
3. For the Protocol to apply to arbitration cases, Respondent agrees that it will make specific reference to the Protocol in the arbitration agreement applicable to the case and entered into between Respondent and Claimant (either pre-dispute or post-dispute), and that it will provide access to the Protocol to Claimant prior to Claimant's acceptance of the agreement. Respondent also agrees not to alter the material terms of the Protocol in its arbitration agreement with Claimant and that any amendments to material terms of the Protocol may only be made by agreement with Claimant after the dispute arises and subject to CPR's ability to administer the amended arbitration process in a fair and efficient fashion.
4. If an arbitrator has already been appointed for a case, even if the case is considered of a Nearly Identical nature, the case shall not count toward the greater than 30 cases necessary to trigger this Protocol and shall continue as an individual arbitration until conclusion.
5. The application of this Protocol to arbitration cases means that the procedures set forth in this Protocol to the extent inconsistent with the procedures set forth in other Rules promulgated by CPR governing arbitrations shall apply to the arbitrations under this Protocol unless otherwise specified. And, for the avoidance of doubt, this means that the submission of the template together with the Notice(s) of Arbitration by Claimants for cases governed by the Protocol shall be deemed the complete filing(s). The Commencement Date (or the date on which a case is commenced) is the date on which both the fully completed template and the Notice of Arbitration(s) have been received for the cases filed.
6. To the extent Claimants commence arbitrations subsequent to the Initial Mass Arbitrations that are of a Nearly Identical nature ("Newly Commenced Mass Arbitrations") and that the parties agree should be treated pursuant to this Protocol, the cases shall proceed in accordance with the Protocol as outlined in the Protocol. If the parties disagree on the application of the Protocol to particular cases amongst the Newly Commenced Mass Arbitrations, the disagreement shall be resolved by the Administrative Arbitrator, as set forth below.
7. To the extent that the parties agree to treat a case separately from this Protocol, CPR will separate the case from this Protocol. In that event, the case shall be treated in accordance with the Rules specified by the parties and any other provisions agreed to by the parties. The same shall be true for any case that is determined by the Administrative Arbitrator to not be subject to this Protocol.
8. The Administrative Arbitrator will notify CPR of the necessary advance on costs to do this work or any other work under the Protocol, and CPR shall advance an invoice to Respondent for such amount, which invoice, unless otherwise agreed, shall be paid within ten days of receipt.

Exhibit C
Page 51

Page 4

CPR International Institute for Conflict Prevention & Resolution

LESS CONFLICT. MORE PURPOSE.

# SELECTION OF THE TEST CASES

1. Once CPR has advised the parties that the Protocol applies to the Initial Mass Arbitrations,[9] Respondent(s) shall submit an Initiation Fee[10] to CPR, unless otherwise agreed, within ten days of invoicing.

2. Once the template from Claimants and the Initiation Fee from Respondent(s) have been submitted to CPR, CPR will randomly assign sequential numbers to each of the Initial Mass Arbitrations.[11] Those cases assigned numbers 1 through 10 will be the initial Test Cases to proceed to arbitration.[12]

3. To the extent either counsel for Respondent(s) or Claimants in the Initial Mass Arbitrations believe that there are cases in addition to the Test Cases that are necessary to guide the Mediation Process set forth below, counsel for Claimants and counsel for Respondent(s), each collectively, in the Initial Mass Arbitrations may submit, within five days of the identification of the Test Cases, up to an additional five cases, along with the reasons why the addition of such cases would be necessary to the Mediation Process. Such submission shall be provided to counsel for the counterparty, CPR, and to the Administrative Arbitrator for determination. The parties agree that the Administrative Arbitrator shall determine whether these additional cases should proceed to arbitration based alone on the submissions by counsel or may, in its discretion, seek a response from counsel for the counterparty.

