QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
  William R. Sears (Bar No. 330888)
  willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:   (213) 443-3000
Facsimile:    (213) 443-3100

KELLER LENKNER LLC
  Warren Postman (Bar No. 330869)
  wdp@kellerlenkner.com
  Albert Pak (admitted *pro hac vice*)
  albert.pak@kellerlenkner.com
1100 Vermont Avenue, N.W., 12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123

*Attorneys for Plaintiffs Skot Heckman,*
*Luis Ponce, Jeanene Popp, and Jacob*
*Roberts, on behalf of themselves and all*
*those similarly situated*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>         Plaintiffs,<br><br>         v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>         Defendants. | CASE NO. 2:22-cv-00047-GW-GJS<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR DISCOVERY RELATED TO WHETHER A VALID ARBITRATION AGREEMENT EXISTS**<br><br>The Honorable George H. Wu |

# <u>TABLE OF CONTENTS</u>

PRELIMINARY STATEMENT ........................................................................1

BACKGROUND ...........................................................................................3

DEFENDANTS SHOULD BE REQUIRED TO PROVIDE LIMITED
DISCOVERY REGARDING WHETHER A VALID ARBITRATION
AGREEMENT EXISTS ..................................................................................8

CONCLUSION............................................................................................15

## TABLE OF AUTHORITIES

**CASES** **PAGE(s)**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
   24 Cal. 4th 83 (2000) ...................................................................12

*Cheng-Canindin v. Renaissance Hotel Assocs.*,
   50 Cal. App. 4th 676 (1996)..........................................................10

*Coneff v. AT&T Corp.*,
   No. 06-CV-0944-RSM, 2007 WL 738612 (W.D. Wash. Mar. 9, 2007) 9, 14

*Cross & Brown Co. v. Nelson*,
   167 N.Y.S.2d 573 (N.Y. App. Div. 1957) ....................................10

*Fitz v. NCR Corp.*,
   118 Cal. App. 4th 702 (2004)........................................................12

*Graham v. Scissor-Tail, Inc.*,
   28 Cal. 3d 807 (1981).....................................................................10

*Hamby v. Power Toyota Irvine*,
   798 F. Supp. 2d 1163 (S.D. Cal. 2011) ..........................................9

*Henry Schein, Inc. v. Archer & White Sales, Inc.*,
   — U.S. —, 139 S. Ct. 524 (2019) .................................................14

*Lim v. TForce Logistics, LLC*,
   8 F.4th 993 (9th Cir. 2021)...................................................... 12, 15

*Lopez v. Ace Cash Express, Inc.*,
   No. LA CV11–04611 JAK, 2012 WL 1655720
   (C.D. Cal. May 4, 2012)....................................................... 10, 11

*Nagrampa v. MailCoups, Inc.*,
   469 F.3d 1257 (9th Cir. 2006).......................................................9

*Newton v. Clearwire Corp.*,
   No. 2:11–CV–00783–WBS–DAD, 2011 WL 4458971 (E.D. Cal. Sept. 23, 2011).........................................................................................14

*Oberstein v. Live Nation Ent., Inc.*,
   No. CV 20-3888-GW-GJSX, 2021 WL 4772885 (C.D. Cal. Sept. 20,2021)
   ...........................................................................................................14

*O'Brien v. Am. Exp. Co.*,
   No. 11–CV–1822–BTM, 2012 WL 1609957 (S.D. Cal. May 8, 2012) .....13

*O'Hanlon v. JPMorgan Chase Bank, N.A.*,
   No. 15–CV–06640–DDP, 2015 WL 5884844 (C.D. Cal. Oct. 7, 2015) ....12

*OTO, L.L.C. v. Kho*,
   8 Cal. 5th 111 (2019)................................................................11

*Rent–A–Center, West, Inc. v. Jackson*,
   561 U.S. 63 (2010) ........................................................... 14, 15

*Sanchez v. Valencia Holding Co.*, LLC,
   61 Cal. 4th 899 (2015)..............................................................11

*Saravia v. Dynamex, Inc.*,
   310 F.R.D. 412 (N.D. Cal. 2015) ......................................... 14, 15

