1
2
3
4
5
6
7
8

**LATHAM & WATKINS LLP**
  Daniel M. Wall (Bar No. 102580)
    *dan.wall@lw.com*
  Timothy L. O'Mara (Bar No. 212731)
    *tim.o'mara@lw.com*
  Andrew M. Gass (Bar No. 259694)
    *andrew.gass@lw.com*
  Kirsten M. Ferguson (Bar No. 252781)
    *kirsten.ferguson@lw.com*
  Alicia R. Jovais (Bar No. 296172)
    *alicia.jovais@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

9
10

*Attorneys for Defendants Ticketmaster L.L.C.*
*and Live Nation Entertainment, Inc.*

11
12
13

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>            Plaintiffs,<br><br>v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>            Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION FOR DISCOVERY RELATED TO WHETHER A VALID ARBITRATION AGREEMENT EXISTS**<br><br>The Honorable George H. Wu<br><br><br>Hearing Date: May 19, 2022<br><br>Hearing Time: 8:30 a.m.<br><br>Courtroom: 9D, 9th Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

1

2

## <u>TABLE OF CONTENTS</u>

3  I.    INTRODUCTION ...................................................................................... 1

4  II.   FACTUAL BACKGROUND ..................................................................... 4

5        A.    Oberstein ........................................................................................ 4

6        B.    This Case ........................................................................................ 5

7        C.    New Era ........................................................................................... 7

8  III.  ARGUMENT ........................................................................................... 10

9        A.    The Proposed Discovery Solely Pertains to
              Enforceability Issues That Are Clearly and Unmistakably

10             Delegated to the Arbitrator .......................................................... 10

11       B.    No Discovery Is Needed to Determine Whether New
              Era's Rules and Procedures Are Fair and Impartial ...................... 13

12

13             1.    The Centerpiece of Plaintiffs' Motion—the
                    Discovery in *Abernathy*—Undermines Their

14                   Request ............................................................................... 13

15             2.    None of the Alleged "Reasons" Why New Era Is a
                    "Partial Forum" Supports the Requested Discovery .............. 16

16                   a.    New Era's Subscription Option ..................................... 17

17                   b.    Purported Arbitrator "Stakes" in New Era .................... 18

18                   c.    The Abandoned Trademark Application ........................ 20

19                   d.    New Era's Rules Allow for Discovery
                          Consistent with Industry Standards ............................... 21

20

21             3.    Severability Is Not a Basis for Discovery ............................. 24

22  IV.  CONCLUSION ....................................................................................... 25

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

# TABLE OF AUTHORITIES

## CASES

*Abeyrama v. J.P. Morgan Chase Bank*,
No. CV 12-00445, 2012 WL 2393063 (C.D. Cal. June 22, 2012)............... 22, 23

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
24 Cal. 4th 83 (2000) ........................................................................ 24

*Bank Melli Iran v. Pahlavi*,
58 F.3d 1406 (9th Cir. 1995) ............................................................. 18

*Borgarding v. JPMorgan Chase Bank*,
No. CV 16-2485, 2016 WL 8904413 (C.D. Cal. Oct. 31, 2016) ...................... 23

*Brice v. Haynes Invs., LLC*,
13 F.4th 823 (9th Cir. 2021) .............................................................. 12

*Carillo v. Gruma Corp.*,
No. EDCV 16-2276, 2017 WL 11631614 (C.D. Cal. Mar. 14, 2017).............. 23

*Cheng-Canindin v. Renaissance Hotel Assocs.*,
50 Cal. App. 4th 676 (1996) .............................................................. 16

*Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*,
83 Cal. App. 4th 677 (2000)............................................................... 22

*Colvin v. NASDAQ OMX Grp., Inc.*,
No. 15-cv-02078, 2015 WL 6735292 (N.D. Cal. Nov. 4, 2015) ...................... 23

*Coneff v. AT&T Corp.*,
No. C 06-0944, 2007 WL 738612 (W.D. Wash. Mar. 9, 2007)........................ 16

*Dickey v. Ticketmaster LLC*,
No. CV 18-9052, 2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ................. 1, 11

*Dotson v. Amgen, Inc.*,
181 Cal. App. 4th 975 (2010) ......................................................... 22, 23

*Fitz v. NCR Corp.*,
118 Cal. App. 4th 702 (2004) ............................................................ 23

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

*Gilmer v. Interstate/Johnson Lane Corp.*,
   500 U.S. 20 (1991) ...................................................................................... 17

*Graham v. Scissor-Tail, Inc.*,
   28 Cal. 3d 807 (1981) ................................................................................. 16

*Gutierrez v. Autowest, Inc.*,
   114 Cal. App. 4th 77 (2003) ....................................................................... 25

*Hamby v. Power Toyota Irvine*,
   798 F. Supp. 2d 1163 (S.D. Cal. 2011) ..................................................... 16

*Himber v. Live Nation Worldwide, Inc.*,
   No. 16-CV-5001, 2018 WL 2304770 (E.D.N.Y. May 21, 2018) ..................... 11

*Lee v. Ticketmaster L.L.C.*,
   No. 18-cv-05987, 2019 WL 9096442 (N.D. Cal. Apr. 1, 2019),
   *aff'd*, 817 F. App'x 393 (9th Cir. 2020) ...................................................... 11

*Little v. Auto Stiegler, Inc.*,
   29 Cal. 4th 1064 (2003) .............................................................................. 24

*Lopez v. Ace Cash Exp., Inc.*,
   No. LA CV 11-04611, 2012 WL 1655720 (C.D. Cal. May 4, 2012) ............... 16

*Malone v. Superior Ct.*,
   226 Cal. App. 4th 1551 (2014) ................................................................... 13

*McGrath v. DoorDash, Inc.*,
   No. 19-cv-05279, 2020 WL 6526129 (N.D. Cal. Nov. 5, 2020) ......... 3, 4, 13, 14

*Monster Energy Co. v. City Beverages, LLC*,
   940 F.3d 1130 (9th Cir. 2019) ................................................................... 19

*Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*,
   460 U.S. 1 (1983) .................................................................................. 20, 25

*Nevarez v. Forty Niners Football Co., LLC*,
   No. 16-CV-07013, 2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) .................. 11

*Newton v. Clearwire Corp.*,
   No. 2:11-CV-00783, 2011 WL 4458971 (E.D. Cal. Sept. 23, 2011) ............... 16

*O'Brien v. Am. Exp. Co.*,
   No. 11-CV-1822, 2012 WL 1609957 (S.D. Cal. May 8, 2012) ....................... 16

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

*O'Hanlon v. JPMorgan Chase Bank, N.A.*,
  No. CV 15-06640, 2015 WL 5884844 (C.D. Cal. Oct. 7, 2015) ...................... 23

*Oberstein v. Live Nation Entertainment, Inc.*,
  No. CV 20-3888, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) ...... 1, 2, 5, 6, 11

*Poublon v. C.H. Robinson Co.*,
  846 F.3d 1251 (9th Cir. 2017) ................................................................. 22

*Rent-A-Center, West, Inc. v. Jackson*,
  561 U.S. 63 (2010) .......................................................................... 11, 21

*Roman v. Superior Ct.*,
  172 Cal. App. 4th 1462 (2009) ........................................................... 22, 23

*Sandquist v. Lebo Auto., Inc.*,
  1 Cal. 5th 233 (2016) ....................................................................... 17, 18

*Scott v. AT&T, Inc.*,
  No. 19-cv-04063, 2021 WL 2839959 (N.D. Cal. Feb. 16, 2021) ..................... 23

*Serv. Partners, LLC. v. Am. Home Assurance Co.*,
  No. CV-11-01858, 2011 WL 2516411 (C.D. Cal. June 20, 2011) ............. 20, 21

*Shoals v. Owens & Minor Distrib., Inc.*,
  No. 2:18-CV-2355, 2018 WL 5761764 (E.D. Cal. Oct. 31, 2018) ................... 18

*Tiri v. Lucky Chances, Inc.*,
  226 Cal. App. 4th 231 (2014) ............................................................. 12, 13

*Yeomans v. World Fin. Grp. Ins. Agency, Inc.*,
  485 F. Supp. 3d 1168 (N.D. Cal. 2020) .................................................. 22

**STATUTES**

9 U.S.C. § 10(a)(2) ............................................................................... 21

**RULES**

C.D. Cal. L.R. 7-7 ................................................................................. 18

Fed. R. Civ. P. 56(c)(4) .......................................................................... 19

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

# I.    INTRODUCTION

We have been here before.  This case is virtually _identical_ to another case that this Court sent to arbitration less than six months ago: _Oberstein v. Live Nation Entertainment, Inc._, No. CV 20-3888, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) (Wu, J.).  It is brought by the same plaintiffs' counsel.  The allegations and claims are the same.  The putative classes are the same.  Indeed, with the exception of five paragraphs that Plaintiffs' counsel added at the beginning, the complaint is a nearly word-for-word copy of the _Oberstein_ complaint.  Those five paragraphs reveal the one thing that is "new" about this case: the arbitration provider.  Last year, Ticketmaster and Live Nation updated their Terms of Use ("Terms") to select New Era ADR ("New Era") as the default provider; by contrast, the prior version of the Terms (i.e., the one at issue in _Oberstein_) selected JAMS.  Plaintiffs allege this single change makes the Terms unconscionable.  Nothing else has changed since this Court held in _Oberstein_ that Ticketmaster and Live Nation's arbitration agreement is fully enforceable.   Consequently, this case presents a single, narrow question: can Plaintiffs get out of arbitration, despite their repeated agreement to it, simply because the Terms now select New Era as the arbitration provider?

The law is clear that the answer is "no," for all the reasons set forth in Ticketmaster and Live Nation's motion to compel arbitration.  Defs.' Mot. to Compel Arb., ECF No. 30-1.  Plaintiffs recognize this.  They know that, as this Court has ruled multiple times now, their unconscionability challenge to the Terms has clearly and unmistakably been delegated to the arbitrator—not the Court.  _Oberstein_, 2021 WL 4772885, at *7; _Dickey v. Ticketmaster LLC_, No. CV 18-9052, 2019 WL 9096443, at *8 (C.D. Cal. Mar. 12, 2019).  And they know that, even if the Court were to consider that challenge—and review New Era's publicly available rules and procedures—it would find nothing remotely sub-standard for the industry, let alone _unconscionable_, as the law requires.  Since Plaintiffs cannot oppose Defendants' motion to compel arbitration on the law, or on what New Era's rules and procedures

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

actually say, they have once again filed a Hail Mary discovery motion.  This time, Plaintiffs seek broad discovery not only of Ticketmaster and Live Nation, but also of New Era (a third party who, notably, has not been served—and thus is unable to object to these requests).  It's a desperate attempt to conjure up something to support their claim that the Terms' selection of New Era is somehow unconscionable.

Tellingly, Plaintiffs are vague about exactly _what_ discovery they are seeking, but insist that the discovery is "limited."  Pls.' Mot. for Discovery at 7, ECF No. 34-1 ("Mot.").  That's false.  Plaintiffs did not provide the Court with drafts of their proposed discovery, but they did give them to Ticketmaster and Live Nation. They're anything but limited.  Plaintiffs' proposed discovery consists of _fifteen_ requests for production (five to Defendants, and ten to New Era), a Rule 30(b)(6) notice to Defendants spanning five separate topics, and Rule 30(b)(6) deposition subpoena to New Era spanning nine separate topics.  _See_ Decl. of T. O'Mara in Supp. of Opp'n to Mot. for Discovery ("O'Mara Decl.") Exs. B-E.  The information sought includes "all documents that refer or relate to mass arbitration," "all documents that refer or relate to" the decision to select New Era, "all drafts" of New Era's rules and procedures, "all documents used to advertise New Era," "all documents used in connection with [New Era's] efforts to raise capital," and detailed quarterly data on New Era's consumer arbitrations (including the amount of every claim and any award, all arbitrator fees, etc.).  _See id._ Exs. B, D.  The Court should not allow this fishing expedition.

First, _all_ of the discovery that Plaintiffs seek is targeted at their claim that the Terms are substantively unconscionable.  That's a fatal flaw.  This Court has already held (multiple times) that the Terms contain a "delegation clause [which] clearly and unmistakably delegates arbitrability to the arbitrator."  _Oberstein_, 2021 WL 4772885, at *8.  Consequently, the Court may not inquire into whether the Terms, as a whole, are unconscionable; that is for the arbitrator to decide.  _Id_.  As this Court plainly stated, "the Court's unconscionability inquiry is limited to the delegation

clause instead of the arbitration clause as a whole." *Id.* And yet none of Plaintiffs' challenges here—and *none* of the discovery sought—is specific to the delegation clause; they all concern the Terms *as a whole*. Plaintiffs' request for discovery into enforceability issues that the Court has already ruled (under controlling law) it cannot address should be denied. The Court's analysis can and should stop here.

Second, even if the Court were to decide that it could adjudicate Plaintiffs' challenge, no discovery is necessary to resolve it. The various "reasons" Plaintiffs offer for the requested discovery amount to nothing more than objective mischaracterizations of New Era's rules and procedures, and vague accusations and innuendo—made on the "information and belief" of Plaintiffs' own counsel—that there must be something troubling about New Era. Mischaracterizations and sheer speculation about an arbitration provider are not a free ticket to discovery. To the contrary, the law is clear that "the ultimate question is whether" the arbitration rules and procedures are "fair and impartial." *McGrath v. DoorDash*, *Inc.*, No. 19-cv-05279, 2020 WL 6526129, at *10 (N.D. Cal. Nov. 5, 2020). New Era's rules and procedures are publicly available and speak for themselves; no discovery is needed for the Court to review them and determine whether they are fair and impartial.

Third, the cornerstone of Plaintiffs' motion—the case that Plaintiffs use as justification for the broad discovery they seek—does not support their position. It affirmatively undermines it. Plaintiffs insist that, in *Abernathy v. DoorDash, Inc.*, No. 3:19-cv-7545 (N.D. Cal.), the court "ordered precisely the kind of discovery that Plaintiffs here seek." Mot. at 13. That's incredibly misleading. As Plaintiffs are well-aware (given that their counsel also represented the plaintiffs in *Abernathy*), the *Abernathy* court *quashed* "precisely the kind of discovery that Plaintiffs here seek," including the plaintiffs' Rule 30(b)(6) notice and document requests for all documents that referred to mass arbitration, all drafts of the rules and procedures at issue, detailed data on arbitrations, etc. The court ultimately allowed only *one* category of documents (i.e., communications between the arbitration provider and

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

the defendant or defendant's counsel) and _one_ Rule 30(b)(1) deposition to proceed, finding that the plaintiffs' other document requests and Rule 30(b)(6) notice were "overbroad" and "grossly beyond the pale." *See* O'Mara Decl. Ex. H 16:12-18:17, 18:24-25. The same is true here.

Furthermore, the limited discovery that the *Abernathy* court did allow was ultimately irrelevant to the question of forum bias (i.e., whether the arbitration provider was a partial forum). When a court eventually considered the discovery obtained and ruled on the forum bias issue, it held that, whatever that discovery showed, it did not matter, because the ultimate question was whether the rules and procedures, _as written_, were fair and impartial. *McGrath*, 2020 WL 6526129, at *10. The court reviewed those rules and procedures, and found that they were. *Id.* Again, the Court here can and should do the same.

The broad, open-ended discovery that Plaintiffs seek is neither appropriate nor necessary. Ticketmaster and Live Nation respectfully request that the Court deny Plaintiffs' motion for discovery, and proceed to the motion to compel arbitration.

## II.   FACTUAL BACKGROUND

### A.   Oberstein

On April 28, 2020, Plaintiffs' counsel filed the *Oberstein* case against Defendants Ticketmaster and Live Nation. *See Van Iderstine v. Live Nation Entm't, Inc.*, No. 2:20-cv-03888 (C.D. Cal. Apr. 28, 2020), ECF No. 1; *Oberstein v. Live Nation Entm't, Inc.*, No. 2:20-cv-03888 (C.D. Cal. Jan. 27, 2021), ECF No. 81. Defendants moved to compel arbitration on the ground that the plaintiffs repeatedly agreed to the Terms, and the arbitration agreement therein, when they signed into their accounts and purchased tickets. *Oberstein*, ECF Nos. 25-28. In response, the plaintiffs sought extensive pre-arbitration discovery regarding "click data," the content of the Terms, and the "design process" behind Defendants' websites, claiming that such discovery was needed to oppose Defendants' motion. *Oberstein*, ECF Nos. 29-1, 51-1. This Court ultimately allowed discovery that pertained to the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

question of constructive notice—specifically, documents relating to the UX/UI design process of Defendants' websites, as it related to the Terms. *Oberstein*, ECF No. 59 at 2-3, 5 (finding that such evidence could be relevant to conspicuousness).

For nine months, the parties engaged in protracted, extensive discovery—during which Defendants collected more than 1 million documents from 18 custodians, reviewed about 10,000 documents, and sat for a 30(b)(6) deposition. *Oberstein*, ECF No. 68 at 1. Despite all the time, effort, and cost, the plaintiffs' fishing expedition uncovered nothing. And so, when the plaintiffs finally opposed Defendants' motion to compel arbitration in March 2021, their lead argument against arbitration was a purely legal one that they could (and should) have made a year before, without any discovery. *Oberstein*, ECF No. 92-1.

On September 20, 2021, this Court rejected each of the *Oberstein* plaintiffs' arguments against arbitration, and granted Defendants' motion to compel, finding that: (1) Defendants' websites provided sufficient constructive notice of the Terms; (2) the authority to decide plaintiffs' argument that their claims fell within an exception to the arbitration agreement had been clearly and unmistakably delegated to the arbitrator; and (3) the delegation clause itself was not unconscionable. *Oberstein*, 2021 WL 4772885, at *6-9. Plaintiffs appealed the Court's order to the Ninth Circuit, and the parties are currently in the midst of briefing. *See Oberstein v. Live Nation Entm't, Inc.*, No. 21-56200 (9th Cir. Oct. 29, 2021), ECF No. 1.

**B.    This Case**

Meanwhile, on January 4, 2022, Plaintiffs filed the instant case, a carbon copy of *Oberstein*. ECF No. 1. Again, as in *Oberstein*, Defendants moved to compel arbitration on the ground that Plaintiffs had repeatedly agreed to the Terms when they signed into their accounts and purchased tickets. Defs.' Mot. to Compel Arb. at 4-7, 11-13. Again, as in *Oberstein*, Plaintiffs informed Defendants that, before opposing Defendants' motion, they intended to seek arbitration-related discovery. *See* ECF No. 35 ¶¶ 11-12. And they provided Defendants with their draft discovery

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

requests (which have not been served).  O'Mara Decl. Exs. B-E.  But in contrast to *Oberstein*, Plaintiffs do not seek any discovery related to constructive notice—nothing concerning conspicuousness or assent to the Terms.  They do not, because Defendants' websites indisputably continue to provide "sufficient constructive notice as required for mutual assent," as this Court ruled mere months ago.  *Oberstein*, 2021 WL 4772885, at *7.  Absolutely nothing has changed that would alter that conclusion—nor do Plaintiffs allege otherwise.  Instead, Plaintiffs seek broad discovery of the one thing that is "new" about this case: New Era.  Specifically, Plaintiffs informed Defendants that they intend to serve the following discovery on Ticketmaster and Live Nation:

- Five document requests, including: "all documents that refer or relate to mass arbitration" (RFP No. 4), and "all documents that refer or relate to your decision to update your Terms of Use to change the designated ADR forum from JAMS to New Era ADR" (RFP No. 5). O'Mara Decl. Ex. B.

- A Rule 30(b)(6) deposition notice covering the same five topics as the document requests.  *Id.* Ex. C.

Plaintiffs also informed Defendants that they intend to serve the following on New Era—a third party who, to be clear, is not affiliated with Defendants in any way, and is not (nor has ever been) represented by Defendants' counsel:

- Ten document requests, including: "all … communications with Defendants and/or Latham & Watkins" (RFP No. 1); "all drafts of your Rules and Procedures" (RFP No. 4); "all drafts of your Terms and Conditions" (RFP No. 5); "all documents used to advertise New Era ADR" (RFP No. 6); "all documents used in connection with your efforts to raise capital" (RFP No. 7); all subscription agreements (RFP No. 8); detailed consumer arbitration data, including, for every New Era arbitration, the prevailing party, the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

amount of the claim and any award, and the arbitrator's total fees (RFP No. 9); and "all documents that refer or relate to mass arbitration" (RFP No. 10).  O'Mara Decl. Ex. D.

- A Rule 30(b)(6) deposition subpoena, spanning essentially the same topics as the document requests.  *Id.* Ex. E.

Since the purported grounds for all of this discovery are Plaintiffs' various attacks against New Era, it is important to take a step back and understand what New Era is—and why Plaintiffs' counsel do not like it.

### C.    New Era

Over the years, Defendants have revised their Terms from time to time, and last year, Defendants updated their Terms to select New Era as the default arbitration provider; by contrast, the prior version of the Terms selected JAMS.  ECF No. 31 ¶¶ 27-28; *compare, e.g.*, ECF No. 31-29, *with* ECF No. 31-31.  Otherwise, the core provisions of the current Terms are substantially the same as prior versions enforced by this Court and others: like those prior versions, the current Terms provide for binding, individual arbitration, state that the arbitration agreement is governed by the Federal Arbitration Act ("FAA"), and delegate the power to decide arbitrability to the arbitrator.  *Compare* ECF Nos. 31-29 & 31-30, *with* ECF Nos. 31-31 to 31-40.  The primary difference is the arbitration provider: New Era instead of JAMS.

JAMS's rules and procedures are designed for traditional, one-off arbitrations—for example, where one consumer brings claims against a company in a standalone case.  But there is a new and increasingly common trend in arbitration: mass individual arbitrations, in which hundreds or thousands (and sometimes tens of thousands) of individual, but otherwise identical, claims are brought in arbitration. Keller Lenkner, Plaintiffs' counsel in this case, pioneered this strategy—starting first with mass numbers of employment claims, and expanding more recently to mass numbers of consumer claims.  *See* Defs.' Mot. to Compel Arb. at 8 n.6.  JAMS, however, does not have *any* rules or procedures in place for mass individual

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

arbitrations, employment or consumer.[1]   How will thousands of individual arbitrations be administered and actually arbitrated—and on what timeline?  How will arbitrators for so many cases be appointed?  How will discovery be conducted?  Will there be a process to avoid inconsistent rulings on common issues?  What fees should be assessed when there are thousands of nearly identical claims?[2]  There are no rules or procedures in place to answer these questions.  As a result, the parties involved in mass individual arbitrations end up embroiled in contentious negotiations over how to conduct discovery and arbitrate the claims (e.g., bellwether arbitrations, consolidation, etc.), over the number and type of arbitrators, and over whether the typical fees should be modified.  Those negotiations can last for months, even years.  Adjudication of claims on the merits is, at best, delayed and sometimes never occurs at all.[3]

New Era, founded in 2020, stepped in to fill the void.  Unlike other arbitration providers, it offers comprehensive rules and procedures to administer and adjudicate both traditional, standalone arbitrations _and_ mass individual consumer arbitrations efficiently—and to conclusion, on the merits.  The rules and procedures for mass

---

[1]    As of the date of filing, none of the old establishment arbitration providers (JAMS, AAA, CPR) have adopted pre-established rules and procedures for administering mass individual arbitrations of consumer claims (like the ones asserted by Plaintiffs here).  CPR does offer special rules and procedures for mass arbitrations of employment claims, but those rules and procedures do not apply to consumer claims.  _See_ ECF No. 30-3 ¶ 4; ECF No. 30-6.

[2]    JAMS's rules, for example, require an up-front filing fee of $1,750 for each case, regardless of whether it's a standalone or one of 10,000 individual (but otherwise identical) cases filed at the same time.  _See_ JAMS Arbitration Schedule of Fees and Costs, www.jamsadr.com/arbitration-fees (last visited Apr. 26, 2022).  In either case, the company pays $1,500 of the fee, and the claimant pays $250 (unless the claimant can demonstrate an inability to pay, in which case the company pays the entire $1,750).  _Id._; JAMS Consumer Arbitration Minimum Standards, www.jamsadr.com/consumer-minimum-standards/ (last visited Apr. 26, 2022).  Multiply those numbers by thousands of arbitrations, and the upfront fees (to say nothing of the administration fees, all paid by the company) quickly become astronomical, making the prospect of arbitrating the cases on the merits a dim one.

[3]    _See, e.g._, Defs.' Mot. to Compel Arb. at 9 n.9 (providing examples of mass arbitrations in which the parties spent nine months and 1.5 years, respectively, trying to work out mass arbitration procedures, only to have the cases voluntarily dismissed—with no adjudication on the merits).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

1  arbitrations apply where the presiding neutral determines that more than five

2  arbitrations have been filed that present common issues.  O'Mara Decl. Ex. A, New

3  Era Rules 2(x), 6(b) (the "New Era Rules").[4]  In such cases, the arbitrations will be

4  subject to a bellwether process which (as explained in Defendants' motion to compel

5  arbitration, ECF No. 30-1 at 15-20) mirrors the process routinely used by federal

6  courts in multi-district litigations.[5]  *See* New Era Rules 6(b)(ii)(1) & 6(b)(iii)(3).

7      New Era offers two pricing options for its services: (1) a "pay as you go"

8  option, where, for each arbitration filed, the company pays $9,500 and the consumer

9  pays $500, New Era Rules 1(a)(ii), 6(a)(iii)(1)(c); or (2) a subscription option, which

10  consists of an annual subscription fee (paid by the company), plus a reduced per-

11  case filing fee (i.e., $300 instead of $500), New Era Rule 1(e)(i).  The New Era Rules

12  provide an example of how these two options compare: if 100 mass individual

13  arbitrations were filed with New Era, a non-subscribing company would be charged

14  $950,000 (100 x $9,500), and each claimant would pay a $500 fee; by contrast, a

15  subscribing company with a $250,000 annual subscription would pay its $250,000

16  subscription fee, and each claimant would pay a reduced fee of $300.  New Era Rules

17  1(e)(i)(5), 1(a)(ii), 6(a)(iii)(1)(d).  Defendants have a subscription with New Era.

18      So, what's the problem?  The problem, Plaintiffs claim, is that New Era

19  "eliminates their ligation rights," in particular all rules, process, procedure, and

20  discovery.  *See* Mot. at 8, 4-5, 10-12.  That's objectively false, as a review of the

21  New Era Rules makes clear.  *See* New Era Rules; *see also infra* Section III.B.2.c;

22  Defs.' Mot. to Compel Arb. at 15-20.  The real problem, from Plaintiffs' perspective,

23

24  [4]    The neutral is selected by the parties using a rank-and-strike process.  *See* New
    Era Rules 2(j) & 6(b)(iii).  New Era neutrals are members of the National Academy

25  of Distinguished Neutrals, which accepts only professional neutrals who are referred
    by at least two current members and have arbitrated at least 20 civil cases to final

26  award or mediated at least 200 private civil disputes.  Our Neutrals, New Era ADR,
    www.neweraadr.com/neutrals/ (last visited Apr. 26, 2022); Membership

27  Requirements, www.nadn.org/membership (last visited Apr. 26, 2022).

28  [5]    New Era's bellwether process also mirrors the process that Plaintiffs' own
    counsel in this case have proposed for other mass arbitrations.  *See* Defs.' Mot. to
    Compel Arb. at 19-20; ECF No. 30-5.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
9
DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

is not that New Era has eliminated any rights, rules, or procedures that they would otherwise have at JAMS or other arbitration providers; it's that New Era, unlike JAMS and other arbitration providers, actually *has* rules and procedures to administer and adjudicate mass individual consumer arbitrations on the merits. The mass arbitration strategy, pioneered by Plaintiffs' counsel in this case, capitalizes on the fact that those other arbitration providers do not have pre-established rules and procedures in place to deal with the circumstance in which the same plaintiffs' counsel seeks to bring thousands of individual consumer claims. Plaintiffs prefer that situation, because the resulting chaos gives them outsized settlement leverage, right out of the gate. But that preference has absolutely nothing to do with whether New Era's rules and procedures are fair and impartial; it only concerns a perceived tactical advantage for Plaintiffs' counsel. If the concern was about facilitating the arbitration of mass claims in a fair and impartial forum—and reaching an efficient resolution on the merits—there would be no complaint about New Era whatsoever. New Era makes the actual arbitration of mass claims *more* feasible, exactly as the Federal Arbitration Act intends. *See* Defs.' Mot. to Compel Arb. at 15-20. As the New Era Rules make clear, they are not *lesser* than what is offered by JAMS and others; they are a material *improvement*.

## III.   ARGUMENT

### A.   The Proposed Discovery Solely Pertains to Enforceability Issues That Are Clearly and Unmistakably Delegated to the Arbitrator

Plaintiffs do not seek any discovery related to assent or constructive notice; instead, Plaintiffs seek broad discovery targeted at their claim that the use of New Era as the arbitration provider is somehow unconscionable—and renders the Terms unenforceable. But this Court has already determined, multiple times, that the Terms are "clear and unmistakable" in delegating enforceability issues to the arbitrator, not

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

1   the Court.  *Oberstein*, 2021 WL 4772885, at *7; *Dickey*, 2019 WL 9096443, at *8.[6]

2   Because "the delegation clause clearly and unmistakably delegates arbitrability to

3   the arbitrator, the Court's unconscionability inquiry is limited to the delegation

4   clause instead of the arbitration clause as a whole."  *Oberstein*, 2021 WL 4772885,

5   at *8.  Thus, the only unconscionability challenge that the Court may entertain is a

6   challenge to whether the delegation clause *itself* is unconscionable.  And the only

7   discovery that might arguably be relevant to such a challenge would be specifically

8   targeted at the delegation clause.

9       But none of the requested discovery pertains to the delegation clause, and

10  Plaintiffs' motion makes clear that their unconscionability arguments likewise are

11  not specific to the delegation clause; rather, they plainly relate to the arbitration

12  agreement *as a whole*.  *See, e.g.*, Mot. at 9-10 (arguing that New Era is a partial

13  forum, without reference to the delegation clause); *id.* at 10-12 (arguing that New

14  Era improperly limits discovery, without reference to the delegation clause); *id.* at

15  12-13 (arguing that the Terms were "drafted in bad faith," without reference to the

16  delegation clause); *id.* at 13 (discussing "discovery into the unconscionability of

17  arbitration provisions"—not the delegation clause).

18      Even if, by some stretch, these arguments could somehow apply to the

19  delegation clause, the law is clear that Plaintiffs' failure to specifically direct them

20  to the delegation clause bars the Court from addressing them.  *See Rent-A-Center,*

21  *West, Inc. v. Jackson*, 561 U.S. 63, 74 (2010) (holding that a court cannot consider

22  an unconscionability challenge—including one based on "limitations on discovery"

23  in arbitration—unless the plaintiff argues that "*as applied* to the delegation

24  provision" it renders "*that provision* unconscionable") (emphases in original).

25

26

27   [6]    *See also Lee v. Ticketmaster L.L.C.*, No. 18-cv-05987, 2019 WL 9096442, at
     *1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020); *Himber v. Live*
     *Nation Worldwide, Inc.*, No. 16-CV-5001, 2018 WL 2304770, at *5 (E.D.N.Y. May
28   21, 2018); *Nevarez v. Forty Niners Football Co., LLC*, No. 16-CV-07013, 2017 WL
     3492110, at *11 (N.D. Cal. Aug. 15, 2017).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

Indeed, the Ninth Circuit recently held that merely "stat[ing] the delegation clause is invalid"—as Plaintiffs do here, *see* Mot. at 8, 14—is not enough; instead, *Rent-A-Center* "requir[es] a *substantive argument* that the delegation provision *in and of itself* is unenforceable."  *Brice v. Haynes Invs., LLC*, 13 F.4th 823, 836 (9th Cir. 2021) (first emphasis added); *see also id.* ("A party challenging a delegation clause via contract-wide arguments must show how the claimed deficiencies *as applied to the delegation clause* render that specific agreement invalid.") (emphasis in original).  Plaintiffs here fail to make <u>*any*</u> "substantive argument that the delegation provision <u>*in and of itself*</u> is unenforceable."  *Id*.  The Court therefore cannot address Plaintiffs' unconscionability challenges; pursuant to the delegation clause, those challenges must be sent to arbitration.  As a result, any discovery into those challenges in this Court would be irrelevant—and improper.

In reply, Plaintiffs may argue that their claim of "forum bias" (i.e., that "New Era is a partial forum" because Defendants have a subscription, *see* Mot. at 8, 9-10) could conceivably apply to the delegation provision, at least enough to allow some discovery.   Under New Era's subscription option, businesses pay an annual subscription fee in advance, covering a set number of arbitrations; this compares to the "pay as you go" model used by other arbitrations providers, such as JAMS.  *See* New Era Rule 1(e)(i).  Plaintiffs never argue that the subscription option specifically makes the delegation clause unconscionable, but the argument might be: something about this option gives New Era's arbitrators a business incentive to rule in favor of subscribing defendants on enforceability challenges under the delegation clause. But even if Plaintiffs had made that argument (they do not), such a challenge could not support the discovery they seek.  The fact that "the arbitrator has a unique self-interest in deciding that a dispute is arbitrable," because "one party tends to be a repeat player," does <u>*not*</u> render a delegation clause unconscionable.  *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 248-49 (2014).  It does not, because the concern regarding arbitrator self-interest is "virtually *always* present with delegation

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

clauses"; therefore, deeming it a basis for unconscionability "would be tantamount to concluding that delegation clauses … are categorically unenforceable." *Id.* at 249 (emphasis in original); *see also Malone v. Superior Ct.*, 226 Cal. App. 4th 1551, 1569 (2014) (FAA bars reliance on the "belief that an arbitrator would be more likely to rule on enforceability issues in favor of a 'repeat player' who would have further business for an arbitrator who rules that its contract is enforceable").

## B. No Discovery Is Needed to Determine Whether New Era's Rules and Procedures Are Fair and Impartial

Even if the Court could address Plaintiffs' unconscionability arguments, none warrants discovery. The law is clear that "the ultimate question is whether" New Era's rules and procedures are "fair and impartial." *McGrath*, 2020 WL 6526129, at *10. Those rules and procedures are publicly available and speak for themselves; no discovery is needed to determine whether they are fair and impartial.

### 1. The Centerpiece of Plaintiffs' Motion—the Discovery in Abernathy—Undermines Their Request

Plaintiffs rely heavily on the discovery supposedly allowed in *Abernathy v. DoorDash, Inc.*, No. 3:19-cv-7545 (N.D. Cal.), claiming that the court there "ordered precisely the kind of discovery that Plaintiffs here seek." Mot. at 13; *see also id.* at 6-7. But Plaintiffs—whose counsel in this case also represented the plaintiffs in *Abernathy*—omit two key facts, of which they surely are aware. First, much of the (virtually identical) discovery that Plaintiffs seek here was <u>*denied*</u> in *Abernathy*. And second, the supposedly damning discovery that was "uncovered" in *Abernathy* was ultimately irrelevant to the question of forum bias; what mattered was what the rules and procedures said. Far from supporting Plaintiffs' motion, *Abernathy* establishes that the discovery would be wasteful and unwarranted.

*Abernathy* involved DoorDash's decision to switch from AAA to CPR as the arbitration provider in its agreements with Dashers. Specifically, DoorDash required claimants actively pursuing arbitrations before AAA to sign a new arbitration

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

agreement, in order to continue working for DoorDash. *Abernathy*, ECF No. 10. That new agreement specified that the arbitrations would be conducted by a different provider—CPR—pursuant to CPR's new protocol for mass employment claims, which was allegedly drafted by DoorDash's lawyers at Gibson Dunn. *Id.* The plaintiffs sought a temporary restraining order against enforcement of that arbitration agreement. *Id.* At the hearing, the court ordered limited discovery: (1) one Rule 30(b)(6) deposition of CPR, and (2) CPR's "communications with Gibson Dunn, with DoorDash, to show how the [employment mass claims] rule got written." O'Mara Decl. Ex. F 65:2-9, 66:17-19. But when the plaintiffs served CPR with a Rule 30(b)(6) notice and document requests, they sought discovery that was significantly broader than what the court had ordered—and that is virtually identical to what Plaintiffs seek here. The *Abernathy* court *quashed* those discovery requests.

For example, the *Abernathy* plaintiffs requested: "documents … that summarize the total number of arbitrations … administered by CPR each year" (RFP No. 4); "all internal CPR documents … that refer to mass claims or mass arbitrations" (RFP No. 5); "all communications among CPR employees, staff, or agents that refer to mass claims" (RFP No. 6); "all drafts, versions, and mark-ups of the Employment-Related Mass Claims Protocol" (RFP No. 8); "all communications … that refer to the Mass Claims Protocol … [and] any draft of it" (RFP No. 9); and "all documents … that refer to the Mass Claims Protocol … [and] any draft of it" (RFP No. 10). O'Mara Decl Ex. G. *This is the same discovery Plaintiffs now seek from New Era. See id.* Ex. D (RFP No. 4: "all drafts of your Rules and Procedures"; RFP No. 5: "all drafts of your Terms and Conditions"; RFP No. 9: detailed consumer arbitration data, including the total number of consumer arbitrations; RFP No. 10: "all documents that refer or relate to mass arbitration"; etc.). The *Abernathy* court quashed *all* of these document requests and the Rule 30(b)(6) notice as "overbroad" and "grossly beyond the pale," ultimately allowing only (1) a single 30(b)(1) deposition of the individual at CPR in charge of creating the employment mass

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

1  claims protocol, and (2) communications among CPR, DoorDash, and Gibson Dunn.

2  *See id.* Ex. H 16:12-18:17, 18:24-25.  *That's it*.  There was no discovery from

3  DoorDash at all, and certainly no discovery from CPR on issues as broad as "all

4  drafts of" CPR's protocol, "all documents used to advertise" CPR, "all documents

5  used in connection with" CPR's "efforts to raise capital," or "all documents that refer

6  or relate to mass arbitration."  *Compare id.* Exs. D, E.

7      Plaintiffs are right about one thing: the discovery they seek is "identical" to

8  the discovery their counsel sought in *Abernathy*.  *See* Mot. at 7.  The only problem

9  is that the *Abernathy* court denied virtually *all* of that identical discovery.  The Court

10  here should do the same.

11      Moreover, while Plaintiffs discuss—at length—the supposedly damning

12  evidence that was "uncovered" through discovery in *Abernathy*, they fail to inform

13  the Court of what actually happened when a court finally considered that evidence

14  and ruled on the forum bias question—i.e., whether CPR was a "partial" forum.  That

15  question was decided in *McGrath v. DoorDash*, where a proposed class of Dashers

16  argued that their claims were not subject to arbitration because CPR's protocol for

17  mass employment claims "deprive[d] Dashers from a fair and impartial forum"

18  given "evidence that DoorDash worked together with CPR to create the [protocol],

19  as indicated through discovery taken in [*Abernathy*]."  2020 WL 6526129, at *9.

20  The court held that, whatever the discovery showed about DoorDash or Gibson

21  Dunn's involvement in the development of CPR's protocol, it ultimately did not

22  matter, because "*the ultimate question is whether the Protocol is fair and*

23  *impartial*—i.e., one that is not predisposed more favorably to Gibson Dunn, its

24  clients (including DoorDash), or defendants generally compared to other generally

25  accepted conventional arbitration rules."  *Id.* at *10 (emphasis added).  Examining

26  the process set forth in the protocol, the court was "hard pressed to see any such

27  catering or favoritism."  *Id.*  Specifically, the protocol would not "result in significant

28  delay in resolution of the Dashers' claims," and "the terms of the [protocol] appear

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

1    fair." *Id.* The court therefore rejected the plaintiffs' claims of partiality. *Id.* at *11.

2    Applying *McGrath* here, <u>none</u> of the requested discovery is proper. Another

3    nine-month discovery detour, as we had in *Oberstein*, is completely unnecessary—

4    and, ultimately, irrelevant—because, in order to determine whether New Era's rules

5    and procedures are fair and impartial, the Court need only look at those publicly

6    available rules and procedures. At the very least, there is no basis or precedent[7] for

7    any discovery beyond what was actually allowed in *Abernathy*: a single 30(b)(1)

8    deposition and production of any communications between New Era and Defendants

9    or their lawyers regarding how New Era's mass arbitration rules got written.

10
11   ### 2.   *None of the Alleged "Reasons" Why New Era Is a "Partial Forum" Supports the Requested Discovery*

12   Plaintiffs make a number of outlandish claims about New Era in an effort to

13   characterize it as a "partial forum." Mot. at 1-2, 9-10. Most of them are objective

14   mischaracterizations; others are based on nothing more than Plaintiffs' counsel's

15   own "information and belief." None justifies the requested discovery.

16

17   ---

18   [7]   Like *Abernathy*, none of the other cases Plaintiffs cite support the discovery
     they seek. *See* Mot. at 9-10, 13-14; *Hamby v. Power Toyota Irvine*, 798 F. Supp. 2d
19   1163, 1164 (S.D. Cal. 2011) (defendant did not challenge the discovery sought);
     *Coneff v. AT&T Corp.*, No. C 06-0944, 2007 WL 738612, at *3 (W.D. Wash. Mar. 9,
20   2007) (allowing discovery on formation and assent but <u>not</u> unconscionability);
     *O'Brien v. Am. Exp. Co.*, No. 11-CV-1822, 2012 WL 1609957, at *1 n.1 (S.D. Cal.
21   May 8, 2012) (reaching the merits of plaintiff's request for discovery related to
     unconscionability only because, there, "the question of arbitrability [was] <u>not</u>
22   reserved for an arbitrator to decide") (emphasis added); *Newton v. Clearwire Corp.*,
     No. 2:11-CV-00783, 2011 WL 4458971, at *1-2, *7 (E.D. Cal. Sept. 23, 2011)
23   (allowing interrogatories on the number of prior arbitrations initiated against
     defendant but <u>denying</u> requests for documents related to defendant's internal policies
24   and procedures regarding arbitration); *Cheng-Canindin v. Renaissance Hotel
     Assocs.*, 50 Cal. App. 4th 676, 679, 688, 691 (1996) (nothing to do with arbitration-
25   related discovery; plaintiff did not agree to arbitrate, but rather to participate in
     "internal problem solving procedure" in which "[e]veryone involved in the decision
26   making process is employed by, selected by, and under the control of the
     [defendant]"); *Graham v. Scissor-Tail, Inc.*, 28 Cal. 3d 807, 821, 826-28 (1981) (no
27   discussion of arbitration-related discovery; arbitration agreement designated
     defendant's union—of which plaintiff was not a member—as sole arbitrator); *Lopez
28   v. Ace Cash Exp., Inc.*, No. LA CV 11-04611, 2012 WL 1655720, at *7 (C.D. Cal.
     May 4, 2012) (finding arbitration agreement was <u>not</u> substantively unconscionable;
     nothing to do with arbitrator bias or arbitration-related discovery).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

### a.   New Era's Subscription Option

Plaintiffs claim that New Era must be biased—and that they are therefore entitled to explore that bias in discovery—because it collects from Defendants an "up-front, annual retainer fee" of $350,000 that constitutes "most if not all of New Era's revenue."  Mot. at 2, 5-6, 10.  This claim is meritless and cannot support Plaintiffs' request for discovery.

As an initial matter, Plaintiffs' claims regarding New Era's "direct financial dependence on Defendants" are directly contradicted by their own papers. *Id.* at 5. Exhibit A to their motion states that New Era initially launched "with around *10 clients*" and has since been "written into dispute resolution clauses in nearly *700 contracts*."  ECF No. 34-2 (emphases added).  Defendants plainly are by no means New Era's only source of business.

Moreover, California law is clear that "the belief that arbitrators might over time be biased toward the repeat players that bring them business" is *not* a basis for finding an arbitration agreement unconscionable.  *Sandquist v. Lebo Auto., Inc.*, 1 Cal. 5th 233, 259 (2016).  Courts may not presume "that arbitrators are ill-equipped to disregard such institutional incentives and rule fairly and equitably," because "the FAA requires that [they] treat arbitration as a coequal forum for dispute resolution." *Id.*; *see also Gilmer v. Interstate/Johnson Lane Corp.*, 500 U.S. 20, 30 (1991) (declining "to indulge the presumption that the parties and arbitral body conducting a proceeding will be unable or unwilling to retain competent, conscientious and impartial arbitrators").

Nothing about New Era's subscription option changes this analysis.  To be clear, New Era's role is administrative; New Era does not make any substantive determinations in the arbitrations it administers. *See, e.g.*, New Era Rule 2(x)(ii)(2) ("New Era ADR makes no determination with respect to issues of law and fact.").  The neutral, *not* New Era, decides all substantive issues, including whether individual arbitrations present common issues such that the mass arbitration rules

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

should apply. *See* New Era Rules 2(x)(ii)(2), 6(b)(ii)(2). There is absolutely no basis to presume that New Era's experienced, qualified neutrals (who are members of the National Academy of Distinguished Neutrals) cannot rule fairly and equitably. *See Sandquist*, 1 Cal. 5th at 259. And any purported incentives associated with New Era's subscription option are the same as the incentives at play every time a company specifies an arbitration provider in its terms of use. When a company agrees with consumers in its terms of use to arbitrate disputes at a particular arbitration provider, it is agreeing to pay that provider its applicable fees for any arbitrations brought under those terms, essentially keeping the provider "on retainer." Compl. ¶ 3. That is exactly the case here; the only difference is that New Era offers companies the predictability of an annual up-front fee, compared to the variability of the "pay as you go" model.

Any "assertion that business incentives bias [New Era's] arbitrators to repeat player defendants" who pay a subscription is flatly "inconsistent with … the FAA" and should be rejected. *Shoals v. Owens & Minor Distrib., Inc.*, No. 2:18-CV-2355, 2018 WL 5761764, at *6 (E.D. Cal. Oct. 31, 2018). As such, it cannot form the basis for the discovery that Plaintiffs seek.

### b. *Purported Arbitrator "Stakes" in New Era*

Plaintiffs also point to a purported statement, made by an unidentified person, that certain New Era arbitrators have "a small stake in New Era from their service as advisors to [the] company." ECF No. 35 ¶ 10; *see also* Mot. at 6. Plaintiffs do not provide *any* source for this purported statement; instead, they submit a declaration from their own counsel, based solely on counsel's "information and belief." *See* ECF No. 35. The Court should disregard this in its entirety. "[I]nformation and belief declarations from [a party's] counsel … [are] entitled to no weight because the declarant [does] not have personal knowledge." *Bank Melli Iran v. Pahlavi*, 58 F.3d 1406, 1412-13 (9th Cir. 1995); *see also* C.D. Cal. L.R. 7-7 ("Declarations shall contain only factual, evidentiary matter and shall conform as far

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

1   as possible to the requirements of [Fed. R. Civ. P.] 56(c)(4)"—i.e., they "must be

2   made on personal knowledge, set out facts that would be admissible in evidence, and

3   show that the affiant or declarant is competent to testify on the matters stated.").[8]

4        In any event, nothing about the accusation Plaintiffs are trying to make here

5   moves the needle.  Arbitrator ownership in an arbitration shop is common—and

6   certainly not disqualifying.  For instance, one-third of the 400 neutrals at JAMS have

7   an ownership share in the company.[9]  "This ownership interest … is … substantial."

8   *Monster Energy Co. v. City Beverages, LLC*, 940 F.3d 1130, 1136 (9th Cir. 2019).

9   To illustrate: with $200 million in annual revenue, even if no owner's distribution

10  exceeds 0.1%, individual JAMS arbitrators may earn as much as $200,000 annually

11  as co-owners of the company.[10]  Nevertheless, as long as the neutral's ownership

12  interest is disclosed prior to the arbitration, it is <u>*not*</u> improper for a neutral to have

13  an ownership stake in the company.  *See Monster Energy Co.*, 940 F.3d at 1137

14  (arbitrator's ownership interest in JAMS "does not require automatic

15  disqualification or recusal—only disclosure"); *see also* New Era Rule 2(k) (requiring

16  neutrals to disclose actual or potential conflicts of interest).  Pursuant to New Era's

17  Rules, Plaintiffs will learn, prior to any arbitration, whether the assigned neutral has

18  an ownership interest in New Era; no discovery on this issue is necessary or

19  appropriate.  And imagine if Plaintiffs' accusation <u>*was*</u> a free ticket to discovery:

---

8       The Court should strike paragraphs 2, 3, 4, 6, 8, 9, and 10 of the Pak declaration, each of which makes additional claims about New Era—and each of which is based in whole or in part on "information and belief."  ECF No. 35.

9       *Focus on Neutrality: What You Need to Know About JAMS*, JAMS ADR Insights, https://www.jamsadr.com/blog/2020/focus-on-neutrality-what-you-need-to-know-about-jams (last visited Apr. 26, 2022).

10      Neal Koch, *How Mediation Firm JAMS Became the Dominant Player in the LA Market*, Los Angeles Bus. J., https://labusinessjournal.com/services/law-legal-attorneys/how-mediation-firm-jams-became-dominant-player/ (last visited Apr. 26, 2022) (JAMS has approximately $200 million in annual revenue); *Focus on Neutrality: What You Need to Know About JAMS*, JAMS ADR Insights, https://www.jamsadr.com/blog/2020/focus-on-neutrality-what-you-need-to-know-about-jams (last visited Apr. 26, 2022) ("[N]o owner's distribution has exceeded 0.1% of total revenue in a given year.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

every arbitration agreement selecting JAMS (to take one example) would be subject to the kind of sprawling discovery Plaintiffs hope to get here. That plainly contravenes the FAA, which "calls for a summary and speedy disposition of motions … to enforce arbitration clauses." *Moses H. Cone Mem'l Hosp. v. Mercury Constr. Corp.*, 460 U.S. 1, 29 (1983).

### c.   *The Abandoned Trademark Application*

Plaintiffs also repeatedly point to a trademark application from 2019 to support their claim that New Era "removes discovery, motion practice and almost the entirety of all rules, process and procedure." Mot. at 1-2, 4-5. Tellingly, Plaintiffs fail to inform the Court that this trademark application (1) was initiated long before New Era was even founded as a company, let alone actually launched its ADR services, and (2) was subsequently *abandoned*.

Moreover, the premise here is obviously false, and borders on frivolous. The Court need only look at New Era's extensive rules and procedures to see that they do, in fact, have rules, process, and procedures—31 pages of them, in fact. *See* New Era Rules. Indeed, in at least one respect, New Era has *more* rules and procedures than other providers: unlike JAMS, AAA, CPR, etc., New Era has a set of comprehensive procedures to litigate consumer mass arbitrations on the merits. New Era Rule 6(b). And contrary to Plaintiffs' assertions, the New Era Rules expressly allow for streamlined discovery and some motion practice, among many other things. *See id.* Rules 2(o), 2(r). Stated simply, New Era's Rules say what they say, and discovery is clearly unnecessary for the Court to determine whether they allow for adequate discovery. Plaintiffs' cherry-picked quotation from an abandoned trademark application that long predates the existence of the company as it actually launched cannot overcome this fact, and is clearly not a basis for discovery.[11]

---

[11]   Plaintiffs' arguments about New Era's alleged "bias" not only are wrong on the merits, but also are premature. "It is well established that a district court cannot entertain an attack upon the … partiality of arbitrators until *after* the conclusion of the arbitration and the rendition of an award." *Serv. Partners, LLC. V. Am. Home*

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

| | |
|---|---|
| 1 |         **d.**   <u>*New Era's Rules Allow for Discovery Consistent with*</u> |
| 2 |              <u>*Industry Standards*</u> |

3        Finally, Plaintiffs argue that the limitations on discovery in New Era's Rules

4 should give them wide-ranging discovery in this Court. Again, Plaintiffs' argument

5 is grounded in mischaracterizations of both the New Era Rules on discovery <u>*and*</u> the

6 law regarding discovery in arbitration.[12]

7        The New Era Rules provide that, because "limitations on discovery are one of

8 the primary ways efficiencies are achieved in arbitration, … discovery must be

9 narrowly tailored only to the information necessary to advancing a neutral's

10 understanding of the case." New Era Rule 2(o)(i). "Any request for discovery must

11 be submitted to the neutral, at which point the neutral has discretion to determine

12 whether it should be allowed or not." New Era Rule 2(o)(iii). Further, "if a party

13 believes an opposing party has relevant or necessary evidence that they are not

14 disclosing, they can make a request to the neutral that such evidence be provided or

15 disclosed," and the neutral will determine whether "good cause for the production

16 exists." New Era Rule 2(q)(i). The New Era Rules also provide for a document

17 exchange process, pursuant to which the neutral may allow additional exchanges "as

18 necessary to ensure a fundamentally fair process." New Era Rule 6(a)(vii)-(viii).

19        Contrary to Plaintiffs' assertions, New Era's Rules are consistent with the

20 well-established principle that "[l]imited discovery rights are the hallmark of

21

---

22 *Assurance Co.*, No. CV-11-01858, 2011 WL 2516411, at \*5 (C.D. Cal. June 20, 2011) (emphasis added); *see also* 9 U.S.C. § 10(a)(2) (FAA allows a party to an

23 arbitration to petition a court to vacate the award "where there was evident partiality or corruption in the arbitrators"). If Plaintiffs "suspect[] that [a New Era] arbitrator

24 will be impartial," the "remedy available … is to seek to vacate the award after it is rendered." *Serv. Partners*, 2011 WL 2516411, at \*5. No pre-arbitration discovery

25 is appropriate.

26 [12]     As with their other arguments, Plaintiffs make no effort to apply any purported discovery limitation to the delegation clause; again, this is fatal to their motion. *See*

27 *supra* Section III.A. Indeed, the Supreme Court held in *Rent-A-Center* that it could not consider the very argument that Plaintiffs make here—i.e., an unconscionability

28 challenge based on "limitations on discovery" in arbitration—because the plaintiff in that case (like Plaintiffs here) had not specifically applied that argument to the delegation clause. *Rent-A-Center*, 561 U.S. at 74.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

arbitration." *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 689-90 (2000).  Indeed, New Era's reasonable limits on discovery are *exactly* what arbitration is supposed to be: "a streamlined procedure." *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 983 (2010) ("[D]iscovery limitations are an integral and permissible part of the arbitration process."); *see also, e.g.*, *Poublon v. C.H. Robinson Co.*, 846 F.3d 1251, 1270 (9th Cir. 2017) ("The California Supreme Court has made clear that limitation on discovery is one important component of the simplicity, informality, and expedition of arbitration.").  "The fact that [New Era's Rules] may limit a party's discovery rights is not 'substantive unconscionability.' … [I]f limited discovery was grounds for unconscionability then every arbitration clause would be unconscionable." *Abeyrama v. J.P. Morgan Chase Bank*, No. CV 12-00445, 2012 WL 2393063, at *4 (C.D. Cal. June 22, 2012).[13]

Courts therefore routinely uphold arbitration discovery rules—like New Era's—that give the arbitrator discretion to control discovery. *See, e.g.*, *Roman v. Superior Ct.*, 172 Cal. App. 4th 1462, 1475-76 (2009) (upholding AAA rule allowing the arbitrator "to order such discovery … as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of the arbitration"); *Dotson*, 181 Cal. App. 4th at 984 ("[T]he agreement gives the arbitrator the broad discretion contemplated by the AAA rules to order the discovery needed to sufficiently litigate the parties' claims."); *Yeomans v. World Fin. Grp. Ins. Agency, Inc.*, 485 F. Supp. 3d 1168, 1188-89 (N.D. Cal. 2020)

---

[13]   Not surprisingly given that streamlined discovery is the "hallmark" of arbitration, JAMS and AAA also limit discovery.  *See, e.g.*, JAMS Arbitration Discovery Protocols, *available at* https://www.jamsadr.com/arbitration-discovery-protocols/ (last visited Apr. 26, 2022) (arbitrator must be "sufficiently assertive to ensure that an arbitration will be resolved much less expensively and in much less time that if it had been litigated in court"; "the arbitrator will set meaningful limitations" on discovery); AAA Consumer Arbitration Rule R-22(a), *available at* https://adr.org/sites/default/files/Consumer%20Rules.pdf (last visited Apr. 26, 2022) ("If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct" exchange of documents and identification of witnesses).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

1   (rejecting argument that "the arbitration agreement is substantively unconscionable

2   because '[the [agreement] only provides for discovery at the arbitrator's discretion'"');

3   *Abeyrama*, 2012 WL 2393063, at *4 (limitations on discovery "are generally legal

4   if either party can ask the arbitrator to expand discovery for good cause").[14]

5       Neither of the cases cited by Plaintiffs—*Fitz* or *O'Hanlon*—changes the

6   analysis.  Mot. at 12.  In *Fitz*, arbitrator discretion over discovery was an "inadequate

7   safety valve" only because "the arbitrator [was] constrained by an 'impossibility'

8   standard."  *Fitz v. NCR Corp.*, 118. Cal. App. 4th 702, 716-17 (2004) (rules allowed

9   arbitrator to grant discovery only if "a fair hearing would be *impossible* without" it)

10  (emphasis in original); *Carillo v. Gruma Corp.*, No. EDCV 16-2276, 2017 WL

11  11631614, at *6 (C.D. Cal. Mar. 14, 2017) (distinguishing *Fitz* on this basis);

12  *Borgarding v. JPMorgan Chase Bank*, No. CV 16-2485, 2016 WL 8904413, at *6

13  (C.D. Cal. Oct. 31, 2016) (same).   And in *O'Hanlon*, there was no standard

14  whatsoever to guide the arbitrator's discretion.  *O'Hanlon v. JPMorgan Chase Bank,*

15  *N.A.*, No. CV 15-06640, 2015 WL 5884844, at *6 (C.D. Cal. Oct. 7, 2015); *see also*

16  *Borgarding*, 2016 WL 8904413, at *6 (distinguishing *O'Hanlon* on this basis).  By

17  contrast, courts routinely uphold the "necessary" and "fundamentally fair" standards

18  for discovery set forth in New Era's Rules.  *See, e.g.*, *Roman*, 172 Cal. App. 4th at

19  1475-76 (upholding AAA rule allowing arbitrator "to order such discovery … as the

20  arbitrator considers *necessary* to a full and fair exploration of the issues in dispute,

21  consistent with the expedited nature of the arbitration") (emphasis added); *Colvin v.*

22  *NASDAQ OMX Grp., Inc.*, No. 15-cv-02078, 2015 WL 6735292, at *7 (N.D. Cal.

23  Nov. 4, 2015) (same); *Scott v. AT&T, Inc.*, No. 19-cv-04063, 2021 WL 2839959, at

24

25  [14]   Plaintiffs also complain that New Era's Terms and Conditions require users'
    acknowledgment that, in arbitration, they "forego the presentation of certain
26  evidence which might otherwise be available for presentation in a federal or state
    judicial forum or through other alternative dispute resolution services."  *See* Mot.
27  at 5, 11.  But that's equally consistent with the principle that "discovery limitations
    are an integral and permissible part of the arbitration process."  *Dotson*, 181 Cal.
28  App. 4th at 983.  There is nothing unconscionable about having users acknowledge
    that there are limits on discovery in arbitration.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

*6 (N.D. Cal. Feb. 16, 2021) (upholding AAA rule providing that arbitrator "may require the parties to exchange additional information if … such 'exchange is needed to provide for a *fundamentally fair* process") (emphasis added).

The New Era Rules governing discovery are exactly in line with other arbitration providers' rules on discovery and arbitrator discretion—and with what courts have routinely blessed.  How, then, can those rules be a basis for the discovery that Plaintiffs seek here?  They cannot.

### 3.    *Severability Is Not a Basis for Discovery*

Finally, Plaintiffs claim that they need discovery to support their argument that the portion of the Terms specifying New Era was "drafted in bad faith," and so is not severable.  Mot. at 12-13.  Plaintiffs presumably make this argument because they know the Terms are clear that, if New Era cannot conduct the arbitration for any reason (e.g., if the selection of New Era was deemed unenforceable), the arbitration will be conducted by another arbitration provider instead: (1) FairClaims or (2) an arbitration provider mutually selected by the parties.  ECF Nos. 31-29 at 9 & 31-30 at 13.  In other words, the case would still proceed in arbitration, just in front of a different arbitration provider.  In an effort to avoid this result, and achieve the result they seek here—a class action in federal court—Plaintiffs are attempting to argue that the selection of New Era is not severable from the Terms' arbitration agreement, and so renders the entire arbitration agreement (including the alternative selection of FairClaims, for example) unenforceable too.

But severability is not a basis for discovery.  Whether a contractual term in an arbitration agreement is not severable due to "bad faith" turns on whether the law was "sufficiently clear at the time the arbitration agreement was signed to lead to the conclusion that [the term] was drafted in bad faith." *Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 124 n.13 (2000).  Specifically, the court asks whether "the provision was directly contrary to settled law." *Little v. Auto Stiegler, Inc.*, 29 Cal. 4th 1064, 1076 (2003).  No discovery is required to assess "the clarity

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

24

DEFS.' OPP'N TO PLS.' MOT. FOR
ARBITRATION-RELATED DISCOVERY
CASE NO. 2:22-CV-00047-GW-GJS

1    of the law at the time" that Plaintiffs agreed to the Terms.  *Gutierrez v. Autowest,*

2    *Inc.*, 114 Cal. App. 4th 77, 93 (2003).[15]  The Court need only look at the *McGrath*

3    decision upholding DoorDash's selection of CPR and its mass claims protocol, and

4    the many cases upholding arbitration discovery limitations similar to New Era's, to

5    say definitively that the selection of New Era was not directly contrary to the law at

6    the time—and thus that Defendants did not select New Era in bad faith.  Plaintiffs'

7    argument is meritless.

8    **IV.    CONCLUSION**

9          The FAA "calls for a summary and speedy disposition of motions … to

10   enforce arbitration clauses."   *Moses H. Cone Mem'l Hosp.*, 460 U.S. at 29.

11   Plaintiffs' proposed discovery would result in the opposite: an extended period of

12   discovery into issues that—as a matter of law—have no bearing on Defendants'

13   motion to compel arbitration.  The Court should deny Plaintiffs' motion.

14

15   Dated:  April 27, 2022                    Respectfully Submitted,

16                                             LATHAM & WATKINS LLP

17                              By:  _Timothy L. O'Ma_____

18                                             Timothy L. O'Mara

19                                             505 Montgomery Street, Suite 2000
                                               San Francisco, California  94111-6538
20                                             Telephone:  +1.415.391.0600
                                               Facsimile:  +1.415.395.8095
21                                             tim.o'mara@lw.com

22                                             *Attorneys for Defendants*
                                               *Ticketmaster L.L.C. and Live Nation*
23                                             *Entertainment, Inc.*

24

25

26

27   ───────────────

     [15]    Indeed, Defendants are aware of no case in which a court deemed discovery
28   necessary to assess whether a provision in an arbitration agreement was drafted in
     bad faith and therefore not severable.