QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
  William R. Sears (Bar No. 330888)
  willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

KELLER POSTMAN LLC
  Warren D. Postman (Bar No. 330869)
  wdp@kellerpostman.com
  Albert Y. Pak (admitted *pro hac vice*)
  albert.pak@kellerpostman.com
1100 Vermont Avenue, N.W., 12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123

Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>    Plaintiffs,<br><br>    v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>    Defendants. | CASE NO. 2:22-cv-00047-GW-GJS<br><br>**REPLY IN SUPPORT OF PLAINTIFFS' MOTION FOR DISCOVERY RELATED TO WHETHER A VALID ARBITRATION AGREEMENT EXISTS**<br><br>The Honorable George H. Wu |

# **TABLE OF CONTENTS**

PRELIMINARY STATEMENT ................................................................................1

ARGUMENT .............................................................................................................4

   I.   PLAINTIFFS SEEK DISCOVERY THAT IS RELEVANT TO THEIR FORTHCOMING OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION ................................................................4

      A.   Defendants' Factual Allegations About The Fairness Of New Era Underscore The Need For Discovery .........................................................6

      B.   Severability Is An Independently Sufficient Ground For Discovery Because It Turns On Defendants' State Of Mind.....................................8

      C.   Precedent Supports The Type Of Arbitration-Related Discovery Plaintiffs Seek ..........................................................................................9

   II.   DEFENDANTS CANNOT ESCAPE DISCOVERY BY HIDING BEHIND THE DELEGATION CLAUSE.....................................................11

      A.   Plaintiffs Seek Discovery That Is Relevant Specifically To The Unconscionability Of The Delegation Clause .........................................12

      B.   Defendants Cannot Preclude Discovery By Assuming That Their Delegation Clause Will Be Found Conscionable ....................................14

CONCLUSION........................................................................................................15

# TABLE OF AUTHORITIES

**CASES**                                                                                                               **PAGE(S)**

*Armendariz v. Found. Health Psychcare Servs., Inc.*,
  24 Cal. 4th 83 (2000) ................................................................................................. 2, 8

*Bielski v. Coinbase, Inc.*,
  No. 21-07478-WHA, 2022 WL 1062049 (N.D. Cal. Apr. 8, 2022) .......... 12

*Hamby v. Power Toyota Irvine*,
  798 F. Supp. 2d 1163 (S.D. Cal. 2011) ..................................................... 1, 2

*Lim v. TForce Logistics, LLC*,
  8 F.4th 992 (9th Cir. 2021) ....................................................................... 8, 12

*McGrath v. DoorDash, Inc.*,
  No.19-CV-05279-EMC, 2020 WL 6526129 (N.D. Cal. Nov. 5, 2020).. 10, 11, 12

*Nyulassy v. Lockheed Martin Corp.*,
  120 Cal. App. 4th 1267 (2004) ..................................................................... 3

*Pinela v. Neiman Marcus Grp., Inc.*,
  238 Cal. App. 4th 227 (2015) ...................................................................... 12

*Ting v. AT&T*,
  319 F.3d 1126 (9th Cir. 2003) ............................................................ 3, 7, 13

*Walnut Producers of Cal. v. Diamond Foods, Inc.*,
  187 Cal. App. 4th 634 (2010) ...................................................................... 11

**STATUTES**

Cal. Civ. Code § 1670.5 ................................................................................... 8

## PRELIMINARY STATEMENT

The Court should permit the arbitration-related discovery that Plaintiffs seek because Defendants' motion to compel arbitration has raised factual disputes about the enforceability of Defendants' dispute-resolution provision and its delegation clause. "[A] party opposing a motion to compel arbitration is entitled to discovery relevant to the issue of unconscionability," *Hamby v. Power Toyota Irvine*, 798 F. Supp. 2d 1163, 1164 (S.D. Cal. 2011), and "the bar for relevance is low," *Oberstein, et al. v. Live Nation Entertainment, Inc, et al.*, 2:20-cv-03888 (C.D. Cal. Aug. 3, 2020), ECF 35, at 3–5.

As set forth in Plaintiffs' discovery motion, Dkt. 34-1 ("Mot."), Defendants suddenly designated New Era as their dispute-resolution provider while asking this Court to compel the *Oberstein* plaintiffs to arbitration with JAMS. They made that designation just three months after New Era launched its services; they negotiated a nonpublic subscription agreement with New Era with terms unknown to Plaintiffs; they apparently accounted for all of New Era's recurring revenues of $350,000 in 2021; they are apparently considered New Era's "anchor client" whose patronage New Era secured due to the "strong support" of their outside counsel, Latham & Watkins; and they evidently embrace New Era's view that the elimination of "discovery, motion practice and almost the entirety of all rules, process and procedure" is a way to "help[] businesses settle legal disputes" through a "mass arbitration/class action risk-reducing subscription solution." *See generally* Mot. at 3–7. That is more than enough to meet the low bar for discovery into facts that are relevant to unconscionability.

Defendants' fact-bound opposition to Plaintiffs' discovery motion, Dkt. 36 ("Opp."), confirms discovery is warranted. Defendants concede that they signed a multi-year subscription agreement with New Era in 2021, but wish to keep secret the commitments made under and around that agreement. They do not deny that they

were the only ones who signed a subscription agreement with New Era in 2021, do not deny that they were the exclusive source of New Era's $350,000 in recurring revenues last year, and do not deny that New Era considers Defendants to be its "anchor client," but speculate about how New Era must have other clients, how New Era can remain impartial despite its financial dependence on them, and how New Era will permit fair proceedings despite its previous claim that it will eliminate fundamental litigation processes. And, Defendants do not deny that their outside counsel, Latham & Watkins, supports New Era through client referrals, but state as fact that they did not draft their Terms of Use in bad faith. Discovery is necessary to settle all these factual disputes.

These factual disputes also demonstrate the need for discovery into Defendants' state of mind in drafting their dispute-resolution provision and in incorporating their private agreements with New Era into it. Drafting an arbitration agreement "in bad faith, i.e., with a knowledge of their illegality," condemns the entirety of the arbitration agreement without regard to severability. *See Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 124 n.13 (2000). The Court may infer Defendants' knowledge of the illegality of their dispute-resolution process from its facial illegality, and Plaintiffs therefore need discovery into Defendants' contract with New Era, as well as any other understandings that Defendants and New Era have reached about the way New Era will impose its unprecedented e-arbitration process, as the contract and the understandings are part of the dispute-resolution process that Defendants designed. The Court would also benefit from direct evidence of Defendants' state of mind, such as Defendants' internal deliberations and communications with New Era about their new dispute-resolution process.

Case law uniformly supports the basic rule that Plaintiffs are "entitled to discovery relevant to the issue of unconscionability." *Hamby*, 798 F. Supp. 2d at 1164 (S.D. Cal. 2011). That discovery certainly includes the full terms by which New Era and Defendants have agreed to resolve consumer disputes against

Defendants, including the private terms that Defendants refuse to disclose. But the discovery does not stop with the terms. "The paramount consideration in assessing substantive conscionability is mutuality," *Nyulassy v. Lockheed Martin Corp.*, 120 Cal. App. 4th 1267, 1281 (2004), and "[i]n determining whether an arbitration agreement is sufficiently bilateral, courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provision," *Ting v. AT&T*, 319 F.3d 1126, 1149 (9th Cir. 2003).

*Abernathy v. DoorDash, Inc.*, 3:19-cv-7545-WHA (N.D. Cal.), granted arbitration-related discovery arising out of a company's sudden forum-switch, and *McGrath v. DoorDash, Inc.*, No. 19-CV-05279-EMC (N.D. Cal.), confirmed the relevance of that discovery in assessing the unconscionability of the forum-switch. Because that discovery was granted based on a forum-switch alone, *Abernathy* and *McGrath* highlight how Defendants' unprecedented dispute-resolution process warrants arbitration-related discovery of unprecedented scope. The Court should order such discovery if and when disputes remain over scope after Plaintiffs have served their discovery requests, have reviewed objections and responses to them, and have met and conferred about the objections and productions.

Defendants' primary argument to avoid discovery—that the Court is constrained to permit only discovery that is relevant to the unconscionability of Defendants' delegation clause—misses the factual import of the discovery Plaintiffs seek and confuses the procedural posture of Plaintiffs' motion.

*First*, the information that Plaintiffs seek is relevant to the unconscionability of the delegation clause. The delegation clause, if enforced, would submit the issue of New Era's unconscionability to a New Era arbitrator. Defendants state that the New Era arbitrator would be neutral in deciding the unconscionability of New Era, but they ignore New Era's ability to cherry-pick the arbitrator who will make that decision, as well as its ability to create new e-arbitration rules at any time—just as it

created new e-arbitration rules six days before Defendants' motion to compel arbitration—that would force its bias on its arbitrators.

*Second*, Defendants cannot use their assumption that they will successfully defend their delegation clause as a basis to prohibit Plaintiffs from mounting a fact-based challenge to their dispute-resolution provision. Plaintiffs have made clear that they will argue the unconscionability of both the dispute-resolution provision and the delegation clause. Plaintiffs will make both unconscionability arguments, after discovery, in a single opposition to Defendants' motion to compel arbitration. The parties stipulated to that briefing schedule: discovery first, and one opposition after. *See* Dkt. 32. Thus, even if Plaintiffs' arguments about the unconscionability of the delegation clause were purely legal—and they are not—Plaintiffs should be permitted discovery into the facts needed to mount their unconscionability challenge to Defendants' dispute-resolution process.

The Court should grant Plaintiffs' motion for discovery related to whether a valid arbitration agreement exists.

## ARGUMENT

### I. PLAINTIFFS SEEK DISCOVERY THAT IS RELEVANT TO THEIR FORTHCOMING OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION

As set forth in the motion, Plaintiffs seek the Court's permission to obtain discovery from Defendants and New Era related to the business dealings and communications between Defendants, New Era, and Latham & Watkins regarding New Era's arbitration fees, costs, rules, and procedures, as well as New Era's financials, slate of arbitrators, and marketing of its unprecedented e-arbitration process. Because this information goes directly to the partiality of New Era, the extent to which New Era will eliminate Plaintiffs' litigation rights, and the severability of the dispute-resolution provisions currently embedded in Defendants' operative Terms of Use, Plaintiffs and the Court will be deprived of the factual

predicate needed to assess Defendants' motion to compel arbitration without that discovery. *See generally* Mot. at 8–14.

Plaintiffs' discovery motion is supported by a declaration submitted by Plaintiffs' counsel that quotes directly from an apparent letter from New Era to its investors. Plaintiffs' counsel has personal knowledge of that document, which counsel believes to be a letter from New Era to its investors. *See* Supplemental Declaration of Albert Y. Pak in Support of Plaintiffs' Motion for Discovery Related to Whether a Valid Arbitration Agreement Exists ("Pak Supp. Decl.") ¶ 2. In opposing Plaintiffs' motion, Defendants urge the Court (Opp. at 18–19 & n.8) to disregard Plaintiffs' counsel's declaration by citing the evidentiary standard for post-discovery summary judgment motions. Personal knowledge may be the evidentiary standard for declarations made after discovery has been conducted, but it is not the standard for declarations submitted before any discovery has occurred. In this pre-discovery stage, Plaintiffs' counsel's declaration is adequately made on personal knowledge "as far as possible." *See* C.D. Cal. L.R. 7-7.[1]

In any case, Defendants do not specifically deny any of the statements made in Plaintiffs' counsel's declaration, and instead advance fact-bound arguments and cases that grant arbitration-related discovery—all confirming the propriety of the sought-after discovery.

---

[1] Paragraphs 8 and 9 of the Pak Declaration contain statements made on personal knowledge, except for two statements made on information and belief, both of which are confirmed by public sources. First, a news report from 2017 about Latham & Watkins' representation of Soho House Group confirms that Soho House Group is a longtime client of Latham & Watkins. *See* Exhibit A, Alex Berry, *Latham and Freshfields check in for Soho House debt refinancing*, Law.com (Apr. 27, 2017). Second, Mr. Jordan M. Litwin's public profile confirms that he previously practiced law with Latham & Watkins. Litwin Law, *Our Team*, https://bit.ly/3vERvQU.

### A. Defendants' Factual Allegations About The Fairness Of New Era Underscore The Need For Discovery

In opposing discovery, Defendants have asserted six pages of "Factual Background" (Opp. at 4–10) and eight pages of fact-bound arguments (Opp. at 16–24) concerning New Era's purported fairness and impartiality. All this demonstrates the appropriateness of discovery.

*First*, Defendants concede (Opp. at 9) that they negotiated and entered into a contract with New Era about the terms under which New Era will deliver its unprecedented e-arbitration process to Defendants. Defendants refuse to produce that contract and their communications with New Era about it, but they do not deny that they paid New Era $350,000 in 2021 pursuant to that nonpublic contract. Defendants then speculate (Opp. at 17) that New Era must have other clients who constitute other "source[s] of business," but they do not deny that Defendants were the only ones who signed a subscription contract with New Era in 2021. Defendants also assert (Opp. at 17) that "New Era's role is administrative," but they will not allow Plaintiffs to assess whether the commitments made in and around Defendants' nonpublic contract with New Era are, in fact, purely administrative. Finally, Defendants state (Opp. at 18) that the parties will be able to select an impartial neutral, but they ignore that they will be able to choose their neutral from a handful of candidates who are selected "in New Era's sole discretion," *see* New Era Rule 2(j); that "New Era ADR shall make the final determination whether, in its sole discretion," a party's objection to a candidate shall be granted, *see* New Era Rule 2(k)(iii); and that "New Era ADR may also otherwise replace a neutral at its sole discretion," *see* New Era Rule 2(k)(iv). Defendants' factual assertions underscore the factual disputes about New Era's impartiality.

*Second*, Defendants speculate (Opp. at 18–20) that New Era arbitrators' ownership of New Era is factually analogous to a third of JAMS arbitrators' partial

ownership of JAMS. Discovery is needed to probe whether that factual analogy will withstand scrutiny. It is unknown how many of the New Era arbitrators own shares of New Era and how large those holdings are. Moreover, New Era is a tech start-up whose revenues may be entirely derived from Defendants. A New Era arbitrator may be asked to hold unconscionable the entirety of New Era's business model of providing unprecedented e-arbitrations, which holding would zero out the value of that New Era arbitrator's investment in New Era. By comparison, JAMS is an established organization with a diversified $200 million revenue base.

*Third*, Defendants try to distance New Era from its statement that its e-arbitration process "removes discovery, motion practice and almost the entirety of all rules, process and procedure" by asserting (Opp. at 20) that New Era made that statement "long before New Era was even founded as a company." In fact, New Era made that statement on February 20, 2020. U.S. Trademark Application No. 88688582 (New Era ADR Inc, Applicant, Feb. 20, 2020) ("New Era Response to Office Action"), https://bit.ly/3j2wQ21. That New Era subsequently abandoned its trademark application reflects the merits of its attempt to trademark the phrase "e-arbitration." But the attempt itself also sheds light on just how unprecedented New Era wants its e-arbitration process to be. Accordingly, discovery is appropriate to "examine the actual effects" of New Era's rules. *Ting*, 319 F.3d at 1149.

*Fourth*, Defendants make factual comparisons (Opp. at 21–24) between the sort of discovery that New Era would permit and the sort of discovery that more established forums would permit.[2] But these untested factual predictions ignore that New Era believes itself to be providing "a whole new way of doing arbitration . . . that removes discovery, motion practice and almost the entirety of all rules, process

---

[2] Defendants also cite cases that say that limited discovery rights are a feature of traditional, bilateral arbitration. Setting aside whether Defendants have fairly characterized those cases, it is highly revealing that, in opposing Plaintiffs' motion for arbitration-related discovery on the basis that Plaintiffs can receive that discovery in arbitration, Defendants are touting the extent to which arbitration limits discovery.

and procedure," leading to "an entirely new digital form of arbitration that eschews traditional arbitration rules and convention." New Era Response to Office Action, https://bit.ly/3j2wQ21. Discovery is appropriate to test how New Era intends to achieve its vision, including whether it plans to impose further rules that limit discovery. This is especially true, given that New Era's current rules were published on March 2, 2022, just six days before Defendants filed their motion to compel arbitration in this case.

Defendants' factual allegations collectively underscore the numerous factual disputes that meet the low bar for relevance for discovery into unconscionability. "When it is claimed . . . that the contract or any clause thereof may be unconscionable the parties shall be afforded a reasonable opportunity to present evidence as to its commercial setting, purpose, and effect to aid the court in making the determination." Cal. Civ. Code § 1670.5(b).

### B. Severability Is An Independently Sufficient Ground For Discovery Because It Turns On Defendants' State Of Mind

Defendants agree that "an unconscionable arbitration term should [] not be severed if drafted in bad faith," *Lim v. TForce Logistics, LLC*, 8 F.4th 992, 1005–06 (9th Cir. 2021), but they attempt (Opp. at 24–25) to recast their bad faith as a purely legal issue that obviates the need for discovery. That attempt fails for two reasons.

*First*, whether Defendants drafted their dispute-resolution provision, its delegation clause, and the New Era processes incorporated into it "in bad faith, i.e., with a knowledge of their illegality," is a quintessentially factual question about Defendants' state of mind. *See Armendariz*, 24 Cal. 4th at 124 n.13 (2000). To assess that mental state, Plaintiffs should be permitted discovery of Defendants' internal deliberations, and their communications with New Era, about their new, unprecedented e-arbitration process.

*Second*, while the Court may infer Defendants' bad faith from the patent illegality of Defendants' new dispute-resolution procedures, Defendants concede that

they negotiated and entered into a private agreement with New Era that governs the new dispute-resolution process. Discovery is necessary to uncover that agreement. It is impossible to assess how unlawful Defendants' Terms are without assessing Defendants' agreement with New Era about how New Era would conduct its unprecedented e-arbitrations under those Terms.

### C. Precedent Supports The Type Of Arbitration-Related Discovery Plaintiffs Seek

After refusing to engage in any discovery, *see* Pak Decl. ¶ 12, Defendants now mischaracterize the authorities that support Plaintiffs' discovery motion in an effort to limit the scope of arbitration-related discovery to one category of document requests and one Rule 30(b)(6) deposition. Case law imposes no such limit. And in any event, the Court does not need to decide the precise contours of Plaintiffs' arbitration-related discovery at this juncture. The Court should first permit Plaintiffs to serve their discovery requests, to review the productions and objections, and to meet and confer about the scope of appropriate discovery—reserving judgment on specific disputes about scope until they are ripe for adjudication.

In *Abernathy*, the Court ordered arbitration-related discovery after DoorDash suddenly switched from one established arbitral forum to another, commenting: "[I]t would be an important fact, to me at least, on unconscionability if in order to get away from [one arbitral forum], you ran off to [a different arbitral forum] and cooked up some custom made deal, and then—and then you really wrote the terms yourself[.]" See *Abernathy*, 3:19-cv-7545-WHA (N.D. Cal.), ECF No. 67 at 65. The plaintiffs there deposed the President and CEO of CPR, the new arbitral forum, after receiving substantial document production from CPR showing communications between CPR, DoorDash, and Gibson Dunn regarding CPR's new rules. *See, e.g.*, *Abernathy*, ECF 162-4, at 19–20 (internal email from CPR's CEO) ("Door Dash [sic] and Gibson, Dunn [sic] are frustrated . . . and want to explore application of our non-administered rules in these circumstances so as to avoid a filing fee altogether. . . . I

would like to explore a way to work on this because it . . . could be an important source of funding going forward.").

Here, the proper scope of discovery is broader. Like in *Abernathy*, Defendants suddenly changed their Terms of Use to switch dispute-resolution forums. But unlike in *Abernathy*, Defendants' newly designated forum is not an equally established arbitral forum, but instead a tech startup that unleashed its unprecedented e-arbitration process in April 2021, three months before it was incorporated into Defendants' Terms of Use. Further, unlike in *Abernathy*, Defendants concede that they negotiated and entered into a nonpublic contract with New Era about the terms under which New Era's e-arbitration will proceed. And, unlike in *Abernathy*, Defendants do not deny that they paid New Era $350,000 in 2021 or that their payment constituted the entirety of New Era's recurring revenues in 2021, such that New Era believes Defendants to be its "anchor client." The proper scope of arbitration-related discovery in this case, when the issue is properly presented to this Court, should reflect the unique factual disputes created by Defendants' contractual relationship with New Era and by New Era's apparent financial dependence on Defendants.

But the issue is not yet ripe for resolution. For now, the Court should allow Plaintiffs to serve arbitration-related discovery, so that Plaintiffs can assess the discovery responses and meet and confer about any specific objections to the discovery sought. This is the same procedure that the Court endorsed in *Oberstein*.

*McGrath*, 2020 WL 6526129, confirms the propriety of arbitration-related discovery. In *McGrath*, the Court demonstrated the kind of fact-intensive analysis that is required to analyze the potential existence of "systematic bias" in favor of Defendants:

> Plaintiffs' position [on the conscionability of the delegation clause] is not persuasive *as a factual matter*. While Plaintiffs have a fair concern about Gibson Dunn's initiating contact with CPR and its involvement in the development of the Mass-Claims Protocol (*which might give rise to a systemic bias*), the record in *Abernathy* indicates that CPR *did not*

*work with Gibson Dunn exclusively* and that *Gibson Dunn did not otherwise control the development of the Protocol*.

*McGrath v. DoorDash, Inc.,* No. 19-CV-05279-EMC, 2020 WL 6526129 at *10 (N.D. Cal. Nov. 5, 2020) (emphases added); *Walnut Producers of Cal. v. Diamond Foods, Inc.,* 187 Cal. App. 4th 634, 644 (2010) (observing that "numerous factual inquiries bear upon the question" of unconscionability). *McGrath* makes clear that the factual information Plaintiffs seek is relevant to the unconscionability of Defendants' delegation and dispute-resolution process.

In a footnote (Opp. at 16 n.7), Defendants urge the Court to ignore the many other cases that authorize arbitration-related discovery. Defendants quarrel with these cases because they did not authorize the exact type of arbitration-related discovery that Plaintiffs seek here. But this overlooks that Defendants' conduct here is unprecedented. Defendants themselves take pains (Opp. at 7–10) to highlight the unique nature of New Era's "mass arbitration/class action risk-reducing subscription solution." Defendants cannot and do not point to a single case where the party compelling arbitration negotiated and refused to disclose a private agreement with the arbitral forum regarding the terms of the arbitration that would be compelled. Of course, no Court has authorized discovery that fits the unprecedented and undisclosed e-arbitration process that Defendants and New Era tout: for good reason, no neutral forum has ever attempted to impose such a burden on individual consumers.

## II. DEFENDANTS CANNOT ESCAPE DISCOVERY BY HIDING BEHIND THE DELEGATION CLAUSE

Defendants' other argument for avoiding arbitration-related discovery (Opp. at 10–13, 21 n.12) is that the unconscionability of Defendants' new dispute-resolution process is delegated to New Era, and that any discovery related to the unconscionability of that process must be sought in New Era, the forum that is alleged to be unconscionable. That ignores that many of Plaintiffs' unconscionability

arguments—including that New Era is systematically biased—would invalidate *both* the delegation clause *and* the rest of the dispute-resolution provision. It also ignores that it would be inefficient, impractical, and contrary to parties' stipulation to bifurcate discovery to focus exclusively on the delegation clause (as Defendants suggest), since Plaintiffs will argue that the rest of the dispute-resolution provision is unconscionable for additional reasons as well.

### A. Plaintiffs Seek Discovery That Is Relevant Specifically To The Unconscionability Of The Delegation Clause

The discovery that Plaintiffs seek is relevant to the unconscionability of the delegation clause. If New Era is a fundamentally unfair forum that plans to administer its rules to protect its "anchor client," the question of arbitrability cannot be delegated to it. *See Lim*, 8 F.4th at 1002–03. As noted, apparent New Era investor communications indicate that New Era's business will grow or wither based on its retention of Defendants' existing subscription revenues. This incentivizes New Era, either unilaterally or at Defendants' direction, to "impose[] an unfair burden" on any adverse party by administering pre-arbitration processes, such as the arbitrator selection, in Defendants' favor. *See Bielski v. Coinbase, Inc.*, No. 21-07478-WHA, 2022 WL 1062049, at *2–6 (N.D. Cal. Apr. 8, 2022) (citing *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 246 (2015)).

This results in "systematic bias" which renders delegation unconscionable as a matter of law. *See McGrath*, 2020 WL 6526129, at *10 (observing that "systematic bias" can defeat the validity of a "delegation clause" because it deprives a party of a "fair and impartial arbitral forum"). This is also a unique case—unlike run-of-the-mill challenges to arbitrator impartiality, Plaintiffs here fundamentally challenge New Era's novel business model, including New Era's ability to choose the arbitrator at its discretion and to require that the arbitrator follow New Era's biased rules.

The alleged facial neutrality of Defendants' delegation clause does not change the result. "In determining whether an arbitration agreement is sufficiently bilateral,

courts assessing California law look beyond facial neutrality and examine the actual effects of the challenged provision." *Ting*, 319 F.3d at 1149.

Nor does such facial neutrality eliminate concerns about arbitrator bias. New Era chooses the panel of candidate neutrals from which the parties must select their neutral: "New Era ADR will provide a panel [of neutrals]," New Era Rule 6(b)(iii)(1)(b), who are selected specifically for "the dispute at issue, in New Era ADR's sole discretion," New Era Rule 2(j). If a party challenges one or all of the candidate neutrals, "New Era ADR shall make the final determination whether, in its sole discretion, [an] objection to a neutral's impartiality requires replacement of the neutral." New Era Rule 2(k)(iii). "New Era ADR may also otherwise replace a neutral at its sole discretion." New Era Rule 2(k)(iv). And, once a neutral is selected from New Era's curated slate, any subsequent, unrelated claimant who asserts claims that present "common issues of law and fact" is stuck with that neutral, even if the subsequent claimant played no part in selecting that neutral. *See* New Era Rule 2(x), 6(b)(ii)(2)(b), 6(b)(iii)(1)(h). Plaintiffs seek discovery that is relevant to whether New Era will help Defendants cherry-pick the neutral to whom Defendants wish to delegate issues of unconscionability.

Moreover, New Era can force its arbitrators to be biased because it controls the rules that its arbitrators must apply. For example, and as set forth in Plaintiffs' motion (Mot. at 10–12), New Era severely limits consumers' discovery rights, both through its arbitration rules and through its own Terms and Conditions. New Era's arbitrators must apply these rules. Defendants agree and celebrate (Opp. at 21–22) that arbitration limits discovery. Additionally, the New Era rules came into effect just six days before Defendants filed their motion to compel arbitration in this case, and New Era can, at any point, amend its rules to add further restrictions on consumers' litigation rights. Thus, if New Era is biased in Defendants' favor, it has the ability to impose that bias on its arbitrators.

### B. Defendants Cannot Preclude Discovery By Assuming That Their Delegation Clause Will Be Found Conscionable

In any event, Defendants cannot escape discovery by presupposing that the Court will reject Plaintiffs' forthcoming challenges to the unconscionability of the delegation clause. The unconscionability of Defendants' dispute-resolution provision is delegated to New Era only if this Court holds that that delegation is enforceable. As Plaintiffs plainly state in their discovery motion (Mot. at 14), "Plaintiffs will argue that the delegation clause in Defendants' Terms of Use is 'unenforceable [because] the delegation itself is unconscionable.'" Plaintiffs will present that argument when they oppose Defendants' motion to compel arbitration, with the benefit of any discovery they receive.[3]

Even if the Plaintiffs were seeking information that is relevant exclusively to the unconscionability of the dispute-resolution process—and, as set forth below, Plaintiffs are seeking information that is also relevant to the unconscionability of the delegation—Plaintiffs should still be permitted that information now. After discovery, when Plaintiffs oppose Defendants' motion to compel arbitration, Plaintiffs will need to be prepared to argue the unconscionability of both the delegation and the dispute-resolution process. Plaintiffs' unconscionability arguments with respect to the dispute-resolution process require discovery. Now is the time for Plaintiffs to gather the information they need to present their full opposition to Defendants' delegation and their dispute-resolution process.

Otherwise, these proceedings will be bifurcated, delayed, and rendered senselessly inefficient. Defendants apparently believe that arbitration-related discovery ought to be limited to the discovery that is relevant specifically to the unconscionability of Defendants' delegation clause, so that the parties can thereafter

---

[3] Defendants are therefore confused when they try to fault Plaintiffs (Opp. at 10–12) for not yet having made their unconscionability challenge to the delegation clause. That challenge cannot be made until Plaintiffs oppose Defendants' motion to compel arbitration. And Plaintiffs seek discovery to support that opposition.

brief and argue the unconscionability of that delegation—and then proceed to a second round of discovery, briefs, and arguments about the unconscionability of the dispute-resolution process. This would needlessly waste the Court's time.

The parties previously recognized this point and, as a result, stipulated to a briefing schedule that rejects the bifurcation Defendants now implicitly propose. *See* Dkt. 32. Defendants' motion to compel arbitration mounts arguments about the substantive conscionability of both their dispute-resolution provision and their delegation clause. The parties stayed briefing on that motion so that Plaintiffs would have the opportunity to pursue one round of arbitration-related discovery on all issues that relate to Defendants' motion to compel arbitration, before filing one opposition to that motion. *Id.* Defendants have therefore waived any argument that the Court should bifurcate the resolution of their motion to compel arbitration.

## CONCLUSION

For the foregoing reasons, as well as the reasons set forth in Plaintiffs' motion, the Court should grant Plaintiffs' motion for discovery related to whether a valid arbitration agreement exists.

| | | |
|---|---|---|
| 1 | Dated: May 4, 2022 | Respectfully Submitted, |
| 2 | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |

By: */s/ Kevin Y. Teruya*
Kevin Y. Teruya (Bar No. 057645)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100


KELLER POSTMAN LLC


By: */s/ Warren D. Postman*
Warren D. Postman (Bar No. 330869)
wdp@kellerpostman.com
Albert Y. Pak (admitted *pro hac vice*)
albert.pak@kellerpostman.com
1100 Vermont Avenue, N.W.
12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123

*Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts*

## **ATTESTATION**

I am the ECF user whose identification and password are being used to file the foregoing Reply in Support of Plaintiffs' Motion for Discovery Related to Whether a Valid Arbitration Agreement Exists. Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, William R. Sears, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized such filing.

Dated: May 4, 2022  /s/ *William R. Sears*
  William R. Sears