1   RILEY SAFER HOLMES & CANCILA LLP
2   Joshua A. Roquemore (SBN 327121)
    jroquemore@rshc-law.com
3   100 Spectrum Center Drive, Suite 440
    Irvine, CA 92618
4   Telephone: (949) 359-5500
    Facsimile: (949) 359-5501

5   *Counsel for Nonparty New Era ADR, Inc.*

6

7

8           **IN THE UNITED STATES DISTRICT COURT**

9           **FOR THE CENTRAL DISTRICT OF CALIFORNIA**

10

11  SKOT HECKMAN, Luis Ponce, Jeanene        | Case No.: 22-cv-00047-GW-GJS
    Popp, and Jacob Roberts, on behalf of
12  themselves and all those similarly situated, | The Honorable George H. Wu

13                  Plaintiffs,

14          vs.                                | **NONPARTY NEW ERA ADR, INC.'S**
                                               | **MEMORANDUM OF LAW IN SUPPORT OF**
15  LIVE NATION ENTERTAINMENT, INC.           | **MOTION TO QUASH PORTIONS OF**
    and TICKETMASTER LLC,                     | **PLAINTIFFS' SUBPOENAS**
16
                    Defendants.               | Hearing Date:   November 7, 2022
17                                             | Hearing Time:   8:30 a.m.
                                               | Courtroom:      9D, 9th Floor
18

19  Dated: September 26, 2022                  RILEY SAFER HOLMES & CANCILA LLP

20

21                                            By:   */s/ Joshua A. Roquemore*

22                                            Joshua A. Roquemore
                                              Sandra Musumeci *(pro hac vice forthcoming)*
23                                            Sondra Hemeryck *(pro hac vice forthcoming)*

24                                            *Counsel to Nonparty New Era ADR Inc.*

25

26

27

28
                                              Case No.: 22-cv-00047-GW-GJS

# TABLE OF CONTENTS

INTRODUCTION ............................................................................................................ 1

BACKGROUND ............................................................................................................ 3

LEGAL STANDARD .................................................................................................... 6

ARGUMENT ................................................................................................................. 7

   I.   Plaintiffs' Subpoenas Should Be Quashed As To Requests No. 6, 7, 8, 10, and 13, and Topics No. 6, 7, 8, and 10 Because They Grossly Exceed the Scope of Authorized Limited Discovery and Pose Undue Burden to Nonparty New Era.................................................. 7

     A.    Plaintiffs' Challenged Subpoena Requests .................................................... 9

       1.   Request No. 6 and Topic No. 6 – (Advertising) ......................................... 9

       2.   Request No. 7 and Topic No. 7 – (Efforts to Raise Capital)...................... 11

       3.   Request No. 8 and Topic No. 8 – (Subscription Agreements with Other Customers) 12

       4.   Request No. 10 and Topic No. 10 – (All Documents Referring to a Range of New Era Business-Related Terms, as well as Plaintiffs' Counsel)............................................ 13

       5.   Request No. 13 – (New Era's Business Plans) ......................................... 15

   II.  Plaintiffs' Subpoenas Should Be Quashed As To Requests No. 8, 10, and 13, and Topics No. 8 and 10 Because They Require Disclosure of Confidential Commercial Information. 16

CONCLUSION .............................................................................................................. 19

TABLE OF CONTENTS

1

## <u>TABLE OF AUTHORITIES</u>

2

**Page(s)**

3

**Cases**

*Abernathy v. DoorDash*,
   Case No. 3:19-cv-07545-WHA (N.D.Cal.) ................................................................. 2, 3, 15

*Apple Inc. v. Qualcomm Inc.*,
   No. 17-108, 2018 WL 3861893 (S.D. Cal. Aug. 14, 2018) ..................................... 8

*Arcadian Capital, LLC v. Cura Ptrs., Inc.*,
   No. CV 20-03372-JWH, 2020 WL 8372647 (C.D. Cal. Dec. 28, 2020) ................................ 8

*Chevron Corp. v. Donziger*,
   No. 12-MC-80237, 2013 WL 4536808 (N.D. Cal. Aug. 22, 2013) .......................................... 7

*Dart Indus. Co., Inc. v. Westwood Chemical Co., Inc.*,
   649 F.2d 646 (9th Cir. 1980) ................................................................................. 7

*Gonzales v. Google, Inc.*,
   234 F.R.D. 674 (N.D. Cal. 2006) .......................................................................... 18

*Hamby v. Power Toyota Irvine*,
   798 F. Supp. 2d 1163 (S.D. Cal. 2011) ................................................................. 4

*Herbert v. Lando*,
   441 U.S. 153, 99 S. Ct. 1635, 60 L. Ed. 2d 115 (1979) ........................................ 6

*Kobold v. Good Samaritan Reg'l Med. Ctr.*,
   832 F.3d 1024 (9th Cir. 2016) ............................................................................... 7

*Moon v. SCP Pool Corp.*,
   232 F.R.D. 633 (C.D. Cal. 2005) ...................................................................... 7, 17

*Mount Hope Church v. Bash Back!*,
   705 F.3d 418 (9th Cir. 2012) ................................................................................. 9

*In re Pioneer Corp.*,
   No. CV 18-4524-JAK-SSx, 2019 WL 5401015 (C.D. Cal. Jan. 9, 2019) ............................. 7

*Rivera v. NIBCO*,
   364 F.3d 1057 (9th Cir. 2004) ........................................................................ 7, 14

*Travelers Indem. Co. v. Metropolitan Life Insur. Co.*,
   228 F.R.D. 111 (D. Conn. 2005) ...................................................................... 7, 8

- ii -

**Statutes**

Sherman Act.................................................................................................................... 3, 4

**Court Rules**

Fed. R. Civ. P. 26(b) ......................................................................................................... 6

Fed. R. Civ. P. 30(b)(6).......................................................................................... 1, 2, 4, 5, 13

Fed. R. Civ. P. 34(a)........................................................................................................... 6

Fed. R. Civ. P. 45(c)(3) ...................................................................................................... 7

Fed. R. Civ. P. 45(d)(3)(A)(iv) ........................................................................... 6, 7, 9, 15, 19

Fed. R. Civ. P. 45(d)(3)(B)(i)................................................................................ 6, 16, 19

Nonparty New Era ADR, Inc. ("New Era") moves this Court, pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iv) and (B)(i), for an order quashing Requests for Production No. 6, 7, 8, 10, and 13 of the Subpoena Duces Tecum ("Document Subpoena"), and Topics No. 6, 7, 8, and 10 of the Subpoena to Testify at a Deposition ("Deposition Subpoena") issued to New Era by Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts (collectively "Plaintiffs").

## INTRODUCTION

Nonparty New Era is an alternative dispute resolution ("ADR") provider that offers users a fully digital platform, a slate of experienced neutrals, and a set of Rules & Procedures designed to simplify and streamline the dispute resolution process – whether for individual disputes or mass arbitrations – so that participants can get their disputes heard and resolved more quickly, efficiently, and affordably.  As a participant in the legal system and the named ADR provider in the Terms of Use at issue in this dispute, New Era has approached its involvement as a subpoenaed nonparty in the litigation discovery process with a spirit of cooperation, with pride in its product, and with nothing to hide. New Era has been – and remains – ready and willing to produce documents relevant to New Era's relationship with Defendants and their counsel, as well as submit a knowledgeable executive to a Rule 30(b)(6) deposition on like topics, even while mindful that New Era's business, processes, credibility, and neutrality will be scrutinized, questioned, and challenged.  That said, New Era is neither willing nor obliged to submit itself to the expansive "open book" discovery into New Era's business *writ large* that Plaintiffs seek here.

In granting Plaintiffs' request to conduct limited discovery to enable them to oppose Defendants' motion to compel arbitration, this Court confined the scope of discovery to the narrow issues that it will have to evaluate when it decides whether to enforce the arbitration clause in Defendants' Terms of Use: "Specifically, Plaintiffs seek discovery going towards the validity of Defendants' delegation clause in its terms of service ("TOS"), to the substantive unconscionability of Defendants' arbitration agreement, and to the severability of the dispute-resolution provisions in Defendants' TOS."  (ECF No. 50, at 1.)  This Court permitted Plaintiffs to conduct discovery in accord with the draft subpoenas submitted as exhibits in opposition to Plaintiffs' bid for discovery, but expressly noted, "the Court is not convinced that all the evidence

1  Plaintiffs seek is necessary . . . . Because the full scope of Plaintiffs' requested discovery is not
2  known to the Court, the Court is not able to grant Plaintiffs' entire request at this time." (*Id.*, at
3  4). In other words, this Court reserved its right to reject specific demands in Plaintiffs' draft
4  demands, as well as any new demands Plaintiffs might formulate.

5  In making its ruling and granting limited discovery, the Court was no doubt mindful of a
6  neighboring court's decision in the analogous case of *Abernathy v. DoorDash*, Case No. 3:19-cv-
7  07545-WHA (N.D.Cal.), which also involved class plaintiffs' efforts to obtain discovery from a
8  nonparty ADR provider for purposes of opposing a motion to compel arbitration. In *Abernathy*,
9  the court restricted the plaintiffs' discovery from nonparty Conflict Prevention and Resolution,
10 Inc. ("CPR") to CPR's voluntary production of communications between CPR, DoorDash, and/or
11 DoorDash's counsel, Gibson Dunn, as well as CPR's internal (presumably nonprivileged)
12 communications reflecting CPR's conversations with DoorDash and/or Gibson Dunn. (*See*
13 Declaration of Sandra Musumeci ("Musumeci Dec.") at ¶ 8, Ex. G, at 16.) In addition, the
14 *Abernathy* court permitted the plaintiffs to conduct a one-day deposition of a knowledgeable CPR
15 executive regarding the documents produced and the creation of the mass arbitration rules being
16 challenged. (*Id.* at 18.) Notably, the *Abernathy* court expressly ruled that discovery as to nonparty
17 CPR should be much more narrow than the thirty-plus topics and sixteen document requests in
18 the *Abernathy* plaintiffs' subpoenas: "So we will do it in a measured way, proportional to the
19 needs of the case, instead of this grossly beyond the pale." (*Id.* at 18.)

20 As in *Abernathy*, the Plaintiffs here have issued grossly overbroad demands to New Era:
21 sixteen requests for production and twelve Rule 30(b)(6) deposition topics. In fact, inexplicably,
22 Plaintiffs seek considerably ***more*** discovery from nonparty New Era than they do from
23 Defendants. Substantively, Plaintiffs' demands also go as far afield of the Court's directive for
24 limited discovery as the plaintiffs' rejected demands in *Abernathy*. For example, Plaintiffs have
25 been unrelenting in their demands for any and all of New Era's business plans, advertisements,
26 and documents used to raise capital, as well as all documents referring to mass arbitration, e-
27 arbitration, New Era's subscription agreements with customers other than Defendants, and
28 perhaps most oddly, one of the law firms representing Plaintiffs. (Musumeci Dec., at ¶ 4, Ex. C,

at Requests No. 6, 7, 10, 13.)  (Indeed, Plaintiffs' Document Subpoena also sought materials concerning all of New Era's financial transactions with any party (and not simply those with Defendants or Defendants' counsel), but Plaintiffs have backed down from that. (*Id.,* at Requests No. 14, 15.)) These requests do not relate at all to Plaintiffs' contentions as to alleged unconscionability of Defendants' arbitration clause. At the same time, compelling production of these many irrelevant categories of New Era's business materials would present an enormous intrusion and burden on nonparty New Era.

Notwithstanding the facial overbreadth of Plaintiffs' demands to New Era, New Era has already voluntarily agreed to produce much more here than the court required in *Abernathy*. New Era also engaged in multiple meet and confer sessions with Plaintiffs in an effort to reduce or reach accommodation as to some of the requests and topics. Unfortunately, the meet and confer process between New Era and Plaintiffs has laid bare Plaintiffs' true intention of attacking New Era's business as a whole. Plaintiffs have apparently interpreted the Court's grant of authority to conduct limited discovery on the issue of potential unconscionability as an invitation to probe all aspects of New Era's business: its customer lists, its investors (and potential investors), its marketing materials, its financial records and accounting, and even its strategic plans and goals for the future. The requests where New Era and Plaintiffs have reached an impasse are invasive and far afield of what may be arguably relevant to the alleged unconscionability of Defendants' arbitration clause. In several instances, they also implicate confidential commercial information belonging to New Era and its customers. Given the undue burden that these requests and topics impose – particularly in light of the more modest discovery sought from the Defendants – New Era cannot comply and moves to quash those nine requests and topics pursuant to Federal Rule 45(d)(3)(A)(iv) and (B)(i).

## **BACKGROUND**

This matter is a mass litigation involving claims by Plaintiffs, on behalf of themselves and others similarly situated, challenging Defendants Live Nation and Ticketmaster's allegedly "anticompetitive practices in violation of the Sherman Act" in connection with claims they charged "supracompetitive fees on primary and secondary ticket purchases from Ticketmaster's

online platforms." (ECF No. 1, ¶ 6.)  Movant New Era is not a party to this suit.  However, the Terms of Use underlying Plaintiffs' claims contain an arbitration clause where Live Nation and Ticketmaster have designated New Era as the forum for resolving disputes such as Plaintiffs' claims.[1]

Plaintiffs filed their Complaint on January 4, 2022.  (ECF No. 1.)  On March 8, 2022, Defendants moved to compel arbitration based upon the arbitration clause in their Terms of Use with Plaintiffs.  (ECF No. 30.)  On April 6, Plaintiffs filed a motion for discovery regarding whether a valid arbitration agreement exists in the Terms of Use. (ECF No. 34.) In particular, Plaintiffs asked the Court to authorize discovery from Defendants and New Era in connection with the threshold arbitrability issue, specifically in connection with "the validity of Defendants' delegation clause, to the substantive unconscionability of Defendants' arbitration agreement, and to the severability of all dispute-resolution provisions currently embedded in Defendants' operative Terms of Use." (ECF No. 34-1, at 3.) Plaintiffs did not specify to the Court precisely what discovery they sought.  (*Id.*)  In opposing Plaintiffs' motion for limited discovery in connection with the arbitrability question, Defendants furnished the Court with Plaintiffs' proposed draft discovery demands directed to Defendants and New Era ADR (which Plaintiffs had apparently previously shared with Defendants). (ECF No. 36, at 6-7; ECF No. 36-1 – 36-6, Exs. B-E.) Defendants highlighted the overbreadth of Plaintiffs' proposed discovery demands, which included ten separate document requests to nonparty New Era and a Rule 30(b)(6) notice spanning nine separate topics to New Era – far more than the number of requests directed to Defendants themselves.  (*Id.*)  (Notably, as a nonparty not yet served with any subpoenas, New Era had no standing to participate in these proceedings.)

On June 9, 2022, the Court issued an order granting Plaintiffs the right to conduct "limited discovery in order to oppose Defendants' motion to compel arbitration." (ECF No. 50, at 3.) After reciting and evaluating the parties' arguments in detail, and relying upon *Hamby v. Power Toyota*

---

[1] It appears Plaintiffs always intended to implicate and target New Era in this suit, as evidenced by the Plaintiffs' own Complaint, which opens not with any reference to Plaintiffs' Sherman Act claims against Defendants, but rather, with extensive discussion of New Era's April 2021 launch, subscription-based customer model, mass arbitration rules, and inclusion in Defendants' Terms of Use. (ECF No. 1, ¶¶ 1-5.)

*Irvine*, 798 F. Supp. 2d 1163, 1164 (S.D. Cal. 2011), the Court permitted Plaintiffs to conduct limited discovery but expressly noted, "the Court is not convinced that all the evidence Plaintiffs seek is necessary . . . . Because the full scope of Plaintiffs' requested discovery is not known to the Court, the Court is not able to grant Plaintiffs' entire request at this time." (ECF No. 50, at 4.).

Plaintiffs served New Era with two subpoenas on or about June 14, 2022 – the Document Subpoena and the Deposition Subpoena.[2] (Musumeci Dec. at ¶¶ 2, 4, Exs. A, C.) Both were considerably broader than the draft requests submitted with Defendants' opposition to Plaintiffs' discovery motion; Plaintiffs expanded the Document Subpoena to **sixteen** separate requests (up from ten in the draft reviewed by the Court) and the Rule 30(b)(6) Deposition Subpoena to **twelve** topics (up from nine in the draft reviewed by the Court). (*Id.*) Given the expansive scope of these requests, New Era agreed to meet and confer remotely with Plaintiffs on July 20, 2022, even before its responses and objections were due, in the hopes of narrowing the scope of the subpoenas and talking through areas of dispute. (*Id.*, at ¶ 5.) Plaintiffs did not agree at that time to narrow or withdraw any requests but did propose that it might offer search terms to narrow the scope of Request for Documents No. 10. (*Id.*)

New Era timely served its responses and objections to both subpoenas on August 1, 2022, as previously agreed with Plaintiffs. (Musumeci Dec. at ¶¶ 6–7, Exs. D–E.) New Era willingly agreed to produce documents and provide deposition testimony, without modification, in connection with multiple topics and categories of materials sought, including communications with Defendants and their attorneys at Latham & Watkins, Defendants' subscription agreements with New Era, payments from Defendants and their attorneys, current and prior published versions of New Era's Rules & Procedures, and current and prior published versions of its Term & Conditions. (*Id.*) Furthermore, New Era expressly offered to meet and confer to find accommodation with respect to several other requests, including those related to New Era's slate

---

[2] To be clear, on or about June 15, 2022, New Era learned that its registered agent had been served with the Deposition Subpoena only. (Musumeci Dec. at ¶ 2.) Upon review, it became clear that Plaintiffs had also intended to serve New Era with a subpoena for documents, as the Deposition Subpoena referenced documents to be produced by New Era. (*Id.* at Ex. A.) On June 29, New Era reached out to Plaintiffs via counsel to inquire, and New Era accepted service of the Document Subpoena by email later that same day. (Musumeci Dec. at ¶ 3, Ex. B.) The parties agreed that New Era's responses and objections would be due on August 1, 2022. (*Id.*)

of arbitrators and details about consumer arbitrations actually conducted. (*Id.*)

New Era has met and conferred with Plaintiffs multiple times following service of its responses and objections to the subpoenas, both via calls on August 9 and August 31, and through written email correspondence. (Musumeci Dec. at ¶ 8, Ex. F.) Ultimately, New Era has agreed to furnish available information as to all requests and deposition topics but for five requests for documents and four corresponding deposition topics:  Requests for Production No. 6, 7, 8, 10, and 13, and Topics No. 6, 7, 8, and 10. (*Id.*) It is these requests and topics that New Era now moves to quash pursuant to Rule 45.

## **LEGAL STANDARD**

Federal Rule of Civil Procedure 45 governs discovery of nonparties by subpoena. The scope of discovery under Rule 45 is the same as the scope under Rule 26(b). Fed. R. Civ. P. 45 Advisory Comm.'s Note (1970) ("[T]he scope of discovery through a subpoena is the same as that applicable to Rule 34 and other discovery rules."); Fed. R. Civ. P. 34(a) ("A party may serve on any other party a request within the scope of Rule 26(b)."). "[T]he requirement of Rule 26(b)(1) that the material sought in discovery be 'relevant' should be firmly applied, and the district courts should not neglect their power to restrict discovery where 'justice requires [protection for] a party ... from annoyance, embarrassment, oppression, or undue burden or expense ....*" Herbert v. Lando*, 441 U.S. 153, 177, 99 S. Ct. 1635, 1649, 60 L. Ed. 2d 115 (1979) (brackets in original).

Rule 45(d)(3)(A) sets forth the bases for a court to quash or modify a subpoena. In particular, it provides:

> [o]n timely motion, the court for the strict where compliance is required must quash or modify a subpoena that
> …
>      (iv) subjects a person to undue burden.

Fed. R. Civ. P. 45(d)(3)(A) (iv).  Additionally, a court may quash or modify a subpoena that "requires disclosing a trade secret or other confidential research, development, or commercial information."  Fed. R. Civ. P. 45(d)(3)(B)(i). "On a motion to quash a subpoena, the moving party

-6-                                                    Case No.: 22-cv-00047-GW-GJS

has the burden of persuasion under Rule 45(c)(3), but the party issuing the subpoena must demonstrate that the discovery sought is relevant." *Chevron Corp. v. Donziger*, No. 12-MC-80237, 2013 WL 4536808, at \*4 (N.D. Cal. Aug. 22, 2013) (internal citation omitted).[3]

District courts enjoy broad discretion when resolving discovery disputes, and a court's "decision to deny discovery will not be disturbed except upon the clearest showing that denial of discovery results in actual and substantial prejudice to the complaining litigant." *Kobold v. Good Samaritan Reg'l Med. Ctr.*, 832 F.3d 1024, 1047 n.16 (9th Cir. 2016) (quotation omitted). For example, it is well settled that "[d]istrict courts need not condone the use of discovery to engage in fishing expeditions." *Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004) (internal quotation marks and citations omitted)). Although discovery should not be unnecessarily restricted, necessary restrictions on discovery "may be broader when a nonparty is the target of discovery." *Dart Indus. Co., Inc. v. Westwood Chemical Co., Inc.*, 649 F.2d 646, 649 (9th Cir. 1980) (citation omitted). In the Rule 45 context, a court must "weigh the burden to the subpoenaed party against the value of the information to the serving party[.]" *Moon v. SCP Pool Corp.*, 232 F.R.D. 633, 637 (C.D. Cal. 2005) (quoting *Travelers Indem. Co. v. Metropolitan Life Insur. Co.*, 228 F.R.D. 111, 113 (D. Conn. 2005)). "In addition to the need of the requesting party for the information and the burden on the non-party in complying with the subpoena, other factors a court should consider include the relevance of the requested information and the breadth or specificity of the discovery request." *In re Pioneer Corp.*, No. CV 18-4524-JAK-SSx, 2019 WL 5401015, at \*5 (C.D. Cal. Jan. 9, 2019) (citation omitted).

## ARGUMENT

**I. Plaintiffs' Subpoenas Should Be Quashed as To Requests No. 6, 7, 8, 10, and 13, and Topics No. 6, 7, 8, and 10 Because They Grossly Exceed the Scope of Authorized Limited Discovery and Pose Undue Burden to Nonparty New Era.**

Plaintiffs have egregiously overreached with respect to the challenged subpoena requests and topics. As set forth herein, Plaintiffs effectively seek open season on New Era's business records under the pretext of conducting narrow discovery for evidence of alleged bias toward

---

[3] Federal Rule 45 was amended to its existing form in 2013; prior to that, the procedure for motions to quash a subpoena (presently under Rule 45(d)(3)) was listed under Rule 45(c)(3).

Defendants in the arbitration process, such that Defendants' arbitration clause could be deemed unconscionable. The five document requests and four corresponding deposition topics that New Era challenges seek information about New Era's contracts with customers other than Defendants; all "advertising" and promotional materials, irrespective of media, audience, time frame, product, or message; all documents used in connection with investment fundraising, without restriction; all "business plans" of New Era, again without restriction; and all documents relating or referring to a wide variety of phrases that are central to New Era's business, including "mass arbitration," "Rules & Procedures," "Terms & Conditions," "e-arbitration," subscription agreements with all customers, and even one of Plaintiffs' counsel, Keller Lenkner.  The sheer breadth and all-encompassing nature of these challenged requests and topics is inconsistent with the narrow question for which this Court authorized limited discovery:  is Defendants' arbitration clause unconscionable? The fact that these requests go beyond New Era's interactions with Defendants and far exceed the scope of discovery demands made of Defendants suggests that Plaintiffs' interest in New Era improperly goes beyond the issues in this particular litigation. Such an inquest should not be permitted.

In assessing a motion to quash under Rule 45, "[a]n evaluation of undue burden requires the court to weigh the burden to the subpoenaed party against the value of the information to the serving party[,]" *Arcadian Capital, LLC v. Cura Ptrs., Inc.*, No. CV 20-03372-JWH (ASx), 2020 WL 8372647, at *2 (C.D. Cal. Dec. 28, 2020) (citing *Travelers Indem. Co.*, 228 F.R.D. at 113), and, in particular, requires the court to consider:

> such factors as relevance, the need of the party for the documents, the breadth of the document request, the time period covered by it, the particularity with which the documents are described and the burden imposed.

*Travelers Indem. Co.*, 228 F.R.D. at 113 (quoting *U.S. v. IBM*, 83 F.R.D. 97, 104 (S.D.N.Y. 1979))."Courts have decided whether a subpoena imposes an undue burden based on the relevance of the material sought." *Apple Inc. v. Qualcomm Inc*., No. 17-108, 2018 WL 3861893, at *3 (S.D. Cal. Aug. 14, 2018). The Ninth Circuit has emphasized that courts must be "sensitive to the imposition of large discovery costs on non-parties and recognize the special need to protect

1    them." *Mount Hope Church v. Bash Back!*, 705 F.3d 418, 429 (9th Cir. 2012).

2         Here, and as explained further below, the likely relevance of the information sought to the

3    narrow questions at issue is tenuous at best, and entirely speculative. Plaintiffs demand

4    information about New Era's business generally, far beyond New Era's interactions with

5    Defendants. At the same time, the burden on nonparty New Era is profound. If New Era were to

6    comply with all of the request they challenge here, they would practically be giving Plaintiffs full

7    access to the company's books and records. Plaintiffs' requests touch upon nearly every aspect of

8    New Era's business, which poses a major disruption and intrusion for a young, growing business

9    like New Era. And indeed, the burden on New Era should be evaluated in light of the fact that it

10   has already willingly agreed to produce material in response to many of Plaintiffs' other

11   expansive discovery demands. Each of the challenged demands poses an undue burden on

12   nonparty New Era, and accordingly, the Court should grant New Era the protection that Rule

13   45(d)(3)(A)(iv) requires by quashing them.

14        **A.**    **Plaintiffs' Challenged Subpoena Requests**

15             **1.**    **Request No. 6 and Topic No. 6 – (Advertising)**

16        First, Request for Production No. 6 in the Document Subpoena and Topic No. 6 on the

17   Deposition Subpoena are grossly overbroad, vague, and irrelevant to the narrow issue of

18   unconscionability that the Court identified in allowing limited discovery. They impose an undue

19   burden on nonparty New Era and should therefore be quashed.

20        **REQUEST FOR PRODUCTION NO. 6.:**
     All DOCUMENTS used to advertise NEW ERA ADR.

21

22        **TOPIC NO. 6.:**
     YOUR advertisement of NEW ERA ADR.

23   These subpoena requests are vague, in that Plaintiffs fail to define the term "advertise," but they

24   are also facially overbroad. In common parlance, "advertisement" could encompass a wide array

25   of marketing and publicity efforts, including paid promotions, social media postings, media

26   articles, interviews, written pieces in industry journals, conference appearances, podcasts, trade

27   show displays, pamphlets, flyers, and the list goes on.  Plaintiffs likewise have failed to identify

28   any relevant audience, as "advertising" could involve potential investors, employees, neutrals,

corporate customers, attorneys, individual parties seeking ADR services, trade organizations, and more.  Plaintiffs seemingly want it all.

Regardless of the scope that Plaintiffs intended, there is also no nexus between any "advertisements" created by New Era – which, by definition, are put out on public sources, beyond New Era itself, and therefore available to Plaintiffs through other means – and Plaintiffs' allegations concerning alleged bias between New Era and Defendants that would render the arbitration clause in Defendants' Terms of Use unconscionable.  Indeed, such an expansive request for information imposes a significant burden on nonparty New Era that is disproportionate to the negligible and purely speculative value of such information to the narrow issue in the pending motion to compel arbitration.

In conferring about this request and topic, Plaintiffs contended that New Era's "advertising" would be relevant to "whether New Era tried to generate business by advertising itself as a forum that could defeat mass arbitration."  (Musumeci Dec. at ¶ 8, Ex. F.) Aside from being wholly speculative and without factual basis,[4] this explanation rings hollow and appears more of an attempted justification for a wholesale fishing expedition into New Era's broader business model. This is highlighted by the "search parameters" that Plaintiffs proposed to "address New Era's stated concerns" with Request No. 6 (as well as Requests No. 7, 10, and 13), whereby New Era would produce all documents where any of nine common business words (related to marketing and investing) appear *within 50 words* of another wide range of common words – including New Era's own name:

|  |  |
|---|---|
| ▪ "Advertis!" | ▪ "Series A" |
| ▪ "Marketing" | ▪ "Invest*" |
| ▪ "Business development" | ▪ "Funding" |
| ▪ "Pitch*" | ▪ "Capital" |
| ▪ "Outreach" |  |

W/ 50 ("New Era" or "ADR" or "mass arb*" or "Latham" or "L&W" or

---

[4] Publicly available advertising and social media materials put out by New Era – and available to Plaintiffs – make clear that New Era is actually designed to allow consumers' claims to be heard and adjudicated faster, more efficiently, and more affordably. (Declaration of Collin Williams ("Williams Dec."), at ¶ 3, Ex. A.) Furthermore, it should not be lost that New Era itself does not hear or decide any disputes. Instead, it provides parties with a slate of experienced and highly qualified neutrals from whom they can select an arbitrator. (*Id.*, at ¶ 5.) That independent arbitrator then implements New Era's Rules & Procedures on the New Era platform while hearing and deciding the parties' dispute. (*Id.*)

"Ticketmaster" or "Live Nation" or "subscription" or "filing fee!" or "discovery" or "e-arbitration")

(Musumeci Dec. at ¶ 8, Ex. F.) These proposed searches would likely increase the volume of documents to be produced while capturing an even broader array of materials untethered to the narrow issues for which discovery was authorized. Indeed, use of these "compromise" search terms would likely implicate a significant portion of business materials that New Era maintains. Such expansive and irrelevant demands – both the original Request No. 6 and the proposed search term compromise – foist undue burden on nonparty New Era. Request No. 6 and Topic No. 6 should be quashed.

## 2. Request No. 7 and Topic No. 7 – (Efforts to Raise Capital)

New Era also moves to dismiss Document Request No. 7 and Topic No. 7 on the grounds of undue burden:

> **REQUEST FOR PRODUCTION NO. 7.:**
> All DOCUMENTS used in connection with YOUR efforts to raise capital, including the efforts that led to investments from Alumni Ventures Group, Motivate Venture Capital, Purple Arch Ventures, Nextview Ventures, Jump Capital, David Kalt, Sean Chou, Pete Kadens, and/or Lon Chow.

> **TOPIC NO. 7.:**
> YOUR efforts to raise capital, including the efforts that led to investments from Alumni Ventures Group, Motivate Venture Capital, Purple Arch Ventures, Nextview Ventures, Jump Capital, David Kalt, Sean Chou, Pete Kadens, and/or Lon Chow.

Request and Topic No. 7 are both grossly overbroad and seek documents and information that are irrelevant to the narrow issue for which this Court authorized limited discovery: "Plaintiffs' allegations about the conduct between New Era and the Defendants" specifically with respect to "the drafting process of [New Era's] rules and procedures" for purposes of determining whether Defendants' delegation clause is unconscionable. (ECF No. 50 at 4-5.)  New Era's private fundraising efforts are completely untethered to the issue of whether New Era is biased in favor of Defendants and against Plaintiffs such that the arbitration clause in Defendants' Terms of Use is unconscionable. Even to the extent that New Era may have cited Defendants as a customer to potential fundraisers, that is not indicative of bias; it simply reflects a growing company heralding

its business viability and successes to encourage further growth. Plaintiffs' asserted justification is entirely speculative and requires several leaps of logic.

Further, the facial overbreadth of Plaintiffs' requests – encompassing "all documents" used in connection with any "efforts to raise capital," regardless of whether they involve Defendants or mass arbitration – casts doubt on Plaintiffs' stated justifications and instead establishes these requests as part of a far-ranging fishing expedition into New Era's business *writ large*. The Rules do not permit such an intrusion based upon Plaintiffs' mere claims of possible partiality of an arbitration clause, particularly as concerns a nonparty. These requests impose a burden not remotely proportional to their questionable probative value, and accordingly, they should be quashed.

> ### 3. <u>Request No. 8 and Topic No. 8 – (Subscription Agreements with Other Customers)</u>

New Era also moves to quash Document Request No. 8 and Topic No. 8 on the basis of undue burden. They read:

> **REQUEST FOR PRODUCTION NO. 8.:**
> All subscription agreements YOU have entered into, with DEFENDANTS or otherwise.
>
> **TOPIC NO. 8.:**
> All subscription agreements YOU have entered into, with DEFENDANTS or otherwise.

Notably, New Era only moves to quash these requests to the extent they elicit evidence about New Era's subscription agreements with customers other than Defendants. (New Era has agreed to provide evidence regarding subscription agreements with Defendants, as sought in Request No. 2 and Topic No. 2.)

New Era objects to Plaintiffs' inquiries about its subscription agreements with other customers because such information is not relevant to the narrow issue of unconscionability of Defendants' arbitration clause. In conferring about this request, Plaintiffs explained, "we need information about New Era's subscription agreements with non-Defendants to determine how significant Defendant's relationship with New Era is for New Era's business model." New Era disputes that, even as explained by Plaintiffs, information about New Era's relationship with

Defendants in comparison to its relationship with other customers is relevant and falls within the narrow scope of discovery that this Court has authorized. Nevertheless, in the interest of compromise and to avoid the need for court intervention, New Era made a voluntary offer of proof that Defendants Live Nation and Ticketmaster are not New Era's largest clients and that New Era has earned more revenue from subscription agreements with other clients. (Musumeci Decl. ¶ 8, Ex. F.) New Era further indicated that its 30(b)(6) witness would answer limited follow-up questions about that statement at deposition. (*Id.*) But upon receiving that information, Plaintiffs inexplicably reverted to their initial stance that they need more information about New Era's subscription agreements with other clients. (*Id.*)

The details of New Era's business relationships with its customers are not relevant to Plaintiffs' claims that Defendants' arbitration clause is unconscionable or any suggestion that New Era created mass arbitration rules designed to favor Defendants. *See Abernathy v. DoorDash, Inc.*, 3:19-cv-7545-WHA, ECF No. 156 at pp. 16:12-18:17, 18:24-25 (N.D. Cal) (finding that only communications between an ADR provider and defendant were relevant to the issue of unconscionability in the context of a motion to compel arbitration). Indeed, during the meet and confer process, New Era debunked Plaintiffs' theory that Defendants hold a place of primacy at New Era because they provide the bulk of New Era's financial backing. (Musumeci Decl. ¶ 8, Ex. F.) In fact, Defendants do not provide the bulk of New Era's revenue or funding. (*Id.*) In this light, Request No. 8 and Topic No. 8 are nothing more than more unauthorized demands to take a peek behind the curtain of New Era's business. The narrow issue for which this Court has permitted limited discovery does not justify such undue burden. The requests must be quashed.

**4.**   **Request No. 10 and Topic No. 10 – (All Documents Referring to a Range of New Era Business-Related Terms, as well as Plaintiffs' Counsel)**

Next, Document Request No. 10 and Topic No. 10 should be quashed because they are overbroad, duplicative of other requests, vague, and impose undue burden on New Era:

**REQUEST FOR PRODUCTION NO. 10.:**
All DOCUMENTS that REFER OR RELATE TO mass arbitration, KELLER LENKNER, YOUR Rules and Procedures, YOUR Terms and Conditions, YOUR e-arbitration process, YOUR subscription agreements with DEFENDANTS, and YOUR subscription agreements with anyone other than DEFENDANTS.

**TOPIC NO. 10:**
All DOCUMENTS produced by YOU in this action or created by YOU that REFER OR RELATE TO mass arbitration, KELLER LENKNER, YOUR Rules and Procedures, YOUR Terms and Conditions, YOUR e-arbitration process, YOUR subscription agreements with DEFENDANTS, YOUR subscription agreements with anyone other than DEFENDANTS, YOUR business plans for New Era ADR, the amounts paid by any entity or person to YOU, and the amounts paid by YOU to any entity or person.

These compound "kitchen sink" requests – like others that New Era moves to quash – confirm that Plaintiffs are blindly trawling, without legitimate basis, for any tidbits of information that they can fit into their false narrative that New Era is biased in favor of Defendants and against consumers like Plaintiffs. The Federal Rules do not require courts to allow discovery in such circumstances – especially against a nonparty. *See, e.g., Rivera*, 364 F.3d at 1072.

Upon examination, Request No. 10 repeats other requests and topics: New Era's Rules & Procedures in Request No. 4, its Terms & Conditions in Request No. 5, and its subscription agreements in Requests No. 2 and 8. But this request goes beyond those by asking not simply for Rules & Procedures, Terms & Conditions, and subscription agreements, but also seeking "all documents that refer or relate to" those topics. Furthermore, the request additionally seeks "all documents" that "refer or relate" to the term "mass arbitration," "Keller Lenkner," and New Era's "e-arbitration" process. Again, this request is vast in scope and, given that New Era is an e-arbitration ADR platform that maintains rules expressly for conducting mass arbitration, far-reaching into New Era's business. The materials that could be produced in response would go well beyond that which would even arguably be relevant to the narrow question posed regarding unconscionability. Just as with Plaintiffs' proposed search terms, this request elicits documents related to New Era's ordinary business operations as a remote-based ADR provider. Such open book discovery would impose undue burden on nonparty New Era. And the majority or totality of

discovery elicited would in no way relate to Plaintiffs' claims that New Era and Defendants worked together in a biased way to develop New Era's mass arbitration rules. In this context, Request No. 10 and corresponding Topic No. 10 typify the overbroad, unduly burden discovery requests that Rule 45(d)(3)(A)(iv) commands must be quashed.

Finally, Plaintiffs' request that New Era produce all documents referencing one of Plaintiffs' law firms – Keller Lenkner – is particularly curious.[5]  First and foremost, whether an ADR company focused on the legal industry might reference a law firm in its records is not indicative of anything. Whether New Era possesses documents referencing Keller Lenkner as a law firm has no relevance whatsoever to the question of whether New Era is biased in connection with the adjudication of ***Plaintiffs' claims***. Nor would any reference to Keller Lenkner be relevant as to whether New Era was biased in the creation of its mass arbitration rules.  Plaintiffs do not, and cannot, argue otherwise.

Because of the overbreadth of this request and the lack of nexus between the sweeping swath of materials sought and the narrow question of unconscionability of Defendants' arbitration clause, Request No. 10 and Topic No. 10 present an undue burden and must be quashed.

### 5.     Request No. 13 – (New Era's Business Plans)

Document Request No. 13 should also be quashed based on undue burden.

**REQUEST FOR PRODUCTION NO. 13.:**
DOCUMENTS sufficient to show YOUR business plans for NEW ERA ADR.

Putting aside the ambiguity of the undefined term "business plans," Request No. 13 is patently improper and would elicit an exceedingly overbroad array of sensitive business documents bearing no relation to the narrow scope of discovery the Court has authorized.  New Era is a remote ADR platform with its own set of procedural rules and a panel of qualified neutrals to hear, mediate, adjudicate, and settle a variety of disputes. (Williams Dec., ¶ 2.) Plaintiffs' claims are but a small fraction of the types of disputes that New Era can address. (*Id.* at ¶ 4.) In fact,

---

[5] Plaintiffs' focus on the law firm of Keller Lenkner itself prompts questions about whether Plaintiffs' counsel are truly representing the interest of the individual Plaintiffs and their specific claims, or rather, whether they are defending the interests of counsel at Keller Lenkner, whose business model focuses on bringing consumer claims *en masse* under an arbitration cost model that New Era does not follow.

New Era handles individual disputes and Title IX proceedings as well as mass arbitrations. (*Id.*) Plaintiffs' request for nonparty New Era's "business plans," without qualification in the context of limited discovery to oppose a narrow motion to compel arbitrability, bespeaks Plaintiffs' goal of using this limited discovery to attempt to get full visibility into New Era's business records and future plans. There is no legal justification in this litigation for such an intrusion, particularly on a nonparty.[6]

Further, even a more limited request seeking "business plans" related specifically to mass arbitrations would be overbroad. Generally, business plans (which, again, Plaintiffs do not define in their subpoena) relate to strategy, aspirations, and plans for the future. A company's statement of future intent – even if from the past – is not probative of what that company may or may not have actually done. The request is simply another instance of speculation and "what-if" fishing. Request No. 13 should be quashed.

## II. Plaintiffs' Subpoenas Should Be Quashed as To Requests No. 8, 10, and 13, and Topics No. 8 and 10 Because They Require Disclosure of Confidential Commercial Information.

The Court should also quash Plaintiffs' Requests for Production No. 8, 10, and 13, and Deposition Topics No. 8 and 10 pursuant to Rule 45(d)(3)(B)(i) because these requests would require New Era to disclose sensitive and confidential commercial information – both its own and potentially that of its customers. To be clear, Federal Rule 45(d)(3)(B)(i) empowers the district court to quash a subpoena that would require disclosure of confidential commercial information to protect a person subject to or affected by a subpoena. *See* Fed. R. Civ. P. 45(d)(3)(B)(i). Here, several of Plaintiffs' subpoena requests do just that.

First, most obviously, Requests for Production No. 8 and 10 (and corresponding Topics No. 8 and 10) would have New Era disclose information about its subscription agreements with customers other than Defendants, who have no relation to this lawsuit whatsoever. This would

---

[6] In meeting and conferring, Plaintiffs have tried to justify this request by citing New Era's statements that it provides "a whole new way of doing arbitration." (Musumeci Dec. ¶ 8, Ex. F (citing ECF No. 34-1 at 1)). This statement fails to provide a sufficient basis for delving into New Era's strategy and business plans (to the extent they even exist). A company has a right to innovate, and there is nothing about New Era's alleged statement touting innovation that would suggest improper conduct by New Era in connection with Defendants' arbitration clause. Whether New Era's business model aligns with the business model of *Plaintiffs' counsel* is not an issue before this Court, nor is it a proper topic or grounds for discovery here.

involve sensitive commercial information, not just about nonparty New Era, but also about the nonparty customers themselves, including the prices they paid for dispute resolution services, the volume of dispute resolution service they projected they might need annually, and their identities as subscribers of New Era service (which may or may not already be in the public realm). This Court has already quashed subpoenas to protect nonparties' confidential commercial information in similar circumstances. *See Moon*, 232 F.R.D. at 638 (quashing subpoena request pursuant to Rule 45 on grounds that it improperly seeks commercial information where request elicits documents related to nonparty subpoena recipient's business relationship with other nonparties, rather than the nonparty recipient's relationship with defendant).

Importantly, New Era treats subscription information as highly sensitive and confidential in its normal course of business and takes precautions to protect the confidentiality of its own proprietary business information and commercially-sensitive information pertaining to its customers. (Williams Decl., at ¶ 6.) While the identity of some of its customers is ascertainable because, for example, those customers cite New Era as the ADR provider in their arbitration clauses, or in other occasions, because that customer has expressly consented to New Era citing the relationship in promotional pieces, New Era never discloses the subscription fee and schedule that a particular customer is required to pay. (*Id.*) In fact, even within New Era, subscription agreement pricing information is made available to staff on a need-to-know basis, and it is stored on a secure cloud-based network that requires invitation provided only to staff and uses password and 2FA-based security. (*Id.*, at ¶ 7.) Importantly, New Era negotiates its subscription agreements with customers individually, on a case-by-case basis, and it would harm New Era's ability to negotiate and compete in the marketplace if subscription pricing data were available for other potential customers or competitors to review. (*Id.*) Further, all New Era employees are required to sign and abide by strict confidentiality provisions with respect to their access to commercially sensitive information. (*Id.*, at ¶ 8.)  In short, New Era takes seriously the confidentiality of its own commercial data, as well as the data of its customers and potential customers.  Disclosure of such information to Plaintiffs and their counsel – even with the protections of a protective order – would grossly undermine these efforts and harm New Era's business. (*Id.*, at ¶ 6–8.)

1      Given New Era's showing that the requested discovery concerning its subscription

2  agreements with customers other than Defendants is confidential commercial information,

3  Plaintiffs bear the heavy burden of showing a "substantial need for the testimony or material that

4  cannot be otherwise met without undue hardship and assures that the person to whom the

5  subpoena is addressed will be reasonably compensated." *See Gonzales v. Google, Inc.*, 234

6  F.R.D. 674, 684 (N.D. Cal. 2006). Further, "[t]he determination of substantial need is particularly

7  important in the context of enforcing a subpoena when discovery of trade secret or confidential

8  commercial information is sought from non-parties." *Gonzales*, 234 F.R.D. at 685 (citing *Mattel,*

9  *Inc. v. Walking Mountain Prod.*, 353 F.3d 792, 814 (9th Cir.2003)). Plaintiffs cannot show

10 substantial need here. As already noted, the subscription details for New Era's other customers

11 are irrelevant to the unconscionability of Defendants' arbitration clause.

12     Likewise, Plaintiffs' gambit to obtain materials concerning New Era's "business plans," as

13 sought in Request No. 13, should be quashed because it too seeks protected confidential

14 commercial information. To the extent that New Era maintains planning and analytical documents

15 that might be termed "business plans," those materials are securely maintained within New Era

16 and not shared outside the company, pursuant to the safeguards previously described. (Williams

17 Decl., at ¶¶ 7-9.) And for the reasons cited in the prior discussion about undue burden, Plaintiffs

18 cannot establish a substantial need for aspirational business plan information in connection with

19 the narrow issue being decided in connection with Defendants' motion to compel arbitration. The

20 Court should grant New Era's motion to quash on these grounds as well.

**CONCLUSION**

For all of the foregoing reasons, the Court should grant nonparty New Era ADR, Inc.'s motion to quash pursuant to Federal Rule of Civil Procedure 45(d)(3)(A)(iv) and (B)(i), as to Requests for Production No. 6, 7, 8, 10, and 13 of the Subpoena Duces Tecum, and Topics No. 6, 7, 8, and 10 of the Subpoena to Testify at a Deposition issued to New Era by Plaintiffs.

Dated: September 26, 2022

Respectfully Submitted,

RILEY SAFER HOLMES & CANCILA LLP

By:   */s/ Joshua A. Roquemore*
     Joshua A. Roquemore (SBN 327121)
     jroquemore@rshc-law.com
     100 Spectrum Center Drive, Suite 440
     Irvine, CA 92618
     Telephone: (949) 359-5500
     Facsimile: (949) 359-5501

     Sandra L. Musumeci (*pro hac vice forthcoming*)
     smusumeci@rshc-law.com
     136 Madison Avenue, 6th Floor
     New York, NY  10016
     Telephone:  (212) 660-1000
     Facsimile:  (212) 660-1001

     Sondra A. Hemeryck (*pro hac vice forthcoming*)
     shemeryck@rshc-law.com
     70 West Madison Street, Suite 2900
     Chicago, IL  60602
     Telephone:  (312) 471-8700
     Facsimile:  (312) 471-8701

     *Counsel for Nonparty New Era ADR, Inc.*