QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
  William R. Sears (Bar No. 330888)
  willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:   (213) 443-3100

KELLER POSTMAN LLC
  Warren D. Postman (Bar No. 330869)
  wdp@kellerpostman.com
  Albert Y. Pak (admitted *pro hac vice*)
  albert.pak@kellerpostman.com
1100 Vermont Avenue, N.W., 12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123

Attorneys for Plaintiffs Skot Heckman,
Luis Ponce, Jeanene Popp, and Jacob
Roberts, on behalf of themselves and all
those similarly situated

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>        Plaintiffs,<br><br>        v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>        Defendants. | CASE NO. 2:22-cv-00047-GW-GJS<br><br>**OPPOSITION TO NEW ERA ADR, INC.'S MOTION TO QUASH PORTIONS OF PLAINTIFFS' SUBPOENAS**<br><br>The Honorable Gail J. Standish<br><br>Hearing Date:  November 7, 2022<br>Hearing Time:  3:00 pm |

# **TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................. 1

BACKGROUND ...................................................................................... 3

    A.   Plaintiffs' Lawsuit Against Defendants ......................................... 3

    B.   Defendants' Decision to Switch from JAMS to New Era ...................... 3

    C.   Plaintiffs' Subpoenas .................................................................. 5

LEGAL STANDARD ............................................................................... 7

ARGUMENT ........................................................................................... 7

I.     PLAINTIFFS' SUBPOENA SEEKS RELEVANT INFORMATION ............. 7

    A.   Request No. 6 and Topic No. 6 (Advertising) Seek Relevant Information ................................................................................. 8

    B.   Request No. 7 and Topic No. 7 (Efforts to Raise Capital) Seek Relevant Information ................................................................. 9

    C.   Request No. 8 and Topic No. 8 (Subscription Agreements with Other Customers) Seek Relevant Information ................................ 9

    D.   Request No. 10 and Topic No. 10 (Documents Regarding Mass Arbitration, Plaintiffs' Counsel, New Era's Rules and Procedures and Terms and Conditions, New Era's Arbitration Process, and New Era's Subscription Agreements) Seek Relevant Information ...... 11

    E.   Request No. 13 (Documents Sufficient to Show Business Plans) ........ 12

II.    NEW ERA'S BURDEN OBJECTIONS FAIL ............................................. 13

III.   NEW ERA'S CONFIDENTIALITY ARGUMENTS FAIL ......................... 14

IV.   NEW ERA'S MOTION IS UNTIMELY ................................................. 15

CONCLUSION ....................................................................................... 15

# TABLE OF AUTHORITIES

**CASES** **Page**

*Apple, Inc. v. Samsung Elecs. Co.*,
    2013 WL 1942163 (N.D. Cal. May 9, 2013) ................................................... 13

*Auto Club Family Ins. Co. v. Ahner*,
    2007 WL 2480322 (E.D. La. Aug. 29, 2007)..............................................13-14

*City of St. Petersburg v. Total Containment, Inc.*,
    2008 WL 1995298 (E.D. Pa. May 5, 2008) .............................................. 13, 14

*DeGeer v. Gillis*,
    755 F. Supp. 2d 909 (N.D. Ill. 2010)........................................................... 13

*Gonzales v. Google*,
    234 F.R.D. 674 (N.D. Cal. 2006) ...................................................................... 1

*Martinez v. City of Maywood*,
    2010 WL 11519585 (C.D. Cal. July 12, 2010) ...........................................6-7

*Martinez v. Optimus Props., LLC*,
    2017 WL 11631999 (C.D. Cal. May 9, 2017)................................................... 8

*Messick v. Novartis Pharms. Corp.*,
    747 F.3d 1193 (9th Cir. 2014)........................................................................ 7

*Moon v. SCP Pool Corp.*,
    232 F.R.D. 633 (C.D. Cal. 2005)................................................................... 15

*Newton v. Clearwire Corp.*,
    2011 WL 4458971 (E.D. Cal. Sept. 23, 2011) ............................................. 12

*Nutrition Distrib. LLC v. Black Diamond Supplements LLC*,
    2018 WL 1109556 (D. Ariz. 2018) ................................................................ 15

*Odyssey Reins. Co. v. Nagby*,
    2018 WL 1963665 (S.D. Cal. Apr. 26, 2018) ............................................... 15

*Packaging Corp. of Am. v. Bonert's, Inc.*,
    2019 WL 1123165 (C.D. Cal. Mar. 11, 2019) .............................................. 15

*PHL Variable Ins. Co. v. Alan Wollman Ins. Tr.*,
    2010 WL 2836388 (D. Del. July 16, 2010).................................................... 15

*Table de France, Inc. v. DBC Corp.*,
  2019 WL 6888043 (C.D. Cal. Aug. 1, 2019) ....................................................14

*Tater v. City of Huntington Beach*,
  2021 WL 4735015 (C.D. Cal. June 7, 2021)......................................................7

*In re Third Party Subpoena of Am. Suzuki Motor Corp.*,
  2012 WL 12903125 (C.D. Cal. Oct. 17, 2012) ................................................14

*V5 Techs. v. Switch, Ltd.*,
  332 F.R.D. 356 (D. Nev. 2019) ........................................................................13

## **TREATISES**

WRIGHT & MILLER, FED. PRAC. & PROC. CIV. § 2463.1 (3d ed. Apr.
  2022) ................................................................................................................7

## **PRELIMINARY STATEMENT**

This Court authorized Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts (collectively, "Plaintiffs") to pursue discovery from Defendants Live Nation Entertainment, Inc. and Ticketmaster LLC ("Defendants") and New Era ADR, Inc. ("New Era") regarding whether New Era—Defendants' new and untested arbitration provider—is biased and its rules and procedures are unconscionable.  ECF No. 50.  In the midst of a prior lawsuit, *Oberstein v. Live Nation Entertainment, Inc.*, 20-cv-03888 (C.D. Cal.) ("*Oberstein*"), Defendants switched from JAMS, an established arbitration provider, to New Era, a two-year-old start-up that touts its ties to Defendants and has little experience administering arbitrations.  Defendants did so because they wanted to deter mass arbitrations, whereby many Plaintiffs file individual arbitrations in an effort to vindicate their rights—essentially calling a large company's bluff that consumers will not arbitrate individually what they would otherwise pursue via a class action.  Indeed, Defendants switched from JAMS to New Era *after* Keller Postman, Co-Lead Counsel here and a firm that has pioneered the mass arbitration strategy, entered an appearance in *Oberstein*.  Moreover, Plaintiffs highlighted credible evidence that Defendants serve as a critical anchor client for New Era.  The Court found this "troubling" and authorized discovery into whether New Era is biased and its Rules and Procedures are unconscionable.  ECF No. 50 at 4.

New Era now seeks to flaunt the Court's Order by producing only cherry-picked materials that it selected through a black-box search process.  This Court should reject New Era's attempt to render the Court's Order meaningless and deny New Era's Motion to Quash ("Motion", ECF No. 72) for four reasons.

*First*, all of the discovery requests New Era moved to quash seek clearly relevant information.  They target business plans, advertisements, and internal documents discussing Plaintiffs' counsel, mass arbitration, and New Era's rules—all of which go to the core issue of whether, as Plaintiffs allege, New Era manufactured its rules to unconscionably disadvantage consumers.  New Era's negotiations with

Plaintiffs about the subpoena have only heightened the need for such materials. They revealed that New Era did not save drafts of its Terms of Use—it either did not store them, or overwrote them during the drafting process. Plaintiffs learned New Era has also administered only **one** consumer arbitration, and has not administered **any** arbitrations involving citizens of California, Maryland, or New Jersey. This means New Era lacks basic information about consumer arbitrations—such as the nature of the disputes, the arbitrators involved, and the disposition of the disputes—that those states require arbitration service providers to maintain and that would help evaluate the fairness of its procedures. The likely result of granting New Era's motion to quash is thus not "limited" discovery, but no meaningful discovery at all.

*Second*, New Era's purported burden objections are unsubstantiated, and should therefore be rejected. Indeed, New Era failed to disclose nearly any of the details of its search process and declined to produce standard information such as "hit reports" documenting its purported concerns with Plaintiffs' proposed search terms. It instead relied on a supposedly "targeted" review process that appears to have consisted of New Era selecting documents it deemed helpful (but not conducting a full review, as required by Rule 45). New Era's opaque and self-serving search process is manifestly insufficient and renders New Era incapable of establishing the type of burden that would justify quashing the subpoena.

*Third*, New Era's objection that Plaintiffs' subpoena seeks confidential information provides no basis to quash the subpoena. Courts routinely hold that protective orders, such as the one here, sufficiently safeguard any genuine confidentiality interest, and New Era fails to show otherwise.

*Fourth*, as an independent basis to deny the motion, New Era missed the deadline to file it. Under Rule 45, a motion to quash must be filed *before* the return date of a subpoena—here, August 1. There is no dispute that New Era did not meet that deadline, rendering its motion untimely.

# BACKGROUND

### A.    Plaintiffs' Lawsuit Against Defendants

This proposed antitrust class action challenges Defendants' anticompetitive scheme to monopolize the primary and secondary markets for concert ticketing services at major concert venues across the United States.  *See* ECF No. 1 ("Compl.") ¶¶ 6-20.  As detailed in filings from the Antitrust Division of the Department of Justice ("DOJ"), Defendants repeatedly violated a consent decree they entered with the DOJ in 2010, which prohibited the exact type of unrivaled dominance they now command. *Id.* ¶¶ 91-96.  Through those violations and other anticompetitive acts, Defendants have monopolized ticket sales for major concerts, profiting from consumers like Plaintiffs who have no choice but to pay Defendants' supracompetitive fees in order to attend events of their choosing.  *See, e.g.*, *id.* ¶¶ 114-23.

In *Oberstein*, Defendants moved to compel arbitration of Plaintiffs' claims to JAMS, an established arbitral forum.  *See Oberstein*, 2:20-cv-03888-GW-GJS (C.D. Cal. June 19, 2020), ECF No. 25.  In that case, the Court also authorized arbitration-related discovery, including document requests, interrogatories, and a 30(b)(6) deposition of Defendants.  *See id.*, ECF Nos. 35, 46, 59.  After arbitration-related discovery closed, the parties completed briefing the motion to compel arbitration.  *See id.*, ECF Nos. 110, 111.  The Court then granted Defendants' motion on September 20, 2021. *See id.*, ECF No. 114.  The *Oberstein* Plaintiffs appealed that ruling.

### B.    Defendants' Decision to Switch from JAMS to New Era

On July 2, 2021—while their motion to compel arbitration was pending in *Oberstein*—Defendants rewrote their Terms of Use.  In place of JAMS, they designated New Era as their dispute-resolution forum for consumers.  *See* Ticketmaster, *Terms of Use*, https://bit.ly/3JZnr7m (last updated July 2, 2021).

New Era launched in April 2021 with the stated mission of "helping businesses settle legal disputes" by creating rules that "make[] sense for businesses" and that also

benefit "law firms, who are able to provide an improved client experience" to businesses "and handle a higher volume of cases" filed by consumers. ECF No. 34-2, Jim Dallke, *This startup is helping businesses settle legal disputes completely online*, Chicago Inno (May 3, 2021), https://bit.ly/3DKeFYv.  New Era has described its "e-arbitration" process as a "a whole new way of doing arbitration" that "eschews traditional arbitration rules and convention." U.S. Trademark Application No. 88688582, Unpublished (filing date Nov. 12, 2019) (New Era ADR Inc, Applicant) (Response to Office Action), https://bit.ly/3j2wQ21.

According to New Era, its "whole new way of doing arbitration" means "electronic arbitration that removes discovery, motion practice and almost the entirety of all rules, process and procedure." *Id.*  It is unclear how plaintiffs could prove an antitrust violation absent "discovery, motion practice, and almost the entirety of all rules, process and procedure." *Id.*  To file a claim with New Era, consumers must agree to New Era's Terms and Conditions, which state: "By using the Website and its platform, you acknowledge that you will forego the presentation of certain evidence which might otherwise be available for presentation in a federal or state judicial forum or through other alternative dispute resolution services."  New Era ADR, *Terms & Conditions*, https://bit.ly/3NRdmvM (last updated June 2021).

To "help[] businesses settle legal disputes," New Era also enters into financial partnerships with them.  It offers businesses a "mass arbitration/class action risk-reducing subscription solution," whereby it collects an up-front, annual retainer fee in exchange for the friendly forum it promises.  *See* ECF No. 35 (Pak Decl.) ¶ 2.

The evidence indicates New Era is financially dependent on Defendants. After being designated as Defendants' dispute-resolution forum in July 2021, New Era boasted to its investors that it had secured a "multi-year subscription deal" with a "major Fortune 500 anchor client," and that it had secured "$350,000 in annual recurring revenue."  *See id.* ¶¶ 3-4. ███████████████████████

1  ████████████████████████████████████████████████████████

2  ████████████████████████████.” Ex. B (New Era Subscription Agreement).

Defendants' counsel, Latham & Watkins, appears to have played a role in fostering the strong ties between Defendants and New Era. New Era attributed its financial success to the "strong support of an AmLaw 100 law firm" that "refer[s] prospective clients to us." *Id.* ¶ 6.  That is reason enough to suspect that Latham & Watkins, while urging this Court to compel arbitration to JAMS in *Oberstein*, was simultaneously negotiating the financial arrangement between Defendants and New Era.  Further circumstantial evidence supports that conclusion: New Era's most recent subscription client, Soho House, is another longtime client of Latham & Watkins, *id.* ¶ 8; and New Era's early SEC filing was executed by an attorney who was formerly with Latham & Watkins, *id.* ¶ 9.

The apparent coordination among Defendants, Latham & Watkins, and New Era may even extend to the purportedly neutral arbitrators who New Era would appoint to resolve any dispute between Plaintiffs and Defendants brought before New Era. An undisclosed number of New Era's arbitrators financially benefit from Defendants' patronage, as they apparently maintain a "stake in New Era from their service as advisors to [the] company." *Id.* ¶ 10.

### C.  Plaintiffs' Subpoenas

In light of their concerns about New Era, Plaintiffs sought authorization to serve discovery on Defendants and New Era.  On June 9, 2022, the Court authorized such discovery.  ECF No. 50.  Plaintiffs then served document requests and deposition notices on both Defendants and New Era.  Although both New Era and Defendants objected to Plaintiffs' discovery requests, Plaintiffs and Defendants reached agreement and Defendants have since produced documents, though the small size of their production (less than 100 pages) confirms the need for additional materials from New Era.  In contrast, Plaintiffs and New Era have been unable to reach agreement

on several document requests ("Requests") and deposition topics ("Topics") since New Era served its responses and objections on August 1.

In an effort to compromise with New Era, Plaintiffs sought information about New Era's discovery process, including how it selected documents for production. Plaintiffs also proposed search terms and requested "hit reports" on those terms to determine if any adjustments were warranted.  New Era rebuffed these efforts, describing Plaintiffs' questions as "unwarranted and certainly premature."  ECF No. 74-6 at 8.  All New Era disclosed is that it reviewed work emails and other "potentially relevant documents" from six custodians, but it would not say how it collected those materials or determined they were responsive.  ECF No. 74-6 at 8-9.

During discussions with Plaintiffs, New Era revealed that it did not retain drafts of its Rules and Procedures or overwrote them during its drafting process, and thus claims it cannot produce them.  New Era also disclosed that, since its founding, it has only "conducted one consumer arbitration," which involved a Live Nation entity.  ECF No. 74-6 at 15.  New Era further informed Plaintiffs that it has not administered arbitrations involving citizens of California, Maryland, or New Jersey, and thus does not have information that those states require arbitration providers that administer arbitrations involving their citizens to retain, such as basic information about the nature of the arbitrations and their results.  ECF No. 74-6 at 12-13.

Over a month after the return date for the subpoenas (August 1), New Era informed Plaintiffs it planned to move to quash portions of the subpoenas.  ECF No. 74-6 at 2.  The parties agreed to a briefing schedule for New Era's motion, and agreed that the motion should be heard in this Court.  Plaintiffs otherwise reserved their rights to oppose the motion on any and all available grounds.

**LEGAL STANDARD**

New Era, as the party moving to quash, "has the burden of persuasion under Rule 45(c)(3)."  *Martinez v. City of Maywood*, 2010 WL 11519585, at *3 (C.D. Cal. July 12, 2010) (denying motion to quash) (citations omitted throughout).    In evaluating whether New Era has met that burden, "[g]eneral or boilerplate objections such as 'overly burdensome and harassing' are improper—especially when," as here, "a party fails to submit any evidentiary declarations supporting such objections." *Tater v. City of Huntington Beach*, 2021 WL 4735015, at *2 (C.D. Cal. June 7, 2021); *see also* WRIGHT & MILLER, 9A FED. PRAC. & PROC. CIV. § 2463.1 (3d ed. Apr. 2022 update) ("[T]he burden to establish that a subpoena … imposes an undue burden is on the person who moves to have it quashed.").

**ARGUMENT**

**I.    PLAINTIFFS' SUBPOENA SEEKS RELEVANT INFORMATION**

In authorizing Plaintiffs to serve discovery on New Era and Defendants, the Court explained the relevance of the materials sought:

> Plaintiffs raise allegations in the Complaint and this Motion that are troubling.  If Plaintiffs' allegations about the conduct between New ERA and the Defendants are substantiated by the requested discovery, then there could very likely be a viable issue as to unconscionability.  Any burden or delay in granting the limited discovery is minor in light of the prejudice that would befall Plaintiffs if the allegations are true and they were not given the opportunity to discover the information and oppose arbitration accordingly.

ECF No. 50 at 4.  The Court also noted that "a party opposing a motion to compel arbitration is entitled to discovery relevant to the issue of unconscionability," *id.* (citation omitted), and that "[t]he bar for relevance of discoverable information is low."  *Id.* at 2 (citing *Messick v. Novartis Pharms. Corp.*, 747 F.3d 1193, 1196 (9th Cir. 2014)).   The Court thus authorized discovery "to explore whether New Era, Defendants' newly chosen arbitration forum, is improperly biased, whether New Era

too severely eliminates Plaintiffs' litigation rights, and whether Defendants drafted their new arbitration agreement in bad faith." *Id.*

Here, *all* of the at-issue Requests go to the core issues of unconscionability and bias, and fall within the types of materials the Court's Order contemplated. Moreover, discovery from New Era is necessary, as Defendants have produced less than 100 pages of documents in response to Plaintiffs' Requests. Plaintiffs' Requests thus easily clear the "low" bar for relevance and are proportionate to the needs of the case.

## A.   Request No. 6 and Topic No. 6 (Advertising) Seek Relevant Information

New Era's advertisements will shed light on how New Era markets its business to potential clients—*i.e.*, whether it holds itself out as offering rules and procedures that favor businesses at the expense of consumers. If so, that plainly bears on Plaintiffs' allegations that New Era designed its terms to limit consumers' rights and thus goes to unconscionability and bias. *See* ECF No. 50 at 4; Compl. ¶¶ 4-5.

New Era's assertion that the word "advertise" is ambiguous lacks merit. Mot. at 9. It is obvious from the face of the requests what types of materials Plaintiffs seek, and it is doubtful that New Era, a remote arbitration provider, has mountains of physical "pamphlets" and "flyers" sitting around its offices, as it suggests. Mot. at 9. In any event, New Era's overbreadth concerns are best addressed by negotiating targeted search terms—which New Era refused to do. *See Martinez v. Optimus Props., LLC*, 2017 WL 11631999, at *2 (C.D. Cal. May 9, 2017) (denying motion to quash because overbreadth concerns could be abated "through negotiation").

New Era's assertion that its advertisements "are put out on public sources" (Mot. at 10) likewise does not negate the need for discovery, since it is not clear the materials are readily available—they may have been sent directly to potential clients. It also confirms New Era can locate its advertisements easily. *Id.*

Lastly, the fact that New Era attached a single screenshot of its website to its Motion (Ex. A) does not defeat Plaintiffs' need for a production of advertising

materials.  New Era admittedly has advertisements that go beyond its website, and likely advertises directly to potential clients and investors.  Mot. at 10-12.[1]

### B.  Request No. 7 and Topic No. 7 (Efforts to Raise Capital) Seek Relevant Information

Documents and testimony about New Era's efforts to raise capital are relevant for the same reasons as marketing materials.  How New Era characterizes its business model to potential investors goes to unconscionability and bias.  For example, if New Era highlighted unconscionable, anti-consumer provisions in its rules and procedures to raise capital, that is highly probative of Plaintiffs' contentions regarding the forum's inherent bias against consumers.  ECF No. 50 at 4.  And, how New Era characterizes the impact of its model on consumer arbitrations and/or the adherence it applies to its subscription clients (like Defendants) directly addresses bias.  Moreover, Request and Topic No. 7 are appropriately targeted in that they specify a list of entities from which Plaintiffs believe New Era sought to raise capital.

Plaintiffs also allege that New Era uses its ties to Defendants to raise capital— a fact that calls into question its impartiality in cases involving Defendants.  *See* ECF No. 34-1 at 2.  New Era all but concedes that it "cited Defendants as a customer to potential fundraisers" in its Motion. (Mot. at 11.)  Although New Era claims "that is not indicative of bias," *id.* that assertion itself raises factual questions about Defendants' relationship to New Era that Plaintiffs need discovery to resolve.

### C.  Request No. 8 and Topic No. 8 (Subscription Agreements with Other Customers) Seek Relevant Information

Request No. 8 and Topic No. 8 are relevant to assessing what percentage of

---

[1]  New Era protests that "New Era itself does not hear or decide any disputes." Mot. at 10 n.4.  But any of New Era's arbitrators are bound by New Era's Rules and Procedures, and how New Era describes those rules is highly relevant to their intended and actual effect, including unconscionability.  How New Era advertises its forum also strongly implicates any pro-business client bias.

New Era's revenue comes from Defendants, which goes to New Era's bias.  ECF No. 50 at 4.  New Era recognized the relevance of this information:  it agreed to make "an offer of proof … that LiveNation and Ticketmaster are not New Era's largest clients." ECF No. 74-6 at 12.  But now, New Era refuses to provide sufficient information for Plaintiffs to evaluate this "offer of proof"—such as information about what percentage of New Era's revenues Defendants contribute.  This Court should order New Era to do so, as a naked representation that Defendants "are not New Era's largest clients" lacks meaning absent additional context, and risks allowing New Era to paint a self-serving picture of its relationship with Defendants that does not fully capture their relationship—particularly since New Era has admitted that it "cited Defendants as a customer to potential fundraisers" in its Motion.

New Era's remaining complaints about Request and Topic No. 8 ignore that Plaintiffs were willing to compromise on this issue.  ECF No. 74-6 at 2-5.  Plaintiffs would have accepted additional information in lieu of a document production, such as a breakdown of how much Defendants contribute to New Era's revenues that did not disclose how much each other customer contributes to New Era's revenues.  New Era's refusal to provide even this basic information, which it could turn over with little burden, raises serious questions about the completeness of its discovery responses and confirms the need for additional discovery.

New Era's repeated reliance on the transcript ruling in *Abernathy v. DoorDash*, Case No. 3:19-cv-07545-WHA (N.D. Cal.) is misplaced.  *E.g.*, Mot. at 2, 13.  Unlike this case, *Abernathy* involved whether an ***established, non-profit*** arbitral forum created a specific set of new rules to benefit a particular defendant (DoorDash).  ECF No. 74-7 at ECF Pages 5, 12 (focusing on a "new protocol" at CPR, not an entirely new arbitral forum); *see also* https://www.cpradr.org/about ("Established in 1977, CPR is an independent nonprofit organization.").

By contrast, New Era is neither an established arbitration provider nor a non-profit.  It is a new *for-profit* company whose business model is designed to thwart

certain types of litigation strategies (*i.e.*, mass arbitration) in order to benefit big companies at the expense of consumers.  As the Court noted, New Era "has been recently organized or created and so there is a question as to its bona fides" *See* Ex. A (May 19, 2022 Hr'g Tr.) at 4:7-13.  Plaintiffs allege New Era and its self-described "new way of doing business" were designed in concert with Defendants to benefit them while compromising their customers' rights.  Plaintiffs further allege that New Era remains beholden to Defendants because it relies on them for revenues and uses them as an anchor client to generate additional investments and consumers.  *Supra* at 3-6.  These allegations justify broader discovery that what the Court found necessary to address the comparatively narrow dispute in *Abernathy*.

### D.   Request No. 10 and Topic No. 10 (Documents Regarding Mass Arbitration, Plaintiffs' Counsel, New Era's Rules and Procedures and Terms and Conditions, New Era's Arbitration Process, and New Era's Subscription Agreements) Seek Relevant Information

Request and Topic No. 10 seek New Era's internal documents on a finite list of critical issues:  mass arbitration, Plaintiffs' counsel (Keller Postman, formerly Keller Lenkner), New Era's Rules and Procedures and Terms and Conditions, its arbitration process, and its subscription agreements.  Such documents are crucial to determining whether New Era's arbitration procedures were intentionally structured to disadvantage consumers and whether it is biased—what New Era's own employees said in candid internal communications about their business model could well be the most probative information on this subject.

Contrary to New Era's assertions, this is no "fishing expedition."  Mot. at 10.  New Era previously argued that its unprecedented "e-arbitration" process was "electronic arbitration that removes discovery, motion practice and almost the entirety of all rules, process and procedure."  U.S. Trademark Application No. 88688582, Unpublished (filing date Nov. 12, 2019) (New Era ADR Inc, Applicant) (Response to Office Action), https://bit.ly/3j2wQ21.  It is thus highly likely that New Era has internal documents about its plans to "remove[] discovery, motion practice and almost

the entirety of all rules, process and procedure," which bear on Plaintiffs' arguments that New Era's rules unfairly disadvantage consumers.

Moreover, without Request No. 10 and Topic No. 10, New Era's production will be limited largely to communications with Defendants and public-facing materials; it will be devoid of any internal context for such materials. The information sought thus "may allow" Plaintiffs "to make the case that the arbitration clause at issue here produces overly harsh or unjustifiably one-sided results," which is "clearly relevant to [Plaintiffs'] claim that this arbitration clause is unconscionable." *Newton v. Clearwire Corp.*, 2011 WL 4458971, at *6 (E.D. Cal. Sept. 23, 2011).

New Era argues that some aspects of this Request and Topic overlap with other Requests and topics (Mot. at 13-14), but that if anything diminishes the burden of producing such documents and does nothing to detract from their relevance. Further, some aspects of this Request and Topic do *not* overlap with others, such as documents about "mass arbitration" and Plaintiffs' counsel. Such documents are highly relevant. If, for example, New Era discussed how its rules hamper mass arbitration by forcing consumers into a "bellwether" process (whereby they give up their rights to bilateral arbitration with individualized rulings from arbitrators they had a hand in selecting) or were designed to deter law firms like Plaintiffs' counsel from pursuing arbitration, such materials would confirm that New Era's rules are biased against consumers.

**E.     Request No. 13 (Documents Sufficient to Show Business Plans)**

New Era's business plans are relevant to whether New Era designed its terms to hamstring consumers' rights in favor of deep-pocketed corporations like Defendants. The Request is also justified by New Era's "new way of doing business." *Supra* at 4, 11. The Court's Order authorizes Plaintiffs to explore whether that "new way of doing arbitration" compromises the rights of consumers in favor of Defendants. ECF No. 50 at 4. New Era also revealed during discovery negotiations that it has administered only one consumer arbitration. *Supra* at 6-7. Given this short track record, New Era's "business plans" are necessary to understanding its business

1   model, as New Era lacks historical data about past arbitrations it has administered.

2       New Era's argument that this Request is overbroad, Mot. at 16, overlooks that
3   the Request seeks only "documents sufficient to show" New Era's business plans,
4   rather than all such plans.  Although New Era complains that Plaintiffs seek business
5   plans "without qualification," *id.*, it is hard to imagine that New Era—a two-year old
6   startup with only one consumer arbitration under its belt—has so many documents on
7   this subject that it cannot produce a few of them to satisfy this Request.

8   **II.      NEW ERA'S BURDEN OBJECTIONS FAIL**

9       New Era's burden objections fail because New Era refused to participate in the
10  standard discovery process—*i.e.*, negotiating search terms.   As courts have
11  recognized, "[t]hird-party status does not confer a right to obfuscation or obstinacy."
12  *See Apple, Inc. v. Samsung Elecs. Co.*, 2013 WL 1942163, at *3 (N.D. Cal. May 9,
13  2013).  Rather, "[a]n appropriately detailed accounting of the search conducted is
14  especially critical in the context of searches for electronically stored information."
15  *See V5 Techs. v. Switch, Ltd.*, 332 F.R.D. 356, 367 (D. Nev. 2019).

16      New Era provided none of this information.  It disclosed the names of its
17  custodians, but refused to describe how it conducted its search, what responsiveness
18  criteria it applied, what sources of information it searched, and what types of materials
19  it withheld as irrelevant.  *Supra* at 6-7.  It also refused to negotiate search terms with
20  Plaintiffs or provide a "hit report" substantiating its complaints about Plaintiffs'
21  proposed terms.   This renders New Era's complaints about burden hollow, as
22  Plaintiffs could (and would) have addressed these concerns by refining their requests
23  had New Era simply provided the information necessary to do so.  *See DeGeer v.*
24  *Gillis*, 755 F. Supp. 2d 909, 929 (N.D. Ill. 2010) (failing to disclose the details of an
25  electronic search "violated the principles of an open, transparent discovery process").

26      Having refused to engage in these basic discovery processes, New Era's "idle
27  and unsubstantiated conjecture" cannot meet its burden on this motion.  *See City of*
28  *St. Petersburg v. Total Containment, Inc.*, 2008 WL 1995298, at *2 (E.D. Pa. May 5,

2008) (denying motion to quash where movant "has not shown that compliance with the subpoena would subject it … to an undue burden"); *Auto Club Family Ins. Co. v. Ahner*, 2007 WL 2480322, at *3 (E.D. La. Aug. 29, 2007) (denying motion to quash where movant failed to "make an *evidentiary showing* that the data sought is not reasonably accessible because of undue burden or cost") (emphasis in original).

New Era's burden arguments also focus on document productions, not deposition testimony. At a minimum, New Era should produce a 30(b)(6) witness on the disputed topics, as doing so poses little incremental burden. *See In re Third Party Subpoena of Am. Suzuki Motor Corp.*, 2012 WL 12903125, at *2 (C.D. Cal. Oct. 17, 2012) (denying motion to quash deposition subpoena where subpoenaed entity "employs individuals capable of addressing" the deposition topics).

## III.   NEW ERA'S CONFIDENTIALITY ARGUMENTS FAIL

New Era's purported concerns about confidentiality provide no basis to quash the subpoena. To the extent New Era believes any of its information is confidential, the existing protective order in the case—which Plaintiffs sent to New Era before it filed this motion—will protect them, as it has both "confidential" and "highly confidential – attorneys' eyes only" designations. ECF No. 62. Countless cases have found similar protective orders to sufficient to protect third parties' confidentiality interests. *See, e.g.*, *Table de France, Inc. v. DBC Corp.*, 2019 WL 6888043, at *4 (C.D. Cal. Aug. 1, 2019) (denying motion to quash where "the Protective Order already issued in the instant matter sufficiently protects [third-party's] confidential information"); *Packaging Corp. of Am. v. Bonert's, Inc.*, 2019 WL 1123165, at *5 (C.D. Cal. Mar. 11, 2019) (protective order "could protect the privacy rights of the Third Parties"); *In re Third Party Subpoena of Am. Suzuki Motor Corp.*, 2012 WL 12903125, at *3 (protective order was "sufficient to protect" trade secrets).[2]

---

[2]   New Era's primary cited case, *Gonzales v. Google*, involved sensitive personal data, not the type of business information at issue here. 234 F.R.D. 674, 683-84 (N.D.

## IV.    NEW ERA'S MOTION IS UNTIMELY

"Motions to quash under Rule 45[] are required to be filed in a 'timely' fashion, which courts have read to mean before the compliance date designated in the subpoena." *Odyssey Reins. Co. v. Nagby*, 2018 WL 1963665, *2 (S.D. Cal. Apr. 26, 2018) (collecting cases).  "The majority of courts" require that a motion to quash be filed by "the date of compliance set in the subpoena." *Nutrition Distrib. LLC v. Black Diamond Supplements LLC*, 2018 WL 1109556, *5 (D. Ariz. 2018).

New Era did not meet that deadline.  As New Era acknowledges, the return date for the document subpoena and deposition notice were August 1, 2022, and New Era filed its motion on September 26.  Mot. at 5.  New Era's Motion is therefore untimely.

That Plaintiffs stipulated to a briefing schedule for New Era's Motion *after* New Era missed its deadline to file the Motion does not remedy this defect.  Plaintiffs preserved their right to challenge the Motion on any grounds other than that venue was improper in this Court.  ECF No. 70 ¶ 4.  Moreover, the purpose of Rule 45's timeliness requirement would be frustrated by granting New Era's untimely Motion, as New Era largely refused to compromise on the at-issue Requests and Topics during the parties' negotiations, meaning it could have filed its Motion before the return date on the subpoenas, as it was required to do.  *See PHL Variable Ins. Co. v. Alan Wollman Ins. Tr.*, 2010 WL 2836388, at *1 (D. Del. July 16, 2010) (denying motion to quash where third party "responded to many of the document requests contained in the subpoena and did not move to quash the subpoena until more than four months after the subpoena's compliance deadline").

## **CONCLUSION**

For the foregoing reasons, the Court should deny New Era's Motion.

---

Cal. 2006) (cited in Mot. at 18).  In New Era's other cited case, *Moon v. SCP Pool Corp.*, the material sought was not relevant and was otherwise obtainable—neither of which is true here.  232 F.R.D. 633, 638 (C.D. Cal. 2005) (cited in Mot. at 17).

1   Dated:  October 11, 2022

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

Respectfully Submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP


By: */s/ Kevin Y. Teruya*
Kevin Y. Teruya (Bar No. 057645)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100


KELLER POSTMAN LLC


By: */s/ Warren D. Postman*
Warren D. Postman (Bar No. 330869)
wdp@ kellerpostman.com
Albert Y. Pak (admitted *pro hac vice*)
albert.pak@ kellerpostman.com
1100 Vermont Avenue, N.W.
12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123

*Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts*

1

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **ATTESTATION**

I am the ECF user whose identification and password are being used to file the foregoing Opposition to New Era's Motion to Quash.  Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, William R. Sears, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized such filing.


Dated:  October 11, 2022                                    */s/ William R. Sears*

                                                                         William R. Sears