1          UNITED STATES DISTRICT COURT

2      CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

3    Skot Heckman, Luis Ponce, Jeanene          CASE NO. 2:22-cv-00047-GW-GJS
     Popp, and Jacob Roberts, on behalf of
4    themselves and all those similarly         **PLAINTIFFS' AND NEW ERA**
     situated,                                  **ADR, INC.'S JOINT SUBMISSION**
5                                               **REGARDING THE MAGISTRATE**
                                                **JUDGE'S NOVEMBER 21, 2022**
6              Plaintiffs,                       **DISCOVERY ORDER**

7          v.                                   The Honorable George H. Wu

8    Live Nation Entertainment, Inc., and       Hearing Date:  December 22, 2022
     Ticketmaster LLC,                          Hearing Time:  8:30 AM
9
               Defendants.
10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# **TABLE OF CONTENTS**

                                                                                                    **Page**

PLAINTIFFS' SUBMISSION ................................................................................ 1

I.      PRELIMINARY STATEMENT ................................................................. 1

II.     BACKGROUND ........................................................................................ 3

III.    ARGUMENT .............................................................................................. 6

        A.      The Timeframe Cutoff Ignores that Relevant Evidence of New
                Era's Bias Post-Dates the Subscription Agreement................................ 7

                1.      Most Relevant Evidence Post-Dates the Subscription
                        Agreement ...................................................................... 7

                2.      New Era's Counterarguments Fail ............................. 10

        B.      The Magistrate Judge's Ruling Is Contrary to Law By Imposing a
                Wholesale Timeframe Limitation New Era Did Not Request.............. 13

        C.      The Timeframe Cutoff Is Contrary to This Court's Order
                Authorizing Discovery ........................................................ 14

        D.      The Timeframe Cutoff Ran Contrary to Rule 26 ................................ 16

IV.     CONCLUSION ........................................................................................ 18

NONPARTY NEW ERA ADR, INC.'S RESPONSE IN OPPOSITION TO
PLAINTIFFS' MOTION FOR PARTIAL REVIEW OF MAGISTRATE
JUDGE'S ORDER ................................................................................................ 19

I.      INTRODUCTION ................................................................................... 19

II.     LEGAL STANDARD ............................................................................. 20

III.    FACTUAL BACKGROUND AND THE MAGISTRATE JUDGE'S
        RULING ................................................................................................... 21

IV.     ARGUMENT ............................................................................................ 26

        A.      The Evidence Already Produced by New Era Provides No Basis
                for Reversing the Magistrate Judge's Ruling. ................................ 26

        B.      New Era's Motion to Quash Certain Subpoena Categories Based
                on Irrelevance and Overbreadth Encompassed Relevant Time
                Frame....................................................................................... 31

        C.      The Reasonable Time Limitations Imposed by Judge Standish
                Comport with the Narrow Discovery Authorized by this Court........... 34

PLAINTIFFS' AND NEW ERA'S JOINT SUBMISSION REGARDING THE MAGISTRATE JUDGE'S
NOVEMBER 21, 2022 ORDER

D.   The Reasonable Time Limitations Defined by Judge Standish Comport with Rule 26 and Reflect an Appropriate Analysis of Proportionality. ...................................................................... 36

V.   CONCLUSION ................................................................................... 37

PLAINTIFFS' AND NEW ERA'S JOINT SUBMISSION REGARDING THE MAGISTRATE JUDGE'S NOVEMBER 21, 2022 ORDER

# TABLE OF AUTHORITIES

**Page**

## Cases

*Arcadian Capital, LLC v. Cura Ptrs., Inc.*,
   2020 WL 8372647 (C.D. Cal. Dec. 28, 2020) ................................................ 17

*Bhan v. NME Hosps., Inc.*,
   929 F.2d 1404 (9th Cir. 1991) ...................................................................... 20

*Crispin v. Christian Audigier, Inc.*,
   717 F. Supp. 2d 965 (C.D. Cal. 2010) ...................................................... 7, 21

*Dupree v. Cty. of Los Angeles*,
   2010 WL 11597483 (C.D. Cal. Jan. 15, 2010) .............................................. 14

*ExxonMobil Oil Corp. v. S. Cal. Edison Co.*,
   2014 WL 12629698 (C.D. Cal. Apr. 3, 2014) ................................................. 7

*Grimes v. City & Cnty. of San Francisco*,
   951 F.2d 236 (9th Cir. 1991) ........................................................................ 21

*Haines v. Liggett Grp. Inc.*,
   975 F.2d 81 (3d Cir. 1992) ........................................................................... 12

*Hamby v. Power Toyota Irvine*,
   798 F. Supp. 2d 1163 (S.D. Cal. 2011) ......................................................... 15

*In re Bofi Holding, Inc. Secs. Litig.*,
   318 F.R.D. 129 (S.D. Cal. Nov. 30, 2016) .................................................... 13

*In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*,
   325 F.R.D. 551 (E.D. Pa. 2016) .................................................................... 17

*Jones v. Blanas*,
   393 F.3d 918 (9th Cir. 2004) ........................................................................ 11

Matter of Application of O'Keeffe is instructive.  184 F. Supp. 3d 1362
   (S.D. Fla. 2016) ............................................................................................ 10

*Mfg. Automation & Software Sys., Inc. v. Hughes*,
   2017 WL 5641120 (C.D. Cal. Sept. 21, 2017) .............................................. 17

*Poe v. Nw. Mutual Life Ins. Co.*,
   2022 WL 2037959 (C.D. Cal. Apr. 29, 2022) ............................................... 14

*Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*,
   124 F.3d 999 (9th Cir. 1997) ........................................................................ 21

*United States v. Abonce-Barrera*,
  257 F.3d 959 (9th Cir. 2001).................................................................21

*Viesti Assocs., Inc. v. Pearson Educ., Inc.*,
  No. 12-cv-01431-PAB-DW, 2014 WL 12741118 (D. Colo. Feb. 21,
  2014)...........................................................................................................28

## STATUTORY AUTHORITIES

28 U.S.C. § 636(b)(1)(A)....................................................................... 7, 20

## RULES AND REGULATIONS

Fed. R. Civ. P. 26.................................................................... 3, 16, 17, 36

Fed. R. Civ. P. 45............................................................................................ 1

Fed. R. Civ. P. 72......................................................................... 6, 7, 20

Fed. R. Evid. 407............................................................................... 2, 13

L.R. 72-2.1 ................................................................................................ 6

## Other Authorities

12 Wright et al., Fed. Prac. & Proc. Civ. § 3069 (3d ed.) .................... 7, 12, 17, 21

Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts ("Plaintiffs") and third-party New Era ADR, Inc. ("New Era") respectfully submit this joint submission pursuant to the Court's December 1, 2022 Order (ECF No. 108) and the Court's instructions at the December 1, 2022 status conference.

## **PLAINTIFFS' SUBMISSION**

## I.    PRELIMINARY STATEMENT

This Court authorized Plaintiffs to serve third-party document and deposition subpoenas on New Era after finding the alleged facts regarding New Era's consumer-harming rules and its ties to Defendants Ticketmaster LLC and Live Nation Entertainment, Inc. ("Defendants") "troubling."  ECF No. 50 at 4.  Plaintiffs timely served the permitted subpoenas on New Era and, weeks after the deadline under Fed. R. Civ. P. 45 (and after numerous attempts from Plaintiffs to obtain the discovery this Court authorized), New Era belatedly moved to quash those subpoenas in part.  This Court assigned the motion to Magistrate Judge Standish, who exercised her discretion to hear the motion on the merits rather than denying it as untimely.  Following a hearing on November 18, the Magistrate Judge issued an order granting in part and denying in part New Era's motion to quash.  ECF No. 98.

Plaintiffs seek review of only a narrow aspect of that order:  the ruling that New Era does not have to produce virtually *any* documents dated after it executed its confidential "subscription agreement" with Defendants in June 2021.

The Magistrate Judge imposed this rigid timeframe cutoff without explanation after New Era raised a far narrower concern about social media presence for the first time at the November 18 hearing, and which Plaintiffs thus did not have a chance to brief.  And critically, the Magistrate Judge's ruling was made *without* full consideration of the documents New Era produced in response to the requests that New Era had not moved to quash, because New Era waited to produce those documents until *after* Plaintiffs had filed their opposition to New Era's motion.  Those documents unambiguously show that the execution of the subscription agreement was

the beginning—not the end—of Defendants' relationship with New Era, New Era's changes to its defense-biased rules and procedures, and New Era's marketing regarding its new special relationship with Defendants and their counsel, Latham & Watkins.  The Magistrate Judge's error in imposing a timeframe cutoff is thus clear and contrary to law and, Plaintiffs respectfully submit, warrants reversal.

*First*, the timeframe ruling misapprehends the facts.  The ruling appears to rest on the assumption that all of New Era's ties with Defendants, and New Era's rules, were set in stone after Defendants and New Era executed their subscription agreement.  On the contrary, in June 2022, Defendants chose to renew their contract with New Era for another year and paid ███████ to it.  Furthermore, New Era has been using its ongoing partnership with Defendants to drum up investments, pitch new clients, and solicit more business from Defendants—facts that plainly go to bias. Although New Era has produced some ***outward-facing*** documents on this point, it has failed to produce any ***internal*** documents, and the timeframe ruling makes it inevitable that New Era will continue to withhold such highly probative materials, as most of them undoubtedly post-date the subscription agreement.

*Second*, the timeframe ruling is contrary to law because the Magistrate Judge based it on the erroneous premise that the materials Plaintiffs seek were inadmissible due to Federal Rule of Evidence 407's bar on evidence of "subsequent remedial measures."  But the materials Plaintiffs seek do not address Defendants' antitrust liability in this case and therefore literally cannot fall under Rule 407's prohibition, and in any event, Rule 407 does not apply, as a matter of law, at the discovery stage.

*Third*, the Magistrate Judge's timeframe ruling rendered large portions of this Court's Order authorizing discovery a nullity, since the operative New Era rules ***were not finalized when Defendants signed the subscription agreement***.  When the parties executed the subscription agreement in June 2021, New Era's rules were unfinished— indeed, they remained half-baked even months later, in August 2021, and were substantially updated through March 2022.    These were not just minor

modifications—entire sections pertaining to discovery, for example, were added long after the subscription agreement was signed.  The Magistrate Judge's timeframe cutoff thus would prevent Plaintiffs from obtaining discovery about New Era's operative rules, contrary to this Court's Order authorizing discovery.  ECF No. 50.

*Finally*, the timeframe ruling is contrary to law and clearly erroneous because it rests on a misapplication of the legal standard governing discovery under Rule 26. The Magistrate Judge acknowledged that the bar for relevance is low and that New Era had done nothing to substantiate its burden objections.  Nonetheless, the Magistrate Judge imposed a hard-and-fast timeframe limitation on New Era's discovery obligations without finding that producing post-subscription agreement documents would impose any real burden on New Era.  Based on this record, the Rule 26 proportionality analysis goes squarely the other way:  Plaintiffs seek relevant materials, and New Era failed to show producing them would be burdensome, so New Era must do so.  The Magistrate Judge clearly erred, and ruled contrary to Rule 26, in holding otherwise.

## II.   BACKGROUND

Thus far, the Court has authorized Plaintiffs to pursue pre-arbitration discovery in this case and held three hearings and status conferences.  *E.g.*, ECF No. 50.  As relevant to this motion, after this Court authorized discovery, Plaintiffs served document and deposition subpoenas on New Era and on Defendants.  Defendants ultimately produced a miniscule number (less than 40) documents in response to Plaintiffs' requests, leaving Plaintiffs to seek the bulk of discovery from New Era. Sears Decl. ¶¶ 2-3.

New Era served objections on August 1, and objected wholesale to several of Plaintiffs' requests for production ("RFPs").  Exs. A-B.[1]  Most importantly for this

___

[1]   Unless otherwise noted, all "Ex." cites refer to the exhibits to the attached Declaration of William R. Sears.

submission, these included requests for New Era's advertising materials (RFP 6) and for New Era's internal documents about subjects such as its rules and procedures and its relationship with Defendants (RFP 10):

> **Request No. 6:** All DOCUMENTS used to advertise NEW ERA ADR.

> **Request No. 10:** All DOCUMENTS that REFER OR RELATE TO mass arbitration, KELLER LENKNER, YOUR Rules and Procedures, YOUR Terms and Conditions, YOUR e-arbitration process, YOUR subscription agreements with DEFENDANTS, and YOUR subscription agreements with anyone other than DEFENDANTS.

Ex. A at RFPs 6, 10.

New Era steadfastly refused to produce *any* materials on these points. New Era instead filed a motion to quash on September 26 (under Rule 45, the motion was due on August 1, the return date for the subpoenas). ECF No. 72. Perhaps not coincidentally, it was only *after* Plaintiffs opposed New Era's motion on October 11 that New Era began producing documents to Plaintiffs in response to certain of Plaintiffs' other RFPs. Sears Decl. ¶ 4. New Era has since made supplemental productions, bringing the total number of documents produced by New Era to about 500. Sears Decl. ¶ 4. Because Defendants' own production totaled less than 40 documents, New Era's delays deprived Plaintiffs of the opportunity to cite the vast majority of the discovery produced thus far in opposing New Era's motion to quash. Importantly, Defendants' document production focused on communications between *Defendants* and New Era, rather than Defendants' counsel (Latham) and New Era, meaning it did not include many of the communications between New Era and Latham that New Era later produced. Sears Decl. ¶¶ 3-5.

This Court referred New Era's motion to quash to the Magistrate Judge, ECF No. 75, who held a hearing on the motion on November 18. At the hearing, the Magistrate Judge noted that New Era had failed to provide "support" for its burden objections, such as specific metrics about the volume of materials it would have to review to comply with the RFPs. Ex. C, Nov. 18, 2022 Hr'g Tr. ("Tr.") 7:13-23.

Then, for RFPs 6 and 10, the Magistrate Judge found each RFP was relevant at least in part. For RFP 6, the Magistrate Judge found: "Given the relevance of the information and the low burden on New Era (even considering its third-party status), documents and testimony related to this category must be provided." ECF No. 98 at 2. For RFP 10, the Magistrate Judge found that although the RFP was "overbroad," it was relevant "to the extent" it sought materials "related to the particular Defendant in this case (and counsel Latham & Watkins)." ECF No. 98 at 3. As the Magistrate Judge further explained, "there definitely is relevant stuff in this category," including "internal communications or memos that talk specifically about the drafting of terms for this Defendant or with or for Latham." Tr. 32:18-34:22.

However, the Magistrate Judge *sua sponte* severely limited RFPs 6 and 10. In particular, the Magistrate Judge limited Plaintiffs' requests to cover *only* the time period *before* New Era and Defendant Live Nation executed the subscription agreement. The parties did not brief this timeframe issue because New Era did not request that limitation. And Plaintiffs had no reason to anticipate this objection, because New Era had previously ***agreed***, as a general matter, to produce documents dated through the present—it even agreed to "update its production, as necessary, as time progresses." ECF No. 74-6 (email correspondence) at 10.

Nonetheless, at the hearing, New Era expressed a limited concern about RFP 6's (Advertising Materials) timeframe as it related to New Era's "social media presence." Tr. 22:7-22. New Era then requested that the Court limit social media materials produced in response to ***that specific request*** "up until the time or shortly after the subscription agreement was signed or some – put some time limitation on it." *Id.* In response, Plaintiffs explained that they were fine with a timeframe cutoff "[i]f we're just talking about social media," but that materials post-dating the subscription agreement were otherwise relevant. *Id.* 24:3-25:21.

Despite that Plaintiffs and New Era *agreed* to apply a timeframe cutoff to social media materials, and that New Era had not requested a broader timeframe cutoff for

other documents, the Magistrate Judge applied a hard-and fast timeframe cutoff to *all* of Plaintiffs' requests. The Court ruled: "***with respect to everything else, let's … use when, you know, the allegedly bad arbitration term was finalized and the – and the subscription agreement as a cutoff***." *Id.* 27:4-8 (emphasis added). The Court reiterated this ruling later in the transcript, and stated that Plaintiffs could "get a copy of the Rules" New Era currently uses, but otherwise were not entitled to discovery post-dating the subscription agreement. *Id.* 39:5-17.

As New Era notes in its submission, the Magistrate Judge articulated a few narrow exceptions to this timeframe cutoff, such as for communications and agreements between Defendants and New Era. But these exceptions by and large cover documents New Era has *already* produced, meaning the timeframe cutoff will almost certainly gut New Era's productions going forward. In particular, and as New Era does not dispute, the timeframe cutoff means Plaintiffs will not receive ***any*** internal New Era documents about its relationship with Defendants or Latham and Watkins, or about its Rules and Procedures, post-dating the subscription agreement.

The Magistrate Judge explained that she would issue an order granting in part and denying in part New Era's motion. The November 21 Order followed, but did not mention the timeframe issue. The Order does state, however, that "the transcript of today's hearing controls." ECF No. 98 at 2. After issuing the Order, the Magistrate Judge became unavailable. This Court thus directed that: "Due to the unavailability of Judge Standish, any discovery motions will be held before this Court." ECF No. 108.

## III.    ARGUMENT

Under Federal Rule of Civil Procedure 72(a) and L.R. 72-2.1, a party may object to the rulings of a Magistrate Judge in non-dispositive matters. Fed. R. Civ. P.

72(a).[2]   In reviewing a Magistrate Judge's order, the district judge "must consider timely objections and modify or set aside any part of the order that is clearly erroneous or is contrary to law."  Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A).  "Under the clear error standard," district courts "overturn a magistrate judge's factual determinations only if [they] reach a definite and firm conviction that a mistake has been committed.   The contrary to law standard, on the other hand, permits independent review of purely legal determinations by a magistrate judge."  *See ExxonMobil Oil Corp. v. S. Cal. Edison Co.*, 2014 WL 12629698, at *2 (C.D. Cal. Apr. 3, 2014) (citations omitted).  District judges "should not be hamstrung by" these deferential review standards.  12 Wright et al., Fed. Prac. & Proc. Civ. § 3069 (3d ed.).   "Although a discovery ruling may not be dispositive, it can be extremely important. … and modification of [such orders] should at least be within the powers of the district judge."  *Id.*

Here, the Magistrate Judge's imposition of a timeframe cutoff was clearly erroneous and contrary to law for four reasons.

**A.    The Timeframe Cutoff Ignores that Relevant Evidence of New Era's Bias Post-Dates the Subscription Agreement**

**1.    Most Relevant Evidence Post-Dates the Subscription Agreement**

First and foremost, the Magistrate Judge clearly erred by ignoring that inking the subscription agreement was just the beginning of Defendants' relationship with New Era.  *See Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 980 (C.D. Cal. 2010) (vacating Magistrate Judge's order where Magistrate Judge "apparently misconstrued" the facts).

As the limited materials Plaintiffs have seen thus far show, Defendants, their litigation counsel (Latham), and New Era had numerous discussions after signing the

---

[2]    Rule 72(a), and L.R. 72-2.1 contemplate that objections will be made within 14 days.  Here, however, the parties have agreed that Plaintiffs' objections are timely, as they conform with the briefing schedule set by the Court.

agreement.  In an email two weeks *after* executing the agreement, for example, one of New Era's founders reached out to Live Nation in-house counsel Kimberly Tobias to introduce himself:  "***we are obviously very excited to have Live Nation on board as a customer and we look forward to working with you!***"   Ex. D, NEWERA_000004, at '006 (July 5, 2021 email) (emphasis added).   Discussions about how "obviously very excited" New Era was to land Live Nation as a client are plainly relevant to New Era's bias, as are additional materials expanding on that relationship and the ways that New Era marketed the coup it obtained by signing up Defendants as its premier customers.

For example, New Era's relatively small production to date includes other highly relevant exchanges with Defendants and Latham post-dating the subscription agreement.  These include invitations memorializing calls in which New Era solicited business from Elizabeth Deeley, Latham's Global Vice Chair of the Complex Commercial Litigation (Ex. E, NEWERA_000016), pitched other Latham lawyers on its service (Ex. F, NEWERA_000078, Ex. G, NEWERA_000106), and used the fact that it secured "the Live Nation contract" to reach out to other Latham clients (Ex. H, NEWERA_000241).   New Era's founder and chairman went so far as to describe Latham's litigation team—the same lawyers representing Defendants here—as "awesome" and "fantastic."  Ex. I, NEWERA_000618.  And he asked them to refer New Era "some of the other clients you have mentioned."  Ex. J, NEWERA_000244.

In addition, New Era baked its relationship with Live Nation into its marketing materials.  Strikingly, one deck touts that a "Fortune 500 consumer-facing company" signed a "Multi-year subscription tailored to reduce risk or gamesmanship in mass arbitrations" and quotes a "Legal Dept VP" as saying:  "*I can't begin to tell you how excited our global executive team is and how grateful we are to [AmLaw 20 firm] that we found a solution to mass arbitrations in New Era*."  Ex. K, NEWERA_001963, at '73 (emphasis in original).  That clearly refers to Latham and Live Nation.  The deck also notes that the same "AmLaw 20 firm" (*i.e.*, Latham) "***Approved New Era***

1  ***subscription solution as critical prophylactic measure for client's mass arbitration***
2  ***risk***." *Id.* (emphasis added). That Defendants viewed New Era as a "critical
3  prophylactic measure" against mass arbitrations, and that New Era capitalized on this
4  to gin up more clients, obviously bears on Plaintiffs' allegations that New Era's terms
5  are designed to help companies like Defendants at the expense of consumers. ECF
6  No. 50.

7         Although New Era has produced materials like these demonstrating the
8  relevance of post-subscription agreement discovery, New Era has *not* produced *any*
9  internal documents on this subject. The Magistrate Judge acknowledged the
10  importance of such internal materials. Tr. 33:16-34:8 ("If there are internal
11  communications or memos that talk specifically about the drafting of terms for this
12  Defendant or with or for Latham, I think those are relevant and should be produced.").
13  And such materials are critical, as Defendants, New Era, and Latham had many
14  communications over the phone and zoom, meaning internal New Era documents may
15  be the *only* record of those conversations—another point the Magistrate
16  acknowledged. *Id.* 34:23-35:1 ("it can be internal because … if you're really smart
17  you do – if anything – well, really, you talk on the phone").

18         In fact, the subscription agreement itself (which was part of the record before
19  the Magistrate Judge) makes clear the Magistrate Judge's timing error. Under that
20  agreement, for one year, New Era agreed to administer all arbitrations including
21  "Mass Arbitrations"—as New Era and Defendants defined the term in their private
22  agreement—that consumers filed against Defendants. Ex. L, TM00000032. More
23  than a year later, we know that, if Defendants were paying New Era to administer
24  arbitrations efficiently, Defendants got a terrible deal: they paid New Era ▮▮▮▮▮
25  to administer just *one* arbitration, as only one consumer filed an arbitration against
26  Defendants between June 2021 and June 2022. ECF No. 74-6 at 15. But Defendants
27  were so delighted with their arrangement with New Era and the anti-arbitration
28  insurance it provides that in June 2022, Defendants paid New Era another ▮▮▮▮▮

-9-

for a second year's service.  Ex. M, NEWERA_001093.  Indeed, the subscription agreement may be renewed for up to five years.  Ex. L, TM00000032, at '39.  All this makes New Era's course of dealing *during* the term of the subscription agreement just as, if not more, relevant than the agreement itself, as it has an ongoing incentive to please Defendants to generate another ████████ dollars in revenue just for deterring arbitrations for them.

Furthermore, Latham appears to have reviewed drafts of New Era's rules and discussed them with New Era before signing the subscription agreement (Ex. N, NEWERA_000168).[3]  It is thus possible (if not likely) that they provided similar feedback on New Era's rules *after* signing the agreement (including over the phone or zoom) as New Era continued to update its rules.

### 2.    New Era's Counterarguments Fail

New Era's primary response is to note that Plaintiffs "actually presented" some of the above evidence at the hearing (*infra* New Era Submission at 26), but that only *confirms* the Magistrate Judge clearly erred by ignoring Plaintiffs' counsel's representation that relevant materials post-date the subscription agreement.  *Matter of Application of O'Keeffe* is instructive.  184 F. Supp. 3d 1362, 1370-71 (S.D. Fla. 2016).  There, the district court held that a Magistrate Judge erred in granting a motion to quash where the Magistrate Judge overlooked "counsel's representations" at a hearing about why a "discovery request might produce relevant information."  *Id.* The court explained that "[w]hile counsel's representations to the Magistrate Judge at oral argument do not constitute evidence, counsel's representations do suggest that there is a concrete basis for [the] belief that relevant information exists," rendering the

---

[3]    Although New Era disputes this description of the document (*infra* New Era Submission at 34), it tellingly does ***not*** dispute that it began its discussions with Defendants' counsel (Latham) before its Rules and Procedures were finalized, suggesting its Rules and Procedures were designed with Defendants' interests in mind, rather than those of consumers.

1  Magistrate Judge's decision to grant the motion to quash erroneous.  *Id.*  So, too, here:

2  Plaintiffs' counsel's representations at the hearing showed that relevant post-

3  subscription agreement materials exist, and the Magistrate Judge clearly erred in

4  holding otherwise.

5      Next, taking a different tack, New Era suggests that Plaintiffs *chose* to only

6  present the Magistrate Judge with a small subset of the materials referenced above,

7  and thus waived the ability to detail those materials more fully.  But this grossly

8  mischaracterizes the record.[4]  As noted above, New Era withheld ***all*** of its document

9  productions until ***after*** Plaintiffs filed their opposition to the motion to quash, and the

10  Magistrate Judge's rules do not authorize sur replies,[5] so Plaintiffs had ***no*** opportunity

11  to reference New Era's productions in their papers prior to the hearing.  That Plaintiffs

12  were able to briefly reference subsets of the discovery record during the hearing is no

13  substitute for full briefing on the issue, and the Magistrate Judge's decision to limit

14  productions without even reviewing any of those materials compounds the error

15  underlying the timeframe limitation she imposed.  This Court should thus consider

16  the materials New Era produced after Plaintiffs opposed New Era's motion, cited

17  above, as those materials make clear the relevance of post-subscription agreement

18  discovery.  *See Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004) (noting that it can

19  be "an abuse of discretion for the district court not to consider" new evidence in an

20  objection to a Magistrate Judge's ruling where party was justified in not presenting it

21

22

---

23  [4]    New Era cites a statement by Plaintiffs' counsel that a full recitation of the

24  discovery record was "beyond the scope" of the hearing and suggests Plaintiffs *chose*

25  not to further detail the evidentiary record.  (*Infra* New Era Submission at 29.)  But

26  statement was made *before* the Magistrate Judge's timeframe ruling, and thus cannot

27  be construed as a waiver of Plaintiffs' right to challenge that ruling by reference to

28  the newly-produced evidence.

[5]    *See* https://www.cacd.uscourts.gov/honorable-gail-j-standish (providing only for
opening briefs, opposition briefs, and replies).

Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' AND NEW ERA'S JOINT SUBMISSION REGARDING THE MAGISTRATE JUDGE'S
NOVEMBER 21, 2022 ORDER

earlier).[6]  For similar reasons, New Era's citation to cases holding that district court judges should not consider new evidence in connection with objections to a magistrate judge's order are unavailing.  *Infra* New Era Submission at 27-28.  To begin with, New Era misstates the law.  As a leading treatise which ***New Era itself cites*** explains: "With nondispositive matters, the district judge ***also may consider further evidence*** … even though there are contrary indications in some cases, a district judge should have at least the authority to consider further evidence in reviewing rulings on nondispositive matters."  12 Wright et al., Fed. Prac. & Proc. Civ. § 3069 (3d ed.) (emphasis added).  It makes sense for this Court to consider further evidence here, where Plaintiffs were unable to present additional evidence to the Magistrate due to the fact that New Era tactically held back its productions until after Plaintiffs opposed its motion to quash.  Moreover, this case presents unusual circumstances insofar as the Magistrate Judge became unavailable after the hearing, leaving Plaintiffs unable to request supplemental briefing or to move for reconsideration.  On these facts, this Court should not reward New Era for its delay tactics by refusing to consider evidence that plainly shows the relevance of post-subscription agreement discovery.[7]

New Era's only other response is to put its own spin on discovery materials in

---

[6]  New Era notes that *Jones* involved a *pro se* plaintiff, which is true, but irrelevant—the legal principle that district court judges have discretion to consider new evidence in objections to a magistrate judge's ruling still holds.  *Id.*  New Era also suggests that the result in *Jones* turned on the fact that *Jones* involved a dispositive (rather than non-dispositive) motion, but this too is wrong, as *Jones* turned on the basic premise that district court judges have to discretion to consider evidence not previously considered by a magistrate judge.  *Id.*

[7]  New Era's cited cases are non-binding and generally concerns situations where, unlike here, the magistrate judge either considered a much fuller record, the party seeking review of the magistrate's ruling had no excuse for not presenting its evidence earlier, or both.  *See Haines v. Liggett Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) (holding district court was "not permitted" to consider additional evidence where magistrate judge had already considered briefs, numerous documents, testimony, and portions of the "trial record").

which New Era trumpeted how "awesome" Live Nation's litigation counsel was, (*infra* New Era Submission at 30), but such arguments "address the underlying merits of Defendants' motion to compel arbitration" rather than whether Plaintiffs are entitled to additional discovery.  ECF No. 50 at 3.  At the very least, materials in which New Era praises Live Nation and its lawyers are suggestive enough of bias that Plaintiffs should be allowed to probe New Era's internal materials as well to see how deep that bias runs.  ECF No. 50 at 2 (authorizing discovery on, *inter alia*, "whether New Era, Defendants' newly chosen arbitration forum, is improperly biased").

**B.    The Magistrate Judge's Ruling Is Contrary to Law By Imposing a Wholesale Timeframe Limitation New Era Did Not Request**

Against the plain relevance of the post-subscription agreement materials referenced above, it bears emphasis that the *only* timeframe objection New Era raised was to producing social media materials—a small subset of the documents responsive to Plaintiffs' requests.  New Era tacitly concedes as much by asserting that its timeframe objection was "implicit" (*infra* New Era Submission at 32 ) in its objections to Plaintiffs' request—*i.e.*, New Era did not make this request *explicit* until the hearing.[8]  Because the Magistrate Judge's timeframe ruling was "overbroad and not narrowly tailored" to the limited concerns New Era raised about social media materials, it was contrary to law.  *See In re Bofi Holding, Inc. Secs. Litig.*, 318 F.R.D. 129, 133 (S.D. Cal. Nov. 30, 2016) (holding Magistrate Judge's order was "contrary to law" where the record "did not warrant the breadth of the protective order sought and granted").

Indeed, the primary legal justification the Magistrate Judge provided for the timeframe cutoff was that post-subscription agreement materials implicated Federal

---

[8]    Indeed, that New Era can only identify a *single*, throwaway reference to "time frame" issues in its 18-page memorandum in support of its motion to quash confirms that New Era failed to raise this issue in any meaningful capacity until the hearing. ECF No. 72 at 8.

Rule of Evidence 407's bar against admitting evidence of subsequent remedial measures. Tr. 38:13-17. But that ruling is contrary to law. This is an antitrust case about Defendants' actions in the ticketing realm. The liability in this case has nothing to do with which arbitral forum Defendants select for their (unconscionable) Terms of Use. Furthermore and in any event, as Plaintiffs' counsel explained at the hearing, RFPs 6 and 10 do not seek evidence of remedial measures. *Id.* 38:18-39:4. Rather, they seek advertisements and internal New Era documents probative of bias and the unfairness of the rules under which Plaintiffs will have to arbitrate, so Rule 407 does not apply here.

More basically, Rule 407 does not apply to discovery *at all*, since it is a rule of trial admissibility. *E.g.*, *Poe v. Nw. Mutual Life Ins. Co.*, 2022 WL 2037959, at *2 (C.D. Cal. Apr. 29, 2022) ("Rule 407 … does not bar discovery concerning 'subsequent remedial measures.'") (citation omitted); *Dupree v. Cty. of Los Angeles*, 2010 WL 11597483, at *5 (C.D. Cal. Jan. 15, 2010) (same). The Magistrate Judge made a ruling contrary to law, in ruling otherwise.

Although New Era attempts to downplay the Magistrate Judge's reference to Rule 407 (*infra* New Era Submission at 33), the transcript is clear that the Magistrate Judge held that Plaintiffs could not receive ***any*** internal documents about updates to New Era's rules post-dating the subscription agreement because they supposedly are "not admissible" under Rule 407. Tr. 38:13-17. That ruling was clearly erroneous and contrary to law, especially since the parties never briefed that issue.

## C. The Timeframe Cutoff Is Contrary to This Court's Order Authorizing Discovery

The Magistrate Judge's timeframe cutoff is also clearly erroneous and contrary to law because it overlooked that New Era's rules remained unfinished as of the date of the subscription agreement, meaning the ruling would deprive Plaintiffs of any meaningful materials about ***the Rules under which Defendants seek to compel arbitration***. At the time the subscription agreement was executed, New Era's rules

had placeholders for entire sections which simply stated "COMING SOON."  Ex. O
(NEWERA_001106, at '123, August 2021 New Era Rules).  As the attached redline
shows, the rules have gone through extensive revisions between the time of the
subscription agreement and the current rules.  Ex. P.  The Rules were even updated
after this lawsuit was filed, as recently as March 2022.  Ex. Q (March 2022 New Era
Rules).  Those March 2022 rules are the operative rules under which Defendants seek
to compel arbitration, but the Magistrate Judge's ruling would mean Plaintiffs receive
virtually no documents about their drafting process, which discovery to date indicates
involved Defendants and their counsel at Latham.[9]

This is no exaggeration.  As Plaintiffs explained in opposing New Era's motion
to quash, New Era has revealed that it did not save drafts of its terms (among related
document retention issues), so it has not produced *any* drafts, let alone internal
documents about the rationale for the terms' circumscriptions of consumers' rights.
The effect of the Magistrate's ruling is thus to foreclose any meaningful inquiry into
"the drafting process of [] New Era's rules," a topic on which this Court expressly
authorized discovery.  ECF No. 50 at 2.  This was clear error and contrary to law,
especially given this Court's ruling that "the case law seems to support" Plaintiffs'
requests for discovery into the issue of unconscionability.  *Id.* at 4; *see also Hamby v.
Power Toyota Irvine*, 798 F. Supp. 2d 1163, 1164 (S.D. Cal. 2011) ("a party opposing
a motion to compel arbitration is entitled to discovery relevant to the issue of
unconscionability") (citation omitted).  Indeed, New Era confirms the need for
discovery into how its current Rules and Procedures operate by bragging that its

---

[9]  New Era's assertion that Plaintiffs have received ten versions of New Era's Rules
& Procedures" (*infra* New Era Submission at 34) does not negate the need for
additional discovery, as Plaintiffs need New Era's **internal** documents about New
Era's drafting process, as explained above.  Moreover, that New Era admittedly went
through "at least ten" iterations of its Rules and Procedures is itself suspicious and
warrants further discovery to help explain why, exactly, New Era changed its rules on
a near-monthly basis.

"online dispute resolution model makes it far easier and less costly for consumer claims to be considered" (*infra* New Era Submission n.3). This is exactly the type of factual assertion that Plaintiffs need meaningful discovery about New Era's *current* Rules and Procedures to test.

New Era's arguments below are largely nonresponsive to the basic point that Plaintiffs are entitled to internal documents about the Rules and Procedures under which Defendants seek to compel them to arbitration. New Era's references to the materials it has already produced ignore the unique probative value of internal documents, especially given that much of New Era's correspondence with Live Nation and Latham was done over the phone and Zoom. And New Era's concession that it will produce "smoking gun" documents post-dating the subscription agreement is cold comfort in light of the fact that New Era both insists such documents do not exist and refuses to disclose how it is searching for them. *Compare infra* New Era Submission at 25 *with* ECF No. 79 at 13-14 (noting that New Era refused to engage in basic ESI discovery processes). Similarly, that "Plaintiffs are still entitled to a 30(b)(6) deposition of" New Era (*infra* New Era Submission at 34) offers Plaintiffs little solace, both because New Era will doubtless interpose timeframe objections at the deposition, and because Plaintiffs need New Era's internal materials about its Rules and Procedures to meaningfully question New Era's witness.

### D.     The Timeframe Cutoff Ran Contrary to Rule 26

Finally, the Magistrate Judge misapplied Rule 26. The Magistrate Judge both found that RFPs 6 and 10 sought relevant materials *and* that New Era failed to substantiate its burden assertions. *Supra* at 4-5. On that record, there is no basis for finding the production of post-subscription agreement materials in response to RFPs 6 and 10 disproportionately burdensome. And it bears emphasis that the burden here is truly marginal. Although New Era is a third party, it has thus far produced fewer than 600 documents. Indeed, "New Era has not employed a search term protocol to identify potentially responsive documents" *at all*, ECF No. 74-6 at 9, and instead

appears to be handpicking documents it deems helpful—which both calls into question its search process and confirms that process is not burdensome.

Because the Magistrate Judge's error in applying Rule 26's proportionality standard is contrary to law, it warrants reversal.  *See ExxonMobil Oil Corp*, 2014 WL 12629698, at *2-3 (setting aside "the Magistrate Judge's Order because he erred in determining that the RFPs are not relevant under Federal Rule of Civil Procedure 26(b)(1)"); *see also In re Suboxone (Buprenorphine Hydrochloride and Naloxone) Antitrust Litig.*, 325 F.R.D. 551, 558 (E.D. Pa. 2016) (reversing magistrate judge's order denying discovery where the information sought "<u>may</u> be relevant to Direct Purchasers' product hop claim and [the] request satisfies the Rule 26(b)(1) proportionality standard").

In response, New Era essentially argues that the Magistrate Judge's ruling is entitled to absolute deference under Rule 26, (*infra* New Era Submission at 36), but as one of New Era's own cited sources explains, that is not the law.  *See* 12 Wright et al., Fed. Prac. & Proc. Civ. § 3069 (3d ed.) (noting that "it is also important to avoid the conclusion that district judges are absolutely powerless to alter magistrate-judge resolution of nondispositive matters unless they fall into the clearly erroneous category").  The Magistrate Judge also acknowledged that her rulings were not immune from review, noting that "any legal ruling I make is [subject to] de novo review by the District Judge."  Tr. 21:13-23.

With the standard properly framed, and with respect, the Magistrate Judge's timeframe ruling was clearly erroneous and contrary to Rule 26 because it allowed vague, unsubstantiated burden concerns to trump the plain relevance of materials that this Court has authorized Plaintiffs to pursue.  New Era's cases are not to the contrary, as none involved a motion seeking review of a Magistrate Judge's ruling, as Plaintiffs seek here.  *See Arcadian Capital, LLC v. Cura Ptrs., Inc.*, 2020 WL 8372647, at *2 (C.D. Cal. Dec. 28, 2020) (ruling by Magistrate Judge); *Mfg. Automation & Software Sys., Inc. v. Hughes*, 2017 WL 5641120, at *5 (C.D. Cal. Sept. 21, 2017) (same).

-17-

1

## IV.    CONCLUSION

2          For the reasons set forth above, Plaintiffs respectfully request that the Court

3    modify the Magistrate Judge's November 21, 2022 Order to eliminate the timeframe

4    cutoff for RFPs 6 and 10.

5                                                            *****

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## NONPARTY NEW ERA ADR, INC.'S RESPONSE IN OPPOSITION TO PLAINTIFFS' MOTION FOR PARTIAL REVIEW OF MAGISTRATE JUDGE'S ORDER

## I.  INTRODUCTION

Plaintiffs have failed to articulate any colorable basis for modifying the November 18, 2022 Order of Magistrate Judge Gail J. Standish granting in part and denying in part Nonparty New Era ADR, Inc.'s ("New Era") motion to quash portions of document and deposition subpoenas that Plaintiffs served in connection with limited preliminary discovery as to arbitrability, *see* ECF Nos. 98 ("November 18 Order"), Ex. C ("November 18, 2022 Transcript of Order").  Significantly, Plaintiffs only challenge the portion of the magistrate judge's ruling that imposes a temporal limitation on certain requests where the court denied New Era's motion to quash and ordered New Era to produce materials.[1]  That narrow and reasonable restriction should not be disturbed.

As an initial matter, Plaintiffs have misstated the scope of the limited portion of Magistrate Judge Standish's order that they ask this Court to review.  Notwithstanding her detailed instructions to the parties during the November 18, 2022 hearing as to when the temporal limitation would and would not apply, Plaintiffs mischaracterize the magistrate's ruling as a "rigid timeframe cutoff" and incorrectly paraphrase it as:  "New Era does not have to produce virtually *any* documents dated after it executed its confidential 'subscription agreement' with Defendants in June 2021." (Plaintiff's Submission ("Pl. Sub."), *supra* at 1.) That is not what Judge Standish ordered, nor is it the reality of the discovery that Plaintiffs have already

---

[1] Although Plaintiffs suggest that New Era's motion to quash was not timely filed—a contention that New Era strongly disputes, as set forth in previous briefing, and to which Judge Standish gave short shrift, *see* Ex. C, at 9:4-15—that issue is not before this Court.  As Plaintiffs acknowledge, the only component of the magistrate judge's order that they challenge pertains to the time limitation placed upon certain subpoena categories. *See supra*, at 1.

received from New Era and that New Era is required to search for and produce going forward.  In fact, as set forth herein, Judge Standish only applied the June 22, 2021 cutoff to two of the requests where she denied New Era's motion to quash.  And even then, she recognized exceptions where documents from subsequent to that date should be produced.  The time restriction articulated by Judge Standish is much narrower in its terms and its effect than Plaintiffs convey to this Court.

The temporal limitation that Plaintiffs challenge — corresponding to the signing of Live Nation's subscription agreement with New Era on June 22, 2021—is well-reasoned and narrowly tailored to apply only to two particular requests where materials from after that cutoff would have limited if any, relevance to the focused issue of arbitrability under Defendants' Terms of Use.  Furthermore, the magistrate judge was fully within her broad discretion to narrow the scope of Plaintiffs' overbroad requests with reference to time.  Plaintiffs advance four arguments in challenging the time restriction, but none overcomes the deference to which the magistrate judge's determination based on the facts and law is entitled.

Because the magistrate judge's ruling on this nondispositive discovery order was neither clearly erroneous nor contrary to law, Plaintiffs' Rule 72 motion for review should be denied.

## II. LEGAL STANDARD

Under Rule 72, a district court judge may set aside a magistrate judge's order on a nondispositive motion only if it is "clearly erroneous" or "contrary to law." Fed. R. Civ. P. 72; 28 U.S.C. § 636(b)(1)(A) (district judge may reconsider magistrate judge's order where it is "clearly erroneous" or "contrary to law"); *see also Bhan v. NME Hosps., Inc.*, 929 F.2d 1404, 1414 (9th Cir. 1991) (a "magistrate's decision on a nondispositive issue will be reviewed by the district court under the clearly erroneous standard" while "[d]ecisions on dispositive issues will be reviewed *de novo*"). "[T]he clearly erroneous standard applies to factual findings and discretionary decisions made in connection with non-dispositive pretrial discovery matters."

*Crispin v. Christian Audigier, Inc.*, 717 F. Supp. 2d 965, 971 (C.D. Cal. 2010).

The law is clear that a magistrate judge's decisions with respect to nondispositive orders are "entitled to great deference by the district court." *United States v. Abonce-Barrera*, 257 F.3d 959, 969 (9th Cir. 2001); 12 Wright et al., Fed. Prac. & Proc. Civ. § 3069 (2d ed.) ("[I]t is extremely difficult to justify alteration of the magistrate judge's nondispositive actions by the district judge."). "[R]eview under the clearly erroneous standard is significantly deferential, requiring a definite and firm conviction that a mistake has been committed." *Sec. Farms v. Int'l Bhd. of Teamsters, Chauffers, Warehousemen & Helpers*, 124 F.3d 999, 1014 (9th Cir. 1997). "The reviewing court may not simply substitute its judgment for that of the deciding court." *Grimes v. City & Cnty. of San Francisco*, 951 F.2d 236, 241 (9th Cir. 1991).

## III.    FACTUAL BACKGROUND AND THE MAGISTRATE JUDGE'S RULING

As the Court is well aware, this proceeding stems from antitrust claims that Plaintiffs filed against Defendants Live Nation and Ticketmaster (collectively, "Live Nation" or "Defendants") on behalf of a mass group of consumers.  In accord with the arbitration clause in the Defendants' Terms of Use that the Plaintiffs had all accepted, Live Nation moved to compel the dispute to arbitration before New Era, the designated ADR provider under the Terms of Use. In response, Plaintiffs alleged that the arbitration provision was unconscionable, citing their belief that New Era and Defendants had "coordinated" to develop an arbitration forum that would be biased against consumers. (ECF No. 34-1, at 6.) Plaintiffs asked this Court to authorize "limited discovery regarding whether a valid arbitration agreement exists," (ECF No. 34-1, at 8), in order to provide them with an evidentiary basis upon which to oppose arbitration on the grounds of unconscionability.

After full briefing by the parties (which did not include New Era, a nonparty), the Court granted Plaintiffs "limited" discovery in order to oppose Defendants'

motion to compel arbitration."[2] (ECF No. 50, at 3.) Significantly, the Court qualified its authorization by recognizing that limitations in the scope of discovery might well be appropriate: "the Court is not convinced that all the evidence Plaintiffs seek is necessary . . . . Because the full scope of Plaintiffs' requested discovery is not known to the Court, the Court is not able to grant Plaintiffs' entire request at this time." (ECF No. 50, at 4.)

Shortly thereafter, Plaintiffs issued to nonparty New Era a document subpoena comprising sixteen separate requests and a deposition subpoena encompassing twelve topics. (ECF Nos. 74-1, 74-3.) Given the expansive overbreadth of the requests, New Era met and conferred with Plaintiffs in an effort to narrow the scope, even before its responses were due. (ECF No. 74, ¶ 5.) New Era timely served responses and objections to both subpoenas on August 1, 2022; it agreed to produce materials in response to the majority of requests but lodged objections as to others. (*Id.*, ¶¶ 6, 7.) New Era then continued to meet and confer with Plaintiffs about the requests to which it had objected, and as part of that good faith process, made certain substantive disclosures and offers of proof to Plaintiffs in an effort to narrow issues. (*Id.*, ¶ 8.) When that process proved unproductive, New Era filed a motion to quash in connection with five document requests and four deposition topics. (ECF Nos. 71-74.) At the same time, New Era made a substantial production of approximately 500 documents comprising more than 2,000 pages. *See* Declaration of Sandra Musumeci ("Musumeci Decl.") at ¶ 2. New Era's production included its subscription agreement with Defendants and ***all*** of its correspondence with Defendants and Latham & Watkins ("Latham")—without restriction as to timeframe—including all marketing materials shared with Defendants and Latham. (*Id.*, ¶ 2.) The Court delegated determination of New Era's motion to quash to Magistrate Judge Gail J. Standish.

---

[2] While the Court characterized the Plaintiffs' allegations of potential unconscionability as "troubling," the Court did not make any factual findings of potential or actual wrongdoing. (ECF No. 50, at 3.)

(ECF No. 75.)

At the November 18, 2022 hearing on New Era's motion, Judge Standish noted that she had read all briefing and supporting materials filed by the parties, and she provided Plaintiffs and New Era an open opportunity to be heard on the motion, as well as in connection with any of the particular requests being challenged. (Ex. C.) Even while issuing her preliminary ruling on the record, Judge Standish invited Plaintiffs and New Era to respond as they wished. (*Id.*) In the end, the magistrate judge granted New Era's motion in part and denied it in part, meaning she found certain requests by Plaintiffs' to be overbroad and/or irrelevant to the narrow issue of unconscionability, and she ordered New Era to produce materials in response to largely narrowed versions of certain of the challenged requests. (ECF Nos. 98, 101.) The magistrate judge followed her ruling at the hearing with an abbreviated written order, also dated November 18, 2022, and she expressly noted that in the event of any discrepancy, the transcript of the hearing controlled. (ECF No. 98, at 2.)

Plaintiffs now seek district court review of one narrow portion of the magistrate judge's ruling, specifically as concerns the time restriction she imposed on New Era's duty to produce documents responsive to Requests No. 6 and 10.  In response to New Era's overbreadth and relevance objections, Judge Standish ruled that New Era need only produce advertisements and its internal documents related to Defendants and Latham through the time that Live Nation signed its subscription agreement with New Era—June 22, 2021.  In particular, in connection with Request No. 6, Judge Standish explained that her ruling was not limited to social media:

> So, that's how we're going to go. You know, provide the social media accounts for the – the later stuff. Make sure that they have access so if there's some back and forth required so that they can go do that on their own. But with respect to everything else, let's – let's use when, you know, the allegedly bad arbitration term was finalized and the -- and the subscription agreement as a cutoff.

(Ex. C, at 27:2–8.)  Similarly, Judge Standish repeated that the subscription agreement temporal cutoff would apply to internal communications, including about New Era's Rules & Procedures.  (*Id.,* at 36–37.)

To be clear, the Court did not set a "rigid timeframe cutoff" of June 22, 2021 as to all discovery as Plaintiffs suggest. (Pl. Sub., *supra* at 1.) Instead, Judge Standish articulated where the subscription agreement temporal cutoff would and would not apply:

- To the extent New Era offered or executed "agreements with arbitrators who, as a result, have a vested interest in New Era," such information was to be produced, regardless of time frame, including after June 22, 2021. (ECF No. 98, at 2.)

- Similarly, the Court ruled that New Era must produce any "communications with individual arbitrators that bear on potential conflict of interest or bias" and "communication between New Era and Defendants and the law firm of Latham & Watkins" that "bear on potential conflict of interest or bias" due to potential equity or ownership interest in New Era, without regard to any time restriction, including after June 22, 2021.  (*Id.*, at 2–3.)

- The Court ruled that "[a]ll contracts with Defendant, to the extent not already produced, must be provided."  (*Id.*, at 3.) By its terms, this would not limit production to just agreements that preceded the June 22, 2021 subscription agreement.  In other words, no time restriction applies here, and New Era is required to produce such documents from after June 22, 2021.

- The Court granted New Era's motion to quash as to Request 13 related to business plans, with the important exception that New Era would be required to produce any "internal plans or presentations related to Defendants and/or Latham & Watkins (including any plans to deprive

Defendants' customers or clients of access to the court system or "litigation rights"), regardless of timing – which would include after June 22, 2021. (*Id.*, at 3.)

Throughout her ruling on the record, Judge Standish was clear that to the extent that New Era possessed "smoking gun" documents revealing a desire to give advantageous treatment to Defendants in its Rules & Procedures or in its consideration of consumer claims, New Era should produce such materials, regardless of date.[3] (Ex. C, at 25:2–29:14.) But as a guiding principle, Judge Standish wanted discovery to be targeted to issues of unconscionability in connection with Defendants specifically:

> I really want this to be related to the issue Judge Wu raised were these – was there some kind of collusion where these – the terms, conditions or the rules or lack of rules or whatever was specifically drafted to be in favor, not of just I want – we want our clients to come to us but in favor of the outcome being biased for – in favor of Ticketmaster and against their customers or clientele.

(*Id.*, at 36:23–37:5.) Judge Standish further explained that she would not allow a fishing expedition into New Era's business documents at large for the period after Defendants had signed their agreement with New Era. (*Id.*, at 26:23–27:8.)

Because Magistrate Judge Standish's ruling as to temporal limitations was reasoned, focused, and in accord with the law, Plaintiffs' motion seeking review of

---

[3]    Much of the court's ruling on this point is academic because the theoretical "smoking gun" documents that would fall within the exceptions cited by Judge Standish simply do not exist. Contrary to Plaintiffs' allegations, New Era is not biased against consumers, nor are its mass arbitration rules "consumer-harming." (Pl. Sub. at 1.) In fact, New Era's online dispute resolution model makes it far easier and less costly for consumer claims to be considered, in contrast to the "mass arbitration strategy" pioneered by Plaintiffs' counsel, which uses the threat of massive filing fees from traditional arbitration providers to pressure defendants into settlements, leaving consumers' claims unheard and unresolved. (ECF No. 73, at ¶ 3.)

this portion of her ruling should be denied.

## IV.    ARGUMENT

Plaintiffs seek this Court's review of the magistrate judge's order based on four points.  As set forth herein, none of the Plaintiffs' arguments has merit or warrants a reversal of the temporal restriction.

### A.    The Evidence Already Produced by New Era Provides No Basis for Reversing the Magistrate Judge's Ruling.

For their first point, Plaintiffs argue that evidence already produced by New Era supports their theory that Defendants' arbitration clause delegating consumer disputes to New Era is unconscionable, and more specifically, that it highlights the relevance of the period *after* Defendants signed the subscription agreement to the issue of bias. In effect, Plaintiffs argue that if Judge Standish had known about the evidence they highlight in their submission, she would not have restricted New Era's production to pre-subscription agreement materials.  This speculative argument fails on multiple counts.

First, Plaintiffs actually presented to the magistrate judge during the November 18, 2022 hearing their view that certain evidence produced by New Era (including evidence that post-dated Defendants' subscription agreement) was particularly "probative of bias" and therefore justified the additional discovery that New Era was seeking to quash. (Ex. C, at 10:24-12:5.) For example, Plaintiffs expressly highlighted to Judge Standish that after the subscription agreement was signed, New Era cited Latham as an "evangelist" and Live Nation as one of its "anchor" clients.[4]  (*Id.* at 11:19-23.) Further, during oral argument, New Era responded directly to Plaintiffs' arguments about the relevance of certain evidence:

---

[4] It warrants clarification that the presentation upon which Plaintiffs' "evangelist" argument was based included Latham among an array of 14 law firms and businesses with which New Era "evangelists" were affiliated.  *See* Ex. K at NEWERA_001977.

1

2         [T]hat discovery does not bear out that there was anything

3         going on other than an arm's-length transaction. The -- the

          allegation that -- that the rules and procedures were

4         somehow catered specifically to the needs of Live Nation

5         or Latham and Watkins is not borne out at all by the

          discovery that's been produced. And, in fact, you didn't

6         hear Mr. Sears say that it was. What he said is that there

7         was a subscription agreement that has never been

          contested, that there were -- that there were negotiations

8         and discussions. Of course, there were. That's the way any

9         -- any company enters a contract with a -- a customer, and

          -- and any startup company, as New Era admittedly was

10       and is still a young company, has customers who are going

11       to be their early customers. There is nothing inherently

          wrong, underhanded, or evil about that.

12

13  (*Id.* at 14:16-15:5.) In other words, the magistrate judge actually did consider

14  Plaintiffs' argument that certain "probative" evidence already produced supported a

15  denial of New Era's motion to quash, and she ruled accordingly. Her determination

16  as to whether certain produced evidence "justified" production of additional evidence

17  pursuant to the challenged subpoena categories is primarily a factual one, and

18  accordingly is entitled to deference. It may not be altered unless it was "clearly

19  erroneous," which it patently was not.[5] *See* Fed. Civ. P. 72; 28 U.S.C. §

20  636(b)(1)(A).

21       Second, Plaintiffs' citation of evidence that they *could* have presented to the

22  Magistrate Judge at the November 18, 2022 hearing, but affirmatively chose not to,

23  should not form the basis for a reversal under Rule 72. *See, e.g., Haines v. Liggett*

24

---

25  [5] Plaintiffs' citation to *Crispin*, 717 F. Supp. 2d at 980 does not weigh in favor of a

26  different result. In that highly fact-specific case, the magistrate judge misconstrued

    as a factual matter whether certain online communication technologies allowed for

27  private messaging versus public posting, and thus, were statutorily exempt from

28  subpoena. No such indisputable mistake of fact is alleged here.

*Grp. Inc.*, 975 F.2d 81, 91 (3d Cir. 1992) ("[T]he district court is not permitted to receive further evidence" on nondispositive matters.); *Moore v. Ford Motor Co.*, 755 F.3d 802, 808 (5th Cir. 2014) ("[T]here appears to be no basis for the district court to have received additional evidence" when considering a Rule 72 nondispositive motion); *Viesti Assocs., Inc. v. Pearson Educ., Inc.*, No. 12-cv-01431-PAB-DW, 2014 WL 12741118, at *5 (D. Colo. Feb. 21, 2014) (citing *Haines*); *First Savings Bank, F.S.B. v. U.S. Bancorp*, 184 F.R.D. 363, 366 (D. Kan. 1998) (citing *Haines* and collecting cases); *Schmidt v. Navistar, Inc.*, No. 18-321 KG/JFR, 2020 WL 3542324, at *2 (D.N.M. June 30, 2020) *(*citing *Haines); State Farm Mut. Auto. Ins. Co. v. CPT Med. Servs., P.C.*, 375 F. Supp. 2d 141, 158 (E.D.N.Y. 2005) ("Defendants have not cited any case, and the Court has not found one, in which Rule 72(a) objections are sustained based on evidence not presented to the magistrate judge."). The case of *Jones v. Blanas*, 393 F.3d 918, 935 (9th Cir. 2004), which Plaintiffs cite to suggest that it would be an abuse of discretion for the Court not to consider Plaintiffs' newly-presented evidence in reviewing the magistrate's order, is plainly inapposite. That case involved the presentation of new evidence to the district court considering whether to adopt a magistrate judge's report and recommendation as to a dispositive summary judgment motion. *Id.*   The *de novo* standard for a district court's review of a magistrate's recommendation on a dispositive motion is entirely different from the deferential standard of review for a nondispositive motion like the motion to quash here.[6] *Id.*

　　　　Plaintiffs' argument that they were "deprived" of an "opportunity" to present

---

[6]   In any event, even in the context of reviewing a report and recommendation for a summary judgment motion, the appellate court ruled that the district court had to actively exercise its discretion in deciding whether to consider untimely evidence presented by the *pro se* inmate plaintiff; the appeals court did not hold that a district court always has to consider new evidence not presented to the magistrate.  *Blanas*, 393 F.3d. at 935.

evidence from New Era's production in their motion to quash briefing is similarly unpersuasive. (Pl. Sub. at 4.) Indeed, Plaintiffs acknowledge that they received a document production from Defendants, (*Id.* at 3, 4), and that production included the same communications between New Era and Live Nation and/or Latham that Plaintiffs highlight to this Court. Further, the arguments that Plaintiffs make now with respect to certain New Era documents simply mirror the arguments that Plaintiffs made about publicly available New Era marketing materials in their initial motion seeking limited discovery on arbitrability. *See generally* ECF Nos. 34-1, 37. New Era's discovery has not revealed any "smoking guns" or new evidence suggestive of bias beyond what Plaintiffs have been repeatedly trying to characterize as bias since before discovery began:  the fact of a business relationship with Live Nation and New Era's enthusiasm for that relationship.

Additionally, Plaintiffs could have presented fulsome arguments about the evidence produced by New Era and Defendants before Judge Standish at the November 18, 2022 hearing, but they expressly chose to limit their argument as to how evidence produced by New Era supported their position on the motion to quash:

> Just the other point that I would make is that since we briefed this motion, since we filed our opposition, we've gotten some documents from [New Era], and they note that in their reply. Those documents aren't before the Court. *We think that obviously a lengthy recitation of them is beyond the scope of this hearing.* We think they really bolster our case for some of these RFP's in particular.

(Ex. C at 10:24-11:5 (emphasis added).)  Plaintiffs' retort that they did not waive their right to argue the evidence because they made the above statement before the court set its temporal limitation is belied by the fact that the magistrate judge repeatedly invited the parties to raise issues and concerns as she went through the challenged requests one by one.  *See, e.g.,* Ex. C at 12:6-7 (Court responding to Plaintiffs' arguments about "red flags" in New Era's production with, "All right. We'll talk about

1  some of those issues as we go through categories."). Having chosen not to address

2  these arguments before the magistrate judge, Plaintiffs should not now be permitted

3  to raise factual arguments for the first time before the district court on a Rule 72

4  motion. *See Haines,* 975 F.2d at 91; *Moore,* 755 F.3d at 808.

5      Third, Plaintiffs' characterization of certain evidence that New Era produced

6  as indicative of bias is belied by the evidence itself. Indeed, a *pro forma* welcome

7  email from New Era's Chief Executive expressing enthusiasm at the commencement

8  of a new customer relationship (Pl. Sub. at 8) is hardly indicative of bias. Nor is an

9  expression of "excitement" or "awesomeness" about a start-up business securing a

10  sizeable customer or a company citing its existing customers in an effort to attract

11  new customers. (*Id.*) Plaintiffs are clearly grasping at straws by trying to spin the

12  enthusiasm of founders of a young business with respect to a new customer into

13  something ominous and conspiratorial. Similarly, the fact that New Era sought to

14  identify through its contacts at Latham other businesses that might be interested in

15  New Era's arbitration services (*id.* at 8) is hardly indicative of anti-consumer bias or,

16  more specifically, a bias in favor of Live Nation (which is what the Court has

17  identified as the relevant issue at this juncture). Likewise, the fact that Defendants

18  renewed their subscription agreement with New Era for a second year does not speak

19  to bias, regardless of the number of Live Nation arbitrations that New Era actually

20  conducted that year. The June 22, 2021 subscription agreement makes clear that the

21  relationship was intended potentially to extend across multiple years, and pricing after

22  the first year was negotiated and set before signing the initial Subscription Agreement

23  on June 22, 2021. (Ex. L.) In other words, the evidence Plaintiffs cite – much (if not

24  all) of it post-dating June 22, 2021 – actually supports the reasonableness of the June

25  22, 2021 cutoff date.

26      Finally, Plaintiffs' mischaracterization of the evidence showing that Latham

27  "reviewed drafts of New Era's rules and discussed them with New Era before signing

28  the subscription agreement" (Pl. Sub. at 10) is belied by the evidence itself. A plain

-30-

reading of the email exchange produced as NEWERA_000168 (Ex. N) makes clear that New Era was finalizing its Rules & Procedures so that it could share a complete version with Latham before Live Nation signed its subscription agreement.  There is no evidence suggesting that Latham or Defendants provided "feedback" into the rules, before or after June 22, 2021; instead, the email communication reflects a normal arms-length transaction whereby information was shared before the deal was executed.  Plaintiffs' speculation as what was "possible" or "likely" does not merit a finding that Judge Standish's determination was clearly erroneous.

In any event, Plaintiffs already have these pre- and post-subscription agreement communications and facts, and they are free to characterize them as they wish in opposing Defendants' motion to compel arbitration.  But under no reasonable reading could such evidence be viewed as "smoking guns" or so suspicious as to warrant the issuance of additional discovery to probe such matters further.  As Judge Standish prudently noted, "[a]nd, so, generally, one business trying to compete with another business I don't find relevant to whether a particular set of rules is biased or not." (Ex. C at 48:5-8.)

In short, Plaintiffs' protestations about the evidence already produced by New Era do not provide any basis for modification of Judge Standish's order.[7]

### B.    New Era's Motion to Quash Certain Subpoena Categories Based on Irrelevance and Overbreadth Encompassed Relevant Time Frame.

Plaintiffs' next contention—that Judge Standish's ruling as to time frames was

---

[7] The Florida case cited by Plaintiffs does not lead to a different conclusion.  In that highly fact-specific defamation case, the district court reversed an order to quash a subpoena where the magistrate judge not only ignored the defendant's statements about relevance, but also improperly denied the subpoena as "harassing" because it used inflammatory search terms, even though the subpoena was issued to establish the truth of a statement that the plaintiff was "foul mouthed."  *Matter of Application of O'Keeffe*, 184 F. Supp. 3d 1362, 1370-71 (S.D. Fla. 2016)

contrary to law because New Era did not itself raise the issue of time frames—is belied by the record and does not present grounds for reversal.

New Era's motion to quash Requests No. 6, 7, 10, and 13 in their totality (and Request No. 8 as concerned subscription agreements with customers other than Live Nation) was premised on arguments that the requests were overbroad and sought material not relevant to the narrow question of unconscionability. Implicit and included within an all-encompassing relevance objection is New Era's challenge to the specific components that make up the request, including time frame. (By way of example, if a piece of evidence is not relevant, it is not relevant regardless of whether that evidence pertained to a Monday, Tuesday, Wednesday, Thursday, or Friday, and it is not necessary to articulate each of those time frames.) But furthermore, New Era **did** expressly raise the issue of temporal scope and its connection to the claims involving Defendants here in its motion to quash briefing. *See, e.g.,* ECF No. 72 at 8 (noting overbreadth of Request 6 seeking advertising "irrespective of media, audience, time frame, product, or message"), 9 (challenging requests that seek information "beyond New Era's interactions with Defendants"), 14-15 (noting Request 10 is "vast in scope" and "elicits documents related to New Era's ordinary business operations" that "would in no way relate to Plaintiffs' claims that New Era and Defendants worked together in a biased way"). Thus, it is folly to suggest that time frame was not raised when New Era objected to the scope of the requests as overbroad in total, and also specifically addressed the lack of time restrictions.

Further, at the hearing on the motion to quash, during the Court's discussion of Request No. 6 pertaining to advertising, counsel for New Era asked the Court directly about the time frame of its ruling: "I have a question regarding the time frame, the relevant time frame. You know, the contract -- the subscription agreement here at issue was -- was from 2021." (Ex. C at 22:10-13.) Using New Era's social media

postings as an example,[8] New Era posited that recent publicly available marketing was not relevant to issues of arbitrability concerning Live Nation and therefore should not need to be produced.  (*Id.* at 22:10-22.)  In other words, the record is clear that New Era raised the issue of temporal scope as soon as it became clear that Judge Standish was ordering production of some portion of the challenged requests.

Moreover, Plaintiffs are wrong to suggest that Judge Standish based her time frame ruling on Federal Rule of Evidence 407.  (Pl. Sub. at 14.)  The transcript makes clear that Judge Standish cited the principle of Rule 407 in response to a vague protest by Plaintiffs that the court's time limitation would restrict them from obtaining discovery about post-subscription agreement changes.  Understanding Plaintiffs to be arguing that her ruling would preclude them from exploring post-subscription agreement changes to the New Era Rules & Procedures, Judge Standish reminded counsel that under Federal Rule 407, evidence of subsequent remedial measures are not admissible to show culpability. (Ex. C at 38:13-17.)  At that point, Judge Standish had already explained that her ruling on temporal scope was based on relevance and the narrow issue of unconscionability for which limited discovery from nonparty New Era had been authorized.[9] (*Id.* at 23:22-24:2, 26:12-27:8.) Plaintiffs' attempt to manufacture a legal error where none exists by contorting the court's passing reference to Rule 407 into the supposed legal basis for her ruling is both transparent

---

[8] Contrary to Plaintiffs' assertions, the discussion of temporal scope did not pertain exclusively to social media.  In fact, social media was taken out of the time limitation discussion entirely, in that Judge Standish instructed New Era to identify for Plaintiffs its relevant social media accounts, in lieu of producing every posting from any or all periods of time, and expressly stated that the time cutoff of the subscription agreement would apply "with respect to everything else." (Ex. C at 23:9-21, 26:12-27:8.)

[9] Further, Plaintiffs' counsel acknowledged on the record that Rule 407 did not apply, and Judge Standish responded in agreement and moved on to address Plaintiffs' question about what operative rules they might have to follow should arbitration be ordered.  (*Id.* at 38:20-39:17.)

1    and misguided.  There is no legal error warranting reversal.

2    **C.    The Reasonable Time Limitations Imposed by Judge Standish**
3    **Comport with the Narrow Discovery Authorized by this Court.**

4    Plaintiffs' third challenge to Judge Standish's imposition of time frames is
5    untethered from the actual ruling itself.  Plaintiffs point out that New Era's Rules &
6    Procedures were still evolving at the time that Live Nation signed its subscription
7    agreement in June 2021 and argue that Judge Standish's time restriction would
8    prevent Plaintiffs from exploring New Era's drafting process, which this Court cited
9    in its order permitting limited discovery.  (ECF No. 50, at 4.) Plaintiffs are wrong.

10    First, as noted, Plaintiffs overlook the limited scope of the magistrate judge's
11    time restriction, which only applies to Requests 6 (pertaining to advertising materials)
12    and 10 (the catchall request that encompasses New Era's internal documents).
13    Plaintiffs also ignore the fact that they have already received from New Era ***all***
14    communications between New Era and Live Nation, and New Era and Latham (not
15    limited by the June 22, 2021 time restriction).  Indeed, at least half of the more than
16    500 documents that New Era has produced thus far are from after June 22, 2021.  *See*
17    Musumeci Decl. at ¶ 3.  Plaintiffs' assertions that they will "receive virtually no
18    documents about their drafting process" and that New Era did not produce any drafts,
19    (Pl. Sub. at 15) are similarly contradicted by the fact that they have already received
20    versions of New Era's Rules & Procedures reflecting changes (if any) made across at
21    least ten different dates during the period between May 20, 2021 and July 20, 2022.[10]
22    *See* Musumeci Decl. at ¶ 2.  Furthermore, Plaintiffs are still entitled to a 30(b)(6)

23    _____

24    [10] Plaintiffs gratuitously assert, without any support, that "discovery to date indicates
25    [that New Era's Rules & Procedures drafting process] involved Defendants and their
counsel at Latham.  (Pl. Sub. at 15.) The only evidence that Plaintiffs cite to suggest
26    any involved by Defendants and Latham in drafting New Era's rules is
NEWERA_000168 (Ex. N), and as noted, nothing about that email chain suggests
27    that Defendants and/or Latham were providing input into the drafting process. *See*
28    *infra*, at 12.

deposition of a New Era representative, whom they may choose to question about the process for drafting New Era's Rules & Procedures. And as noted, to the extent that New Era possesses "smoking gun" documents discussing preferences that might be given to Defendants or Latham, or anti-consumer biases in the Rules & Procedures, the court ordered New Era to produce those with regard to their date.[11]  Plaintiffs have ample opportunity to explore New Era's process for drafting and revising its Rules & Procedures, for purposes of opposing Defendants' motion to compel arbitration.

Significantly, the magistrate judge also heard and rejected Plaintiffs' argument that New Era's ongoing revision of its rules of itself suggests potential bias:  "We're not going to have a whole secondary litigation that's not something that's in the complaint because the rules are different than what they were when you filed the complaint that says -- and, you know, every time they change it, we are assuming that they're colluding again for biased purposes." (Ex. C at 39:11-17.)

The magistrate judge's ruling permits a full airing of issues concerning the process of drafting New Era's Rules & Procedures with respect to the Defendants and Latham, and it allows for discovery well beyond that.  The order requires New Era to produce internal communications concerning its drafting processes "to the extent that they related to the particular Defendant in this case (and counsel Latham & Watkins)" through June 22, 2021. (ECF No. 98, at 3.) And it is abundantly clear that Judge Standish was guided by this Court's articulation of the relevant issue:  "whether the terms and conditions and rules of arbitration for use by this Defendant were drafted specifically to be unfair to Ticketmaster customers." *Id.* The reasonable limitations set by Judge Standish's order are due deference and should not be disturbed.

---

[11] New Era has followed a careful and robust process to identify responsive documents, consistent with its obligations under law, and per Judge Standish's order, Plaintiffs may question New Era's representative about that process during the 30(b)(6) deposition. (Ex. C, at 52:8-23.)

### D.   The Reasonable Time Limitations Defined by Judge Standish Comport with Rule 26 and Reflect an Appropriate Analysis of Proportionality.

Finally, Plaintiffs are mistaken in their suggestion that burden is a threshold issue under Fed. R. Civ. P. 26.  It is not, and a court is well within its discretion to refuse to allow certain discovery – even if relevant – if it is not proportional to the needs of the case.  "Under amended Rule 26(b), discovery must be 'proportional to the needs of the case, considering the importance of the issues at stake in the action, the amount in controversy, the parties' relative access to relevant information, the parties' resources, the importance of the discovery in resolving the issues, and whether the burden or expense of the proposed discovery outweighs its likely benefit.'" *Arcadian Capital, LLC v. Cura Ptrs., Inc.*, No. CV 20-03372-JWH (ASx), 2020 WL 8372647, at *2 (C.D. Cal. Dec. 28, 2020) (citing Fed. R. Civ. P. 26(b)(1)).  Rule 26's proportionality requirement "is designed to avoid ... sweeping discovery that is untethered to the claims and defenses in litigation." *Mfg. Automation & Software Sys., Inc. v. Hughes*, No. CV 16-8962, 2017 WL 5641120, at *5 (C.D. Cal. Sept. 21, 2017).  For example, it is well-settled that "[d]istrict courts need not condone the use of discovery to engage in fishing expeditions." *Rivera v. NIBCO*, 364 F.3d 1057, 1072 (9th Cir. 2004) (internal quotation marks and citations omitted).  Proportionality is particularly important in a context like the instant case, where preliminary discovery has been authorized for a particular limited purpose, and the discovery is sought from a nonparty to the suit.  Judge Standish herself noted that she accounted for New Era's limited presentation about burden in her Rule 26 analysis.  She further noted that, while best practice may be for a party seeking to quash a subpoena to establish "burden" by citing the volume of data, time, and cost that compliance with the subpoena would implicate, a movant's failure to present such a showing of burden "is not dispositive." (Ex. C at 7:13-22.)  Even a cursory review of the hearing transcript makes clear that Judge Standish was well aware of the balancing

analysis that the law mandated that she conduct in deciding whether to grant or limit discovery, and her weighing of the factors at issue in deciding on whether and how to time-restrict New Era's production as to specific requests was legally sound and based on well-articulated reason. Her determination is entitled to deference under Rule 72, is not clearly erroneous, and should be upheld.

## V. CONCLUSION

Plaintiffs have failed to present any legitimate basis for modifying Magistrate Judge Standish's ruling on New Era's motion to quash, and in particular, the sound determination that New Era need only produce advertisements and internal documents and communications involving Defendants and Latham through June 22, 2021, when Defendants signed a subscription agreement with New Era. Plaintiffs overstate the breadth of the temporal limitation that they challenge, and they exaggerate the effect that this reasonable temporal limitation will have on the availability of relevant evidence from which to oppose Defendants' motion to compel arbitration. The law is clear that a nondispositive magistrate decision is entitled to deference and may only be reversed if clearly erroneous or contrary to law. The imposition of a reasonable temporal limitation here with respect to two of the requests is neither. Plaintiffs' motion should be denied.

1 | Dated:  December 14, 2022

Respectfully Submitted,

QUINN EMANUEL URQUHART &
SULLIVAN, LLP

By: */s/ Kevin Y. Teruya*

Kevin Y. Teruya (Bar No. 057645)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los    Angeles,    CA    90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN LLC

By: */s/ Warren D. Postman*

Warren D. Postman (Bar No. 330869)
wdp@ kellerpostman.com
Albert Y. Pak (admitted *pro hac vice*)
albert.pak@ kellerpostman.com
1100 Vermont Avenue, N.W.
12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123

*Attorneys for Plaintiffs Skot Heckman,
Luis Ponce, Jeanene Popp, and Jacob
Roberts*

Case No. 2:22-cv-00047-GW-GJS
PLAINTIFFS' AND NEW ERA'S JOINT SUBMISSION REGARDING THE MAGISTRATE JUDGE'S
NOVEMBER 21, 2022 ORDER

RILEY SAFER HOLMES & CANCILA LLP

By:   */s/ Joshua A. Roquemore*
      Joshua A. Roquemore (SBN 327121)
      jroquemore@rshc-law.com
      100 Spectrum Center Drive, Suite 440
      Irvine, CA 92618
      Telephone: (949) 359-5500
      Facsimile: (949) 359-5501

      Sandra L. Musumeci (*pro hac vice*)
      smusumeci@rshc-law.com
      136 Madison Avenue, 6th Floor
      New York, NY  10016
      Telephone:  (212) 660-1000
      Facsimile:  (212) 660-1001

      Sondra   A.   Hemeryck   *(pro   hac   vice
      forthcoming)*
      shemeryck@rshc-law.com
      70 West Madison Street, Suite 2900
      Chicago, IL  60602
      Telephone:  (312) 471-8700
      Facsimile:  (312) 471-8701

             *Counsel for Nonparty New Era ADR, Inc.*