1
2
3
4
5
6
7
8
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM & WATKINS LLP
  Timothy L. O'Mara (Bar No. 212731)
    *tim.o'mara@lw.com*
  Sadik Huseny (Bar No. 224659)
    *sadik.huseny@lw.com*
  Andrew M. Gass (Bar No. 259694)
    *andrew.gass@lw.com*
  Kirsten M. Ferguson (Bar No. 252781)
    *kirsten.ferguson@lw.com*
  Alicia R. Jovais (Bar No. 296172)
    *alicia.jovais@lw.com*
  Robin L. Gushman (Bar No. 305048)
    *robin.gushman@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C.
and Live Nation Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>**DEFENDANTS' REPLY IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>The Honorable George H. Wu<br><br>Hearing Date: May 1, 2023<br><br>Hearing Time: 8:30 a.m.<br><br>Courtroom: 9D, 9th Floor |

REDACTED VERSION OF DOCUMENT
PROPOSED TO BE FILED UNDER SEAL

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................ 1

II.     DISCOVERY PUT THE LIE TO PLAINTIFFS' BIAS
        ALLEGATIONS ........................................................................................ 2

III.    ARGUMENT .............................................................................................. 4

        A.      Plaintiffs' Challenges Have Been Delegated to the
                Arbitrator ....................................................................................... 4

        B.      The Terms Are Not Unconscionable ........................................... 6

                1.      The Terms Are Not Procedurally Unconscionable ............. 6

                2.      The Terms Are Not Substantively Unconscionable ............ 8

                        a.      New Era's Rules Promote the Efficient,
                                Bilateral Resolution of Individual
                                Arbitrations, as the FAA Intends ....................... 8

                                (1)    Mass Arbitrations Are Not "Class" or
                                       "Representative" Proceedings .................... 9

                                (2)    The FAA Applies .................................... 11

                        b.      New Era Is a Neutral Forum ............................ 12

                        c.      New Era's Rules on Page Limits Are
                                Discretionary ................................................... 14

                        d.      New Era's Rules Allow for Discovery
                                Consistent with Industry Standards ................. 15

                        e.      New Era's Arbitrator Selection Rules Are
                                Fair and Consistent with Industry Standards ... 18

                        f.      The Class Action Waiver and Appeal
                                Provision Are Enforceable .............................. 19

        C.      Even If the Selection of New Era Arbitration Were
                Unenforceable, Plaintiffs Are Still Required to Arbitrate ......... 21

IV.     CONCLUSION ........................................................................................ 22

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Abeyrama v. J.P. Morgan Chase Bank,*
  2012 WL 2393063 (C.D. Cal. June 22, 2012)....................................................18

*AT&T Mobility v. Concepcion,*
  563 U.S. 333 (2011) ........................................................2, 15, 20, 21

*Borgarding v. JPMorgan Chase Bank,*
  2016 WL 8904413 (C.D. Cal. Oct. 31, 2016) ...................................18

*Carillo v. Gruma Corp.,*
  2017 WL 11631614 (C.D. Cal. Mar. 14, 2017) .................................18

*Coast Plaza Drs. Hosp. v. Blue Cross of Cal.,*
  83 Cal. App. 4th 677 (2000)............................................................17

*Colby v. J.C. Penney Co.,*
  811 F.2d 1119 (7th Cir. 1987)............................................................9

*Discover Bank v. Superior Ct.,*
  36 Cal. 4th 148 (2005)......................................................................20

*Donovan v. Coinbase Glob., Inc.,*
  2023 WL 2124776 (N.D. Cal. Jan. 6, 2023) .......................................5

*Dotson v. Amgen, Inc.,*
  181 Cal. App. 4th 975 (2010)....................................................13, 17

*Epic Sys. Corp. v. Lewis,*
  138 S. Ct. 1612 (2018) .......................................................................2

*Fitz v. NCR Corp.,*
  118 Cal. App 4th 702 (2004)............................................................18

*Gilmer v. Interstate/Johnson Lane,*
  500 U.S. 20 (1991) ................................................................2, 11, 13

*Hallsted v. JPMorgan Chase,*
  2017 WL 8186687 (C.D. Cal. Sept. 11, 2017).....................................6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

*Home Depot USA v. Lafarge N. Am.*,
   59 F.4th 55 (3d Cir. 2023) .................................................................9, 10

*Lee v. Ticketmaster*,
   2019 WL 9096442 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393
   (9th Cir. 2020) .........................................................................................7

*Little v. Auto Stiegler*,
   29 Cal. 4th 1064 (2003) .........................................................................20

*McCray v. Am. Canyon City Hall*,
   2023 WL 2278408 (E.D. Cal. Feb. 28, 2023) ........................................15

*McKay v. JPMorgan Chase Bank*,
   2016 WL 11755601 (C.D. Cal. Mar. 8, 2016) ........................................20

*Modiano v. BMW of N. Am.*,
   2021 WL 5750460 (S.D. Cal. June 29, 2021) ........................................18

*Mullo v. DoorDash*,
   2023 WL 1971897 (S.D.N.Y. Jan. 17, 2023) ...........................11, 12, 13

*Nixon v. Dream St. Inc.*,
   2019 WL 13197378 (D. Ariz. May 24, 2019) ...........................................5

*Oberstein v. Live Nation*,
   2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) ...............................5, 6, 8

*Oberstein v. Live Nation*,
   60 F.4th 505 (9th Cir. 2023) ........................................................1, 7, 21

*Pokrass v. DirecTV Grp.*,
   2008 WL 2897084 (C.D. Cal. July 14, 2008) ...........................................6

*Poublon v. C.H. Robinson*,
   846 F.3d 1251 (9th Cir. 2017) ..........................................................17, 22

*Price v. Apple*,
   2022 WL 1032472 (N.D. Cal. Apr. 6, 2022) .............................................6

*Rent-A-Center, W., Inc. v. Jackson*,
   561 U.S. 63 (2010) ....................................................................................5

*Roman v. Superior Ct.*,
   172 Cal. App. 4th 1462 (2009) ...............................................................17

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

*Sanchez v. Valencia Holding Co.*,
  61 Cal. 4th 899 (2015)................................................................6, 20, 21

*Sandquist v. Lebo Auto., Inc.*,
  1 Cal. 5th 233 (2016)...........................................................................13

*Serv. Partners v. Am. Home Assurance*,
  2011 WL 2516411 (C.D. Cal. June 20, 2011)....................................19

*Sheppard v. Staffmark Inv.*,
  2021 WL 690260 (N.D. Cal. Feb. 23, 2021)........................................20

*Szetela v. Discover Bank*,
  97 Cal. App. 4th 1094 (2002).................................................................7

*Taylor v. TA Operating*,
  2023 WL 171359 (E.D. Cal. Jan. 12, 2023)...........................................5

*Tiri v. Lucky Chances, Inc.*,
  226 Cal. App. 4th 231 (2014)............................................................5, 6

*Viking River Cruises v. Moriana*,
  142 S. Ct. 1906 (2022) ...................................................................11, 12

*Whitaker v. Tesla Motors, Inc.*,
  985 F.3d 1173 (9th Cir. 2021)..............................................................15

*Wu v. JPMorgan Chase Bank*,
  2019 WL 4261880 (C.D. Cal. Aug. 5, 2019).......................................21

*Yeomans v. World Fin. Grp. Ins. Agency*,
  485 F. Supp. 3d 1168 (N.D. Cal. 2020) ..............................................17

**STATUTES**

9 U.S.C. § 10(a)(2) .......................................................................................19

Cal. Civ. Proc. Code §§ 1280-1294.4..........................................................18

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

## I.    INTRODUCTION

Defendants filed their motion to compel arbitration over a year ago.  In the interim, the Ninth Circuit affirmed, in full, this Court's order compelling arbitration in the earlier *Oberstein* case (brought by the same counsel as here), and rejected the argument that consumers did not *really* know who they were contracting with, and had not *really* agreed to arbitration with Defendants.  Instead, the Ninth Circuit held—in a unanimous, published opinion—that the arbitration agreement in Defendants' Terms is "a valid agreement" between Defendants and consumers, and that "the requirements for mutual assent [are] met."  *Oberstein v. Live Nation*, 60 F.4th 505, 509 (9th Cir. 2023).  Consequently, in this case, Plaintiffs' counsel do not dispute that Plaintiffs repeatedly agreed to the Terms, which select New Era as the arbitration provider.

Instead, Plaintiffs' counsel take a different approach to trying to avoid arbitration here—arguing that Defendants' selection of New Era as the arbitration provider in their Terms "shocks the conscience."  So, over the past 12+ months, Plaintiffs sought (and received) extensive discovery from Defendants and New Era on this issue.  Plaintiffs brazenly claimed that discovery would uncover facts that shock the conscience: that Defendants were "intimately involved in New Era's founding and growth," that Defendants "collude[d] with" New Era, that "Latham … played a significant role in … drafting New Era's rules and procedures," and that New Era had an "anti-consumer bias" due to its "direct financial dependence" on Defendants.  ECF No. 34-1 at 2-3, 5.  *Discovery proved that <u>none</u> of those accusations are true*.  That's why—despite receiving thousands of pages of documents and taking two depositions—Plaintiffs cite so little discovery in their Opposition.

Instead, Plaintiffs focus on the text of New Era's Rules, which they had before them a year ago.  They argue that the procedures for mass arbitrations and arbitrator selection are unconscionable, that the Rules create a risk of potential bias, that the

default limitations on discovery, brief length, and record size are unconscionable, etc. Ultimately, Plaintiffs claim that New Era's Rules are so outlandish that arbitrations administered by New Era are not really arbitrations at all, and thus fall outside the FAA's scope. Plaintiffs' arguments are frivolous.

Contrary to Plaintiffs' irresponsible and distorted allegations, New Era's Rules are sensible, fair, and similar to those promulgated by JAMS and AAA. Plaintiffs' arguments are also contrary to controlling law. The FAA does not allow a plaintiff to avoid arbitration based on speculation that the arbitrator and arbitral process will not be "competent, conscientious and impartial." *Gilmer v. Interstate/ Johnson Lane*, 500 U.S. 20, 30 (1991). And the FAA requires courts to respect the parties' "discretion in designing arbitration processes … to allow for efficient, streamlined procedures tailored to the type of dispute." *AT&T Mobility v. Concepcion*, 563 U.S. 333, 344 (2011). Consequently, courts must "rigorously … enforce arbitration agreements according to their terms, including terms that specify … *the rules* under which that arbitration will be conducted." *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).

There's nothing unconscionable about New Era's Rules, and the arbitration agreement should be enforced, in full. But it's worth noting that, even if the Court somehow deemed New Era's Rules unconscionable, Plaintiffs are still required to arbitrate their claims. The Terms contain a clear severability clause, and the Terms state that, if New Era is unable to conduct the arbitration for any reason, arbitration will instead be conducted by another arbitration provider. The law is clear that the severability clause and the provision on alternate arbitration providers are binding and enforceable.

Defendants respectfully request that the Court grant their Motion.

## II.     DISCOVERY PUT THE LIE TO PLAINTIFFS' BIAS ALLEGATIONS

Despite insisting on—and receiving—extensive pre-arbitration discovery,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1    Plaintiffs cite hardly any discovery in their Opposition.[1]  That's because discovery

2    showed that Plaintiffs' incendiary allegations about New Era and Live Nation are

3    false.

4          First, discovery confirmed that Defendants and their counsel were not

5    involved in New Era's founding—let alone "intimately involved."  New Era was

6    founded in 2020, and launched its ADR services in April 2021.  *See* Opp'n Ex. C

7    10:16-18, 11:3-5.  The first communication between New Era and Defendants'

8    counsel was in May 2021.  *See id.* 86:2-88:2.

9          Second, discovery established that Defendants' counsel and New Era engaged

10   in an arm's-length discussion over the potential selection of New Era—and that there

11   was nothing improper about those interactions.  To the contrary, those interactions

12   consisted of, in total, five or six Zoom meetings in May and June 2021, during which

13   Defendants' counsel vetted New Era—asking questions about their capabilities and

14   offerings—and negotiated the terms of the subscription agreement (e.g., price).  *See*

15   *id.* 65:22-66:4, 89:15-18, 92:3-93:14, 95:4-9, 96:12-20, 169:24-170:1, 174:9-16.

16         Third, discovery confirmed that Defendants and their counsel played no role

17   whatsoever in the drafting of New Era's Rules.  *Id.* 96:17-97:2, 108:12-16.[2]

18         Fourth, discovery established that New Era is not financially dependent on

19   Defendants.  ████████████████████████████████████████████

20   ████████████████████████████████████████████████████████

21   ████████████████████████████████████████.[3]  *Id.* 16:17-21, 17:2-4, 18:3-6.

22   _____

23   [1]    For example, Plaintiffs cite Live Nation's deposition once, *see* Opp'n at 3,
24   and they cite to just nine documents (out of nearly 700) that were produced, *see*
      Opp'n Exs. F-N.  Notably, only four of those nine are actually communications
25   between New Era and Defendants' counsel.  The remainder are communications
      with Latham attorneys in other offices who have never represented Defendants and
26   have no connection to Defendants whatsoever.

      [2]    Plaintiffs' footnote argument that the Court should nevertheless just infer that
27   "Latham shaped" New Era's Rules—without any evidence—is absurd.  Opp'n at 2
      n.1.
28   [3]    For example, well-known companies like SeatGeek, SpotHero, Zynga, and
      PopID designate New Era in their publicly available online terms.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1  ████████████████████████████████████████████████████

2  ████████████████████████████████████████████████████

3  ████████████. *Id.* 24:20-23, 31:13-21; Opp'n Ex. E ¶¶ 5-6.

4        Finally, discovery did not uncover <u>any</u> evidence of bias.  That doesn't stop

5  Plaintiffs from misrepresenting the discovery record.  But Plaintiffs' "evidence" of

6  bias consists of (1) a handful of emails reflecting the fact that some attorneys at

7  Latham and other firms were interested in learning about New Era's services (*see,*

8  *e.g.*, Opp'n Exs. F, G, I, J, K, L, N), and (2) a New Era PowerPoint, which states

9  that ████████████████████████████████████████████████

10  ██████████.  Opp'n at 2 (citing Ex. F at 15).  This is obviously not evidence

11  of bias—in fact, ████████████████████████████████████████

12  ██████████████████████████████████████████████████:

13
14
15
16
17  ████████████████████████████████████████████
18
19
20

21  Opp'n Ex. F at 15.  Plaintiffs never acknowledge ████████████████████

22  ████████████████████████████████████████████████████

23  ██████████████████████████.

24  **III.   ARGUMENT**

25      **A.   Plaintiffs' Challenges Have Been Delegated to the Arbitrator**

26        This Court has repeatedly held—and Plaintiffs do not dispute—that the Terms

27  contain a "delegation clause [which] clearly and unmistakably delegates arbitrability

28  to the arbitrator," and, consequently, that "the Court's unconscionability inquiry is

LATHAM&WATKINS^LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1   limited to the delegation clause instead of the arbitration clause as a whole."
2   *Oberstein v. Live Nation*, 2021 WL 4772885, at *8 (C.D. Cal. Sept. 20, 2021).

3         Nevertheless, virtually all of Plaintiffs' arguments relate to the arbitration
4   agreement as a whole.  Plaintiffs hope to solve this problem by tacking on four
5   conclusory sentences to the end of their Opposition, claiming—without
6   explanation—that all of Plaintiffs' arguments apply to the delegation clause.  *See*
7   Opp'n at 24.  That's not enough.  *See Rent-A-Center, W., Inc. v. Jackson*, 561 U.S.
8   63, 74 (2010) (court cannot consider unconscionability challenge unless plaintiff
9   argues that, "*as applied* to the delegation provision," it "render[s] *that provision*
10  unconscionable"); *Taylor v. TA Operating*, 2023 WL 171359, at *9 (E.D. Cal. Jan.
11  12, 2023).  Plaintiffs' conclusory argument does not "reflect any specific showing
12  as to why the [d]elegation [c]lause itself is actually unenforceable due to
13  unconscionability."  *Nixon v. Dream St. Inc.*, 2019 WL 13197378, at *4 (D. Ariz.
14  May 24, 2019); *see also Donovan v. Coinbase Glob., Inc.*, 2023 WL 2124776, at *5
15  (N.D. Cal. Jan. 6, 2023) (plaintiffs failed to meet their burden where they
16  "identif[ied] a hodgepodge of *other provisions* within the Arbitration Clause … that
17  supposedly unfairly favor [defendant] and thus render the Delegation Clause unfair
18  as well").  It is not enough that "arbitration procedures—for example … limitations
19  on discovery—may apply equally to the delegation clause"; instead, Plaintiffs "must
20  argue that those provisions are unconscionable <u>as applied to the delegation clause</u>."
21  *Taylor*, 2023 WL 171359, at *9.

22        Plaintiffs do assert (without explanation) that delegation is unconscionable
23  because New Era's arbitrators will be biased on "threshold issues."  Opp'n at 24.
24  The argument seems to be that New Era's arbitrators have a business incentive to
25  rule in favor of subscribing Defendants.  That fails as a matter of law.  Even if "the
26  arbitrator has a unique self-interest in deciding that a dispute is arbitrable," because
27  "one party tends to be a repeat player," that does not render a delegation clause
28  unconscionable.  *Tiri v. Lucky Chances, Inc.*, 226 Cal. App. 4th 231, 248-49 (2014).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

It does not, because the concern regarding arbitrator self-interest is "virtually <u>always</u> present with delegation clauses"; therefore, deeming it a basis for unconscionability "would be tantamount to concluding that delegation clauses … are categorically unenforceable." *Id.* at 249; *infra* Section III.B.2.b (explaining why Plaintiffs' bias argument against the arbitration agreement as a whole fails).

The Court's inquiry can and should end here.

## B.    The Terms Are Not Unconscionable

In any event, Plaintiffs' challenges to the Terms as a whole are meritless. Under California law, a plaintiff must show that a contract is both procedurally and substantively unconscionable to be unenforceable. *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 910 (2015).  Plaintiffs show neither.

### 1.    *The Terms Are Not Procedurally Unconscionable*

"Procedural unconscionability concerns the manner in which the contract was negotiated," focusing on oppression and surprise. *Hallsted v. JPMorgan Chase*, 2017 WL 8186687, at *3 (C.D. Cal. Sept. 11, 2017).  Here, the Terms concern non-essential, recreational activities; that weighs against a finding of procedural unconscionability. *See Oberstein*, 2021 WL 4772885, at *9; *Pokrass v. DirecTV Grp.*, 2008 WL 2897084, at *7 (C.D. Cal. July 14, 2008) ("contracts for nonessential recreational activities cannot be procedurally unconscionable"); *Price v. Apple*, 2022 WL 1032472, at *3 (N.D. Cal. Apr. 6, 2022) ("the nature of such contracts weighs against" procedural unconscionability).

Plaintiffs seek to evade this well-established principle by arguing that the selection of New Era was a "no-notice … unilateral change" imposed "midstream" during litigation, and thus was surprising and oppressive.  Opp'n at 7-8.  That's unequivocally false.  Defendants <u>did</u> provide Plaintiffs notice, repeatedly, of the current Terms, which clearly select New Era. *See* Mot. to Compel Arb. at 4-7, 11-13, ECF No. 30-1 ("Mot.").  And Plaintiffs repeatedly assented to those Terms: in addition to the notice at sign-in (which this Court and the Ninth Circuit previously

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1  upheld), Plaintiffs here also affirmatively checked a box stating that they had read
2  and agreed to the current Terms designating New Era.  *Id.* at 5-6; *see also Oberstein*,
3  60 F.4th at 517.  *Plaintiffs do <u>not</u> dispute that they did so*.  Instead, Plaintiffs imply
4  that they did not receive *specific* notice regarding a *specific* change in the Terms.
5  Courts (including the Ninth Circuit) have rejected that argument.  *Lee v.*
6  *Ticketmaster*, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x
7  393, 395 (9th Cir. 2020) (holding that changes to Ticketmaster's Terms are
8  enforceable where plaintiff later agreed to updated Terms through notice on
9  purchase page).

10  Plaintiffs ignore *Lee* and cite *Szetela v. Discover Bank*, 97 Cal. App. 4th 1094,
11  1100 (2002) instead.  There, the plaintiff received a notice purporting to amend the
12  terms of his agreement with the bank in a bill stuffer.  Those facts could not be more
13  inapposite.  Here, by contrast, Plaintiffs checked a box expressly affirming that they
14  had read and agreed to the current Terms; they cannot complain now that they had
15  "no notice" of the content of those Terms.

16  Plaintiffs' "midstream" litigation argument is equally disingenuous.  Plaintiffs
17  are deliberately conflating this case with *Oberstein*—presenting them as though they
18  are one continuous litigation.  These are two separate cases, filed at entirely different
19  times, with different named plaintiffs (just by the same counsel, seeking to
20  circumvent arbitration via different arguments).  Defendants have <u>never</u> argued that
21  the current Terms apply in *Oberstein*, that the *Oberstein* named plaintiffs must
22  arbitrate at New Era, or that any claims filed prior to when the Terms were updated
23  should go to New Era.  New and different named plaintiffs filed the present
24  complaint six months <u>after</u> the Terms were amended to designate New Era.  Those
25  plaintiffs—Heckman, Ponce, Popp, and Roberts—were not named plaintiffs in
26  *Oberstein*, and each of them indisputably agreed to the current version of the Terms
27  selecting New Era <u>before</u> they filed this case.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

Finally, Plaintiffs argue that Defendants and consumers were in "an ongoing contractual relationship," and thus there is an "implied covenant" that the Terms cannot be changed "midstream."  Opp'n at 7-8.  Plaintiffs are arguing that even where a company provides notice, and the specific consumers at issue expressly agree to updated terms, a company can never change its terms.  That's obviously not the law—and Plaintiffs cite no case to the contrary.

Ultimately, none of Plaintiffs' arguments compels a different conclusion than the one this Court reached in *Oberstein*: there is, at most, "a low level of procedural unconscionability."  *Oberstein*, 2021 WL 4772885, at *9.  Therefore, the Terms "must be enforced unless there is a heightened finding of substantive unconscionability."  *Id.*

### 2.   *The Terms Are Not Substantively Unconscionable*

In order to demonstrate substantive unconscionability, "[i]t is not enough that terms are slightly one-sided or confer more benefits on a particular party; a substantively unconscionable term must be so unreasonable and one-sided as to 'shock the conscience.'"  *Id.*  There is nothing about the Terms or the selection of New Era that comes close to "shocking the conscience."

### a.   *New Era's Rules Promote the Efficient, Bilateral Resolution of Individual Arbitrations, as the FAA Intends*

Plaintiffs' unconscionability argument focuses on New Era's use of a bellwether process for mass arbitrations.  Specifically, Plaintiffs claim that, due to the application of precedent from bellwethers, claimants are unfairly subjected to "class or representative proceedings," Opp'n at 11, and because New Era's mass arbitrations are actually "class arbitrations," the FAA cannot apply to the Terms, *id.* at 1, 19-23.  Plaintiffs are wrong.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1

2

*(1)*   <u>*Mass Arbitrations Are Not "Class" or*</u>
<u>*"Representative" Proceedings*</u>

3          Mass arbitrations are not "class" or "representative" proceedings under New

4    Era's Rules; to the contrary, each case retains its separate identity as an individual,

5    bilateral arbitration.  Nothing about the use of bellwethers changes this.  Bellwether

6    claimants do not represent, for example, absentee claimants.  And New Era's Rules

7    are clear that precedent from bellwethers is <u>non-binding</u>: the neutral *<u>may</u>* apply

8    significant factual findings and legal determinations in one proceeding to another

9    proceeding involving common issues.   Rule 2(y)(i), ECF No. 30-4 ("New Era

10   Rules").  Any party, however, is free to argue that a case "involve[s] individualized

11   issues of law and/or fact that should not be subject to [p]recedent."  New Era Rule

12   6(b)(iii)(4)(d).  If the neutral agrees, then precedent from the bellwethers will not

13   apply to those issues.

14          Bellwethers thus do <u>not</u> have law-of-the-case or issue-preclusive effect.

15   Instead, bellwether precedent is similar to how precedent operates among individual

16   court cases of equal level: while the arbitrator "must give considerable weight to

17   [prior] decisions … [the arbitrator] is not absolutely bound by them, and must give

18   fair consideration to any substantial argument that a litigant makes" in support of a

19   different result.  *See Colby v. J.C. Penney Co.*, 811 F.2d 1119, 1123 (7th Cir. 1987)

20   (describing precedent).[4]  Plaintiffs' key case here—*Home Depot USA v. Lafarge N.*

21   *Am.*, 59 F.4th 55 (3d Cir. 2023)—helpfully explains this issue.  There, the Third

22   Circuit reversed the district court's application of law-of-the-case and issue

23   preclusion to a later-filed case in a longstanding MDL.  In doing so, the court drew

24   a distinction between law-of-the-case and issue preclusion, on the one hand, and

25   application of precedent to common issues, on the other.  The court explained that,

26

27
    _____

28   [4]     Contrary to Plaintiffs' claim (Opp'n at 11-12), this is true for later-filed claims
    too.  *See* New Era Rule 2(y)(ii) (later-filed cases involving common issues *<u>may</u>* be
    subject to precedent).

LATHAM&WATKINS<sup>LLP</sup>
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

"[i]n MDLs, like in other litigation, a district court may apply prior rulings to new cases if a party presents no new facts, evidence, or arguments to warrant a departure." *Id.* at 66 n.6.  The court further explained that, in MDLs, judges are free to "enter an order with respect to one party and then provide that it will be automatically extended to other parties if they do not come forward and show cause why it should be not be applicable." *Id.* at 66.  That is <u>exactly</u> how New Era's Rules work: precedent from bellwethers applies to common issues in individual cases, unless a party demonstrates that a case "involve[s] individualized issues of law and/or fact that should not be subject to the [p]recedent."   New Era Rule 6(b)(iii)(4)(d).

Plaintiffs also argue that the use of precedent is non-mutual, because "only plaintiffs bear the risk of loss on common issues."  Opp'n at 5.  That's categorically false.  The application of precedent is mutual—and neutral.  Either party could win or lose common issues; there's nothing about the process that favors one party over another.  *See* New Era Rules 2(y) (defining precedent), 6(b)(iii)(4)-(6) (explaining application of precedent).

Plaintiffs make two fallback arguments.  First, they claim that if Defendants lost on a common issue, "Defendants get … the choice of leaving New Era."  Opp'n at 5.  That makes no sense.  If Defendants lost on a common issue, they could not simply select a new arbitration provider; any change to the Terms would not apply to an ongoing mass arbitration, to anyone who had already filed an arbitration demand, or to anyone who did not assent to the new Terms.  Second, Plaintiffs speculate that if Defendants lost on a common issue, they could "forc[e] every individualized issue through the bottleneck of a single arbitrator."  *Id.*  New Era's Rules do <u>not</u> require that a single arbitrator decide individualized issues in each case; rather, they provide that the arbitrator will create a process for resolving those issues. *See* New Era Rule 6(b)(iii)(6).  That process could, for example, include assigning cases to other New Era arbitrators, if that's more efficient.  In any event, Plaintiffs

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

cannot avoid arbitration by speculating that the arbitrator will not employ a fair and efficient process for resolving remaining cases. *See, e.g.*, *Gilmer*, 500 U.S. at 30; *Mullo v. DoorDash*, 2023 WL 1971897, at *4 (S.D.N.Y. Jan. 17, 2023). Furthermore, New Era's Rules in this regard are completely consistent with industry standards—for example, AAA's suggested mass arbitration procedures include "assigning multiple proceedings to a single, mutually agreeable Merits Arbitrator." *Compare* O'Mara Decl. Ex. E, AAA Suppl. Rules for Multiple Case Filings, Rule MC-7, *with* New Era Rule 6(b)(iii)(1).

Finally, it's worth pausing on the fact that (as explained in Defendants' Motion at 19-20) Plaintiffs' own counsel previously proposed procedures for administering mass arbitrations that are strikingly similar to New Era's. Plaintiffs do not make any meaningful attempt to explain the hypocrisy here, other than say—in a footnote, without explanation—that the "comparison is facially inaccurate." Opp'n at 5 n.3. That's plainly wrong. And Plaintiffs' inability to explain why the bellwether process is fine when they propose it—but "shocks the conscience" here—speaks volumes.

### (2)   The FAA Applies

The Terms expressly state that they are governed by the FAA. ECF No. 31-30 at 12. Nevertheless, Plaintiffs devote nearly a quarter of their Opposition to arguing that the FAA cannot apply, because the use of bellwethers means that New Era's mass arbitrations are really "class arbitrations." *See* Opp'n at 1, 19-23. They are not, as explained above.

Nevertheless, Plaintiffs cite *Viking River Cruises v. Moriana*, 142 S. Ct. 1906 (2022), relying on several out-of-context quotes from that case. *See* Opp'n at 22. *Viking*, however, does not help Plaintiffs. There, the Supreme Court addressed a California rule prohibiting the division of individual and representative claims under California's Private Attorneys General Act ("PAGA"). 142 S. Ct. at 1916-17. Viking argued that the FAA preempted this rule because "PAGA creates a form of

1    class or collective proceeding," and class procedures are inconsistent with the FAA.
2    *Id.* at 1918.  The Court ultimately held that the California rule was preempted, but
3    rejected Viking's rationale.  Instead, the Court distinguished class proceedings
4    (which "bind absentees with respect to their individual claims for relief and are
5    preclusive as to all claims the class could have brought") from non-class
6    proceedings, and explained that, "[b]ecause PAGA actions do not adjudicate the
7    individual claims of multiple absent third parties," they were <u>not</u> class proceedings—
8    and thus did "not present the problems of notice, due process, and adequacy of
9    representation that render class arbitration inconsistent with arbitration's
10   traditionally individualized form."  *Id.* at 1920-21.  The same thing is true of New
11   Era's bellwether process: that process does not "adjudicate the individual claims of
12   multiple absent third parties," and does not have preclusive effect; it therefore is <u>not</u>
13   a class proceeding, and <u>not</u> inconsistent with the FAA.

14                     **b.    *New Era Is a Neutral Forum***

15          Plaintiffs also argue that the selection of New Era is unconscionable because
16   "New Era is biased in favor of Defendants and Latham."  Opp'n at 9-11.  As
17   explained above, in Section II, discovery did not uncover any evidence of <u>actual</u>
18   bias.  What Plaintiffs are really arguing is that New Era and its arbitrators <u>might</u> be
19   biased: that New Era's subscription model[5] creates incentives to "appease"
20   Defendants; that New Era's arbitrators could be biased because "New Era selects,
21   pays, and can terminate those arbitrators"; and that New Era could improperly
22   change its Rules or replace a neutral "on a whim."  *Id.*  This is all pure speculation.

23          First, the "risk of 'potential bias'" is not a basis for invalidating an arbitration
24   agreement.  *Mullo*, 2023 WL 1971897, at *4.  Moreover, the law is clear that "the
25   belief that arbitrators might over time be biased toward the repeat players that bring

26
27
---
28   [5]      New Era isn't the only arbitration provider that offers a subscription
     agreement; FedArb, for example, does as well.  *See* https://www.fedarb.com/
     framework-for-mass-arbitration-proceedings-adr-mdl/.

LATHAM&WATKINS┬┴┐
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1    them business" is not a basis for finding an arbitration agreement unconscionable,
2    and courts may not presume "that arbitrators are ill-equipped to disregard such
3    institutional incentives and rule fairly and equitably." *Sandquist v. Lebo Auto., Inc.*,
4    1 Cal. 5th 233, 259 (2016).  Nothing about New Era's subscription option changes
5    this analysis.  Mot. at 20-22.

6          Second, there is absolutely no basis to impute any purported bias from New
7    Era to its arbitrators.  As explained in Defendants' Motion (at 21), New Era's role is
8    purely administrative; it does not make any substantive determinations in the
9    arbitrations it administers.  Nevertheless, Plaintiffs argue that New Era's arbitrators
10   <u>could</u> be biased because "New Era selects, pays, and can terminate those arbitrators."
11   Opp'n at 10.  But that it is true of every arbitration provider.  And there is no basis
12   to presume that New Era's experienced, qualified neutrals cannot rule fairly and
13   equitably.  *See Sandquist*, 1 Cal. 5th at 259; *Gilmer*, 500 U.S. at 30.

14         Third, New Era's ability to modify its rules and replace neutrals is 100-percent
15   consistent with industry standards.  *Compare* New Era Rule 2(dd) (New Era may
16   modify its rules, but will endeavor to do so only once per quarter and provide notice
17   of changes that substantively affect proceedings), *with* O'Mara Decl. Ex. A, JAMS
18   Streamlined Rule 3 ("JAMS may amend these Rules without notice."); *compare*
19   New Era Rule 2(k)(iv) (allowing New Era to replace a neutral upon "a legitimate
20   request or concern or upon unforeseeable circumstances"), *with* O'Mara Decl. Ex.
21   A, JAMS Streamlined Rule 12(h) (JAMS decides whether arbitrator is unable to
22   fulfill her duties), *and* O'Mara Decl. Ex. D, AAA Consumer Rule R-20 (similar).

23         Stated simply, "[t]he FAA does not … allow a plaintiff to avoid arbitration
24   altogether based on speculation that the process will be unfair." *Mullo*, 2023 WL
25   1971897, at *4; *see also Gilmer*, 500 U.S. at 30 (declining "to indulge the
26   presumption that the parties and arbitral body conducting a proceeding will be
27   unable or unwilling to retain competent, conscientious and impartial arbitrators");
28   *Dotson v. Amgen, Inc.*, 181 Cal. App. 4th 975, 984 (2010) (courts must "assume that

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
13
DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1    the arbitrator will operate in a reasonable manner in conformity with the law").

2           *c.*      ***New Era's Rules on Page Limits Are Discretionary***

3           Plaintiffs also contend that New Era's default rules on page and record limits

4    are "inadequate." Opp'n at 16-17.[6] Plaintiffs characterize these limits as absolute

5    and, therefore, unconscionable. That's wrong. New Era's Rules make clear that

6    these limits are <u>guidelines,</u> not mandates; the arbitrator has discretion to adjust them.

7           For instance, New Era's Rules provide that "[t]he neutral has discretion to

8    allow evidence in excess of the stated limits as necessary to ensure a fundamentally

9    fair process." New Era Rule 6(a)(vii)(4); *see also* New Era Rule 2(p)(iii) (same).

10   Likewise, the Rules allow the neutral to "request additional evidence" and "post

11   hearing, supplementary evidence or argument"—i.e., files and briefing in excess of

12   the default limits. New Era Rule 2(p)(vi)-(vii). Thus, while the default limits may

13   be appropriate in many cases, the arbitrator can adjust them as needed to ensure a

14   fundamentally fair process for all litigants.

15          New Era confirmed this in deposition. ▮▮▮▮▮▮▮▮▮▮▮▮▮▮

16   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

17   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

18   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

19   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

20   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

21   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

22   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

23   ▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮▮

24   ▮▮▮▮▮▮▮▮

25          Courts and other arbitration providers employ similar "guardrails." For

26

27   _____

28   [6]     Plaintiffs also reference New Era's rule on the number of witnesses allowed
     (Opp'n at 1), but that rule expressly allows the neutral to grant additional witnesses
     on good cause shown. New Era Rule 2(n)(v).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

example, judges frequently limit briefs—including trial briefs—to under ten pages. *See, e.g.*, Standing Order of U.S. District Judge Trina L. Thompson (N.D. Cal.) (five page limit for trial briefs); Standing Order of U.S. District Judge Haywood S. Gilliam (N.D. Cal.) (five page limit for trial briefs and motions in limine).  If a five-page trial brief is sufficient in federal court, it is surely sufficient in arbitration— where "streamlined proceedings" are the goal.  *See Concepcion*, 563 U.S. at 344. Likewise, limits on the length of complaints are common in arbitration and litigation.[7]  *See, e.g.*, AAA Demand for Arbitration, https://www.adr.org/sites/ default/files/Consumer_Demand_for_Arbitration_Form_3.pdf   (providing   only about three lines of text for a claimant to "explain the dispute"); *McCray v. Am. Canyon City Hall*, 2023 WL 2278408, at *3 (E.D. Cal. Feb. 28, 2023) (limiting amended complaint to ten pages).

### d.      New Era's Rules Allow for Discovery Consistent with Industry Standards

Plaintiffs also argue that New Era's Rules are unconscionable because they allegedly allow zero discovery.  In particular, Plaintiffs claim that there is "no right to discovery" in New Era's expedited arbitrations; rather, "[t]o obtain discovery," claimants are forced to "request to be upgraded" to New Era's standard arbitration process, and "pay additional fees of $15,000" for the "privilege."  Opp'n at 3; *see also id.* at 1, 4, 22, 24.  <u>This absolutely wrong, and a blatant mischaracterization of New Era's Rules</u>.

First, discovery <u>is</u> available in expedited arbitrations.  It's true that New Era's Rules on standard arbitrations set forth a formalized, step-by-step discovery process

---

[7]      Plaintiffs suggest that there is a conflict between New Era's ten-page limit for complaints and the "heightened pleading standard" imposed by New Era's Rules. Opp'n at 3, 16.  But there is no "heightened pleading standard" in New Era's Rules. Rather, as in federal court, a claimant must plead "facts specific to the Claimant(s) that [give] rise to the dispute."  New Era Rule 6(a)(ii)(1)(a)(i); *cf. Whitaker v. Tesla Motors, Inc.*, 985 F.3d 1173, 1176-79 (9th Cir. 2021) (requiring "well-pleaded facts demonstrating the pleader's entitlement to relief").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

and schedule, and that New Era's expedited arbitrations are not subject to that same formalized process. *See* New Era Rule 2(o)(i). But that does not mean that there is "no discovery" in expedited arbitrations, or that parties must "upgrade" to a standard arbitration to obtain discovery. To the contrary, New Era's Rules expressly provide for discovery in <u>all</u> arbitrations, as needed to ensure a fundamentally fair process. The difference is that, compared to standard arbitrations, discovery in expedited arbitrations is informal and proceeds at the arbitrator's discretion, so that the proceedings may be streamlined consistent with the expedited nature of the arbitration. Specifically, New Era's Rules provide that, in any proceeding (including expedited arbitrations), "[a]ny request for discovery must be submitted to the neutral," who "has discretion to determine whether it should be allowed." New Era Rule 2(o)(iii). Further, "if a party believes an opposing party has relevant or necessary evidence that they are not disclosing, they can make a request to the neutral that such evidence be provided or disclosed," and the neutral will determine whether "good cause for the production exists." New Era Rule 2(q)(i). The Rules also provide for a document exchange process, pursuant to which the neutral may allow additional exchanges "as necessary to ensure a fundamentally fair process." New Era Rule 6(a)(vii)-(viii). New Era confirmed in deposition that ███████ ████████████████████████████████████████████████████████ Opp'n Ex. C 310:11-17, 311:1-6.[8]

Second, even if a consumer wanted to switch to standard arbitration, she would not have to "pay additional fees of $15,000." Opp'n at 3, 16. That is the fee for binding mediation; the number "$15,000" does not appear anywhere in New Era's Rules for arbitrations. *See* New Era Rules 1(a)(i)(2), 4(a). More importantly

---

[8]     Plaintiffs also complain that New Era's standard rule limiting each party to three depositions is "obviously inadequate," Opp'n at 17-18, but they ignore that JAMS limits each party to one deposition by default. *See* O'Mara Decl. Ex. B, JAMS Comprehensive Rule 17(b). Likewise, AAA has no express provision for depositions in consumer cases at all. *See id.* Ex. D, AAA Consumer Rule R-22.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

for this case, under Defendants' Terms, a claimant is only required to pay the initial filing fee (and if a claimant can't afford that fee, Defendants will cover it).  ECF No. 31-30 at 13.  <u>All</u> other fees (if any) are paid by Defendants.  *Id.*

Third, New Era's Rules on discovery for expedited arbitrations are consistent with the well-established principle that "[l]imited discovery rights are the hallmark of arbitration."  *Coast Plaza Drs. Hosp. v. Blue Cross of Cal.*, 83 Cal. App. 4th 677, 689-90 (2000).  The guiding principle under New Era's Rules is that "limitations on discovery are one of the primary ways efficiencies are achieved in arbitration, and [so] discovery must be narrowly tailored only to the information necessary to advancing a neutral's understanding of the case."  New Era Rule 2(o)(i).  Such reasonable limits are <u>exactly</u> what arbitration is supposed to be: "a streamlined procedure."  *Dotson*, 181 Cal. App. 4th at 983 ("[D]iscovery limitations are an integral and permissible part of the arbitration process."); *see also, e.g.*, *Poublon v. C.H. Robinson*, 846 F.3d 1251, 1270 (9th Cir. 2017) ("The California Supreme Court has made clear that limitation on discovery is one important component of the simplicity, informality, and expedition of arbitration.").[9]

Courts therefore routinely uphold arbitration discovery rules—like New Era's—that give the arbitrator discretion to control discovery.  *See, e.g.*, *Roman v. Superior Ct.*, 172 Cal. App. 4th 1462, 1475-76 (2009) (upholding AAA rule allowing the arbitrator "to order such discovery … as the arbitrator considers necessary to a full and fair exploration of the issues in dispute, consistent with the expedited nature of the arbitration"); *Yeomans v. World Fin. Grp. Ins. Agency*, 485 F. Supp. 3d 1168, 1188-89 (N.D. Cal. 2020) (rejecting argument that "the arbitration

---

[9]     Not surprisingly, given that streamlined discovery is the "hallmark" of arbitration, JAMS and AAA also limit discovery.  *See, e.g.*, O'Mara Decl. Ex. C, JAMS Arbitration Discovery Protocols at 5 ("the arbitrator will set meaningful limitations" on discovery); *id.* Ex. D, AAA Consumer Arbitration Rule R-22(a) ("If any party asks or if the arbitrator decides on his or her own, keeping in mind that arbitration must remain a fast and economical process, the arbitrator may direct" exchange of documents and identification of witnesses).

LATHAM&WATKINS᠁ᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

17

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1    agreement is substantively unconscionable because 'the [agreement] only provides

2    for discovery at the arbitrator's discretion'"); *Abeyrama v. J.P. Morgan Chase Bank*,

3    2012 WL 2393063, at *4 (C.D. Cal. June 22, 2012) ("[I]f limited discovery was

4    grounds for unconscionability then every arbitration clause would be

5    unconscionable.").[10]

6

7

                **e.**    **New Era's Arbitrator Selection Rules Are Fair and Consistent with Industry Standards**

8    Plaintiffs next argue that New Era's arbitrator selection process is

9    unconscionable.

10    First, Plaintiffs claim that New Era's procedures conflict with the California

11    Arbitration Act's ("CAA") provisions on arbitrator selection.  *See* Opp'n at 13-16

12    (discussing Cal. Civ. Proc. Code §§ 1280-1294.4).  The CAA provides parties to an

13    arbitration with a right to disqualify any arbitrator based on a mandated disclosure

14    statement.  As explained above, the Terms are expressly governed by the FAA, <u>not</u>

15    the CAA.  *See supra* Section III.B.2.a(2).  "It is well-established that parties to an

16    arbitration agreement may select which procedural rules will apply in arbitration,"

17    and when they "expressly agree[] that the FAA [will] apply and the CAA [will] not,"

18    that "agreement is enforceable."  *Modiano v. BMW of N. Am.*, 2021 WL 5750460, at

19    *2 (S.D. Cal. June 29, 2021).  Because the Terms select the FAA, the CAA—

20    including Section 1281.91(b)(1)—does not apply.

21    Second, Plaintiffs take issue with three aspects of the selection process: (1) if

22    a party objects to an arbitrator, New Era determines whether the arbitrator will be

23    disqualified; (2) in a mass arbitration, each side works together to rank and strike

24

---

25    [10]    The single case on which Plaintiffs rely—*Fitz v. NCR Corp.*, 118 Cal. App
      4th 702 (2004)—is inapposite.  There, arbitrator discretion over discovery was an

26    "inadequate safety valve" only because "the arbitrator [was] constrained by an
      'impossibility' standard."  *Id.* at 716-17 (rules allowed arbitrator to grant discovery

27    only if "a fair hearing would be <u>impossible</u> without" it); *Carillo v. Gruma Corp.*,
      2017 WL 11631614, at *6 (C.D. Cal. Mar. 14, 2017) (distinguishing *Fitz* on this

28    basis); *Borgarding v. JPMorgan Chase Bank*, 2016 WL 8904413, at *6 (C.D. Cal.
      Oct. 31, 2016) (same).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

18

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

arbitrators for that side; and (3) a single arbitrator typically presides over the cases in a mass arbitration.  Opp'n at 14-15.  These rules do not "shock the conscience." To the contrary, they are sensible, fair, and (again) mirror the rules promulgated by JAMS and AAA.  Like New Era, JAMS and AAA make the final decision on any challenge to an arbitrator for cause.  *Compare* O'Mara Decl. Ex. A, JAMS Streamlined Rule 12(j), *and* Ex. D, AAA Consumer Rule R-19(b), *with* New Era Rules 2(k)(i)(2), 2(k)(iii).   Like New Era, JAMS provides that "[e]ntities or individuals whose interests are not adverse with respect to the issues in dispute shall be treated as a single Party for purposes of the Arbitrator selection process." *Compare* O'Mara Decl. Ex. A, JAMS Streamlined Rule 12(g), *with* New Era Rule 6(b)(iii)(1).   And like New Era, AAA's suggested mass arbitration procedures include "assigning multiple proceedings to a single, mutually agreeable Merits Arbitrator."  *Compare* O'Mara Decl. Ex. E, AAA Suppl. Rules for Multiple Case Filings, Rule MC-7, *with* New Era Rule 6(b)(iii)(1).

Finally, Plaintiffs speculate that a neutral <u>might</u> disclose a conflict, or a party <u>might</u> object, and then New Era <u>might</u> improperly decline to disqualify that neutral. But New Era's Rules require neutrals to disclose any actual or potential conflicts, allow the parties to strike proposed neutrals, and also allow the parties to object to neutrals based on any actual or potential conflict.  New Era Rule 2(k).  That's eminently reasonable.  Further, the law is clear that "a district court cannot entertain an attack upon the … partiality of arbitrators until after the conclusion of the arbitration and the rendition of an award."  *Serv. Partners v. Am. Home Assurance*, 2011 WL 2516411, at *5 (C.D. Cal. June 20, 2011).  In the unlikely event that a conflicted arbitrator somehow adjudicated their claims, Plaintiffs could move to vacate the award under the FAA.  *See* 9 U.S.C. § 10(a)(2).

### f.    *The Class Action Waiver and Appeal Provision Are Enforceable*

Finally, Plaintiffs launch two attacks against the Terms that have nothing to

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

19

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1   do with New Era.    First, Plaintiffs argue that the class action waiver is

2   unconscionable under California state law, citing *Discover Bank v. Superior Ct.*, 36

3   Cal. 4th 148 (2005).   Opp'n at 19.   But they concede that the Supreme Court

4   overruled *Discover Bank* more than a decade ago because it is inconsistent with the

5   FAA.   *Id.* (citing *Concepcion*, 563 U.S. 333); *see also Sheppard v. Staffmark Inv.*,

6   2021 WL 690260, at *7 (N.D. Cal. Feb. 23, 2021) ("Class action waivers are

7   enforceable under the FAA.").

8       Second, Plaintiffs challenge a provision granting both parties a limited right

9   of appeal: "in the event that the arbitrator awards injunctive relief against either you

10  or us, the party against whom injunctive relief was awarded may … appeal that

11  decision to JAMS."   ECF No. 31-30 at 14.   Relying on one case—*Little v. Auto

12  Stiegler*, 29 Cal. 4th 1064 (2003), which examined the right to appeal monetary

13  awards, <u>not</u> injunctive relief awards—Plaintiffs argue that the appeal provision in

14  the Terms is "non-mutual" and unconscionable.   Opp'n at 18-19.

15      But the appeal provision in the Terms <u>is</u> mutual: it grants a limited right of

16  appeal to <u>both</u> parties.   Moreover, the California Supreme Court has enforced a

17  nearly identical appeal provision: in *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th at

18  915-17, the court upheld a provision in an arbitration agreement allowing the party

19  against whom injunctive relief was awarded to request a new arbitration.   The court

20  noted that the provision, in practice, likely favored the seller (the party with superior

21  bargaining strength) more than the buyer.    *Id.* at 917.    Nevertheless, the court

22  enforced the provision, finding that, because injunctive relief could have a "broad

23  impact" on the seller's business, "the additional arbitral review [of] such relief …

24  furnishes a margin of safety that provides the party with superior bargaining strength

25  a type of extra protection for which it has a legitimate commercial need."   *Id.*

26  Plaintiffs' argument is "foreclosed by *Sanchez*" and should be rejected.   *See McKay

27  v. JPMorgan Chase Bank*, 2016 WL 11755601, at *7 (C.D. Cal. Mar. 8, 2016)

28  (rejecting the argument Plaintiffs make here).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

**C.      Even If the Selection of New Era Arbitration Were Unenforceable, Plaintiffs Are Still Required to Arbitrate**

As explained in Defendants' Motion (at 24-25), if the Court somehow found that New Era's Rules were unconscionable, this case must still be sent to arbitration: the Terms contain a clear severability clause, ECF No. 30-31 at 15, and provide that, if New Era is unable to conduct the arbitration for <u>any</u> reason, the arbitration will instead be conducted by another arbitration provider, *id.* at 13.   Plaintiffs' only response is to argue that the severability clause should be disregarded, and the provision on alternate providers not enforced, because the <u>entire</u> arbitration agreement is permeated with unconscionability—and thus must be thrown out, in full.[11]

There's no way that the entire arbitration agreement is "permeated" with unconscionability.  The Ninth Circuit has held that the Terms' arbitration agreement is "a valid agreement" between Defendants and consumers, and that "the requirements for mutual assent [are] met." *Oberstein*, 60 F.4th at 509.  The Supreme Court has held that class action waivers are enforceable under the FAA. *Concepcion*, 563 U.S. at 352.  And the California Supreme Court has specifically upheld the limited right to appeal. *Sanchez*, 61 Cal. 4th at 915-17.  The only conceivable issue here is New Era's Rules.  Those Rules are either unconscionable, or they're not.  And the Terms specifically spell out (and the parties expressly agreed to) what happens if a court for some reason finds that the Rules aren't good enough.

"Where a contract expressly addresses severability, a court must enforce such terms and the corresponding mutual intent of the parties." *Wu v. JPMorgan Chase*

---

[11]    Plaintiffs also argue that the current Terms have had a "chilling effect" on overall arbitration because "[t]here were 47 mass arbitration demands against Defendants in 2019, 20 in 2020, and zero in 2021 and 2022, when Defendants switched to New Era (and just one bilateral arbitration)."  Opp'n at 25.  But the number of arbitrations filed against Defendants varies widely across years.  For instance, in 2018, <u>before</u> Defendants switched to New Era, there were only two individual arbitrations and zero mass arbitrations filed against Defendants—almost exactly the same as in 2022.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1   *Bank*, 2019 WL 4261880, at \*13 (C.D. Cal. Aug. 5, 2019).  Consequently, if the

2   Court somehow deemed New Era's Rules unconscionable, the Court should sever

3   the selection of New Era as "collateral to the main purpose of the contract, which is

4   to require arbitration of disputes," and enforce the balance of the arbitration

5   agreement.  *See Poublon*, 846 F.3d at 1272-74.[12]

6   **IV.    CONCLUSION**

7         Defendants respectfully request that the Court grant their Motion.

8

9   Dated:  April 14, 2023                                   Respectfully Submitted,

10                                                            LATHAM & WATKINS LLP

11                                          By: *Timothy L. O'Ma*

12                                               Timothy L. O'Mara

13                                               505 Montgomery Street, Suite 2000
                                                 San Francisco, California  94111-6538
14                                               Telephone:  +1.415.391.0600
                                                 Facsimile:  +1.415.395.8095
15                                               tim.o'mara@lw.com

16                                               *Attorneys for Defendants*
                                                 *Ticketmaster L.L.C. and Live Nation*
17                                               *Entertainment, Inc.*

18

19

20

21

22

23

24

25

26   _____

27   [12]     Plaintiffs' cases (*Armendariz*, *Capili*, *Martinez*, *Lhotka*) involved arbitration
     agreements that were fundamentally non-mutual, as a whole—e.g., one party had to
     arbitrate all claims, while the other didn't have to arbitrate any.  Consequently, there
28   was no way to sever the unenforceable provisions and leave a viable path to
     arbitration.  That's not true here.

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc., certifies that this brief contains 6,990 words, which complies with the word limit of L.R. 11-6.1.

Dated: April 14, 2023

*Timothy L. O'Ma——*

Timothy L. O'Mara

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

23

DEFS.' REPLY ISO MOT. TO
COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS