# EXHIBIT C

Exhibit C
Page 41



# JAMS Recommended Arbitration Discovery Protocols for Domestic, Commercial Cases

*Effective January 6, 2010*

Exhibit C
Page 42

## JAMS RECOMMENDED ARBITRATION DISCOVERY PROTOCOLS FOR DOMESTIC, COMMERCIAL CASES

JAMS provides arbitration and mediation services worldwide. We resolve some of the world's largest, most complex and contentious disputes, utilizing JAMS Rules & Procedures as well as the rules of other domestic and international arbitral institutions.

JAMS arbitrators and mediators are full-time neutrals who come from the ranks of retired state and federal judges and prominent attorneys. These highly trained, experienced ADR professionals are dedicated to the highest ethical standards of conduct.



Exhibit C
Page 43

## Introduction

JAMS is committed to providing the most efficient, cost-effective arbitration process that is possible in the particular circumstances of each case. Its experienced, trained and highly qualified arbitrators are committed to: (1) being sufficiently assertive to ensure that an arbitration will be resolved much less expensively and in much less time than if it had been litigated in court; and (2) at the same time, being sufficiently patient and restrained to ensure that there is enough discovery and evidence to permit a fair result.

The JAMS Recommended Arbitration Discovery Protocols ("Protocols"), which are set forth below, provide JAMS arbitrators with an effective tool that will help them exercise their sound judgment in furtherance of achieving an efficient, cost-effective process that affords the parties a fair opportunity to be heard.

## The Key Element: Good Judgment of the Arbitrator

- JAMS arbitrators understand that while some commercial arbitrations may have similarities, for the most part each case involves unique facts and circumstances. As a result, JAMS arbitrators adapt arbitration discovery to meet the unique characteristics of the particular case, understanding that there is no set of objective rules that, if followed, would result in one "correct" approach for all commercial cases.

- JAMS appreciates that the experience, talent and preferences brought to arbitration will vary with the arbitrator. It follows that the framework of arbitration discovery will always be based on the judgment of the arbitrator, brought to bear in the context of variables such as the applicable rules, the custom and practice for arbitrations in the industry in question and the expectations and preferences of the parties and their counsel.

- Attached as Exhibit A is a list of factors that JAMS arbitrators take into consideration when addressing the type and breadth of arbitration discovery.

## Early Attention to Discovery by the Arbitrator

- JAMS understands the importance of establishing the ground rules governing an arbitration in the period immediately following the initiation of the arbitration.

Therefore, following appointment, JAMS arbitrators promptly study the facts and the issues and become prepared to preside effectively over the early stages of the case in a way that will ultimately lead to an expeditious, cost-effective and fair process.

- Depending upon the provisions of the parties' agreement, JAMS arbitrations may be governed by the JAMS Comprehensive Arbitration Rules and Procedures or by the arbitration rules of another provider organization. Such rules, for good reason, lack the specificity that one finds, for example, in the Federal Rules of Civil Procedure. That being so, JAMS arbitrators seek to avoid uncertainty and surprise by ensuring that the parties understand at an early stage the basic ground rules for discovery. This early attention to the scope of discovery increases the chance that parties will adopt joint principles of fairness and efficiency before partisan positions arise in concrete discovery disputes.

- JAMS arbitrators place the type and breadth of arbitration discovery high on the agenda for the first pre-hearing conference at the start of the case. If at all possible, in-house counsel should attend the pre-hearing conference at which discovery will be discussed.

- JAMS arbitrators strive to enhance the chances for limited, efficient discovery by acting at the first pre-hearing conference to set hearing dates and interim deadlines that, the parties are told, will be strictly enforced and that, in fact, are thereafter strictly enforced.

- Where appropriate, JAMS arbitrators explain at the first pre-hearing conference that document requests:
  - should be limited to documents that are directly relevant to significant issues in the case or to the case's outcome;
  - should be restricted in terms of time frame, subject matter and persons or entities to which the requests pertain, and
  - should not include broad phraseology such as "all documents directly or indirectly related to."

## Party Preferences

- Overly broad arbitration discovery can result when all of the parties seek discovery beyond what is needed. This unfortunate circumstance may be caused by parties and/or advocates who are inexperienced in arbitration and simply conduct themselves in a fashion which is com-

monly accepted in court litigation. In any event, where all participants truly desire unlimited discovery, JAMS arbitrators will respect that decision, since arbitration is governed by the agreement of the parties.

- Where one side wants broad arbitration discovery and the other wants narrow discovery, the arbitrator will set meaningful limitations.

### E-Discovery

- The use of electronic media for the creation, storage and transmission of information has substantially increased the volume of available document discovery. It has also substantially increased the cost of the discovery process.

- To be able to appropriately address issues pertaining to e-discovery, JAMS arbitrators are trained to deal with the technological issues that arise in connection with electronic data.

- While there can be no objective standard for the appropriate scope of e-discovery in all cases, JAMS arbitrators recognize that an early order containing language along the following lines can be an important first step in limiting such discovery in a large number of cases:

  - There shall be production of electronic documents only from sources used in the ordinary course of business. Absent a showing of compelling need, no such documents are required to be produced from backup servers, tapes or other media.

  - Absent a showing of compelling need, the production of electronic documents shall normally be made on the basis of generally available technology in a searchable format that is usable by the party receiving the e-documents and convenient and economical for the producing party. Absent a showing of compelling need, the parties need not produce metadata, with the exception of header fields for email correspondence.

- Where the costs and burdens of e-discovery are disproportionate to the nature and gravity of the dispute or to the amount in controversy, or to the relevance of the materials requested, the arbitrator will either deny such requests or order disclosure on condition that the requesting party advance the reasonable cost of production to the other side, subject to the allocation of costs in the final award.

Exhibit C
Page 46

### Artfully Drafted Arbitration Clauses

- JAMS recognizes that there is significant potential for dealing with time and other limitations on discovery in the arbitration clauses of commercial contracts. An advantage of such drafting is that it is much easier for parties to agree on such limitations before a dispute has arisen. A drawback, however, is the difficulty of rationally providing for how best to arbitrate a dispute that has not yet surfaced. Thus, the use of such clauses may be most productive in circumstances in which parties have a good idea from the outset as to the nature and scope of disputes that might thereafter arise.

- JAMS understands that in order for rational time and other discovery limitations to be effectively included in an arbitration clause, it is necessary that an attorney with a good understanding of arbitration be involved in the drafting process.

### Depositions

- Rule 17(c) of the JAMS Rules provides that in a domestic arbitration, each party is entitled to one deposition of an opposing party or an individual under the control of an opposing party and that each side may apply for the taking of additional depositions, if necessary.

- JAMS recognizes that the size and complexity of commercial arbitrations have now grown to a point where more than a single deposition can serve a useful purpose in certain instances. Depositions in a complex arbitration, for example, can significantly shorten the cross-examination of key witnesses and shorten the hearing on the merits.

- If not carefully regulated, however, deposition discovery in arbitration can become extremely expensive, wasteful and time-consuming. In determining what scope of depositions may be appropriate in a given case, a JAMS arbitrator balances these considerations, considers the factors set forth in Exhibit A and confers with counsel for the parties. If a JAMS arbitrator determines that it is appropriate to permit multiple depositions, he/she may attempt to solicit agreement at the first pre-hearing conference on language such as the following:

    > Each side may take 3* discovery depositions. Each side's depositions are to consume no more than a total of 15* hours. There are to be no speaking objections at the depositions, except to preserve

privilege. The total period for the taking of depositions shall not exceed 6* weeks.[1]

## Discovery Disputes

- Discovery disputes must be resolved promptly and efficiently. In addressing discovery disputes, JAMS arbitrators consider use of the following practices, which can increase the speed and cost-effectiveness of the arbitration:
    - Where there is a panel of three arbitrators, the parties may agree, by rule or otherwise, that the Chair or another member of the panel is authorized to resolve discovery issues, acting alone.
    - Lengthy briefs on discovery matters should be avoided. In most cases, a prompt discussion or submission of brief letters will sufficiently inform the arbitrator with regard to the issues to be decided.
    - The parties should negotiate discovery differences in good faith before presenting any remaining issues for the arbitrator's decision.
    - The existence of discovery issues should not impede the progress of discovery where there are no discovery differences.

## Discovery and Other Procedural Aspects of Arbitration

Other aspects of arbitration have interplay with, and impact on, discovery in arbitration, as discussed below.

### Requests for Adjournments

- Where parties encounter discovery difficulties, this circumstance often leads to a request for adjournment and the possible delay of the hearing. While the arbitrator may not reject a joint application of all parties to adjourn the hearing, the fact is that such adjournments can cause inordinate disruption and delay by needlessly extending unnecessary discovery and can substantially detract from the cost-effectiveness of the arbitration. If the request for adjournment is by all parties and is based on a perceived need for further discovery (as opposed to personal considerations), a JAMS arbitrator ensures that the parties understand the implications in time and cost of the adjournment they seek.

---

[1] *The asterisked numbers can of course be changed to comport with the particular circumstances of each case.*

- If one party seeks a continuance and another opposes it, then the arbitrator has discretion to grant or deny the request. Factors that affect the exercise of such discretion include the merits of the request and the legitimate needs of the parties, as well as the proximity of the request to the scheduled hearing and whether any earlier requests for adjournments have been made.

### Discovery and Dispositive Motions

- In arbitration, "dispositive" motions can cause significant delay and unduly prolong the discovery period. Such motions are commonly based on lengthy briefs and recitals of facts and, after much time, labor and expense, are generally denied on the ground that they raise issues of fact and are inconsistent with the spirit of arbitration. On the other hand, dispositive motions can sometimes enhance the efficiency of the arbitration process if directed to discrete legal issues such as statute of limitations or defenses based on clear contractual provisions. In such circumstances, an appropriately framed dispositive motion can eliminate the need for expensive and time-consuming discovery. On balance, a JAMS arbitrator will consider the following procedure with regard to dispositive motions:

  - Any party wishing to make a dispositive motion must first submit a brief letter (not exceeding five pages) explaining why the motion has merit and why it would speed the proceeding and make it more cost-effective. The other side would have a brief period within which to respond.

  - Based on the letters, the arbitrator would decide whether to proceed with more comprehensive briefing and argument on the proposed motion.

  - If the arbitrator decides to go forward with the motion, he/she would place page limits on the briefs and set an accelerated schedule for the disposition of the motion.

  - Under ordinary circumstances, the pendency of such a motion should not serve to stay any aspect of the arbitration or adjourn any pending deadlines.

*Note: These Protocols are adapted from the April 4, 2009, Report on Arbitration Discovery by the New York Bar Association.*

# EXHIBIT A

*Relevant Factors Considered by JAMS Arbitrators in Determining the Appropriate Scope of Domestic Arbitration Discovery*

## Nature of the Dispute

- The factual context of the arbitration and of the issues in question with which the arbitrator should become conversant before making a decision about discovery.

- The amount in controversy.

- The complexity of the factual issues.

- The number of parties and diversity of their interests.

- Whether any or all of the claims appear, on the basis of the pleadings, to have sufficient merit to justify the time and expense associated with the requested discovery.

- Whether there are public policy or ethical issues that give rise to the need for an in-depth probe through relatively comprehensive discovery.

- Whether it might be productive to initially address a potentially dispositive issue that does not require extensive discovery.

## Agreement of the Parties

- Agreement of the parties, if any, with respect to the scope of discovery.

- Agreement, if any, by the parties with respect to duration of the arbitration from the filing of the arbitration demand to the issuance of the final award.

- The parties' choice of substantive and procedural law and the expectations under that legal regime with respect to arbitration discovery.

## Relevance and Reasonable Need for Requested Discovery

- Relevance of the requested discovery to the material issues in dispute or the outcome of the case.

- Whether the requested discovery appears to be sought in an excess of caution, or is duplicative or redundant.

- Whether there are necessary witnesses and/or documents that are beyond the tribunal's subpoena power.

- Whether denial of the requested discovery would, in the arbitrator's judgment (after appropriate scrutinizing of the issues), deprive the requesting party of what is reasonably necessary to allow that party a fair opportunity to prepare and present its case.

- Whether the requested information could be obtained from another source more conveniently and with less expense or other burden on the party from whom the discovery is requested.

- To what extent the discovery sought is likely to lead, as a practical matter, to a case-changing "smoking gun" or to a fairer result.

- Whether broad discovery is being sought as part of a litigation tactic to put the other side to great expense and thus coerce some sort of result on grounds other than the merits.

- The time and expense that would be required for a comprehensive discovery program.

- Whether all or most of the information relevant to the determination of the merits is in the possession of one side.

- Whether the party seeking expansive discovery is willing to advance the other side's reasonable costs and attorneys' fees in connection with furnishing the requested materials and information.

- Whether a limited deposition program would be likely to (i) streamline the hearing and make it more cost-effective, (ii) lead to the disclosure of important documents not otherwise available or (iii) result in expense and delay without assisting in the determination of the merits.

### Privilege and Confidentiality

- Whether the requested discovery is likely to lead to extensive privilege disputes as to documents not likely to assist in the determination of the merits.

- Whether there are genuine confidentiality concerns with respect to documents of marginal relevance. Whether cumbersome, time-consuming procedures (attorneys' eyes only, and the like) would be necessary to protect confidentiality in such circumstances.

## Characteristics and Needs of the Parties

- The financial and human resources the parties have at their disposal to support discovery, viewed both in absolute terms and relative to one another.

- The financial burden that would be imposed by a broad discovery program and whether the extent of the burden outweighs the likely benefit of the discovery.

- Whether injunctive relief is requested or whether one or more of the parties has some other particular interest in obtaining a prompt resolution of all or some of the controversy.

- The extent to which the resolution of the controversy might have an impact on the continued viability of one or more of the parties.



Exhibit C
Page 53