**KELLEY DRYE & WARREN LLP**
Sandra L. Musumeci
3 World Trade Center
175 Greenwich Street
New York, NY 10007
Telephone:   (212) 808-7800
Facsimile:    (212) 808-7897
SMusumeci@kelleydrye.com

Becca Wahlquist
BWahlquist@kelleydrye.com

*Counsel for Nonparty New Era ADR, Inc.*

# IN THE UNITED STATES DISTRICT COURT

# FOR THE CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKOT HECKMAN, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LIVE NATION ENTERTAINMENT, INC. and TICKETMASTER LLC,<br><br>Defendants. | Case No.: 22-cv-00047-GW-GJS<br><br>The Honorable George H. Wu<br><br>**DECLARATION OF COLLIN WILLIAMS OF NON-PARTY NEW ERA ADR, INC. IN RESPONSE TO COURT'S TENTATIVE RULING OF MAY 1, 2023 ON DEFENDANTS' MOTION TO COMPEL ARBITRATION** |

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

/ / /

- 1 -    Case No.: 22-cv-00047-GW-GJS

DECLARATION OF COLLIN WILLIAMS OF NON-PARTY NEW ERA ADR, INC. IN RESPONSE TO
COURT'S TENTATIVE RULING OF MAY 1, 2023 ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

4867-0866-6983v.2

I, COLLIN WILLIAMS, declare as follows:

1. I am over 18 years of age, of sound mind, and otherwise competent to make this Declaration.

2. I am the Founder and Chairman of non-party New Era ADR, Inc. ("New Era"), the designated arbitration provider in this matter. I, along with New Era's counsel, attended the hearing and oral argument, in person, on the Motion to Compel arbitration on May 1, 2023. I now respectfully submit this Declaration on behalf of non-party New Era to address certain factual questions raised by the Court during oral argument and in its Tentative Ruling on Defendants' Motion to Compel Arbitration (ECF No. 160 (under seal)), and hopefully to assist the Court in understanding New Era's Rules and Procedures (the "Rules"), both generally and specifically with regard to mass arbitrations.[1]

3. I have been an attorney for 20 years. I spent the first eleven years of my career as a litigator at large law firms, including one of the largest law firms in the Southeast (Butler Snow LLP) and one of the largest law firms in the world (Greenberg Traurig, LLP). I practiced primarily litigation, including commercial, bankruptcy, and labor and employment litigation. I have first- and second-chaired trials in both state and federal court as well as in arbitration. I left Greenberg Traurig in 2014 and joined Oracle as part of its first cloud computing group focusing on technology transactions. After approximately two years at Oracle, I moved into the start-up world, first for a healthcare technology company and then for Reverb.com, where I managed all legal functions, including litigation. I handled the sale of Reverb to Etsy in 2019 for $275M and spent a year with Etsy after the sale before leaving to start New Era ADR. I have been involved in all forms of litigation from both the outside counsel side as well as in-house. In addition to my own legal experience, New Era ADR has two other co-founders who are also attorneys and have both been outside counsel as well as in-house counsel. Collectively, they have an additional 27 years of experience, including managing litigation. New Era ADR was created with the purpose of

---

[1] By filing this Declaration publicly, New Era is making its interpretation of its Mass Arbitration Rules available for all – including its bench of experienced neutrals – to see and use as an additional resource.

- 2 -   Case No.: 22-cv-00047-GW-GJS

DECLARATION OF COLLIN WILLIAMS OF NON-PARTY NEW ERA ADR, INC. IN RESPONSE TO
COURT'S TENTATIVE RULING OF MAY 1, 2023 ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

4867-0866-6983v.2

resolving many of the issues we faced and saw in litigation, specifically arbitration.

4. New Era is a technology company that provides *neutral* alternative dispute resolution (ADR) platforms *to all litigants* – both plaintiffs and defendants alike. The result is an easily accessible forum for plaintiffs and defendants to resolve their disputes on the merits more quickly and cost-effectively than traditional ADR forums. It was started with the sole purpose of introducing efficiency and expediency to ADR, which, in its co-founders' experience, was sorely lacking for both plaintiffs/claimants and defendants/respondents in traditional ADR forums. Through its online platform and its streamlined Rules and Procedures (the "Rules"), New Era allows all litigants to focus on the core substance of their disputes and not get bogged down by unproductive and unnecessary delay. While New Era ADR is a younger company relative to ADR providers such as AAA and JAMS, we have now been in business for over two years resolving disputes on behalf of a wide variety of claimants and respondents.[2]

5. New Era's Rules were carefully crafted by the company's three attorney co-founders (including myself), who, as mentioned above, collectively have over 40 years of law firm and in-house experience, and were drafted in consultation with well-regarded ADR practitioners, practicing litigators with experience representing both plaintiffs and defendants, and a highly-regarded law school dean. The Rules are designed to facilitate merits-based determinations, while allowing flexibility to be applied across a wide variety of cases. In particular, the Rules provide the neutrals who actually administer and hear the cases filed on New Era's ADR platform with the discretion to request whatever additional evidence, briefing, discovery, and any other information from the parties that the neutral needs. The neutral has such discretion in both expedited and standard arbitrations. The intention is ensuring the neutral has the information he, she, or they need to make a fair and carefully reasoned decision.

6. **New Era ADR's Neutrals** - New Era has a deep and highly qualified and experienced bench of neutrals to preside over cases. New Era's neutrals must have significant ADR

---

[2] Indeed, on April 3, 2023, the Superior Court of California, County of Los Angeles, referred a case to arbitration on New Era's platform using one of New Era's arbitrators. *See Medina v. Nissan North America, Inc.*, Case No. 22STCV15324 (Order of April 4, 2023).

- 3 -     Case No.: 22-cv-00047-GW-GJS

DECLARATION OF COLLIN WILLIAMS OF NON-PARTY NEW ERA ADR, INC. IN RESPONSE TO
COURT'S TENTATIVE RULING OF MAY 1, 2023 ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

4867-0866-6983v.2

experience or otherwise possess specialized knowledge and extensive experience in their field. As set forth in New Era's publicly-available Neutral Application, in order to become a New Era arbitrator, a professional must either already be a member of the National Academy of Distinguished Neutrals (NADN) or be a professional attorney in civil/commercial practice with a minimum of 15 years of uninterrupted licensed practice, including experience as a judge, significant first-chair trial experience, or an exceptionally high level of expertise in their area of law. *See* https://soapy-astrodon-b05.notion.site/New-Era-Neutrals-Program-f1db4622c663419891e26fa0451e9b81 (accessed May 17, 2023). Indeed, many of the 51 neutrals currently on New Era's roster are accredited members of prestigious professional ADR associations, such as NADN and the College of Commercial Arbitrators, and they have experience across a range of practice areas, including antitrust cases. As independent contractors, many of these neutrals have worked for, or still work for, the very same ADR providers that Plaintiffs hail as proven and well-established, including AAA and JAMS. While New Era ADR is a technology company providing platforms, solutions and rules/procedures (as guidelines) that help facilitate more efficient and less expensive decisions, the intent is, and was always, to create a bench of unassailable quality and to rely on the experience and judgment of that bench.

7. **Mass Consumer Arbitrations** - At argument on May 1, 2023, the Court expressed understandable concern regarding the "boiling the frog" evolution of consumer actions and arbitrations over the years, from the introduction of class action waivers to the emergence of mass arbitrations and the leverage that comes by virtue of a high volume of filings. Indeed, New Era's founders shared concerns about whether this market-driven evolution was eroding due process and trial on the merits for these important cases. New Era's Mass Arbitration Rules reflect a considered effort to address concerns that consumer cases were not being resolved on their merits. More specifically, New Era's Mass Arbitration Rules outline a process that uses a bellwether system to address on the merits cases that share common issues of fact and law, and at the same time allows all unique claims to be considered individually on their merits in a manner that is fair, efficient, and

- 4 -   Case No.: 22-cv-00047-GW-GJS

DECLARATION OF COLLIN WILLIAMS OF NON-PARTY NEW ERA ADR, INC. IN RESPONSE TO
COURT'S TENTATIVE RULING OF MAY 1, 2023 ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

4867-0866-6983v.2

cost-effective for all parties.[3] New Era's intent was not to add to the confusion, but, instead, to simplify the process, make it more effective, and ensure that there are mechanisms for parties to be heard. In addition, New Era retains the right of refusal to enforce any terms of use that are intended to increase gamesmanship or to unfairly prejudice either party. *See* Rule 2(f)(iii). This will be discussed further herein.

8. **New Era's Mass Arbitration Rules** - Both in its tentative opinion and during oral argument on May 1, in considering the stringent "shock the conscience" standard for substantive unconscionability, the Court raised questions regarding how New Era's Mass Arbitration Rules would operate in practice. Specifically, the Court asked how New Era would navigate conflicts of law issues for claims filed by plaintiffs from different parts of the country, and how a large group of plaintiffs would select their bellwether cases. *See* ECF 160, at 11, n. 9; Tr. 20:10-21:4. New Era's Rules provide answers to both questions.

9. First, New Era's Mass Arbitration Rules are explicit that the appointed neutral is the sole arbiter of whether cases involve common interests of law and fact. *See, e.g.,* Rules 6(b)(ii)(2), 6(b)(iii)(3)(a). To the extent that cases arise under the laws of different states (and the arbitration clause in the applicable terms of use does not identify a particular choice of law), then those claims would likely not implicate common questions of law, and they therefore would not be grouped together for purposes of adjudication via the bellwether system.

10. Second, Rule 6(b)(iii)(3) outlines the procedure for multiple parties on each side selecting their bellwether case(s):

> Claimant(s), collectively on the one hand, and Respondent(s), collectively on the other hand, will each select one "Bellwether Case" from all the cases that were filed. If there are multiple attorneys for the claimant(s) or respondent(s) they are responsible for meeting and conferring to determine their selection of the bellwether case.

---

[3] As set forth in greater detail herein in paragraphs 12-15, cases with individualized issues of law and fact from the bellwether cases are termed "Remaining Cases," and those unique issues are considered on the merits by the neutral, apart from any application of precedent from the bellwether cases. Cases with no common issues of law and fact to the bellwether cases are deemed "Removal Cases" and are taken out of the Mass Arbitration process entirely to be considered on the merits via a stand-alone Virtual Expedited Arbitration. *See* Rules 6(b)(4)(d), 6(b)(6).

- 5 -   Case No.: 22-cv-00047-GW-GJS

DECLARATION OF COLLIN WILLIAMS OF NON-PARTY NEW ERA ADR, INC. IN RESPONSE TO COURT'S TENTATIVE RULING OF MAY 1, 2023 ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

4867-0866-6983v.2

Rule 6(b)(iii)(3)(b). Significantly, to the extent that fairness requires it, the neutral has the discretion to increase the number of bellwether cases. Rule 6(b)(iii)(3)(d).

11. The Court also raised questions about how multiple claimants with their own attorneys might coordinate and appoint lead counsel. *See* ECF 160 at 13. As a threshold matter, multiple similar cases would administratively need to originate from the same counsel or group of counsel to even be considered for New Era's Mass Arbitration Rules, because as a practical matter, when new cases from disparate law firms are filed, New Era does not review and compare them in an effort to group them and manufacture mass arbitrations. Instead, New Era would designate a group of cases administratively as a likely mass arbitration because those cases came from the same firm or group of firms and involved similar claims. In any event, New Era's Mass Arbitration Rules clearly contemplate the selection of attorney representatives in mass arbitrations. For example, Rule 6(b)(iii)(1)(d) provides, "If there is more than one attorney or law firm for the claimant(s), respectively, or respondent(s), respectively, the attorneys for each side are responsible for meeting and conferring internally and achieving consensus for that side." Similarly, Rule 6(b)(iii)(3)(b) prescribes that multiple attorneys for either the claimants or respondents should meet and confer to reach consensus on the selection of bellwether cases. And again, with respect to the settlement conference required after the issuance of lead decisions, the Rules provide for a meet and confer process between multiple attorneys for either party. *See* Rule 6(b)(iii)(4)(b). In other words, like in the federal court MDL system, *see* MANUAL FOR COMPLEX LITIGATION (4th ed.), at § 22.62, groups of claimants bringing similar claims are instructed to work together to select a lead claimants' attorney who will advocate for their representative interests. (Of course, there is nothing in the Rules precluding a neutral from exercising his or her discretion to establish a process for appointing a representative claimants' counsel if the claimants themselves cannot agree.) To the extent that individual claimants' claims differ from the common claims of the group, their interests can be separately heard.

12. New Era's Rules provide for a thoughtful, streamlined, efficient process for the adjudication of mass arbitrations to allow all parties (and importantly, ***all plaintiffs***) to have their cases considered on the merits. Modeled on the well-established federal court MDL process, New

DECLARATION OF COLLIN WILLIAMS OF NON-PARTY NEW ERA ADR, INC. IN RESPONSE TO
COURT'S TENTATIVE RULING OF MAY 1, 2023 ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

4867-0866-6983v.2

Era's Rules provide for the initial trial of three (with allowance for more) bellwether cases selected by the parties and the neutral after the neutral has made an initial threshold determination that the cases in the mass action present common issues of law and fact. The trial of the bellwether cases will culminate in the neutral issuing a written "Lead Decision" for each. *See* Rule 6(b)(iii)(4)(a). Per the Rules, the Lead Decisions will be reasoned so that Precedents may be drawn and applied. *Id.* The Rules provide that the parties should then participate in a non-binding settlement conference. *See* Rule 6(b)(iii)(4)(b). If the settlement conference results in a settlement, individual claimants and/or respondents still have the opportunity to opt out of the settlement and present to the neutral their individualized issues of fact and law so that their cases may be considered independently. *See* Rule 6(b)(iii)(4)(c). If the settlement conference does not result in a settlement, each party has the right and opportunity to present to the neutral any individual cases that such party believes should be differentiated from the bellwethers and that they would like to argue should not be subject to Precedent. *See* Rule 6(b)(iii)(4)(d). In either instance, the claims that do not settle are deemed "Remaining Cases." *See* Rule 6(b)(iii)(4)(c), 6(b)(iii)(4)(d). The neutral will then individually consider each of the Remaining Cases and the arguments made regarding whether and to what extent Precedent should apply to a particular case. In other words, the parties in the Remaining Cases have the opportunity to present individualized arguments to the neutral.

13. To the extent that a mass arbitration results in a large number of potential Remaining Cases, the Rules allow for the appointment of more than one neutral to assess those cases, thereby ensuring that all cases are considered efficiently. *See* Rule 6(b)(iii)(1)(f). That New Era has a deep bench of qualified neutrals from which multiple arbitrators can be appointed facilitates this process, prevents bottlenecks, and promotes New Era's guiding principles of giving all litigants an accessible forum that provides for faster and cheaper resolutions of their disputes.

14. Under the Rules for Mass Arbitrations, the application of Precedent is designed to efficiently allow for a determination on the merits to the extent a case shares common issues of law and fact with the bellwether cases. More specifically, the neutral may apply the factual findings and legal determinations made on the New Era platform in a bellwether case to other cases in the mass arbitration with the same issues of law and fact, provided the parties present no compelling

- 7 -    Case No.: 22-cv-00047-GW-GJS

DECLARATION OF COLLIN WILLIAMS OF NON-PARTY NEW ERA ADR, INC. IN RESPONSE TO
COURT'S TENTATIVE RULING OF MAY 1, 2023 ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

4867-0866-6983v.2

reason to depart from that Precedent. *See* Rule 2(y)(i). Notably, this can be favorable to **whichever side** prevails in each of the bellwether cases; it is not inherently biased toward a respondent versus a claimant. Moreover, the application of Precedent can only occur after Lead Decisions have been rendered on the bellwether cases and the parties' post-bellwether settlement negotiations have failed. And the Precedent rule is not absolute because parties have the right to advocate as to why the Precedent should not apply to their particular case. *See* Rule 6(b)(iii)(6)(c).

15. Under the Rules for Mass Arbitrations, those plaintiffs who are deemed to have no common issues of fact and law with the bellwether cases – the Removal Cases – are handled *de novo* as stand-alone Virtual Expedited Arbitrations. *Id.* In other words, the Rules concerning mass arbitration no longer apply and each Removal Case is handled independently, meaning each one begins anew with a separate rank/strike process to select a new neutral.

16. To the extent new claimants subsequently file similar claims against the same respondent in a mass arbitration, such new claims would only fall within that prior mass arbitration umbrella (and apply any Precedent from that prior mass arbitration) if they had common lawyers and it could be shown that those new cases contained the same common issues of law and fact to the bellwether cases. Similarly, as noted, cases filed under different states' laws would almost certainly also present unique issues of law and therefore not share common issues of law and fact to the bellwether cases. To the extent later filed cases do share common attorneys and common issues of law and fact to the bellwether cases, they would be treated as Remaining Cases, whereby Precedent would apply to common issues of fact and law, but claimants would have the opportunity to present and litigate any unique issues. (Of course, the application of Precedent could actually benefit new claimants if they show they have common issues of law and fact with bellwether cases where the earlier claimants prevailed on the merits.) Even to the degree that someone could formulate a hypothetical fact pattern where a party believes it has not received a proper hearing under the Mass Arbitration Rules, the Rules are not inherently biased in favor of one party over another. And in the rare instance that a party believes that it has been the victim of a due process violation or fundamental unfairness, that party can seek recourse from the courts in a motion to vacate an arbitration award. *See, e.g.,* 9 U.S.C. § 10.

- 8 -   Case No.: 22-cv-00047-GW-GJS

DECLARATION OF COLLIN WILLIAMS OF NON-PARTY NEW ERA ADR, INC. IN RESPONSE TO
COURT'S TENTATIVE RULING OF MAY 1, 2023 ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

4867-0866-6983v.2

17. Expanding on these issues, the Court expressed concern that the Rules' concept of Precedent could act as a form of collateral estoppel against subsequently-filed cases with new claimants. This would not be the case. Collateral estoppel could not, as a matter of law, apply in such a scenario, as there would have been no privity between the parties and new claimants would have had no opportunity to litigate the issues in the prior action. However, to the extent that later-filed cases have common issues of law and/or fact to previously-litigated cases in the same mass arbitration, such that Precedent might apply, the parties have the opportunity to explain and argue why their particular issues of law and fact should be adjudicated differently from the Precedent. In practice, new claimants likely would be fully aware of the prior Precedent because of the involvement of their attorneys in those prior cases. Regardless, the claimants in subsequently-filed cases have the opportunity to argue why the Precedent should not apply to their individualized cases.

18. New Era's Rules do not address appellate rights in mass arbitrations other than to note that the right to appeal is determined by the contractual agreement between the parties. *See* Rule 6(b)(iii)(7). In other words, companies that enter subscriptions with New Era, like Live Nation, determine for themselves what appellate rights, if any, they will provide to their customers within the scope of their own terms of use. New Era customers always have the latitude to draft their terms of use as they see fit given the particular nuances and requirements of their business. New Era will honor these customized terms of use so long as they do not "contradict the letter or spirit of New Era ADR's rules and procedures." *See* Rule 2(f)(iii). New Era's rule regarding terms of use specifically reflects that New Era will not allow gamesmanship and other "boiling the frog" approaches that are intended to unfairly prejudice a proceeding towards one of the parties.

19. Finally, the Rules are not inherently biased toward any particular party, including New Era's subscription clients. The subscription pricing model actually reduces the per-case costs of arbitration for all parties in the mass arbitration context.

20. In sum, New Era's Rules and platform are designed to increase the efficiency and decrease the costs of getting disputes considered on the merits for all parties, whether they are bringing claims or defending against them. The Rules, while critically important, are guardrails,

- 9 -   Case No.: 22-cv-00047-GW-GJS

DECLARATION OF COLLIN WILLIAMS OF NON-PARTY NEW ERA ADR, INC. IN RESPONSE TO
COURT'S TENTATIVE RULING OF MAY 1, 2023 ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

4867-0866-6983v.2

and they vest New Era's experienced neutrals with broad discretion to depart from the Rules where warranted by the case at issue to promote fairness, efficiency, and cost effective dispute resolution.

I declare under penalty of perjury that the foregoing is true and correct. Executed on this 1st day of June, 2023.

_____
Collin Williams

- 10 -  Case No.: 22-cv-00047-GW-GJS

DECLARATION OF COLLIN WILLIAMS OF NON-PARTY NEW ERA ADR, INC. IN RESPONSE TO COURT'S TENTATIVE RULING OF MAY 1, 2023 ON DEFENDANTS' MOTION TO COMPEL ARBITRATION

4867-0866-6983v.2