LATHAM & WATKINS LLP
  Timothy L. O'Mara (Bar No. 212731)
    *tim.o'mara@lw.com*
  Sadik Huseny (Bar No. 224659)
    *sadik.huseny@lw.com*
  Andrew M. Gass (Bar No. 259694)
    *andrew.gass@lw.com*
  Kirsten M. Ferguson (Bar No. 252781)
    *kirsten.ferguson@lw.com*
  Alicia R. Jovais (Bar No. 296172)
    *alicia.jovais@lw.com*
  Robin L. Gushman (Bar No. 305048)
    *robin.gushman@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C.
and Live Nation Entertainment, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>**DEFENDANTS' SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>The Honorable George H. Wu<br><br>Hearing Date: July 13, 2023<br><br>Hearing Time: 8:30 a.m.<br><br>Courtroom: 9D, 9th Floor |

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

# TABLE OF CONTENTS

I.      INTRODUCTION ........................................................................................... 1

II.     ARGUMENT ................................................................................................. 2

        A.      What Mass Arbitrations Are—and How They Work at
                New Era .............................................................................................. 2

                1.      Application of Precedent to Individual Cases ......................... 3

                2.      Other Mass Arbitration Questions Raised by the
                        Court ...................................................................................... 7

        B.      The FAA Ensures Minimum Due Process—and Contract
                Law Favors Enforceability .............................................................. 10

        C.      The Limited Right of Appeal Is Not Unconscionable ...................... 12

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Ass'n W. Pulp & Paper Workers v. Rexam Graphic*,
  221 F.3d 1085 (9th Cir. 2000) ................................................................................. 7

*AT&T Mobility LLC v. Concepcion*,
  563 U.S. 333 (2011) ................................................................................................ 1

*Bleecher v. Conte*,
  29 Cal. 3d 345 (1981) ....................................................................................... 2, 12

*City & Cnty. of S.F. v. Purdue Pharma*,
  491 F. Supp. 3d 610 (N.D. Cal. 2020) ............................................................... 5, 6

*City of Chi. v. Purdue Pharma*,
  2021 WL 1208971 (N.D. Ill. Mar. 31, 2021) ...................................................... 6

*Costco Wholesale Corp. v. Int'l Bhd. Teamsters, Loc. No. 542*,
  850 F. App'x 467 (9th Cir. 2021) ....................................................................... 11

*DeVries v. Experian Info. Sols.*,
  2017 WL 733096 (N.D. Cal. Feb. 24, 2017) ...................................................... 13

*Dickey v. Ticketmaster*,
  2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) .................................................... 13

*Epic Sys. Corp. v. Lewis*,
  138 S. Ct. 1612 (2018) ....................................................................................... 11

*Fosson v. Palace, Ltd.*,
  78 F.3d 1448 (9th Cir. 1996) .............................................................................. 12

*In re Gen. Motors Ignition Switch Litig.*,
  No. 14-MD-02543, ECF No. 875 (S.D.N.Y. Apr. 24, 2015) ............................... 6

*Graham v. Scissor-Tail, Inc.*,
  28 Cal. 3d 807 (1981) ......................................................................................... 11

*Home Depot USA, Inc. v. Lafarge N. Am., Inc.*,
  59 F.4th 55 (3d Cir. 2023) .................................................................................... 6

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

ii

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

*Howard v. Sulzer Orthopedics, Inc.*,
    382 F. App'x 436 (6th Cir. 2010)......................................................................... 9

*In re Korean Air Lines Co.*,
    642 F.3d 685 (9th Cir. 2011) ............................................................................... 5

*Kryzhanovskiy v. Amazon.com Servs.*,
    2022 WL 2345677 (E.D. Cal. June 29, 2022)................................................... 13

*Kyocera Corp. v. Prudential-Bache Trade Servs.*,
    341 F.3d 987 (9th Cir. 2003) ....................................................................... 10, 11

*In re Lipitor Mktg., Sales Pracs. & Prods. Liab. Litig. (No. II)*,
    892 F.3d 624 (4th Cir. 2018) ........................................................................... 5, 6

*McGill v. Citibank*,
    2 Cal. 5th 945 (2017)........................................................................................ 13

*McGrath v. DoorDash*,
    2020 WL 6526129 (C.D. Cal. Nov. 5, 2020) ..................................................... 8

*McKay v. JPMorgan Chase Bank*,
    2016 WL 11755601 (C.D. Cal. Mar. 8, 2016) ................................................. 12

*Mullo v. DoorDash*,
    2023 WL 1971897 (S.D.N.Y. Jan. 17, 2023).............................................. 1, 11

*Oberstein v. Live Nation*,
    2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) ................................................... 5

*Payne v. Tenn.*,
    501 U.S. 808 (1991) ........................................................................................... 5

*Republic of Nicar. v. Standard Fruit*,
    937 F.2d 469 (9th Cir. 1991)........................................................................ 2, 12

*Sanchez v. Valencia Holding Co.*,
    61 Cal. 4th 899 (2015).................................................................................. 12, 13

*Tompkins v. 23andMe, Inc.*,
    840 F.3d 1016 (9th Cir. 2016) ......................................................................... 12

*U.S. Life Ins. v. Superior Nat'l Ins.*,
    591 F.3d 1167 (9th Cir. 2010)..................................................................... 10, 11

*Viking River Cruises, Inc. v. Moriana*,
   142 S. Ct. 1906 (2022) ........................................................................ 9

*Weiner v. Original Talk Radio*,
   2011 WL 873246 (N.D. Cal. Mar. 14, 2011) ....................................... 7

*In re Zoloft Prods. Liab. Litig.*,
   176 F. Supp. 3d 483 (E.D. Pa. 2016), *aff'd*, 858 F.3d 787 (3d Cir. 2017) .......... 6

**STATUTES**

9 U.S.C. § 10(a)(2)-(3) ........................................................................ 11

Cal. Civ. Code
   § 1643 ......................................................................................... 2, 12
   § 3541 ......................................................................................... 2, 12

**RULES**

Fed. R. Civ. P. 23 ........................................................................... 9, 10

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

# I.    INTRODUCTION

The Court has raised questions about how New Era's Rules for mass arbitrations would operate in practice.  We explain below exactly how New Era's Rules answer those questions—and unequivocally provide each individual claimant with the opportunity to be heard.  Nothing about the use of precedent compromises that opportunity; rather, the role of precedent is effectively no different than in court.  It allows the arbiter to decide an issue in the first instance, and then in subsequent cases determine whether the facts presented yield the same analysis and outcome or a different one.  No one is precluded from arguing that their case is different—at the same time, the judicial forum is not required to pretend that the thousandth presentation of an identical claim may turn out differently from the nine hundred ninety-ninth.

Fundamentally, New Era's mass arbitration procedures are designed to be a solution to a very specific problem: how to actually arbitrate, on the merits, large numbers of identical (or nearly identical) claims brought by the <u>same</u> counsel.  These procedures operate as flexible case management tools that create efficiencies, enabling the arbitration of large numbers of individual cases "filed by the same law firm or group of law firms."  Rule 2(x)(ii)(1), ECF No. 30-4.  They are designed to result in <u>more</u> cases being heard, not fewer.  This is a paradigmatic example of what the FAA empowers parties to do: to exercise their "discretion in designing arbitration processes … to allow for efficient, streamlined procedures tailored to the type of dispute."  *AT&T Mobility LLC v. Concepcion*, 563 U.S. 333, 344 (2011).

Nevertheless, Plaintiffs speculate that, if a certain series of events occurred, then a mass arbitration could, in practice, prove unfair to a particular claimant.  Plaintiffs, however, cannot avoid arbitration by speculating that a prejudicial series of events <u>might</u> occur—or that New Era's Rules <u>could</u> be construed in a way that prejudices a party.  The FAA squarely rejects that.  *See Mullo v. DoorDash*, 2023 WL 1971897, at *4 (S.D.N.Y. Jan. 17, 2023) ("The FAA does not … allow a

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

plaintiff to avoid arbitration … based on speculation that the process will be unfair."). So, too, does contract law. In reviewing any agreement—including arbitration agreements—courts "must choose [the] interpretation which will make the [agreement] legally binding," not one that will render it unenforceable. *Bleecher v. Conte*, 29 Cal. 3d 345, 350 (1981); *see also* Cal. Civ. Code §§ 1643, 3541. New Era's Rules are unquestionably susceptible to an interpretation that provides for a fundamentally fair process for all parties. The Court should—and, indeed, must—choose that interpretation over one that would render the selection of New Era unenforceable. *See Republic of Nicar. v. Standard Fruit*, 937 F.2d 469, 479 (9th Cir. 1991) (if arbitration agreement "is susceptible of an interpretation that would allow arbitration, any doubts ... should be resolved in favor of arbitration").

## II.   ARGUMENT

### A.   What Mass Arbitrations Are—and How They Work at New Era

Mass arbitrations are a very specific litigation phenomenon: large numbers of virtually identical, individual claims brought in arbitration by the same counsel. For example, in 2018, Keller Lenkner, in coordination with Larson O'Brien LLP, filed 12,501 individual arbitrations at JAMS asserting identical claims against Uber; and in 2019-20, Keller Lenkner filed 6,250 individual arbitrations at AAA asserting identical claims against DoorDash.[1] JAMS and AAA, however, do not have nearly enough neutrals to actually arbitrate those claims on the merits, one by one—and they have not promulgated any rules on how to decide them. As a result, adjudication of those claims is, at best, delayed—and more often never occurs at all. *See* Mot. at 8-9.

This is the very specific situation that New Era's mass arbitration procedures were designed to address. Consequently, New Era's mass arbitration procedures contain an important threshold requirement: they are only triggered when there are "similar cases filed by the same law firm or group of law firms." Rule 2(x)(ii)(1)

---

[1] *See* Mot. to Compel Arb. at 8 n.6, ECF No. 30-1 ("Mot.").

LATHAM&WATKINSᴸᴸᴾ
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1  (emphasis added).  This built-in gating requirement operates at the administrative

2  level before cases are ever assigned to a neutral, and thus limits, upfront, which

3  claims can be grouped together into a mass arbitration.  *Id.*

4      This administrative limitation is critical to understanding how the mass

5  arbitration procedures operate in practice; it is the lens through which those

6  procedures must be viewed—including the selection of the neutral, the selection of

7  the bellwethers, participation in the settlement conference, and, importantly, the

8  limited reach of precedent.  At each stage, the claimants in any given mass arbitration

9  are represented by the same firm or group of firms acting in coordination.

10      With this framework in mind, we now turn to the Court's specific questions.

11          ***1.    Application of Precedent to Individual Cases***

12      The Court questioned how precedent works—in particular, whether a mass

13  arbitration "bears a greater resemblance to a class action than an MDL" due to the

14  use of precedent.   Tentative at 12.   Unlike a class action, however, bellwether

15  precedent does <u>not</u> operate as some sort of "class-wide" preclusion that binds

16  absentee claimants; it does not deprive parties of their due process right to be heard.

17      "Precedent" is a defined term, and all references to precedent are subject to

18  that definition—which provides that the application of precedent is (a) discretionary

19  (the neutral "may" apply it) <u>and</u> (b) "subject to any rights contained" in the Rules.

20  Rule 2(y)(i).  There are a plethora of rights in the Rules that ensure that <u>every</u>

21  claimant—including claimants in a mass arbitration—has a fair opportunity to be

22  heard.  Unlike absent class members who are bound by class proceedings, every

23  litigant in a New Era arbitration has the chance to present their case to the arbitrator

24  for consideration of how to adjudicate it on the merits.

25      For example, in <u>every</u> case, the "parties may offer relevant and material facts

26  and evidence as necessary to facilitate the neutral's understanding of the dispute."

27  Rule 2(r)(i).  In <u>every</u> case, a claimant has an opportunity to upload evidence to New

28  Era's platform and, if witness testimony is relevant, to "present that testimony to the

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

3

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

neutral." *Id.* 2(p)(i), 2(n)(i).  And in <u>every</u> case, the neutral must determine "what evidence shall be considered … based on fairness, equity, or the law." *Id.* 2(p)(iv).

Further, in a mass arbitration, there are two important, additional opportunities to be heard.  *First*, the "parties may present evidence and arguments demonstrating that a case or cases do not involve Common Issues of Law and Fact." *Id.* 2(x)(iii); *see also id.* 6(b)(iii)(6)(c).  The neutral will hear that evidence and argument and, if the neutral agrees, the case will be removed from the mass arbitration.  *Id.* 2(x)(iii), 6(b)(iii)(6)(c).  *Second*, after the bellwethers are arbitrated and the settlement conference is conducted, the Rules expressly provide each party with the opportunity—and the right—to argue that her case "involve[s] individualized issues of law and/or fact that should not be subject to Precedent (the 'Remaining Cases')." *Id.* 6(b)(iii)(4)(c)-(d).  There's absolutely no limit on the kinds of "individualized issues" a claimant can raise; they could be <u>any</u> argument or evidence that's different, unique, or new—or any reason to depart from precedent in that case.  In addressing those issues, the neutral must determine "what evidence shall be considered … based on fairness, equity, or the law." *Id.* 2(p)(iv).  And the Rules specifically direct the neutral to adjudicate those issues in a manner that will "ensure fundamental fairness and equity."  *Id.* 6(b)(iii)(6)(a).  There's no fair reading of these Rules—which expressly require that evidence be considered based on fairness, equity, and the law, and that Remaining Cases be adjudicated in a manner that will ensure fundamental fairness and equity—that leads to the conclusion that Remaining Cases will, instead, be adjudicated in a manner that violates claimants' fundamental due process rights.

In short, New Era's Rules unequivocally provide each individual claimant with the opportunity to present new, different, or unique issues, and argue that, as a result, precedent should not apply to their case (in whole or in part).  The neutral hears those arguments, determines what needs to be decided to ensure that the individual case is adjudicated fairly, equitably, and consistent with the law—and then exercises her discretion as to whether (and to what extent) to apply precedent.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1   *See id.* 2(p)(iv), 2(y)(i), 6(b)(iii)(4)(c)-(d), 6(b)(iii)(5)-(6).

2      This is <u>exactly</u> how precedent operates within the same court: the

3   decisionmaker hears each case, but has no obligation to pretend that it will decide

4   identical issues differently each time they are presented.  Rather, the court typically

5   follows its prior decisions on the same issues unless a party comes forward with a

6   compelling reason to depart in their case.  Take, for example, this Court's application

7   of its prior rulings in *Oberstein*, *Dickey*, and this case.  In *Oberstein*, the Court

8   applied "its previous holding" in *Dickey*: that the Terms' delegation clause was clear

9   and unmistakable.  *See* 2021 WL 4772885, at *7.  In this case, the Court explained

10  that it "sees no reason to depart from this prior finding, and Plaintiffs have not

11  suggested one."[2]  Tentative at 5-6.  This doesn't violate due process; it "promotes

12  the evenhanded, predictable, and consistent development of legal principles, fosters

13  reliance on [legal] decisions, and contributes to the actual and perceived integrity of

14  the [legal] process."  *Payne v. Tenn.*, 501 U.S. 808, 827 (1991).

15     Courts in MDLs take the same approach to precedent.[3]  Transferor courts do

16  not relitigate issues that have already been litigated in the MDL court unless there is

17  a case-specific reason to depart.  For example, in *City & County of San Francisco v.*

18  *Purdue Pharma*, 491 F. Supp. 3d 610 (N.D. Cal. 2020), defendants argued that the

19  transferor court should not apply the MDL court's rulings on motions to dismiss—

20  or its legal findings on the merits—from other cases in the MDL to their case.  *Id.* at

---

[2] Likewise, in *Barfuss*—a related case before this Court with similar but distinct
claims, different plaintiffs, and different plaintiffs' counsel—the plaintiffs requested
discovery into "substantive unconscionability as it relates to the New Era arbitration
agreement."  *Barfuss v. Live Nation*, No. CV 23-1114, May 4, 2023 Hr'g Tr. 9:1-9.
The Court denied that request: "I would normally say yes, but the problem is … that
precise topic is being litigated in another case in front of me, so I'm not going to
allow additional discovery on that particular point in this case."  *Id.* 9:10-13.

[3] The Court's tentative stated that an MDL court's orders "are typically limited to
pre-trial, case management issues—not legal findings on the merits."  Tentative at
12.  But the MDL court has "the power to decide dispositive pretrial motions" on the
merits, *In re Korean Air Lines Co.*, 642 F.3d 685, 699 (9th Cir. 2011), and "[i]t is
well established that a transferee court may dispose of cases in an MDL through
summary judgment—and indeed, they often do."  *In re Lipitor Mktg., Sales Pracs.
& Prods. Liab. Litig. (No. II)*, 892 F.3d 624, 648 (4th Cir. 2018).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

630.  Judge Breyer agreed that those decisions were "not binding," but nevertheless held that, given the similarities, "the MDL's rulings will serve as a 'springboard.'" *Id.*  Thus, while it would review defendants' arguments, the transferor court would "rely on the MDL's rulings as highly persuasive authority."[4]  *Id.*  Similarly, MDL courts can and do grant summary judgment across all cases in an MDL if no plaintiff can show that their case warrants different treatment.  *See, e.g.*, *In re Zoloft Prods. Liab. Litig.*, 176 F. Supp. 3d 483, 486 n.4 (E.D. Pa. 2016), *aff'd*, 858 F.3d 787 (3d Cir. 2017) (MDL court granted summary judgment for defendants in 311 cases after giving "all Plaintiffs' counsel the opportunity to submit any non-duplicative arguments in opposition").[5]  Thus, "[i]n MDLs, like in other litigation, a district court may apply prior rulings to new cases," including rulings on the merits, "if a party presents no new facts, evidence, or arguments to warrant a departure."  *Home Depot USA, Inc. v. Lafarge N. Am., Inc.*, 59 F.4th 55, 66 n.6 (3d Cir. 2023).  New Era's Rules take the same approach: they direct the neutral to apply "significant factual findings and legal determinations" in the bellwethers to common issues if a party presents nothing different, unique, or new in their particular case that would warrant a departure.  Rules 2(y)(i), 6(b)(iii)(4)(d), 6(b)(iii)(5)-(6).

Fundamentally, precedent under New Era's Rules creates efficiencies and promotes consistent rulings where cases share common issues.  Its primary and most obvious application is when a large number of claimants represented by the same counsel bring literally identical claims, which is in fact the paradigm for mass arbitrations.  But in any event, its application is flexible—and it will not apply to an

---

[4] *See also City of Chi. v. Purdue Pharma*, 2021 WL 1208971, at *7 (N.D. Ill. Mar. 31, 2021) (transferor court applied the MDL court's decisions on summary judgment and motions to dismiss, explaining that those rulings were "highly persuasive," and "it would only belabor the point to retrace [those] steps any further").

[5] *See also In re Lipitor*, 892 F.3d at 647-49 (affirming summary judgment across all cases in MDL, after no plaintiff produced adequate evidence of specific causation in response to show-cause orders); *In re Gen. Motors Ignition Switch Litig.*, No. 14-MD-02543, ECF No. 875 at 8 (S.D.N.Y. Apr. 24, 2015) (parties bound by MDL court's rulings on consolidated complaints, unless they showed cause why a ruling should not apply to their case).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

6

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

individual case in a mass arbitration where there is a case-specific reason to depart.

### 2.    *Other Mass Arbitration Questions Raised by the Court*

*Lead Counsel.*  The Court questioned that New Era's Rules do not specify a particular process for appointing lead counsel—and thus appeared to "lack critical procedural safeguards."  Tentative at 13; Hr'g Tr. 20:19-21:4.  But as explained above, cases can only be part of a mass arbitration if the individual claimants are represented by the same firm or group of firms acting in coordination.  Rules 2(x)(ii)(1), 6(b)(ii)(2)(b).  As a result, leadership conflicts are unlikely.  New Era's Rules thus contemplate that counsel acting in coordination will be able to, for example, reach consensus on neutral selection and bellwether selection for their respective side.  *Id.* 6(b)(iii)(1)(d), 6(b)(iii)(3)(b).  Nevertheless, if some unforeseen issues arose with regard to coordination of plaintiffs' counsel, the neutral has discretion to implement reasonable procedures to resolve those issues and ensure that every claimant is represented and heard.[6]  Such procedures could include: creating a process for appointing lead counsel; increasing the number of bellwethers; appointing additional neutrals; and revisiting whether common issues exist, including whether claimants represented by different counsel should be in distinct mass arbitration proceedings.  *See, e.g.*, *id.* 6(b)(iii)(1)(f), 6(b)(iii)(3)(d).

"Arbitrators are granted wide latitude to fashion remedies appropriate to the situations they confront."  *Ass'n W. Pulp & Paper Workers v. Rexam Graphic*, 221 F.3d 1085, 1091 (9th Cir. 2000).  To that end, the rules governing arbitrations need not spell out what the arbitrator should do in every possible situation.  *See, e.g.*, *Weiner v. Original Talk Radio*, 2011 WL 873246, at *3 (N.D. Cal. Mar. 14, 2011) (rejecting argument that arbitration agreement was unconscionable because it was "silent on certain matters (such as with regard to allowable discovery, requiring the arbitrator to provide a written statement of findings, or whether any arbitration rules

---

[6] Similarly, in an MDL, there are no specific processes for appointing lead counsel; when, how, and whether to appoint lead counsel is up to the MDL court's discretion.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

apply)").  Indeed, AAA and CPR's rules contemplate that the arbitrator will exercise
discretion to craft appropriate procedures for a particular case.  *See* ECF No. 150-5,
Rule R-23 ("[A]rbitrator may issue any orders necessary to … achieve a fair,
efficient, and economical resolution of the case."); CPR Administered Arb. Rule 9.1
("Tribunal may conduct the arbitration in such manner as it shall deem appropriate
while giving each party a fair opportunity to present its case.").[7]  Likewise, New
Era's Rules give neutrals discretion to adapt the proceedings as necessary—
whatever issues may arise—to ensure that the process is efficient, equitable, and fair.

> ***Efficient Resolution of Remaining Cases.***  The Court questioned whether the
Rules "could create a bottleneck" because, in contrast to an MDL, "a single neutral
determines how to resolve all the individual cases."  Tentative at 12-13.  It bears
repeating that the real bottleneck in mass arbitrations occurs when providers like
JAMS or AAA lack any procedures at all for dealing with thousands of identical
claims.  In that instance, the absence of any case management tools (like bellwethers)
combined with the limited number of available arbitrators creates an obstacle to
actually resolving all of the claims on the merits.  But in any event, New Era's Rules
provide ample flexibility to address the Court's expressed concern.  If there were a
large number of Remaining Cases, if the issues were especially complex, or if having
multiple neutrals was, for whatever reason, more efficient, New Era's Rules
<u>expressly</u> provide that New Era "retains the right to provide more than one neutral
for a particular Mass Arbitration."  Rule 6(b)(iii)(1)(f).[8]  Moreover, the Rules direct
the neutral to adjudicate the issues in Remaining Cases in a manner that will "ensure
fundamental fairness and equity."  *Id.* 6(b)(iii)(6)(a).  Creating a bottleneck that's
prejudicial to claimants isn't a fair or equitable way to adjudicate Remaining Cases.

---

[7] *See* https://drs.cpradr.org/rules/arbitration/administered-arbitration-rules-2019.

[8] *See also McGrath v. DoorDash*, 2020 WL 6526129, at *9-10 (C.D. Cal. Nov. 5,
2020) (rejecting claim that CPR's bellwether process "would force the thousands of
[claimants] … to delay their arbitration … for years, while they wait their turn in the
queue,'" because there was "little concrete evidence" of "significant delay").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

***Choice of Law.***  The Court also asked how "choice of law / conflict of laws issues" might impact bellwethers.  Tentative at 11 n.9.  As a threshold matter, if individual cases involve many different state laws, those cases likely do not involve common issues of law and fact—and so would not proceed as a mass arbitration. But assuming that there were common issues, variations in state law could result in distinct, state-specific mass arbitrations.  Or the neutral could address variations in law by increasing the number of bellwethers—which the neutral expressly has the discretion to do—in order to provide for proper, representative test cases for the various sub-groups.  *See* Rule 6(b)(iii)(3)(d).  And again, the fact that the Rules expressly require that the neutral "create a process for handling and resolving individualized issues of law … to ensure fundamental fairness and equity" guarantees that individual claims will be decided fairly under the law applicable to them, and will not be prejudiced by choice of law issues.  *Id.* 6(b)(iii)(6)(a).

***Notice and Opt-Outs.***  The Court also noted that New Era's Rules do not provide notice to non-parties or an opportunity to opt out.  Tentative at 13.  Notice and opt-outs arise in class actions "because class judgments bind absentees with respect to their individual claims for relief and are preclusive as to all claims the class could have brought." *Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1920 (2022); *see also* Fed. R. Civ. P. 23(c)(2)(B)(vi)-(vii) (absentee class members must receive notice stating "the binding effect of a class judgment on members"). By contrast, notice and opt-outs are not required where the proceedings—like MDLs, for example—do not preclude absentee plaintiffs from bringing their individual claims. *See, e.g.*, *Howard v. Sulzer Orthopedics, Inc.*, 382 F. App'x 436, 442 (6th Cir. 2010) (rejecting as "meritless" argument that plaintiff should have had an "opportunity to 'opt out' of the MDL procedure, just as absent class plaintiffs can opt out of a class action").  New Era's mass arbitration proceedings, like MDL proceedings, do not bind absentee claimants.  Further, the mass arbitration procedures provide a fair opportunity for claimants to be heard, regardless of when

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1  they file their claims; consequently, due process does not require notice and an
2  opportunity to opt out.[9]

3  **B.    The FAA Ensures Minimum Due Process—and Contract Law
4         Favors Enforceability**

5       Plaintiffs' arguments are a series of "what-if" hypotheticals.  They speculate
6  that, if a certain series of events occurred—for example, <u>if</u> a mass arbitration is filed
7  (Plaintiffs' counsel have <u>never</u> said they would bring one); <u>if</u> issues subsequently
8  arise with regard to the coordination of plaintiffs' counsel; <u>if</u> claimants disagree with
9  the arguments made in the bellwethers; and <u>if</u> the arbitrator acts unreasonably and
10  contrary to the New Era Rules by refusing to let those claimants raise new issues and
11  arguments in their individual cases—then a mass arbitration <u>could</u> be unfair to a
12  particular claimant.  In the unlikely event that something like that happened, the
13  FAA protects a claimant's due process rights by providing for post-award review.

14       Congress designed the FAA "to preserve due process but not to permit
15  unnecessary public intrusion into private arbitration procedures." *Kyocera Corp. v.*
16  *Prudential-Bache Trade Servs.*, 341 F.3d 987, 998 (9th Cir. 2003) (en banc).
17  Congress thus struck a balance between preserving due process and allowing
18  arbitration "to respond to the wishes of the parties more flexibly and expeditiously
19  than the federal courts' uniform rules of procedure." *Id.*  This balance "is a
20  reasonable legislative judgment that [courts] have no authority to reject." *Id.*

21       Accordingly, "when interpreting and applying the FAA," courts must be
22  "mindful not to impose the federal courts' procedural and evidentiary requirements
23  on the arbitration proceeding." *U.S. Life Ins. v. Superior Nat'l Ins.*, 591 F.3d 1167,

24

25  [9] Moreover, New Era's Rules do not raise adequacy of counsel concerns.  Adequacy
of counsel is another concept specific to class actions; it exists to ensure that class
26  counsel represent the interests of the entire class—including members who are not
present, not involved in the proceedings, and not otherwise represented. *See* Fed. R.
27  Civ. P. 23 advisory committee note (2003) (subsection (g)).  By contrast, in a New
Era mass arbitration, all individual claimants are present and participate directly in
28  the process; all are represented by their own counsel, <u>whom they selected</u>; and all
have a fair opportunity to present their own issues and arguments.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1173 (9th Cir. 2010).  Arbitration is fundamentally different from court.  "[P]arties have complete freedom to contractually modify the arbitration process by designing whatever procedures and systems they think will best meet their needs."  *Kyocera*, 341 F.3d at 1000.  And courts must "rigorously … enforce arbitration agreements according to their terms, including terms that specify … the rules under which that arbitration will be conducted."  *Epic Sys. Corp. v. Lewis*, 138 S. Ct. 1612, 1621 (2018).  If, in practice, arbitrations proceeding under those rules unfold in a way that prejudices a party, the FAA empowers courts to review arbitration awards to "ensure that the FAA's due process protections were afforded."  *U.S. Life Ins.*, 591 F.3d at 1173.  To that end, "[a]n arbitration award may be vacated if the proceedings violated the rule of fundamental fairness."  *Costco Wholesale Corp. v. Int'l Bhd. Teamsters, Loc. No. 542*, 850 F. App'x 467, 468 (9th Cir. 2021); *see also* 9 U.S.C. § 10(a)(2)-(3) (award may be vacated where arbitrator was "guilty of misconduct in refusing … to hear evidence pertinent and material to the controversy," or where "the rights of any party have been prejudiced").

It's true that courts sometimes invalidate arbitration procedures before arbitration, rather than after arbitration.  But where that happens, the procedure at issue was fundamentally unfair under any reading.  The cases cited by the parties illustrate the difference.  For instance, in *Graham*, the arbitration procedures were invalidated pre-arbitration because they designated defendant's union—of which plaintiff was not a member—as the sole arbitrator, and thus, on their face, did not satisfy "minimum levels of integrity."  28 Cal. 3d 807, 826-27 (1981).  By contrast, in *Mullo*, the absence of a specific rule that was facially deficient required that plaintiffs' challenges be addressed post-arbitration.  2023 WL 1971897, at *4.

Moreover, contract law favors interpreting agreements so they're enforceable.  Thus, if the arbitration agreement's selection of New Era is "capable of two constructions," e.g., one which interprets that selection as enforceable, and another which interprets it as unenforceable, the Court "must choose [the] interpretation

which will make the [agreement] legally binding." *Bleecher*, 29 Cal. 3d at 350; *see also Fosson v. Palace, Ltd.*, 78 F.3d 1448, 1454 (9th Cir. 1996) (same); Cal. Civ. Code § 1643 ("A contract must receive such an interpretation as will make it lawful, operative, definite, reasonable, and capable of being carried into effect."); *id.* § 3541 ("An interpretation which gives effect is preferred."). New Era's Rules are unquestionably capable of an interpretation that renders them enforceable: that they provide for a fair process for all parties, consistent with the expedited, streamlined nature of the proceeding, and do not "shock the conscience." The Court should— and, indeed, must—choose that interpretation over one that would render the selection of New Era unenforceable. *See Standard Fruit*, 937 F.2d at 479 (if arbitration agreement "is susceptible of an interpretation that would allow arbitration, any doubts ... should be resolved in favor of arbitration); *Tompkins v. 23andMe, Inc.*, 840 F.3d 1016, 1022 (9th Cir. 2016) (similar).

## C.    The Limited Right of Appeal Is Not Unconscionable

The Terms contain a limited right to appeal injunctive relief. The California Supreme Court has enforced an identical provision—one where "grants but not denials of injunctive relief may be appealed." *Sanchez v. Valencia Holding Co.*, 61 Cal. 4th 899, 906 (2015); *see also McKay v. JPMorgan Chase Bank*, 2016 WL 11755601, at *7 (C.D. Cal. Mar. 8, 2016). The Terms' provision was adopted from *Sanchez*, and tracks the language nearly verbatim; this Court, however, questioned whether (a) *Sanchez* was distinguishable because injunctive relief in antitrust cases "is a critical remedy for vindication of the public good," and (b) "claimants would be the only parties pursuing any real form of injunctive relief." Tentative at 16.

The importance of injunctive relief in antitrust cases is not a basis to distinguish *Sanchez*; the relief at issue in *Sanchez* was also "a critical remedy for vindication of the public good," and had an equally "broad impact" on the public. *Id.* Specifically, the plaintiff brought a claim for violations of California's UCL based on fraudulent business practices. *Sanchez*, 61 Cal. 4th at 907. Under the UCL,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1  a plaintiff cannot obtain damages; <u>only</u> equitable remedies are available.  *See, e.g.,*

2  *Kryzhanovskiy v. Amazon.com Servs.*, 2022 WL 2345677, at *3 (E.D. Cal. June 29,

3  2022).  One such remedy is "public injunctive relief, i.e., injunctive relief that has

4  the primary purpose and effect of prohibiting unlawful acts that threaten future injury

5  to the general public." *McGill v. Citibank*, 2 Cal. 5th 945, 951 (2017).  It is hard to

6  imagine a form of relief that is more geared toward "vindication of the public good"

7  or more likely to have a "broad impact" on the public than enjoining a fraudulent

8  business practice.  *See Sanchez*, 61 Cal. 4th at 917 (recognizing "the public['s] …

9  strong interest in ensuring that fraudulent business practices are enjoined").

10       Moreover, it's not true that claimants would be the only parties pursuing

11  injunctions.  For example, Defendants employ ticket limits to prevent resellers from

12  engaging in ticketing arbitrage; resellers, in turn, use constantly evolving strategies

13  to circumvent these limits (e.g., they pay other people to open accounts, and then

14  use those accounts to purchase tickets).  Obtaining injunctive relief via arbitration is

15  an important tool in this arms race.  Where Defendants obtain an injunction against

16  a reseller, the reseller is highly likely to appeal.

17       In any event, *Sanchez* enforced the appeal provision <u>despite</u> the fact that it was

18  more likely to benefit the defendant.  *Id.*  And this Court adopted *Sanchez*'s exact

19  reasoning when rejecting a claim that the conditional license carve-out in

20  Defendants' Terms was unconscionable: an "arguably one-sided clause in [an]

21  arbitration agreement [is] not unconscionable where it provide[s] 'the party with

22  superior bargaining strength a type of extra protection for which it has a legitimate

23  commercial need.'" *Dickey v. Ticketmaster*, 2019 WL 9096443, at *9 (C.D. Cal.

24  Mar. 12, 2019) (quoting *Sanchez*).[10]

25

26  [10] The Court also sought clarity on the temporal scope of the Terms.  Tentative at 9.
    The Terms' arbitration agreement expressly covers claims "irrespective of when

27  [they] arose." ECF No. 31-30 at 11. "Courts have … consistently applied arbitration
    agreements retroactively where," as here, the agreement "facially appl[ies] to

28  disputes arising prior to the agreement." *DeVries v. Experian Info. Sols.*, 2017 WL
    733096, at *8 (N.D. Cal. Feb. 24, 2017).  Thus, where a consumer has agreed to the
    current Terms, claims not previously filed go to New Era.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

13

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1  Dated:  June 2, 2023                          Respectfully Submitted,

2

3                                               LATHAM & WATKINS LLP

4                                        By: _____
                                             Timothy L. O'Mara
5
                                             505 Montgomery Street, Suite 2000
6                                            San Francisco, California  94111-6538
                                             Telephone:  +1.415.391.0600
7                                            Facsimile:  +1.415.395.8095
                                             tim.o'mara@lw.com
8
                                             *Attorneys for Defendants*
9                                            *Ticketmaster L.L.C. and Live Nation*
                                             *Entertainment, Inc.*

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS

1

2

# CERTIFICATE OF COMPLIANCE

3

4    The undersigned, counsel of record for Defendants Ticketmaster L.L.C. and

5    Live Nation Entertainment, Inc., certifies that this brief contains 13 pages, which
complies with the page limit set by the Court in its May 1, 2023 order (ECF No. 160).

6

7    Dated: June 2, 2023

8                                                         Timothy L. O'Mara

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS.' SUPPL. BRIEF ISO MOT.
TO COMPEL ARBITRATION
CASE NO. 2:22-CV-00047-GW-GJS