# Exhibit 1



UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

SKOT HECKMAN, et al,

               Plaintiffs,

      vs.                       Case No. CV 22-047-GW

LIVE NATION ENTERTAINMENT, INC., et al.

               Defendants.
_____/


REPORTER'S TRANSCRIPT OF
DEFENDANTS' MOTION TO COMPEL ARBITRATION
Monday, May 1, 2023
8:30 A.M.
LOS ANGELES, CALIFORNIA


_____

TERRI A. HOURIGAN, CSR NO. 3838, CCRR
FEDERAL OFFICIAL COURT REPORTER
350 WEST FIRST STREET, ROOM 4311
LOS ANGELES, CALIFORNIA  90012
(213) 894-2849

UNITED STATES DISTRICT COURT

```
1                        APPEARANCES OF COUNSEL:

2

3    FOR THE PLAINTIFF:

4         KELLER POSTMAN LLC
          BY:  WARREN D. POSTMAN
5              Attorney at Law
          1100 Vermont Avenue, N.W. Suite 12th Floor
6         Washington, D.C.  20005

7         QUINN EMANUEL URQUHART and SULLIVAN LLP
          BY:  KEVIN Y. TERUYA
8              WILLIAM R. SEARS
          Attorneys at Law
9         865 South Figueroa Street, 10th Floor
          Los Angeles, California  90017

10

11

      FOR THE DEFENDANT:
12
          LATHAM and WATKINS LLP
13        BY:  TIMOTHY L. O'MARA
               ALICIA R. JOVAIS
14             KIRSTEN M. FERGUSON
               ROBIN L. GUSHMAN
15        Attorneys at Law
          505 Montgomery Street, Suite 2000
16        San Francisco, California  94111

17

18

19

20

21

22

23

24

25
```

UNITED STATES DISTRICT COURT

| | |
|---|---|
| 1 | **LOS ANGELES, CALIFORNIA; MONDAY, MAY 1, 2023** |
| 2 | **8:30 a.m.** |
| 3 | **--oOo--** |
| 4 | |
| 5 | |
| 6 | THE COURTROOM DEPUTY:  Please remain seated and come |
| 7 | to order.  This United States District Court is now in session. |
| 8 | THE COURT:  Now, let me call the matter of *Heckman,* |
| 9 | *et al, versus Live Nation.* |
| 10 | Let me have appearances, starting with |
| 11 | plaintiff's counsel first. |
| 12 | MR. POSTMAN:  Good morning, Your Honor.  Warren |
| 13 | Postman of Keller Postman for the plaintiffs. |
| 14 | I'm here with Kevin Teruya and William Sears of |
| 15 | Quinn Emmanuel. |
| 16 | THE COURT:  All right.  For the defense? |
| 17 | MR. O'MARA:  Good morning, Your Honor.  Tim O'Mara |
| 18 | for defendants, Live Nation Ticketmaster. |
| 19 | I am here with Kirsten Ferguson, Lisa Jovais, and |
| 20 | Robin Gushman. |
| 21 | THE COURT:  All right.  Good morning. |
| 22 | We're here on the motion to compel.  I issued a |
| 23 | tentative on this.  I believe both sides have seen it? |
| 24 | MR. POSTMAN:  Yes, Your Honor. |
| 25 | MR. O'MARA:  Yes, Your Honor. |

1          THE COURT:  Does somebody want to argue something?

2          MR. O'MARA:  Yes, Your Honor.

3               So, Your Honor, the first thing I would like to

4     say, I received your tentative this morning at 7:00 a.m. and it

5     raises a number of interesting questions.

6               If, after today's hearing and oral argument, and

7     Your Honor still has questions, we would definitely request the

8     opportunity to brief any questions the Court has.

9               With that said, Your Honor, like I said, having

10    seen the tentative at 7:00 this morning, it seemed to me Your

11    Honor was raising at least three major questions for at least

12    our side.

13               And the first of which is whether there is some

14    sort of midstream change and how that affects notice.

15               The second would be the use of bellwether

16    precedent.

17               And the third is the right of appeal of

18    injunctive relief under the *Sanchez* case, Your Honor.  If I

19    could sort of --

20          THE COURT:  I have lots of other questions, too, but

21    those are some principle ones.

22          MR. O'MARA:  Certainly.  That is why I request the

23    opportunity if there remains questions to brief them, because I

24    know there were a number of them, particularly, in the

25    footnotes and otherwise.

```
 1            Just sort of taking those in order, Your Honor,
 2   we can start with the midstream.
 3            THE REPORTER:  I can't hear you and slow down.
 4            THE COURT:  You can also sit down.  You don't have
 5   to stand as long as you speak into the microphone.
 6            MR. O'MARA:  Is that better?
 7            THE COURT:  Yes.
 8            MR. O'MARA:  Great.
 9            Your Honor, on the question of whether or not
10   there is some sort of midstream change here, the issue really
11   is --
12            THE COURT:  It clearly is a midstream change.  I
13   mean, the question is whether or not there is a problem with
14   the midstream change, and then there is a question as to, you
15   know, what it is changed to, but there is no doubt there is a
16   midstream change.
17            On the one hand, you know, what used to be JAMS
18   and now it is New Era.
19            MR. O'MARA:  That is true, Your Honor.  At that
20   level of generality, there was no question there was a change
21   and we agree with that.
22            THE COURT:  Also, I would think, it should also be
23   pointed out, it's my understanding that JAMS did not have a
24   class arbitration -- or mass arbitration procedure, whereas New
25   Era does.
```

1          MR. O'MARA:  That's correct, Your Honor.

2          THE COURT:  There is also a major change.

3          MR. O'MARA:  It is a change.  Yes, Your Honor.

4               So the question I think that you are raising is

5     how does this case relate to the prior case *Oberstein*.

6               Obviously, it's a different case, it's filed at a

7     different time by different plaintiffs.

8               Ultimately, there is a question of contract, as

9     all arbitration agreements are, and the question is where did

10    the plaintiff in each of those cases agree to arbitrate?

11              In *Oberstein*, those plaintiffs agreed to

12    arbitrate any claims they had in front of JAMS.

13              Here, the plaintiffs have agreed to arbitrate in

14    front of New Era, and in terms of the scope of what they agreed

15    to arbitrate, and this is one of the issues --

16          THE COURT:  Let me put it this way, I do think that

17    -- the problem that I have is not so much with necessarily the

18    new people, although there is still an issue, but I have much

19    more of a concern as to the persons who previously would have

20    fallen or would have initially dealt with the defendants at a

21    time when it wasn't New Era, when it was JAMS.

22              And, you know, I think their situation I would

23    view more -- certainly, differently than people who got on to

24    the site starting when New Era was coming into play.

25          MR. O'MARA:  So, Your Honor, there are two points of

```
 1   law that goes directly to what Your Honor is asking.
 2              So the first question is is these named
 3   plaintiffs here -- they -- another change besides the fact
 4   terms now designate New Era is that previously, as Your Honor
 5   is aware, there were three points on which consumers were
 6   provided clear and conspicuous notice that they were agreeing
 7   to the defendant's terms, including arbitration.
 8              THE COURT:  Let me stop.  I certainly think they
 9   were provided with notice that has been upheld by the Courts as
10   being sufficient.  Whether or not I believe it is sufficient,
11   it's not up to me to create the law, the case law in that is so
12   clear that I think that is what we have.
13              MR. O'MARA:  Your Honor, there is an important
14   change though for here, which is to say, previously, when Your
15   Honor looked at defendant's terms, they were all modified click
16   wraps, so they were clear and conspicuous notice tied to an
17   action on a button.
18              Here and now at the purchase stage, Your Honor --
19              THE REPORTER:  Please slow down.
20              THE COURT:  I think I am inspiring you.
21              MR. O'MARA:  Sorry, the terms have been changed to
22   go from modified click wrap to pure click wrap, which is to say
23   that a consumer has to check a box that literally says, I have
24   read and agreed to the terms.
25              Now, they are entering our contract at that point
```

1    in time when they check the box saying, I read and agreed to

2    the terms.

3            What the case law says is that in terms of the

4    temporal scope of an arbitration agreement, the case law says

5    very specifically that in absence of a provision placing a

6    temporal limitation on arbitrability --

7            THE COURT:  You are still speaking too fast.

8            MR. O'MARA:  Sorry.  Absence of a provision placing

9    temporal limitation on arbitrability, the provision may cover

10   claims that accrued prior to the execution of the agreement.

11           So for anyone who checked that box --

12           THE COURT:  This is kind of like the analogy I'm

13   feeling at this point.  I mean, I understand this arbitration,

14   the requirements, et cetera, et cetera, but it's progressing in

15   such a way, it's almost like putting a frog in water and

16   turning up the heat.  You know, the frog doesn't necessarily

17   know that the heat has gotten so bad that it's going to perish,

18   but at some point in time the heat is so bad that the frog is

19   going to perish, and, you know, we see these fast-approaching

20   changes, you know, that are happening.

21           Now, I can understand that if in fact there is a

22   customer who is coming on board at the time that New Era was

23   always designated as the bind to conduct the arbitration, then

24   it's very similar to *Oberstein*, because in terms of the notice,

25   et cetera, which the Ninth Circuit has held to be sufficient,

1    I understand that.

2              But for persons who were not -- who dealt with

3    the defendants on numerous occasions prior to New Era coming

4    into play, on what basis -- you are saying that every customer

5    -- every single time they get on the website is obligated to

6    look, not the first time, because obviously the first time, you

7    don't have any arrangement between the customer and the

8    defendants, but in the process of going through and either

9    purchasing or doing whatever, they are, by definition, entering

10   into certain contracts, and so all of that stuff falls into

11   play.

12             But, in the situation where you have some people

13   who are dealing previously with the defendants, you are saying

14   that, well, every single time a person tries to get access to

15   the site, they have to do a comparison between the terms of

16   service or terms of use, as it's called here, between the new

17   one and the old one.

18             If there is no indication that there has been

19   some sort of change -- I mean, are they supposed to do line by

20   line comparisons every time they get on the website; is that

21   the defense's position?

22        MR. O'MARA:  So, Your Honor, I think that the law

23   actually does address this issue, which is to say that what the

24   law says is that you can't avoid a contract that you otherwise

25   are bound by, by claiming you didn't read it.

**UNITED STATES DISTRICT COURT**

1          THE COURT:  I understand that, but, you know, there

2    is a question as to the fact that if the party who wants to

3    make the change doesn't give notice to the other side of their

4    intention to change, and you are saying that well, every time

5    the person gets on the site, they have to do a line by line

6    comparison between the new terms of use and the old terms of

7    use, even though they probably don't have a copy of the old

8    terms of use, unless they were one out of the 1 million people

9    who actually print out the terms of use the first time they get

10   on, but they would have to print out the terms of use every

11   single time they got on, because you don't know when the change

12   was made and what the changes are.

13          So you would literally have to print out the

14   terms of use every single time so that you can compare the most

15   recent one, and there is no indication that there is anything

16   new, so you have to do that every single time.

17          And the question is, is this commercially

18   reasonable?  I mean, you are saying, well, yes, but it is very,

19   very strange indeed.

20          Most of the situations when there is a change,

21   for example, with credit cards and stuff like that, when they

22   change the terms, they send the credit cardholder notice that

23   yes, we're changing this, so they are notified; therefore,

24   everybody who does something thereafter, they have been

25   specifically notified; therefore, you can say, well, you should

1  have read our letters.

2          But here, you are saying you should have read

3  every single time you enter our website, you should have

4  compared what was happening or in existence in the language

5  before and what is in existence now, and we're never going to

6  tell you exactly if we changed anything, we're simply going to

7  require it every single time.  That is one of the problems I

8  have.

9          MR. O'MARA:  First, it's factually not quite right

10  because the terms have a last updated date on them.  So you can

11  tell they have been changed since you last looked at it.

12          You are notified right at the time, and it says

13  "last updated."  If it hasn't been changed in two or

14  three years, you are going to know every time it hasn't been

15  changed.

16          THE COURT:  Okay.  You don't tell them what the

17  change is.

18          MR. O'MARA:  There is not a specific notice in this

19  change, but, Your Honor, I think that is covered by the --

20          THE COURT:  Let me ask, are copies of each of the

21  old terms of use available so that they actually -- you don't

22  tell them what has been changed, but you tell them something

23  has been changed at some point in time, so do you have copies

24  of the old terms of use so they can look at the old terms of

25  use and the new ones to say, let's see what has been changed,

1  otherwise, how are they supposed to know what has been changed?

2         MR. O'MARA:  Your Honor, I think they are available

3  on the Internet through various mechanisms.

4         THE COURT:  But they are not on the site.

5         MR. O'MARA:  They are not on the site.

6         THE COURT:  You think they might be available.  In

7  other words, they are supposed to get online, trying to do some

8  sort of comparison -- by the way, I'm not saying all of this

9  will doom the arbitration, I just want to know further about

10  what the scope of what the facts are in this particular

11  situation, because again, it just seems to me that whereas I

12  obviously understand that the situation in *Oberstein*, I made

13  the decision in *Oberstein*, and it was affirmed by the Court of

14  Appeals.

15         I understand how the analysis goes generally, but

16  this type of situation, in my mind, is different, because of

17  this particular area, although obviously, as I indicated, it

18  may not cover everybody who potentially would fall within the

19  class -- or not the class, but the situation.

20         But, it does, you know -- and the other thing

21  since I have you here -- I don't know why -- you are not the

22  guilty party, if there is a guilty party, there is no guilty

23  party.  It seems to me originally a lot of the corporations who

24  are usually the defendants in these situations rather than the

25  plaintiffs in the situation, you know, they originally had a

1   major problem with class actions.  They wanted to preclude

2   customers from bringing class actions, and so they have said in

3   one of their notices that maybe didn't give the notice of that,

4   that, oh, by the way, you know, you now enter into these things

5   and you are waiving your right to bring a class action.

6            It seems to me that then they got hit with the

7   fact that what is happening in several cases is that the

8   individual customers say, okay, we can't bring it as a class so

9   we're going to bring them all one after another after another.

10           Now, the defendant is saying, well, this is a

11  problem too, well, let's have a mass arbitration, which, you

12  know, is just kind of -- you are basically trying to get the

13  effect of a class action but without any of the protections.

14           So it seems to me it's kind of strange.  Not to

15  say, again, that it would preclude an arbitration in this

16  particular situation, but again, I just want to have all of the

17  stuff thought about before I finally reach the decision.

18           MR. O'MARA:  I appreciate that, Your Honor.  I would

19  like to write at Your Honor's question, but I think it falls

20  under my second point, which is the bellwether precedent point.

21  If you could give me a second to respond to three points that I

22  would like to make on the first point, which is the first, Your

23  Honor, is that I know Your Honor discussed the Northern

24  District's and the Ninth Circuit's ruling in *Lee*, and found it

25  was in this terms of change in updating the terms didn't

1    squarely address it.

2              But what I respectfully request the Court take

3    one more look at that, and the reason is, by the way, Your

4    Honor has virtually the identical ruling from Your Honor in

5    it's called *McGee v Audible*, 2017, Westlaw 4685039.

6              And in both of those cases, what you see is that

7    the consumer was saying, look, I can't be bound by this term in

8    the updated terms because when I first sign on, that is Your

9    Honor's concern, it didn't have it, and I didn't receive

10   specific notice of the change, and the Court said that wasn't

11   enough.

12             THE COURT:  We're talking about it in a different

13   context.

14             In this particular context, I'm talking about it

15   for purposes of unconscionability.  We are basically talking

16   about unconscionability of the delegation clause itself.  And

17   part of the two aspects of procedural unconscionability is

18   inequitable bargaining positions, which you clearly have here,

19   no opportunity to negotiate clearly what you have here, and

20   also an element of surprise.

21             That is when I say it is an element of surprise,

22   and I'm not talking about this aspect of it to doom

23   arbitrability, per se, but I am just saying it seems to me that

24   one could make a finding of surprise for purposes of the

25   unconscionability analysis because of the fact that, yes, what

1    you have here is without actual notice of a change.  Although,

2    you may say, well, there has been a revision, but you don't

3    know what the revision is.

4            And so, it would require -- in other words, if

5    you can find surprise by putting in, like, a 20-page document

6    in various types of fonts, just one or two small sentences

7    about something and claim that that is being hidden, then I

8    certainly think that in a situation where you have a large term

9    of use and you have no copy to look at to compare what is the

10    prior version with the new version, so I would say that an

11    argument could be made it's being hidden for legal purposes,

12    and so therefore, you could find that as part of the surprise

13    portion of the analysis.  That is all I'm saying.

14            MR. O'MARA:  On that, Your Honor, all I would

15    suggest is in both the *Lee* case and Your Honor's *McGee* case,

16    the change was much more significant.

17            You are talking about a situation where the

18    claimant showed up and said there was no arbitration provision,

19    period.

20            Then you changed it, and put an arbitration

21    provision in, and you didn't give me specific notice, and both

22    Your Honor and the Ninth Circuit and the Northern District says

23    that doesn't matter.  You still are bound by the contract you

24    signed because you were required to read it.

25            THE COURT:  Well, was the analysis along these same

1   lines?  I don't recall the analysis was along these same lines,

2   because again, I'm just talking about this for purposes of

3   saying whether or not it is an element of surprise that one --

4   in other words, once you find procedural unconscionability, you

5   also have to deal with substantive unconscionability.

6           I am just saying I don't think my analysis was of

7   that sort.

8           Even in *Lee*, in *Lee*, the argument was not really

9   raised at the District Court level.  I had thought the argument

10  had been raised on the appellate level because the District

11  Court didn't cite the *Douglas* case, which the appellant --

12  sorry, I guess, it was the appellant was arguing -- I can't

13  remember -- in other words, the customer was arguing and

14  bringing it up in that particular context.

15          So, the Ninth Circuit addressed it in the latter

16  portion.

17          The problem is both those decisions are very,

18  very short, and they really don't devote much analysis, and so

19  again, this is what my thoughts are.

20      MR. O'MARA:  Your Honor, the only thing I would say,

21  is if you believe it was raised at the District Court, I am

22  happy to provide briefing on that, if it is helpful.

23          The last point I was going to make is that there

24  is no case law which says for a company to update its terms, it

25  has to provide specific notice of that.

1          THE COURT:  I agree with that.  I'm not saying it is

2     required.  The question, though, is, if it's not done, can one

3     base a finding of a surprise element as a result of that?

4               That's all I'm saying, and that's all I'm using

5     it for.  I didn't say because I'm going to find surprise that

6     I'm going to find that the provision -- I mean, the delegation

7     clause is invalid.

8               I'm just saying that is -- you are supposed to

9     consider all of the factors, and I think that is a factor.

10              I have considered it, and I'm basically saying

11    that is the reason I'm finding procedural unconscionability,

12    then I'm going from there to the element of substantive

13    unconscionability; that is all I'm doing.

14         MR. O'MARA:  Thank you, Your Honor.  Let me move to

15    that second point then.

16              So the first point, which is relatively minor,

17    which is obviously that New Era's rules cover more than mass

18    arbitration, but that is what the heart of the issue is here.

19              And this is sort of a little bit way of a

20    background, obviously, the Court is very familiar with this,

21    but its recently asserted in 2018, the Supreme Court has said,

22    when we're looking at arbitration agreements, and this is the

23    Supreme Court's language:  Federal Courts must both respect and

24    enforce the arbitration procedures and rules that the parties

25    have agreed to.

1          Now, I say that, not to say that these rules

2   necessarily you have to sign off on anything, but when I say it

3   as is the question here under substantive unconscionability is

4   New Era, and New Era's rules specifically are they so different

5   than anything else we have seen out there, that in the Court's

6   opinion, they quote/unquote shock the conscience.  That is the

7   standard.

8          So what we have done in our brief, Your Honor, we

9   have provided Your Honor three touchstones of why we think

10  there is no way that that could be a reasonable finding.

11         One, is the MDL process and use of bellwether

12  there.

13         THE COURT:  Again, as I pointed out, the MDL process

14  is not this.  This is not the MDL process.

15         I have done MDLs, and I understand what goes on.

16  An MDL -- bellwether for MDLs is first of all, the parties have

17  to agree to a bellwether in a particular format, because again,

18  most of the time in multi-district litigation cases, the cases

19  from around various jurisdictions are put together and

20  presented to a District Court Judge mostly for pretrial

21  purposes.  In other words, it is for scheduling, for initial

22  rulings, for *Daubert* motions, and things of that sort.

23         But the actual trials themselves are not done by

24  the MDL Judge unless that particular case comes from that

25  particular district, because there is an issue in regards to --

1    I mean, it is a lexicon case.

2              So most of the judges in these situations is they

3    try to get rid of many of those cases as possible, either

4    through pretrial rulings or something of that sort, but there

5    is not the application of some sort of res judicata or

6    collateral estoppel type of scenario, unless, for example,

7    sometimes there is -- a specific example is a patent case, if

8    the MDL judge does a Markman claims construction, it's

9    considered an issue of law, and therefore, those findings, the

10   parties would be bound to.

11             But a lot of the other stuff, you know, like, for

12   damages and things of that sort, you know, those trials are

13   done by the jurisdictions from which the cases come from

14   originally unless there is something that is agreed upon by the

15   parties in some way, shape, or form.

16             MR. O'MARA:  That's exactly right, Your Honor.  What

17   I hear Your Honor saying, and I think it's a thousand percent

18   correct, basically in the MDL process after various -- which

19   again, is not a class action, it's a procedural device for

20   dealing with a lot of individual claims which are similar, they

21   are brought together.  The Courts try and address common issues

22   in a way that sort of expedites the process and leads to

23   efficiencies, but ultimately, the cases go back and are dealt

24   with on an individual basis.

25             And I think the critical point here, and I want

1    to come back to the fact that plaintiff's counsel has also

2    recommended a bellwether process, and I would briefly like to

3    address the CPR bellwether process, but the heart of this

4    really comes back to that point, Your Honor, which is this

5    ability to raise individualized issues in a fair reading and a

6    clear reading of the rules, Your Honor, and there is no

7    question that every single claimant has multiple opportunities

8    to say that the precedent should not apply to them, they

9    have --

10            THE COURT:  Well no, that is not the issue.  The

11   issue is sometimes this:  I mean, you know, there is a due

12   process aspect of it, and there is also certain things about

13   the mass arbitration program as has been set up by New Era that

14   I don't quite understand; for example, what happens with choice

15   of law and conflict of law issues and things of that sort?

16            MR. O'MARA:  I think that is a great example, Your

17   Honor.  First of all, so the bellwether process, the default is

18   three bellwethers, and the claimants pick one.

19            THE COURT:  But that is another thing I don't

20   understand.  I don't understand how that gets set up.

21            I understand if, in fact, we have a situation

22   where we have an initial action that is brought against the

23   defendants, and actually in that situation you have all of

24   those particular claimants being represented by single counsel,

25   but what happens if individuals are filing actions against the

1  defendants?

2          In that situation, who gets to decide which of

3  those various claimants is going to be the claimant who chooses

4  the bellwether?

5          MR. O'MARA:  First of all, Your Honor, I think -- so

6  the law is very crystal clear that we have to assume the

7  arbitrator and arbitration will act in conforming with the law

8  reasonably, and we can't assume the process will be unfair.

9          If there are a number of individual --

10          THE COURT:  Unless we find the process unfair to

11  begin with.

12          MR. O'MARA:  Fair enough.  But we can't assume that,

13  like you can't assume it without facts that it would be, and

14  the law is very clearly says the Courts are supposed to assume

15  the arbitrator will act fairly and reasonably in accordance

16  with the law.

17          The hypothetical here is the number of individual

18  claimants file individual cases representing a bunch of

19  different jurisdictions, and at the first instance, Your Honor,

20  is that it goes to the arbitrator to decide whether there is

21  common issues of law.  And Your Honor's hypothetical suggested

22  they are not common issues of law.

23          THE COURT:  Not necessarily that, but it is just a

24  question as to, like, the control of -- in other words, as I

25  understand it, what happens if there is not the situation where

1    a large number of cases are filed by all of these claimants and

2    represented by a single or one or two counsel, but what also

3    could happen is the situation where if any of the defendants,

4    either defendants' notices that there have been large numbers

5    of cases that the New Era -- is it New Era -- or the defendants

6    could put them together or give some notice for New Era, I

7    guess, to put them together?

8             I just don't understand how that could be done.

9    In other words, these various lawsuits that -- I guess, what

10   would happen is the lawsuits have been filed, I guess, the

11   defendant would go into each jurisdiction and say these things

12   have to be arbitrated, and then if the answer is yes, they have

13   to be arbitrated, then who goes around collecting the cases?

14            It's almost like, what do you call those,

15   tranches is that what they are called in the mortgage industry?

16   Be that as it may, these cases are collected and then somebody

17   designates who gets to control the plaintiff's side.  I don't

18   know how it's done.

19            MR. O'MARA:  Your Honor, there is an administrative

20   process.  The claimants are required, because they agreed by

21   contract to proceed in arbitration and never told they need to

22   proceed in front of New Era, so if they want to bring an

23   arbitration, they have to file the arbitration.

24            THE COURT:  But assuming for purposes of argument,

25   they are not aware of it, maybe they should have been, but

1    let's assume they are unaware of it.

2              MR. O'MARA:  They file in Federal Court, and we file

3    a motion to compel arbitration, and at that point they become

4    aware of it, then at that point it goes to arbitration.

5              New Era has an administrative process.  New Era

6    makes no findings of fact of law, but just for administrative

7    purposes, if they think there is potentially a mass

8    arbitration, they provide that to an arbitrator for the

9    arbitrator in the arbitrator's discretion to decide if that is

10   true.

11             THE COURT:  Aside from -- the defendants would be

12   notifying New Era of those situations, because New Era would

13   not necessarily be aware of those situations initially.

14             It would be up to the defendants to say, hey,

15   there have been a number of these lawsuits filed.  New Era is

16   not going to go around looking at the docket sheets at various

17   courts.

18             MR. O'MARA:  It's not that the New Era would go to

19   Federal Court.  The matter is in Federal Court, just like this

20   one, we would file a motion to compel arbitration.

21             Once Your Honor orders something to arbitration,

22   it's then on claimants to file it or not.  And then --

23             THE COURT:  All right.  Let me do this, I have given

24   you an opportunity to argue, I haven't given the plaintiffs an

25   opportunity, he's covered a lot so far.

1      What are your responses?

2           MR. O'MARA:  Your Honor, can I do one more very

3   important point on my last point, because we are going to get

4   there.

5           THE COURT:  Sure.

6           MR. O'MARA:  I respectfully request that Your Honor

7   reread *Sanchez* on the right to injunctive relief.

8           The language in defendant's terms is specifically

9   pulled out of *Sanchez*, and the *Sanchez* right to appeal

10  injunctive relief is identical to what you have here.  It was

11  in *Sanchez*, it was the right to appeal an award, the denial of

12  injunctive relief, and literally the language was taken from

13  that case.

14          THE COURT:  The problem I have -- the problem I have

15  -- it seems to me as regards to this particular case -- I mean

16  I would view this case also perhaps a little bit differently if

17  the basis of the case wasn't anti-trust, but that is the basis

18  of this case.

19          MR. O'MARA:  Your Honor, *Sanchez* was a UCL claim and

20  an injunctive relief was core to it.

21          THE COURT:  No, but I think it's a little bit

22  different because the UCL is unfair -- I can't remember, it has

23  really loose language in it, whereas this is an anti-trust

24  monopolization, and I have troubles in this particular area

25  where you are saying that in this particular area where the

1   relief that benefits -- in other words, this is not a situation

2   -- these types of cases cover not only the individual consumers

3   of plaintiffs, but they also cover areas of economic practices,

4   so you are basically saying where individuals want to take

5   anti-trust actions, you are saying, well, we can have mass

6   arbitrations, but if we lose -- if the defendants lose -- and

7   that is the whole point of these actions is to issue an

8   injunctive relief of one sort or another -- if the defendants

9   lose, well then, there is -- then again, they can appeal, but

10   if the plaintiffs lose, they can't appeal.

11         MR. O'MARA:  Your Honor, first of all, under the UCL

12   one of the primary forms of relief that is sought is public

13   injunctive relief.  I think the comparison is --

14         THE COURT:  Actually, in UCL, the only forms of

15   relief are injunctions or restitution.

16         MR. O'MARA:  That is my point.  I think it's equally

17   as important there and frankly monetary damages under

18   anti-trust claims are usually far more significant than the

19   injunctive relief claims are.

20         THE COURT:  Not where the situation involves minute

21   amounts of money -- in other words, this type of conduct really

22   would have to be addressed by individuals.

23         It wouldn't be addressed by what -- I don't know

24   what else, but it seems to me that it is, to my mind, an issue.

25         But again, I'm not saying it's an issue that

1  would cause the defendants to ultimately lose the arbitration,

2  but I just --

3          MR. O'MARA:  Your Honor, well, in the face of the

4  fact this language was literally drawn from California Supreme

5  Court precedent, it's hard to say it shocks the conscience.

6          THE COURT:  It depends, the conscience, I suppose

7  are reviewing it.  Some consciences are kind of hardened.

8          MR. POSTMAN:  You alluded to a theme about what

9  defendants are doing more broadly here that I would like to

10  expand on.  I think it's important to give context.

11          THE COURT:  I have no problem with you making that

12  argument, but in the end one of the things you are going to

13  have to address is the notion, that after *Oberstein*, which is

14  my decision, how can I kind of, like, shift gears at this

15  situation?

16          Let me put it this say, although, I think I

17  clearly have a fairly good reason for finding procedural

18  unconscionability, the question is as to substantive

19  unconscionability may be a tougher call.

20          It is substantive unconscionability that in the

21  end, more or less, controls here.

22          MR. POSTMAN:  Understood, and I welcome the

23  challenge.

24          Just to zoom out, California law, like most

25  states, makes very clear that for cases like this where there

1   is relatively low damages caused by a single defendant and a

2   single policy, the efficient way to handle those is as a class,

3   that is the Discover Bank Rule.

4           THE COURT:  Unfortunately --

5           MR. POSTMAN:  No, let me please explain why I think

6   there is something important going on here.

7                As you were saying, *Concepcion*, at the request of

8   defendants, held well there is this federal policy that trumps

9   that, but it was very specific.

10               The federal policy was protecting individual

11  bilateral simple arbitration.  That was the entire argument

12  defendants had is there's something fundamental about

13  arbitration as protected by the FAA, where it's simple and

14  efficient, and you have to enforce that, you have to protect

15  that.

16               A number of firms, frankly, particularly mine, in

17  2018, started bringing thousands of individual arbitration,

18  sort of taking defendants up on that bargain, you can't have

19  the class, but you can have this individual.

20          THE COURT:  Let me stop you.  I agree 100 percent

21  with what you are saying, but the real question is is that is

22  what you are saying, do I think that as a result that if this

23  issue ever went back to the Supreme Court, that the Supreme

24  Court will say, well, you are right, you know, since

25  *Concepcion*, we got rid of the discovery ruling because of the

1    fact that we viewed it in this way.

2              And they can say, well, actually now this mass

3    arbitration is so similar to a form of -- it's so similar to

4    class arbitration and it's so different from individualized

5    arbitration that we're not protecting anything more.  The

6    claims that we wanted to protect was this individualized

7    arbitration.

8              I understand your argument on that, but frankly,

9    if you look at -- was it Justice Ginsburg's dissent, in

10   *Concepcion*, I think it was, where she basically said originally

11   when we had this concept of arbitration, it was between two

12   businesses and that is why we're saying that if two businesses

13   get together and they agree upon arbitration, that is what

14   we're talking about, and that is a lot faster, there is more

15   equality in terms of bargaining positions; both people know

16   what they know, the contract is there, it's in writing, and

17   therefore, you have this arbitration provision.  That's what we

18   think about.

19             But then she says:  Well, we have gone from that

20   to this little situation where, you know, you could have all

21   sorts of stuff done in contracts where you don't necessarily

22   even have to actually agree.  There is just constructive, it

23   appears there is constructively agreed upon.

24             I do not know whether or not, even if you are

25   arguing, which I think is quite well taken, but I don't think

```
 1   that will cause this present Supreme Court to change its
 2   position insofar as the Discover case was concerned.
 3            MR. POSTMAN:  I appreciate that.  I don't think we
 4   need you to find that.  We have lots of well established
 5   doctrinal bases for validating this.
 6            THE COURT:  Last time I looked, doctrinal bases
 7   doesn't really do anything unless you have some sort of
 8   judicial imprimatur that agrees with it.
 9            MR. POSTMAN:  This is my argument.
10            THE COURT:  I'm not on the Ninth Circuit or on the
11   Supreme Court.
12            MR. POSTMAN:  I'm sorry, I meant they are separate
13   from the argument I'm making about Viking River Cruise and
14   Concepcion, there are separate grounds that the Supreme Court
15   has endorsed and that are well established for invalidating
16   arguments like these.
17            There is a broader point that ties into that
18   which is in shifting -- the defendants then didn't like these
19   individual arbitrations being filed.
20            Judge Allsop in the McGrath v DoorDash case, has
21   some colorful language that they didn't like they got their
22   bargain.
23            There has been a lot of discussion at conferences
24   of what do we do about this.
25            This case presents this next effort to try to
```

1    come up with some alternative process.  It did not involve the

2    neutral forums, like AAA and JAMS that have done this for

3    decades.

4           THE COURT:  Also, because JAMS, they don't have any

5    mass arbitration provisions, even to this day, do they?

6           MR. POSTMAN:  They do not.  Counsel points out that

7    there is a mass filing schedule and there is some very

8    threshold determinations they will make, but they have elected

9    to stick with bilateral arbitration.

10          There is something to be drawn from that.  When

11   they make major changes, they involve stakeholders from all

12   sides, that is what they did with the due process protocol.

13          They are very scrupulous about not looking like

14   they are aligned with one side, and they consistently, in

15   response to defendants saying you need to change these rules to

16   have things we like, have refused.

17          You now have this other organization that has

18   sold a product as a way to solve this for defendants.

19          Without getting into the preemption argument,

20   which I'm happy to brief more, I think it is separately

21   significant and you can take notice of the fact that frankly

22   it's a little half-baked.  It doesn't really stitch together

23   well, and it trips --

24          THE COURT:  I put that on the footnote, I was being

25   a bit snarky and because I'm the worst proofreader in the

```
 1   world.
 2              There is one point where the New Era, the default
 3   says -- the default is you go to appeal to JAMS?
 4              MR. POSTMAN:  That's correct.
 5              THE COURT:  That is not a typo?
 6              MR. O'MARA:  That's correct, because JAMS has a
 7   specific provision for appealing.
 8              THE COURT:  You are saying it goes to JAMS, rather
 9   -- not that you just filed JAMS's procedure, it would actually
10   go to JAMS?
11              MR. O'MARA:  It goes to JAMS.
12              THE COURT:  Why would that be -- what you call it --
13   the quicker things that supposedly happens when one does
14   arbitration if it has to go to another entity on appeal?
15              MR. O'MARA:  It has a set of rules for appellate,
16   for appealing an arbitration award.  That is the point.
17              THE COURT:  Let me ask, is the fee that is paid for
18   by the parties in front of New Era, if it goes on appeal, do
19   they also have to pay fees to JAMS for the appeal?
20              MR. O'MARA:  On the fees, Your Honor, you only need
21   to look at the defendant's terms, which is on the defendant's
22   terms, the claimant pays a $300 filing fee with New Era and any
23   other fees that come up in arbitration are paid by defendants.
24              THE COURT:  All right.
25              MR. POSTMAN:  On the half-baked point, I do think
```

1    there is a couple of points you raised in your tentative, it's

2    helpful to walk through a couple of rules.

3              Live Nation cites one rule that is often general

4    and abstract, but skips over the specific rules to say there is

5    not a problem here, and it illustrates the procedural

6    unconscionability and lack of notice and difficulty for us even

7    to understand what this very consequential, very important

8    bellwether process even means and how it works.

9              So in talking about the bellwether process and

10   how it could or could not bind later plaintiffs, they cite

11   Rule 2(y) which is a definition of precedent.  They say it

12   includes the word "may."  The arbitrator may apply the

13   bellwethers to later cases, but they don't engage with

14   Rule 6(b)(5), which is the specific rule for mass arbitration.

15             THE COURT:  I cited those.

16             MR. POSTMAN:  Right, but that is very express -- and

17   I agree with you.  It does two things:  It says the arbitrator

18   shall apply precedents unless there is individual issues.  And

19   they make a lot about these individual issues, but let's take a

20   very natural example.

21             In an anti-trust case, let's say there is a

22   dispute about whether a certain claim is rule of reason or

23   per se, the first arbitrator says it is rule of reason, not per

24   se.

25             Under the rules, it seems clear to me, that later

```
 1    litigants who had no notice of that issue ever being litigated,
 2    no involvement, no opportunity to be heard, will get tagged by
 3    New Era, assigned to the same arbitrator, and the rules tell
 4    the arbitrator, you shall apply that unless there is an
 5    individual issue.
 6              That is plainly violative of due process under
 7    Supreme Court precedent and that is what I think as --
 8              THE COURT:  Well, let me put it this way, it's not
 9    because, in a sense, potentially is not, because if it were in
10    the class action then the parties would be bound.
11              MR. POSTMAN:  But there is notice and an opportunity
12    to opt out.
13              THE COURT:  Not necessarily if you are seeking
14    injunctive relief alone.  Is an opportunity to opt out required
15    if you are just seeking injunctive relief?
16              MR. POSTMAN:  It is not, but this applies to damages
17    as well.
18              THE COURT:  That's the point.  That's the reason why
19    I'm saying there are two different things here.  Insofar as if
20    you have a case where the claims are seeking both injunctive
21    relief and damages -- individual damages, compensatory damages,
22    then obviously, in those types of cases in order for them to be
23    bound for the compensatory damages aspect of it, there has to
24    be an opt out provision for due process requirements.
25              Yes, I agree with that.  But the problem is your
```

1    clients are seeking both.

2            But I would say potentially, though, if you had a

3    number of people who want to bring just seeking injunctive

4    relief, there could be a situation where you could have, I

5    suppose, in that situation, not have a due process issue.

6            MR. POSTMAN:  I agree, down the line.

7            THE COURT:  Assuming the class action aspects were

8    satisfied.

9            MR. POSTMAN:  I agree, down the line.  I think we

10   have now established that the best reading of these rules is

11   that in anti-trust cases and a host of other cases, this

12   applies broadly where a group of plaintiffs could seek damages

13   on a similar principle of law.

14            They could be held to have lost that claim before

15   they ever even knew about it.  That is a --

16            MR. O'MARA:  That is not fair reading of the rules.

17   It's categorically wrong.  The rules specifically say that the

18   parties always can raise evidence and arguments demonstrating

19   that they are not common issues of law and fact, not just fact,

20   and that under the very next rule that the plaintiff's counsel

21   is discussing, it says that the neutral creative process for

22   handling and resolving individualized issues of law and fact to

23   ensure fundamental fairness and equity.

24            If counsel stands up as an individual claimant in

25   a new case after the bellwethers have come down, and says,

1    look, that argument was wrong because you didn't consider this

2    or you didn't consider that, what the law tells us is that we

3    have to assume that the arbitrator will act fairly and

4    reasonably in conformity with the law.

5            And the reason the law says that, Your Honor, is

6    because the FAA touch point is fundamental fairness, and the

7    Ninth Circuit law says if the arbitration process violates the

8    rule of fundamental fairness, it's appealable to the Federal

9    Court.

10           The same is true under the FAA.  The FAA very

11   squarely gives you two rights of appeal.

12           THE COURT:  Insofar as the compensatory damages

13   aspect of it is concerned.  If one looks at the class action

14   situation where there is an issue of individual compensatory

15   damages, there has to be an opt out.

16           If you don't have an opt out, it violates due

17   process.

18           Even though I understand what you are saying,

19   well, you know, the neutrals are supposed to apply the law,

20   blah, blah, blah, blah, blah, but if he or she or the neutral

21   says, I'm going to apply to other people that had no notice or

22   ability to opt out of this ruling that I have made in another

23   case, it seems to me there is an issue of due process in the

24   same fashion as it would be in a class action situation.

25           If you are saying as a result of that, the

1    neutral can say, oh, I'm binding you to this particular

2    decision that I have made previously --

3            MR. O'MARA:  I think the issue, Your Honor, is that

4    even though it doesn't use the language of "opt out," what it

5    provides for effectively is the same thing --

6            THE COURT:  No, it's not.

7            MR. O'MARA:  -- to argue.

8            THE COURT:  That is a reason for Judge Chen's

9    decision.  The reason I kind of like Judge Chen's decision in

10   front of the Northern District is that he specifically

11   recognized the fact in that particular situation that was in

12   front of him, there wasn't an ability on opt out.

13           MR. O'MARA:  Very quickly on that.  To point out for

14   Your Honor that that is not actually quite correct under the

15   way the CPR rules work in Judge Chen's ruling, which is there

16   is very limited opt out right, which is to say that the way

17   that the CPR mass arbitration rules work, there is a set of

18   test cases, just like our bellwether process, then there is a

19   mandatory settlement or mediation process, and the opt out is

20   limited to if that mediation process results in a settlement,

21   then you can only proceed in individual arbitration.  The opt

22   out to Court is very strictly limited.

23           THE COURT:  Well, that might be sufficient; in other

24   words, you don't have the ability to opt out, you still have to

25   go to arbitration, but you are not being bound by that

1    decision; it's a new arbitration.

2          MR. POSTMAN:  I would also add, Mr. O'Mara didn't

3    respond to anything in Rule 6(b)(5) that says you could reraise

4    this nonindividualized common issue of law.  He just said,

5    well, the arbitrator could decide he's going to make up some

6    other fundamentally fair process.

7          I think that actually makes the unconscionability

8    problem worse.  I don't think that's what the rules say, but if

9    the defense of it is, well, arbitrators can just disregard the

10   plain text of the rules and come up with something else if they

11   think it's more fundamentally fair, claimants now really have

12   no idea what they are being subjected to.

13         I think it's a similar problem on discovery,

14   which I would like Your Honor to address that.

15         If we could go back to the plain text of the

16   rules, and then the parts they are citing.

17         They cite in Rule 2(o), this sentence that is

18   sort of separate.  Any request for discovery must be submitted

19   to the neutral, at which point the neutral has discretion

20   whether it should be allowed.  This is a general provision in

21   the rules.

22         They skip the immediately preceding two bullets

23   in 2(o).  It says, a formal discovery process exists solely in

24   New Era's standard arbitration process if the parties to the

25   expedited process discern that formal discovery is necessary

1    for the proceedings, they can make a request to be upgraded to

2    the standard process.

3              If granted, the fees apply and then the standard

4    arbitration shall apply, and then it explains how discovery

5    shall happen in that context.

6              Now, we need their consent to upgrade.  That is

7    Rule 6(a).  It says the parties may contractually determine

8    whether certain proceedings fit under the expedited or standard

9    and New Era will respect those contractual arrangements.

10             So we need their consent in order to get into the

11   rules where there is any discovery at all.

12             They argue separately at Reply 16 that we can get

13   discovery through the document exchange process.

14             And respectfully they -- I think they just

15   paraphrase in an inaccurate way Rule 6(A), which they are

16   quoting.

17             They say that Rule 6(a) allows a neutral to allow

18   additional exchanges as necessary to ensure a fundamentally

19   fair process.

20             But Rule 6(a) says -- it doesn't say additional

21   exchanges.  It says the neutral has discretion when talking

22   about the uploads each side can submit, you know, ten total

23   files, 25 pages, the neutral has discretion to allow evidence

24   in excess of the stated limits to ensure a fundamentally fair

25   process.

1          That plain text means that if I go to the

2    arbitrator and say, I have already got 15 documents that I need

3    to submit to you, can I please submit more than ten?  The

4    arbitrator can say yes.  It doesn't say anything about

5    providing discovery, and it also illustrates that the rules

6    repeatedly know how to say that the arbitrator can make an

7    exception for fair process.  It does it with regard to bunch of

8    different provisions.

9          It doesn't do that with regard to discovery.  It

10   doesn't do that, by the way, the page limits, not the biggest

11   thing in the world, but full stop, it says 15,000 characters.

12   Other rules allow an exception, this one doesn't.

13          It's probably a problem with being half-baked,

14   but there is a problem because there is a real risk.

15          THE COURT:  Even if I were to agree with you, I'm

16   not saying one way or the other, it seems that if the defense

17   is going to come back and say, it has to be shocking to the

18   conscience.  It just can't be a little bit one-sided or even

19   majorly one-sided, it has to shock to the conscience.

20          MR. POSTMAN:  There is a bunch of California cases

21   invalidating arbitration provisions where they don't allow

22   adequate discovery.  They don't say it shocks the conscience,

23   they say, you have to show that it's impossible to prove your

24   case without more than two depositions.

25          THE COURT:  Let me ask this question, shocking the

40

conscience is based on California law.  In other words, it's
not Mississippi law, which probably nothing would shock the
conscience there, but California law probably is the standard
I'm implying.

        MR. POSTMAN:  Maybe I should embrace that.

        THE COURT:  I shouldn't have said that about
Mississippi, now I'm going to get all of these letters from
people from Mississippi.

        MR. POSTMAN:  But I also think there is a theme --

        THE COURT:  But the answer to that question is yes,
it's California law that determines what -- in other words, you
were using the California conscience.

        MR. POSTMAN:  Right, we're using the California
conscience.

        THE COURT:  Except to the extent the California
conscience would automatically always -- would somehow severely
limit the way the arbitration is looked at fondly by both the
Congress and the Supreme Court.

        MR. POSTMAN:  Yes, I won't go back into my point,
that the California conscience can dislike group arbitrations.
The Supreme Court doesn't preclude them from disliking class
arbitration, for example, it's allowed to dislike that.

        But a couple of points on procedural
unconscionability, I think we can eliminate what may have been
some disagreement.

1          We agree there can be valid contract formation

2    based on click through, even where you don't have reason to

3    think there has been a change in the terms.

4          But California law says, like most states, that

5    if you are in a consumer relationship where there is not much

6    of a reason to expect something significant is being slipped

7    into the terms, the Courts can view that as a high degree of

8    procedural unconscionability.

9          THE COURT:  Well, there are cases that are saying in

10   the area of nonessential recreational contracts, there

11   shouldn't be any procedural unconscionability.  There are a

12   couple of cases, although, I find those cases kind of loony,

13   but what can I say?

14         MR. POSTMAN:  I think you could say that Courts

15   should look at California-published appellate decisions as

16   better guidance.

17         THE COURT:  No, that is a California decision.

18         MR. POSTMAN:  I thought it was a District Court.

19         THE COURT:  But let's put it this way, there are

20   appellate -- California Appellate Courts that go both ways.

21         MR. POSTMAN:  I think that can be answered

22   hypothetically.

23          If I go to 7 Eleven and buy a pack of gum and

24   when I go to the card reader and click submit, there is some

25   click wrap that says I'm giving up my claim for personal injury

**UNITED STATES DISTRICT COURT**

1    based on the gum.  I don't need the gum.  It's definitely true

2    that I didn't have to buy the gum, but if the on-surprise

3    prong, they slip into it an egregious term that no one would

4    have ever expected, I think it's entirely appropriate to say

5    that is surprise and it can be a form of procedural

6    unconscionability.

7                I would note that here, going along with what you

8    said, there are really a bunch of unfair surprises.  There is

9    the issue of people being bound to new terms for claims that

10   are already accrued.

11               I think, and my friend can correct me, but Live

12   Nation's position is that that applies to even to the group of

13   people that don't ever buy a new ticket and don't click through

14   anything.

15               The way the terms apply -- the way the terms

16   reserve to Live Nation the right to update its terms upon

17   posting them on their website and they are automatically

18   effective if --

19               MR. O'MARA:  Your Honor, that is not our argument, I

20   can tell you right now, you have to agree to it.  You have --

21   if you have not agreed to the update, you are not bound by it.

22               MR. POSTMAN:  I'm just reading from the terms, if

23   they are disavowing the terms, that is fine.

24               THE COURT:  Let me stop you.  In a way we're getting

25   far afield.

1           Again, the issue is whether or not the delegation
2  clause is unconscionable such that I can make a ruling.
3           And insofar as unconscionability is concerned, as
4  I indicated there are two aspects.  There is a procedural
5  unconscionability and there is substantive unconscionability.
6  I have already indicated that I'm inclined to find even at this
7  point in time that the provision was procedurally
8  unconscionable for the various reasons I have stated.
9           Again, I'm finding surprise, not as a means of
10  getting rid of it, but I'm finding surprise as part of the
11  element of procedural unconscionability, which has to be both,
12  that as a contract of adhesion, which this clearly was, it also
13  has to be an element of surprise.  I'm finding surprise to the
14  extent I have indicated.
15          Then the issue becomes whether or not it's
16  substantive unconscionability.  And to some extent, substantive
17  unconscionability concerns the delegation clause in and of
18  itself.  It doesn't necessarily sweep in everything that we
19  have been talking about in terms of all of the procedures.  So
20  the question really is on what basis is the Court going to find
21  substantive unconscionability.
22          That is probably what I'm going to ask both sides
23  to give me more of.
24          I'm going to give you one more opportunity to
25  focus on the substantive unconscionability aspect of the

1    delegation clause, because, first of all, otherwise, if the

2    issue goes to the arbitrator to decide, and the only reason I

3    can decide because of this holding, because otherwise, it is up

4    to the arbitrator, which I do recognize.

5            So that's the question, so I do want both sides

6    to focus on this, and what I propose is both sides doing cross

7    briefs, but I'm going to limit the cross briefs to -- how many

8    is 15,000 characters, how much is that?

9            MR. POSTMAN:  Five single-spaced pages.

10           THE COURT:  I would make it ten pages, because I'm

11   going to require it double-spaced.  I will give you ten pages.

12           MR. POSTMAN:  I want to argue that a fundamentally

13   process requires more, but --

14           THE COURT:  When it comes to me, everything I say

15   about the filings is due process, by definition.

16           MR. POSTMAN:  May I ask, Your Honor, would you be

17   open to us within that space which will constrain us, also

18   briefing the severability point?

19           THE COURT:  I will do that separately.  We didn't

20   talk about severability.  That is the question that I

21   approached at the end, although, probably not as clearly as I

22   should have.  By the end of this, my head was spinning already.

23           Let me ask this:  There is a provision for -- as

24   to severability, both sides agree to that, but the initial

25   question I have, maybe I don't address that, because again, I

1  have to make a determination as to the delegation clause, and

2  isn't the issue of severability -- in other words, if I don't

3  find that the -- if I don't find the delegation clause

4  insufficient, then I guess it would be up to me to do whatever

5  else thereafter.

6           But if I do find the delegation clause is

7  sufficient, then whatever has to be done would have to be done

8  by the arbitrator, right?

9           MR. POSTMAN:  If I understand correctly, I think I

10  would agree with the tentatives approach, which is you first

11  look at the delegation clause, we need to identify a flaw with

12  the delegation clause that makes it unenforceable.  Once we

13  show that the delegation clause is unenforceable, however, I

14  would submit in assessing severability, you are asking is this

15  whole clause permeated with unconscionable and unenforceable

16  conditions.

17           In that analysis with the delegation clause

18  having been invalidated, you can look at other

19  unconscionability terms and make that holistic determination

20  that is called for under the California case law.

21           THE COURT:  Let's put it this way, my response would

22  be maybe I should not decide anything on severability until I

23  decide the unconscionability on the delegation clause in and of

24  itself, because once I have done that, it is what it is.

25           MR. POSTMAN:  I am an eternal optimist, and hoping

1   you would invalidate the delegation clause, but if you want to

2   proceed --

3           THE COURT:  Let me put it this way, if I don't

4   invalidate the delegation clause, then I don't decide the issue

5   of severability, it is up to the arbitrators.  Why would I even

6   bother, I have enough on my plate.

7           MR. POSTMAN:  Fair enough.

8           THE COURT:  What I want is ten pages.  Each side to

9   do simultaneously filings of ten pages.

10          I will make it 12 pages for the initial, and then

11  six pages for any reply.

12          MR. POSTMAN:  Last request is whether we can raise

13  the FAA presumption point, which you noted in your tentative

14  you may be open to additional argument on?

15          THE COURT:  Let me ask, I don't want to say offer of

16  proof, but what is your argument you want to proffer at this

17  point?

18          MR. POSTMAN:  That *Viking River Cruise*, I think

19  makes clear that this sort of mass joinder which was what was

20  talked about in *Viking River Cruise* in PAGA, when you have that

21  sort of procedure, that sort of arbitration is not the

22  arbitration that was envisioned by and protected by the FAA.

23          And if we're right about that, what it means is

24  that all of the FAA preemption overlay that makes this very

25  complex, goes away, and we're just dealing with California law,

1   including, I would add, the *Discover Bank* Rule.

2           THE COURT:  I will allow you to make the arguments.

3   I just cannot imagine -- certainly, as the Supreme Court is

4   currently composed, that that is going to get any traction, but

5   I will allow you to do that.

6           MR. POSTMAN:  Respectfully, I think it's actually

7   Live Nation who is asking for an extension of *Concepcion*.  So

8   *Concepcion* talks about two kinds of preemption under the FAA.

9           Section 2 has an express preemption clause which

10  says you have to enforce these according to their terms.  It

11  has a saving clause that says, if there is a general way to

12  invalidate a clause you can do that under state law, and then

13  when looking at *Discover Bank* rule, Justice Scalia said and

14  this was -- he said:  We recognize unconscionability is

15  general, but here, there is purpose to this preemption too.

16          What defendant showed is that applying *Discover*

17  *Bank* Rule interfered with the purpose, not the text, but a

18  purpose of FAA and it said what that purpose was.  It said that

19  it was to protect individual -- simple bilateral arbitration.

20          *Concepcion* is a high water mark, in my opinion,

21  of FAA preemption.  There is a whole bunch of other cases that

22  are about discrimination against arbitration.

23          This is saying, no, even when it's general, which

24  *Discover Bank* Rule is, it's a general rule, no class waivers in

25  court or in arbitration, we're going to reach out and say we're

```
 1   serving this purpose.  It's an aggressive form of preemption.
 2            And then in Viking River, the Court gave further
 3   form to that of what is the type of arbitration that you have.
 4            THE COURT:  Do you have any Court that has even
 5   hinted that that will fly at some point?
 6            MR. POSTMAN:  Your Honor, there has never been a
 7   defendant who has come up with the crazy idea of mass joinder
 8   arbitration.
 9            THE COURT:  There have been cases on that.  They may
10   not have addressed this particular issue, but there have been
11   cases on that.
12            MR. POSTMAN:  In the last two or three years in
13   District Court, folks haven't raised this argument.
14            It's, I admit, kind of, like, a sophisticated
15   argument.  No, we do a lot of preemption at our firm, I think
16   they --
17            THE COURT:  You have to now.
18            MR. POSTMAN:  Yes.
19            THE COURT:  Let's put it this way, I will entertain
20   -- I will make the opening briefs 13 pages, and the responsive
21   briefs 7, and you can argue to your heart's content.
22            MR. O'MARA:  Thank you, Your Honor.
23            THE COURT:  I mean, it's an interesting issue, but
24   as I said, my problem is that it just seems to me that it's
25   getting to a point where the frog is boiling in the water.
```

```
 1              MR. O'MARA:  Your Honor, should we ask for a
 2    briefing schedule?
 3              THE COURT:  I will leave it to up to you guys.  I'm
 4    going to be busy with other things, so whatever is convenient
 5    for you is convenient for me.
 6              MR. O'MARA:  Three weeks?
 7              THE COURT:  Three weeks?
 8              MR. POSTMAN:  Sure.
 9              THE COURT:  Three weeks from today's date would be
10    the 22nd, and two weeks for the response would be the 5th.
11              I will put the matter back on calendar for the
12    15th of June.
13              MR. O'MARA:  Your Honor, could I ask for it to be
14    one week later than that?  I have a conflict on the 15th.
15              THE COURT:  What is it?
16              MR. O'MARA:  It's my anniversary.  I'm sorry.
17              MR. POSTMAN:  The 15th is the my birthday.
18              MR. O'MARA:  So we have a birthday and an
19    anniversary.
20              MR. POSTMAN:  It's okay.  I defer to Your Honor.
21              THE COURT:  I so wanted to do this to both sides, so
22    I know you guys will settle if I do, but I will put it for the
23    22nd then.
24              MR. O'MARA:  Thank you, Your Honor.
25              THE COURT:  So the first brief is going to be filed
```

1    by the 22nd.  I will put the second briefing to be filed by the

2    8th of June.

3                    All right, I guess this case can't be settled,

4    can it?

5                    The other thing I wanted to ask you about, I

6    forgot what is the status of -- there was a consent decree,

7    what is the status of the consent decree?

8                    Does it have anything to do with this case at

9    all?

10              MR. O'MARA:  No, Your Honor.

11              THE COURT:  Not at all.  Let me ask --

12              MR. POSTMAN:  The only thing I would say it

13    illustrates is the public interest you alluded to in our case.

14    The assertion is government enforcement hasn't been sufficient.

15              THE COURT:  Has there been any indication from any

16    governmental entity of some sort of pursuit of anti-competitive

17    anti-trust in this particular field?

18                    One would have thought there would be enough

19    Taylor Swift fans that there would be something by now.

20              MR. POSTMAN:  I confess, I have been focused on

21    arbitration law and I haven't been following it.

22              MR. O'MARA:  Your Honor, there is currently a CID

23    from the DOJ that the defendants are responding to.

24              THE COURT:  Okay.  Maybe I could stay this case

25    pending some other entity deciding it, that doesn't bother me.

1          I will leave it up to you.  You can talk about

2    this amongst yourselves.

3          Have a very, very nice day.  Thank you for your

4    patience.

5          (The proceedings concluded at 11:28 a.m.)

6                        *  *  *

1    **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES   )
                              )
4    STATE OF CALIFORNIA     )

5

6            I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date: 3rd day of May, 2023.

17

18

19                         /s/ TERRI A. HOURIGAN

20   _____
                 TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
21                      Federal Court Reporter

22

23

24

25

**$**

**$300** [1] - 31:22

**/**

**/s** [1] - 52:19

**1**

**1** [3] - 1:14, 3:1, 10:8
**100** [1] - 27:20
**10th** [1] - 2:9
**1100** [1] - 2:5
**11:28** [1] - 51:5
**12** [1] - 46:10
**12th** [1] - 2:5
**13** [1] - 48:20
**15** [1] - 39:2
**15,000** [2] - 39:11, 44:8
**15th** [3] - 49:12, 49:14, 49:17
**16** [1] - 38:12

**2**

**2** [1] - 47:9
**2(o** [1] - 37:17
**2(o)** [1] - 37:23
**2(y** [1] - 32:11
**20-page** [1] - 15:5
**2000** [1] - 2:15
**20005** [1] - 2:6
**2017** [1] - 14:5
**2018** [2] - 17:21, 27:17
**2023** [3] - 1:14, 3:1, 52:16
**213** [1] - 1:25
**22-047-GW** [1] - 1:7
**22nd** [3] - 49:10, 49:23, 50:1
**25** [1] - 38:23
**28** [1] - 52:9

**3**

**350** [1] - 1:24
**3838** [2] - 1:23, 52:20
**3rd** [1] - 52:16

**4**

**4311** [1] - 1:24
**4685039** [1] - 14:5

**5**

**505** [1] - 2:15

**5th** [1] - 49:10

**6**

**6(A** [1] - 38:15
**6(a** [2] - 38:17, 38:20
**6(a)** [1] - 38:7
**6(b)(5** [2] - 32:14, 37:3

**7**

**7** [2] - 41:23, 48:21
**753** [1] - 52:9
**7:00** [2] - 4:4, 4:10

**8**

**865** [1] - 2:9
**894-2849** [1] - 1:25
**8:30** [1] - 1:14, 3:2
**8th** [1] - 50:2

**9**

**90012** [1] - 1:24
**90017** [1] - 2:9
**94111** [1] - 2:16

**A**

**A.M** [1] - 1:14
**a.m** [3] - 3:2, 4:4, 51:5
**AAA** [1] - 30:2
**ability** [4] - 20:5, 35:22, 36:12, 36:24
**above-entitled** [1] - 52:12
**absence** [2] - 8:5, 8:8
**abstract** [1] - 32:4
**access** [1] - 9:14
**accordance** [1] - 21:15
**according** [1] - 47:10
**accrued** [2] - 8:10, 42:10
**act** [3] - 21:7, 21:15, 35:3
**action** [9] - 7:17, 13:5, 13:13, 19:19, 20:22, 33:10, 34:7, 35:13, 35:24
**actions** [5] - 13:1, 13:2, 20:25, 25:5, 25:7
**actual** [2] - 15:1, 18:23
**add** [2] - 37:2, 47:1

**additional** [3] - 38:18, 38:20, 46:14
**address** [7] - 9:23, 14:1, 19:21, 20:3, 26:13, 37:14, 44:25
**addressed** [4] - 16:15, 25:22, 25:23, 48:10
**adequate** [1] - 39:22
**adhesion** [1] - 43:12
**administrative** [2] - 22:19, 23:6
**administrative** [1] - 23:5
**admit** [1] - 48:14
**affects** [1] - 4:14
**affirmed** [1] - 12:13
**afield** [1] - 42:25
**aggressive** [1] - 48:1
**agree** [16] - 5:21, 6:10, 17:1, 18:17, 27:20, 28:13, 28:22, 32:17, 33:25, 34:6, 34:9, 39:15, 41:1, 42:20, 44:24, 45:10
**agreed** [10] - 6:11, 6:13, 6:14, 7:24, 8:1, 17:25, 19:14, 22:20, 28:23, 42:21
**agreeing** [1] - 7:6
**agreement** [2] - 8:4, 8:10
**agreements** [2] - 6:9, 17:22
**agrees** [1] - 29:8
**al** [3] - 1:5, 1:8, 3:9
**ALICIA** [1] - 2:13
**aligned** [1] - 30:14
**allow** [6] - 38:17, 38:23, 39:12, 39:21, 47:2, 47:5
**allowed** [2] - 37:20, 40:22
**allows** [1] - 38:17
**Allsop** [1] - 29:20
**alluded** [2] - 26:8, 50:13
**almost** [2] - 8:15, 22:14
**alone** [1] - 33:14
**alternative** [1] - 30:1
**amounts** [1] - 25:21
**analogy** [1] - 8:12
**analysis** [8] - 12:15, 14:25, 15:13, 15:25, 16:1, 16:6, 16:18, 45:17
**Angeles** [1] - 2:9
**ANGELES** [4] - 1:15, 1:24, 3:1, 52:3

**anniversary** [2] - 49:16, 49:19
**answer** [2] - 22:12, 40:10
**answered** [1] - 41:21
**anti** [8] - 24:17, 24:23, 25:5, 25:18, 32:21, 34:11, 50:16, 50:17
**anti-competitive** [1] - 50:16
**anti-trust** [7] - 24:17, 24:23, 25:5, 25:18, 32:21, 34:11, 50:17
**appeal** [10] - 4:17, 24:9, 24:11, 25:9, 25:10, 31:3, 31:14, 31:18, 31:19, 35:11
**appealable** [1] - 35:8
**appealing** [2] - 31:7, 31:16
**Appeals** [1] - 12:14
**appearances** [1] - 3:10
**APPEARANCES** [1] - 2:1
**appellant** [2] - 16:11, 16:12
**Appellate** [1] - 41:20
**appellate** [4] - 16:10, 31:15, 41:15, 41:20
**application** [1] - 19:5
**applies** [3] - 33:16, 34:12, 42:12
**apply** [9] - 20:8, 32:12, 32:18, 33:4, 35:19, 35:21, 38:3, 38:4, 42:15
**applying** [1] - 47:16
**appreciate** [2] - 13:18, 29:3
**approach** [1] - 45:10
**approached** [1] - 44:21
**approaching** [1] - 8:19
**appropriate** [1] - 42:4
**arbitrability** [3] - 8:6, 8:9, 14:23
**arbitrate** [4] - 6:10, 6:12, 6:13, 6:15
**arbitrated** [2] - 22:12, 22:13
**arbitration** [60] - 5:24, 6:9, 7:7, 8:4, 8:13, 8:23, 12:9, 13:11, 13:15, 15:18, 15:20, 17:18, 17:22, 17:24, 20:13, 21:7,

22:21, 22:23, 23:3, 23:4, 23:8, 23:20, 23:21, 26:1, 27:11, 27:13, 27:17, 28:3, 28:4, 28:5, 28:7, 28:11, 28:13, 28:17, 30:5, 30:9, 31:14, 31:16, 31:23, 32:14, 35:7, 36:17, 36:21, 36:25, 37:1, 37:24, 38:4, 39:21, 40:17, 40:22, 46:21, 46:22, 47:19, 47:22, 47:25, 48:3, 48:8, 50:21
**ARBITRATION** [1] - 1:13
**arbitrations** [3] - 25:6, 29:19, 40:20
**arbitrator** [18] - 21:7, 21:15, 21:20, 23:8, 23:9, 32:12, 32:17, 32:23, 33:3, 33:4, 35:3, 37:5, 39:2, 39:4, 39:6, 44:2, 44:4, 45:8
**arbitrator's** [1] - 23:9
**arbitrators** [2] - 37:9, 46:5
**area** [4] - 12:17, 24:24, 24:25, 41:10
**areas** [1] - 25:3
**argue** [6] - 4:1, 23:24, 36:7, 38:12, 44:12, 48:21
**arguing** [3] - 16:12, 16:13, 28:25
**argument** [17] - 4:6, 15:11, 16:8, 16:9, 22:24, 26:12, 27:11, 28:8, 29:9, 29:13, 30:19, 35:1, 42:19, 46:14, 46:16, 48:13, 48:15
**arguments** [3] - 29:16, 34:18, 47:2
**arrangement** [1] - 9:7
**arrangements** [1] - 38:9
**aside** [1] - 23:11
**aspect** [5] - 14:22, 20:12, 33:23, 35:13, 43:25
**aspects** [3] - 14:17, 34:7, 43:4
**asserted** [1] - 17:21
**assertion** [1] - 50:14
**assessing** [1] - 45:14
**assigned** [1] - 33:3
**assume** [7] - 21:6,

21:8, 21:12, 21:13, 21:14, 23:1, 35:3
**assuming** [2] - 22:24, 34:7
**Attorney** [1] - 2:5
**Attorneys** [2] - 2:8, 2:15
**Audible** [1] - 14:5
**automatically** [2] - 40:16, 42:17
**available** [3] - 11:21, 12:2, 12:6
**Avenue** [1] - 2:5
**avoid** [1] - 9:24
**award** [2] - 24:11, 31:16
**aware** [4] - 7:5, 22:25, 23:4, 23:13

**B**

**background** [1] - 17:20
**bad** [2] - 8:17, 8:18
**baked** [3] - 30:22, 31:25, 39:13
**Bank** [5] - 27:3, 47:1, 47:13, 47:17, 47:24
**bargain** [2] - 27:18, 29:22
**bargaining** [2] - 14:18, 28:15
**base** [1] - 17:3
**based** [3] - 40:1, 41:2, 42:1
**bases** [2] - 29:5, 29:6
**basis** [5] - 9:4, 19:24, 24:17, 43:20
**become** [1] - 23:3
**becomes** [1] - 43:15
**begin** [1] - 21:11
**bellwether** [12] - 4:15, 13:20, 18:11, 18:16, 18:17, 20:2, 20:3, 20:17, 21:4, 32:8, 32:9, 36:18
**bellwethers** [3] - 20:18, 32:13, 34:25
**benefits** [1] - 25:1
**best** [1] - 34:10
**better** [2] - 5:6, 41:16
**between** [5] - 9:7, 9:15, 9:16, 10:6, 28:11
**biggest** [1] - 39:10
**bilateral** [3] - 27:11, 30:9, 47:19
**bind** [2] - 8:23, 32:10
**binding** [1] - 36:1
**birthday** [2] - 49:17,

49:18
**bit** [5] - 17:19, 24:16, 24:21, 30:25, 39:18
**blah** [5] - 35:20
**board** [1] - 8:22
**boiling** [1] - 48:25
**bother** [2] - 46:6, 50:25
**bound** [9] - 9:25, 14:7, 15:23, 19:10, 33:10, 33:23, 36:25, 42:9, 42:21
**box** [3] - 7:23, 8:1, 8:11
**brief** [5] - 4:8, 4:23, 18:8, 30:20, 49:25
**briefing** [4] - 16:22, 44:18, 49:2, 50:1
**briefly** [1] - 20:2
**briefs** [4] - 44:7, 48:20, 48:21
**bring** [5] - 13:5, 13:8, 13:9, 22:22, 34:3
**bringing** [3] - 13:2, 16:14, 27:17
**broader** [1] - 29:17
**broadly** [2] - 26:9, 34:12
**brought** [2] - 19:21, 20:22
**bullets** [1] - 37:22
**bunch** [5] - 21:18, 39:7, 39:20, 42:8, 47:21
**businesses** [2] - 28:12
**busy** [1] - 49:4
**button** [1] - 7:17
**buy** [3] - 41:23, 42:2, 42:13
**BY** [3] - 2:4, 2:7, 2:13

**C**

**calendar** [1] - 49:11
**CALIFORNIA** [5] - 1:2, 1:15, 1:24, 3:1, 52:4
**California** [19] - 2:9, 2:16, 26:4, 26:24, 39:20, 40:1, 40:3, 40:11, 40:12, 40:13, 40:15, 40:20, 41:4, 41:15, 41:17, 41:20, 45:20, 46:25, 52:8
**California-published** [1] - 41:15
**cannot** [1] - 47:3
**card** [1] - 41:24
**cardholder** [1] -

10:22
**cards** [1] - 10:21
**Case** [1] - 1:7
**case** [32] - 4:18, 6:5, 6:6, 7:11, 8:3, 8:4, 15:15, 16:11, 16:24, 18:24, 19:1, 19:7, 24:13, 24:15, 24:16, 24:17, 24:18, 29:2, 29:20, 29:25, 32:21, 33:20, 34:25, 35:23, 39:24, 45:20, 50:3, 50:8, 50:13, 50:24
**cases** [27] - 6:10, 13:7, 14:6, 18:18, 19:3, 19:13, 19:23, 21:18, 22:1, 22:5, 22:13, 22:16, 25:2, 26:25, 32:13, 33:22, 34:11, 36:18, 39:20, 41:9, 41:12, 47:21, 48:9, 48:11
**categorically** [1] - 34:17
**caused** [1] - 27:1
**CCRR** [1] - 1:23
**Central** [1] - 52:8
**CENTRAL** [2] - 1:2
**certain** [4] - 9:10, 20:12, 32:22, 38:8
**certainly** [5] - 4:22, 6:23, 7:8, 15:8, 47:3
**CERTIFICATE** [1] - 52:1
**certify** [1] - 52:8
**cetera** [3] - 8:14, 8:25
**challenge** [1] - 26:23
**change** [25] - 4:14, 5:10, 5:12, 5:14, 5:16, 5:20, 6:2, 6:3, 7:3, 7:14, 9:19, 10:3, 10:4, 10:11, 10:20, 10:22, 11:17, 11:19, 13:25, 14:10, 15:1, 15:16, 29:1, 30:15, 41:3
**changed** [11] - 5:15, 7:21, 11:6, 11:11, 11:13, 11:15, 11:22, 11:23, 11:25, 12:1, 15:20
**changes** [3] - 8:20, 10:12, 30:11
**changing** [1] - 10:23
**characters** [2] - 39:11, 44:8
**check** [2] - 7:23, 8:1
**checked** [1] - 8:11
**Chen's** [3] - 36:8, 36:9, 36:15

**choice** [1] - 20:14
**chooses** [1] - 21:3
**CID** [1] - 50:22
**Circuit** [5] - 8:25, 15:22, 16:15, 29:10, 35:7
**Circuit's** [1] - 13:24
**cite** [3] - 16:11, 32:10, 37:17
**cited** [1] - 32:15
**cites** [1] - 32:3
**citing** [1] - 37:16
**claim** [5] - 15:7, 24:19, 32:22, 34:14, 41:25
**claimant** [5] - 15:18, 20:7, 21:3, 31:22, 34:24
**claimants** [8] - 20:18, 20:24, 21:3, 21:18, 22:1, 22:20, 23:22, 37:11
**claiming** [1] - 9:25
**claims** [9] - 6:12, 8:10, 19:8, 19:20, 25:18, 25:19, 28:6, 33:20, 42:9
**class** [5] - 5:24, 12:19, 13:1, 13:2, 13:5, 13:8, 13:13, 19:19, 27:2, 27:19, 28:4, 33:10, 34:7, 35:13, 35:24, 40:21, 47:24
**clause** [19] - 14:16, 17:7, 43:2, 43:17, 44:1, 45:1, 45:3, 45:6, 45:11, 45:12, 45:13, 45:15, 45:17, 45:23, 46:1, 46:4, 47:9, 47:11, 47:12
**clear** [8] - 7:6, 7:12, 7:16, 20:6, 21:6, 26:25, 32:25, 46:19
**clearly** [7] - 5:12, 14:18, 14:19, 21:14, 26:17, 43:12, 44:21
**click** [7] - 7:15, 7:22, 41:2, 41:24, 41:25, 42:13
**clients** [1] - 34:1
**Code** [1] - 52:9
**collateral** [1] - 19:6
**collected** [1] - 22:16
**collecting** [1] - 22:13
**colorful** [1] - 29:21
**coming** [6] - 6:24, 8:22, 9:3
**commercially** [1] - 10:17

**common** [5] - 19:21, 21:21, 21:22, 34:19, 37:4
**company** [1] - 16:24
**compare** [2] - 10:14, 15:9
**compared** [1] - 11:4
**comparison** [4] - 9:15, 10:6, 12:8, 25:13
**comparisons** [1] - 9:20
**COMPEL** [1] - 1:13
**compel** [3] - 3:22, 23:3, 23:20
**compensatory** [4] - 33:21, 33:23, 35:12, 35:14
**competitive** [1] - 50:16
**complex** [1] - 46:25
**composed** [1] - 47:4
**Concepcion** [7] - 27:7, 27:25, 28:10, 29:14, 47:7, 47:8, 47:20
**concept** [1] - 28:11
**concern** [2] - 6:19, 14:9
**concerned** [3] - 29:2, 35:13, 43:3
**concerns** [1] - 43:17
**concluded** [1] - 51:5
**conditions** [1] - 45:16
**conduct** [2] - 8:23, 25:21
**conference** [1] - 52:13
**conferences** [1] - 29:23
**confess** [1] - 50:20
**conflict** [2] - 20:15, 49:14
**conformance** [1] - 52:13
**conforming** [1] - 21:7
**conformity** [1] - 35:4
**Congress** [1] - 40:18
**conscience** [12] - 18:6, 26:5, 26:6, 39:18, 39:19, 39:22, 40:1, 40:3, 40:12, 40:14, 40:16, 40:20
**consciences** [1] - 26:7
**consent** [4] - 38:6, 38:10, 50:6, 50:7
**consequential** [1] -

32:7
consider [3] - 17:9, 35:1, 35:2
considered [2] - 17:10, 19:9
consistently [1] - 30:14
conspicuous [2] - 7:6, 7:16
constrain [1] - 44:17
construction [1] - 19:8
constructive [1] - 28:22
constructively [1] - 28:23
consumer [3] - 7:23, 14:7, 41:5
consumers [2] - 7:5, 25:2
content [1] - 48:21
context [5] - 14:13, 14:14, 16:14, 26:10, 38:5
contract [8] - 6:8, 7:25, 9:24, 15:23, 22:21, 28:16, 41:1, 43:12
contracts [3] - 9:10, 28:21, 41:10
contractual [1] - 38:9
contractually [1] - 38:7
control [2] - 21:24, 22:17
controls [1] - 26:21
convenient [2] - 49:4, 49:5
copies [1] - 11:20, 11:23
copy [2] - 10:7, 15:9
core [1] - 24:20
corporations [1] - 12:23
correct [7] - 6:1, 19:18, 31:4, 31:6, 36:14, 42:11, 52:10
correctly [1] - 45:9
COUNSEL [1] - 2:1
counsel [7] - 3:11, 20:1, 20:24, 22:2, 30:6, 34:20, 34:24
COUNTY [1] - 52:3
couple [4] - 32:1, 32:2, 40:23, 41:12
Court [34] - 3:7, 4:8, 12:13, 14:2, 14:10, 16:9, 16:11, 16:21, 17:20, 17:21, 18:20,

23:2, 23:19, 26:5, 27:23, 27:24, 29:1, 29:11, 29:14, 33:7, 35:9, 36:22, 40:18, 40:21, 41:18, 43:20, 47:3, 48:2, 48:4, 48:13, 52:7, 52:20
court [1] - 47:25
COURT [91] - 1:1, 1:23, 3:8, 3:16, 3:21, 4:1, 4:20, 5:4, 5:7, 5:12, 5:22, 6:2, 6:16, 7:8, 7:20, 8:7, 8:12, 10:1, 11:16, 11:20, 12:4, 12:6, 14:12, 15:25, 17:1, 18:13, 20:10, 20:19, 21:10, 21:23, 22:24, 23:11, 23:23, 24:5, 24:14, 24:21, 25:14, 25:20, 26:6, 26:11, 27:4, 27:20, 29:6, 29:10, 30:4, 30:24, 31:5, 31:8, 31:12, 31:17, 31:24, 32:15, 33:8, 33:13, 33:18, 34:7, 35:12, 36:6, 36:8, 36:23, 39:15, 39:25, 40:6, 40:10, 40:15, 41:9, 41:17, 41:19, 42:24, 44:10, 44:14, 44:19, 45:21, 46:3, 46:8, 46:15, 47:2, 48:4, 48:9, 48:17, 48:19, 48:23, 49:3, 49:7, 49:9, 49:15, 49:21, 49:25, 50:11, 50:15, 50:24
Court's [2] - 17:23, 18:5
COURTROOM [1] - 3:6
courts [1] - 23:17
Courts [7] - 7:9, 17:23, 19:21, 21:14, 41:7, 41:14, 41:20
cover [5] - 8:9, 12:18, 17:17, 25:2, 25:3
covered [2] - 11:19, 23:25
CPR [3] - 20:3, 36:15, 36:17
crazy [1] - 48:7
create [1] - 7:11
creative [1] - 34:21
credit [2] - 10:21, 10:22
critical [1] - 19:25
cross [2] - 44:6, 44:7

CRR [1] - 52:20
Cruise [3] - 29:13, 46:18, 46:20
crystal [1] - 21:6
CSR [2] - 1:23, 52:20
customer [4] - 8:22, 9:4, 9:7, 16:13
customers [2] - 13:2, 13:8
CV [1] - 1:7

**D**

D.C [1] - 2:6
damages [11] - 19:12, 25:17, 27:1, 33:16, 33:21, 33:23, 34:12, 35:12, 35:15
Date [1] - 52:16
date [2] - 11:10, 49:9
Daubert [1] - 18:22
deal [1] - 16:5
dealing [3] - 9:13, 19:20, 46:25
dealt [3] - 6:20, 9:2, 19:23
decades [1] - 30:3
decide [9] - 21:2, 21:20, 23:9, 37:5, 44:2, 44:3, 45:22, 45:23, 46:4
deciding [1] - 50:25
decision [8] - 12:13, 13:17, 26:14, 36:2, 36:9, 37:1, 41:17
decisions [2] - 16:17, 41:15
decree [2] - 50:6, 50:7
default [3] - 20:17, 31:2, 31:3
defendant [5] - 13:10, 22:11, 27:1, 47:16, 48:7
DEFENDANT [1] - 2:11
defendant's [5] - 7:7, 7:15, 24:8, 31:21
Defendants [1] - 1:9
defendants [24] - 3:18, 6:20, 9:3, 9:8, 9:13, 12:24, 20:23, 21:1, 22:3, 22:5, 23:11, 23:14, 25:6, 25:8, 26:1, 26:9, 27:8, 27:12, 27:18, 29:18, 30:15, 30:18, 31:23, 50:23
defendants' [1] - 22:4

DEFENDANTS' [1] - 1:13
defense [3] - 3:16, 37:9, 39:16
defense's [1] - 9:21
defer [1] - 49:20
definitely [2] - 4:7, 42:1
definition [3] - 9:9, 32:11, 44:15
degree [1] - 41:7
delegation [15] - 14:16, 17:6, 43:1, 43:17, 44:1, 45:1, 45:3, 45:6, 45:11, 45:12, 45:13, 45:17, 45:23, 46:1, 46:4
demonstrating [1] - 34:18
denial [1] - 24:11
depositions [1] - 39:24
DEPUTY [1] - 3:6
designate [1] - 7:4
designated [1] - 8:23
designates [1] - 22:17
determination [2] - 45:1, 45:19
determinations [1] - 30:8
determine [1] - 38:7
determines [1] - 40:11
device [1] - 19:19
devote [1] - 16:18
different [11] - 6:6, 6:7, 12:16, 14:12, 18:4, 21:19, 24:22, 28:4, 33:19, 39:8
differently [2] - 6:23, 24:16
difficulty [1] - 32:6
directly [1] - 7:1
disagreement [1] - 40:25
disavowing [1] - 42:23
discern [1] - 37:25
Discover [6] - 27:3, 29:2, 47:1, 47:13, 47:16, 47:24
discovery [11] - 27:25, 37:13, 37:18, 37:23, 37:25, 38:4, 38:11, 38:13, 39:5, 39:9, 39:22
discretion [4] - 23:9, 37:19, 38:21, 38:23
discrimination [1] -

47:22
discussed [1] - 13:23
discussing [1] - 34:21
discussion [1] - 29:23
dislike [2] - 40:20, 40:22
disliking [1] - 40:21
dispute [1] - 32:22
disregard [1] - 37:9
dissent [1] - 28:9
DISTRICT [3] - 1:1, 1:2, 1:3
District [11] - 3:7, 15:22, 16:9, 16:10, 16:21, 18:20, 36:10, 41:18, 48:13, 52:7, 52:8
district [2] - 18:18, 18:25
District's [1] - 13:24
DIVISION [1] - 1:2
docket [1] - 23:16
doctrinal [1] - 29:5, 29:6
document [2] - 15:5, 38:13
documents [1] - 39:2
DOJ [1] - 50:23
done [12] - 17:2, 18:8, 18:15, 18:23, 19:13, 22:8, 22:18, 28:21, 30:2, 45:7, 45:24
doom [2] - 12:9, 14:22
DoorDash [1] - 29:20
double [1] - 44:11
double-spaced [1] - 44:11
doubt [1] - 5:15
Douglas [1] - 16:11
down [6] - 5:3, 5:4, 7:19, 34:6, 34:9, 34:25
drawn [2] - 26:4, 30:10
due [8] - 20:11, 30:12, 33:6, 33:24, 34:5, 35:16, 35:23, 44:15

**E**

economic [1] - 25:3
effect [1] - 13:13
effective [1] - 42:18
effectively [1] - 36:5

**efficiencies** [1] - 19:23
**efficient** [2] - 27:2, 27:14
**effort** [1] - 29:25
**egregious** [1] - 42:3
**either** [3] - 9:8, 19:3, 22:4
**elected** [1] - 30:8
**element** [7] - 14:20, 14:21, 16:3, 17:3, 17:12, 43:11, 43:13
**Eleven** [1] - 41:23
**eliminate** [1] - 40:24
**EMANUEL** [1] - 2:7
**embrace** [1] - 40:5
**Emmanuel** [1] - 3:15
**end** [4] - 26:12, 26:21, 44:21, 44:22
**endorsed** [1] - 29:15
**enforce** [3] - 17:24, 27:14, 47:10
**enforcement** [1] - 50:14
**engage** [1] - 32:13
**ensure** [3] - 34:23, 38:18, 38:24
**enter** [2] - 11:3, 13:4
**entering** [2] - 7:25, 9:9
**entertain** [1] - 48:19
**ENTERTAINMENT** [1] - 1:8
**entire** [1] - 27:11
**entirely** [1] - 42:4
**entitled** [1] - 52:12
**entity** [3] - 31:14, 50:16, 50:25
**envisioned** [1] - 46:22
**equality** [1] - 28:15
**equally** [1] - 25:16
**equity** [1] - 34:23
**Era** [25] - 5:18, 5:25, 6:14, 6:21, 6:24, 7:4, 8:22, 9:3, 18:4, 20:13, 22:5, 22:6, 22:22, 23:5, 23:12, 23:15, 23:18, 31:2, 31:18, 31:22, 33:3, 38:9
**Era's** [3] - 17:17, 18:4, 37:24
**established** [3] - 29:4, 29:15, 34:10
**estoppel** [1] - 19:6
**et** [6] - 1:5, 1:8, 3:9, 8:14, 8:25
**eternal** [1] - 45:25
**evidence** [2] - 34:18, 38:23

**exactly** [2] - 11:6, 19:16
**example** [7] - 10:21, 19:6, 19:7, 20:14, 20:16, 32:20, 40:22
**except** [1] - 40:15
**exception** [2] - 39:7, 39:12
**excess** [1] - 38:24
**exchange** [1] - 38:13
**exchanges** [2] - 38:18, 38:21
**execution** [1] - 8:10
**existence** [2] - 11:4, 11:5
**exists** [1] - 37:23
**expand** [1] - 26:10
**expect** [1] - 41:6
**expected** [1] - 42:4
**expedited** [2] - 37:25, 38:8
**expedites** [1] - 19:22
**explain** [1] - 27:5
**explains** [1] - 38:4
**express** [2] - 32:16, 47:9
**extension** [1] - 47:7
**extent** [3] - 40:15, 43:14, 43:16

**F**

**FAA** [10] - 27:13, 35:6, 35:10, 46:13, 46:22, 46:24, 47:8, 47:18, 47:21
**face** [1] - 26:3
**fact** [15] - 7:3, 8:21, 10:2, 13:7, 14:25, 20:1, 20:21, 23:6, 26:4, 28:1, 30:21, 34:19, 34:22, 36:11
**factor** [1] - 17:9
**factors** [1] - 17:9
**facts** [2] - 12:10, 21:13
**factually** [1] - 11:9
**fair** [9] - 20:5, 21:12, 34:16, 37:6, 37:11, 38:19, 38:24, 39:7, 46:7
**fairly** [3] - 21:15, 26:17, 35:3
**fairness** [3] - 34:23, 35:6, 35:8
**fall** [1] - 12:18
**fallen** [1] - 6:20
**falls** [2] - 9:10, 13:19
**familiar** [1] - 17:20
**fans** [1] - 50:19

**far** [3] - 23:25, 25:18, 42:25
**fashion** [1] - 35:24
**fast** [2] - 8:7, 8:19
**fast-approaching** [1] - 8:19
**faster** [1] - 28:14
**Federal** [7] - 17:23, 23:2, 23:19, 35:8, 52:6, 52:20
**FEDERAL** [1] - 1:23
**federal** [2] - 27:8, 27:10
**fee** [2] - 31:17, 31:22
**fees** [4] - 31:19, 31:20, 31:23, 38:3
**Ferguson** [1] - 3:19
**FERGUSON** [1] - 2:14
**field** [1] - 50:17
**Figueroa** [1] - 2:9
**file** [6] - 21:18, 22:23, 23:2, 23:20, 23:22
**filed** [8] - 6:6, 22:1, 22:10, 23:15, 29:19, 31:9, 49:25, 50:1
**files** [1] - 38:23
**filing** [3] - 20:25, 30:7, 31:22
**filings** [2] - 44:15, 46:9
**finally** [1] - 13:17
**findings** [2] - 19:9, 23:6
**fine** [1] - 42:23
**firm** [1] - 48:15
**firms** [1] - 27:16
**first** [21] - 4:1, 4:3, 4:13, 7:2, 9:6, 10:9, 11:9, 13:22, 14:8, 17:16, 18:16, 20:17, 21:5, 21:19, 25:11, 32:23, 44:1, 45:10, 49:25
**FIRST** [1] - 1:24
**fit** [1] - 38:8
**five** [1] - 44:9
**flaw** [1] - 45:11
**Floor** [2] - 2:5, 2:9
**fly** [1] - 48:5
**focus** [2] - 43:25, 44:6
**focused** [1] - 50:20
**folks** [1] - 48:13
**following** [1] - 50:21
**fondly** [1] - 40:17
**fonts** [1] - 15:6
**footnote** [1] - 30:24
**footnotes** [1] - 4:25
**FOR** [2] - 2:3, 2:11

**foregoing** [1] - 52:10
**forgot** [1] - 50:6
**form** [5] - 19:15, 28:3, 42:5, 48:1, 48:3
**formal** [2] - 37:23, 37:25
**format** [2] - 18:17, 52:12
**formation** [1] - 41:1
**forms** [2] - 25:12, 25:14
**forums** [1] - 30:2
**Francisco** [1] - 2:16
**frankly** [4] - 25:17, 27:16, 28:8, 30:21
**friend** [1] - 42:11
**frog** [4] - 8:15, 8:16, 8:18, 48:25
**front** [6] - 6:12, 6:14, 22:22, 31:18, 36:10, 36:12
**full** [1] - 39:11
**fundamental** [4] - 27:12, 34:23, 35:6, 35:8
**fundamentally** [5] - 37:6, 37:11, 38:18, 38:24, 44:12

**G**

**gears** [1] - 26:14
**general** [6] - 32:3, 37:20, 47:11, 47:15, 47:23, 47:24
**generality** [1] - 5:20
**generally** [1] - 12:15
**GEORGE** [1] - 1:3
**Ginsberg's** [1] - 28:9
**given** [2] - 23:23, 23:24
**government** [1] - 50:14
**governmental** [1] - 50:16
**granted** [1] - 38:3
**great** [2] - 5:8, 20:16
**grounds** [1] - 29:14
**group** [3] - 34:12, 40:20, 42:12
**guess** [6] - 16:12, 22:7, 22:9, 22:10, 45:4, 50:3
**guidance** [1] - 41:16
**guilty** [3] - 12:22
**gum** [4] - 41:23, 42:1, 42:2
**GUSHMAN** [1] - 2:14
**Gushman** [1] - 3:20
**guys** [2] - 49:3,

49:22

**H**

**half** [3] - 30:22, 31:25, 39:13
**half-baked** [3] - 30:22, 31:25, 39:13
**hand** [1] - 5:17
**handle** [1] - 27:2
**handling** [1] - 34:22
**happy** [2] - 16:22, 30:20
**hard** [1] - 26:5
**hardened** [1] - 26:7
**head** [1] - 44:22
**hear** [2] - 5:3, 19:17
**heard** [1] - 33:2
**hearing** [1] - 4:6
**heart** [2] - 17:18, 20:3
**heart's** [1] - 48:21
**heat** [3] - 8:16, 8:17, 8:18
**Heckman** [1] - 3:8
**HECKMAN** [1] - 1:5
**held** [4] - 8:25, 27:8, 34:14, 52:11
**helpful** [2] - 16:22, 32:2
**hereby** [1] - 52:8
**hidden** [2] - 15:7, 15:11
**high** [2] - 41:7, 47:20
**hinted** [1] - 48:5
**hit** [1] - 13:6
**holding** [1] - 44:3
**holistic** [1] - 45:19
**Honor** [64] - 3:12, 3:17, 3:24, 3:25, 4:2, 4:3, 4:7, 4:9, 4:11, 4:18, 5:1, 5:9, 5:19, 6:1, 6:3, 6:25, 7:1, 7:4, 7:13, 7:15, 7:18, 9:22, 11:19, 12:2, 13:18, 13:23, 14:4, 15:14, 15:22, 16:20, 17:14, 18:8, 18:9, 19:16, 19:17, 20:4, 20:6, 20:17, 21:5, 21:19, 22:19, 23:21, 24:2, 24:6, 24:19, 25:11, 26:3, 31:20, 35:5, 36:3, 36:14, 37:14, 42:19, 44:16, 48:6, 48:22, 49:1, 49:13, 49:20, 49:24, 50:10, 50:22
**Honor's** [4] - 13:19, 14:9, 15:15, 21:21

**HONORABLE** [1] - 1:3
  **hoping** [1] - 45:25
  **host** [1] - 34:11
  **HOURIGAN** [4] - 1:23, 52:6, 52:19, 52:20
  **hypothetical** [2] - 21:17, 21:21
  **hypothetically** [1] - 41:22

**I**

  **idea** [2] - 37:12, 48:7
  **identical** [2] - 14:4, 24:10
  **identify** [1] - 45:11
  **illustrates** [3] - 32:5, 39:5, 50:13
  **imagine** [1] - 47:3
  **immediately** [1] - 37:22
  **implying** [1] - 40:4
  **important** [6] - 7:13, 24:3, 25:17, 26:10, 27:6, 32:7
  **impossible** [1] - 39:23
  **imprimatur** [1] - 29:8
  **inaccurate** [1] - 38:15
  **INC** [1] - 1:8
  **inclined** [1] - 43:6
  **includes** [1] - 32:12
  **including** [2] - 7:7, 47:1
  **indeed** [1] - 10:19
  **indicated** [4] - 12:17, 43:4, 43:6, 43:14
  **indication** [3] - 9:18, 10:15, 50:15
  **individual** [19] - 13:8, 19:20, 19:24, 21:9, 21:17, 21:18, 25:2, 27:10, 27:17, 27:19, 29:19, 32:18, 32:19, 33:5, 33:21, 34:24, 35:14, 36:21, 47:19
  **individualized** [4] - 20:5, 28:4, 28:6, 34:22
  **individuals** [3] - 20:25, 25:4, 25:22
  **industry** [1] - 22:15
  **inequitable** [1] - 14:18
  **initial** [4] - 18:21, 20:22, 44:24, 46:10

**injunctions** [1] - 25:15
  **injunctive** [12] - 4:18, 24:7, 24:10, 24:12, 24:20, 25:8, 25:13, 25:19, 33:14, 33:15, 33:20, 34:3
  **injury** [1] - 41:25
  **insofar** [4] - 29:2, 33:19, 35:12, 43:3
  **inspiring** [1] - 7:20
  **instance** [1] - 21:19
  **insufficient** [1] - 45:4
  **intention** [1] - 10:4
  **interest** [1] - 50:13
  **interesting** [2] - 4:5, 48:23
  **interfered** [1] - 47:17
  **Internet** [1] - 12:3
  **invalid** [1] - 17:7
  **invalidate** [3] - 46:1, 46:4, 47:12
  **invalidated** [1] - 45:18
  **invalidating** [2] - 29:15, 39:21
  **involve** [2] - 30:1, 30:11
  **involvement** [1] - 33:2
  **involves** [1] - 25:20
  **issue** [27] - 5:10, 6:18, 9:23, 17:18, 18:25, 19:9, 20:10, 20:11, 25:7, 25:24, 25:25, 27:23, 33:1, 33:5, 34:5, 35:14, 35:23, 36:3, 37:4, 42:9, 43:1, 43:15, 44:2, 45:2, 46:4, 48:10, 48:23
  **issued** [1] - 3:22
  **issues** [10] - 6:15, 19:21, 20:5, 20:15, 21:21, 21:22, 32:18, 32:19, 34:19, 34:22
  **itself** [3] - 14:16, 43:18, 45:24

**J**

  **JAMS** [12] - 5:17, 5:23, 6:12, 6:21, 30:2, 30:4, 31:3, 31:6, 31:8, 31:10, 31:11, 31:19
  **JAMS's** [1] - 31:9
  **joinder** [2] - 46:19, 48:7
  **Jovais** [1] - 3:19
  **JOVAIS** [1] - 2:13

**Judge** [5] - 18:20, 18:24, 36:8, 36:9, 36:15
  **JUDGE** [1] - 1:3
  **judge** [2] - 19:8, 29:20
  **judges** [1] - 19:2
  **judicata** [1] - 19:5
  **judicial** [2] - 29:8, 52:13
  **June** [2] - 49:12, 50:2
  **jurisdiction** [1] - 22:11
  **jurisdictions** [3] - 18:19, 19:13, 21:19
  **Justice** [2] - 28:9, 47:13

**K**

  **Keller** [1] - 3:13
  **KELLER** [1] - 2:4
  **Kevin** [1] - 3:14
  **KEVIN** [1] - 2:7
  **kind** [8] - 8:12, 13:12, 13:14, 26:7, 26:14, 36:9, 41:12, 48:14
  **kinds** [1] - 47:8
  **KIRSTEN** [1] - 2:14
  **Kirsten** [1] - 3:19

**L**

  **lack** [1] - 32:6
  **language** [8] - 11:4, 17:23, 24:8, 24:12, 24:23, 26:4, 29:21, 36:4
  **large** [3] - 15:8, 22:1, 22:4
  **last** [8] - 11:10, 11:11, 11:13, 16:23, 24:3, 29:6, 46:12, 48:12
  **LATHAM** [1] - 2:12
  **latter** [1] - 16:15
  **law** [37] - 7:1, 7:11, 8:3, 8:4, 9:22, 9:24, 16:24, 19:9, 20:15, 21:6, 21:7, 21:14, 21:16, 21:21, 21:22, 23:6, 26:24, 34:13, 34:19, 34:22, 35:2, 35:4, 35:5, 35:7, 35:19, 37:4, 40:1, 40:2, 40:3, 40:11, 41:4, 45:20, 46:25, 47:12, 50:21

**Law** [3] - 2:5, 2:8, 2:15
  **lawsuits** [3] - 22:9, 22:10, 23:15
  **leads** [1] - 19:22
  **least** [2] - 4:11
  **leave** [2] - 49:3, 51:1
  **Lee** [4] - 13:24, 15:15, 16:8
  **legal** [1] - 15:11
  **less** [1] - 26:21
  **letters** [2] - 11:1, 40:7
  **level** [3] - 5:20, 16:9, 16:10
  **lexicon** [1] - 19:1
  **limit** [2] - 40:17, 44:7
  **limitation** [2] - 8:6, 8:9
  **limited** [3] - 36:16, 36:20, 36:22
  **limits** [2] - 38:24, 39:10
  **line** [6] - 9:19, 9:20, 10:5, 34:6, 34:9
  **lines** [2] - 16:1
  **Lisa** [1] - 3:19
  **literally** [4] - 7:23, 10:13, 24:12, 26:4
  **litigants** [1] - 33:1
  **litigated** [1] - 33:1
  **litigation** [1] - 18:18
  **Live** [6] - 3:9, 3:18, 32:3, 42:11, 42:16, 47:7
  **LIVE** [1] - 1:8
  **LLC** [1] - 2:4
  **LLP** [2] - 2:7, 2:12
  **look** [11] - 9:16, 11:24, 14:3, 14:7, 15:9, 28:9, 31:21, 35:1, 41:15, 45:11, 45:18
  **looked** [4] - 7:15, 11:11, 29:6, 40:17
  **looking** [4] - 17:22, 23:16, 30:13, 47:13
  **looks** [1] - 35:13
  **loony** [1] - 41:12
  **loose** [1] - 24:23
  **LOS** [4] - 1:15, 1:24, 3:1, 52:3
  **Los** [1] - 2:9
  **lose** [2] - 25:6, 25:9, 25:10, 26:1
  **lost** [1] - 34:14
  **low** [1] - 27:1

**M**

  **major** [4] - 4:11, 6:2,

13:1, 30:11
  **majorly** [1] - 39:19
  **mandatory** [1] - 36:19
  **mark** [1] - 47:20
  **Markman** [1] - 19:8
  **mass** [13] - 5:24, 13:11, 17:17, 20:13, 23:7, 25:5, 28:2, 30:5, 30:7, 32:14, 36:17, 46:19, 48:7
  **matter** [5] - 3:8, 15:23, 23:19, 49:11, 52:12
  **MAY** [1] - 3:1
  **McGee** [2] - 14:5, 15:15
  **McGrath** [1] - 29:20
  **MDL** [7] - 18:11, 18:13, 18:14, 18:16, 18:24, 19:8, 19:18
  **MDLs** [2] - 18:15, 18:16
  **mean** [9] - 5:13, 8:13, 9:19, 10:18, 17:6, 19:1, 20:11, 24:15, 48:23
  **means** [4] - 32:8, 39:1, 43:9, 46:23
  **meant** [1] - 29:12
  **mechanisms** [1] - 12:3
  **mediation** [2] - 36:19, 36:20
  **microphone** [1] - 5:5
  **midstream** [4] - 4:14, 5:2, 5:10, 5:12, 5:14, 5:16
  **might** [2] - 12:6, 36:23
  **million** [1] - 10:8
  **mind** [2] - 12:16, 25:24
  **mine** [1] - 27:16
  **minor** [1] - 17:16
  **minute** [1] - 25:20
  **Mississippi** [3] - 40:2, 40:7, 40:8
  **modified** [2] - 7:15, 7:22
  **MONDAY** [1] - 3:1
  **Monday** [1] - 1:14
  **monetary** [1] - 25:17
  **money** [1] - 25:21
  **monopolization** [1] - 24:24
  **Montgomery** [1] - 2:15
  **morning** [5] - 3:12, 3:17, 3:21, 4:4, 4:10

**mortgage** [1] - 22:15
**most** [6] - 10:14, 10:20, 18:18, 19:2, 26:24, 41:4
**mostly** [1] - 18:20
**MOTION** [1] - 1:13
**motion** [3] - 3:22, 23:3, 23:20
**motions** [1] - 18:22
**move** [1] - 17:14
**MR** [96] - 3:12, 3:17, 3:24, 3:25, 4:2, 4:22, 5:6, 5:8, 5:19, 6:1, 6:3, 6:25, 7:13, 7:21, 8:8, 9:22, 11:9, 11:18, 12:2, 12:5, 13:18, 15:14, 16:20, 17:14, 19:16, 20:16, 21:5, 21:12, 22:19, 23:2, 23:18, 24:2, 24:6, 24:19, 25:11, 25:16, 26:3, 26:8, 26:22, 27:5, 29:3, 29:9, 29:12, 30:6, 31:4, 31:6, 31:11, 31:15, 31:20, 31:25, 32:16, 33:11, 33:16, 34:6, 34:9, 34:16, 36:3, 36:7, 36:13, 37:2, 39:20, 40:5, 40:9, 40:13, 40:19, 41:14, 41:18, 41:21, 42:19, 42:22, 44:9, 44:12, 44:16, 45:9, 45:25, 46:7, 46:12, 46:18, 47:6, 48:6, 48:12, 48:18, 48:22, 49:1, 49:6, 49:8, 49:13, 49:16, 49:17, 49:18, 49:20, 49:24, 50:10, 50:12, 50:20, 50:22
**multi** [1] - 18:18
**multi-district** [1] - 18:18
**multiple** [1] - 20:7
**must** [2] - 17:23, 37:18

## N

**N.W** [1] - 2:5
**named** [1] - 7:2
**Nation** [5] - 3:9, 3:18, 32:3, 42:16, 47:7
**NATION** [1] - 1:8
**Nation's** [1] - 42:12
**natural** [1] - 32:20
**necessarily** [8] - 6:17, 8:16, 18:2, 21:23, 23:13, 28:21,

33:13, 43:18
**necessary** [2] - 37:25, 38:18
**need** [9] - 22:21, 29:4, 30:15, 31:20, 38:6, 38:10, 39:2, 42:1, 45:11
**negotiate** [1] - 14:19
**neutral** [9] - 30:2, 34:21, 35:20, 36:1, 37:19, 38:17, 38:21, 38:23
**neutrals** [1] - 35:19
**never** [3] - 11:5, 22:21, 48:6
**New** [28] - 5:18, 5:24, 6:14, 6:21, 6:24, 7:4, 8:22, 9:3, 17:17, 18:4, 20:13, 22:5, 22:6, 22:22, 23:5, 23:12, 23:15, 23:18, 31:2, 31:18, 31:22, 33:3, 37:24, 38:9
**new** [10] - 6:18, 9:16, 10:6, 10:16, 11:25, 15:10, 34:25, 37:1, 42:9, 42:13
**next** [2] - 29:25, 34:20
**nice** [1] - 51:3
**Ninth** [6] - 8:25, 13:24, 15:22, 16:15, 29:10, 35:7
**NO** [2] - 1:23, 52:20
**no,let** [1] - 27:5
**nonessential** [1] - 41:10
**nonindividualized** [1] - 37:4
**Northern** [1] - 13:23, 15:22, 36:10
**note** [1] - 42:7
**noted** [1] - 46:13
**nothing** [1] - 40:2
**notice** [19] - 4:14, 7:6, 7:9, 7:16, 8:24, 10:3, 10:22, 11:18, 13:3, 14:10, 15:1, 15:21, 16:25, 22:6, 30:21, 32:6, 33:1, 33:11, 35:21
**notices** [2] - 13:3, 22:4
**notified** [3] - 10:23, 10:25, 11:12
**notifying** [1] - 23:12
**notion** [1] - 26:13
**number** [8] - 4:5, 4:24, 21:9, 21:17, 22:1, 23:15, 27:16,

34:3
**numbers** [1] - 22:4
**numerous** [1] - 9:3

## O

**O'MARA** [54] - 2:13, 3:17, 3:25, 4:2, 4:22, 5:6, 5:8, 5:19, 6:1, 6:3, 6:25, 7:13, 7:21, 8:8, 9:22, 11:9, 11:18, 12:2, 12:5, 13:18, 15:14, 16:20, 17:14, 19:16, 20:16, 21:5, 21:12, 22:19, 23:2, 23:18, 24:2, 24:6, 24:19, 25:11, 25:16, 26:3, 31:6, 31:11, 31:15, 31:20, 34:16, 36:3, 36:7, 36:13, 42:19, 48:22, 49:1, 49:6, 49:13, 49:16, 49:18, 49:24, 50:10, 50:22
**O'Mara** [2] - 3:17, 37:2
**Oberstein** [6] - 6:5, 6:11, 8:24, 12:12, 12:13, 26:13
**obligated** [1] - 9:5
**obviously** [7] - 6:6, 9:6, 12:12, 12:17, 17:17, 17:20, 33:22
**occasions** [1] - 9:3
**OF** [6] - 1:2, 1:13, 2:1, 52:1, 52:3, 52:4
**offer** [1] - 46:15
**Official** [1] - 52:6
**OFFICIAL** [2] - 1:23, 52:1
**often** [1] - 32:3
**old** [6] - 9:17, 10:6, 10:7, 11:21, 11:24, 11:24
**on-surprise** [1] - 42:2
**once** [4] - 16:4, 23:21, 45:12, 45:24
**one** [35] - 5:17, 6:15, 9:17, 10:8, 10:15, 11:7, 13:13, 13:9, 14:3, 14:24, 15:6, 16:3, 17:2, 18:11, 20:18, 22:2, 23:20, 24:2, 25:8, 25:12, 26:12, 30:14, 31:2, 31:13, 32:3, 35:13, 39:12, 39:16, 39:18, 39:19, 42:3, 43:24, 49:14, 50:18
**one-sided** [2] -

39:18, 39:19
**ones** [2] - 4:21, 11:25
**online** [1] - 12:7
**oOo** [1] - 3:3
**open** [2] - 44:17, 46:14
**opening** [1] - 48:20
**opinion** [2] - 18:6, 47:20
**opportunities** [1] - 20:7
**opportunity** [9] - 4:8, 4:23, 14:19, 23:24, 23:25, 33:2, 33:11, 33:14, 43:24
**opt** [12] - 33:12, 33:14, 33:24, 35:15, 35:16, 35:22, 36:4, 36:12, 36:16, 36:19, 36:21, 36:24
**optimist** [1] - 45:25
**oral** [1] - 4:6
**order** [4] - 3:7, 5:1, 33:22, 38:10
**orders** [1] - 23:21
**organization** [1] - 30:17
**originally** [4] - 12:23, 12:25, 19:14, 28:10
**otherwise** [5] - 4:25, 9:24, 12:1, 44:1, 44:3
**overlay** [1] - 46:24

## P

**pack** [1] - 41:23
**PAGA** [1] - 46:20
**page** [2] - 39:10, 52:12
**pages** [9] - 38:23, 44:9, 44:10, 44:11, 46:8, 46:9, 46:10, 46:11, 48:20
**paid** [2] - 31:17, 31:23
**paraphrase** [1] - 38:15
**part** [3] - 14:17, 15:12, 43:10
**particular** [16] - 12:10, 12:17, 13:16, 14:14, 16:14, 18:17, 18:24, 18:25, 20:24, 24:15, 24:24, 24:25, 36:1, 36:11, 48:10, 50:17
**particularly** [2] - 4:24, 27:16
**parties** [9] - 17:24,

18:16, 19:10, 19:15, 31:18, 33:10, 34:18, 37:24, 38:7
**parts** [1] - 37:16
**party** [4] - 10:2, 12:22, 12:23
**patent** [1] - 19:7
**patience** [1] - 51:4
**pay** [1] - 31:19
**pays** [1] - 31:22
**pending** [1] - 50:25
**people** [10] - 6:18, 6:23, 9:12, 10:8, 28:15, 34:3, 35:21, 40:8, 42:9, 42:13
**per** [1] - 14:23, 32:23
**percent** [2] - 19:17, 27:20
**perhaps** [1] - 24:16
**period** [2] - 15:19
**perish** [2] - 8:17, 8:19
**permeated** [1] - 45:15
**person** [2] - 9:14, 10:5
**personal** [1] - 41:25
**persons** [2] - 6:19, 9:2
**pick** [1] - 20:18
**placing** [2] - 8:5, 8:8
**plain** [3] - 37:10, 37:15, 39:11
**plainly** [1] - 33:6
**PLAINTIFF** [1] - 2:3
**plaintiff** [1] - 6:10
**plaintiff's** [4] - 3:11, 20:1, 22:17, 34:20
**Plaintiffs** [1] - 1:6
**plaintiffs** [11] - 3:13, 6:7, 6:11, 6:13, 7:3, 12:25, 23:24, 25:3, 25:10, 32:10, 34:12
**plate** [1] - 46:6
**play** [3] - 6:24, 9:4, 9:11
**point** [33] - 7:25, 8:13, 8:18, 11:23, 13:20, 13:22, 16:23, 17:15, 17:16, 19:25, 20:4, 23:3, 23:4, 24:3, 25:7, 25:16, 29:17, 31:2, 31:16, 31:25, 33:18, 35:6, 36:13, 37:19, 40:19, 43:7, 44:18, 46:13, 46:17, 48:5, 48:25
**pointed** [2] - 5:23, 18:13
**points** [6] - 6:25, 7:5,

13:21, 30:6, 32:1, 40:23

**policy** [3] - 27:2, 27:8, 27:10

**portion** [2] - 15:13, 16:16

**position** [3] - 9:21, 29:2, 42:12

**positions** [2] - 14:18, 28:15

**possible** [1] - 19:3

**posting** [1] - 42:17

**Postman** [2] - 3:13

**POSTMAN** [45] - 2:4, 2:4, 3:12, 3:24, 26:8, 26:22, 27:5, 29:3, 29:9, 29:12, 30:6, 31:4, 31:25, 32:16, 33:11, 33:16, 34:6, 34:9, 37:2, 39:20, 40:5, 40:9, 40:13, 40:19, 41:14, 41:18, 41:21, 42:22, 44:9, 44:12, 44:16, 45:9, 45:25, 46:7, 46:12, 46:18, 47:6, 48:6, 48:12, 48:18, 49:8, 49:17, 49:20, 50:12, 50:20

**potentially** [4] - 12:18, 23:7, 33:9, 34:2

**practices** [1] - 25:3

**precedent** [6] - 4:16, 13:20, 20:8, 26:5, 32:11, 33:7

**precedents** [1] - 32:18

**preceding** [1] - 37:22

**preclude** [3] - 13:1, 13:15, 40:21

**preemption** [8] - 30:19, 46:24, 47:8, 47:9, 47:15, 47:21, 48:1, 48:15

**present** [1] - 29:1

**presented** [1] - 18:20

**presents** [1] - 29:25

**presumption** [1] - 46:13

**pretrial** [2] - 18:20, 19:4

**previously** [5] - 6:19, 7:4, 7:14, 9:13, 36:2

**primary** [1] - 25:12

**principle** [2] - 4:21, 34:13

**print** [3] - 10:9, 10:10, 10:13

**problem** [15] - 5:13,

6:17, 13:1, 13:11, 16:17, 24:14, 26:11, 32:5, 33:25, 37:8, 37:13, 39:13, 39:14, 48:24

**problems** [1] - 11:7

**procedural** [12] - 14:17, 16:4, 17:11, 19:19, 26:17, 32:5, 40:23, 41:8, 41:11, 42:5, 43:4, 43:11

**procedurally** [1] - 43:7

**procedure** [3] - 5:24, 31:9, 46:21

**procedures** [2] - 17:24, 43:19

**proceed** [4] - 22:21, 22:22, 36:21, 46:2

**proceedings** [4] - 38:1, 38:8, 51:5, 52:11

**process** [39] - 9:8, 18:11, 18:13, 18:14, 19:18, 19:22, 20:2, 20:3, 20:12, 20:17, 21:8, 21:10, 22:20, 23:5, 30:1, 30:12, 32:8, 32:9, 33:6, 33:24, 34:5, 34:21, 35:7, 35:17, 35:23, 36:18, 36:19, 36:20, 37:6, 37:23, 37:24, 37:25, 38:2, 38:13, 38:19, 38:25, 39:7, 44:13, 44:15

**product** [1] - 30:18

**proffer** [1] - 46:16

**program** [1] - 20:13

**progressing** [1] - 8:14

**prong** [1] - 42:3

**proof** [1] - 46:16

**proofreader** [1] - 30:25

**propose** [1] - 44:6

**protect** [3] - 27:14, 28:6, 47:19

**protected** [2] - 27:13, 46:22

**protecting** [2] - 27:10, 28:5

**protections** [1] - 13:13

**protocol** [1] - 30:12

**prove** [1] - 39:23

**provide** [3] - 16:22, 16:25, 23:8

**provided** [3] - 7:6, 7:9, 18:9

**provides** [1] - 36:5

**providing** [1] - 39:5

**provision** [12] - 8:5, 8:8, 8:9, 15:18, 15:21, 17:6, 28:17, 31:7, 33:24, 37:20, 43:7, 44:23

**provisions** [3] - 30:5, 39:8, 39:21

**public** [2] - 25:12, 50:13

**published** [1] - 41:15

**pulled** [1] - 24:9

**purchase** [1] - 7:18

**purchasing** [1] - 9:9

**pure** [1] - 7:22

**purpose** [5] - 47:15, 47:17, 47:18, 48:1

**purposes** [7] - 14:15, 14:24, 15:11, 16:2, 18:21, 22:24, 23:7

**pursuant** [1] - 52:9

**pursuit** [1] - 50:16

**put** [15] - 6:16, 15:20, 18:19, 22:6, 22:7, 26:16, 30:24, 33:8, 41:19, 45:21, 46:3, 48:19, 49:11, 49:22, 50:1

**putting** [2] - 8:15, 15:5

## Q

**questions** [6] - 4:5, 4:7, 4:8, 4:11, 4:20, 4:23

**quicker** [1] - 31:13

**quickly** [1] - 36:13

**QUINN** [1] - 2:7

**Quinn** [1] - 3:15

**quite** [4] - 11:9, 20:14, 28:25, 36:14

**quote/unquote** [1] - 18:6

**quoting** [1] - 38:16

## R

**raise** [3] - 20:5, 34:18, 46:12

**raised** [5] - 16:9, 16:10, 16:21, 32:1, 48:13

**raises** [1] - 4:5

**raising** [2] - 4:11, 6:4

**rather** [2] - 12:24, 31:8

**reach** [2] - 13:17, 47:25

**read** [6] - 7:24, 8:1, 9:25, 11:1, 11:2, 15:24

**reader** [1] - 41:24

**reading** [5] - 20:5, 20:6, 34:10, 34:16, 42:22

**real** [2] - 27:21, 39:14

**really** [11] - 5:10, 16:8, 16:18, 20:4, 24:23, 25:21, 29:7, 30:22, 37:11, 42:8, 43:20

**Realtime** [1] - 52:6

**reason** [12] - 14:3, 17:11, 26:17, 32:22, 32:23, 33:18, 35:5, 36:8, 36:9, 41:2, 41:6, 44:2

**reasonable** [2] - 10:18, 18:10

**reasonably** [3] - 21:8, 21:15, 35:4

**reasons** [1] - 43:8

**receive** [1] - 14:9

**received** [1] - 4:4

**recent** [1] - 10:15

**recently** [1] - 17:21

**recognize** [2] - 44:4, 47:14

**recognized** [1] - 36:11

**recommended** [1] - 20:2

**recreational** [1] - 41:10

**refused** [1] - 30:16

**regard** [2] - 39:7, 39:9

**regards** [2] - 18:25, 24:15

**regulations** [1] - 52:13

**relate** [1] - 6:5

**relationship** [1] - 41:5

**relatively** [2] - 17:16, 27:1

**relief** [15] - 4:18, 24:7, 24:10, 24:12, 24:20, 25:1, 25:8, 25:12, 25:13, 25:15, 25:19, 33:14, 33:15, 33:21, 34:4

**remain** [1] - 3:6

**remains** [1] - 4:23

**remember** [2] - 16:13, 24:22

**repeatedly** [1] - 39:6

**Reply** [1] - 38:12

**reply** [1] - 46:11

**reported** [1] - 52:11

**Reporter** [2] - 52:7, 52:20

**REPORTER** [4] - 1:23, 5:3, 7:19, 52:1

**REPORTER'S** [1] - 1:13

**represented** [2] - 20:24, 22:2

**representing** [1] - 21:18

**request** [8] - 4:7, 4:22, 14:2, 24:6, 27:7, 37:18, 38:1, 46:12

**require** [3] - 11:7, 15:4, 44:11

**required** [4] - 15:24, 17:2, 22:20, 33:14

**requirements** [2] - 8:14, 33:24

**requires** [1] - 44:13

**reraise** [1] - 37:3

**reread** [1] - 24:7

**res** [1] - 19:5

**reserve** [1] - 42:16

**resolving** [1] - 34:22

**respect** [2] - 17:23, 38:9

**respectfully** [4] - 14:2, 24:6, 38:14, 47:6

**respond** [2] - 13:21, 37:3

**responding** [1] - 50:23

**response** [3] - 30:15, 45:21, 49:10

**responses** [1] - 24:1

**responsive** [1] - 48:20

**restitution** [1] - 25:15

**result** [3] - 17:3, 27:22, 35:25

**results** [1] - 36:20

**reviewing** [1] - 26:7

**revision** [2] - 15:2, 15:3

**rid** [3] - 19:3, 27:25, 43:10

**rights** [1] - 35:11

**risk** [1] - 39:14

**River** [4] - 29:13, 46:18, 46:20, 48:2

**Robin** [1] - 3:20

**ROBIN** [1] - 2:14

**ROOM** [1] - 1:24

**RPR** [1] - 52:20

**rule** [8] - 32:3, 32:14, 32:22, 32:23, 34:20, 35:8, 47:13, 47:24
**Rule** [12] - 27:3, 32:11, 32:14, 37:3, 37:17, 38:7, 38:15, 38:17, 38:20, 47:1, 47:17, 47:24
**rules** [23] - 17:17, 17:24, 18:1, 18:4, 20:6, 30:15, 31:15, 32:2, 32:4, 32:25, 33:3, 34:10, 34:16, 34:17, 36:15, 36:17, 37:8, 37:10, 37:16, 37:21, 38:11, 39:5, 39:12
**ruling** [6] - 13:24, 14:4, 27:25, 35:22, 36:15, 43:2
**rulings** [2] - 18:22, 19:4

## S

**San** [1] - 2:16
**Sanchez** [6] - 4:18, 24:7, 24:9, 24:11, 24:19
**satisfied** [1] - 34:8
**saving** [1] - 47:11
**Scalia** [1] - 47:13
**scenario** [1] - 19:6
**schedule** [2] - 30:7, 49:2
**scheduling** [1] - 18:21
**scope** [3] - 6:14, 8:4, 12:10
**scrupulous** [1] - 30:13
**se** [3] - 14:23, 32:23, 32:24
**SEARS** [1] - 2:8
**Sears** [1] - 3:14
**seated** [1] - 3:6
**second** [5] - 4:15, 13:20, 13:21, 17:15, 50:1
**Section** [2] - 47:9, 52:9
**see** [3] - 8:19, 11:25, 14:6
**seek** [1] - 34:12
**seeking** [5] - 33:13, 33:15, 33:20, 34:1, 34:3
**send** [1] - 10:22
**sense** [1] - 33:9
**sentence** [1] - 37:17

**sentences** [1] - 15:6
**separate** [3] - 29:12, 29:14, 37:18
**separately** [3] - 30:20, 38:12, 44:19
**service** [1] - 9:16
**serving** [1] - 48:1
**session** [1] - 3:7
**set** [4] - 20:13, 20:20, 31:15, 36:17
**settle** [1] - 49:22
**settled** [1] - 50:3
**settlement** [2] - 36:19, 36:20
**severability** [7] - 44:18, 44:20, 44:24, 45:2, 45:14, 45:22, 46:5
**several** [1] - 13:7
**severely** [1] - 40:16
**shall** [4] - 32:18, 33:4, 38:4, 38:5
**shape** [1] - 19:15
**sheets** [1] - 23:16
**shift** [1] - 26:14
**shifting** [1] - 29:18
**shock** [3] - 18:6, 39:19, 40:2
**shocking** [2] - 39:17, 39:25
**shocks** [2] - 26:5, 39:22
**short** [1] - 16:18
**show** [2] - 39:23, 45:13
**showed** [2] - 15:18, 47:16
**side** [6] - 4:12, 10:3, 22:17, 30:14, 38:22, 46:8
**sided** [2] - 39:18, 39:19
**sides** [7] - 3:23, 30:12, 43:22, 44:5, 44:6, 44:24, 49:21
**sign** [2] - 14:8, 18:2
**signed** [1] - 15:24
**significant** [4] - 15:16, 25:18, 30:21, 41:6
**similar** [6] - 8:24, 19:20, 28:3, 34:13, 37:13
**simple** [3] - 27:11, 27:13, 47:19
**simply** [1] - 11:6
**simultaneously** [1] - 46:9
**single** [13] - 9:5, 9:14, 10:11, 10:14,

10:16, 11:3, 11:7, 20:7, 20:24, 22:2, 27:1, 27:2, 44:9
**single-spaced** [1] - 44:9
**sit** [1] - 5:4
**site** [5] - 6:24, 9:15, 10:5, 12:4, 12:5
**situation** [24] - 6:22, 9:12, 12:11, 12:12, 12:16, 12:19, 12:25, 13:16, 15:8, 15:17, 20:21, 20:23, 21:2, 21:25, 22:3, 25:1, 25:20, 26:15, 28:20, 34:4, 34:5, 35:14, 35:24, 36:11
**situations** [5] - 10:20, 12:24, 19:2, 23:12, 23:13
**six** [1] - 46:11
**skip** [1] - 37:22
**skips** [1] - 32:4
**SKOT** [1] - 1:5
**slip** [1] - 42:3
**slipped** [1] - 41:6
**slow** [2] - 5:3, 7:19
**small** [1] - 15:6
**snarky** [1] - 30:25
**sold** [1] - 30:18
**solely** [1] - 37:23
**solve** [1] - 30:18
**sometimes** [2] - 19:7, 20:11
**sophisticated** [1] - 48:14
**sorry** [5] - 7:21, 8:8, 16:12, 29:12, 49:16
**sort** [22] - 4:14, 4:19, 5:1, 5:10, 9:19, 12:8, 16:7, 17:19, 18:22, 19:4, 19:5, 19:12, 19:22, 20:15, 25:8, 27:18, 29:7, 37:18, 46:19, 46:21, 50:16
**sorts** [1] - 28:21
**sought** [1] - 25:12
**South** [1] - 2:9
**space** [1] - 44:17
**spaced** [2] - 44:9, 44:11
**speaking** [1] - 8:7
**specific** [9] - 11:18, 14:10, 15:21, 16:25, 19:7, 27:9, 31:7, 32:4, 32:14
**specifically** [6] - 8:5, 10:25, 18:4, 24:8, 34:17, 36:10
**spinning** [1] - 44:22

**squarely** [2] - 14:1, 35:11
**stage** [1] - 7:18
**stakeholders** [1] - 30:11
**stand** [1] - 5:5
**standard** [6] - 18:7, 37:24, 38:2, 38:3, 38:8, 40:3
**stands** [1] - 34:24
**start** [1] - 5:2
**started** [1] - 27:17
**starting** [2] - 3:10, 6:24
**STATE** [1] - 52:4
**state** [1] - 47:12
**STATES** [1] - 1:1
**states** [2] - 26:25, 41:4
**States** [4] - 3:7, 52:7, 52:9, 52:14
**status** [2] - 50:6, 50:7
**stay** [1] - 50:24
**stenographically** [1] - 52:11
**stick** [1] - 30:9
**still** [5] - 4:7, 6:18, 8:7, 15:23, 36:24
**stitch** [1] - 30:22
**stop** [4] - 7:8, 27:20, 39:11, 42:24
**strange** [2] - 10:19, 13:14
**STREET** [1] - 1:24
**Street** [2] - 2:9, 2:15
**strictly** [1] - 36:22
**stuff** [5] - 9:10, 10:21, 13:17, 19:11, 28:21
**subjected** [1] - 37:12
**submit** [5] - 38:22, 39:3, 41:24, 45:14
**submitted** [1] - 37:18
**substantive** [10] - 16:5, 17:12, 18:3, 26:18, 26:20, 43:5, 43:16, 43:21, 43:25
**sufficient** [6] - 7:10, 8:25, 36:23, 45:7, 50:14
**suggest** [1] - 15:15
**suggested** [1] - 21:21
**Suite** [2] - 2:5, 2:15
**SULLIVAN** [1] - 2:7
**suppose** [2] - 26:6, 34:5
**supposed** [6] - 9:19, 12:1, 12:7, 17:8,

21:14, 35:19
**supposedly** [1] - 31:13
**Supreme** [12] - 17:21, 17:23, 26:4, 27:23, 29:1, 29:11, 29:14, 33:7, 40:18, 40:21, 47:3
**surprise** [14] - 14:20, 14:21, 14:24, 15:5, 15:12, 16:3, 17:3, 17:5, 42:2, 42:5, 43:9, 43:10, 43:13
**surprises** [1] - 42:8
**sweep** [1] - 43:18
**Swift** [1] - 50:19

## T

**tagged** [1] - 33:2
**talks** [1] - 47:8
**Taylor** [1] - 50:19
**temporal** [3] - 8:4, 8:6, 8:9
**ten** [6] - 38:22, 39:3, 44:10, 44:11, 46:8, 46:9
**tentative** [5] - 3:23, 4:4, 4:10, 32:1, 46:13
**tentatives** [1] - 45:10
**term** [3] - 14:7, 15:8, 42:3
**terms** [41] - 6:14, 7:4, 7:7, 7:15, 7:21, 7:24, 8:2, 8:3, 8:24, 9:15, 9:16, 10:6, 10:8, 10:9, 10:10, 10:14, 10:22, 11:10, 11:21, 11:24, 13:25, 14:8, 16:24, 24:8, 28:15, 31:21, 31:22, 41:3, 41:7, 42:9, 42:15, 42:16, 42:22, 42:23, 43:19, 45:19, 47:10
**TERRI** [4] - 1:23, 52:6, 52:19, 52:20
**TERUYA** [1] - 2:7
**Teruya** [1] - 3:14
**test** [1] - 36:18
**text** [4] - 37:10, 37:15, 39:1, 47:17
**THE** [94] - 2:3, 2:11, 3:6, 3:8, 3:16, 3:21, 4:1, 4:20, 5:3, 5:4, 5:7, 5:12, 5:22, 6:2, 6:16, 7:8, 7:19, 7:20, 8:7, 8:12, 10:1, 11:16, 11:20, 12:4, 12:6, 14:12, 15:25, 17:1, 18:13, 20:10, 20:19,

21:10, 21:23, 22:24, 23:11, 23:23, 24:5, 24:14, 24:21, 25:14, 25:20, 26:6, 26:11, 27:4, 27:20, 29:6, 29:10, 30:4, 30:24, 31:5, 31:8, 31:12, 31:17, 31:24, 32:15, 33:8, 33:13, 33:18, 34:7, 35:12, 36:6, 36:8, 36:23, 39:15, 39:25, 40:6, 40:10, 40:15, 41:9, 41:17, 41:19, 42:24, 44:10, 44:14, 44:19, 45:21, 46:3, 46:8, 46:15, 47:2, 48:4, 48:9, 48:17, 48:19, 48:23, 49:3, 49:7, 49:9, 49:15, 49:21, 49:25, 50:11, 50:15, 50:24

**theme** [2] - 26:8, 40:9

**themselves** [1] - 18:23

**thereafter** [2] - 10:24, 45:5

**therefore** [5] - 10:23, 10:25, 15:12, 19:9, 28:17

**third** [1] - 4:17

**thoughts** [1] - 16:19

**thousand** [1] - 19:17

**thousands** [1] - 27:17

**three** [10] - 4:11, 7:5, 11:14, 13:21, 18:9, 20:18, 48:12, 49:6, 49:7, 49:9

**threshold** [1] - 30:8

**ticket** [1] - 42:13

**Ticketmaster** [1] - 3:18

**tied** [1] - 7:16

**ties** [1] - 29:17

**Tim** [1] - 3:17

**TIMOTHY** [1] - 2:13

**Title** [1] - 52:9

**TO** [1] - 1:13

**today's** [2] - 4:6, 49:9

**together** [6] - 18:19, 19:21, 22:6, 22:7, 28:13, 30:22

**total** [1] - 38:22

**touch** [1] - 35:6

**touchstones** [1] - 18:9

**tougher** [1] - 26:19

**traction** [1] - 47:4

**tranches** [1] - 22:15

**TRANSCRIPT** [1] - 1:13

**transcript** [2] - 52:10, 52:12

**trials** [2] - 18:23, 19:12

**tries** [1] - 9:14

**trips** [1] - 30:23

**troubles** [1] - 24:24

**true** [5] - 5:19, 23:10, 35:10, 42:1, 52:10

**trumps** [1] - 27:8

**trust** [7] - 24:17, 24:23, 25:5, 25:18, 32:21, 34:11, 50:17

**try** [3] - 19:3, 19:21, 29:25

**trying** [2] - 12:7, 13:12

**turning** [1] - 8:16

**two** [16] - 6:25, 11:13, 14:17, 15:6, 22:2, 28:11, 28:12, 32:17, 33:19, 35:11, 37:22, 39:24, 43:4, 47:8, 48:12, 49:10

**type** [4] - 12:16, 16:9, 25:21, 48:3

**types** [3] - 15:6, 25:2, 33:22

**typo** [1] - 31:5

**U**

**U.S** [1] - 1:3

**UCL** [4] - 24:19, 24:22, 25:11, 25:14

**ultimately** [3] - 6:8, 19:23, 26:1

**unaware** [1] - 23:1

**unconscionability** [29] - 14:15, 14:16, 14:17, 14:25, 16:4, 16:5, 17:11, 17:13, 18:3, 26:18, 26:19, 26:20, 32:6, 37:7, 40:24, 41:8, 41:11, 42:6, 43:3, 43:5, 43:11, 43:16, 43:17, 43:21, 43:25, 45:19, 45:23, 47:14

**unconscionable** [3] - 43:2, 43:8, 45:15

**under** [14] - 4:18, 13:20, 18:3, 25:11, 25:17, 32:25, 33:6, 34:20, 35:10, 36:14, 38:8, 45:20, 47:8, 47:12

**understood** [1] - 26:22

**unenforceable** [3] - 45:12, 45:13, 45:15

**unfair** [4] - 21:8, 21:10, 24:22, 42:8

**unfortunately** [1] - 27:4

**United** [4] - 3:7, 52:7, 52:9, 52:14

**UNITED** [1] - 1:1

**unless** [8] - 10:8, 18:24, 19:6, 19:14, 21:10, 29:7, 32:18, 33:4

**up** [20] - 7:11, 8:16, 15:18, 16:14, 20:13, 20:20, 23:14, 27:18, 30:1, 31:23, 34:24, 37:5, 37:10, 41:25, 44:3, 45:4, 46:5, 48:7, 49:3, 51:1

**update** [3] - 16:24, 42:16, 42:21

**updated** [3] - 11:10, 11:13, 14:8

**updating** [1] - 13:25

**upgrade** [1] - 38:6

**upgraded** [1] - 38:1

**upheld** [1] - 7:9

**uploads** [1] - 38:22

**URQUHART** [1] - 2:7

**V**

**valid** [1] - 41:1

**validating** [1] - 29:5

**various** [8] - 12:3, 15:6, 18:19, 19:18, 21:3, 22:9, 23:16, 43:8

**Vermont** [1] - 2:5

**version** [2] - 15:10

**versus** [1] - 3:9

**view** [3] - 6:23, 24:16, 41:7

**viewed** [1] - 28:1

**Viking** [4] - 29:13, 46:18, 46:20, 48:2

**violates** [2] - 35:7, 35:16

**violative** [1] - 33:6

**virtually** [1] - 14:4

**vs** [1] - 1:7

**W**

**waivers** [1] - 47:24

**waiving** [1] - 13:5

**walk** [1] - 32:2

**wants** [1] - 10:2

**Warren** [1] - 3:12

**WARREN** [1] - 2:4

**Washington** [1] - 2:6

**water** [3] - 8:15, 47:20, 48:25

**WATKINS** [1] - 2:12

**ways** [1] - 41:20

**website** [4] - 9:5, 9:20, 11:3, 42:17

**week** [1] - 49:14

**weeks** [4] - 49:6, 49:7, 49:9, 49:10

**welcome** [1] - 26:22

**WEST** [1] - 1:24

**Westlaw** [1] - 14:5

**whereas** [3] - 5:24, 12:11, 24:23

**whole** [3] - 25:7, 45:15, 47:21

**William** [1] - 3:14

**WILLIAM** [1] - 2:8

**word** [1] - 32:12

**words** [13] - 12:7, 15:4, 16:4, 16:13, 18:21, 21:24, 22:9, 25:1, 25:21, 36:24, 40:1, 40:11, 45:2

**works** [1] - 32:8

**world** [2] - 31:1, 39:11

**worse** [1] - 37:8

**worst** [1] - 30:25

**wrap** [3] - 7:22, 41:25

**wraps** [1] - 7:16

**write** [1] - 13:19

**writing** [1] - 28:16

**WU** [1] - 1:3

**Y**

**years** [2] - 11:14, 48:12

**yourselves** [1] - 51:2

**Z**

**zoom** [1] - 26:24

**UNITED  STATES  DISTRICT  COURT**