QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kevin Y. Teruya (Bar No. 235916)
   kevinteruya@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
   adamwolfson@quinnemanuel.com
  William R. Sears (Bar No. 330888)
   willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN LLC
  Warren Postman (Bar No. 330869)
   wdp@kellerpostman.com
  Albert Pak (admitted pro hac vice)
   albert.pak@kellerpostman.com
1100 Vermont Avenue, N.W., 12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123

*Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated*

UNITED STATES DISTRICT COURT

FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>    Plaintiffs,<br><br>    vs.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>    Defendants. | Case No: 2:22-cv-00047-GW-GJS<br><br>**PLAINTIFFS' SUPPLEMENTAL REPLY BRIEF IN OPPOSITION TO DEFENDANTS' MOTION TO COMPEL ARBITRATION**<br><br>The Honorable George H. Wu<br><br>Hearing Date: July 13, 2023<br><br>Hearing Time: 8:30 a.m. |
|---|---|

# TABLE OF CONTENTS

**Page**

INTRODUCTION ...................................................................................................... 1

ARGUMENT ............................................................................................................. 1

I.    Defendants' Terms Are Plainly Unconscionable. .............................................. 1

    A.    Defendants' Newfound Readings of the Rules Conflict with the Text ............................................................................................................. 2

    B.    Defendants' New Position Contradicts Their Prior Representations. .... 4

    C.    Defendants' Interpretation of the Rules Would Lead to Absurd Results ............................................................................................................. 6

II.    Unconscionability Permeates the Contract. ...................................................... 7

CONCLUSION .......................................................................................................... 7

# INTRODUCTION

Defendants have no response to the high level of procedural unconscionability in their arbitration terms. And their only answer on substantive unconscionability is to flee from the actual meaning of the New Era rules. Defendants now argue, for the first time, that Mass Arbitration rules apply *only* if many claimants are represented by the same law firm; that precedents are merely discretionary; and that each claimant gets an opportunity to argue that a precedent was wrongly decided. But these positions cannot be squared with the plain text, structure, or logic of the Rules and contradict Defendants' previous representations to the Court. The procedural unconscionability and substantively unconscionability of Defendants' new terms and the New Era rules are both extreme. The arbitration requirement of the Terms should therefore be held entirely unenforceable.

# ARGUMENT

**I.    Defendants' Terms Are Plainly Unconscionable.**

Plaintiffs' supplemental brief showed that five forms of procedural unconscionability and five forms of substantive unconscionability infect Defendants' Terms. Dkt. 169 at 5. Defendants' supplemental brief barely addresses procedural unconscionability. As for substantive unconscionability, Defendants bend over backwards trying to reform a bellwether process that, on its face, forces later-filed consumers to be assigned to a single arbitrator who will then apply prior precedent to their case even if they have had no notice or opportunity to be heard in connection with that precedent. Defendants' own cited authority recognizes such procedures violate due process. *See Viking River Cruises, Inc. v. Moriana*, 142 S. Ct. 1906, 1920 (2022). Defendants appear to now realize that such a bellwether process would be flagrantly unconscionable, because they engage in contortions to avoid it.

For the first time—after multiple briefs and a hearing—Defendants now argue that "New Era's mass arbitration procedures contain an important threshold requirement: they are only triggered when there are 'similar cases filed by the same law

firm or group of law firms.'" Dkt. 166 at 2 (citation omitted). This all-important "gating requirement … limits, upfront, which claims can be grouped together"; it "is critical"; "it is the lens through which those procedures must be viewed"; and it purportedly solves any problem with the "selection of the neutral, the selection of the bellwethers … and, importantly, the limited reach of precedent." *Id.* at 3. Defendants cite this limitation as *the* reason mass arbitrations do not need "lead counsel," *id.* at 7, why counsel for all claimants will "reach consensus on" arbitrator and bellwether selection, *id.*, and why applying confidential precedents to newly filed claims without notice is acceptable, *id.* at 6. Defendants also claim that, even as to common issues, precedent is merely "discretionary," *id.* at 3 ("the neutral 'may' apply it"), and that an "individualized issue" simply means "any reason to depart from precedent in that case," *id.* at 4.

Defendants' new claims cannot be squared with the text, structure, or logic of the Rules, and conflict with Defendants' own positions. The Rules impose a binding bellwether process on consumers without adequate notice and opportunity to be heard and are substantively unconscionable in the extreme.

### A.     Defendants' Newfound Readings of the Rules Conflict with the Text

Defendants *now* claim cases must involve the same law firm to be treated as mass arbitrations, but the Rules do not say that. The Rules expressly define the relevant terms:

> Mass Arbitrations are defined as arbitration claims filed on the New Era Platform (a) that number more than five (5), and (b) that arise out of Common Issues of Law and Fact, as defined in Section 2(x) above.

§6(b)(ii)(1). And, turning to Section 2(x):

> Common Issues of Law and Fact' means when cases or proceedings present the same, or similar, evidence; present the same, or similar, witnesses; and/or rely on determination of the same, or similar, facts and issues of law. Determination of whether case(s) involve Common Issues of Law and Fact rests solely in the hands of the neutral.

§2(x)(i-ii). Neither of these defined terms even mentions law firms. Under the plain text, six claims filed by six different law firms alleging the same antitrust theories against Live Nation and Ticketmaster meet these criteria. (They obviously must, or they could

not be grouped together if filed by the same law firm).

Defendants attempt to evade this straightforward reading by relying on a subsection providing that:

> Solely for administrative purposes, New Era ADR may group similar cases filed by the same law firm or group of law firms and have them proceed through the Mass Arbitration process unless and until the presiding neutral makes a determination otherwise.

§2(x)(ii)(1). This provision allows New Era to *presumptively* slot cases by the same law firm into the Mass Arbitration rules, but clearly does not set any limitation on which cases qualify. Six cases by six different law firms would not "for administrative purposes" be grouped *by New Era.* But Defendants could and would ask any neutral to group them, and they would be certain to prevail: New Era's initial assignment is "solely for administrative purposes" and the claims would clearly meet the definition of Mass Arbitration. For that reason, Defendants' arguments about how the New Era rules contain "safeguards" similar to the lead counsel process in MDLs, Dkt. 166 at 7, are misplaced—the actual New Era rules, as written, contain no such safeguards, as the Court's Tentative Ruling rightly noted. *See* Tentative Ruling at 13.[1]

The text of the New Era rules also forecloses Defendants' arguments about precedent. Defendants now claim precedent is "discretionary," and any party can argue that precedent should not be applied *even as to common issues*—but the Rules say the opposite. Under Rule 6(b)(iii)(4), an arbitrator issues decisions in bellwether cases, *then* the parties have a settlement conference, and *then* non-settling claimants "provide the

---

[1] Defendants suggest that cases that "involve many different state laws … likely do not involve common issues of law and fact—and so would not proceed as a mass arbitration," or, even if they did, "could result in distinct, state-specific mass arbitrations." Dkt. 166 at 9. This argument is irrelevant because the claims against Defendants are federal antitrust claims. It is also thrice-wrong. First, the definition of "Common Issues of Law and Fact" is *disjunctive*, and is triggered whenever cases "present the same, or similar evidence … witnesses **and/or** … facts and issues of law," §2(x)(i-ii) (emphasis added). Cases under different state laws could still have "similar evidence" or "witnesses." Second, as MDL practice shows, there are always *some* common issues of fact and law even where different state laws apply (proximate causation, for example). Third, if Defendants were right, there would simply a few dozen mass arbitrations before different arbitrators, each of which would be secret and would bind claimants from the relevant state without notice—multiplying the forum does not solve any of the unconscionability problems.

neutral with the case(s) that such party believes involve individualized issues of law and/or fact that should not be subject to Precedent." §6(b)(iii)(4)(d).  After that, "the determinations made from the Lead Decisions in the Bellwether Cases **will act as Precedent** on subsequent cases with Common Issues of Law and Fact," including any "later filed" cases, to which "Precedent(s) **shall be applied**." §6(b)(iii)(5)(a) (emphasis added).  For any unresolved cases, "the neutral will create a process for handling and resolving *individualized* issues of law and fact," but "Precedent will still apply to all Common Issues of Law and Fact in the Remaining Cases."  §6(b)(iii)(6) (emphasis added).  Simply put, the Rules draw a clear distinction between "individualized" issues (whether a claim has met the statute of limitations, for example) and "common" issues (whether the Terms are unconscionable or the Defendants have market power).

The text and structure of the Rules make clear that Defendants' new reading is wrong.  First, the text has but one plain reading. The Rules *expressly* require that "Precedent(s) **shall** be applied," and *separately* state that as to cases that have *some* individualized issues, "Precedent **will** still apply to all Common Issues of Law and Fact." §6(b)(iii)(5)-(6) (emphasis added).  Second, the entire structure makes no sense unless the precedents are binding.  There would be no reason to ask the parties to identify "case(s) that such party believes involve individualized issues of law and/or fact" if the parties could raise "any reason to depart from precedent in that case" (including *commonly applicable* reasons).  Dkt. 166 at 4.

Because Defendants' interpretation is *not* how arbitrations will proceed, all of Defendants' arguments about lead counsel, notice, precedent, arbitrator selection, and other issues ring hollow.  Claimants without notice or an opportunity to be heard *are* in fact bound, because the common issues—likely the dispositive issues for their case—are resolved confidentially before they ever file, and they have no right to opt-out.

### B. Defendants' New Position Contradicts Their Prior Representations.

Before they realized the problems with the Rules, Defendants themselves recognized that they mean with they say.  They emphasized that the *arbitrator*, not New

*Era*, decides which cases are part of a mass arbitration:

> New Era may initially, '[s]olely for administrative purposes,' treat cases as part of a mass arbitration, so that those cases can be sent to a neutral for determination as to whether they involve common issues. New Era Rules 2(x)(ii) & 6(b)(ii)(2). But it is the presiding neutral—not New Era—who has the "[u]ltimate authority" to make that determination. *Id.* And the neutral does so by applying a standard which tracks the MDL statute.

Dkt. 30-1 at 16. Defendants took pains "to be clear" on this point:

> [T]o be clear, New Era's role is administrative; New Era does not make any substantive determinations in the arbitrations it administers…. The neutral, <u>not</u> New Era, decides all substantive issues, including whether individual arbitrations present common issues such that the mass arbitration rules should apply.

Dkt. 30-1 at 21. Time-after-time, Defendants stated that the *arbitrator*, based on *commonalities*, would decide whether the mass arbitration rules applied, never hinting at the supposedly "critical" "gating requirement" that all claimants must be represented by the same counsel.[2] And Defendants conceded that the neutral would apply a standard "which tracks the MDL statute." *Id.* at 16; *see also id.* at 9 (stating that a mass arbitration will be formed "where the presiding neutral determines that more than five arbitrations have been filed that present common issues," claiming that the protocol "mirrors the process routinely used by federal courts in multi-district litigations ('MDLs'), and citing New Era Rule 6(b)(ii)(1), which does not depend on which firm files the similar claims).

Of course, "the MDL statute" does *not* group cases only if filed by the same law firm. And, as described above, the standard for a Mass Arbitration that must be applied *by the arbitrator* cannot be read to turn on what law firm represents which claimants. That definition does not even mention law firms. The only definition that does mention

---

[2] *See* Dkt. 30-1 at 9 ("The rules and procedures for mass arbitrations apply where the presiding neutral determines that more than five arbitrations have been filed that present common issues"); *id.* at 16 (the mass arbitration rules apply "where the neutral determines that there are more than five cases that present the same or similar evidence, witnesses, or issues of law and fact"); *id.* at 17 ("the presiding neutral determines that the cases involve common issues and should proceed under the mass arbitration rules"). Indeed, Defendants previously argued it was not "unfair" that "'later-filing consumers will not be able to participate' in the arbitrator selection process," *id.* at 17, with no suggestion that this was because their counsel supposedly already had participated.

law firms, as Defendants once emphasized, operates solely for administrative purposes, is applied only by New Era, and is not relevant to the decision of the arbitrator.

Defendants' position on precedent has also shifted. Their Motion explained that "the neutral *will* apply, as precedent, the decisions from the bellwether cases to *all common issues* in each remaining individual case, and then create a process for resolving remaining cases that involve *individual* issues." Dkt. 30-1 at 18 (emphasis added); *see also id.* ("the neutral will apply, as precedent, the decisions from the bellwether cases to all common issues in the opt-out cases"); *id.* at 18-19 (Arbitrators will "apply[] decisions on **common** issues in the bellwether cases to individual cases …. [But] a claimant always has the opportunity to arbitrate any issues *unique* to her individual claim.") (emphasis added). But now, Defendants claim that even as to common issues precedent is merely "discretionary," Dkt. 166 at 3 ("the neutral 'may' apply it"), and that an "individualized issue" simply means "any reason to depart from precedent in that case," *id.* at 4.

### C.     Defendants' Interpretation of the Rules Would Lead to Absurd Results

If Defendants were right that the Mass Arbitration rules *only* apply to the same law firm, the resulting system would be absurdly unfavorable to Defendants. First, one law firm could submit six cases, and proceed with Mass Arbitration. If it lost, it would bring no more cases. Second, another law firm could submit six *different* cases, and proceed with Mass Arbitration—on Defendants' reading, this second batch would be a *separate* Mass Arbitration, and so would go to a different arbitrator. Again, if the claimants lost, the law firm would stop. But law firms could bring a handful of cases, with little risk until one of them won. Then, the first law firm to *prevail* would file for as many clients as possible, because *every* case they filed would win on common issues.

There is no chance Defendants would have selected New Era if this is how its rules operated. To the contrary, New Era's primary selling point was that it offered a "critical prophylactic measure for … **mass arbitration risk**" and that it would finally bind all potential litigants. Ex. F at 14; Ex. C at 66. Defendants' novel reading of the Rules cannot be squared with these positions.

## II. Unconscionability Permeates the Contract.

Plaintiffs identified five ways the Rules are procedurally unconscionable, *see* Dkt. 169 at 2-4; Dkt. 146 at 6-9, and more than five different ways it is substantively unconscionable, *see* Dkt. 169 at 5-11; Dkt. 146 at 9-19. Where, as here, "multiple provisions of [Defendants'] Arbitration Agreement are substantively unconscionable … severance of the offending provisions is not appropriate." *Pinela v. Neiman Marcus Grp., Inc.*, 238 Cal. App. 4th 227, 256 (2015); *see also Armendariz v. Found. Health Psychcare Servs., Inc.*, 24 Cal. 4th 83, 124 (2000) (declining to sever where contract had two unconscionable provisions).[3]

Rather than engage on unconscionability doctrine, Defendants argue the Court should "interpret[] agreements so they're enforceable" and address any unfairness later through vacatur. Dkt. 166 at 11. The "limited and highly deferential," *Coutee Poweragent Inc. v. Elec. Data Sys. Corp.*, 358 F.3d 1187, 1193 (9th Cir. 2004), post-award review is no substitute for fair procedures up front—otherwise, unconscionability challenges would always fail. And interpreting the Rules as Defendants now argue both amounts to rewriting them and does not even fully cure the unconscionability problems. Rather than straining to reform the contract to make it enforceable as Defendants request, California law requires courts *not* to enforce contracts permeated with unconscionability. Plaintiffs' showing flies well above that hurdle. Because the arbitration clause has multiple unconscionable provisions, many going to the core of New Era's process, the Court should strike the arbitration agreement in its entirety.

## CONCLUSION

The Motion to Compel should be denied.

---

[3] Defendants claim the one-sided appeal right is mutual because they might seek injunctive relief against "ticket resellers," but fail to mention that section 17 of the Terms expressly allows them to file this type of claim *in court*, as they do routinely. *See Ticketmaster L.L.C. v. RMG Techs., Inc.*, 507 F. Supp. 2d 1096 (C.D. Cal. Oct. 15, 2007). The appeal right is non-mutual and unconscionable.

| | |
|---|---|
| Dated: June 19, 2023 | Respectfully submitted, |
| | /s/ *Kevin Y. Teruya* |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
  William R. Sears (Bar No. 330888)
  willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN LLC
  Warren Postman (Bar No. 330869)
  wdp@kellerpostman.com
  Albert Pak (admitted *pro hac vice*)
  albert.pak@kellerpostman.com
1100 Vermont Avenue, N.W., 12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123
Facsimile: (312) 971-3502

*Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated*