LATHAM & WATKINS LLP
  Timothy L. O'Mara (Bar No. 212731)
    tim.o'mara@lw.com
  Sadik Huseny (Bar No. 224659)
    sadik.huseny@lw.com
  Andrew M. Gass (Bar No. 259694)
    andrew.gass@lw.com
  Kirsten M. Ferguson (Bar No. 252781)
    kirsten.ferguson@lw.com
  Alicia R. Jovais (Bar No. 296172)
    alicia.jovais@lw.com
  Robin L. Gushman (Bar No. 305048)
    robin.gushman@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>**DEFENDANTS' SUPPLEMENTAL REPLY BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>The Honorable George H. Wu<br><br>Hearing Date: July 13, 2023<br><br>Hearing Time: 8:30 a.m.<br><br>Courtroom: 9D, 9th Floor |

# TABLE OF CONTENTS

I.   Introduction ........................................................................................... 1

II.  The Terms Are Not Procedurally Unconscionable ........................................ 1

III. The Terms Are Not Substantively Unconscionable ...................................... 3

# TABLE OF AUTHORITIES

**CASES**

*Cheng-Canindin v. Renaissance Hotel Assocs.*,
  50 Cal. App. 4th 676 (1996) ................................................................................... 7

*Cronus Invs. v. Concierge Servs.*,
  35 Cal. 4th 376 (2005) ............................................................................................ 6

*DeVries v. Experian*,
  2017 WL 733096 (N.D. Cal. 2017) ........................................................................ 3

*Gilmer v. Interstate*,
  500 U.S. 20 (1991) ............................................................................................. 1, 4

*Graham v. Scissor-Tail*,
  28 Cal. 3d 807 (1981) ............................................................................................. 7

*Kalasho v. BMW*,
  520 F. Supp. 3d 1288 (S.D. Cal. 2021) .................................................................. 6

*Lee v. Ticketmaster*,
  2019 WL 9096442 (N.D. Cal. 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020) .. 2

*Little v. Auto Stiegler*,
  29 Cal. 4th 1064 (2003) .......................................................................................... 5

*McKee v. Audible*,
  2017 WL 4685039 (C.D. Cal. 2017) .............................................................. 1, 2, 3

*Modiano v. BMW*,
  2021 WL 5750460 (S.D. Cal. 2021) ....................................................................... 6

*Mohammad v. T-Mobile*,
  2018 WL 6249910 (E.D. Cal. 2018) ...................................................................... 3

*Mullo v. DoorDash*,
  2023 WL 1971897 (S.D.N.Y. 2023) ...................................................................... 7

*Nguyen v. BMW*,
  2022 WL 102203 (S.D. Cal. 2022) ......................................................................... 6

*Oberstein v. Live Nation*,
　60 F.4th 505 (9th Cir. 2023) ................................................................................ 2

*OTO v. Kho*,
　8 Cal. 5th 111 (2019) .......................................................................................... 3

*Pemberton v. Nationstar Mortg.*,
　331 F. Supp. 3d 1018 (S.D. Cal. 2018) ............................................................... 4

*Poublon v. C.H. Robinson*,
　846 F.3d 1251 (9th Cir. 2017) ............................................................................ 1

*Sanchez v. Valencia Holding.*,
　61 Cal. 4th 899 (2015) ........................................................................................ 5

*Shen v. UPS*,
　2022 WL 17886012 (C.D. Cal. 2022) ................................................................ 2

*Weber v. Amazon.com*,
　2018 WL 6016975 (C.D. Cal. 2018) .................................................................. 2

*Wiseley v. Amazon.com*,
　709 F. App'x 862 (9th Cir. 2017) ....................................................................... 3

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFS.' SUPPL. REPLY BR.
CASE NO. 2:22-CV-00047-GW-GJS

## I. Introduction

Despite the Court's direction to "focus on … substantive unconscionability," May 1 Hr'g Tr. 43:24-44:4, Plaintiffs continue to focus extensively on <u>procedural</u> unconscionability. Why? Because nothing about the Terms or New Era's Rules meets the rigorous "shock the conscience" standard required for <u>substantive</u> unconscionability. Plaintiffs rehash the exact same substantive arguments from their Opposition, but offer nothing to support a finding that the arbitral rules are so "[s]hocking to the conscience, monstrously harsh, [or] exceedingly calloused" that the Court should withhold enforcement. *McKee v. Audible*, 2017 WL 4685039, at *13 (C.D. Cal. 2017) (Wu, J.). The common thread in Plaintiffs' arguments is that arbitration is an inferior forum, and the Court should assume that any matter left to the arbitrator's discretion (discovery, application of precedent, etc.) will be unfair to claimants. But the Court cannot treat arbitration as an inferior forum. *Gilmer v. Interstate*, 500 U.S. 20, 24 (1991). And it's industry standard practice to grant the arbitrator wide discretion to craft appropriate procedures as needed. *Compare* ECF No. 150-5, AAA R-23 ("[A]rbitrator may issue any orders necessary to … achieve a fair, efficient, and economical resolution of the case."), *and* ECF No. 166 at 8 n.7, CPR Rule 9.1 ("Tribunal may conduct the arbitration in such manner as it shall deem appropriate while giving each party a fair opportunity to present its case."), *with* ECF No. 30-4, New Era Rule 2(f)(ii) ("Rules"). To that end, contrary to Plaintiffs' arguments, the Court <u>must</u> "assume that the arbitrator will" exercise that discretion "in a reasonable manner in conformity with the law." *Poublon v. C.H. Robinson*, 846 F.3d 1251, 1265 (9th Cir. 2017). Defendants' motion should be granted.

## II. The Terms Are Not Procedurally Unconscionable

Plaintiffs devote nearly a quarter of their supplemental brief to procedural unconscionability, claiming that the Terms implicate "an extreme level of procedural unconscionability" because Defendants changed the arbitration provider from JAMS to New Era. Pls.' Suppl. Br. at 1, 2-4. It's undisputed, however, that each Plaintiff

had reasonable notice of the current Terms selecting New Era—and affirmatively checked a box stating that they agreed to the current version of the Terms—<u>before</u> filing this lawsuit. *See* Mot. to Compel Arb. at 4-7, 11-13, ECF No. 30-1 ("Mot."); *Oberstein v. Live Nation*, 60 F.4th 505, 515-17 (9th Cir. 2023). Moreover, the law doesn't require companies to inform consumers of specific changes to their terms; if the user has reasonable notice of the amended terms, she is bound by them. This issue was addressed in *Lee v. Ticketmaster*, 2019 WL 9096442 (N.D. Cal. 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020). There, the plaintiff first agreed to the Terms when they did not contain an arbitration clause; subsequently, the plaintiff manifested assent to an updated version of the Terms, which contained an arbitration clause. *Id.* at *1. No notice of that significant change was provided. *Id.* Still, the court held that plaintiff was bound to arbitrate, and the Ninth Circuit affirmed.

This Court reached the same conclusion in two cases, including one involving a "last updated" notice.[1] *See McKee* at *11 n.7 (Wu, J.) (plaintiff created Amazon account and agreed to terms that didn't contain an arbitration clause; Amazon later amended terms to add an arbitration clause, but never specifically notified plaintiff; still, plaintiff had to arbitrate because he later assented to amended terms); *Weber v. Amazon.com*, 2018 WL 6016975, at *13 (C.D. Cal. 2018) (Wu, J.) (tentative; "[t]hough the text immediately below or next to the 'Place your order' buttons … do not mention a change to the COU, upon clicking the hyperlinked COU in the precise disclosure adjacent to the buttons (which [plaintiff] would have necessarily agreed to …), the COUs … state at the very top the date the COU was last updated."); *see also Shen v. UPS*, 2022 WL 17886012, at *4-5 (C.D. Cal. 2022) (finding notice, no surprise where plaintiffs saw pop-up with a link to updated terms; it was irrelevant "whether UPS identified any specific changes" because a company need not "publish a redline version of the terms" "to bind a consumer … to new terms").

Plaintiffs also claim that, because the arbitration agreement can be changed

---

[1] The Terms contain a "Last Updated" date at the top of the page. ECF No. 31-30.

unilaterally and apply to accrued claims, it's procedurally unconscionable. Pls.' Suppl. Br. at 3-4. But online contracts often include a unilateral modification provision—and courts routinely enforce them. *See Wiseley v. Amazon.com*, 709 F. App'x 862, 864 (9th Cir. 2017); *McKee*, 2017 WL 4685039, at *13 (Wu, J.). And parties may agree to arbitrate accrued claims where, as here, the agreement covers "any dispute … irrespective of when [it] arose." ECF No. 31-30 at 10; *DeVries v. Experian*, 2017 WL 733096, at *8 (N.D. Cal. 2017) ("Courts … consistently appl[y] arbitration agreements retroactively where [they] … facially apply to disputes arising prior to the agreement."); *Mohammad v. T-Mobile*, 2018 WL 6249910, at *7 (E.D. Cal. 2018) (clause covering "any and all claims or disputes" "sufficiently broad to apply retroactively to pre-existing claims").[2]

### III. The Terms Are Not Substantively Unconscionable

Even if the Court were to find a high degree of procedural unconscionability, to prevail Plaintiffs must still show that any substantive unconscionability "shocks the conscience." *OTO v. Kho*, 8 Cal. 5th 111, 118, 129-30 (2019) (finding an "unusually high degree of procedural unconscionability," and still applying the "shock the conscience" standard). Plaintiffs fail to meet that stringent standard.

***The Mass Arbitration Procedures Don't Shock the Conscience.*** The core dispute about New Era's Rules concerns the procedures for mass arbitrations—in particular, whether bellwether precedent precludes claimants from presenting new or different issues or arguments.[3] New Era's Rules define precedent as non-binding, and provide each claimant with the opportunity to be heard. *See* Rules 2 & 6; Defs.' Suppl. Br. at 3-7. New Era has filed a declaration unequivocally confirming this. In particular, New Era explains that "the Precedent rule is not absolute." New Era Decl. ¶ 14, ECF No. 163. Rather, in each case, the neutral must "individually consider …

---

[2] Plaintiffs also argue that consumers will not be able to find the Rules or know which ones apply. Pls.' Suppl. Br. at 2. That's false. The Terms hyperlink to the Rules, and state which rules and procedures apply. ECF No. 31-30 at 12.

[3] To be clear, this case is not a mass arbitration. There are only four Plaintiffs here; that's below the threshold to qualify as a mass arbitration. *See* Rule 6(b)(ii)(1).

1  the arguments made regarding whether and to what extent Precedent should apply
2  to a particular case." *Id.* ¶ 12; *see also id.* ("each party has the right and opportunity
3  to … argue [case] should not be subject to Precedent"); *id.* ¶ 14 ("[T]he neutral <u>may</u>
4  apply the factual findings and legal determinations … in a bellwether case to other
5  cases in the mass arbitration … <u>provided</u> the parties present no compelling reason to
6  depart from that Precedent.") (emphases added); *id.* ¶ 17 (later-filed claimants "have
7  the opportunity to explain and argue why their particular issues of law and fact
8  should be adjudicated differently from the Precedent"); Defs.' Suppl. Br. at 3-7.

       Still, Plaintiffs maintain that precedent must be preclusive, binding absentee claimants, because Rule 6 states that the bellwether decisions "will" act as precedent, and that precedent "shall be applied" to later-filed cases. Pls' Suppl. Br. at 5. This argument ignores the fact that "precedent" is a defined term, and all references to precedent are subject to (and must be interpreted in accordance with) that definition. *See Pemberton v. Nationstar Mortg.*, 331 F. Supp. 3d 1018, 1038 (S.D. Cal. 2018) ("[the] law treats a defined contract term according to the definition set forth in the contract"). That definition provides that application of precedent is (a) discretionary (the neutral "may" apply it) and (b) "subject to any rights contained" in the Rules. Rule 2(y)(i). The Rules, in turn, contain a plethora of rights ensuring that <u>every</u> claimant has a fair opportunity to be heard. Defs.' Suppl. Br. at 8-9.[4]

       Plaintiffs also complain that mass arbitrations at New Era are unfair because they are not "analog[ous] to MDLs." Pls.' Suppl. Br. at 6. Most of these complaints are "generalized attacks on arbitration" (e.g., it's not public, there's generally limited review of awards); as such, they cannot be a basis for not enforcing the Terms. *See Gilmer*, 500 U.S. at 30. Plaintiffs' other complaints are simply wrong: MDL courts often decide "the merits" (e.g., summary judgment), and there's no requirement that

---

[4] Plaintiffs also claim that the use of default page and record limits in bellwethers is unfair. Pls.' Suppl. Br. at 6. But Plaintiffs <u>concede</u> arbitrators have discretion to modify default record limits. *Id.* And the Rules give arbitrators discretion to request post-hearing briefing in excess of the default. Rule 2(p)(vii); *see also id.* 2(f)(ii).

MDL courts hold a formal leadership appointment process (rather, as at New Era, that's left up to the judge's discretion). *See* Defs.' Suppl. Br. at 5 n.3, 7 n.6.

It's also worth noting that Plaintiffs still have not addressed the fact that New Era's procedures are strikingly similar to their counsel's proposal for administering mass arbitration. Mot. at 19-20. How can these procedures be fair when Plaintiffs' counsel proposes them, but "shock the conscience" here? They cannot.

***The Limited Right of Appeal Is Enforceable Under Sanchez.*** The Terms contain a right to appeal awards of injunctive relief; it's identical to the one upheld in *Sanchez v. Valencia Holding*. Plaintiffs, however, argue that the provision in *Sanchez* was only enforceable because it also allowed appeals of awards for $0. Pls.' Suppl. Br. at 8. According to Plaintiffs, "where a plaintiff did not receive injunctive relief, he also would get $0, and so could appeal," which meant that the provision was "not so tilted against plaintiffs."[5] *Id.* *Sanchez* does not support this argument. The *Sanchez* court analyzed the two parts of the appeal provision completely separately; its rationale for upholding the right to appeal injunctive relief had nothing to do with the right to appeal awards for $0. *See* 61 Cal. 4th 899, 915-17 (2015).

Plaintiffs also argue that, in *Sanchez*, "the denial of injunctive relief affected just a single plaintiff," whereas "the denial of injunctive relief for a bellwether plaintiff would result in the denial for *all* plaintiffs." Pls.' Suppl. Br. at 8. That's wrong. The plaintiff in *Sanchez* (a putative class action) was asserting a UCL claim to enjoin fraudulent business practices—and the court specifically recognized that "the public has a strong interest in ensuring that [such] practices are enjoined." 61 Cal. 4th at 907, 917. Moreover, the bellwether decisions are not binding on "all" claimants. Defs.' Suppl. Br. at 3-6; New Era Decl. ¶¶ 12, 14, 17.[6]

---

[5] There's no reason to assume that, "where a plaintiff did not receive injunctive relief, he also would get $0." Injunctions are rarely granted where damages provide a suitable remedy, and monetary damages aren't available on UCL claims—so there was no possibility in *Sanchez* of a no injunction/$0 damages result on the UCL claim.

[6] Per the Court's instructions, Defendants are not briefing severability generally. May 1 Hr'g Tr. 44:16-46:7. The appeal provision, however, is clearly severable, per Plaintiffs' own case. *Little v. Auto Stiegler*, 29 Cal. 4th 1064, 1075 (2003).

***The FAA Governs.*** The arbitration agreement expressly provides that "the FAA governs" and "State arbitration laws do not govern in any respect." ECF No. 31-30 at 11. Still, Plaintiffs argue that any arbitration must comply with the CAA's arbitrator selection rules. Pls.' Suppl. Br. at 9-10, 13. That's wrong: "parties to an arbitration agreement … [may] expressly designate that any arbitration proceeding should move forward under the FAA's procedural provisions rather than under state procedural law." *Cronus Invs. v. Concierge Servs.*, 35 Cal. 4th 376, 394 (2005); *see also* Tentative at 13-14. *Modiano v. BMW* is directly on point. There, the plaintiff made the <u>exact</u> argument Plaintiffs make here: that "the arbitration agreement is unenforceable because it waives Plaintiffs' right to select a neutral arbitrator under the CAA." 2021 WL 5750460, at *2 (S.D. Cal. 2021). The court rejected that argument because (as here) the parties' agreement provided that "any arbitration … shall be governed by the Federal Arbitration Act … and not by any state law concerning arbitration." *Id.* The court held that "parties … may select which procedural rules will apply in arbitration, and here, the parties expressly agreed that the FAA would apply and the CAA would not. This agreement is enforceable." *Id.*

Moreover, New Era's selection process mirrors JAMS and AAA's. Tentative at 13; Reply at 18-19, ECF No. 149-1. And Plaintiffs' cases are clearly distinguishable. In *Ovitz*, the agreement stated the CAA applied. 133 Cal. App. 4th 830, 855 (2005). In *Kalasho*, "[t]he parties [did] not dispute … that the CAA provisions at issue [were] not preempted by the FAA." 520 F. Supp. 3d 1288, 1295 (S.D. Cal. 2021); *see also Modiano*, 2021 WL 5750460, at *2. And in *Nguyen*, the defendant did not address preemption. 2022 WL 102203, at *7 (S.D. Cal. 2022).

***Discovery Is Consistent with Industry Standards.*** Plaintiffs next rehash their argument that there is no right to discovery in expedited arbitrations. Pls.' Suppl. Br. at 6-8. The Court already correctly rejected this argument: the Rules "allow[] for informal discovery at the discretion of the arbitrator." Tentative at 15; Reply at 15-18. Still, Plaintiffs argue that discovery limits are permissible only if they give

"claimants a baseline *right* to some discovery, and then discretion to an arbitrator to grant *additional* discovery." Pls.' Suppl. Br. at 7. But that's exactly what New Era's Rules provide: a baseline right to exchange of relevant documents, Rule 6(a)(vii)-(viii), plus additional exchanges "to ensure a fundamentally fair process," *id.*, plus production of other "relevant or necessary" information upon "good cause" shown, *id.* 2(q)(i). This discovery process is strikingly similar to AAA's: hearing exhibits are exchanged; the arbitrator "may direct" the exchange of documents and witness lists; but "[n]o other exchange of information … is contemplated … unless an arbitrator determines further information exchange is needed to provide for a fundamentally fair process." ECF No. 150-5, AAA R-22.

***New Era Is a Neutral Forum.*** Defendants explained how discovery put the lie to Plaintiffs' unfounded bias allegations. Reply at 2-4. Plaintiffs do not address, let alone dispute, that discussion. To the contrary, they implicitly concede that they cannot show New Era is "actually biased." *See* Pls.' Suppl. Br. at 10. The analysis can stop there. *See Mullo v. DoorDash*, 2023 WL 1971897, at *4 (S.D.N.Y. 2023).

Undeterred, Plaintiffs now argue that they fall within "a separate line of cases" declining to enforce arbitration "before a forum that lacks minimum levels of integrity." Pls.' Suppl. Br. at 10. The two cases Plaintiffs cite are not remotely on point. In *Graham*, the agreement designated the defendant's union—of which plaintiff was not a member—as the sole arbitrator. 28 Cal. 3d 807, 826-28 (1981). And in *Cheng-Canindin*, the plaintiff did not agree to arbitrate at all, but rather to participate in an "internal problem solving procedure" in which "[e]veryone involved in the decision making process is employed by, selected by, and under the control of the [defendant]." 50 Cal. App. 4th 676, 688, 691 (1996). That's nothing like this case. New Era is a neutral forum, where cases are decided by professional neutrals—many of whom also work for JAMS and AAA. New Era Decl. ¶¶ 5-6.[7]

---

[7] Finally, Plaintiffs also claim that it's unconscionable to "impos[e] $300 per claimant" as a filing fee. Pls.' Suppl. Br. at 12. The $300 arbitration filing fee is consistent with the per claimant filing fee at JAMS (i.e., $250). Mot. at 22 n.22.

Dated: June 19, 2023

Respectfully Submitted,

LATHAM & WATKINS LLP

By: /s/ Timothy L. O'Mara
Timothy L. O'Mara
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
tim.o'mara@lw.com

*Attorneys for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc.*

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc., certifies that this brief contains 7 pages, which complies with the page limit set by the Court in its May 1, 2023 order (ECF No. 160).

Dated: June 19, 2023

*Timothy L. O'Ma——*

Timothy L. O'Mara