

UNITED STATES DISTRICT COURT

CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE


SKOT HECKMAN, et al,

                    Plaintiffs,

        vs.                          Case No. CV 22-047-GW

LIVE NATION ENTERTAINMENT, INC.,

                    Defendants.
_____/


                REPORTER'S TRANSCRIPT OF
        DEFENDANTS' MOTION TO COMPEL ARBITRATION
                Thursday, July 13, 2023
                    8:30 a.m.
              LOS ANGELES, CALIFORNIA


_____

            TERRI A. HOURIGAN, CSR NO. 3838, CCRR
            FEDERAL OFFICIAL COURT REPORTER
            350 WEST FIRST STREET, ROOM 4311
            LOS ANGELES, CALIFORNIA  90012
                  (213) 894-2849


                UNITED STATES DISTRICT COURT

1                        **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4        QUINN EMANUEL URQUHART and SULLIVAN
         BY:  KEVIN Y. TERUYA
5             WILLIAM R. SEARS
              Attorneys at Law
6        865 South Figueroa Street, 10th Floor
         Los Angeles, California  90017
7
         KELLER POSTMAN LLC
8        BY:  WARREN D. POSTMAN
              Attorney at Law
9        1100 Vermont Avenue, N.W., 12th Floor
         Washington, D.C.  20005
10

11   **FOR THE DEFENDANT:**

12       LATHAM and WATKINS LLP
         BY:  TIMOTHY L. O'MARA
13            ALICIA R. JOVAIS
              ROBIN L. GUSHMAN
14            Attorney  s at Law
         505 Montgomery Street, Suite 2000
15       San Francisco, California  94111

16       KELLEY DRYE and WARREN LLP
         BY:  SANDRA L. MUSUMECI
17       Attorney at Law
         3 World Trade Center
18       175 Greenwich Street
         New York, New York  10007
19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1        **LOS ANGELES, CALIFORNIA; THURSDAY, JULY 13, 2023**

2                            **8:30 a.m.**

3                            **--oOo--**

4

5           THE COURT:  Let me call the matter of *Heckman versus*

6   *Live Nation*.

7           Let me have appearances starting with plaintiff's

8   counsel first.

9           MR. POSTMAN:  Good morning, Your Honor.  Warren

10  Postman from Keller Postman for plaintiffs, along with me is

11  Will Sears and Kevin Teruya from Quinn Emanuel.

12          MR. O'MARA:  Good morning, Your Honor.  Tim O'Mara

13  along with Lisa Jovais and Robin Gushman for defendants.

14          THE COURT:  We are here for the continuation of the

15  motion to compel arbitration.

16          I didn't issue a tentative because I haven't decided

17  what exactly to do with this particular matter.

18          It seems to the Court, obviously, the issue as to

19  arbitration, there is a, I guess, a sliding scale that

20  considers both procedural unconscionability and substantive

21  unconscionability.

22          I presume that both sides agree that that is the nature

23  of the Court's analysis at this point?

24          MR. O'MARA:  I do, Your Honor.  Although, we would

25  point out we believe the shock of conscience under the

1    substantial unconscionability applies.

2            THE COURT:  All right.

3            MR. O'MARA:  We do, Your Honor.  The only thing we

4    would say is that under the substantive unconscionability, the

5    standard there is it must shock the conscience.

6            THE COURT:  I understand, but there is a sliding

7    scale, and frankly, I presume the applicable law in this matter

8    is state law.

9            Because again, even though the FAA has certain

10   requirements, et cetera, et cetera, you know, the Supreme Court

11   -- the U.S. Supreme Court and California Supreme Court indicate

12   that the FAA doesn't preempt or supersede the unconscionability

13   analysis under state law.

14           Now, obviously, it would if the state law is so

15   antithetical to the concept of arbitration, yes, but insofar as

16   just determining what constitutes unconscionability, both

17   procedurally and substantively, as long as there is not a

18   hidden anti-arbitration animus, you do the analysis under state

19   law.

20           I presume both sides agree with that?

21           MR. O'MARA:  We do, Your Honor.

22           MR. POSTMAN:  Yes, Your Honor.

23           THE COURT:  The problem I have is that procedurally

24   the situation is so unconscionable.

25           In other words, it's about as unconscionable as one

1    could get procedurally, and possibly -- I'm not saying that it

2    does, but possibly pass the ascent step.

3         I haven't decided whether or not I'm going to find

4    sufficient ascent, but assume for purposes of argument I do,

5    this situation is so procedurally unconscionable that the

6    substantive unconscionability that would shock the conscience

7    does not have to be so high or large.

8         It could be relatively less shocking than it otherwise

9    would be if this present situation were not so procedurally

10   unconscionable.

11        MR. O'MARA:  Your Honor, on that point, I would just

12   point out that the case law on that issue, to be clear, on

13   page 3 of our supplemental reply brief and the case is *OTO*, the

14   point there is it doesn't matter the level -- the degree to

15   which the issue is found to be procedurally unconscionable.

16   The standard of substantive unconscionability still has to be

17   shock the conscience.

18        THE COURT:  Again, both the California Supreme Court

19   and the U.S. Supreme Court says it's a sliding scale.

20        MR. O'MARA:  I agree, Your Honor.  It's a sliding

21   scale, but the lowest point you can possibly have under

22   substantive unconscionability has to be shock the conscience.

23        THE COURT:  No, but shock the conscious is defined

24   under state law, and the extent to which the California Courts

25   talk about shock the conscience, they say, the term, "shock the

 1   conscience," yet there are other terms that describe the

 2   elements that are involved there.

 3         It's not all of the time referenced as shock the

 4   conscience, it's a recognition that it has to be something that

 5   is fairly substantial and fairly is disadvantageous.

 6         But I mean the term, "shock the conscience," is

 7   meaningless unless you define the types of things that can

 8   shock the conscience.

 9         MR. O'MARA:  Your Honor, to add to that, Your Honor

10   has added to the phrase "shock the conscience," and again this

11   is page 1 of our supplemental reply brief in the *McKee* case

12   where you describe it as "shocking the conscience monstrously

13   harsh or exceedingly callous.  It's a high bar.

14         THE COURT:  I do agree, it's a high bar, but again,

15   it doesn't mean a person can meet it, because there are lots of

16   cases which have found certain situations as being shocking the

17   conscience or a similar criteria.  You know, I understand what

18   the law is.

19         MR. POSTMAN:  Your Honor, if I could just speak to

20   the specific point, because I think *OTO* is a great case for us.

21   It is recently decided 2019 California Supreme Court case.

22         My friend seems to attach talismanic significance to

23   this phrase.  I completely agree with you, you need to define

24   it.

25         The California Supreme Court defined it.  They listed

1    several different formulations for unconscionability, and they

2    said all of the different ones, including shock the conscience,

3    simply, quote, point to the central idea that unconscionability

4    doctrine is concerned not with simple old-fashioned or bad

5    bargains but with terms that are unreasonably favorable to the

6    more powerful party.

7         That is what shocks the conscience means and they

8    applied it in that case.  The case itself is striking.

9         They found some procedural unconscionability, they call

10   it enough to then say you need reasonably low substantive

11   unconscionability.

12        The substantive unconscionability that was adequate in

13   that case, to deem it shocking the conscience, was that the

14   procedures were taking away a relatively more advantageous

15   administrative proceeding as opposed to arbitration.

16        If you read the facts of that case, where the California

17   Supreme Court said the shock the conscience standard was met,

18   it hardly makes you, you know, think of human rights abuses,

19   it's a procedural --

20        THE COURT:  Well, what is the substantive

21   unconscionability -- what are the items of substantive

22   unconscionability that your client is focusing on?

23        I understand certain of them, but some of them, there is

24   a question I have as to the extent of it, and the extent to

25   which your clients would be able to argue some of it.

1          For example, it seems to the Court one of the -- for

2    example, one of the problems I have in terms of the procedural

3    unconscionability, it seems to me that, first of all, there was

4    -- there was unilateral change in the arbitration provider from

5    previously JAMS to New Era.

6          You know, that the fact that that was unilaterally done,

7    no, the Courts have said you could have unilaterally changes --

8    fairly substantive changes without it shocking the conscience.

9          So it's not that that would pose the shocking the

10   conscience.

11         Now, there was some argument insofar as the party that

12   was selected, New Era, as somehow as being bought, let's say,

13   by the defendant or something of that sort.

14         I don't know whether or not the plaintiffs have provided

15   sufficient evidence of that.

16         Obviously, if it was bought, that would clearly qualify

17   as substantive and procedural unconscionability.

18         I don't know whether or not the plaintiffs thus far have

19   provided sufficient evidence of that.

20         But then, you know, you have a situation where I don't

21   know why -- I know that when you have a unilateral substantive

22   change, it's extremely important.

23         I have indicated that might not necessarily be a

24   problem, but there is a question in my mind, I know you don't

25   have always to have some notice of it, but the more substantial

1    it is and the more important of it is, why wouldn't notice --

2    not that it is a cutoff point or something like that, but it's

3    something certainly one could consider when you have a really,

4    really major change, for example, the choice of arbitrators

5    because supposedly the arbitrators of your choice are supposed

6    to be a decision made by both sides, that is always, like, the

7    fiction that Courts use about the propriety of having these

8    arbitrations.

9        But if there is no notice, real notice of the fact that

10   you are changing the arbitration body, and when you change the

11   arbitration body, you, by definition, change the way the

12   arbitration is going to be done, so there is a question as to

13   why there wasn't any notice of this provided.

14       Not that it's a cutoff point, but it's something that is

15   so cheap to do that, you know, it boggles the mind as to why it

16   is not done or why wasn't it done here.

17       To give some sort of notice to people who are

18   potentially going on to the site, you know, by the way we have

19   changed our terms of use in this particular area, see this page

20   of the terms of use.

21       Then, if that happened, then there would be a major

22   issue that would be overcome easily, but that apparently wasn't

23   done.

24       Supposedly, what was done is that every time, I guess,

25   there is a terms of use, as they say updated by such and such a

```
 1  date, that is what, I guess, the defendant does.  But it's

 2  meaningless in the sense if he doesn't say in what way it's

 3  updated, it's a pointless notice, because the terms of use are

 4  15 pages or something like that or more, and there is no

 5  indication as to what the change is.  So is one supposed to

 6  take a former term of use, compare it to the new term of use to

 7  see, well, where does it somehow conflict or where does it

 8  somehow new that has been added or taken away or something like

 9  that; the notice aspect is so dismal.

10       And also, the other problem is that it seems to me that

11  the way the consent is supposedly manifested is that if the

12  person goes on the site and goes past -- basically the first

13  page, they supposedly have manifested their ascent.

14       MR. O'MARA:  Your Honor, that is not quite right.

15  That would be called browser wrap; in other words, just by

16  using the site --

17       THE COURT:  No.  I'm not saying that, there is a

18  notice that by going past this page or by going further, you

19  agree to the terms of use.  That is what it is provided for by

20  the site, I presume.

21       MR. O'MARA:  You have to -- so there is three

22  different points of ascent.

23       There is account creation, account sign-in, and

24  purchase.

25       And until recently --
```

```
1          THE COURT:  I thought there was also, if you were to

2   go past the first page to do certain things, not necessarily

3   make a purchase, but, for example, if you were to look and see

4   what things are available to purchase.

5          MR. O'MARA:  Your Honor, that is called browser

6   wrap, we're not asking for that to be enforced.

7          THE COURT:  I'm not saying that, but again, it's not

8   asking to enforce, it is what is provided for.

9      So how, if somebody gets on the site, and it's provided

10  for, how are they supposed to know that is not --

11         MR. POSTMAN:  Your Honor, may I just read the terms

12  because my friend has repeatedly this multiple times.

13         THE COURT:  Don't constantly use the phrase, "my

14  friend."

15         MR. POSTMAN:  I am sorry, it is an affectation, I

16  can stop.

17     But the terms say:  That any changes they make, they can

18  make changes at any time, any changes we make will be effective

19  immediately when posted by continuing to use this site after

20  that date you agree to these changes.

21         THE COURT:  That is somewhat problematic.  That's

22  the reason why I find the setup so procedurally unconscionable.

23     Also, by the way it makes all of these things

24  retroactive as well.

25         In other words, if you made a purchase and you get on
```

1    the site, just even to look and see, well, I wonder if I have

2    -- what is new, what is available, you supposedly ascented to

3    having new terms of use apply to your prior purchases.

4              MR. O'MARA:  Your Honor, we would not make that

5    motion.

6              THE COURT:  I understand that.

7         Again, you can't get away from these issues by saying,

8    oh well, we can shed these things when we want to, because

9    somebody has complained about it now.

10         Again, these are the problems I have with it.

11             MR. O'MARA:  Your Honor, to be clear, the facts

12   before the Court are these specific plaintiffs, and these

13   specific plaintiffs checked a box at purchase saying that they

14   agreed to these terms.

15             THE COURT:  Well, as I said, I think that is one of

16   the problems the plaintiffs have -- the named plaintiffs, maybe

17   you should find somebody who made a purchase but -- made an

18   earlier purchase, but didn't make a subsequent purchase they

19   got on the site.

20         Then that argument that the defense is raising, doesn't

21   come into play.

22         But the problem the Court has is that the batched --

23   what do you call it -- mass arbitration, they affect those

24   people as well.

25             In other words, that is another problem I have, and it

might be the substantive issue -- the major substantive issue

that I have is that this process that the defendants are

utilizing more or less -- there might be a due process issue in

regards -- not because of the arbitration itself, but -- in

other words, it seems to me what the defendants have done here,

I mean, originally there was an issue and way, way years ago

back about the issue of class actions and arbitration.

And so a lot of companies did not want to have class

arbitration.

And, you know, so they got away with it, and said --

gave this class action waiver.

The Supreme Court said that was all right, and I

understand the Supreme Court's statement of that, although, the

reasoning that the Supreme Court gave is sort of really not --

if it's applied to this case, it would be an argument as to why

this case should not go to arbitration.

But, that is something that comes up later.

But then, so the Supreme Court basically says, you can

have class action waivers.

Then what happens is that all of these individual

consumers, they file for arbitration, and there are thousands

of them.  So then these companies say, well, you know, this is

really a problem.  We got what we wished for, but now we're

screwed in a different way, so let's do something about it.

So now we have what, in essence, is this mass

1    arbitration which is kind of like a class action without being

2    a class action, but attempting to bind subsequent consumers to

3    the choices that are made.

4         But even then, if the choice is made that is to the

5    benefit -- the area that is beneficial to the consumers, then

6    according to the scheme that is set up here, the losing

7    defendant can appeal, but not the -- and I understand there is

8    case law that said, well, that may not be so bad, but in other

9    words, the problem I have is that there is so much here that,

10   you know, even though I have -- I can't really say I'm

11   anti-arbitration, because I did decide *Oberstein*, et cetera,

12   and I found those things to require arbitration, but this case

13   may be the straw that broke the camel's back.

14           MR. O'MARA:  Your Honor, your statement raises a few

15   issues.

16       In terms on the front end, it's important to recognize

17   the fact that these are not class actions because the

18   plaintiffs that are before the Court have signed a contract,

19   saying this is not a class action.

20           THE COURT:  That is exactly right.  In other words,

21   but in the JAMS context that would have meant that all of these

22   plaintiffs would be filing separate actions, which would have

23   been resolved individually by successive arbitrations.

24           MR. O'MARA:  Your Honor, that is still true.

25           THE COURT:  Well, it's not necessarily true in this

1   mass arbitration, because you are choosing *Bellwether* and then

2   there is a question as to which the *Bellwether's* control

3   subsequently filed claims.

4         MR. O'MARA:  If I may, Your Honor, one point that is

5   very important, I think there is some level of confusion about

6   what this mass arbitration is, and how it came into being.

7         From Your Honor's statement, it sounds like the Court

8   believed that there is this sort of one after the other or a

9   lot of these individual arbitrations being filed, so the

10   defendants or some group of corporations got together and said,

11   hey, this is death by 1,000 cuts, we can't live with this.  We

12   need to come with some sort of mass joinder and resolve all of

13   this at once.

14         That is fundamentally not what happened.  This is a

15   phenomenon --

16         THE COURT:  Let me ask plaintiff's counsel, do you

17   agree with that?

18         MR. POSTMAN:  I disagree.  Our firms.  My firm was

19   heavily involved after the doctrine you described developed, in

20   signing up and being retained by a large number of clients.

21         If Mr. O'Mara is going to point out that we advertised

22   for those clients --

23         THE COURT:  Not to say that it's true, but I do

24   recall lots and lots of articles in various legal journals

25   about this context -- about the fact that these various

1   defendants wanted a class action waiver.

2        They got it, and then now they had to suffer the

3   consequences of thousands of individual claims.

4        MR. O'MARA:  That may be true, Your Honor, but my

5   point is, is this isn't a phenomenon of defendant's creation.

6        So plaintiff's counsel came up with a process which was

7   to file, and the paradigm is to file 1,000, 10,000, whatever

8   the number might be, identical claims by the same firm.

9        That is important to understand because then what you

10  have is you have a number of different arbitration providers,

11  not just New Era, who look at that and say, well, what does

12  that mean.

13        In front of JAMS, where there is no rules to deal with

14  that, that they don't have a thousand arbitrators or 10,000.

15        THE COURT:  But the problem is there's an economic

16  reality whereby most of these claims are not worth anybody's

17  time, let alone -- unless somebody has a lot of time to go into

18  small claims court in an attempt to pursue it, and I don't know

19  whether or not a small claims court is going to entertain a

20  claim about antitrust positions.

21        But assuming that they are, and assuming somebody could

22  litigate that, these types of cases will never -- there is not

23  going to be that many of them because they are impossible to do

24  on an individual basis economically, which is the reason why

25  when you say there is a plaintiff counsel that does it

collectively, you have to understand the reason for that.

Economically it makes sense for them, much in the same way as

it makes economic sense for the defendant to oppose it.

MR. O'MARA:  We do, Your Honor.

To be crystal clear, there is nothing about New Era or

defendant's terms to get in the way of that.

THE COURT:  I agreed with you originally, the

plaintiffs tried to besmirch New Era, and they haven't

succeeded in doing that.

I'm not casting New Era as some sort of whorish

mediation; it's not.  They haven't succeeded in showing that.

MR. O'MARA:  I agree, Your Honor.

So the point where I'm trying to get to here is if you

understand what the phenomenon is, which is again, identical

claims filed by the same firm, the rules make much more sense,

which is why in our supplemental briefing we made that point.

If you understand that is what the rules are written

for, questions that Your Honor has raised, for example, around

lead counsel and precedent makes much more sense, and it goes

to this point which is obviously concerning the Court about the

opportunity to be heard.

THE COURT:  Well, let me ask you this question:  At

the time that New Era was created and at the time the contract

that was entered into with New Era -- between New Era and the

defendants, had New Era already promulgated all of its

```
 1   procedural rules and regulations --
 2            MR. O'MARA:  Yes.
 3            THE COURT:  -- that were not in dispute.
 4        It seems to me there is some dispute even now as to the
 5   collateral estoppel effect, I think, is one issue insofar as
 6   Bellwethers are concerned.
 7            MR. O'MARA:  I'm not sure I followed that last part,
 8   Your Honor.
 9        But to be clear, New Era had published its rules online
10   before the defendant signed the contract with them.
11            THE COURT:  Let me ask the plaintiff's counsel, do
12   you agree with that?
13            MR. POSTMAN:  They signed the same day, but it was a
14   one/two, because they were doing it --
15            MR. O'MARA:  Not the same day.
16            THE COURT:  I apologize for calling you in, just
17   this case is causing me headaches.
18            MR. POSTMAN:  Sorry, I didn't mean to interrupt.
19   You referred to two points that I hadn't addressed, if I could?
20            THE COURT:  Sure.
21            MR. POSTMAN:  One was the issue that not all of the
22   grounds of unconscionability would necessarily apply to the
23   representative plaintiffs in this case.
24        And I think the reason that doesn't matter is because
25   California substantive unconscionability law or
```

1   unconscionability law, more broadly, which applies here, if you

2   look at the cases that apply, it is making a public policy

3   analysis.

4        As you said that public policy analysis can't conflict

5   with the Federal Arbitration Act.

6        But where it is consistent or not in conflict with the

7   Federal Arbitration Act, the Courts as asking, is this a fair

8   contract to have applied broadly.

9        That is how the cases work.

10        And I should add, we have been making these points and

11   Live Nation has never raised that objection in four briefs.

12        So, it's totally fair for you to note now, but I think

13   the case law suggests it's not a concern.

14        As to substantive unconscionability, we noted in our

15   brief, of course, multiple grounds, but you had asked in this

16   hearing what is the one we're focused on.

17        I think the simplest, cleanest one to focus on, is that

18   I believe in the supplemental brief in our reply.  We have made

19   crystal clear that when cases are filed by multiple firms, they

20   will be sent under the plain text of the rules and Live

21   Nation's own statements before the supplemental briefing, and

22   New Era's own statements before the supplemental briefing, and

23   those will all go to the same arbitrator, and later people will

24   be bound without notice and an opportunity to be heard.

25        That is an egregious due process violation.

1        Mr. Ramirez is simply wrong that these mass arbitrations

2   are only filed by one firm.  My firm is involved in several now

3   where we're aware of several others.

4        Defendants have told us we're facing three or four firms

5   doing this, which is not hard to see.

6        Some of these are brought on by public allegations of

7   consumer fraud, and then the defendant will compel the class to

8   arbitration.  That is essentially a signal to any firm that

9   wants to bring cases.

10       And so it is absolutely not true that they are only

11   brought by one firm.

12            THE COURT:  Before I close, let me ask the defense

13   counsel, there is a discussion in the Supreme Court's *Lamps

14   Plus* case where they basically say why class arbitration is

15   kind of like -- normally, they are so hot to trot on

16   arbitration, but class arbitration, the Supreme Courts says,

17   well, actually that one doesn't serve the fundamental purposes

18   of economy, et cetera, et cetera, so even though up to that

19   point in time, the Supreme Court has loved arbitration, but

20   apparently not in the class action context.

21       Why would one say that this mass arbitration is

22   consistent with the FAA in the same way that -- in other words,

23   if the Supreme Court says that class arbitration is not

24   consistent with the goals of the FAA, why should this Court say

25   that mass arbitration is consistent with the goals of the FAA?

**UNITED STATES DISTRICT COURT**

```
 1          It seems to me that it's the same way that it's not for
 2     a class arbitration, it's not for a mass arbitration.
 3          I don't expect to you give me an answer now, but I will
 4     give both sides -- what I will allow both sides to do is give
 5     me five additional pages on the topics that I have raised
 6     today, and I will consider that, but I'm only giving you five
 7     pages.
 8          And you guys could give me that in, let's say, I will
 9     give you two weeks, because I have thrown a lot of stuff at
10     you, and I want you to be concise.
11          Part of what I want from plaintiff's counsel is to focus
12     what are the substantive unconscionability aspects -- the most
13     important ones that you are focusing on.
14          MR. POSTMAN:  Thank you, Your Honor.
15          THE COURT:  You will go back to your clients and
16     tell them they should settle this case.
17          Thank you.
18          Two weeks from today's date would be the 27th of July,
19     so I will put this matter back on calendar for the 10th of
20     August, and that will be at 8:30.
21          MR. POSTMAN:  Thank you.
22          MR. O'MARA:  Thank you.
23          (The proceedings concluded at 10:10 a.m.)
24                           *  *  *
25
```

UNITED STATES DISTRICT COURT

1                    **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES    )
                                        )
4    STATE OF CALIFORNIA      )

5

6              I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date: 14th day of July, 2023.

17

18

19                              /s/ TERRI A. HOURIGAN

20        _____
                  TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
21                        Federal Court Reporter

22

23

24

25

## /

**/s** [1] - 22:19

## 1

**1** [1] - 6:11
**1,000** [2] - 15:11, 16:7
**10,000** [2] - 16:7, 16:14
**10007** [1] - 2:18
**10:10** [1] - 21:23
**10th** [2] - 2:6, 21:19
**1100** [1] - 2:9
**12th** [1] - 2:9
**13** [2] - 1:13, 3:1
**14th** [1] - 22:16
**15** [1] - 10:4
**175** [1] - 2:18

## 2

**2000** [1] - 2:14
**20005** [1] - 2:9
**2019** [1] - 6:21
**2023** [3] - 1:13, 3:1, 22:16
**213** [1] - 1:23
**22-047-GW** [1] - 1:7
**27th** [1] - 21:18
**28** [1] - 22:9

## 3

**3** [2] - 2:17, 5:13
**350** [1] - 1:22
**3838** [2] - 1:21, 22:20

## 4

**4311** [1] - 1:22

## 5

**505** [1] - 2:14

## 7

**753** [1] - 22:9

## 8

**865** [1] - 2:6
**894-2849** [1] - 1:23
**8:30** [3] - 1:14, 3:2, 21:20

## 9

**90012** [1] - 1:23
**90017** [1] - 2:6
**94111** [1] - 2:15

## A

**a.m** [3] - 1:14, 3:2, 21:23
**able** [1] - 7:25
**above-entitled** [1] - 22:12
**absolutely** [1] - 20:10
**abuses** [1] - 7:18
**according** [1] - 14:6
**account** [2] - 10:23
**Act** [2] - 19:5, 19:7
**action** [7] - 13:11, 13:19, 14:1, 14:2, 14:19, 16:1, 20:20
**actions** [3] - 13:7, 14:17, 14:22
**add** [2] - 6:9, 19:10
**added** [2] - 6:10, 10:8
**additional** [1] - 21:5
**addressed** [1] - 18:19
**adequate** [1] - 7:12
**administrative** [1] - 7:15
**advantageous** [1] - 7:14
**advertised** [1] - 15:21
**affect** [1] - 12:23
**affectation** [1] - 11:15
**ago** [1] - 13:6
**agree** [10] - 3:22, 4:20, 5:20, 6:14, 6:23, 10:19, 11:20, 15:17, 17:12, 18:12
**agreed** [2] - 12:14, 17:7
**al** [1] - 1:5
**ALICIA** [1] - 2:13
**allegations** [1] - 20:6
**allow** [1] - 21:4
**alone** [1] - 16:17
**analysis** [5] - 3:23, 4:13, 4:18, 19:3, 19:4
**ANGELES** [4] - 1:14, 1:23, 3:1, 22:3
**Angeles** [1] - 2:6
**animus** [1] - 4:18
**answer** [1] - 21:3
**anti** [2] - 4:18, 14:11

**anti-arbitration** [2] - 4:18, 14:11
**antithetical** [1] - 4:15
**antitrust** [1] - 16:20
**apologize** [1] - 18:16
**appeal** [1] - 14:7
**appearances** [1] - 3:7
**APPEARANCES** [1] - 2:1
**applicable** [1] - 4:7
**applied** [3] - 7:8, 13:15, 19:8
**applies** [2] - 4:1, 19:1
**apply** [3] - 12:3, 18:22, 19:2
**ARBITRATION** [1] - 1:13
**arbitration** [31] - 3:15, 3:19, 4:15, 4:18, 7:15, 8:4, 9:10, 9:11, 9:12, 12:23, 13:4, 13:7, 13:9, 13:16, 13:21, 14:1, 14:11, 14:12, 15:1, 15:6, 16:10, 20:8, 20:14, 20:16, 20:19, 20:21, 20:23, 20:25, 21:2
**Arbitration** [2] - 19:5, 19:7
**arbitrations** [4] - 9:8, 14:23, 15:9, 20:1
**arbitrator** [1] - 19:23
**arbitrators** [3] - 9:4, 9:5, 16:14
**area** [2] - 9:19, 14:5
**argue** [1] - 7:25
**argument** [4] - 5:4, 8:11, 12:20, 13:15
**articles** [1] - 15:24
**ascent** [4] - 5:2, 5:4, 10:13, 10:22
**ascented** [1] - 12:2
**aspect** [1] - 10:9
**aspects** [1] - 21:12
**assume** [1] - 5:4
**assuming** [2] - 16:21
**attach** [1] - 6:22
**attempt** [1] - 16:18
**attempting** [1] - 14:2
**Attorney** [3] - 2:8, 2:14, 2:17
**Attorneys** [1] - 2:5
**August** [1] - 21:20
**available** [2] - 11:4, 12:2
**Avenue** [1] - 2:9
**aware** [1] - 20:3

## B

**bad** [2] - 7:4, 14:8
**bar** [2] - 6:13, 6:14
**bargains** [1] - 7:5
**basis** [1] - 16:24
**batched** [1] - 12:22
**Bellwether** [1] - 15:1
**Bellwether's** [1] - 15:2
**Bellwethers** [1] - 18:6
**beneficial** [1] - 14:5
**benefit** [1] - 14:5
**besmirch** [1] - 17:8
**between** [1] - 17:24
**bind** [1] - 14:2
**body** [2] - 9:10, 9:11
**boggles** [1] - 9:11
**bought** [2] - 8:12, 8:16
**bound** [1] - 19:24
**box** [1] - 12:13
**brief** [4] - 5:13, 6:11, 19:15, 19:18
**briefing** [3] - 17:16, 19:21, 19:22
**briefs** [1] - 19:11
**bring** [1] - 20:9
**broadly** [2] - 19:1, 19:8
**broke** [1] - 14:13
**brought** [2] - 20:6, 20:11
**browser** [2] - 10:15, 11:5
**BY** [4] - 2:4, 2:8, 2:12, 2:16

## C

**calendar** [1] - 21:19
**CALIFORNIA** [5] - 1:2, 1:14, 1:23, 3:1, 22:4
**California** [10] - 2:6, 2:15, 4:11, 5:18, 5:24, 6:21, 6:25, 7:16, 18:25, 22:8
**callous** [1] - 6:13
**camel's** [1] - 14:13
**case** [18] - 5:12, 5:13, 6:11, 6:20, 6:21, 7:8, 7:13, 7:16, 13:15, 13:16, 14:8, 14:12, 18:17, 18:23, 19:13, 20:14, 21:16
**Case** [1] - 1:7
**cases** [6] - 6:16, 16:22, 19:2, 19:9,

**19:19, 20:9**
**casting** [1] - 17:10
**causing** [1] - 18:17
**CCRR** [1] - 1:21
**Center** [1] - 2:17
**central** [1] - 7:3
**Central** [1] - 22:8
**CENTRAL** [2] - 1:2
**certain** [4] - 4:9, 6:16, 7:23, 11:2
**certainly** [1] - 9:3
**CERTIFICATE** [1] - 22:1
**certify** [1] - 22:8
**cetera** [5] - 4:10, 14:11, 20:18
**change** [6] - 8:4, 8:22, 9:4, 9:10, 9:11, 10:5
**changed** [1] - 9:19
**changes** [6] - 8:7, 8:8, 11:17, 11:18, 11:20
**changing** [1] - 9:10
**cheap** [1] - 9:15
**checked** [1] - 12:13
**choice** [3] - 9:4, 9:5, 14:4
**choices** [1] - 14:3
**choosing** [1] - 15:1
**claim** [1] - 16:20
**claims** [7] - 15:3, 16:3, 16:8, 16:16, 16:18, 16:19, 17:15
**class** [15] - 13:7, 13:8, 13:11, 13:19, 14:1, 14:2, 14:17, 14:19, 16:1, 20:7, 20:14, 20:16, 20:20, 20:23, 21:2
**cleanest** [1] - 19:17
**clear** [5] - 5:12, 12:11, 17:5, 18:9, 19:19
**clearly** [1] - 8:16
**client** [1] - 7:22
**clients** [4] - 7:25, 15:20, 15:22, 21:15
**close** [1] - 20:12
**Code** [1] - 22:9
**collateral** [1] - 18:5
**collectively** [1] - 17:1
**companies** [2] - 13:8, 13:22
**compare** [1] - 10:6
**COMPEL** [1] - 1:13
**compel** [2] - 3:15, 20:7
**complained** [1] - 12:9

**completely** [1] - 6:23
**concept** [1] - 4:15
**concern** [1] - 19:13
**concerned** [2] - 7:4, 18:6
**concerning** [1] - 17:20
**concise** [1] - 21:10
**concluded** [1] - 21:23
**conference** [1] - 22:13
**conflict** [3] - 10:7, 19:4, 19:6
**conformance** [1] - 22:13
**confusion** [1] - 15:5
**conscience** [19] - 3:25, 4:5, 5:6, 5:17, 5:22, 5:25, 6:1, 6:4, 6:6, 6:8, 6:10, 6:12, 6:17, 7:2, 7:7, 7:13, 7:17, 8:8, 8:10
**conscious** [1] - 5:23
**consent** [1] - 10:11
**consequences** [1] - 16:3
**consider** [2] - 9:3, 21:6
**considers** [1] - 3:20
**consistent** [4] - 19:6, 20:22, 20:24, 20:25
**constantly** [1] - 11:13
**constitutes** [1] - 4:16
**consumer** [1] - 20:7
**consumers** [3] - 13:21, 14:2, 14:5
**context** [3] - 14:21, 15:25, 20:20
**continuation** [1] - 3:14
**continuing** [1] - 11:19
**contract** [4] - 14:18, 17:23, 18:10, 19:8
**control** [1] - 15:2
**corporations** [1] - 15:10
**correct** [1] - 22:10
**counsel** [8] - 3:8, 15:16, 16:6, 16:25, 17:19, 18:11, 20:13, 21:11
**COUNSEL** [1] - 2:1
**COUNTY** [1] - 22:3
**course** [1] - 19:15
**court** [2] - 16:18, 16:19
**Court** [24] - 3:18,

4:10, 4:11, 5:18, 5:19, 6:21, 6:25, 7:17, 8:1, 12:12, 12:22, 13:12, 13:14, 13:18, 14:18, 15:7, 17:20, 20:19, 20:23, 20:24, 22:7, 22:20
**COURT** [31] - 1:1, 1:22, 3:5, 3:14, 4:2, 4:6, 4:23, 5:18, 5:23, 6:14, 7:20, 10:17, 11:1, 11:7, 11:13, 11:21, 12:6, 12:15, 14:20, 14:25, 15:16, 15:23, 16:15, 17:7, 17:22, 18:3, 18:11, 18:16, 18:20, 20:12, 21:15
**Court's** [3] - 3:23, 13:13, 20:13
**Courts** [5] - 5:24, 8:7, 9:7, 19:7, 20:16
**created** [1] - 17:23
**creation** [2] - 10:23, 16:5
**criteria** [1] - 6:17
**CRR** [1] - 22:20
**crystal** [2] - 17:5, 19:19
**CSR** [2] - 1:21, 22:20
**cutoff** [2] - 9:2, 9:14
**cuts** [1] - 15:11
**CV** [1] - 1:7

### D

**D.C** [1] - 2:9
**date** [3] - 10:1, 11:20, 21:18
**Date** [1] - 22:16
**deal** [1] - 16:13
**death** [1] - 15:11
**decide** [1] - 14:11
**decided** [3] - 3:16, 5:3, 6:21
**decision** [1] - 9:6
**deem** [1] - 7:13
**DEFENDANT** [1] - 2:11
**defendant** [6] - 8:13, 10:1, 14:7, 17:3, 18:10, 20:7
**defendant's** [2] - 16:5, 17:6
**Defendants** [1] - 1:9
**defendants** [7] - 3:13, 13:2, 13:5, 15:10, 16:1, 17:25, 20:4
**DEFENDANTS'** [1] -

1:13
**defense** [2] - 12:20, 20:12
**define** [2] - 6:7, 6:23
**defined** [2] - 5:23, 6:25
**definition** [1] - 9:11
**degree** [1] - 5:14
**describe** [2] - 6:1, 6:12
**described** [1] - 15:19
**determining** [1] - 4:16
**developed** [1] - 15:19
**different** [5] - 7:1, 7:2, 10:22, 13:24, 16:10
**disadvantageous** [1] - 6:5
**disagree** [1] - 15:18
**discussion** [1] - 20:13
**dismal** [1] - 10:9
**dispute** [2] - 18:3, 18:4
**DISTRICT** [3] - 1:1, 1:2, 1:3
**District** [2] - 22:7, 22:8
**DIVISION** [1] - 1:2
**doctrine** [2] - 7:4, 15:19
**done** [7] - 8:6, 9:12, 9:16, 9:23, 9:24, 13:5
**DRYE** [1] - 2:16
**due** [2] - 13:3, 19:25

### E

**easily** [1] - 9:22
**economic** [2] - 16:15, 17:3
**economically** [2] - 16:24, 17:2
**economy** [1] - 20:18
**effect** [1] - 18:5
**effective** [1] - 11:18
**egregious** [1] - 19:25
**elements** [1] - 6:2
**EMANUEL** [1] - 2:4
**Emanuel** [1] - 3:11
**end** [1] - 14:16
**enforce** [1] - 11:8
**enforced** [1] - 11:6
**entered** [1] - 17:24
**entertain** [1] - 16:19
**ENTERTAINMENT** [1] - 1:8
**entitled** [1] - 22:12

**Era** [11] - 8:5, 8:12, 16:11, 17:5, 17:8, 17:10, 17:23, 17:24, 17:25, 18:9
**Era's** [1] - 19:22
**essence** [1] - 13:25
**essentially** [1] - 20:8
**estoppel** [1] - 18:5
**et** [6] - 1:5, 4:10, 14:11, 20:18
**evidence** [2] - 8:15, 8:19
**exactly** [2] - 3:17, 14:20
**example** [5] - 8:1, 8:2, 9:4, 11:3, 17:18
**exceedingly** [1] - 6:13
**expect** [1] - 21:3
**extent** [3] - 5:24, 7:24
**extremely** [1] - 8:22

### F

**FAA** [5] - 4:9, 4:12, 20:22, 20:24, 20:25
**facing** [1] - 20:4
**fact** [4] - 8:6, 9:9, 14:17, 15:25
**facts** [2] - 7:16, 12:11
**fair** [2] - 19:7, 19:12
**fairly** [3] - 6:5, 8:8
**far** [1] - 8:18
**fashioned** [1] - 7:4
**favorable** [1] - 7:5
**FEDERAL** [1] - 1:22
**Federal** [4] - 19:5, 19:7, 22:6, 22:20
**few** [1] - 14:14
**fiction** [1] - 9:7
**Figueroa** [1] - 2:6
**file** [3] - 13:21, 16:7
**filed** [5] - 15:3, 15:9, 17:15, 19:19, 20:2
**filing** [1] - 14:22
**firm** [7] - 15:18, 16:8, 17:15, 20:2, 20:8, 20:11
**firms** [3] - 15:18, 19:19, 20:4
**FIRST** [1] - 1:22
**first** [4] - 3:8, 8:3, 10:12, 11:2
**five** [2] - 21:5, 21:6
**Floor** [2] - 2:6, 2:9
**focus** [2] - 19:17, 21:11
**focused** [1] - 19:16

**focusing** [2] - 7:22, 21:13
**followed** [1] - 18:7
**FOR** [2] - 2:3, 2:11
**foregoing** [1] - 22:10
**format** [1] - 22:12
**former** [1] - 10:6
**formulations** [1] - 7:1
**four** [2] - 19:11, 20:4
**Francisco** [1] - 2:15
**frankly** [1] - 4:7
**fraud** [1] - 20:7
**friend** [3] - 6:22, 11:12, 11:14
**front** [2] - 14:16, 16:13
**fundamental** [1] - 20:17
**fundamentally** [1] - 15:14

### G

**GEORGE** [1] - 1:3
**goals** [2] - 20:24, 20:25
**great** [1] - 6:20
**Greenwich** [2] - 2:18
**grounds** [2] - 18:22, 19:15
**group** [1] - 15:10
**guess** [3] - 3:19, 9:24, 10:1
**GUSHMAN** [1] - 2:13
**Gushman** [1] - 3:13
**guys** [1] - 21:8

### H

**hard** [1] - 20:5
**hardly** [1] - 7:18
**harsh** [1] - 6:13
**headaches** [1] - 18:17
**heard** [2] - 17:21, 19:24
**hearing** [1] - 19:16
**heavily** [1] - 15:19
**Heckman** [1] - 3:5
**HECKMAN** [1] - 1:5
**held** [1] - 22:11
**hereby** [1] - 22:8
**hidden** [1] - 4:18
**high** [3] - 5:7, 6:13, 6:14
**Honor** [25] - 3:9, 3:12, 3:24, 4:3, 4:21, 4:22, 5:11, 5:20, 6:9, 6:19, 10:14, 11:5,

11:11, 12:4, 12:11, 14:14, 14:24, 15:4, 16:4, 17:4, 17:12, 17:18, 18:8, 21:14
**Honor's** [1] - 15:7
**HONORABLE** [1] - 1:3
**hot** [1] - 20:15
**HOURIGAN** [4] - 1:21, 22:6, 22:19, 22:20
**human** [1] - 7:18

**I**

**idea** [1] - 7:3
**identical** [2] - 16:8, 17:14
**immediately** [1] - 11:19
**important** [6] - 8:22, 9:1, 14:16, 15:5, 16:9, 21:13
**impossible** [1] - 16:23
**INC** [1] - 1:8
**including** [1] - 7:2
**indicate** [1] - 4:11
**indicated** [1] - 8:23
**indication** [1] - 10:5
**individual** [4] - 13:20, 15:9, 16:3, 16:24
**individually** [1] - 14:23
**insofar** [3] - 4:15, 8:11, 18:5
**interrupt** [1] - 18:18
**involved** [3] - 6:2, 15:19, 20:2
**issue** [12] - 3:16, 3:18, 5:12, 5:15, 9:22, 13:1, 13:3, 13:6, 13:7, 18:5, 18:21
**issues** [2] - 12:7, 14:15
**items** [1] - 7:21
**itself** [2] - 7:8, 13:4

**J**

**JAMS** [3] - 8:5, 14:21, 16:13
**joinder** [1] - 15:12
**journals** [1] - 15:24
**JOVAIS** [1] - 2:13
**Jovais** [1] - 3:13
**JUDGE** [1] - 1:3
**judicial** [1] - 22:13
**JULY** [1] - 3:1

**July** [3] - 1:13, 21:18, 22:16

**K**

**KELLER** [1] - 2:7
**Keller** [1] - 3:10
**KELLEY** [1] - 2:16
**Kevin** [1] - 3:11
**KEVIN** [1] - 2:4
**kind** [2] - 14:1, 20:15

**L**

**Lamps** [1] - 20:13
**large** [2] - 5:7, 15:20
**last** [1] - 18:7
**LATHAM** [1] - 2:12
**law** [12] - 4:7, 4:8, 4:13, 4:14, 4:19, 5:12, 5:24, 6:18, 14:8, 18:25, 19:1, 19:13
**Law** [4] - 2:5, 2:8, 2:14, 2:17
**lead** [1] - 17:19
**legal** [1] - 15:24
**less** [2] - 5:8, 13:3
**level** [2] - 5:14, 15:5
**Lisa** [1] - 3:13
**listed** [1] - 6:25
**litigate** [1] - 16:22
**Live** [3] - 3:6, 19:11, 19:20
**live** [1] - 15:11
**LIVE** [1] - 1:8
**LLC** [1] - 2:7
**LLP** [2] - 2:12, 2:16
**look** [4] - 11:3, 12:1, 16:11, 19:2
**LOS** [4] - 1:14, 1:23, 3:1, 22:3
**Los** [1] - 2:6
**losing** [1] - 14:6
**loved** [1] - 20:19
**low** [1] - 7:10
**lowest** [1] - 5:21

**M**

**major** [3] - 9:4, 9:21, 13:1
**manifested** [2] - 10:11, 10:13
**mass** [9] - 12:23, 13:25, 15:1, 15:6, 15:12, 20:1, 20:21, 20:25, 21:2
**matter** [7] - 3:5, 3:17, 4:7, 5:14, 18:24, 21:19, 22:12

**McKee** [1] - 6:11
**mean** [5] - 6:6, 6:15, 13:6, 16:12, 18:18
**meaningless** [2] - 6:7, 10:2
**means** [1] - 7:7
**meant** [1] - 14:21
**mediation** [1] - 17:11
**meet** [1] - 6:15
**met** [1] - 7:17
**might** [4] - 8:23, 13:1, 13:3, 16:8
**mind** [2] - 8:24, 9:15
**monstrously** [1] - 6:12
**Montgomery** [1] - 2:14
**morning** [2] - 3:9, 3:12
**most** [2] - 16:16, 21:12
**MOTION** [1] - 1:13
**motion** [2] - 3:15, 12:5
**MR** [33] - 3:9, 3:12, 3:24, 4:3, 4:21, 4:22, 5:11, 5:20, 6:9, 6:19, 10:14, 10:21, 11:5, 11:11, 11:15, 12:4, 12:11, 14:14, 14:24, 15:4, 16:4, 17:4, 17:12, 18:2, 18:7, 18:15, 21:22
**Oberstein** [1] - 14:11
**objection** [1] - 19:11
**obviously** [4] - 8:23, 4:14, 8:16, 17:20
**OF** [6] - 1:2, 1:12, 2:1, 22:1, 22:3, 22:4
**Official** [1] - 22:6
**OFFICIAL** [2] - 1:22, 22:1
**old** [1] - 7:4
**old-fashioned** [1] - 7:4
**once** [1] - 15:13
**one** [16] - 4:25, 8:1, 8:2, 9:3, 10:5, 12:15, 15:4, 15:8, 18:5, 18:21, 19:16, 19:17, 20:2, 20:11, 20:17, 20:21
**one/two** [1] - 18:14
**ones** [2] - 7:2, 21:13
**online** [1] - 18:9
**oOo** [1] - 3:3
**opportunity** [2] - 17:21, 19:24
**oppose** [1] - 17:3
**opposed** [1] - 7:15
**originally** [2] - 13:6, 17:7
**otherwise** [1] - 5:8
**OTO** [2] - 5:13, 6:20
**overcome** [1] - 9:22

**N**

**N.W** [1] - 2:9
**named** [1] - 12:16
**Nation** [2] - 3:6, 19:11
**NATION** [1] - 1:8
**Nation's** [1] - 19:21
**nature** [1] - 3:22
**necessarily** [4] - 8:23, 11:2, 14:25, 18:22
**need** [3] - 6:23, 7:10, 15:12
**never** [2] - 16:22, 19:11
**new** [4] - 10:6, 10:8, 12:2, 12:3
**New** [14] - 2:18, 8:5,

8:12, 16:11, 17:5, 17:8, 17:10, 17:23, 17:24, 17:25, 18:9, 19:22
**NO** [2] - 1:21, 22:20
**normally** [1] - 20:15
**note** [1] - 19:12
**noted** [1] - 19:14
**nothing** [1] - 17:5
**notice** [10] - 8:25, 9:1, 9:9, 9:13, 9:17, 10:3, 10:9, 10:18, 19:24
**number** [3] - 15:20, 16:8, 16:10

**O**

**O'Mara** [2] - 3:12, 15:21
**O'MARA** [23] - 2:12, 3:12, 3:24, 4:3, 4:21, 5:11, 5:20, 6:9, 10:14, 10:21, 11:5, 12:4, 12:11, 14:14, 14:24, 15:4, 16:4, 17:4, 17:12, 18:2, 18:7, 18:15, 21:22

**own** [2] - 19:21, 19:22

**P**

**page** [7] - 5:13, 6:11, 9:19, 10:13, 10:18, 11:2, 22:12
**pages** [3] - 10:4, 21:5, 21:7
**paradigm** [1] - 16:7
**part** [2] - 18:7, 21:11
**particular** [2] - 3:17, 9:19
**party** [2] - 7:6, 8:11
**pass** [1] - 7:2
**past** [3] - 10:12, 10:18, 11:2
**people** [3] - 9:17, 12:24, 19:23
**person** [2] - 6:15, 10:12
**phenomenon** [3] - 15:15, 16:5, 17:14
**phrase** [3] - 6:10, 6:23, 11:13
**plain** [1] - 19:20
**PLAINTIFF** [1] - 2:3
**plaintiff** [1] - 16:25
**plaintiff's** [3] - 3:7, 15:16, 16:6, 18:11, 21:11
**Plaintiffs** [1] - 1:6
**plaintiffs** [11] - 3:10, 8:14, 8:18, 12:12, 12:13, 12:16, 14:18, 14:22, 17:8, 18:23
**play** [1] - 12:21
**Plus** [1] - 20:14
**point** [17] - 3:23, 3:25, 5:11, 5:12, 5:14, 5:21, 6:20, 7:3, 9:2, 9:14, 15:4, 15:21, 16:5, 17:13, 17:16, 17:20, 20:19
**pointless** [1] - 10:3
**points** [3] - 10:22, 18:19, 19:10
**policy** [2] - 19:2, 19:4
**pose** [1] - 8:9
**positions** [1] - 16:20
**possibly** [3] - 5:1, 5:2, 5:21
**posted** [1] - 11:19
**Postman** [2] - 3:10
**POSTMAN** [13] - 2:7, 2:8, 3:9, 4:22, 6:19, 11:11, 11:15, 15:18, 18:13, 18:18, 18:21,

21:14, 21:21
**potentially** [1] - 9:18
**powerful** [1] - 7:6
**precedent** [1] - 17:19
**preempt** [1] - 4:12
**present** [1] - 5:9
**presume** [4] - 3:22, 4:7, 4:20, 10:20
**previously** [1] - 8:5
**problem** [8] - 4:23, 8:24, 10:10, 12:22, 12:25, 13:23, 14:9, 16:15
**problematic** [1] - 11:21
**problems** [3] - 8:2, 12:10, 12:16
**procedural** [6] - 3:20, 7:9, 7:19, 8:2, 8:17, 18:1
**procedurally** [7] - 4:17, 4:23, 5:1, 5:5, 5:9, 5:15, 11:22
**procedures** [1] - 7:14
**proceeding** [1] - 7:15
**proceedings** [2] - 21:23, 22:11
**process** [4] - 13:2, 13:3, 16:6, 19:25
**promulgated** [1] - 17:25
**propriety** [1] - 9:7
**provided** [6] - 8:14, 8:19, 9:13, 10:19, 11:8, 11:9
**provider** [1] - 8:4
**providers** [1] - 16:10
**public** [3] - 19:2, 19:4, 20:6
**published** [1] - 18:9
**purchase** [8] - 10:24, 11:3, 11:4, 11:25, 12:13, 12:17, 12:18
**purchases** [1] - 12:3
**purposes** [2] - 5:4, 20:17
**pursuant** [1] - 22:9
**pursue** [1] - 16:18
**put** [1] - 21:19

**Q**

**qualify** [1] - 8:16
**questions** [1] - 17:18
**QUINN** [1] - 2:4
**Quinn** [1] - 3:11
**quite** [1] - 10:14
**quote** [1] - 7:3

**R**

**raised** [3] - 17:18, 19:11, 21:5
**raises** [1] - 14:14
**raising** [1] - 12:20
**Ramirez** [1] - 20:1
**read** [2] - 7:16, 11:11
**real** [1] - 9:9
**reality** [1] - 16:16
**really** [5] - 9:3, 9:4, 13:14, 13:23, 14:10
**Realtime** [1] - 22:6
**reason** [4] - 11:22, 16:24, 17:1, 18:24
**reasonably** [1] - 7:10
**reasoning** [1] - 13:14
**recently** [2] - 6:21, 10:25
**recognition** [1] - 6:4
**recognize** [1] - 14:16
**referenced** [1] - 6:3
**referred** [1] - 18:19
**regards** [1] - 13:4
**regulations** [2] - 18:1, 22:13
**relatively** [2] - 5:8, 7:14
**repeatedly** [1] - 11:12
**reply** [3] - 5:13, 6:11, 19:18
**reported** [1] - 22:11
**REPORTER** [2] - 1:22, 22:1
**Reporter** [2] - 22:7, 22:20
**REPORTER'S** [1] - 1:12
**representative** [1] - 18:23
**require** [1] - 14:12
**requirements** [1] - 4:10
**resolve** [1] - 15:12
**resolved** [1] - 14:23
**retained** [1] - 15:20
**retroactive** [1] - 11:24
**rights** [1] - 7:18
**Robin** [1] - 3:13
**ROBIN** [1] - 2:13
**ROOM** [1] - 1:22
**RPR** [1] - 22:20
**rules** [6] - 16:13, 17:15, 17:17, 18:1, 18:9, 19:20

**S**

**San** [1] - 2:15
**SANDRA** [1] - 2:16
**scale** [4] - 3:19, 4:7, 5:19, 5:21
**scheme** [1] - 14:6
**screwed** [1] - 13:24
**SEARS** [1] - 2:5
**Sears** [1] - 3:11
**Section** [1] - 22:9
**see** [5] - 9:19, 10:7, 11:3, 12:1, 20:5
**selected** [1] - 8:12
**sense** [5] - 10:2, 17:2, 17:3, 17:15, 17:19
**sent** [1] - 19:20
**separate** [1] - 14:22
**serve** [1] - 20:17
**set** [1] - 14:6
**settle** [1] - 21:16
**setup** [1] - 11:22
**several** [3] - 7:1, 20:2, 20:3
**shed** [1] - 12:8
**shock** [14] - 3:25, 4:5, 5:6, 5:17, 5:22, 5:23, 5:25, 6:3, 6:6, 6:8, 6:10, 7:2, 7:17
**shocking** [6] - 5:8, 6:12, 6:16, 7:13, 8:8, 8:9
**shocks** [1] - 7:7
**showing** [1] - 17:11
**sides** [3] - 3:22, 4:20, 9:6, 21:4
**sign** [1] - 10:23
**sign-in** [1] - 10:23
**signal** [1] - 20:8
**signed** [3] - 14:18, 18:10, 18:13
**significance** [1] - 6:22
**signing** [1] - 15:20
**similar** [1] - 6:17
**simple** [1] - 7:4
**simplest** [1] - 19:17
**simply** [2] - 7:3, 20:1
**site** [8] - 9:18, 10:12, 10:16, 10:20, 11:9, 11:19, 12:1, 12:19
**situation** [4] - 4:24, 5:5, 5:9, 8:20
**situations** [1] - 6:16
**SKOT** [1] - 1:5
**sliding** [4] - 3:19, 4:6, 5:19, 5:20
**small** [2] - 16:18,

16:19
**somewhat** [1] - 11:21
**sorry** [2] - 11:15, 18:18
**sort** [6] - 8:13, 9:17, 13:14, 15:8, 15:12, 17:10
**sounds** [1] - 15:7
**South** [1] - 2:6
**specific** [3] - 6:20, 12:12, 12:13
**standard** [3] - 4:5, 5:16, 7:17
**starting** [1] - 3:7
**STATE** [1] - 22:4
**state** [5] - 4:8, 4:13, 4:14, 4:18, 5:24
**statement** [3] - 13:13, 14:14, 15:7
**statements** [2] - 19:21, 19:22
**STATES** [1] - 1:1
**States** [3] - 22:7, 22:9, 22:14
**stenographically** [1] - 22:11
**step** [1] - 5:2
**still** [2] - 5:16, 14:24
**stop** [1] - 11:16
**straw** [1] - 14:13
**Street** [3] - 2:6, 2:14, 2:18
**STREET** [1] - 1:22
**striking** [1] - 7:8
**stuff** [1] - 21:9
**subsequent** [2] - 12:18, 14:2
**subsequently** [1] - 15:3
**substantial** [3] - 4:1, 6:5, 8:25
**substantive** [17] - 3:20, 4:4, 5:6, 5:16, 5:22, 7:10, 7:12, 7:20, 7:21, 8:8, 8:17, 8:21, 13:1, 18:25, 19:14, 21:12
**substantively** [1] - 4:17
**succeeded** [2] - 17:9, 17:11
**successive** [1] - 14:23
**suffer** [1] - 16:2
**sufficient** [3] - 5:4, 8:15, 8:19
**suggests** [1] - 19:13
**Suite** [1] - 2:14
**SULLIVAN** [1] - 2:4

**supersede** [1] - 4:12
**supplemental** [6] - 5:13, 6:11, 17:16, 19:18, 19:21, 19:22
**supposed** [3] - 9:5, 10:5, 11:10
**supposedly** [5] - 9:5, 9:24, 10:11, 10:13, 12:2
**Supreme** [16] - 4:10, 4:11, 5:18, 5:19, 6:21, 6:25, 7:17, 13:12, 13:13, 13:14, 13:18, 20:13, 20:16, 20:19, 20:23

**T**

**talismanic** [1] - 6:22
**tentative** [1] - 3:16
**term** [4] - 5:25, 6:6, 10:6
**terms** [14] - 6:1, 7:5, 8:2, 9:19, 9:20, 9:25, 10:3, 10:19, 11:11, 11:17, 12:3, 12:14, 14:16, 17:6
**TERRI** [4] - 1:21, 22:6, 22:19, 22:20
**Teruya** [1] - 3:11
**TERUYA** [1] - 2:4
**text** [1] - 19:20
**THE** [31] - 2:3, 2:11, 3:5, 3:14, 4:2, 4:6, 4:23, 5:18, 5:23, 6:14, 7:20, 10:17, 11:1, 11:7, 11:13, 11:21, 12:6, 12:15, 14:20, 14:25, 15:16, 15:23, 16:15, 17:7, 17:22, 18:3, 18:11, 18:16, 18:20, 20:12, 21:15
**thousand** [1] - 16:14
**thousands** [2] - 13:21, 16:3
**three** [2] - 10:21, 20:4
**thrown** [1] - 21:9
**THURSDAY** [1] - 3:1
**Thursday** [1] - 1:13
**Tim** [1] - 3:12
**TIMOTHY** [1] - 2:12
**Title** [1] - 22:9
**TO** [1] - 1:13
**today** [1] - 21:6
**today's** [1] - 21:18
**together** [1] - 15:10
**topics** [1] - 21:5
**totally** [1] - 19:12
**Trade** [1] - 2:17

transcript [2] - 22:10, 22:12
TRANSCRIPT [1] - 1:12
tried [1] - 17:8
trot [1] - 20:15
true [6] - 14:24, 14:25, 15:23, 16:4, 20:10, 22:10
trying [1] - 17:13
two [3] - 18:19, 21:9, 21:18
types [2] - 6:7, 16:22

## U

U.S [3] - 1:3, 4:11, 5:19
unconscionability [23] - 3:20, 3:21, 4:1, 4:4, 4:12, 4:16, 5:6, 5:16, 5:22, 7:1, 7:3, 7:9, 7:11, 7:12, 7:21, 7:22, 8:3, 8:17, 18:22, 18:25, 19:1, 19:14, 21:12
unconscionable [6] - 4:24, 4:25, 5:5, 5:10, 5:15, 11:22
under [7] - 3:25, 4:4, 4:13, 4:18, 5:21, 5:24, 19:20
unilateral [2] - 8:4, 8:21
unilaterally [2] - 8:6, 8:7
United [3] - 22:7, 22:9, 22:14
UNITED [1] - 1:1
unless [2] - 6:7, 16:17
unreasonably [1] - 7:5
up [5] - 13:17, 14:6, 15:20, 16:6, 20:18
updated [2] - 9:25, 10:3
URQUHART [1] - 2:4
utilizing [1] - 13:3

## V

various [2] - 15:24, 15:25
Vermont [1] - 2:9
versus [1] - 3:5
violation [1] - 19:25
vs [1] - 1:7

## W

waiver [2] - 13:11, 16:1
waivers [1] - 13:19
wants [1] - 20:9
Warren [1] - 3:9
WARREN [2] - 2:8, 2:16
Washington [1] - 2:9
WATKINS [1] - 2:12
weeks [2] - 21:9, 21:18
WEST [1] - 1:22
whereby [1] - 16:16
whorish [1] - 17:10
WILLIAM [1] - 2:5
wished [1] - 13:23
wonder [1] - 12:1
words [8] - 4:25, 10:15, 11:25, 12:25, 13:5, 14:9, 14:20, 20:22
World [1] - 2:17
worth [1] - 16:16
wrap [2] - 10:15, 11:6
written [1] - 17:17
WU [1] - 1:3

## Y

years [1] - 13:6
York [2] - 2:18

**UNITED STATES DISTRICT COURT**