LATHAM & WATKINS LLP
  Timothy L. O'Mara (Bar No. 212731)
    tim.o'mara@lw.com
  Sadik Huseny (Bar No. 224659)
    sadik.huseny@lw.com
  Andrew M. Gass (Bar No. 259694)
    andrew.gass@lw.com
  Kirsten M. Ferguson (Bar No. 252781)
    kirsten.ferguson@lw.com
  Alicia R. Jovais (Bar No. 296172)
    alicia.jovais@lw.com
  Robin L. Gushman (Bar No. 305048)
    robin.gushman@lw.com
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C.
and Live Nation Entertainment, Inc.*

# UNITED STATES DISTRICT COURT

# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>**DEFENDANTS' SECOND SUPPLEMENTAL BRIEF IN SUPPORT OF MOTION TO COMPEL ARBITRATION**<br><br>The Honorable George H. Wu<br><br>Hearing Date: August 10, 2023<br>Hearing Time: 8:30 a.m.<br>Courtroom: 9D, 9th Floor |

**TABLE OF CONTENTS**

I.   Procedural Unconscionability ...................................................................................... 1

II.  Substantive Unconscionability .................................................................................... 3

III. Severability .................................................................................................................. 5

# TABLE OF AUTHORITIES

*Ajzenman v. Comm'r of Baseball*,
  2020 WL 6031899 (C.D. Cal. Sept. 14, 2020) ............................................................ 2

*Dickey v. Ticketmaster*,
  2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ............................................................. 2

*Greenberg v. Amazon*,
  2021 WL 7448530 (N.D. Cal. May 7, 2021) ............................................................... 1

*In re Holl*,
  925 F.3d 1076 (9th Cir. 2019) ..................................................................................... 3

*Lamps Plus, Inc. v. Varela*,
  139 S. Ct. 1407 (2019) ................................................................................................ 5

*Lee v. Postmates Inc.*,
  2018 WL 6605659 (N.D. Cal. Dec. 17, 2018) ............................................................. 5

*Lee v. Ticketmaster*,
  2019 WL 9096442 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393
  (9th Cir. 2020) ............................................................................................................. 1

*McKee v. Audible*,
  2017 WL 4685039 (C.D. Cal. July 17, 2017) .............................................................. 1

*Oberstein v. Live Nation*,
  60 F.4th 505 (9th Cir. 2023) ........................................................................................ 3

*Oberstein v. Live Nation*,
  2021 WL 4772885 (C.D. Cal. Sept. 20, 2021) ............................................................. 2

*Serpa v. Cal. Sur.*,
  215 Cal. App. 4th 695 (2013) ...................................................................................... 3

*Weber v. Amazon*,
  2018 WL 6016975 (C.D. Cal. June 4, 2018) ............................................................... 1

*Wiseley v. Amazon*,
  709 F. App'x 862 (9th Cir. 2017) ................................................................................ 3

## I. Procedural Unconscionability

The fact that Defendants did not specifically notify consumers that the current Terms changed arbitration providers does not make them procedurally unconscionable. Multiple courts, <u>including this one</u>, have held that a company need not specifically notify consumers when it adds an arbitration clause, so long as the consumer before the court assented to the updated terms. *See Lee v. Ticketmaster*, 2019 WL 9096442, at *1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 817 F. App'x 393 (9th Cir. 2020) (plaintiff argued "that he could not have assented to arbitration, because when he first began using the website, the Ticketmaster terms did not include an arbitration clause, and Ticketmaster did not notify users when the terms were amended"; court enforced arbitration agreement because plaintiff "assented to terms that included an arbitration clause when purchasing tickets").[1] Changing a contract from one with no arbitration provision to one with a mandatory arbitration provision and class action waiver is a far more significant change than switching from one arbitration provider to another. If no specific notice is required for the former, then no specific notice is required for the latter. Indeed, if the Court denied the present motion because Defendants did not provide specific notice of the change in arbitration providers, that would be a significant change in the law. *See, e.g., Greenberg v. Amazon*, 2021 WL 7448530, at *6 (N.D. Cal. May 7, 2021) (rejecting plaintiffs' argument that "Amazon must provide a separate, additional communication of its unilateral addition of the arbitration provision to its COUs," because "the <u>standard</u> for apprising a person of a unilateral change to a contract is 'reasonable notice,'" and "[w]ith the reasonable notice standard in mind, … [plaintiffs] manifested their assent to [the updated] terms by clicking the 'Place your order' button") (emphasis added). Defendants followed existing case law, in particular *Lee*—a case affirmed by the

---

[1] *See also, e.g., Weber v. Amazon*, 2018 WL 6016975, at *6, *11 (C.D. Cal. June 4, 2018) (Wu, J.) (specific notice of adding arbitration clause not required; arbitration agreement enforceable because plaintiff assented to amended terms); *McKee v. Audible*, 2017 WL 4685039, at *11 n.7 (C.D. Cal. July 17, 2017) (Wu, J.) (same).

Ninth Circuit, involving the same Defendants and the same website—regarding the notice required (or more specifically not required) when a company amends its terms. Doing so was not procedurally unconscionable.

The fact that Defendants' websites contain a browsewrap notice at the bottom of most pages (which was true in *Lee*, *Dickey*, *Oberstein*, etc. too) is irrelevant. Whether a consumer who agreed to arbitrate at JAMS could somehow be bound to arbitrate at New Era simply because she browsed Defendants' websites after the Terms were updated is a hypothetical with no application to this case. Before Defendants updated the Terms to change arbitration providers, Defendants upgraded the assent at purchase from modified clickwrap (a simple notice above the action button) to full clickwrap (a checkbox). Now, to purchase tickets, consumers must affirmatively check a box stating: "**I have read and agree to the current Terms of Use**." There are four plaintiffs in this case: Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts. No other consumers are before the Court at this time. Heckman checked this clickwrap box—assenting to the current Terms selecting New Era—four times, buying 5 tickets in the process; Ponce checked this box five times, buying 10 tickets; Popp checked this box eight times, buying 12 tickets; and Roberts checked this box five times, buying 15 tickets. It is hard to imagine a case where the record of assent is as clear and unequivocal as the facts presently before the Court. This motion must be decided on those facts. And on those facts, holding that the Terms are highly procedurally unconscionable would be unprecedented.[2]

The fact that the Terms contain a unilateral modification provision also doesn't warrant a finding of unconscionability. That is a standard provision in online

---

[2] Furthermore, no court has found an arbitration agreement unenforceable where there was assent based on full or modified clickwrap, merely because a company also had browsewrap on its website. *See, e.g.*, *Dickey v. Ticketmaster*, 2019 WL 9096443, at *6-7 & n.3 (C.D. Cal. Mar. 12, 2019) (Wu, J.) (browsewrap irrelevant where plaintiff "assented to the TOU … when facing the Sign Up Screen"); *Ajzenman v. Comm'r of Baseball*, 2020 WL 6031899, at *3 (C.D. Cal. Sept. 14, 2020) (same).

contracts like this,[3] and it is well established that this language is not unconscionable because "implied in the unilateral right to modify is the accompanying obligation to do so upon reasonable and fair notice." *Serpa v. Cal. Sur.*, 215 Cal. App. 4th 695, 708 (2013); *see also Wiseley v. Amazon*, 709 F. App'x 862, 864 (9th Cir. 2017). Again, the notice provided here—a checkbox stating that the user has read and agrees to the current Terms—is "reasonable and fair" as a matter of law. *See Oberstein v. Live Nation*, 60 F.4th 505, 512-13 (9th Cir. 2023) (courts "routinely" enforce clickwrap, where "users must check a box explicitly stating 'I agree' in order to proceed"); *In re Holl*, 925 F.3d 1076, 1084 (9th Cir. 2019) ("no question" that plaintiff agreed to the terms where "[h]e checked a box acknowledging as much").

## II. Substantive Unconscionability

The Court has questioned whether New Era's Rules create a form of "class" preclusion which deprives individual claimants of representation and a right to be heard and, relatedly, whether the switch from JAMS to New Era makes it impossible for a large number of small claims to be brought in arbitration. The answer to both questions is unequivocally: "*no*."

In 2018, Keller Lenkner filed 12,501 individual arbitrations at JAMS asserting identical claims against Uber; and in 2019-20, Keller Lenkner filed 6,250 individual arbitrations at AAA asserting identical claims against DoorDash. Those two events gave rise to the concept of "mass arbitration," and establish the paradigm for what mass arbitration is. So what happens when a single firm files thousands of identical claims at JAMS or AAA? First, the defendant typically has thirty days to pay tens of millions of dollars in filing fees—money that goes to the arbitration provider, not to claimants. That deadweight loss creates astronomical settlement leverage that has

---

[3] *See, e.g.*, *Capital One Terms* § 7 (Feb. 27, 2023), https://www.capitalone.com/digital/terms-conditions/ ("We may amend any of this Agreement's terms at our sole discretion by posting revised terms on the Site… [W]hen you use the Site after the effective date of the revised Agreement you accept the terms."); *Uber Terms* § 1 (June 14, 2023), https://www.uber.com/legal/en/document/?name=general-terms-of-use&country=united-states&lang=en (similar).

nothing to do with the merits of the individual claims. Second, JAMS and AAA cannot individually arbitrate thousands of claims on the merits, one by one; they don't have any rules or procedures for doing so, and they don't have enough neutrals. The result is a procedural morass, where individual claims are <u>not</u> capable of being arbitrated on the merits. A world where the judicial forum breaks down and the litigation is completely divorced from the merits makes no sense.

New Era was founded in 2020. They engaged many of the top neutrals in the country, created various efficiencies around online proceedings, and developed some of the very first rules and procedures that aim to fairly and efficiently arbitrate mass arbitrations. To be frank, the primary innovation was around filing fees—i.e., creating a model that generated enough revenue to be a viable business, without imposing multi-million-dollar upfront filing fees that forced parties to settle meritless claims. Beyond that, the Rules create a bellwether process that allows the parties to assess the strengths and weaknesses of their cases, which in turn may facilitate global settlements (in whole or in part). But if there is no settlement, the claims are addressed individually, with precedent applying in the exact same, non-binding manner it does in courts of equal level. There is no way this procedure can be a due process violation.

Under New Era's Rules, no claimant represents absent claimants, and there is no quasi-class preclusion that prevents anyone from being heard. To the contrary, mass arbitrations are expressly limited to claims filed by the same firm. ECF No. 30-4, Rules 2(x)(ii)(1), 6(b)(ii)(2)(b); *see also* ECF No. 194-1, Rules 1(c)(iii)(3)(a), 6(b)(ii)(1).[4] That threshold requirement alone addresses many of the Court's concerns. But regardless, each claimant picks their own counsel. Each claimant files their own complaint. ECF No. 30-4, Rules 6(a)(ii)(1), 6(b)(ii)(4). Each claimant, at the outset of their case, uploads their own evidence and "initial

---

[4] As explained in Defendants' briefing, New Era's original Rules are best interpreted as satisfying due process. That said, over the course of two hearings and multiple months, the Court suggested that perhaps the best reading of the Rules was one that did not pass muster. New Era has clarified its Rules to address the Court's concerns.

arguments." *Id.* 6(a)(vii)(1). Each claimant has a right to present facts and evidence that will inform the neutral's understanding. *Id.* 2(r)(i). Each claimant may present witness testimony. *Id.* 2(n)(i). Each claimant can raise whatever individualized issues exist in their specific case. *Id.* 6(b)(iii)(4)(d), 6(b)(iii)(6)(a). And, importantly, precedent from the bellwether cases is not binding; each claimant can argue that such precedent is wrong, distinguishable, or should not be applied for any other valid reason. ECF No. 194-1, Rules 6(b)(iii)(5)(a), 6(b)(iii)(6)(a). No one is "[bound] … to the choices that are made" in the bellwethers, July 13 Tr. 13:25-14:3, 14:20-15:3, and the bellwethers do not have "collateral estoppel effect," *id.* 18:4-6.[5]

### III. Severability

Even if the selection of New Era were unenforceable, this case still must be sent to arbitration—i.e., the Court's tentative is exactly right on severability. The Terms "contain[] a clause stating that in the event New Era cannot conduct the arbitration for any reason, the arbitration will instead be conducted by a different arbitration provider." Tentative, ECF No. 160 at 17; *see* ECF No. 31-30 at 12 (identifying FairClaims as the alternate provider) & 14 (severability clause). Because "the provisions Plaintiffs claim are unconscionable almost exclusively relate to the selection of New Era," the Court can sever the selection of New Era, and direct the parties to arbitrate at FairClaims. Tentative at 17; *see also* Defs.' Reply, ECF No. 153 at 21-22. Plaintiffs have not challenged FairClaims—on unconscionability or any other grounds—and have thus waived any such argument. Consequently, at a minimum, this case must be arbitrated at FairClaims.

---

[5] The Court asked about *Lamps Plus*. There, the Supreme Court declined to infer an agreement to arbitrate on a classwide basis (which could create a "procedural morass") where the parties had not expressly agreed to that procedure: if parties "specify[] … the rules by which they will arbitrate," "the task for courts" is "to give effect to the intent of the parties." 139 S. Ct. 1407, 1416 (2019). Here, the parties agreed to arbitrate pursuant to New Era's Rules. Moreover, while the Supreme Court has "expressed skepticism regarding class arbitration, it did not hold that the FAA prohibits it. To the contrary, the Supreme Court has … held that an 'arbitrator may employ class procedures ... if the parties have authorized them.'" *Lee v. Postmates Inc.*, 2018 WL 6605659, at *8 n.9 (N.D. Cal. Dec. 17, 2018) (quoting *Oxford Health Plans LLC v. Sutter*, 569 U.S. 564, 565 (2013)).

Dated: July 27, 2023  Respectfully Submitted,

LATHAM & WATKINS LLP

By: /s/ Timothy L. O'Mara
Timothy L. O'Mara
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095
tim.o'mara@lw.com

*Attorneys for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc.*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc., certifies that this brief contains 5 pages, which complies with the page limit set by the Court in its July 13, 2023 order (ECF No. 182).

Dated: July 27, 2023

_Timothy L. O'Ma___
Timothy L. O'Mara