

1          UNITED STATES DISTRICT COURT

2     CENTRAL DISTRICT OF CALIFORNIA - CENTRAL DIVISION

3        HONORABLE GEORGE H. WU, U.S. DISTRICT JUDGE

4

5   SKOT HECKMAN, et al,

6                    Plaintiffs,

7          vs.                          Case No. CV 22-047

8   LIVE NATION ENTERTAINMENT, INC.,

9                    Defendants.
                                        /
10  _____

11

12

13                  REPORTER'S TRANSCRIPT OF
          DEFENDANTS' MOTION TO COMPEL ARBITRATION
                   Thursday, August 10, 2023
14                        8:30 A.M.
                   LOS ANGELES, CALIFORNIA
15

16

17

18

19

20

21

22
          _____

23        TERRI A. HOURIGAN, CSR NO. 3838, CCRR
              FEDERAL OFFICIAL COURT REPORTER
              350 WEST FIRST STREET, ROOM 4311
24            LOS ANGELES, CALIFORNIA  90012
                      (213) 894-2849
25

                    UNITED STATES DISTRICT COURT

1                          **APPEARANCES OF COUNSEL:**

2

3    **FOR THE PLAINTIFF:**

4        KELLER POSTMAN LLC
         BY:  WARREN D. POSTMAN
5            Attorney at Law
         1100 Vermont Avenue, N.W., 12th Floor
6        Washington, D.C.  20005

7        QUINN EMANUEL URQUHART and SULLIVAN LLP
         BY:  ADAM B. WOLFSON
8            KEVIN Y. TERUYA
         Attorneys at Law
9        865 South Figueroa Street, 10th Floor
         Los Angeles, California  90017

10

11   **FOR THE DEFENDANT:**

12       LATHAM and WATKINS LLP
         BY:  TIMOTHY L. O'MARA
13           ALICIA R. JOVAIS
             SAM JEFFREY
14       Attorneys at Law
         505 Montgomery Street, Suite 2000
15       San Francisco, California  94111

16

17

18

19

20

21

22

23

24

25

**UNITED STATES DISTRICT COURT**

1    **LOS ANGELES, CALIFORNIA; THURSDAY, AUGUST 10, 2023**

2                    **8:30 a.m.**

3                    **--oOo--**

4

5

6            THE COURT:  Let me call the matter of *Heckman versus*

7    *Live Nation Entertainment*.

8        All right.  Let me hear appearances starting with

9    plaintiff's counsel first.

10            MR. POSTMAN:  Good morning, Your Honor.  Warren

11    Postman, Keller Postman, with Kevin Teruya and Adam Wolfson

12    with Quinn Emanuel.

13            THE COURT:  All right.  For the defendants?

14            MR. O'MARA:  Good morning, Your Honor.  Tim O'Mara,

15    Lisa Jovais and Sam Jeffrey for the defendants.

16            THE COURT:  All right.  We are here on a

17    continuation of the motion to compel arbitration.

18        I issued a tentative on this.  I presume both sides have

19    seen it?

20            MR. POSTMAN:  Yes, Your Honor.

21            MR. O'MARA:  Yes, Your Honor.

22            THE COURT:  Does somebody want to argue something?

23            MR. O'MARA:  Yes, Your Honor.

24        So, Your Honor, we respectfully disagree with the

25    tentative.

```
 1            THE COURT:  You don't have to respectfully do it,
 2   you can vehemently do that, I don't mind.  I don't take these
 3   things personally.
 4            MR. O'MARA:  I appreciate that, Your Honor, but we
 5   do respectfully disagree with the conclusion and the reasoning
 6   of the conclusion, as you would expect.
 7            There has been a lot of argument and briefing on this
 8   issue, so I will be brief.
 9            I would like to raise three points for clarification for
10   the record.
11            THE COURT:  Sure.
12            MR. O'MARA:  So the first, Your Honor, is the
13   idea --
14            THE COURT:  As a favor to the Court, just refer to
15   the pages you are referencing in the tentative, so I can easily
16   follow your arguments.
17            MR. O'MARA:  Okay.  So I will give you a page in one
18   second, Your Honor.
19            First, the idea that defendants changed arbitration
20   providers in response to mounting arbitration claims is not
21   correct.
22            Just for clarity of the record, Your Honor, there is no
23   arbitration claims on any of the issues involved in this case
24   pending.
25            There were no arbitration claims on any of the issues
```

```
 1   involved in this case pending at the time we changed
 2   arbitration providers -- not one.
 3            THE COURT:  What do you mean by that?
 4            MR. O'MARA:  I mean, there were no arbitrations
 5   pending.
 6        So the tentative suggests a couple of times, Your Honor,
 7   that the reason the defendants changed arbitration providers
 8   was in response to mounting, quote, arbitration claims.  That
 9   is not correct.
10        There was no arbitration pending now; there were no
11   arbitrations pending when we made that change.
12            THE COURT:  I don't understand.
13        You are saying that -- obviously, there have been
14   previous lawsuits filed where the defendant made a request to
15   compel arbitration.
16            MR. O'MARA:  It was *Oberstein*, yes.
17            THE COURT:  There were others as well?
18            MR. O'MARA:  Not on the issues involved in this
19   case.
20            THE COURT:  Well, I agree, not to the issues in this
21   case, but there were requests to compel arbitration in other
22   situations.
23            MR. O'MARA:  Previously there has been requests for
24   arbitration.
25            THE COURT:  Okay.  Your point is there was no
```

1  pending request for arbitration -- well, let me put it this

2  way, there was -- I thought that part of the defendant's goal

3  was to deal with the mass arbitration situation, the potential

4  for the mass arbitration situation, which even though may be if

5  the defendant itself had not been subject to it, there have

6  been a lot of other defendants who were subjected to it, and

7  there was a lot of discussion in the legal field about that

8  issue.

9        So, I'm not saying that, per se, it was done solely for

10  that reason, but that was an issue that was floating around.

11  There have been a lot of discussions on that.

12        That's all I meant to say.

13        I'm not accusing the defendant necessarily of doing it

14  solely for that purpose, but it's not -- I think the Court can

15  take judicial notice of the fact that that was an issue during

16  this point in time.

17        Let me ask the plaintiff's counsel, any response to that

18  contention?

19        MR. POSTMAN:  I agree with your point, Your Honor,

20  and would just add that Live Nation's change occurred just a

21  couple of months after my firm entered an appearance in the

22  *Oberstein* case.

23        THE COURT:  And they were so afraid of your firm

24  that they did this?

25        MR. POSTMAN:  Well, as Mr. O'Mara has pointed out in

1    prior hearings, my firm is known for bringing large numbers for

2    arbitrations.

3          I think it was fairly clear at that point, we were

4    putting Live Nation to the choice to either proceed to the case

5    in court or --

6          THE COURT:  The cases I'm thinking of, your firm was

7    not involved.  There are other cases that were involved.

8          I can't remember, was it Google -- there was somebody.

9          MR. POSTMAN:  It was Amazon?

10         THE COURT:  Okay.  It was a situation where

11   basically the discussion was the defendant had won the

12   particular argument that was pending at the time, but created

13   this additional major issue because of the prospect of the fact

14   that now they have the arbitration, it's going to have

15   thousands of arbitrations.

16         So then they had to respond to what to do with that

17   situation, and that was the nature of the discussion.

18         MR. O'MARA:  Your Honor, I think that is correct.

19   We appreciate that clarification from the Court, and that

20   actually leads spot on to the second point that we wanted to

21   very briefly address, which is we think that the tentative

22   doesn't address what Your Honor just said, which is an

23   important fact about mass arbitration, which is their ability

24   to create massive settlement leverage is completely divorced

25   from the merits of the underlying claims due to the

1    asymmetrical filing fees.

2        So as Your Honor pointed out correctly is what happened

3    here is that the defendants were paying attention to the

4    literature in the field and what was going on.

5        THE COURT:  That late argument, I don't know if I

6    accept that.

7        I mean, I understand you are making it now, but I'm not

8    necessarily thinking along those lines.

9        MR. O'MARA:  Fair enough.  That's why I'm raising

10   it --

11       THE COURT:  All right.

12       MR. O'MARA:  -- today at the hearing.

13       So we were looking at these cases that had nothing to do

14   with us, which we have said in the briefing, the *Uber*, the

15   *DoorDash* case, and others, and we were doing the math.

16       And just to be clear the way that math works, which we

17   have already had in the briefing, which under JAMS, a single

18   arbitration, the filing fees for the defendants, is either

19   $1,500 or 1750 per case.

20       So, if you have 10,000 of those, that is $15 million

21   that is due within 30 days of those claims being filed, and

22   that money is paid to JAMS.

23       THE COURT:  Let me do it this way, I presume that

24   everybody is an adult here.

25       The reason for that particular situation is the fact

1    that most of these defendants are against class actions.

2         And the normal way that these things are resolved is

3    through class actions.

4         So, they want to avoid the class actions for one reason

5    or another, so therefore, they decide, well, let's force them

6    into arbitration individually and let's also preclude class

7    actions or class arbitrations.

8         So, that is a situation that results, you know, it's

9    simple economics.

10         MR. O'MARA:  Your Honor, I understand the

11    to-be-careful-what-you-ask-for argument, and I understand that

12    is the Court's position, and all I was trying to sort of

13    clarify for the record, again, is exactly how this works, which

14    is again, if you have the 10,000 claims, that is 15 million, if

15    you have 50,000, that is $75 million of filing fees, which

16    again, is due in 30 days paid to JAMS, not the claimants, so

17    it's a dead weight loss and I find it inconceivable that a

18    Federal Court would think that outcome of litigation should be

19    driven by filing fees that have absolutely no connection to the

20    merits of the underlying claims.

21         That just doesn't make sense.

22         THE COURT:  It's the nature of the claims that are

23    made.

24         In other words, if, in fact, certain types of practices

25    would have such an impact on the company in and of itself, that

1    there is -- it's going to be worth to the company to avoid it,

2    if possible.

3         In other words, this case involves class action

4    allegations.

5         The value of the -- if its determined that in fact there

6    was some sort of an antitrust violation here, what is the value

7    of that?

8         What is the value of that in the prospect of the

9    interests of the defendants in that regard?

10         MR. O'MARA:  Your Honor is correct.  There could be

11    substantial -- if the claims have merit.

12         THE COURT:  Also, for example, if it was a claim of

13    some sort of bad business practice, if the defendants had

14    engaged in a particular commercial practice that was applicable

15    to all of the persons that utilize their websites and purchase

16    tickets, you know, what's the value of that?

17         I mean, these things are -- can be potentially very

18    costly.

19         So I mean, you know, there are always costs and things

20    like that of one sort or another in these cases.

21         MR. O'MARA:  Your Honor, you are correct, but you

22    are talking about the potential costs of a claim with merit.

23    What we're pointing out here --

24         THE COURT:  We don't know whether or not -- I don't

25    presume that cases are brought without merit.

1        I mean, I don't put necessarily bad intentions on either

2    side.

3        I view that this is just the normal economics of

4    litigation.

5        MR. O'MARA:  That's true, Your Honor, but we're

6    talking again about filing fees that are paid to the

7    arbitration provider up front that have no relationship to the

8    underlying claims.

9        It has nothing to do with what Your Honor is talking

10   about.

11       THE COURT:  Well, the defendants negotiate with

12   their arbitration services, they have some -- unless they are

13   arguing that the contracts they engaged in with these

14   arbitration providers was unconscionable of one sort or

15   another, they can negotiate to have different costs in terms of

16   economies of scales such that they can protect themselves from

17   this sort of thing.

18       That is something, I presume, that the defendants are

19   negotiating with these arbitrator service providers.

20       MR. O'MARA:  That's not the way it works, Your

21   Honor.

22       There is no contract with JAMS or Triple A.  You

23   typically would select a third-party arbitrator and put them in

24   your terms without ever signing a contract with them.

25       Partly what --

1          THE COURT:  Well, that doesn't actually prevent you

2     from doing that.  Is there anything that bars one from that?

3          If the company the size of the defendant goes to JAMS

4     and says, hey, you know, we would like to use you, and put it

5     in, but there is a problem -- this is a problem area for us,

6     you can negotiate that.

7          Do you think they would say no, we're not going to agree

8     to talk to you about this sort of thing?  It's the economics.

9          You are probably right, why should, in these types of

10    situations, JAMS be getting a filing fee of $1,500 for hundreds

11    or even thousands of cases, when, you know, they are not going

12    to have to expend what they normally would because of the

13    economies of scale in that regard, especially if all of these

14    claims are going to be directed to one arbitrator.

15         I mean, dah.  You are saying they are not going to agree

16    to something of that sort?

17         I really don't know one way or the other, but all I'm

18    saying is you are making an argument that seems like this is a

19    fait accompli or something of that sort.  These are business

20    decisions that are made.

21         Although, frankly, we're getting far afield from the

22    actual issues involved in this case, but, you know, I guess

23    this is an interesting discussion.

24         MR. O'MARA:  The point, Your Honor, I'm coming to,

25    which is, and I agree with Your Honor, that it should be

negotiable, which is exactly what the defendants thought they
were doing here, since they went to an arbitration provider and
tried to negotiate those fees which made sense and made these
claims subject to be arbitrated on the merits.

        The point is, you couple the filing fees with the idea
that JAMS and Triple A did not have enough neutral to --

        THE COURT:  Well, let me ask, doesn't the customer
have to pay something to the arbitration fee as well?

        MR. POSTMAN:  Absolutely, Your Honor.

        If I could, this whole cost situation is entirely of
defendant's making.

        And these lines of attack were made over and over before
Judge Allsop in the *DoorDash* case, Judge Armstrong in
*Postmates*, Judge Gutierrez in this district in *Postmates*, Judge
Breyer in *Intuit* and everyone of them recognized the hypocrisy
of defendant's positions.

        Judge Allsop in very strong words --

        THE COURT:  He's very blunt.

        MR. POSTMAN:  He is, but to zoom out, defendants
required individual separate arbitration in all these cases
because it imposed a huge amount of transaction costs on
plaintiffs in potentially low-value cases.

        So for a $100 case, a consumer case, the plaintiff would
have to pay a $400 fee.  They would have to find a lawyer to
represent them on this low-value case with no economies of

1   scale, no efficiencies, and this was an intentional strategic

2   choice on the part of defendant to say, we love this as opposed

3   to class actions, because it puts extreme costs of prosecution

4   on the plaintiffs, and when it's done, three plaintiffs at a

5   time, four plaintiffs at a time, it's great.

6          When firms started bringing thousands, the reason

7   Triple A and JAMS imposed these big costs is because they were

8   required to do it all individually.

9          I have sat through over a dozen conferences with

10  Triple A and JAMS where Triple A and JAMS says, would you like

11  to consolidate this, then we can do one fee.

12         And defendants say, no, it's got to be individual.

13         And they said, okay, well, if we have got to go through

14  individual arbitrator selection process with disclosures and

15  strike lists and assignments for each one, maybe some will end

16  up in front of the same arbitrator, but if we have got to do

17  this individually, we're charging our standard flat fee.

18         The defendants want to have their cake and eat it too.

19         They were happy imposing all these transactions costs on

20  claimants in low-value cases when it deterred them from ever

21  bringing the case.

22         But when firms started bringing them all at once, they

23  have come up with this whole new scheme.

24             THE COURT:  I'm not disagreeing with that in any

25  way, shape, or form, and yet other judges in the initial

```
 1   situation affirmed the requirement of arbitration, including

 2   this Judge.

 3            MR. POSTMAN:  Individual arbitration.

 4            THE COURT:  Individual arbitration.

 5            MR. POSTMAN:  Yeah, I think -- the complaint that

 6   individual arbitration that they have required by contract and

 7   asked Courts to impose is suddenly unfair, because it imposes

 8   transaction costs, it's just really rich, that's all I'm

 9   saying.

10            MR. O'MARA:  We're not arguing it's unfair.

11        My only point is that what is missing from the tentative

12   is there is some sense -- there is a certain flavor in the

13   tentative of why the defendants changed arbitration providers

14   as if it was a strategy to impose an inferior forum on the

15   individuals.

16        My point is what is missing is the background reality of

17   -- the Supreme Court has blessed class action waivers, they

18   said that's okay.

19        So in the world we were in, was a world where there was

20   potentially multi-million dollar --

21            THE COURT:  Well, there is a reason why the Supreme

22   Court blessed class action waivers, not the mere fact it did

23   so, but why it did so.

24            MR. O'MARA:  I'm sorry, Your Honor?

25            THE COURT:  I'm agreeing with you that, yes, the
```

```
1    Supreme Court did bless class action waivers, but the reason

2    why it did so, you know, in waiving class action arbitrations

3    so --

4              MR. O'MARA:  I think the reason the Supreme Court

5    did so, Your Honor, is set forth in some of the cases Your

6    Honor has mentioned, *Concepcion* and *Lamps Plus*, which is that

7    the Supreme Court's position is that arbitration is a creature

8    of contract, so what matters -- again and again what the

9    Supreme Court says, what did the parties agree to, and the

10   Court's must --

11             THE COURT:  That is the reason why the Supreme Court

12   has said unconscionability is still a defense in these motions

13   to compel arbitration.

14        Again, that is the whole discussion of the tentative, is

15   that you look both to procedural unconscionability and

16   substantive unconscionability.

17        It's not a sliding scale necessarily, but the more

18   procedural unconscionability there is, the less strong the

19   substantive unconscionability has to be, and vice versa.

20        I understand what the standards are.

21        You seem to be discussing a lot of stuff that is like --

22   that is not really addressed, per se.

23        You are saying there is some sort of flavor.

24        A flavor or not flavor, the tentative holds what the

25   tentative holds, and the basis for the holdings are based on
```

1      the cases.

2             I didn't say that I think that either New Era or the

3      defendant or there is some sort of improper collusion or

4      something like that, I didn't say that.

5             MR. O'MARA:  Fair enough, Your Honor.

6             My last point, Your Honor, just very briefly, we

7      respectfully submit that the tentative discussion of

8      severability is misplaced.

9             Here, Your Honor, I think there is a sort of background

10     point, which is critical, which is not mentioned in the

11     tentative, which is that, so Live Nation had an arbitration

12     provision for over a decade, and the consumers have received

13     abundant notice of that.

14            They have repeatedly agreed to it, numerous Courts,

15     including this Court and Ninth Circuit have upheld that and it

16     has a valid and enforceable agreement.

17            And so that was a status quo, and in light of this

18     filing fee issue, again, pay the third party, it's nothing to

19     do with claimants or the individual claims, the defendants

20     decided to change arbitration providers to a provider that we

21     reasonably think is fair and efficient to everybody, which I

22     understand the Court disagrees with, but that is what our

23     thinking was.

24            The net result of the Court's severability ruling is

25     even though we have a decade plus, and all of this notice and

agreement and enforceability of an arbitration provision, that

because we tried to change arbitration providers in response to

the filing fee issue, which we saw other companies paying, that

somehow now the consumers are no longer bound to arbitrate any

of their claims.

So that's sort of the playing field, and against that,

Your Honor, we say the severability argument we respectfully

think is misplaced, because if we look at the tentative on

substantive unconscionability, the Court mentions four points.

But as the Court points out, three of those are about New Era's

rules, and those rules are either good enough or they are not,

but we think they are, but even if the Court thinks they are

not, the alternative is another arbitration provider who does

not have those rules, and so all of that --

THE COURT:  So, in other words, you are saying -- I

don't understand.

Am I supposed to sever and send it to a different

arbitrator?

MR. O'MARA:  You would sever the part of the

provision which selects New Era, which is a very discreet part

of the overall arbitration provision, and that is frankly where

the May 1st tentative came down.

THE COURT:  Let me ask the plaintiff's counsel, what

is your response to those latter arguments?

MR. POSTMAN:  I think your tentative analyzes it

1    correctly.

2        *MacClellan* is a great case on point.  There are several

3    other cases I would point you to that show this is a very

4    straightforward application of California severability law

5    before getting to the cases.

6        The question under California law is, is the arbitration

7    provision permeated with unconscionability?

8        If it is, the whole thing goes down, that is the clear

9    law.

10        And *Capili versus Finish Line*, which was affirmed by the

11    Ninth Circuit, collects a bunch of good authority on that.

12    *Armendariz*, the California Supreme Court decision makes this

13    point.

14        *Pinela versus Neiman Marcus*, if you look at these cases

15    they really spell out a rule that if there is only one

16    unconscionable provision, they will sever that, but if there is

17    two or three, they won't.

18        And *Lhotka v Geographic Expeditions*, and these are all

19    Court of Appeals cases and the California cases, and there is a

20    very strong policy for that, which is, if the Court will do the

21    work for the defendant who layers in a bunch of unconscionable

22    provisions, it creates horrible incentives.  This is said

23    expressly in cases like *Fitz v NCR Corp.*

24        Again, *Capili*, the defendant would have every incentive,

25    as we believe happened here, to take a huge swing at the most

1    defendant-favorable process possible, secure in the knowledge

2    that, well, I can get the Court to parrot back just inside the

3    line of unconscionability.

4         As the Court said in *Capili*, if the defendant wants to

5    compel arbitration, it should draft an agreement that is not

6    permeated with unenforceable provisions.

7         The Court does not believe this is too much to ask, so

8    we think the Court's tentative is correct.

9              MR. O'MARA:  Your Honor, if I may?

10        Your Honor, on the cases that plaintiff's counsel is

11   citing, every single one of them, the Court has found the

12   arbitration agreement was non-mutual, it only applied to one

13   side, so it could be not be severed and have anything left.

14        Here, when you are talking about whether or not the

15   arbitration agreement is permeated with unconscionability,

16   again, you can look at the Court's tentative, and virtually

17   every point we're talking about is numerous rules, that is a

18   single thing.

19        We switched arbitration providers in a world where

20   consumers had extensive notice, there was extensive consent,

21   and multiple Courts have upheld arbitration.

22        The one thing that is changed here, is there is a

23   change in arbitration providers, and that is clearly severable,

24   particularly, when the contract that the consumers agreed to

25   spell out exactly what happens if New Era, for any reason,

```
 1   cannot arbitrate these claims.
 2            THE COURT:  I understand the position of both sides.
 3   Anything else from either side?
 4            MR. POSTMAN:  No, Your Honor.
 5            THE COURT:  Let's put it this way, I mean, a denial
 6   of a request to compel arbitration is immediately appealable.
 7        I presume that the defendant is going to take an
 8   immediate appeal of this matter.  I do think that there is a
 9   number of interesting issues in this case, and I will be happy
10   to hear what the Circuit says, and we will see what happens.
11            MR. O'MARA:  Can I say one last point?
12            THE COURT:  Sure.
13            MR. O'MARA:  Very quickly so the record is clear.  I
14   said three out of the four of the New Era rules --
15            THE COURT:  You are speaking a little too fast.
16   What did you just say?
17            MR. O'MARA:  I mentioned three out of the four
18   reasons the Court was finding the rules substantive
19   unconscionable was New Era's rules.
20        The fourth was the limit to right to appeal.
21        All of I want to say on that, Your Honor, the
22   plaintiff's own case, *Little v Auto Stiegler*, that case
23   explains what the standard is for whether or not a limited
24   right to appeal is severable.
25            And what the Court says is whether or not the law was
```

```
 1  sufficiently clear to indicate that the provision was drafted

 2  in bad faith.

 3          And so just for the record, I want to say is clearly

 4  here, where we actually model that language on a California

 5  Supreme Court case, Sanchez, there is no way that could be the

 6  case.

 7          So, I would respectfully submit for the reasons that the

 8  New Era could be severed --

 9          THE COURT:  I understand your argument.  Let me hear

10  a response from plaintiff's counsel on that particular point.

11          MR. POSTMAN:  I think it was taken from a case and

12  applied to different facts, which is, here, in an aggregate

13  arbitration, where the denial of injunctive relief, for one,

14  would be denial for all, and would be a hugely asymmetric

15  advantage.  It is obviously non-mutual and unfair to one side.

16          So, I think it's of a piece with a broader endeavor that

17  we see in these terms to try to point by point by point have

18  the party with superior bargaining power get an unfair

19  advantage.

20          THE COURT:  I will take the matter under submission.

21  Hopefully, we can get something out today.

22          MR. O'MARA:  Thank you, Your Honor.

23          MR. POSTMAN:  Thank you, Your Honor.

24          THE COURT:  Let me just ask, insofar as the

25  tentative was filed under seal because -- let me just ask, you
```

```
 1    know, what portions, if any, do either side think that I should

 2    not include in the published decision?

 3              MR. POSTMAN:  We would suggest all of it should be

 4    public.

 5         We think, as Judge Allsop said in the DoorDash opinion

 6    the public has an interest --

 7              THE COURT:  I generally would agree, except for the

 8    things that if some of the information relates to business --

 9    not secret business things -- but, like, certain rates that are

10    not made public that are -- I can't remember the terms --

11              MR. POSTMAN:  Proprietary.

12              THE COURT:  Proprietary, yes, that should not be

13    made public.

14         But let me just ask the defense, is there anything that

15    is contained in the tentative that you think I should not

16    include in my -- when I release whatever my final version of

17    the tentative will be?

18              MR. O'MARA:  Your Honor, not that I'm aware of, but

19    if we could have a day to read it one more time, just to make

20    sure?

21              THE COURT:  I will give you until 2 o'clock today to

22    inform my clerk.

23         You can read this thing in an hour, probably even less

24    than an hour, because you read it once before.

25              MR. O'MARA:  Thank you, Your Honor.
```

UNITED STATES DISTRICT COURT

```
 1              THE COURT:  Anything else from anybody?

 2              MR. POSTMAN:  No, Your Honor.

 3              THE COURT:  Thank you, everybody.  Have a very, very

 4    nice day.

 5         What I will also do -- do I have any other dates in this

 6    matter?

 7              THE COURTROOM DEPUTY:  No, sir.

 8              THE COURT:  So, what I will do is, as I said, I will

 9    probably get something out today.

10         I will put this matter -- if there is an appeal, your

11    side would have how much time to file an appeal?

12              MR. O'MARA:  30 days.

13              THE COURT:  I will put this matter back on calendar

14    for September 28th, just as a place-holding date.

15         Obviously, if I issue a decision that the defendant does

16    not like, the defendant can appeal.  And once that appeal is

17    done, just give me a stip to take the September 28th date off

18    calendar.

19              MR. O'MARA:  Thank you, Your Honor.

20              THE COURT:  Have a very, very nice day.

21              (The proceedings concluded at 10:29 a.m.)

22                              * * *

23

24

25
```

UNITED STATES DISTRICT COURT

1          **CERTIFICATE OF OFFICIAL REPORTER**

2

3    COUNTY OF LOS ANGELES    )
                              )
4    STATE OF CALIFORNIA      )

5

6          I, TERRI A. HOURIGAN, Federal Official Realtime

7    Court Reporter, in and for the United States District Court for

8    the Central District of California, do hereby certify that

9    pursuant to Section 753, Title 28, United States Code that the

10   foregoing is a true and correct transcript of the

11   stenographically reported proceedings held in the

12   above-entitled matter and that the transcript page format is in

13   conformance with the regulations of the judicial conference of

14   the United States.

15

16   Date: 10th day of August, 2023.

17

18

19                        /s/ TERRI A. HOURIGAN

20   _____
                TERRI A. HOURIGAN, CSR NO. 3838, RPR, CRR
21                     Federal Court Reporter

22

23

24

25

## $

**$1,500** [2] - 8:19, 12:10
**$100** [1] - 13:23
**$15** [1] - 8:20
**$400** [1] - 13:24
**$75** [1] - 9:15

## /

**/s** [1] - 25:19

## 1

**10** [2] - 1:13, 3:1
**10,000** [2] - 8:20, 9:14
**10:29** [1] - 24:21
**10th** [2] - 2:9, 25:16
**1100** [1] - 2:5
**12th** [1] - 2:5
**15** [1] - 9:14
**1750** [1] - 8:19
**1st** [1] - 18:22

## 2

**2** [1] - 23:21
**2000** [1] - 2:14
**20005** [1] - 2:6
**2023** [3] - 1:13, 3:1, 25:16
**213** [1] - 1:24
**22-047** [1] - 1:7
**28** [1] - 25:9
**28th** [2] - 24:14, 24:17

## 3

**30** [3] - 8:21, 9:16, 24:12
**350** [1] - 1:23
**3838** [2] - 1:22, 25:20

## 4

**4311** [1] - 1:23

## 5

**50,000** [1] - 9:15
**505** [1] - 2:14

## 7

**753** [1] - 25:9

## 8

**865** [1] - 2:9
**894-2849** [1] - 1:24
**8:30** [1] - 1:14, 3:2

## 9

**90012** [1] - 1:24
**90017** [1] - 2:9
**94111** [1] - 2:15

## A

**A.M** [1] - 1:14
**a.m** [2] - 3:2, 24:21
**ability** [1] - 7:23
**above-entitled** [1] - 25:12
**absolutely** [2] - 9:19, 13:9
**abundant** [1] - 17:13
**accept** [1] - 8:6
**accompli** [1] - 12:19
**accusing** [1] - 6:13
**action** [5] - 10:3, 15:17, 15:22, 16:1, 16:2
**actions** [5] - 9:1, 9:3, 9:4, 9:7, 14:3
**actual** [1] - 12:22
**ADAM** [1] - 2:7
**Adam** [1] - 3:11
**add** [1] - 6:20
**additional** [1] - 7:13
**address** [2] - 7:21, 7:22
**addressed** [1] - 16:22
**adult** [1] - 8:24
**advantage** [2] - 22:15, 22:19
**affirmed** [2] - 15:1, 19:10
**afield** [1] - 12:21
**afraid** [1] - 6:23
**aggregate** [1] - 22:12
**agree** [7] - 5:20, 6:19, 12:7, 12:15, 12:25, 16:9, 23:7
**agreed** [2] - 17:14, 20:24
**agreeing** [1] - 15:25
**agreement** [5] - 17:16, 18:1, 20:5, 20:12, 20:15
**al** [1] - 1:5
**ALICIA** [1] - 2:13
**allegations** [1] - 10:4
**Allsop** [3] - 13:13,

13:17, 23:5
**alternative** [1] - 18:13
**Amazon** [1] - 7:9
**amount** [1] - 13:21
**analyzes** [1] - 18:25
**ANGELES** [4] - 1:14, 1:24, 3:1, 25:3
**Angeles** [1] - 2:9
**antitrust** [1] - 10:6
**appeal** [7] - 21:8, 21:20, 21:24, 24:10, 24:11, 24:16
**appealable** [1] - 21:6
**Appeals** [1] - 19:19
**appearance** [1] - 6:21
**appearances** [1] - 3:8
**APPEARANCES** [1] - 2:1
**applicable** [1] - 10:14
**application** [1] - 19:4
**applied** [2] - 20:12, 22:12
**appreciate** [2] - 4:4, 7:19
**arbitrate** [2] - 18:4, 21:1
**arbitrated** [1] - 13:4
**ARBITRATION** [1] - 1:13
**arbitration** [47] - 3:17, 4:19, 4:20, 4:23, 4:25, 5:2, 5:7, 5:8, 5:10, 5:15, 5:21, 5:24, 6:1, 6:3, 6:4, 7:14, 7:23, 8:18, 9:6, 11:7, 11:12, 11:14, 13:2, 13:8, 13:20, 15:1, 15:3, 15:4, 15:6, 15:13, 16:7, 16:13, 17:11, 17:20, 18:1, 18:2, 18:13, 18:21, 19:6, 20:5, 20:12, 20:15, 20:19, 20:21, 20:23, 21:6, 22:5, 23:2
**arbitrations** [6] - 5:4, 5:11, 7:2, 7:15, 9:7, 16:2
**arbitrator** [6] - 11:19, 11:23, 12:14, 14:14, 14:16, 18:18
**area** [1] - 12:5
**argue** [1] - 3:22
**arguing** [2] - 11:13, 15:10
**argument** [7] - 4:7, 7:12, 8:5, 9:11, 12:18,

18:7, 22:9
**arguments** [2] - 4:16, 18:24
**Armendariz** [1] - 19:12
**Armstrong** [1] - 13:13
**assignments** [1] - 14:15
**asymmetric** [1] - 22:14
**asymmetrical** [1] - 8:1
**attack** [1] - 13:12
**attention** [1] - 8:3
**Attorney** [1] - 2:5
**Attorneys** [2] - 2:8, 2:14
**August** [2] - 1:13, 25:16
**AUGUST** [1] - 3:1
**authority** [1] - 19:11
**Auto** [1] - 21:22
**Avenue** [1] - 2:5
**avoid** [2] - 9:4, 10:1
**aware** [1] - 23:18

## B

**background** [2] - 15:16, 17:9
**bad** [3] - 10:13, 11:1, 22:2
**bargaining** [1] - 22:18
**bars** [1] - 12:2
**based** [1] - 16:25
**basis** [1] - 16:25
**big** [1] - 14:7
**bless** [1] - 16:1
**blessed** [2] - 15:17, 15:22
**blunt** [1] - 13:18
**bound** [1] - 18:4
**Breyer** [1] - 13:15
**brief** [1] - 4:8
**briefing** [3] - 4:7, 8:14, 8:17
**briefly** [2] - 7:21, 17:6
**bringing** [4] - 7:1, 14:6, 14:21, 14:22
**broader** [1] - 22:16
**brought** [1] - 10:25
**bunch** [2] - 19:11, 19:21
**business** [4] - 10:13, 12:19, 23:8, 23:9
**BY** [3] - 2:4, 2:7, 2:12

## C

**cake** [1] - 14:18
**calendar** [2] - 24:13, 24:18
**California** [8] - 2:9, 2:15, 19:4, 19:6, 19:12, 19:19, 22:4, 25:8
**CALIFORNIA** [5] - 1:2, 1:14, 1:24, 3:1, 25:4
**cannot** [1] - 21:1
**Capili** [3] - 19:10, 19:24, 20:4
**careful** [1] - 9:11
**case** [22] - 4:23, 5:1, 5:19, 5:21, 6:22, 7:4, 8:15, 8:19, 10:3, 12:22, 13:13, 13:23, 13:25, 14:21, 19:2, 21:9, 21:22, 22:5, 22:6, 22:11
**Case** [1] - 1:7
**cases** [18] - 7:6, 7:7, 8:13, 10:20, 10:25, 12:11, 13:20, 13:22, 14:20, 16:5, 17:1, 19:3, 19:5, 19:14, 19:19, 19:23, 20:10
**CCRR** [1] - 1:22
**Central** [1] - 25:8
**CENTRAL** [1] - 1:2
**certain** [3] - 9:24, 15:12, 23:9
**CERTIFICATE** [1] - 25:1
**certify** [1] - 25:8
**change** [5] - 5:11, 6:20, 17:20, 18:2, 20:23
**changed** [5] - 4:19, 5:1, 5:7, 15:13, 20:22
**charging** [1] - 14:17
**choice** [2] - 7:4, 14:2
**Circuit** [3] - 17:15, 19:11, 21:10
**citing** [1] - 20:11
**claim** [2] - 10:12, 10:22
**claimants** [3] - 9:16, 14:20, 17:19
**claims** [16] - 4:20, 4:23, 4:25, 5:8, 7:25, 8:21, 9:14, 9:20, 9:22, 10:11, 11:8, 12:14, 13:4, 17:19, 18:5, 21:1
**clarification** [2] - 4:9, 7:19

**clarify** [1] - 9:13
**clarity** [1] - 4:22
**class** [11] - 9:1, 9:3, 9:4, 9:6, 9:7, 10:3, 14:3, 15:17, 15:22, 16:1, 16:2
**clear** [5] - 7:3, 8:16, 19:8, 21:13, 22:1
**clearly** [2] - 20:23, 22:3
**clerk** [1] - 23:22
**Code** [1] - 25:9
**collects** [1] - 19:11
**collusion** [1] - 17:3
**coming** [1] - 12:24
**commercial** [1] - 10:14
**companies** [1] - 18:3
**company** [3] - 9:25, 10:1, 12:3
**COMPEL** [1] - 1:13
**compel** [6] - 3:17, 5:15, 5:21, 16:13, 20:5, 21:6
**complaint** [1] - 15:5
**completely** [1] - 7:24
**Concepcion** [1] - 16:6
**concluded** [1] - 24:21
**conclusion** [2] - 4:5, 4:6
**conference** [1] - 25:13
**conferences** [1] - 14:9
**conformance** [1] - 25:13
**connection** [1] - 9:19
**consent** [1] - 20:20
**consolidate** [1] - 14:11
**consumer** [1] - 13:23
**consumers** [4] - 17:12, 18:4, 20:20, 20:24
**contained** [1] - 23:15
**contention** [1] - 6:18
**continuation** [1] - 3:17
**contract** [5] - 11:22, 11:24, 15:6, 16:8, 20:24
**contracts** [1] - 11:13
**Corp** [1] - 19:23
**correct** [7] - 4:21, 5:9, 7:18, 10:10, 10:21, 20:8, 25:10
**correctly** [2] - 8:2, 19:1

**cost** [1] - 13:10
**costly** [1] - 10:18
**costs** [8] - 10:19, 10:22, 11:15, 13:21, 14:3, 14:7, 14:19, 15:8
**counsel** [5] - 3:9, 6:17, 18:23, 20:10, 22:10
**COUNSEL** [1] - 2:1
**COUNTY** [1] - 25:3
**couple** [3] - 5:6, 6:21, 13:5
**COURT** [49] - 1:1, 1:23, 3:6, 3:13, 3:16, 3:22, 4:1, 4:11, 4:14, 5:3, 5:12, 5:17, 5:20, 5:25, 6:23, 7:6, 7:10, 8:5, 8:11, 8:23, 9:22, 10:12, 10:24, 11:11, 12:1, 13:7, 13:18, 14:24, 15:4, 15:21, 15:25, 16:11, 18:15, 18:23, 21:2, 21:5, 21:12, 21:15, 22:9, 22:20, 22:24, 23:7, 23:12, 23:21, 24:1, 24:3, 24:8, 24:13, 24:20
**court** [1] - 7:5
**Court** [28] - 4:14, 6:14, 7:19, 9:18, 15:17, 15:22, 16:1, 16:4, 16:9, 16:11, 17:15, 17:22, 18:9, 18:10, 18:12, 19:12, 19:19, 19:20, 20:2, 20:4, 20:7, 20:11, 21:18, 21:25, 22:5, 25:7, 25:20
**Court's** [6] - 9:12, 16:7, 16:10, 17:24, 20:8, 20:16
**COURTROOM** [1] - 24:7
**Courts** [3] - 15:7, 17:14, 20:21
**create** [1] - 7:24
**created** [1] - 7:12
**creates** [1] - 19:22
**creature** [1] - 16:7
**critical** [1] - 17:10
**CRR** [1] - 25:20
**CSR** [2] - 1:22, 25:20
**customer** [1] - 13:7
**CV** [1] - 1:7

**D**

**D.C** [1] - 2:6

**dah** [1] - 12:15
**date** [2] - 24:14, 24:17
**Date** [1] - 25:16
**dates** [1] - 24:5
**days** [3] - 8:21, 9:16, 24:12
**dead** [1] - 9:17
**deal** [1] - 6:3
**decade** [2] - 17:12, 17:25
**decide** [1] - 9:5
**decided** [1] - 17:20
**decision** [3] - 19:12, 23:2, 24:15
**decisions** [1] - 12:20
**DEFENDANT** [1] - 2:11
**defendant** [14] - 5:14, 6:5, 6:13, 7:11, 12:3, 14:2, 17:3, 19:21, 19:24, 20:1, 20:4, 21:7, 24:15, 24:16
**defendant's** [3] - 6:2, 13:11, 13:16
**defendant-favorable** [1] - 20:1
**defendants** [18] - 3:13, 3:15, 4:19, 5:7, 6:6, 8:3, 8:18, 9:1, 10:9, 10:13, 11:11, 11:18, 13:1, 13:19, 14:12, 14:18, 15:13, 17:19
**Defendants** [1] - 1:9
**DEFENDANTS'** [1] - 1:13
**defense** [2] - 16:12, 23:14
**denial** [3] - 21:5, 22:13, 22:14
**DEPUTY** [1] - 24:7
**determined** [1] - 10:5
**deterred** [1] - 14:20
**different** [3] - 11:15, 18:17, 22:12
**directed** [1] - 12:14
**disagree** [2] - 3:24, 4:5
**disagreeing** [1] - 14:24
**disagrees** [1] - 17:22
**disclosures** [1] - 14:14
**discreet** [1] - 18:20
**discussing** [1] - 16:21
**discussion** [6] - 6:7,

7:11, 7:17, 12:23, 16:14, 17:7
**discussions** [1] - 6:11
**District** [2] - 25:7, 25:8
**DISTRICT** [3] - 1:1, 1:2, 1:3
**district** [1] - 13:14
**DIVISION** [1] - 1:2
**divorced** [1] - 7:24
**dollar** [1] - 15:20
**done** [3] - 6:9, 14:4, 24:17
**DoorDash** [3] - 8:15, 13:13, 23:5
**down** [2] - 18:22, 19:8
**dozen** [1] - 14:9
**draft** [1] - 20:5
**drafted** [1] - 22:1
**driven** [1] - 9:19
**due** [3] - 7:25, 8:21, 9:16
**during** [1] - 6:15

**E**

**easily** [1] - 4:15
**eat** [1] - 14:18
**economics** [3] - 9:9, 11:3, 12:8
**economies** [3] - 11:16, 12:13, 13:25
**efficiencies** [1] - 14:1
**efficient** [1] - 17:21
**either** [7] - 7:4, 8:18, 11:1, 17:2, 18:11, 21:3, 23:1
**Emanuel** [1] - 3:12
**EMANUEL** [1] - 2:7
**end** [1] - 14:15
**endeavor** [1] - 22:16
**enforceability** [1] - 18:1
**enforceable** [1] - 17:16
**engaged** [2] - 10:14, 11:13
**entered** [1] - 6:21
**Entertainment** [1] - 3:7
**ENTERTAINMENT** [1] - 1:8
**entirely** [1] - 13:10
**entitled** [1] - 25:12
**Era** [5] - 17:2, 18:20, 20:25, 21:14, 22:8
**Era's** [2] - 18:10,

21:19
**especially** [1] - 12:13
**et** [1] - 1:5
**exactly** [3] - 9:13, 13:1, 20:25
**example** [1] - 10:12
**except** [1] - 23:7
**expect** [1] - 4:6
**Expeditions** [1] - 19:18
**expend** [1] - 12:12
**explains** [1] - 21:23
**expressly** [1] - 19:23
**extensive** [2] - 20:20
**extreme** [1] - 14:3

**F**

**fact** [7] - 6:15, 7:13, 7:23, 8:25, 9:24, 10:5, 15:22
**facts** [1] - 22:12
**fair** [3] - 8:9, 17:5, 17:21
**fairly** [1] - 7:3
**fait** [1] - 12:19
**faith** [1] - 22:2
**far** [1] - 12:21
**fast** [1] - 21:15
**favor** [1] - 4:14
**favorable** [1] - 20:1
**FEDERAL** [1] - 1:23
**Federal** [3] - 9:18, 25:6, 25:20
**fee** [7] - 12:10, 13:8, 13:24, 14:11, 14:17, 17:18, 18:3
**fees** [7] - 8:1, 8:18, 9:15, 9:19, 11:6, 13:3, 13:5
**field** [3] - 6:7, 8:4, 18:6
**Figueroa** [1] - 2:9
**file** [1] - 24:11
**filed** [3] - 5:14, 8:21, 22:25
**filing** [9] - 8:1, 8:18, 9:15, 9:19, 11:6, 12:10, 13:5, 17:18, 18:3
**final** [1] - 23:16
**Finish** [1] - 19:10
**firm** [4] - 6:21, 6:23, 7:1, 7:6
**firms** [2] - 14:6, 14:22
**FIRST** [1] - 1:23
**first** [3] - 3:9, 4:12, 4:19
**Fitz** [1] - 19:23

flat [1] - 14:17
flavor [4] - 15:12, 16:23, 16:24
floating [1] - 6:10
Floor [2] - 2:5, 2:9
follow [1] - 4:16
FOR [2] - 2:3, 2:11
force [1] - 9:5
foregoing [1] - 25:10
form [1] - 14:25
format [1] - 25:12
forth [1] - 16:5
forum [1] - 15:14
four [4] - 14:5, 18:9, 21:14, 21:17
fourth [1] - 21:20
Francisco [1] - 2:15
frankly [2] - 12:21, 18:21
front [2] - 11:7, 14:16

## G

generally [1] - 23:7
Geographic [1] - 19:18
GEORGE [1] - 1:3
goal [1] - 6:2
Google [1] - 7:8
great [2] - 14:5, 19:2
guess [1] - 12:22
Gutierrez [1] - 13:14

## H

happy [2] - 14:19, 21:9
hear [3] - 3:8, 21:10, 22:9
hearing [1] - 8:12
hearings [1] - 7:1
HECKMAN [1] - 1:5
Heckman [1] - 3:6
held [1] - 25:11
hereby [1] - 25:8
holding [1] - 24:14
holdings [1] - 16:25
holds [2] - 16:24, 16:25
Honor [41] - 3:10, 3:14, 3:20, 3:21, 3:23, 3:24, 4:4, 4:12, 4:18, 4:22, 5:6, 6:19, 7:18, 7:22, 8:2, 9:10, 10:10, 10:21, 11:5, 11:9, 11:21, 12:24, 12:25, 13:9, 15:24, 16:5, 16:6, 17:5, 17:6, 17:9, 18:7, 20:9, 20:10, 21:4, 21:21, 22:22,

22:23, 23:18, 23:25, 24:2, 24:19
HONORABLE [1] - 1:3
hopefully [1] - 22:21
horrible [1] - 19:22
hour [2] - 23:23, 23:24
HOURIGAN [4] - 1:22, 25:6, 25:19, 25:20
huge [2] - 13:21, 19:25
hugely [1] - 22:14
hundreds [1] - 12:10
hypocrisy [1] - 13:15

## I

idea [3] - 4:13, 4:19, 13:5
immediate [1] - 21:8
immediately [1] - 21:6
impact [1] - 9:25
important [1] - 7:23
impose [2] - 15:7, 15:14
imposed [2] - 13:21, 14:7
imposes [1] - 15:7
imposing [1] - 14:19
improper [1] - 17:3
INC [1] - 1:8
incentive [1] - 19:24
incentives [1] - 19:22
include [2] - 23:2, 23:16
including [2] - 15:1, 17:15
inconceivable [1] - 9:17
indicate [1] - 22:1
individual [7] - 13:20, 14:12, 14:14, 15:3, 15:4, 15:6, 17:19
individually [3] - 9:6, 14:8, 14:17
individuals [1] - 15:15
inferior [1] - 15:14
inform [1] - 23:22
information [1] - 23:8
initial [1] - 14:25
injunctive [1] - 22:13
inside [1] - 20:2
insofar [1] - 22:24

intentional [1] - 14:1
intentions [1] - 11:1
interest [1] - 23:6
interesting [2] - 12:23, 21:9
interests [1] - 10:9
Intuit [1] - 13:15
involved [6] - 4:23, 5:1, 5:18, 7:7, 12:22
involves [1] - 10:3
issue [8] - 4:8, 6:8, 6:10, 6:15, 7:13, 17:18, 18:3, 24:15
issued [1] - 3:18
issues [6] - 4:23, 4:25, 5:18, 5:20, 12:22, 21:9
itself [2] - 6:5, 9:25

## J

JAMS [10] - 8:17, 8:22, 9:16, 11:22, 12:3, 12:10, 13:6, 14:7, 14:10
JEFFREY [1] - 2:13
Jeffrey [1] - 3:15
JOVAIS [1] - 2:13
Jovais [1] - 3:15
JUDGE [1] - 1:3
Judge [7] - 13:13, 13:14, 13:17, 15:2, 23:5
judges [1] - 14:25
judicial [2] - 6:15, 25:13

## K

KELLER [1] - 2:4
Keller [1] - 3:11
KEVIN [1] - 2:8
Kevin [1] - 3:11
knowledge [1] - 20:1
known [1] - 7:1

## L

Lamps [1] - 16:6
language [1] - 22:4
large [1] - 7:1
last [2] - 17:6, 21:11
late [1] - 8:5
LATHAM [1] - 2:12
latter [1] - 18:24
Law [2] - 2:5, 2:8, 2:14
law [4] - 19:4, 19:6, 19:9, 21:25
lawsuits [1] - 5:14

lawyer [1] - 13:24
layers [1] - 19:21
leads [1] - 7:20
left [1] - 20:13
legal [1] - 6:7
less [2] - 16:18, 23:23
leverage [1] - 7:24
Lhotka [1] - 19:18
light [1] - 17:17
limit [1] - 21:20
limited [1] - 21:23
Line [1] - 19:10
line [1] - 20:3
lines [2] - 8:8, 13:12
Lisa [1] - 19:18
lists [1] - 14:15
literature [1] - 8:4
litigation [2] - 9:18, 11:4
Live [4] - 3:7, 6:20, 7:4, 17:11
LIVE [1] - 1:8
LLC [1] - 2:4
LLP [2] - 2:7, 2:12
look [4] - 16:15, 18:8, 19:14, 20:16
looking [1] - 8:13
Los [1] - 2:9
LOS [4] - 1:14, 1:24, 3:1, 25:3
loss [1] - 9:17
love [1] - 14:2
low [3] - 13:22, 13:25, 14:20
low-value [3] - 13:22, 13:25, 14:20

## M

MacClellan [1] - 19:2
major [1] - 7:13
Marcus [1] - 19:14
mass [3] - 6:3, 6:4, 7:23
massive [1] - 7:24
math [2] - 8:15, 8:16
matter [7] - 3:6, 21:8, 22:20, 24:6, 24:10, 24:13, 25:12
matters [1] - 16:8
mean [8] - 5:3, 5:4, 8:7, 10:17, 10:19, 11:1, 12:15, 21:5
meant [1] - 6:12
mentioned [3] - 16:6, 17:10, 21:17
mentions [1] - 18:9
mere [1] - 15:22

merit [3] - 10:11, 10:22, 10:25
merits [3] - 7:25, 9:20, 13:4
million [4] - 8:20, 9:14, 9:15, 15:20
mind [1] - 4:2
misplaced [2] - 17:8, 18:8
missing [2] - 15:11, 15:16
model [1] - 22:4
money [1] - 8:22
Montgomery [1] - 2:14
months [1] - 6:21
morning [2] - 3:10, 3:14
most [2] - 9:1, 19:25
motion [1] - 3:17
MOTION [1] - 1:13
motions [1] - 16:12
mounting [2] - 4:20, 5:8
MR [49] - 3:10, 3:14, 3:20, 3:21, 3:23, 4:4, 4:12, 4:17, 5:4, 5:16, 5:18, 5:23, 6:19, 6:25, 7:9, 7:18, 8:9, 8:12, 9:10, 10:10, 10:21, 11:5, 11:20, 12:24, 13:9, 13:19, 15:3, 15:5, 15:10, 15:24, 16:4, 17:5, 18:19, 18:25, 20:9, 21:4, 21:11, 21:13, 21:17, 22:11, 22:22, 22:23, 23:3, 23:11, 23:18, 23:25, 24:2, 24:12, 24:19
multi [1] - 15:20
multi-million [1] - 15:20
multiple [1] - 20:21
must [1] - 16:10
mutual [2] - 20:12, 22:15

## N

N.W [1] - 2:5
NATION [1] - 1:8
Nation [3] - 3:7, 7:4, 17:11
Nation's [1] - 6:20
nature [2] - 7:17, 9:22
NCR [1] - 19:23
necessarily [4] - 6:13, 8:8, 11:1, 16:17

**negotiable** [1] - 13:1
**negotiate** [4] - 11:11, 11:15, 12:6, 13:3
**negotiating** [1] - 11:19
**Neiman** [1] - 19:14
**net** [1] - 17:24
**neutral** [1] - 13:6
**new** [1] - 14:23
**New** [7] - 17:2, 18:10, 18:20, 20:25, 21:14, 21:19, 22:8
**nice** [2] - 24:4, 24:20
**Ninth** [2] - 17:15, 19:11
**NO** [2] - 1:22, 25:20
**non** [2] - 20:12, 22:15
**non-mutual** [2] - 20:12, 22:15
**normal** [2] - 9:2, 11:3
**normally** [1] - 12:12
**nothing** [3] - 8:13, 11:9, 17:18
**notice** [4] - 6:15, 17:13, 17:25, 20:20
**number** [1] - 21:9
**numbers** [1] - 7:1
**numerous** [2] - 17:14, 20:17

## O

**o'clock** [1] - 23:21
**O'Mara** [2] - 3:14, 6:25
**O'MARA** [34] - 2:12, 3:14, 3:21, 3:23, 4:4, 4:12, 4:17, 5:4, 5:16, 5:18, 5:23, 7:18, 8:9, 8:12, 9:10, 10:10, 10:21, 11:5, 11:20, 12:24, 15:10, 15:24, 16:4, 17:5, 18:19, 20:9, 21:11, 21:13, 21:17, 22:22, 23:18, 23:25, 24:12, 24:19
**Oberstein** [2] - 5:16, 6:22
**obviously** [3] - 5:13, 22:15, 24:15
**occurred** [1] - 6:20
**OF** [6] - 1:2, 1:12, 2:1, 25:1, 25:3, 25:4
**Official** [1] - 25:6
**OFFICIAL** [2] - 1:23, 25:1
**once** [3] - 14:22, 23:24, 24:16
**one** [18] - 4:17, 5:2,

9:4, 10:20, 11:14, 12:2, 12:14, 12:17, 14:11, 14:15, 19:15, 20:11, 20:12, 20:22, 21:11, 22:13, 22:15, 23:19
**oOo** [1] - 3:3
**opinion** [1] - 23:5
**opposed** [1] - 14:2
**outcome** [1] - 9:18
**overall** [1] - 18:21
**own** [1] - 21:22

## P

**page** [2] - 4:17, 25:12
**pages** [1] - 4:15
**paid** [3] - 8:22, 9:16, 11:6
**parrot** [1] - 20:2
**part** [4] - 6:2, 14:2, 18:19, 18:20
**particular** [4] - 7:12, 8:25, 10:14, 22:10
**particularly** [1] - 20:24
**parties** [1] - 16:9
**partly** [1] - 11:25
**party** [3] - 11:23, 17:18, 22:18
**pay** [3] - 13:8, 13:24, 17:18
**paying** [2] - 8:3, 18:3
**pending** [7] - 4:24, 5:1, 5:5, 5:10, 5:11, 6:1, 7:12
**per** [3] - 6:9, 8:19, 16:22
**permeated** [3] - 19:7, 20:6, 20:15
**personally** [1] - 4:3
**persons** [1] - 10:15
**piece** [1] - 22:16
**Pinela** [1] - 19:14
**place** [1] - 24:14
**place-holding** [1] - 24:14
**PLAINTIFF** [1] - 2:3
**plaintiff** [1] - 13:23
**plaintiff's** [6] - 3:9, 6:17, 18:23, 20:10, 21:22, 22:10
**plaintiffs** [4] - 13:22, 14:4, 14:5
**Plaintiffs** [1] - 1:6
**playing** [1] - 18:6
**Plus** [1] - 16:6
**plus** [1] - 17:25
**point** [20] - 5:25,

6:16, 6:19, 7:3, 7:20, 12:24, 13:5, 15:11, 15:16, 17:6, 17:10, 19:2, 19:3, 19:13, 20:17, 21:11, 22:10, 22:17
**pointed** [2] - 6:25, 8:2
**pointing** [1] - 10:23
**points** [3] - 4:9, 18:9, 18:10
**policy** [1] - 19:20
**portions** [1] - 23:1
**position** [2] - 9:12, 16:7, 21:2
**positions** [1] - 13:16
**possible** [2] - 10:2, 20:1
**POSTMAN** [18] - 2:4, 2:4, 3:10, 3:20, 6:19, 6:25, 7:9, 13:9, 13:19, 15:3, 15:5, 18:25, 21:4, 22:11, 22:23, 23:3, 23:11, 24:2
**Postman** [1] - 3:11
**Postmates** [2] - 13:14
**potential** [2] - 6:3, 10:22
**potentially** [3] - 10:17, 13:22, 15:20
**power** [1] - 22:18
**practice** [2] - 10:13, 10:14
**practices** [1] - 9:24
**preclude** [1] - 9:6
**presume** [5] - 3:18, 8:23, 10:25, 11:18, 21:7
**prevent** [1] - 12:1
**previous** [1] - 5:14
**previously** [1] - 5:23
**problem** [1] - 12:5
**procedural** [2] - 16:15, 16:18
**proceed** [1] - 7:4
**proceedings** [2] - 24:21, 25:11
**process** [2] - 14:14, 20:1
**proprietary** [1] - 23:11
**Proprietary** [1] - 23:12
**prosecution** [1] - 14:3
**prospect** [2] - 7:13, 10:8
**protect** [1] - 11:16
**provider** [4] - 11:7,

13:2, 17:20, 18:13
**providers** [10] - 4:20, 5:2, 5:7, 11:14, 11:19, 15:13, 17:20, 18:2, 20:19, 20:23
**provision** [7] - 17:12, 18:1, 18:20, 18:21, 19:7, 19:16, 22:1
**provisions** [2] - 19:22, 20:6
**public** [4] - 23:4, 23:6, 23:10, 23:13
**published** [1] - 23:2
**purchase** [1] - 10:15
**purpose** [1] - 6:14
**pursuant** [1] - 25:9
**put** [7] - 6:1, 11:1, 11:23, 12:4, 21:5, 24:10, 24:13
**puts** [1] - 14:3
**putting** [1] - 7:4

## Q

**quickly** [1] - 21:13
**QUINN** [1] - 2:7
**Quinn** [1] - 3:12
**quo** [1] - 17:17
**quote** [1] - 5:8

## R

**raise** [1] - 4:9
**raising** [1] - 8:9
**rates** [1] - 23:9
**read** [3] - 23:19, 23:23, 23:24
**reality** [1] - 15:16
**really** [4] - 12:17, 15:8, 16:22, 19:15
**Realtime** [1] - 25:6
**reason** [10] - 5:7, 6:10, 8:25, 9:4, 14:6, 15:21, 16:1, 16:4, 16:11, 20:25
**reasonably** [1] - 17:21
**reasoning** [1] - 4:5
**reasons** [2] - 21:18, 22:7
**received** [1] - 17:12
**recognized** [1] - 13:15
**record** [5] - 4:10, 4:22, 9:13, 21:13, 22:3
**refer** [1] - 4:14
**referencing** [1] - 4:15
**regard** [2] - 10:9,

12:13
**regulations** [1] - 25:13
**relates** [1] - 23:8
**relationship** [1] - 11:7
**release** [1] - 23:16
**relief** [1] - 22:13
**remember** [2] - 7:8, 23:10
**repeatedly** [1] - 17:14
**reported** [1] - 25:11
**REPORTER** [2] - 1:23, 25:1
**Reporter** [2] - 25:7, 25:20
**REPORTER'S** [1] - 1:12
**represent** [1] - 13:25
**request** [3] - 5:14, 6:1, 21:6
**requests** [2] - 5:21, 5:23
**required** [3] - 13:20, 14:8, 15:6
**requirement** [1] - 15:1
**resolved** [1] - 9:2
**respectfully** [6] - 3:24, 4:1, 4:5, 17:7, 18:7, 22:7
**respond** [1] - 7:16
**response** [6] - 4:20, 5:8, 6:17, 18:2, 18:24, 22:10
**result** [1] - 17:24
**results** [1] - 9:8
**rich** [1] - 15:8
**ROOM** [1] - 1:23
**RPR** [1] - 25:20
**rule** [1] - 19:15
**rules** [7] - 18:11, 18:14, 20:17, 21:14, 21:18, 21:19
**ruling** [1] - 17:24

## S

**SAM** [1] - 2:13
**Sam** [1] - 3:15
**San** [1] - 2:15
**Sanchez** [1] - 22:5
**sat** [1] - 14:9
**saw** [1] - 18:3
**scale** [3] - 12:13, 14:1, 16:17
**scales** [1] - 11:16
**scheme** [1] - 14:23
**se** [2] - 6:9, 16:22

**UNITED STATES DISTRICT COURT**

seal [1] - 22:25
second [2] - 4:18, 7:20
secret [1] - 23:9
Section [1] - 25:9
secure [1] - 20:1
see [2] - 21:10, 22:17
seem [1] - 16:21
select [1] - 11:23
selection [1] - 14:14
selects [1] - 18:20
send [1] - 18:17
sense [3] - 9:21, 13:3, 15:12
separate [1] - 13:20
September [2] - 24:14, 24:17
service [1] - 11:19
services [1] - 11:12
set [1] - 16:5
settlement [1] - 7:24
sever [3] - 18:17, 18:19, 19:16
severability [4] - 17:8, 17:24, 18:7, 19:4
severable [2] - 20:23, 21:24
several [1] - 19:2
severed [2] - 20:13, 22:8
shape [1] - 14:25
show [1] - 19:3
side [6] - 11:2, 20:13, 21:3, 22:15, 23:1, 24:11
sides [2] - 3:18, 21:2
signing [1] - 11:24
simple [1] - 9:9
single [3] - 8:17, 20:11, 20:18
situation [8] - 6:3, 6:4, 7:10, 7:17, 8:25, 9:8, 13:10, 15:1
situations [2] - 5:22, 12:10
size [1] - 12:3
SKOT [1] - 1:5
sliding [1] - 16:17
solely [2] - 6:9, 6:14
sorry [1] - 15:24
sort [13] - 9:12, 10:6, 10:13, 10:20, 11:14, 11:17, 12:8, 12:16, 12:19, 16:23, 17:3, 17:9, 18:6
South [1] - 2:9
speaking [1] - 21:15
spell [2] - 19:15,

20:25
spot [1] - 7:20
standard [2] - 14:17, 21:23
standards [1] - 16:20
started [2] - 14:6, 14:22
starting [1] - 3:8
STATE [1] - 25:4
STATES [1] - 1:1
States [2] - 25:7, 25:9, 25:14
status [1] - 17:17
stenographically [1] - 25:11
Stiegler [1] - 21:22
still [1] - 16:12
stip [1] - 24:17
straightforward [1] - 19:4
strategic [1] - 14:1
strategy [1] - 15:14
Street [2] - 2:9, 2:14
STREET [1] - 1:23
strike [1] - 14:15
strong [2] - 13:17, 16:18, 19:20
stuff [1] - 16:21
subject [2] - 6:5, 13:4
subjected [1] - 6:6
submission [1] - 22:20
submit [2] - 17:7, 22:7
substantial [1] - 10:11
substantive [4] - 16:16, 16:19, 18:9, 21:18
suddenly [1] - 15:7
sufficiently [1] - 22:1
suggest [1] - 23:3
suggests [1] - 5:6
Suite [1] - 2:14
SULLIVAN [1] - 2:7
superior [1] - 22:18
supposed [1] - 18:17
Supreme [9] - 15:17, 15:21, 16:1, 16:4, 16:7, 16:9, 16:11, 19:12, 22:5
swing [1] - 19:25
switched [1] - 20:19

**T**

tentative [20] - 3:18, 3:25, 4:15, 5:6, 7:21, 15:11, 15:13, 16:14,

16:24, 16:25, 17:7, 17:11, 18:8, 18:22, 18:25, 20:8, 20:16, 22:25, 23:15, 23:17
terms [4] - 11:15, 11:24, 22:17, 23:10
TERRI [4] - 1:22, 25:6, 25:19, 25:20
Teruya [1] - 3:11
TERUYA [1] - 2:8
THE [50] - 2:3, 2:11, 3:6, 3:13, 3:16, 3:22, 4:1, 4:11, 4:14, 5:3, 5:12, 5:17, 5:20, 5:25, 6:23, 7:6, 7:10, 8:5, 8:11, 8:23, 9:22, 10:12, 10:24, 11:11, 12:1, 13:7, 13:18, 14:24, 15:4, 15:21, 15:25, 16:11, 18:15, 18:23, 21:2, 21:5, 21:12, 21:15, 22:9, 22:20, 22:24, 23:7, 23:12, 23:21, 24:1, 24:3, 24:7, 24:8, 24:13, 24:20
themselves [1] - 11:16
therefore [1] - 9:5
thinking [3] - 7:6, 8:8, 17:23
thinks [1] - 18:12
third [2] - 11:23, 17:18
third-party [1] - 11:23
thousands [3] - 7:15, 12:11, 14:6
three [6] - 4:9, 14:4, 18:10, 19:17, 21:14, 21:17
THURSDAY [1] - 3:1
Thursday [1] - 1:13
tickets [1] - 10:16
Tim [1] - 3:14
TIMOTHY [1] - 2:12
Title [1] - 25:9
TO [1] - 1:13
to-be-careful-what-you-ask-for [1] - 9:11
today [4] - 8:12, 22:21, 23:21, 24:9
transaction [2] - 13:21, 15:8
transactions [1] - 14:19
transcript [2] - 25:10, 25:12
TRANSCRIPT [1] - 1:12

tried [2] - 13:3, 18:2
Triple [5] - 11:22, 13:6, 14:7, 14:10
true [2] - 11:5, 25:10
try [1] - 22:17
trying [1] - 9:12
two [1] - 19:17
types [2] - 9:24, 12:9
typically [1] - 11:23

**U**

U.S [1] - 1:3
Uber [1] - 8:14
unconscionability [9] - 16:12, 16:15, 16:16, 16:18, 16:19, 18:9, 19:7, 20:3, 20:15
unconscionable [4] - 11:14, 19:16, 19:21, 21:19
under [4] - 8:17, 19:6, 22:20, 22:25
underlying [3] - 7:25, 9:20, 11:8
unenforceable [1] - 20:6
unfair [4] - 15:7, 15:10, 22:15, 22:18
United [3] - 25:7, 25:9, 25:14
UNITED [1] - 1:1
unless [1] - 11:12
up [3] - 11:7, 14:16, 14:23
upheld [2] - 17:15, 20:21
URQUHART [1] - 2:7
utilize [1] - 10:15

**V**

valid [1] - 17:16
value [7] - 10:5, 10:6, 10:8, 10:16, 13:22, 13:25, 14:20
vehemently [1] - 4:2
Vermont [1] - 2:5
versa [1] - 16:19
version [1] - 23:16
versus [3] - 3:6, 19:10, 19:14
vice [1] - 16:19
view [1] - 11:3
violation [1] - 10:6
virtually [1] - 20:16
vs [1] - 1:7

**W**

waivers [3] - 15:17, 15:22, 16:1
waiving [1] - 16:2
wants [1] - 20:4
Warren [1] - 3:10
WARREN [1] - 2:4
Washington [1] - 2:6
WATKINS [1] - 2:12
websites [1] - 10:15
weight [1] - 9:17
WEST [1] - 1:23
whole [4] - 13:10, 14:23, 16:14, 19:8
WOLFSON [1] - 2:7
Wolfson [1] - 3:11
won [1] - 7:11
words [6] - 9:24, 10:3, 13:17, 18:15
works [3] - 8:16, 9:13, 11:20
world [3] - 15:19, 20:19
worth [1] - 10:1
WU [1] - 1:3

**Z**

zoom [1] - 13:19