QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
  William R. Sears (Bar No. 330888)
  willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN LLC
  Warren Postman (Bar No. 330869)
  wdp@kellerpostman.com
  Albert Pak (admitted *pro hac vice*)
  albert.pak@kellerpostman.com
1100 Vermont Avenue, N.W., 12th Floor
Washington, D.C. 20005
Telephone: (202) 918-1123

*Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated*

UNITED STATES DISTRICT COURT
FOR THE CENTRAL DISTRICT OF CALIFORNIA, WESTERN DIVISION

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>Defendants. | Case No: 2:22-cv-00047-GW-GJS<br><br>**PLAINTIFFS' MOTION TO ENJOIN IMPOSING A MODIFIED ARBITRATION CLAUSE ON ANTITRUST CLAIMS IN THIS CASE**<br><br>The Honorable George H. Wu |

# TABLE OF CONTENTS

TABLE OF AUTHORITIES ...................................................................................... ii

INTRODUCTION ..................................................................................................... 1

FACTUAL AND PROCEDURAL BACKGROUND ............................................... 3

    A.    Defendants Select New Era ADR To Gain A Litigation Advantage Against Antitrust Claimants. .................................................................. 3

    B.    Defendants and New Era Work Together During Briefing On The Motion to Compel. ................................................................................. 5

    C.    The Court Holds That Defendants' Arbitration Delegation Clause is Unconscionable And Non-Severable. ........................................................ 6

ARGUMENT .............................................................................................................. 7

I.    The Court Should Enjoin Defendants From Re-imposing An Arbitration Clause Covering These Claims ........................................................................ 7

    A.    Plaintiffs Are Likely To Succeed On The Merits ....................................... 7

        1.    The All Writs Act Authorizes The Court To Issue Injunctions ........ 8

        2.    An All Writs Act Injunction Is Proper In This Case ...................... 10

    B.    Plaintiffs Would Suffer Irreparable Harm Without An Injunction ........... 12

    C.    The Balance Of The Equities And The Public Interest Favor An Injunction ................................................................................................ 12

II.    Issuing An Injunction Is Consistent With Staying This Case Pending Appeal .. 13

CONCLUSION ........................................................................................................ 15

# TABLE OF AUTHORITIES

## Cases

*American Pipe & Construction Co. v. Utah*,
  414 U.S. 538 (1974) .................................................................................... 12

*Arizona Dream Act Coal. v. Brewer*,
  757 F.3d 1053 (9th Cir. 2014) .................................................................... 12

*Burr & Forman v. Blair*,
  470 F.3d 1019 (11th Cir. 2006) ............................................................. 9, 10

*California Chamber of Com. v. Becerra*,
  529 F. Supp. 3d 1099 (E.D. Cal. 2021) .................................................... 8, 11

*California Chamber of Com. v. Council for Educ. & Rsch. on Toxics*,
  29 F.4th 468 (9th Cir. 2022) ......................................................................... 8

*Carlough v. Amchem Prod., Inc.*,
  10 F.3d 189 (3d Cir. 1993) ..................................................................... 8, 11

*City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*,
  944 F.3d 773 (9th Cir. 2019) ........................................................................ 7

*Coinbase, Inc. v. Bielski*,
  143 S. Ct. 1915 (2023) ........................................................................... 6, 13

*Equal Emp. Opportunity Comm'n v. Locs. 14 & 15, Int'l Union of Operating Engineers*,
  438 F. Supp. 876 (S.D.N.Y. 1977) ............................................................. 15

*FedEx Ground Package Sys., Inc. v. Vic Jackson Transp., Inc.*,
  No. 12-2228, 2012 WL 2953218 (D. Kan. July 19, 2012) .......................... 9

*Flanagan v. Arnaiz*,
  143 F.3d 540 (9th Cir. 1998) ................................................................. 8, 11

*In re Am. Exp. Fin. Advisors Sec. Litig.*,
  672 F.3d 113 (2d Cir. 2011) .................................................................. 9, 11

*In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*,
  770 F.2d 328 (2d Cir. 1985) .................................................................. 9, 10

*In re Lease Oil Antitrust Litig. No. II*,
  48 F. Supp. 2d 699 (S.D. Tex. 1998) ........................................................... 9

*ITT Cmty. Dev. Corp. v. Barton*,
  569 F.2d 1351 (5th Cir. 1978) .................................................................... 10

*JW Gaming Dev., LLC v. James*,
  544 F. Supp. 3d 903 (N.D. Cal. 2021) ...................................................... 7, 8

*Kidder, Peabody & Co. v. Maxus Energy Corp.*,
  925 F.2d 556 (2d Cir. 1991) ....................................................................... 15

*Madrid v. Lazer Spot, Inc.*,
　No. 1:19-cv-0669, 2020 WL 4274218 (E.D. Cal. July 24, 2020) .......................... 9

*Mayweathers v. Newland*,
　258 F.3d 930 (9th Cir. 2001) ............................................................................... 14

*Morgan Stanley & Co., LLC v. Couch*,
　134 F. Supp. 3d 1215 (E.D. Cal. 2015) ............................................................ 9, 11

*Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*,
　242 F.3d 1163 (9th Cir. 2001) ........................................................................ 14, 15

*Sec. & Exch. Comm'n v. G. C. George Sec., Inc.*,
　637 F.2d 685 (9th Cir. 1981) ............................................................................ 8, 11

*United States v. New York Tel. Co.*,
　434 U.S. 159 (1977) .............................................................................................. 12

*Winter v. Nat. Res. Def. Council, Inc.*,
　555 U.S. 7 (2008) .................................................................................................... 7

*Wood v. Santa Barbara Chamber of Commerce, Inc.*,
　705 F.2d 1515 (9th Cir. 1983) .......................................................................... 8, 11

**Statutes**

28 U.S.C. § 1651 ............................................................................................................ 3, 8

28 U.S.C. § 2283 ............................................................................................................... 10

**Other Authorities**

16A C. Wright, A. Miller, E. Cooper, & C. Struve, *Federal Practice and Procedure* § 3949.1, (5th ed. 2019) ........................................................................ 15

# INTRODUCTION

Plaintiffs seek relief from the Court under the All Writs Act, to prevent Defendants Live Nation and Ticketmaster from trying to disrupt the Court's management of this case by again rewriting their Terms of Use ("Terms") to impose a new arbitration clause covering the antitrust claims before this Court.

Defendants have shown they have no qualms about unilaterally modifying the arbitration clause in their Terms to evade accrued claims. They did this in 2021, updating their Terms to require arbitration through New Era, rather than JAMS. At that time, as the Court will recall, the Court was considering another motion to compel arbitration as to highly similar antitrust claims in a prior class action, *Oberstein v. Live Nation*. The timing and substance of Defendants' switch to New Era made clear they knew they faced the prospect of substantial numbers of arbitration and were willing to employ click-wrap contracting tactically to gain a procedural advantage over their consumers.

Defendants' actions prompted this second lawsuit, in which the named Plaintiffs specifically noted Defendants' switch to New Era and why this unconscionable switch entitled them to proceed in Court. *See* Dkt. 1 ¶¶ 1-5. On August 10, 2023, this Court denied Defendants' motion to compel arbitration, holding that Defendants' switch to New Era was procedurally and substantively unconscionable. As a result, Defendants must face Plaintiffs' proposed class action in court. But Defendants have already indicated they intend to appeal the Court's unconscionability ruling. And Defendants will no doubt seek a stay of litigation in this Court pursuant to the Supreme Court's recent decision in *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1919 (2023). During that stay, they will do what they have done before: push new Terms onto their website. The new Terms will likely purport to bind anyone who purchases tickets, logs into a Ticketmaster account to retrieve prior tickets, or opens a mobile application. Defendants have already purported to apply new Terms retroactively to the antitrust claims now pending in this Court by putative class members.

The "remarkable degree of coordination between Latham and New Era in terms

of their interpretation and the evolution of New Era's Rules" will presumably continue while this case is stayed pending appeal. Dkt. 202 ("Arb. Order") at 16, n.13. And New Era, which tried to change its rules to affect this Court's resolution of the motion to compel, has already told reporters that it intends to further alter its rules going forward.[1]

Defendants' and New Era's past conduct, as well as New Era's recent comments, reinforce the likelihood that they will try to disrupt this Court's oversight of the pending class action during the appeal. Worse still, if Defendants are allowed to roll out a new arbitration agreement that applies to the claims in this case, they will be able to argue for an infinite loop of appeals and stays. That is, if the Ninth Circuit affirms and remands in this case, Defendants can simply file a *renewed* motion to compel arbitration under the new Terms and, if that is denied, file another appeal and request for another stay. The cycle has no necessary end. The result would undermine this Court's jurisdiction to administer this case moving forward, and effectively nullify the Court's order.

In particular, applying a new arbitration clause to these claims would nullify the Court's severability ruling. Applying the public policy analysis required by California law, the Court determined that severance was unwarranted because "the way in which Defendants effected the changes … indicates a 'systematic effort to impose arbitration on a customer as an inferior forum' to avoid having to arbitrate consumer claims individually." Arb. Order at 29 (quoting *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1046 (N.D. Cal. 2022)). Worse, "these efforts were *by design*" and the unfair "effects of these unconscionable provisions were 'entirely foreseeable and *intended*.'" *Id.* (emphasis added). Severance would have rewarded Defendants' brazen behavior, encouraging them "to retain unenforceable provisions designed to chill customers' vindication of their rights, then simply propose to sever these provisions in the rare event that they are challenged successfully in court." *Id.* (internal quotation omitted).

Repeatedly modifying an arbitration clause with respect to the very same claims

---

[1] https://www.reuters.com/legal/litigation/live-nation-consumer-ticket-price-lawsuit-loses-bid-mass-arbitration-2023-08-11/ (stating that the Court's order "offers a useful roadmap to improve our mass arbitration protocols").

2   PLAINTIFFS' MOTION TO ENJOIN
CASE NO. 2:22-CV-00047-GW-GJS

is just as bad as imposing a multi-layered severability clause, as Defendants did before. Defendants could accomplish the same result, trying one tactic after another to see which works, furthering the same design, and intending the same result: to eliminate their antitrust liability by manipulating arbitration procedures, all while demanding that litigation be stayed while they pursue these tactics and appeal their rejection.

This Court has well-established authority under the All Writs Act to stop this sort of interference with a case pending before it. That statute empowers courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). This authority is flexible and allows courts to enjoin conduct that challenges their jurisdiction by attempting to move litigation to a different forum. An injunction is warranted here to protect this Court's authority over this case, since otherwise Defendants' arbitration tactics would prevent the Court from meaningfully resolving the claims alleged. An injunction is also warranted to ensure the integrity of the Court's order denying arbitration, which Defendants otherwise could circumvent.

To be clear, Plaintiffs do not ask the Court to bar Defendants from rolling out a new arbitration agreement that would apply to *other disputes* not before this Court. If Defendants stipulate to carve out this pending dispute from any new arbitration agreement, Plaintiffs will withdraw this motion. But so long as Defendants purport to reserve the right to disrupt *this case* through a new arbitration agreement, this Court has ample authority—and good reason—to enjoin Defendants from applying any future arbitration clause to the accrued claims in this putative class action.

## FACTUAL AND PROCEDURAL BACKGROUND

### A. Defendants Select New Era ADR To Gain A Litigation Advantage Against Antitrust Claimants.

After Plaintiff Mitch Oberstein and others filed a class action antitrust suit against them, Ticketmaster and Live Nation knew thousands of other consumers had identical claims. They also knew that Keller Postman, a firm that is widely known for pursuing

large numbers of consumer claims simultaneously in arbitration, was focused on these particular claims. *See* Dkt. 195 (Defendants' briefing acknowledging that Keller Postman "gave rise to the concept of 'mass arbitration,' and establish[ed] the paradigm for what mass arbitration is"); *Oberstein v. Live Nation Ent., Inc.*, No. 2:20-cv-03888, Dkt. 72 (C.D. Cal., Jan. 22, 2021) (notice of appearance by Warren Postman). In *Oberstein*, Defendants moved to compel arbitration before JAMS, but before the Court had even ruled on their motion, they searched out alternatives. Arb. Order at 3.

Defendants settled on New Era ADR, a company that "had not yet conducted any arbitrations and had not finalized its Rules," but promised to serve as a "critical prophylactic measure for client's mass arbitration risk." *Id.* at 3, 21. After weeks of negotiation, Defendants signed on as New Era's first subscriber, and within a day New Era published its arbitration rules. *Id.* at 3. Cognizant that New Era's rules might be found too aggressively favorable for a court to enforce, Defendants also vetted a "backup arbitration provider," which was "another relatively new arbitration provider." *Id.* at 29. With the groundwork set, they quietly pushed an update to their Terms, which retroactively governed "ANY DISPUTE … IRRESPECTIVE OF WHEN THAT DISPUTE … AROSE." *Id.* at 11 (quoting TOU at 10). The goal was to force *all* potential antitrust claimants who "merely … opened Defendants' website" to arbitrate using New Era. *Id.*

This behavior was far from ordinary litigation planning; it was blatantly unconscionable, and *intentionally so*:

> the manner in which Defendants imposed the changes to their TOU evinces an extreme amount of procedural unconscionability far above and beyond a run-of-the-mill contract-of-adhesion case. Specifically, the TOU were amended: (1) to bring about a significant change in the parties' agreement (from individual, bilateral arbitration to mass arbitration); (2) unilaterally; (3) in the midst of ongoing litigation; (4) to be applied retroactively to already accrued claims; (5) without giving any notice to existing customers about this major change; and (6) while burying the true nature of this change in New Era's difficult-to-parse Rules.

*Id.* at 9-10. Forcing the arbitration provision on consumers was only half of the plan.

The other half was using arbitration procedures that favored Defendants:

> the TOU and New Era's Rules contain several elements supporting a finding of substantive unconscionability, specifically: (1) the mass arbitration protocol including the application of precedent from the bellwether decisions to other claimants plus the lack of corresponding procedural safeguards; (2) the lack of a right to discovery and other procedural limitations; (3) the arbitrator selection provisions; and (4) the limited right of appeal.

*Id.* at 27. New Era's procedures were especially hostile to antitrust claims such as those the *Oberstein* plaintiffs had *already* brought, because those claims "are notoriously complex and fact-intensive" requiring "extensive discovery," briefing, and so forth to prove a *prima facie* case—none of which New Era allowed. *Id.* at 23, n.19.

### B. Defendants and New Era Work Together *During* Briefing On The Motion to Compel.

During the briefing, Defendants and New Era worked together against Plaintiffs. They both at first professed one view of the rules (for example, that precedent bound those who had not yet filed a claim), but jointly shifted positions after this Court's tentative ruling. *E.g.*, Arb. Order at 20 ("[B]oth Defendants and New Era have contradicted their prior representations about what the Rules actually mean."); *id.* at 17, n.14 ("New Era changed its Rules specifically in response to the Court's concerns in this litigation."). There were "joint defense efforts between Latham and New Era in connection with th[e] Motion" to compel, culminating in "a remarkable degree of coordination between Latham and New Era in terms of their interpretation and the evolution of New Era's Rules." *Id.* at 16, n.13. Indeed, New Era weighed in with rule changes during briefing on the motion to compel not once, but twice. *See* Dkt. 163 & 192. The Court rightfully gave little weight to the revised rules, because "unconscionability of a contract or a contract clause is determined based on the law and facts at the time of the agreement." *Id.* at 17, n.14 (quoting *Yerkovich v. MCA, Inc.*, 11 F. Supp. 2d 1167, 1173 (C.D. Cal. 1997)).

### C. The Court Holds That Defendants' Arbitration Delegation Clause is Unconscionable And Non-Severable.

Ultimately, the Court denied Defendants' motion to compel arbitration because the delegation clause of Defendants' arbitration clause was unconscionable. Critically, the Court declined to sever the unconscionable elements, which were there "by design" and whose effects "were 'entirely foreseeable and intended.'" *Id.* at 29 (quoting *MacClelland v. Cellco P'ship*, 609 F. Supp. 3d 1024, 1046 (N.D. Cal. 2022)). The broader problem with severance was an incentives problem. If severance were readily available, Defendants would predictably impose "unenforceable provisions designed to chill customers' vindication of their rights, then simply propose to sever these provisions in the rare event that they are challenged successfully in court." *Id.* (internal quotation omitted).

Defendants have not yet filed a notice of appeal but have indicated they plan to do so. Aug. 10 Hr'g Tr. at 24. When they do, they will presumably ask this Court to stay litigation of the merits in this action under *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1919 (2023). If Defendants have free rein to update their Terms as to the claims asserted in this lawsuit, there is a high risk they will attempt to impose another arbitration clause applicable to these accrued claims during the year-or-more the appeal is pending. Then, when the case is remanded, they will have every incentive to file a renewed motion to compel arbitration under the *new* Terms. If the Court denies that motion, they can appeal *again*, and receive a stay *again*. Unless the Court at some point enjoins Defendants from imposing a new arbitration clause, nothing would stop them from creating an infinite loop—antitrust litigation that never progresses or resolves. This, of course, would be highly beneficial for Defendants, but it would effectively deprive this Court of jurisdiction over claims it ruled must proceed here. Furthermore, this tactic would leave Plaintiffs with a Hobson's choice: either face endless appeals of rulings on Defendant's unconscionability, or submit to an unconscionable process. The Court should rule out any such tactics now, as the resulting harm to Plaintiffs would be irreversible.

# ARGUMENT

So long as Defendants reserve for themselves the right to attempt such tactics, the Court should protect its jurisdiction over this case by issuing a narrow injunction preventing Defendants from requiring arbitration of these antitrust claims in any future arbitration clause they include in their Terms. To be clear, Plaintiffs do not seek an order barring Defendants from making *any* changes to their Terms. Rather, Plaintiffs seek only a narrow, targeted injunction requiring that any new arbitration clause Defendants impose must carve out the antitrust claims held by putative class members *in this case*.

## I. The Court Should Enjoin Defendants From Re-imposing An Arbitration Clause Covering These Claims

The standard for a preliminary injunction is familiar. A plaintiff can show: "[1] that he is likely to succeed on the merits, [2] that he is likely to suffer irreparable harm in the absence of preliminary relief, [3] that the balance of equities tips in his favor, and [4] that an injunction is in the public interest." *Winter v. Nat. Res. Def. Council, Inc.*, 555 U.S. 7, 20 (2008). Alternatively, "'serious questions going to the merits' and a balance of hardships that tips sharply towards the plaintiff can support issuance of a preliminary injunction, so long as the plaintiff also shows that there is a likelihood of irreparable injury and that the injunction is in the public interest." *City & Cnty. of San Francisco v. United States Citizenship & Immigr. Servs.*, 944 F.3d 773, 788–89 (9th Cir. 2019) (quoting *All. for the Wild Rockies v. Cottrell*, 632 F.3d 1127, 1135 (9th Cir. 2011)).

### A. Plaintiffs Are Likely To Succeed On The Merits

For All Writs Act preliminary injunctions, the "merits" question is whether the injunction is likely to be "necessary or appropriate in aid of [the court's] jurisdiction." 28 U.S.C. § 1651(a); *see JW Gaming Dev., LLC v. James*, 544 F. Supp. 3d 903, 919–20 (N.D. Cal. 2021) ("[L]ikelihood of success on the merits, for present purposes, requires showing that the Tribal Court Action undermines or interferes with the federal judgment."). Plaintiffs meet this prong because, without an injunction, Defendants will

be able to undermine this Court's future jurisdiction and past orders.

### 1. The All Writs Act Authorizes The Court To Issue Injunctions

The All Writs Act provides sound authority to enjoin Defendants from undermining proceedings in this Court. The Act allows courts to "issue all writs necessary or appropriate in aid of their respective jurisdictions and agreeable to the usages and principles of law." 28 U.S.C. § 1651(a). A "district court's 'powers under § 1651 should be broadly construed.'" *Sec. & Exch. Comm'n v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981) (quoting *Hamilton v. Nakai*, 453 F.2d 152, 157 (9th Cir. 1972)).

Courts commonly utilize the All Writs Act to enjoin conduct by litigants that attempts to move a dispute to a different forum the litigant views as more favorable than their current forum. Under that rationale, "[f]ederal courts have indeed enjoined lawsuits preemptively in many circumstances, for example to quiet post-settlement donnybrooks, to resolve class actions and multidistrict litigation, to consolidate admiralty claims in a single venue, and to sanction vexatious litigants or prevent frivolous lawsuits, among other reasons." *California Chamber of Com. v. Becerra*, 529 F. Supp. 3d 1099, 1115 (E.D. Cal. 2021), *aff'd*, 29 F.4th 468 (9th Cir. 2022) (citing cases). The other forum can be federal court,[2] state court,[3] an administrative agency,[4] tribal court,[5] or an arbitral

---

[2] *E.g.*, *Wood v. Santa Barbara Chamber of Com. Inc.*, 705 F.2d 1515, 1523 (9th Cir. 1983) ("A United States District Court hearing a particular case possesses the power to enjoin the filing of related lawsuits in other federal courts.").

[3] *E.g.*, *Flanagan v. Arnaiz*, 143 F.3d 540, 546 (9th Cir. 1998) (upholding injunction against raising claims in state court); *Carlough v. Amchem Prod., Inc.*, 10 F.3d 189, 204 (3d Cir. 1993) ("The order of the district court of May 6, 1993 enjoining the Gore plaintiffs, their attorneys, agents and employees, and the class they purport to represent from taking any further steps in the prosecution of their claims in the Circuit Court of Monongalia County, West Virginia, or from initiating similar litigation in any other forum, is affirmed.").

[4] *E.g.*, *Sec. & Exch. Comm'n v. G. C. George Sec., Inc.*, 637 F.2d 685, 688 (9th Cir. 1981).

[5] *JW Gaming Dev., LLC v. James*, 544 F. Supp. 3d 903, 923 (N.D. Cal. 2021).

forum.[6] Courts have even enjoined voluntary settlements, absent leave of the court. *See*, *e.g.*, *In re Lease Oil Antitrust Litig. No. II*, 48 F. Supp. 2d 699, 707 (S.D. Tex. 1998) (prohibiting the parties before the court "from entering—collectively or separately—into any settlement agreement which releases or purports to release the federal antitrust claims brought in this litigation, without first notifying this Court of the settlement agreement and without first obtaining the Court's approval of said agreement").

The All Writs Act authorizes injunctions to protect not only final judgments, but also the ability of courts to resolve the case in the future, and prevent attempts to circumvent prior rulings. "Even before a federal judgment is reached … the preservation of the federal court's jurisdiction or authority over an ongoing matter may justify an injunction," which can issue even "against actions in state court."[7] *In re Baldwin-United Corp. (Single Premium Deferred Annuities Ins. Litig.)*, 770 F.2d 328, 335 (2d Cir. 1985). That is because federal injunctive relief may be necessary to prevent another forum "from so interfering with a federal court's consideration or disposition of a case as to seriously impair *the federal court's flexibility and authority to decide that case*." *Id.* (quoting *Atl. Coast Line R.R. Co. v. Brotherhood of Locomotive Engineers*, 398 U.S. 281, 295 (1970)) (emphasis added); *see also Burr & Forman v. Blair*, 470 F.3d 1019,

---

[6] *E.g.*, *Morgan Stanley & Co., LLC v. Couch*, 134 F. Supp. 3d 1215, 1233-34 (E.D. Cal. 2015), *aff'd*, 659 F. App'x 402 (9th Cir. 2016) ("the Court concludes it has the authority to enjoin arbitration proceedings where there is no valid, enforceable arbitration agreement between the parties" (citing cases)); *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d 113, 140 (2d Cir. 2011) ("[A] federal court may enjoin an arbitration that the court determines is not otherwise valid."); *Madrid v. Lazer Spot, Inc.*, No. 1:19-cv-0669, 2020 WL 4274218, at *11 (E.D. Cal. July 24, 2020) (enjoining arbitration after concluding the party waived it); *cf. FedEx Ground Package Sys., Inc. v. Vic Jackson Transp., Inc.*, No. 12-2228, 2012 WL 2953218, at *2 (D. Kan. July 19, 2012) (enjoining arbitration under the authority of the Federal Arbitration Act).

[7] Notably, the Anti-Injunction Act restricts injunctions against proceedings in state courts—but no other category of injunction—to situations in which an injunction is "necessary in aid of [the court's] jurisdiction, or to protect or effectuate its judgments." 28 U.S.C. § 2283. The standard for this case is looser, since no state court is involved.

1026 (11th Cir. 2006) (noting the All Writs Act "authorize[s] the issuance of writs to protect 'not only ongoing proceedings, but potential future proceedings, as well as already-issued orders and judgments'") (quoting *Klay v. United Healthgroup, Inc.*, 376 F.3d 1092, 1099 (11th Cir. 2004)).

Such injunctions are "in aid of" a court's "jurisdiction" because they "preserve the court's ability to *reach* or enforce its decision in a case over which it has proper jurisdiction." *In re Baldwin-United Corp.*, 770 F.2d at 338 (emphasis added). All Writs Act injunctions are proper so long as they are "directed at conduct which, left unchecked, would have had the practical effect of diminishing the court's power to bring the litigation to a natural conclusion." *ITT Cmty. Dev. Corp. v. Barton*, 569 F.2d 1351, 1359 (5th Cir. 1978).

### 2. An All Writs Act Injunction Is Proper In This Case

The Court should issue the limited All Writs Act injunction Plaintiffs request here for two reasons.

*First*, enjoining Defendants from *again* trying to impose a revamped arbitration clause covering known, accrued antitrust claims is necessary to ensure this Court can fully adjudicate the dispute. Without an injunction, Defendants will post new Terms with a new arbitration clause covering the class claims identified in this dispute. That would change the *status quo* in much the same way that parallel actions relitigating the same issues in another tribunal would. At minimum, a new arbitration clause would require the Court to waste time deciding yet more motions to compel arbitration, with no logical stopping point after any orders resolving those motions are also appealed (with stays pending appeal).

*Second*, the imposition of another arbitration clause would be a blatant attempt to nullify this Court's ruling denying the motion to compel arbitration. Defendants had a fair opportunity to compel arbitration, but their attempt failed because it was intentionally and flagrantly unconscionable. As a result, the unconscionable clauses were not severable. This public policy determination is important and substantial; not an

opening bid. If Defendants can simply impose different arbitration clauses *seriatim* while the case is stayed pending appeal, that severability ruling would be all but meaningless. Contrary to what this Court's order held, Defendants still *would* have the incentive to attempt one unconscionable clause after another, and the only penalty still *would* be that the most egregious clauses can be shaved off when they return with another alternative. The only way to protect this Court's past, appealable ruling is to hold Defendants to it: the consequence for imposing a contract permeated with unconscionability is that they cannot try again to avoid litigating these accrued claims in this Court.

Defendants may argue that such an injunction interferes with their business activities, freedom of speech, or another right, but the same can be said of any All Writs Act injunction. Injunctions prohibiting filing new cases or staying pending litigation are surely more onerous, but such injunctions are common.[8] Moreover, the injunction Plaintiffs seek here is limited and targeted based on this Court's rulings, as well as Defendants' and New Era's prior, coordinated actions. Plaintiffs do *not* seek a categorical bar on Defendants imposing any new arbitration agreement; they seek only to require that Defendants carve out the putative antitrust class claims *in this case* from any new Terms. Defendants have no legitimate interest in avoiding that narrow restriction.

Defendants may argue that the Court cannot consider the rights of putative class members until the case is certified, but the All Writs Act is not so limited. "The power conferred by the Act extends, under appropriate circumstances, to persons who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice, and encompasses even those who have not taken any affirmative action to hinder justice."

---

[8] *E.g.*, *Cal. Chamber of Com.*, 529 F. Supp. at 1115; *Wood*, 705 F.2d at 1523; *Flanagan*, 143 F.3d at 546; *Carlough*, 10 F.3d at 204; *G.C. George Sec.*, 637 F.2d at 688; *Couch*, 134 F. Supp. 3d at 1233-34; *In re Am. Exp. Fin. Advisors Sec. Litig.*, 672 F.3d, at 140.

*United States v. New York Tel. Co.*, 434 U.S. 159, 174 (1977). Furthermore, under the *American Pipe & Construction Co. v. Utah*, 414 U.S. 538 (1974) tolling doctrine, the statute of limitations on every single putative class member's antitrust claim is currently tolled pending the Court's decision on class certification here. Accordingly, their rights are *already* at issue.

If the Court grants Plaintiffs' requested injunction, it will apply only to the claims here and will enjoin only Defendants, over whom this Court has undisputed jurisdiction. That is the definition of a targeted injunction aimed at protecting the Court's jurisdiction.

### B. Plaintiffs Would Suffer Irreparable Harm Without An Injunction

To the extent Defendants oppose this Motion, that amounts to an admission that they plan to impose another arbitration clause to the accrued claims pending in this litigation. That plan is all that is necessary to produce an infinite loop of new arbitration clauses and appeals. "Irreparable harm is traditionally defined as harm for which there is no adequate legal remedy, such as an award of damages." *Arizona Dream Act Coal. v. Brewer*, 757 F.3d 1053, 1068 (9th Cir. 2014). No damages will be available for the inability to ever litigate these claims. If Plaintiffs can never *actually* litigate their antitrust claims, their harm can never be repaired. Plaintiffs plainly have no adequate remedy at law to prevent Defendants from switching from one arbitration regime to another *ad infinitum*. The scheme relies on the law's delay and is unstoppable without an injunction.

### C. The Balance Of The Equities And The Public Interest Favor An Injunction

The balance of the equities strongly favors Plaintiffs. All Plaintiffs ask the Court to do is enjoin Defendants from trying to game the system by again imposing unconscionable terms on Plaintiffs and members of the proposed class *with regard to the claims in this case*. Defendants have no legitimate interest in delaying their day of reckoning in court into the indefinite future by repeatedly abusing their market power to impose arbitration and use procedural maneuvers to forestall Plaintiffs' claims.

1 At the same time, Defendants will remain free to modify their Terms as they see fit—including imposing arbitration—so long as they do not demand arbitration of the accrued, pending claims in this case. To the extent Defendants claim that having to litigate antitrust claims on the merits, in court, is unfair, any such argument verges on frivolous. Litigating antitrust claims is something this Court already determined was appropriate.

The public interest is wholly on Plaintiffs' side. To begin with, this case seeks to vindicate an over-decade-long scheme in which Defendants hid their violations of a consent decree with the Department of Justice and caused considerable consumer harms from their extensive, continuing antitrust violations. The public suffers antitrust injury each day the case remains pending, and stretching that timeline out to the indefinite future would eliminate any prospect of a remedy. Beyond the antitrust concerns, Defendants' strategic use of arbitration undermines *all* consumer protection law, imposing an "inferior forum" on consumers. Arb. Order at 29. If Defendants then use procedural loopholes to stave off litigation indefinitely, suffering no consequence when a Court rules its actions unconscionable, that would undermine the integrity of court orders and the rule of law itself.

## II. Issuing An Injunction Is Consistent With Staying This Case Pending Appeal

Defendants will likely argue that the Court cannot issue an injunction once they file a notice of appeal and seek a stay pending resolution of that appeal, but the proposed injunction is fully compatible with staying this case pending appeal. As noted, the Supreme Court recently held that a district court was required to stay further litigation of the merits pending appeal of an order denying a petition to compel arbitration. *See Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915, 1919 (2023). But that was because the "interlocutory appeal, 'divests the district court of its control *over those aspects of the case involved in the appeal*.'" *Id.* (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)) (emphasis added). Granting an injunction would not fall afoul that principle for two reasons.

*First*, the injunction Plaintiffs request here is not an aspect of the case involved in the appeal. Most importantly, the requested injunction does *not* modify the order under appeal. Nor does it implicate the merits of the antitrust claims, which was the issue in *Coinbase*. The Ninth Circuit has upheld even modifications to injunctions pending appeal in this context so long as they "did not materially alter the status of the consolidated appeal," or, in other words, "left unchanged the core questions before the appellate panel." *Nat. Res. Def. Council, Inc. v. Sw. Marine Inc.*, 242 F.3d 1163, 1167 (9th Cir. 2001). Issuing this injunction would not alter the status of the appeal *at all*, much less materially, because all it would do is prevent Defendants from trying to change the arbitration clause that underlies the Court order that will be before the Ninth Circuit. Nothing the Ninth Circuit could decide on appeal would obviate the need for the injunction. Indeed, that is precisely the point. Defendants' reimposition of a *different* arbitration clause would leave the issues this Court decided behind and render the appeal all-but-nugatory.

*Second*, even if the injunction were somehow involved in the appeal, issuing it is still proper because "[e]ven as to matters encompassed within the scope of the pending appeal, the district court may act in aid of the court of appeals' exercise of its jurisdiction." 16A C. Wright, A. Miller, E. Cooper, & C. Struve, *Federal Practice and Procedure* § 3949.1, (5th ed. 2019) (cited in *Coinbase*, 143 S. Ct., at 1920, n.2). The "actions that a district court may take in aid of the appellate court's jurisdiction include preserving the status quo pending appeal," *id.*, which extends beyond staying its own proceedings. For example, the Ninth Circuit has upheld re-issuing an injunction during appeal after it expired, *see Mayweathers v. Newland*, 258 F.3d 930, 936 (9th Cir. 2001), as well as modifying an injunction during an appeal to make vague terms more certain, *see Southwest Marine Inc.*, 242 F.3d at 1166-67 (changing injunction terms "at the surface" to mean "top 50 micrometers," and "reasonably expeditious" to mean "within 18 months," both "on the rationale that the "district court retains jurisdiction during the pendency of an appeal to act to preserve the status quo").

Other circuits have upheld a district court's jurisdiction to enjoin state-court litigation after a notice of appeal was filed under its power "to preserve the status quo pending the appeal" (which included a win on liability in federal court, though the Second Circuit vacated that merits ruling). *Kidder, Peabody & Co. v. Maxus Energy Corp.*, 925 F.2d 556, 565 (2d Cir. 1991). And, in employment discrimination cases, district courts have enjoined retaliation against employees while orders addressing liability were on appeal, reasoning that the "inherent power of a federal district court to prevent or remedy actions designed to or having the effect of deterring the use of the courts … has been recognized and incorporated into the court's contempt power and its power under the All Writs Statute." *Equal Emp. Opportunity Comm'n v. Locs. 14 & 15, Int'l Union of Operating Engineers*, 438 F. Supp. 876, 880 (S.D.N.Y. 1977). That is because these types of acts are a *deviation* from the *status quo*, and "the district court retains jurisdiction to preserve the status quo and protect its proceedings in all germane matters." *Id.* Similarly here, imposing a new arbitration clause would be a deviation from the *status quo*, and can be enjoined.

## CONCLUSION

The Court should issue an injunction against Defendants. That injunction should require that any future arbitration provision carve out the accrued antitrust claims pending in this action by the named plaintiffs and putative class members.

Dated: August 21, 2023                                    Respectfully submitted,

*Kevin Y. Teruya*

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin Y. Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

1  KELLER POSTMAN LLC
   Warren Postman (Bar No. 330869)
2  wdp@kellerpostman.com
   Albert Pak (admitted *pro hac vice*)
3  albert.pak@kellerpostman.com
   1100 Vermont Avenue, N.W., 12th Floor
4  Washington, D.C. 20005
   Telephone: (202) 918-1123
5  Facsimile: (312) 971-3502

6  *Attorneys for Plaintiffs Skot Heckman,*
7  *Luis Ponce, Jeanene Popp, and Jacob*
   *Roberts, on behalf of themselves and all*
8  *those similarly situated*