4. Each of the initial ten Test Cases, along with any additional cases added by the Administrative Arbitrator pursuant to the process outlined above (collectively, the "Test Cases") shall proceed to be arbitrated in accordance with the CPR's Administered Employment Arbitration Rules (hereinafter "CPR's Employment Rules"). However, selection of the single arbitrator for each of these Test Cases shall be made pursuant to Rule 6 of CPR's Employment Rules with the following modifications.

    a. **CPR-GENERATED SLATE:** Within seven days of the identification of the Test Cases, CPR shall canvas the arbitrators on CPR's Employment Mass Claims Panel (hereinafter "Master List") with information on the identity of the Respondent(s), Respondent(s)' counsel, Claimant(s), Claimant(s)' counsel and any other information CPR deems appropriate in an effort to determine if any arbitrators believe they are conflicted or otherwise unable to arbitrate any of the Test Cases.[13] CPR shall await seven days for responses. Thereafter, and for each Test Case, CPR shall randomly generate a list of arbitrators (typically 15) from the Master List (less those arbitrators CPR has removed from the Master List based on responses to the canvas). To the extent that the arbitrators on the proposed slate are not consistent with CPR's public commitment to seek to include 30% diverse neutrals on its slates,[14] the identification of additional diverse arbitrators will be randomly generated and added until the slate is at least 30% diverse. Prior to presenting the slate to the parties, CPR will issue an

---

9. At its discretion and once there are greater than 30 Initial Mass Arbitrations, CPR may initiate the application of the Protocol even while the application of the Protocol to other arbitrations is still being resolved.
10. For the avoidance of doubt, once the Initiation Fee is triggered, no other filing or other administrative fees are due to CPR from the parties except for those fees referred to herein. The CPR Fees referred to throughout the Protocol are defined on CPR's website. The timeline for payment of the fees is as set forth in the Protocol; the consequences of the failure of the Respondent(s) to pay fees as due under the Protocol shall be addressed as set forth in CPR's Administered Employment Arbitration Rules.
11. Sequential numbers shall also be randomly assigned to any Newly Commenced Mass Arbitration cases commenced prior to the selection of the initial Test Cases. Newly Commenced Mass Arbitrations commenced after the selection of the Test Cases will be assigned sequential numbers based on the order in which they are commenced.
12. If the parties agree amongst themselves on some other way to identify the Test Cases, CPR will proceed with this agreed-upon set of Test Cases so long as CPR is able to administer in a fair and efficient fashion consistent with this Protocol.
13. At its discretion, CPR may canvas the Panel on the information with respect to a group of cases (i.e., all of the Test Cases or some subset thereof) to facilitate an efficient selection process.
14. This Commitment by CPR is consistent with the commitment of the Ray Corollary Initiative™.

Exhibit C
Page 52
Page 5

invoice for an Appointment Fee, which shall be paid by Respondent(s), unless otherwise agreed, within ten days of issuance. Following payment, the slate will be presented to the parties in each Test Case.

b. **PARTIES' SELECTION PROCESS:** The parties will have seven days from distribution of the slate to rank a number of candidates specified by CPR. Within three days of receipt of these rankings, CPR will seek to query the top three jointly selected candidates for disclosures, rates, and availability to complete the arbitration within the timeframe for arbitration set out in Paragraph 6 below. If any candidate does not respond within seven days of the query, CPR may replace the candidate with the next candidate on the slate. CPR will nominate three candidates within seven days of receiving three query responses. The parties will each have three business days from the date the nomination and queried information is shared to raise any objections on the grounds that there are circumstances that give rise to justifiable doubt regarding the arbitrator candidate's independence or impartiality. Such grounds include bias, interest in the result of the arbitration, and past or present relations with a party or its counsel. The objection shall state with specificity the reasons for the objection. The counterparty shall have three business days to provide any responses. CPR may refer the objections for resolution to a pro bono Challenge Review Committee. Should all three of the candidates be struck for justifiable doubt, CPR will proceed through the above process with the next three candidates in the ranking of the slate. Should all remaining candidates on the slate be struck for justifiable doubt, or if for any other reason the parties are unable to identify a suitable candidate from the slate, CPR may exercise its discretion (consistent with applicable law) to continue generating more candidates, to request that the parties meet and confer to select an agreed-upon arbitrator for their case or, at the request of either party, to identify a suitable arbitrator candidate from CPR's Master List.

c. **APPOINTMENT OF NEUTRAL:** CPR will then appoint any suitable candidate to each Test Case who has received no objections or for whom CPR has not sustained an objection, and who is available to complete the arbitration within the timeframe set out in Paragraph 6 below[15].

5. Any additional fees for services in connection with these Test Cases shall be as per the CPR Fee Schedule.

6. As provided in CPR's Employment Rules, and unless these cases resolve in advance,[16] arbitrators will render final, written, reasoned awards (an award accompanied by the legal and factual reasoning supporting the award) (hereinafter "Final, Written Reasoned Award") within 120 days of the initial pre-hearing conference, and any extensions of time that would result in a Final, Written Reasoned Award being rendered more than 120 days after the initial pre-hearing conference must be approved by CPR.[17]

7. The Final, Written Reasoned Awards shall be reasonably anonymized by CPR.

---

15. The parties can agree to a process different than that outlined in Paragraph 4 for the selection of arbitrators so long as CPR can administer the process in a fair and efficient fashion consistent with this Protocol.
16. Should any of the Test Cases resolve in advance of an award being issued for whatever reason, Respondent(s) or Claimants of any Initial Mass Arbitrations or Newly Commenced Mass Arbitrations that have not yet resolved, or CPR, may request that the Administrative Arbitrator determine whether additional cases should be substituted amongst the Test Cases proceeding in arbitration. In making that determination, the Administrative Arbitrator shall consider whether the delay in the Mediation Process, described below, as a result of substituting cases is outweighed by the additional guidance awards in such substituted cases would likely provide to the Mediation Process.
17. These arbitrations shall also proceed subject to Paragraph 20. CPR may also seek, and the parties agree to, the assistance of the Administrative Arbitrator in maintaining the timelines of the Test Cases by, for example, helping manage discovery.

Exhibit C
Page 53

Page 6

# THE MEDIATION PROCESS

8. Once the last of the Final, Written Reasoned Awards from the Test Cases has been rendered by the arbitrator, Respondent(s) shall pay the Mediation Administrative Fee to CPR, unless otherwise agreed, within ten days of issuance of an invoice. The parties to the Initial Mass Arbitrations, as well as any parties to Newly Commenced Mass Arbitrations that were commenced prior to the initiation of the process to select the mediator (collectively, "Mediation Parties")[18], shall then be given an opportunity to promptly agree upon a mediator, who shall be identified from the CPR Panel of Distinguished Neutrals. If the Mediation Parties are unable to do so within ten days of being given access to CPR's Panel of Distinguished Neutrals to select a mediator, CPR shall nominate three candidates to be the mediator. The Mediation Parties shall then have seven days from this nomination to agree upon whom they wish to select from the three nominees, or Claimants and Respondent(s), each collectively, shall have 15 days from this nomination to provide CPR with their rankings of the three nominees. The nominee for whom the parties collectively have indicated the greatest preference (i.e., by receiving the lowest combined score) shall be selected as the mediator. If for any reason this procedure should fail to select a mediator, CPR shall within its discretion appoint a suitable mediator from its list of three nominees.[19] Respondent(s) shall pay the mediator's fees. CPR shall promptly determine with the selected Mediator an amount to be deposited to cover the Mediator's fee, which deposit shall be made by the Respondent no later than ten days after invoicing unless otherwise agreed. CPR shall then provide the mediator with the anonymized Final, Written Reasoned Awards.

9. The mediator shall conduct the mediation pursuant to the CPR Mediation Procedure. The object of the mediation shall be to reach a Substantive Methodology for resolving the Initial Mass Arbitrations and Newly Commenced Mass Arbitrations commenced prior to the expiration of the Mediation Period but that have not yet been resolved as Test Cases or otherwise (collectively, the "Outstanding Cases," and separately each "Outstanding Case"). The Substantive Methodology means an agreement on all material terms – and the identification of objective criteria – necessary to enable resolution of the Outstanding Cases.

10. Once the Final, Written Reasoned Awards are provided to the mediator by CPR, the mediator and the Mediation Parties shall have 90 days (the "Mediation Period") to identify the Substantive Methodology.[20] The Substantive Methodology shall then be memorialized in a term sheet signed by the parties and/or their counsel.[21]

11. From the filing of the Notice(s) of Arbitration of the Initial Mass Arbitrations until the expiration of the Mediation Period, all Outstanding Cases (other than the Test Cases), shall be stayed, and Respondent(s) agree(s) to toll the statute of limitations as it applies to any Claimant from the filing of the Claimant's Notice of Arbitration of these stayed arbitrations until such time as the arbitration is terminated or Claimant provides notice of opting-out, whichever is earlier, in accord with this Protocol.

---

18. The Mediation Parties shall not include parties to any Initial Mass Arbitrations or Newly Commenced Mass Arbitrations whose cases were resolved as Test Cases or otherwise.
19. The parties agree that CPR may enlist the assistance of the Administrative Arbitrator to assist in the selection of a mediator by, for example, asking the Administrative Arbitrator to facilitate parties represented by different counsel working with one another to identify a mediator or agree upon the rankings for mediators.
20. By agreement of the parties and the Mediator, and subject to the approval of CPR, the 90-day Mediation Period can be extended.
21. Nothing herein is meant to preclude parties during the Mediation Process (or at any point in time, including prior to initiation of the Mediation Process) from reaching an agreement (through a separate mediation or otherwise) to settle their individual cases or groups of cases, even if the parties in the Mediation Process are unable to agree upon the Substantive Methodology.

Exhibit C
Page 54

Page 7

## UNSUCCESSFUL MEDIATION PROCESS

12. If the Mediation Parties are unable to agree upon the Substantive Methodology, the Mediator shall notify CPR of the failure of the Mediation Process. At that point, Respondent(s) and/or Claimant for each Outstanding Case may choose to opt-out of arbitration and proceed in court.[22]

13. Notice of opting out shall be provided to cprneutrals@cpradr.org within 60 days of the close of the Mediation Period by Respondent(s)[23] and Claimants[24] indicating the identity (and the case number) of each Claimant choosing to opt out.[25] For cases remaining under the Protocol, the arbitrations shall proceed in the order determined by the sequential numbers assigned to the Initial Mass Arbitrations and Newly Commenced Mass Arbitrations as set forth in Paragraph 2, with as many proceeding simultaneously as practicable consistent with the procedures set forth in this Protocol.

## SUCCESSFUL MEDIATION PROCESS

14. If, by the expiration of the Mediation Period, the parties agree upon the Substantive Methodology, the Mediator shall notify CPR of the success of the Mediation Process. At that point, offers shall be made to each Claimant with an Outstanding Case that was commenced prior to the expiration of the Mediation Period. The offers shall be made in an efficient and fair fashion.

15. Claimants for each Outstanding Case can choose to accept or reject the offer made to them.

16. If Claimant accepts the offer, the parties shall take whatever steps deemed necessary to fully and finally resolve the case.

17. If Claimant chooses not to accept the offer, then Claimant or Claimant's counsel shall notify CPR at cprneutrals@cpradr.org that the arbitration is to proceed. Notifications to proceed in arbitration should be provided to CPR no later than 60 days after the close of the Mediation Period unless a different timeline is agreed upon by Claimants and CPR.

---

22. Following an unsuccessful Mediation Period, the option to opt-out shall be available to each Claimant who brought a Newly Commenced Mass Arbitration, but who was not previously provided the opt-out option and for whose case no arbitrator has been selected. Such Claimant shall have 60 days from the Commencement Date of their arbitration or 60 days from the close of the Mediation Period, whichever is later, to opt-out. This option shall no longer be extended to Claimants with Outstanding Cases once the Mediation Process is reinitiated (see Paragraph 22) and the newly initiated Mediation Process results in an agreed-upon Substantive Methodology. At that point, all Claimants of Outstanding Cases commenced prior to the expiration of the newly initiated Mediation Period should be extended an offer to resolve their cases or proceed with their individual arbitrations.

23. In the event that there is more than one Respondent, the decision to opt out of arbitration must be unanimous, and the opt-out notice shall constitute a representation that the decision to opt out of arbitration is on behalf of and binding on all Respondents. In addition, should the Respondent(s) opt out of arbitration, that shall be the close of the Respondent(s)' arbitration program as to all Outstanding Cases commenced prior to the expiration of the Mediation Period. However, should all parties to any Outstanding Case agree to proceed in arbitration even after Respondent(s) have opted out, then those arbitrations shall proceed in accordance with the provisions of this Protocol as if the Respondent(s) had not opted out. In addition, any Newly Commenced Mass Arbitrations commenced after the close of the Mediation Period shall proceed in accordance with the provisions of this Protocol as if the Respondent(s) had not opted out. See Footnote 22.

24. The notice may be from Claimants' counsel of record and shall constitute a representation that such counsel has been fully authorized by each Claimant to make the decision to opt out of arbitration. If that is not the case, or if for any reason Claimants' counsel of record deems it necessary or advisable that each Claimant make that election individually, or if Claimant is not represented by Counsel, then each of the Claimants choosing to opt out must provide notice on a Claimant Opt-Out form to cprneutrals@cpradr.org.

25. Counsel for Respondent(s) and Counsel for Claimant(s) may agree to alter the sequence of the opt-out process, by, for example, Claimants requesting Respondent(s) to indicate shortly after the close of the Mediation Period whether Respondent(s) intend(s) to opt-out of arbitration to obviate the need for Claimants to make an election, and/or Respondent(s) requesting Counsel for Claimant(s) to identify how many Claimants intend to remain in arbitration before Respondent(s) need(s) to make a final decision as to whether to opt-out or maintain the arbitration process. In any event, any such agreed-upon revised sequencing of the opt-out options shall be subject to the ability of CPR to administer the opt-out process in a fair and efficient fashion consistent with this Protocol.

Exhibit C
Page 55
Page 8

18. The arbitrations shall proceed in a sequence determined by CPR. The sequence shall in part be determined by the timing of the above-described notifications and any other factors necessary for the efficient and orderly arbitration of the remaining cases, with as many arbitrations proceeding simultaneously as practicable, consistent with the procedures set forth in this Protocol.[26]

## SELECTION OF THE ARBITRATOR

19. Within 15 days of the completion of the Mediation Period, CPR shall commence the arbitrator selection process as set forth in Paragraph 4, above, for each Outstanding Case or Newly Commenced Mass Arbitration that may proceed under the terms of the Protocol. CPR also may re-canvas the Master List periodically at its discretion.

## THE ARBITRATION PROCESS

20. The arbitration shall then proceed with CPR pursuant to CPR's Employment Rules, provided that:
    a. Except as provided in subparagraph b, unless the parties and the arbitrator agree otherwise, all in-person arbitration hearings must take place no more than 50 miles from the Claimant's residence;
    b. The arbitrator shall have the authority to order that testimony be taken or the hearing be conducted, in part or in whole, remotely. Such proceedings may be conducted by telephone, videoconference or by any other suitable platform. In making such determination, the arbitrator should ensure that the proceedings remain fair to all parties and that a remote proceeding would not materially impair the ability of a party to fully present its case and/or defense;
    c. The arbitrator shall render a Final, Written Reasoned Award within 120 days of the initial pre-hearing conference, and any extensions of time that would result in a Final, Written Reasoned Award being rendered more than 120 days after the initial pre-hearing conference will need to be approved by CPR;
    d. The arbitrator shall handle all scheduling and other administrative matters with the parties;
    e. The arbitrator shall handle all requests for deposits for the arbitrator's fees and expenses and invoicing directly with the parties; and
    f. To the extent CPR is requested to provide other administrative assistance, it shall do so if practicable at the posted fee.

21. Every two months, if practicable, CPR shall indicate to counsel for the parties the availability of arbitrators for appointments over the next 60-day period, with the object being to resolve as many arbitrations as quickly as possible.[27]

---

26. The cases of Claimants of Newly Commenced Mass Arbitrations, who commenced their cases following the expiration of a successful Mediation Process, shall proceed in arbitration in a sequence determined by CPR as set forth in Paragraph 18.as to whether to opt-out or maintain the arbitration process. In any event, any such agreed-upon revised sequencing of the opt-out options shall be subject to the ability of CPR to administer the opt-out process in a fair and efficient fashion consistent with this Protocol.

27. The cases of Claimants of Newly Commenced Mass Arbitrations, who commenced their cases following the expiration of a successful Mediation Process, shall proceed in arbitration in a sequence determined by CPR as set forth in Paragraph 18.as to whether to opt-out or maintain the arbitration process. In any event, any such agreed-upon revised sequencing of the opt-out options shall be subject to the ability of CPR to administer the opt-out process in a fair and efficient fashion consistent with this Protocol.

Exhibit C
Page 56
Page 9



22. By agreement of counsel for Respondent(s) and counsel for 30 or more Claimants, which agreement may be prompted by CPR, the Mediation Process as set forth above may be re-initiated pursuant to the CPR Mediation Procedure; however, the parties may agree to split the mediator's fee, and there shall be no stay of Outstanding Cases.

23. If the parties to the re-initiated Mediation Process are successful in a 90-day timeframe from the above-referenced agreement to reinitiate the Mediation Process in agreeing upon the Substantive Methodology to resolve the Outstanding Cases that were commenced prior to the expiration of the re-initiated Mediation Period, those Claimants who have not received final decisions in their arbitrations shall be given the opportunity to resolve their cases pursuant to such offers. To the extent the parties to the re-initiated Mediation Process are unable to agree upon the Substantive Methodology to resolve the Outstanding Cases that were commenced prior to the expiration of the re-initiated Mediation Period, then only those Claimants who were not previously provided an opt-out option in connection with their cases shall be afforded that option pursuant to Paragraphs 12-13 above. Otherwise, all Claimants' arbitrations shall continue to proceed under this Protocol.

24. This Protocol shall be subject to requirements of applicable law.

25. CPR reserves the right in its sole discretion to change the elements of this Protocol, any cross-referenced CPR rules, or procedures herein, and any CPR Fees at any time. Those modifications and CPR Fees shall govern any arbitration in which selection of an arbitrator has not already been made or where the applicable CPR Fees have not already been triggered.

Exhibit C
Page 57
Page 10

**LESS CONFLICT. MORE PURPOSE.**

# GLOSSARY OF TERMS

**Administrative Arbitrator:** A standing arbitrator appointed by CPR, who by agreement of the parties to the Protocol, and in an effort to facilitate resolution under the Protocol, is vested with the authority to address administrative matters set forth in the Protocol.

**Commencement Date:** The date on which the fully completed template and Notice of Arbitration have been received for the case filed.

**CPR's Due Process Protections:** The administrative protections that CPR requires to be extended to Claimants by Respondents in arbitration cases under certain circumstances, without which CPR will decline to administer the arbitration. For more information, see CPR's website.

**CPR's Employment Mass Claims Panel:** The Employment Mass Claims Panel is the compilation of those arbitrators from the CPR Panel of Distinguished Neutrals who have either employment experience as an advocate or neutral or training in arbitrating employment cases and who have expressed a willingness to join this Panel.

**CPR's Panel of Distinguished Neutrals:** Mediators and arbitrators who have been accepted by CPR to its roster. It includes prominent attorneys, academics, retired state and federal judges, as well as highly skilled business executives, legal experts and dispute resolution professionals who are particularly qualified to resolve business and employment disputes.

**Final, Written, Reasoned Award:** An award accompanied by the legal and factual reasoning supporting the award.

**Initial Mass Arbitrations:** Those arbitrations commenced that initially trigger the Employment-Related Mass Claims Protocol.

**Mediation Parties:** Those parties to any Initial Mass Arbitrations or Newly Commenced Mass Arbitrations commenced prior to initiation of the process to select the mediator, whose cases were not already resolved as Test Cases or otherwise; also, those parties who agree upon re-initiating the Mediation Process pursuant to the Protocol's procedures.

**Mediation Period:** The 90 days from giving the Final, Written Reasoned Awards to the mediator in which the Mediation Parties are tasked with reaching a Substantive Methodology, or the 90 days from agreement of counsel for Respondent(s) and counsel for 30 or more Claimants to reinitiate the Mediation Process in which the Mediation Parties are also tasked with reaching a Substantive Methodology.

**Nearly Identical Cases:** Cases that arise out of a factual scenario and raise legal issues so similar one to another that application of the Protocol to the number of cases at issue will reasonably result in an efficient and fair adjudication of the cases.

**Newly Commenced Mass Arbitrations:** Those arbitrations commenced subsequent to the Initial Mass Arbitrations, which are also of a Nearly Identical nature.

**Outstanding Cases:** Those arbitration cases commenced prior to the expiration of the Mediation Period but that had not yet been resolved as Test Cases or otherwise as of the expiration of the Mediation Period, or in certain circumstances as specified in the Protocol, as of the expiration of a re-initiated Mediation Period.

**Substantive Methodology:** The agreement by the parties to the Mediation Process on all material terms – and the identification of objective criteria – necessary to enable resolution of the Outstanding Cases.

**Test Cases:** Those arbitration cases randomly selected by CPR and/or supplemented by additional arbitration cases identified by the Parties subject to review by the Administrative Arbitrator. The Test Cases will be the first cases to proceed to award under the Employment-Related Mass Claims Protocol.

Exhibit C
Page 58
Page 11

CPR International Institute for Conflict Prevention & Resolution

LESS CONFLICT. MORE PURPOSE.

# TASK FORCE ON THE EMPLOYMENT-RELATED MASS CLAIMS PROTOCOL

## CO-CHAIRS

**Aaron Warshaw**, Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

**Jahan Sagafi**, Outten & Golden LLP

## MEMBERS

**Amanda Simpson**, Jackson Lewis P.C.

**Brendan Sweeney**, Jackson Lewis P.C.

**Candace Bertoldi**, Seyfarth Shaw LLP

**Chauniqua Young**, Outten & Golden LLP

**Christopher Murray**, Ogletree, Deakins, Nash, Smoak & Stewart, P.C.

**Homer La Rue**, Howard University School of Law

**Jay Waks,** Ret. Senior EVP, General Counsel, American Kennel Club; Board Member CPR

**Jessica Benson**, Pfizer Inc.

**John Bickerman**, Bickerman Dispute Resolution, PLLC

**Kimberly Lawrence**, CVS Health

**Loren Gesinsky**, Seyfarth Shaw, LLP

**Michele Fisher**, Nichols Kaster, PLLP

**Suzanne Bish**, Stowell & Friedman, Ltd.

**Honorable (Ret.) Timothy Lewis**, Schnader Harrison Segal & Lewis LLP

**William Lemons**, William H. Lemons, P.C.

## CPR STAFF

**Allen Waxman**, President & CEO

**Helena Tavares Erickson**, Senior Vice President, Dispute Resolution Services and Corporate Secretary

**Mia Levi**, Vice President, Global Development, Dispute Resolution Services

Exhibit C
Page 59                                                          Page 12