*Ting v. AT&T*,
   319 F.3d 1126 (9th Cir. 2003)............................................. 11, 12

*Walnut Producers of California v. Diamond Foods, Inc.*,
   187 Cal. App. 4th 634 (2010).....................................................9

*Wherry v. Award, Inc.*,
   192 Cal. App. 4th 1242 (2011)............................................ 10, 11

*Wilson v. Huuuge, Inc.*,
   944 F.3d 1212 (9th Cir. 2019)....................................................8

**STATUTES**

9 U.S.C § 4................................................................................8, 9

Cal. Civ. Code § 1670.5.............................................................9, 12

**PRELIMINARY STATEMENT**

Just last year, Defendants Live Nation Entertainment, Inc., and Ticketmaster LLC ("Defendants") moved to compel arbitration against their consumers in a prior lawsuit before this Court. *See Oberstein, et al. v. Live Nation Entertainment, Inc, et al.*, 2:20-cv-03888 (C.D. Cal. Feb. 19, 2021), ECF 84 ("*Oberstein*"). In *Oberstein*, Defendants sought to compel plaintiffs to individual arbitration with JAMS, a well-established arbitral forum. *See generally id.* But as Defendants were asking this Court to enforce their JAMS arbitration agreement, they were privately hard at work dismantling it. And on July 2, 2021, while the Court reviewed Defendants' motion to compel arbitration to JAMS, Defendants posted on their websites a new user agreement that abandoned JAMS and designated a new dispute-resolution forum called New Era ADR ("New Era"). *See* Ticketmaster, *Terms of Use*, https://bit.ly/3JZnr7m (last updated July 2, 2021).

New Era is not just new to Defendants' consumers; it is new to the world. It launched its services in April 2021 with the mission of "helping businesses settle legal disputes" by creating rules that "make[] sense for businesses" and that also benefit "law firms, who are able to provide an improved client experience" to businesses "and handle a higher volume of cases" filed by consumers. Exhibit A, Jim Dallke, *This startup is helping businesses settle legal disputes completely online*, Chicago Inno (May 3, 2021, 4:05pm), https://bit.ly/3DKeFYv. It previously applied for a trademark application for the term "e-arbitration," arguing that the term "is not merely descriptive, as it actually refers to a whole new way of doing arbitration." U.S. Trademark Application No. 88688582, Unpublished (filing date Nov. 12, 2019) (New Era ADR Inc, Applicant) (Response to Office Action), https://bit.ly/3j2wQ21. New Era argued that its unprecedented "e-arbitration" process was "electronic arbitration that removes discovery, motion practice

and almost the entirety of all rules, process and procedure." *Id.*

All of that is suspect standing alone.  But Plaintiffs' investigation has yielded additional information that calls into question New Era's validity and impartiality.   New Era enters reciprocal arrangements with businesses including Defendants, taking annual retainer fees from them and providing a friendly forum to them.  As set forth below, New Era received a payment of up to $350,000 from Defendants in 2021 pursuant to a financial agreement between Defendants and New Era that Defendants have refused to produce; that payment appears to have been most if not all of New Era's revenue in 2021; and Latham & Watkins (Defendants' counsel) may have played a significant role in advising both Defendants and New Era in negotiating that financial agreement, if not also in drafting New Era's rules and procedures. New Era apparently even considers Defendants its "anchor client" and expresses appreciation for the "strong support" and client referrals from Latham & Watkins.  *See generally* Declaration of Albert Y. Pak in Support of Plaintiffs' Motion for Discovery Related to Whether a Valid Arbitration Agreement Exists ("Pak Decl.").  Now New Era is citing the revenue from Defendants to aggressively raise capital to "ramp up sales and marketing efforts."  FINSMES, New Era ADR Raises $4.6M in Seed Funding (Mar. 15, 2022), https://bit.ly/3qZ1uhe.  Discovery is necessary to reveal whether, in light of this, New Era can truly act as an unbiased arbitral forum for Defendants, which appear to have been intimately involved in New Era's founding and growth.

Plaintiffs therefore respectfully request that this Court authorize discovery from Defendants and New Era related to the business dealings and communications between Defendants, New Era, and Latham & Watkins regarding New Era's arbitration fees, costs, rules, and procedures, as well as New Era's financials and marketing of its e-arbitration process.  Because this

information goes directly to the validity of Defendants' delegation clause, to the substantive unconscionability of Defendants' arbitration agreement, and to the severability of all dispute-resolution provisions currently embedded in Defendants' operative Terms of Use, Plaintiffs and the Court will be deprived of the factual predicate needed to assess Defendants' motion to compel arbitration without that discovery.  Courts have repeatedly granted similar arbitration-related discovery, including where a different company suddenly amended its arbitration agreement to substitute a well-established arbitral forum with a newcomer—and the ensuing discovery confirmed the degree to which some companies will collude with purportedly neutral dispute-resolution forums to escape liability.

## BACKGROUND

The Court is familiar with the antitrust claims at issue; they are the same as those asserted in *Oberstein*.  As in *Oberstein*, this proposed class action challenges Defendants' anticompetitive scheme to monopolize the primary and secondary markets for concert ticketing services at major concert venues across the United States.  *See* ECF No. 1 ("Compl."), at ¶¶ 6–20.  As detailed in filings from the Antitrust Division of the Department of Justice, Defendants repeatedly violated a consent decree they entered with the Department of Justice in 2010, which was meant to prevent the exact type of unrivaled dominance they now command.  *Id.* at ¶¶ 91–96.  Through those violations and other anticompetitive acts, Defendants have monopolized ticket sales for major concerts, profiting from consumers who have no choice but to pay Defendants' supracompetitive fees in order to attend the events of their choice.  *See e.g.*, *id.* at ¶¶ 114–23.

In *Oberstein*, on June 19, 2020, Defendants moved to compel arbitration of Plaintiffs' claims to JAMS, an established arbitral forum.  *See Oberstein*, 2:20-cv-03888-GW-GJS (C.D. Cal. June 19, 2020), ECF No. 25.

As is the case here, the parties in *Oberstein* agreed to stay the briefing on the motion to compel arbitration in order to brief and potentially to conduct discovery related to that motion.  *See id.* (June 24, 2020), ECF No. 29.  The Court then granted Plaintiffs' requested discovery after three rounds of briefing and three hearings.  *See id.*, ECF Nos. 35, 46, 59.  After arbitration-related discovery closed, the parties completed briefing the motion to compel arbitration on May 14, 2021.  *See id.*, ECF Nos. 110, 111.  The Court then granted Defendants' motion on September 20, 2021.  *See id.*, ECF No. 114.

On July 2, 2021—two months after filing their last brief in support of their motion to compel arbitration to JAMS, and two months before the Court ruled on that motion—Defendants rewrote their Terms of Use.  In place of JAMS, they designated New Era ADR as their dispute-resolution forum for consumers.  *See* Ticketmaster, *Terms of Use*, https://bit.ly/3JZnr7m (last updated July 2, 2021).

New Era launched its services in April 2021 with the mission of "helping businesses settle legal disputes" by creating rules that "make[] sense for businesses" and that also benefit "law firms, who are able to provide an improved client experience" to businesses "and handle a higher volume of cases" filed by consumers.  Exhibit A, Jim Dallke, *This startup is helping businesses settle legal disputes completely online*, Chicago Inno (May 3, 2021, 4:05pm), https://bit.ly/3DKeFYv.  New Era has described its "e-arbitration" process as a "a whole new way of doing arbitration" that "eschews traditional arbitration rules and convention."  U.S. Trademark Application No. 88688582, Unpublished (filing date Nov. 12, 2019) (New Era ADR Inc, Applicant) (Response to Office Action), https://bit.ly/3j2wQ21.  According to New Era, its "whole new way of doing arbitration" means "electronic arbitration that removes discovery, motion practice and almost the entirety of all rules, process and procedure."  *Id.*  One wonders how plaintiffs could ever

gather and present evidence supporting an antitrust violation absent "discovery, motion practice, and almost the entirety of all rules, process and procedure." *Id.*  To file a claim with New Era, consumers must agree to New Era's Terms and Conditions, which state:  "By using the Website and its platform, you acknowledge that you will forego the presentation of certain evidence which might otherwise be available for presentation in a federal or state judicial forum or through other alternative dispute resolution services." New Era ADR, *Terms & Conditions*, https://bit.ly/3NRdmvM (last updated June 2021).

To "help[] businesses settle legal disputes," New Era also enters into financial partnerships with them.  It offers to businesses a "mass arbitration/class action risk-reducing subscription solution," whereby it collects an up-front, annual retainer fee from businesses in exchange for the friendly forum it promises (and will feel pressured to deliver).  *See* Pak Decl. ¶ 2.

Here, New Era's anti-consumer bias is exacerbated by its direct financial dependence on Defendants in particular.  After being designated as Defendants' dispute-resolution forum in July 2021, New Era boasted to its investors that, in the first eight months of its operations through the end of 2021, it had secured a "multi-year subscription deal" with a "major Fortune 500 anchor client," and that it had secured "$350,000 in annual recurring revenue."  *See* Pak Decl. ¶¶ 3–4.  That Fortune 500 anchor client must be Defendants, as no other business appears to have designated New Era ADR as its dispute-resolution forum in 2021 pursuant to a subscription agreement. *Id.* ¶ 5.  And because the deal with Defendants was likely the only subscription deal that New Era secured in 2021, Defendants' retainer payment to New Era likely constituted the entirety of New Era's "$350,000 in annual recurring revenue" in 2021.

Defendants' counsel, Latham & Watkins, appears to have played a role in fostering the strong ties between Defendants and New Era.  New Era recently attributed its financial success—$350,000 in annual recurring revenue apparently drawn from Defendants—to the "strong support of an AmLaw 100 law firm" that "refer[s] prospective clients to us."  *Id.* ¶ 6.  That is reason enough to suspect that Latham & Watkins, while urging this Court to compel arbitration to JAMS in *Oberstein*, was at the same time negotiating the financial arrangement between Defendants and New Era.  Further circumstantial evidence supports that conclusion:  New Era's most recent subscription client, Soho House, is another longtime client of Latham & Watkins, *id.* ¶ 8; and New Era's early SEC filing was executed by an attorney who was formerly with Latham & Watkins, *id.* ¶ 9.

The seeming coordination among Defendants, Latham & Watkins, and New Era may even extend to the purportedly neutral arbitrators who would be appointed to resolve any dispute between Plaintiffs and Defendants brought before New Era.  An undisclosed number of New Era's arbitrators financially benefit from Defendants' patronage, as they apparently maintain a "stake in New Era from their service as advisors to [the] company."  *Id.* ¶ 10.  This underscores the overarching partiality of New Era as a forum.

As brazen as this apparent coordination may sound, it would not be unprecedented.  Two years ago, DoorDash attempted the same move.  *See generally Abernathy v. DoorDash, Inc.*, 3:19-cv-7545-WHA (N.D. Cal.) ("*Abernathy*").  It rewrote its arbitration agreement during ongoing legal proceedings, replacing a well-established arbitral forum, the American Arbitration Association ("AAA"), with one subject to DoorDash's direct influence and control, the International Institute for Conflict Resolution and Prevention ("CPR").  DoorDash convinced CPR to alter its arbitration procedures in DoorDash's favor via its outside counsel, Gibson Dunn.  *See*

*Abernathy*, ECF 162-4, at 4 (email from a Gibson Dunn Partner to CPR's Senior Vice President of Dispute Resolution Services) ("As I mentioned, I represent DoorDash, Inc., and we are looking to change our arbitration administrator from AAA to a new company.  We are looking for a way to solve the issue of mass arbitration demands."); *id.* at 19–20 (internal email from CPR's CEO) ("Door Dash [sic] and Gibson, Dunn [sic] are frustrated, and are interested in changing the Door Dash [sic] contracts going forward to move away from AAA, and want to explore application of our non-administered rules in these circumstances so as to avoid a filing fee altogether. . . .  I would like to explore a way to work on this because it is the kind of problem that demands CPR innovation, would further our mission, and could be an important source of funding going forward."); *id.* at 51 (email from DoorDash's Associate General Counsel to CPR's CEO) ("I have reviewed the terms relating to application of CPR's Employment-Related Mass Claims Protocol and agree to such on behalf of DoorDash.  Please let us know when the Protocol is published so that we may link to it in our terms and conditions.").  Gibson Dunn went so far as to redline CPR's rules and procedures on DoorDash's behalf.  *See id.* at 26 (email from a Gibson Dunn Partner to CPR's CEO) ("Thanks again for sending this revised protocol.  We continue to think that we are on the same page and that the protocol could work for DoorDash.  In the attached draft, I've interlineated a few comments, questions, and recommendations.").  All this was uncovered through arbitration-related discovery identical to that which Plaintiffs now seek.  *See Abernathy*, ECF 67, at 54, 57, 65.

Guided by *Abernathy*, as well as this Court's rulings in *Oberstein*, Plaintiffs requested limited arbitration-related discovery from Defendants in this case.  *See* Pak Decl. ¶ 11.  The parties met and conferred, but Defendants refused to engage in any discovery.  *See* Pak Decl. ¶ 12.

1
2
3

## DEFENDANTS SHOULD BE REQUIRED TO PROVIDE LIMITED DISCOVERY REGARDING WHETHER A VALID ARBITRATION AGREEMENT EXISTS

4    Plaintiffs must be given a fair chance to gather and to present evidence
5  in opposition to Defendants' fact-bound motion to compel arbitration. "[T]he
6  party seeking to compel arbitration[] must prove the existence of a valid
7  agreement by a preponderance of the evidence." *Wilson v. Huuuge, Inc.*, 944
8  F.3d 1212, 1219 (9th Cir. 2019).   With their motion, Defendants have
9  submitted declarations and dozens of documents in an effort to satisfy this
10  burden. *See generally* Dkts. 30, 31.  Now, Plaintiffs should be afforded the
11  opportunity to conduct discovery to explore whether New Era is a partial
12  forum, whether New Era eliminates their litigation rights, and whether
13  Defendants drafted their arbitration agreement in bad faith.  These issues bear
14  directly on the unconscionability of Defendants' arbitration agreement and its
15  delegation clause, as well as on the severability of the unconscionable
16  provisions from the remainder of the agreement.

17    Governing law recognizes that factual disputes bear on arbitrability and
18  provides for a trial on them.  The Federal Arbitration Act ("FAA") provides,
19  on the one hand, that "[a] party aggrieved by the alleged failure, neglect, or
20  refusal of another to arbitrate under a written agreement for arbitration" may
21  move to compel arbitration, 9 U.S.C § 4, as Defendants have now done so.
22  The FAA also provides, on the other hand, that when the other party puts "the
23  failure, neglect, or refusal to [arbitrate in issue," as Plaintiffs have done here,
24  "the court shall proceed summarily to the trial thereof." *Id.*  Indeed, "the party
25  alleged to be in default" of the allegedly valid arbitration agreement "may . .

26
27
28

PLAINTIFFS' MOTION FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

1  . demand a jury trial of such issue, and upon such demand the court shall make

2  an order referring the issue or issues to a jury." *Id.*[1]

3      Unconscionability is one such fact-laden issue of arbitrability. "It is

4  well-established that unconscionability is a generally applicable contract

5  defense, which may render an arbitration provision unenforceable."

6  *Nagrampa v. MailCoups, Inc.*, 469 F.3d 1257, 1280 (9th Cir. 2006). And

7  "numerous factual inquiries bear upon the question" of unconscionability.

8  *Walnut Producers of California v. Diamond Foods, Inc.,* 187 Cal. App. 4th

9  634, 644 (2010).

10      Thus, "a party opposing a motion to compel arbitration is entitled to

11  discovery relevant to the issue of unconscionability." *Hamby v. Power Toyota*

12  *Irvine*, 798 F. Supp. 2d 1163, 1164 (S.D. Cal. 2011); *see also Coneff v. AT&T*

13  *Corp.*, No. 06-CV-0944-RSM, 2007 WL 738612, at *2 (W.D. Wash. Mar. 9,

14  2007). "When it is claimed or appears to the court that the contract or any

15  clause thereof may be unconscionable the parties shall be afforded a

16  reasonable opportunity to present evidence as to its commercial setting,

17  purpose, and effect to aid the court in making the determination." Cal. Civ.

18  Code § 1670.5(b). Information that has any probative value to this fact-

19  intensive inquiry is discoverable, and "the bar for relevance is low."

20  *Oberstein*, 2:20-cv-03888 (C.D. Cal. Aug. 3, 2020), ECF 35, at 3–5 (ordering

21  arbitration-related discovery); *see also Oberstein*, ECF 46, at 4–5 (reiterating

22  that "the bar for relevance is low").

23      The discovery that Plaintiffs seek here is relevant for three reasons.

24      *First*, Plaintiffs seek information that goes to the heart of a key factual

25  dispute over substantive unconscionability:  the partiality of the designated

26  dispute-resolution forum.  "[A] dispute resolution procedure is not an

27

28  ───────────────

[1] Plaintiffs demand a jury trial on arbitrability.

arbitration unless there is a third party decision maker, a final and binding decision, and a mechanism to assure a minimum level of impartiality with respect to the rendering of that decision." *Cheng-Canindin v. Renaissance Hotel Assocs.*, 50 Cal. App. 4th 676, 687–88 (1996).  Arbitration may not be conducted in a forum with "interests [] so allied with those of the party that, for all practical purposes, [it] is subject to the same disabilities which prevent the party [itself] from serving." *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 827 (1981); *see also Lopez v. Ace Cash Express, Inc.*, No. LA CV11–04611 JAK, 2012 WL 1655720, at *6 (C.D. Cal. May 4, 2012) (quoting *Wherry v. Award, Inc.*, 192 Cal. App. 4th 1242, 1248 (2011)).  Where a designated forum is "so identified with [a] party as to be in fact, even though not in name, the party," an agreement to arbitrate is "essentially illusory"—it is bereft of "minimum levels of integrity" and unenforceable on grounds of unconscionability.  *Graham*, 28 Cal.3d at 824–25 (citing *Cross & Brown Co. v. Nelson*, 167 N.Y.S.2d 573 (N.Y. App. Div. 1957)); *see also id.* ("Unless we close our eyes to realities, [the agreement] becomes, not a contract to arbitrate, but an engagement to capitulate.").  For this reason, discovery to supplement Plaintiffs' initial findings is needed to resolve this issue of forum bias—the true nature of Defendants' financial arrangement with New Era and the extent to which New Era's self-described "mass arbitration/class action risk-reducing subscription solution," Pak Decl. ¶ 2, is designed to accommodate Defendants' efforts to extirpate the "remnant of procedural rights" left to their customers under the previous Terms of Use, *see Abernathy,* (N.D. Cal. Feb. 10, 2020), ECF No. 177, at 7–8.

*Second*, Plaintiffs' requested discovery is necessary to explore the degree to which New Era will eliminate Plaintiffs' litigation rights—another key factor for substantive unconscionability.  "[A] substantive unconscionability analysis is sensitive to 'the context of the rights and

remedies that otherwise would have been available to the parties,'" requiring the factfinder to "examine both the features of dispute resolution adopted as well as the features eliminated." *OTO, L.L.C. v. Kho*, 8 Cal. 5th 111, 130 (2019) (quoting *Sanchez v. Valencia Holding Co.*, LLC, 61 Cal. 4th 899, 922 (2015)). That examination cannot be confined to the publicly available rules and procedures. "In determining whether an arbitration agreement is sufficiently bilateral, courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003). Plaintiffs do not know the terms of the financial agreement between New Era and Defendants, the communications leading up to the agreement's execution, or the content of the conversations between New Era and Defendants regarding how New Era's rules and procedures would be applied to claims brought against Defendants.

By way of example, Plaintiffs cannot ascertain the full extent to which New Era has already agreed to eliminate their discovery rights. "To be [substantively conscionable], at minimum the arbitration agreement must require . . . sufficient discovery." *Lopez*, 2012 WL 1655720, at *6 (quoting *Wherry*, 192 Cal. App. 4th at 1248). New Era makes clear that Plaintiffs' discovery rights will be substantially curtailed, *see* New Era ADR, *Rules and Procedures*, https://bit.ly/3qZadQw (updated March 2, 2022) (stating that "New Era ADR operates on the premise that limitations on discovery are one of the primary ways efficiencies are achieved in arbitration"), and it requires Plaintiffs to consent to that curtailment, *see* New Era ADR, *Terms & Conditions*, https://bit.ly/3NRdmvM (last updated June 2021) (requiring users to "acknowledge that you will forego the presentation of certain evidence which might otherwise be available for presentation in a federal or state judicial forum or through other alternative dispute resolution services"). New Era's rules and procedures governing discovery, updated less than a week

before Defendants' motion to compel arbitration, ECF No. 30 (Mar. 8, 2022), already raise the specter of unconscionability. *Compare Fitz v. NCR Corp.*, 118 Cal. App. 4th 702, 717 (2004) ("Granting the arbitrator discretion to determine whether additional discovery is necessary . . . is an inadequate safety valve."), *and O'Hanlon v. JPMorgan Chase Bank, N.A.*, No. 15–CV–06640–DDP, 2015 WL 5884844, at *6 (C.D. Cal. Oct. 7, 2015) (finding unconscionable a discovery provision that leaves "discovery at the arbitrator's discretion—without any indication of what kind of law or rules the arbitrator will apply to limit that discretion"), *with* New Era ADR, *Rules and Procedures*, https://bit.ly/3qZadQw (updated March 2, 2022) ("Any request for discovery must be submitted to the neutral, at which point the neutral has discretion to determine whether it should be allowed or not."). Further revelation of communications between New Era and Defendants regarding draconian restrictions on discovery would buttress this position. *See Ting*, 319 F.3d at 1149.

*Third*, the proposed discovery into the drafting process behind New Era's rules is relevant to the severability of the unconscionable provisions in Defendants' Terms of Use. "If the central purpose of [a] contract is tainted with illegality, then the contract as a whole cannot be enforced. . . . [A]n unconscionable arbitration term should also not be severed if drafted in bad faith because severing such a term and enforcing the arbitration provision would encourage drafters to overreach." *Lim v. TForce Logistics, LLC*, 8 F.4th 993, 1005–06 (9th Cir. 2021) (citing *Armendariz*, 24 Cal. 4th at 124–25); *see also* Cal. Civ. Code § 1670.5(a) ("If the court as a matter of law finds the contract or any clause of the contract to have been unconscionable at the time it was made the court may refuse to enforce the contract, or it may enforce the remainder of the contract without the unconscionable clause, or it may so limit the application of any unconscionable clause as to avoid any

unconscionable result"). To explore whether Defendants' Terms of Use, including the incorporation of the New Era rules, were drafted in bad faith, Plaintiffs should be permitted to take discovery into the communications between Defendants, New Era, and Latham & Watkins related to the drafting process.

Under analogous circumstances involving a flagrant forum switch, the Northern District of California ordered precisely the kind of discovery that Plaintiffs here seek. *See Abernathy,* ECF No. 67 at 54 (Hearing Transcript), ("The Court: Well, maybe effective tomorrow [Plaintiffs are] going to get a big deposition or two. Because if this is the kind of hide-the-ball we're going to get, then [Plaintiffs] get to do a little discovery."); *id.* at 65 ("[The Court:] [I]t would be an important fact, to me at least, on unconscionability if in order to get away from [one arbitral forum], you ran off to [a different arbitral forum] and cooked up some custom made deal, and then—and then you really wrote the terms yourself[.]"); *id.* at 66 ("I will give you one deposition. Go to [the new arbitral forum], do a 30(b)(6). And then all the communications [sic] with Gibson Dunn, with DoorDash, to show how the rule got written. . . . That would be something that might — it would surely add color to the case."). And as set forth above, the ensuing discovery showed that Gibson Dunn had written the rules of the new forum on DoorDash's behalf.

More generally, time and again, courts have granted similar discovery into the unconscionability of arbitration provisions. *See O'Brien v. Am. Exp. Co.*, No. 11–CV–1822–BTM, 2012 WL 1609957, at *5 (S.D. Cal. May 8, 2012), *objections overruled*, 2012 WL 3628667 (S.D. Cal. Aug. 21, 2012) ("The number of class actions brought by American Express, the procedures, rules and costs of arbitrators, and American Express's relationships with the arbitrators are relevant to substantive unconscionability. These topic areas are relevant to whether the arbitration agreement at issue is one-sided. Plaintiff

may serve discovery on these categories limited to the time period covering the proposed class in this case."); *Newton v. Clearwire Corp.*, No. 2:11–CV–00783–WBS–DAD, 2011 WL 4458971, at *6 (E.D. Cal. Sept. 23, 2011) ("The undersigned concludes that much of the information sought by plaintiff through the disputed discovery requests may allow her to make the case that the arbitration clause at issue here produces overly harsh or unjustifiably one-sided results [which is] clearly relevant to plaintiff's claim that this arbitration clause is unconscionable.  Although limited in this pre-arbitration context, the undersigned is mindful that this is the discovery phase of the litigation."); *Coneff*, 2007 WL 738612, at *2 ("[P]laintiffs have also requested that certain 30(b)(6) witnesses be prepared to testify about the development of AT&T Wireless's terms and conditions of service and how those terms and conditions were to be presented and explained to customers.  The Court agrees that this topic is connected to defendants' motion to compel arbitration in that it relates to the circumstances surrounding the making of the customers' wireless service agreements, which may be relevant to plaintiffs' response to the motion.").

The delegation clause at issue does not change the analysis. Defendants' proposed delegation would be to the very same dispute-resolution forum whose neutrality is at issue.  Plaintiffs will argue that the delegation clause in Defendants' Terms of Use is "unenforceable [because] the delegation itself is unconscionable." *See Saravia v. Dynamex, Inc.*, 310 F.R.D. 412, 419 (N.D. Cal. 2015) (citing *Rent–A–Center, West, Inc. v. Jackson*, 561 U.S. 63, 71–74 (2010)).  While parties can expressly delegate to an arbitrator the "gateway issues" of the validity and scope of an arbitration provision, *see Oberstein v. Live Nation Ent., Inc.*, No. CV 20-3888-GW-GJSX, 2021 WL 4772885, at *7 (C.D. Cal. Sept. 20, 2021) (citing *Henry Schein, Inc. v. Archer & White Sales, Inc.*, — U.S. —, 139 S. Ct. 524, 529

(2019)), any such delegation is itself subject to judicial review for unconscionability, *Lim*, 8 F.4th at 1000–04; *see also Saravia*, 310 F.R.D. at 419 (citing *Rent-A-Center*, 561 U.S. at 71–74).

## CONCLUSION

For the foregoing reasons, the Court should grant Plaintiffs' motion for discovery related to whether a valid arbitration agreement exists.

Dated:  April 6, 2022

Respectfully Submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By:  */s/ Kevin Y. Teruya*

Kevin Y. Teruya (Bar No. 057645)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER LENKNER LLC

By:  */s/ Warren Postman*

Warren Postman (Bar No. 330869)
wdp@kellerlenkner.com
Albert Pak (admitted *pro hac vice*)
albert.pak@kellerlenkner.com
1100 Vermont Avenue, N.W.
12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123

*Attorneys for Plaintiffs Skot Heckman,
Luis Ponce, Jeanene Popp, and Jacob
Roberts*

## <u>ATTESTATION</u>

I am the ECF user whose identification and password are being used to file the foregoing Memorandum of Points and Authorities in Support of Plaintiffs' Motion for Discovery Related to Whether a Valid Arbitration Agreement Exists.  Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, William R. Sears, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized such filing.


Dated:  April 6, 2022

*/s/ William R. Sears*
William R. Sears

PLAINTIFFS' MOTION FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS