LATHAM & WATKINS LLP
  Timothy L. O'Mara (Bar No. 212731)
    *tim.o'mara@lw.com*
  Sadik Huseny (Bar No. 224659)
    *sadik.huseny@lw.com*
  Andrew M. Gass (Bar No. 259694)
    *andrew.gass@lw.com*
  Alicia R. Jovais (Bar No. 296172)
    *alicia.jovais@lw.com*
  Robin L. Gushman (Bar No. 305048)
    *robin.gushman@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095

*Attorneys for Defendants Ticketmaster L.L.C.
and Live Nation Entertainment, Inc.*

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>          Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>**DEFENDANTS' OPPOSITION TO PLAINTIFFS' MOTION TO ENJOIN IMPOSING A MODIFIED ARBITRATION CLAUSE ON ANTITRUST CLAIMS IN THIS CASE**<br><br>The Honorable George H. Wu<br><br>Hearing Date: October 12, 2023<br>Hearing Time: 8:30am<br>Courtroom: 9D, 9th Floor |

## <u>TABLE OF CONTENTS</u>

**Page**

I.   INTRODUCTION ........................................................................... 1

II.  ARGUMENT ................................................................................. 3

    A.   The Named Plaintiffs .......................................................... 3

    B.   Putative Class Members ...................................................... 6

        1.   Multiple Courts Have Held Companies May Enter Into New Arbitration Provisions With Putative Class Members ........................................................... 7

        2.   Any Dispute About A Hypothetical New Arbitration Clause Is Not Ripe For Adjudication ..................... 8

        3.   There Is No Threat Of Irreparable Harm To The Putative Class ................................................................ 10

        4.   Resort To The All Writs Act Is Unwarranted And Improper .................................................................... 11

        5.   *Coinbase* Prohibits The Requested Injunction As To The Putative Class ............................................... 14

III.  CONCLUSION ............................................................................ 16

# TABLE OF AUTHORITIES

**Page(s)**

## CASES

*Bob Jones Univ. v. Simon*,
416 U.S. 725 (1974) ....................................................................... 12

*Bowen v. First Fam. Fin. Servs., Inc.*,
233 F.3d 1331 (11th Cir. 2000)....................................................... 10

*Brown v. Gilmore*,
533 U.S. 1301 (2001) ....................................................................... 3

*Cal. Energy Comm'n v. Johnson*,
767 F.2d 631 (9th Cir. 1985)......................................................... 3, 5

*Cap. One Bank v. Smetka*,
2007 WL 1958975 (D. Ariz. July 3, 2007) ..................................... 5

*In re Checking Account Overdraft Litig.*,
780 F.3d 1031 (11th Cir. 2015)................................................. 12, 15

*Church of Scientology of Cal. v. United States*,
920 F.2d 1481 (9th Cir. 1990)....................................................... 12

*Clark v. Busey*,
959 F.2d 808 (9th Cir. 1992) .......................................................... 5

*Clinton v. Goldsmith*,
526 U.S. 529 (1999) ....................................................................... 11

*Coinbase, Inc. v. Bielski*,
143 S. Ct. 1915 (2023) ....................................................... 3, 5, 14, 15

*Crocker v. Cal., Dep't of Rehab.*,
2015 WL 106361 (E.D. Cal. Jan. 7, 2015)...................................... 4

*Dickey v. Ticketmaster LLC*,
2019 WL 9096443 (C.D. Cal. Mar. 12, 2019) ................................ 9

*Easyriders Freedom F.I.G.H.T. v. Hannigan*,
92 F.3d 1486 (9th Cir. 1996) ........................................................ 13

*In re Est. of Ferdinand Marcos Hum. Rts. Litig.*,
   94 F.3d 539 (9th Cir. 1996) ................................................................................ 12

*Forbes Media LLC v. United States*,
   61 F.4th 1072 (9th Cir. 2023) ............................................................................ 13

*Griggs v. Provident Consumer Discount Co.*,
   459 U.S. 56 (1982) ............................................................................................. 14

*Grondal v. United States*,
   2009 WL 233887 (E.D. Wash. Jan. 30, 2009) .................................................... 6

*Gulf Oil Co. v. Bernard*,
   452 U.S. 89 (1981) ............................................................................................. 12

*Gutierrez v. Wells Fargo Bank, NA*,
   889 F.3d 1230 (11th Cir. 2018) ......................................................................... 12

*Himber v. Live Nation Worldwide, Inc.*,
   2018 WL 2304770 (E.D.N.Y. May 21, 2018) ...................................................... 9

*Hodgers-Durgin v. de la Vina*,
   199 F.3d 1037 (9th Cir. 1999) ............................................................................. 4

*Immigrant Legal Res. Ctr. v. City of McFarland*,
   827 F. App'x 749 (9th Cir. 2020) ....................................................................... 4

*Jimenez v. Menzies Aviation, Inc.*,
   2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) .................................................... 8

*Lee v. Ticketmaster L.L.C.*,
   2019 WL 0906442 (N.D. Cal. Apr. 1, 2019), *aff'd*, 2020 WL 3124256 (9th Cir.
   June 12, 2020) ..................................................................................................... 9

*McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l
   Typographical Union*,
   686 F.2d 731 (9th Cir. 1982) ............................................................................. 15

*McKee v. Audible*,
   2018 WL 2422582 (C.D. Cal. Apr. 6, 2018) ............................... 2, 7, 8, 10, 11, 12

*Nat'l Ctr. for Immigrants Rts., Inc. v. I.N.S.*,
   743 F.2d 1365 (9th Cir. 1984) ........................................................................... 13

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

OPP'N TO MOT. TO ENJOIN
CASE NO. 2:22-CV-00047-GW-GJS

*Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*,
   886 F.3d 803 (9th Cir. 2018) ................................................................. 4

*Neighborhood Spirit Prop. & Cas. Co. v. Watts Regul. Co.*,
   2015 WL 12912339 (C.D. Cal. Dec. 2, 2015) ......................................... 3

*Nevarez v. Forty Niners Football Co., LLC*,
   2017 WL 3492110 (N.D. Cal. Aug. 15, 2017) ......................................... 9

*Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*,
   981 F.2d 429 (9th Cir. 1992) ................................................................. 5

*O'Connor v. Uber Techs., Inc.*,
   2013 WL 6407583 (N.D. Cal. Dec. 6, 2013) ..................................... 8, 10

*Oberstein v. Live Nation Ent., Inc.*,
   2021 WL 4772885 (C.D. Cal. Sept. 20, 2021), *aff'd*, 60 F.4th 505 (9th Cir. 2023) ................................................................................................... 9

*Pa. Bureau of Corr. v. U.S. Marshals Serv.*,
   474 U.S. 34 (1985) ............................................................................... 11

*Pardo v. Papa, Inc.*,
   2023 WL 350389 (N.D. Cal. Jan. 20, 2023) .................................... 2, 7, 8

*Portman v. Cnty. of Santa Clara*,
   995 F.2d 898 (9th Cir. 1993) ................................................................. 9

*Posern v. Prudential Sec., Inc.*,
   2004 WL 771399 (N.D. Cal. Feb. 18, 2004) ......................................... 10

*Ringgold-Lockhart v. Cnty. of Los Angeles*,
   761 F.3d 1057 (9th Cir. 2014) ............................................................... 5

*Sampson v. Murray*,
   415 U.S. 61 (1974) ............................................................................... 11

*Scott v. Cunningham*,
   516 F. App'x 672 (9th Cir. 2013) .......................................................... 5

*Snarr v. HRB Tax Grp., Inc.*,
   2021 WL 4499415 (N.D. Cal. May 13, 2021) ................................... 8, 15

*Takiguchi v. MRI Int'l*,
   611 F. App'x 919 (9th Cir. 2015) ......................................................... 13

*Texas v. United States*, 523 U.S. 296, 300 (1998)....................................................... 9

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
    2011 WL 1753784 (N.D. Cal. May 9, 2011) ..................................................... 13

*Thomas v. Anchorage Equal Rts. Comm'n*,
    220 F.3d 1134 (9th Cir. 2000)........................................................................... 10

*Towery v. Brewer*,
    672 F.3d 650 (9th Cir. 2012) .............................................................................. 6

*Trump v. New York*,
    141 S. Ct. 530 (2020) ......................................................................................... 9

*Twitter, Inc. v. Paxton*,
    56 F.4th 1170 (9th Cir. 2022)............................................................................. 9

*United States v. BNS Inc.*,
    858 F.2d 456 (9th Cir. 1988) .............................................................................. 3

*United States v. N.Y. Tel. Co.*,
    434 U.S. 159 (1977) .......................................................................................... 13

**RULES**

Fed. R. Civ. P. 11................................................................................................... 5

Fed. R. Civ. P. 23.................................................................................... 2, 11, 12, 13

# I.     INTRODUCTION

Plaintiffs seek an injunction prohibiting Live Nation and Ticketmaster from revising their arbitration agreement in any way that could impact this case, no matter what changes are made or how consumers are notified of those changes. The notion that a court can hold a company's arbitration agreement unconscionable, and the company cannot then update its arbitration agreement in accordance with the court's guidance, is perverse—and directly contrary to established law.

Plaintiffs' motion ostensibly addresses the interests of two distinct groups: the named plaintiffs and putative class members. This motion is primarily about the second group.

**Named Plaintiffs:** Plaintiffs claim that if Defendants are allowed to amend their arbitration clause, the named plaintiffs will become trapped in an "infinite loop of new arbitration clauses and appeals" that will supposedly "render the appeal all-but-nugatory." ECF No. 208-1 ("Mot.") at 12, 14. The argument assumes that any changes Defendants might make would be in bad faith and unconscionable, *and* that this Court would be powerless to stop it. Neither suggestion is plausible. But even if these were plausible concerns, they can easily be dealt with in the way Plaintiffs expressly request: via a stipulation. In their motion, Plaintiffs state that "[i]f Defendants stipulate to carve out this pending dispute from any new arbitration agreement, Plaintiffs will withdraw this motion." *Id.* at 3. Defendants are happy to stipulate that any new arbitration agreement will not apply to the four named plaintiffs with respect to any accrued claims they have in this case. Thus, with respect to the named plaintiffs, the forum in which this litigation proceeds will be determined by the Ninth Circuit's forthcoming ruling. Problem solved.

**The Putative Class:** What this motion is really about is the putative class. Plaintiffs' counsel want to prevent Defendants and consumers from freely entering into any arbitration contract that threatens the size of the damages class that Plaintiffs' counsel hope to pursue in federal court. So Plaintiffs seek an injunction

that prohibits Defendants and putative class members from entering into any "new arbitration clause covering the class claims identified in this dispute." *Id.* at 10. This request for class-wide injunctive relief is directly contrary to established law allowing "defendants in pending class actions" to "impos[e] new arbitration provisions that potentially implicate the rights of putative class members" as long as there is "clear notice of [the] lawsuit and an opt-out provision." *Pardo v. Papa, Inc.*, 2023 WL 350389, at *1-2 (N.D. Cal. Jan. 20, 2023). This Court reached the exact same conclusion in *McKee v. Audible*, holding that Audible was permitted "to obtain consent to its current arbitration provision from [putative class] members provided it does so in a manner that discloses information about this suit and affords an opt-out." 2018 WL 2422582, at *8 (C.D. Cal. Apr. 6, 2018) (Wu, J.). It is at this point established law that a company may amend (and improve) its arbitration agreement after a motion to compel arbitration is denied, and the revised agreements may govern the claims of putative class members, so long as the putative class members receive appropriate notice and the opportunity to opt out of the updated arbitration clause. *Id.*; *see also infra* Section II.B.1. It speaks volumes that Plaintiffs' motion does not address these dispositive cases. Plaintiffs are asking the Court to enjoin Defendants from doing something that the case law explicitly says is permissible if done correctly.

Plaintiffs' sweeping request for injunctive relief as to the putative class members fails for four additional reasons. *First*, Plaintiffs' preemptive attack on hypothetical future changes to Defendants' arbitration agreements is obviously not ripe. *Second*, there is no credible argument that putative class members might be irreparably harmed if they knowingly and voluntarily enter into lawful arbitration agreements with Defendants. *Third*, relief under the All Writs Act is foreclosed as a matter of law because an adequate alternative remedy exists under Federal Rule of Civil Procedure 23(d), which gives the Court power to assess arbitration agreements implemented while a putative class action is pending. *Fourth*, setting aside all of the

foregoing reasons that Plaintiffs' motion fails on the merits, Plaintiffs' request for class-wide injunctive relief flies in the face of the Supreme Court's recent decision in *Coinbase, Inc. v. Bielski*, 143 S. Ct. 1915 (2023), where the Court held that "[w]hen a federal district court denies a motion to compel arbitration" and "the losing party" exercises its "statutory right to an interlocutory appeal" of that decision, "the district court must stay its pre-trial and trial proceedings while the interlocutory appeal is ongoing," *id*. at 1918.

For all of these reasons, the request for injunctive relief must be denied.

## II.   ARGUMENT

Plaintiffs seek a preliminary injunction, issued pursuant to the All Writs Act, that "Defendants shall be enjoined from applying any modified arbitration clause … to the claims held by Plaintiffs and class members of the proposed class in this case."[1] ECF No. 208-2 ("Prop. Order") at 1.  "[I]njunctive relief under the All Writs Act is to be used sparingly and only in the most critical and exigent circumstances." *Brown v. Gilmore*, 533 U.S. 1301, 1301 (2001) (Rehnquist, J., in chambers) (citation and quotation omitted); *accord Neighborhood Spirit Prop. & Cas. Co. v. Watts Regul. Co.*, 2015 WL 12912339, at *3 (C.D. Cal. Dec. 2, 2015).  Nothing about this case calls for—let alone permits—this form of extraordinary relief.

### A.   The Named Plaintiffs

"[T]o warrant injunctive relief under the All Writs Act," the named plaintiffs must establish that they will suffer "irreparable harm."  *Cal. Energy Comm'n v. Johnson*, 767 F.2d 631, 633-34 (9th Cir. 1985); *see also United States v. BNS Inc.*,

---

[1]  Notably, Plaintiffs' motion leaves no doubt that they are *not* seeking injunctive relief prohibiting changes to any part of Defendants' Terms of Use other than the arbitration clause.  *See* Prop. Order at 1; *see also* Mot. at 7, 11 (requested relief expressly limited to "any new arbitration clause").  The Terms of Use contain a host of provisions that are not remotely related to the arbitration clause, and there is no dispute that Defendants can amend those provisions at any time in accordance with their legitimate business needs.  Similarly, Plaintiffs also explicitly concede that they do not seek to bar any arbitration agreement that does not impact the "putative antitrust class claims in this case."  Mot. at 11.  Should the Court grant Plaintiffs' motion, the scope of any injunction must be expressly limited in accordance with both of these limitations.

858 F.2d 456, 465-66 (9th Cir. 1988) (requiring irreparable harm before issuing "a preliminary injunction to preserve … jurisdiction under the All Writs Act"); *Crocker v. Cal., Dep't of Rehab.*, 2015 WL 106361, at *3 n.6 (E.D. Cal. Jan. 7, 2015).  More precisely, a preliminary injunction "requires irreparable harm *to the plaintiffs themselves*," not merely "the prospect of harm to third parties."  *Immigrant Legal Res. Ctr. v. City of McFarland*, 827 F. App'x 749, 751-52 (9th Cir. 2020) (emphasis added); *see also Nat'l Wildlife Fed'n v. Nat'l Marine Fisheries Serv.*, 886 F.3d 803, 822 (9th Cir. 2018) (plaintiffs "must show that *they themselves* are likely to suffer irreparable harm absent an injunction") (emphasis added).  Any alleged "injury unnamed members of this proposed class may have suffered is simply irrelevant to the question whether the named plaintiffs are entitled to the injunctive relief they seek."  *Hodgers-Durgin v. de la Vina*, 199 F.3d 1037, 1045 (9th Cir. 1999).

Plaintiffs' sole argument for why and how the named plaintiffs themselves will allegedly suffer "harm [that] can never be repaired" is their alleged "infinite loop."  Mot. at 12.  Plaintiffs claim that unless Defendants are enjoined from amending their arbitration agreements (in order to address the Court's August 10th order), Defendants will be allowed to file a series of never-ending motions to compel arbitration, coupled with a series of never-ending appeals each time this Court denies those motions, leading to an "infinite loop of new arbitration clauses and appeals" that will "render the appeal all-but-nugatory."  *Id.* at 12, 14.  In the face of this "infinite loop," Plaintiffs claim they will never be able to "actually litigate their antitrust claims."  *Id.* at 12.  An injunction, according to Plaintiffs, is the only way "to ensure the integrity of the Court's order denying arbitration" and to protect the Court's ability to "meaningfully resolv[e]" the named plaintiffs' claims.  *Id.* at 3.

The named plaintiffs' alleged irreparable harm is nonsensical.  It relies entirely on the fantasy that Defendants can short-circuit the normal course of litigation, and *de facto* overrule this Court and the Ninth Circuit (should it affirm the Court's August 10th order), simply by imposing a series of unconscionable terms on

the named plaintiffs, then filing a series of frivolous motions to compel arbitration, followed by a series of frivolous appeals.  That is speculative in the extreme.  There is no factual basis for finding that Defendants intend to do anything like that.

The argument also ignores that this Court has the power to sanction what, as postulated, would be "repetitive and meritless motions for the apparent purpose of … delaying the resolution" of a matter, *Cap. One Bank v. Smetka*, 2007 WL 1958975, at *1 (D. Ariz. July 3, 2007),[2] and also has the power to "certify that an interlocutory appeal is frivolous," *Coinbase*, 143 S. Ct. at 1922.  Likewise, circuit courts "possess robust tools to prevent unwarranted delay and deter frivolous interlocutory appeals," including "the possibility of sanctions." *Coinbase*, 143 S. Ct. at 1922.  The idea that the Court would allow motion after motion to the point that Plaintiffs will "never actually litigate their antitrust claims" (Mot. at 12) is simply unrealistic—and the named plaintiffs' alleged irreparable harm is thus illusory, warranting denial of their motion.  *E.g.*, *Cal. Energy Comm'n*, 767 F.2d at 633-34 (denying injunctive relief because plaintiff's "allegations of irreparable harm are too speculative to warrant injunctive relief under the All Writs Act"); *Clark v. Busey*, 959 F.2d 808, 813 (9th Cir. 1992) ("Any injury [plaintiff] might have suffered … was entirely too speculative to warrant relief under the All Writs Act").[3]

---

[2] *See also, e.g.*, Fed. R. Civ. P. 11(b)(1), 11(c)(1) (court may impose sanctions if a motion is "presented for any improper purpose, such as to harass, cause unnecessary delay, or needlessly increase the cost of litigation"); *Scott v. Cunningham*, 516 F. App'x 672, 673 (9th Cir. 2013) (affirming district court's sanctions order where party's "frivolous and duplicative motions needlessly disrupted the litigation and burdened the court and opposing counsel"); *Nugget Hydroelectric, L.P. v. Pac. Gas & Elec. Co.*, 981 F.2d 429, 439 (9th Cir. 1992) (affirming district court's sanctions order because party's second motion to compel largely duplicated the first).

[3] *See also Ringgold-Lockhart v. Cnty. of Los Angeles*, 761 F.3d 1057, 1065 (9th Cir. 2014) (reversing district court's grant of All Writs Act injunction prohibiting vexatious litigant from filing additional claims where "imposing sanctions" may "have been an adequate deterrent," and noting that "[w]hen there is ... conduct in the course of litigation that could be adequately sanctioned under the [Federal] Rules, the court ordinarily should rely on the Rules") (citation omitted).

That said, Defendants are happy to simply take whatever conceivable issue there might be as to the named plaintiffs off the table.  As noted above, in their motion, Plaintiffs stated that "[i]f Defendants stipulate to carve out this pending dispute from any new arbitration agreement, Plaintiffs will withdraw this motion." Mot at 3.  Defendants stipulate that any new arbitration agreement will not apply to the four named plaintiffs with respect to any accrued claims they have in this case. By doing so, Defendants trust that Plaintiffs in reply will hold to their representation and withdraw this motion as to the named plaintiffs; if they do not, the Court should summarily deny the motion as to the named plaintiffs.[4]  *See*, *e.g.*, *Towery v. Brewer*, 672 F.3d 650, 658 (9th Cir. 2012) (denying injunctive relief given defendants' "representations and commitments," which effectively nullified plaintiffs' alleged risk of irreparable harm); *Grondal v. United States*, 2009 WL 233887, at *2 (E.D. Wash. Jan. 30, 2009) (denying request for temporary restraining order where, "[g]iven the commitments of counsel made at the hearing … there [was] no showing of immediate irreparable injury").

## B.    Putative Class Members

Of course, this motion is not really about the named plaintiffs.  What Plaintiffs' counsel really want is to maximize the size of any potential damages class by obtaining a court order preventing Defendants and putative class members from entering into any amended arbitration agreement that impacts the putative class members' claims that are potentially at issue in this case.  In order to do that, Plaintiffs' counsel are seeking injunctive relief on the patently false premise that *any* revised arbitration agreement—regardless of what it provides or how it is formed— would likely be invalid.

Plaintiffs' argument is again speculative, but more importantly their request is directly contrary to well-established law.  This Court and others have squarely

---

[4]  Of course, if the Ninth Circuit reverses the Court's August 10th order, the named plaintiffs will still be bound by the Ninth Circuit's ruling, as well as any future orders of this Court.

held that "defendants in pending class actions" may adopt "new arbitration provisions that potentially implicate the rights of putative class members," as long as there is "clear notice of [the] lawsuit and an opt-out provision." *Pardo*, 2023 WL 350389, at \*1-2; *accord McKee*, 2018 WL 2422582, at \*8 (Wu, J.). The Court's analysis can and should stop here. But Plaintiffs' request for class-wide injunctive relief is fatally flawed for four additional reasons, as set forth below.

### 1. Multiple Courts Have Held Companies May Enter Into New Arbitration Provisions With Putative Class Members

Plaintiffs assert that the Court should issue an injunction barring Defendants from revising their arbitration clause as to putative class members and their potential claims in this case because any effort to enter into "another arbitration clause would be a blatant attempt to nullify this Court's ruling denying the motion to compel arbitration." Mot. at 10. The caselaw squarely rejects that argument.

In *McKee*, this Court held that unnamed members of a putative class "may continue to agree to arbitrate disputes, *even this one*" so long as they are given "proper notice of the current action and opt out opportunities" from the new arbitration clause. *McKee*, 2018 WL 2422582, at \*8 (Wu, J.) (emphasis in original). The Court emphasized that, "if Audible provides new [arbitration] agreements" to putative class members, "with proper notice of the current action and opt out opportunities, *the Court would take no action with respect to such agreements*." *Id.* (emphasis added); *see also id.* ("Audible will be permitted … to obtain consent to its current arbitration provision from [putative class] members provided it does so in a manner that discloses information about this suit and affords an opt-out.").

Other courts have similarly recognized that putative class members should be held to a new arbitration clause that they agreed to while a putative class action was pending, provided they were "given clear notice of the arbitration provision, the effect of assenting to arbitration on their participation in this lawsuit, and reasonable means of opting out of the arbitration provision within 30 days of the notice."

1   *O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583, at *7 (N.D. Cal. Dec. 6, 2013).

2   Indeed, in *Pardo v. Papa*, Chief Judge Seeborg explicitly rejected the argument that

3   there is a blanket, "'bright-line rule'" that prohibits "defendants in pending class

4   actions from" creating "new arbitration provisions that potentially implicate the

5   rights of putative class members," citing the judicial consensus "expressly hold[ing]

6   otherwise."[5]  2023 WL 350389, at *1.  And he accordingly found "no basis to declare

7   the arbitration provision [before him] unenforceable," because it gave customers

8   "the right to opt-out" and "a bulleted list summarizing the changes," and clarified

9   "that the arbitration provision applies to one pending litigation, as well as

10  prospective litigation." *Id.* at *2.

11      The case law could not be more clear.[6]  Defendants have a right to amend their

12  arbitration agreements with putative class members, including as to their claims in

13  this case, so long as Defendants provide sufficient notice and opt-out rights.  In light

14  of the judicial consensus that Defendants and putative class members "may continue

15  to agree to arbitrate disputes, *even this one*," under appropriate conditions, Plaintiffs'

16  motion for injunctive relief must be denied.  *McKee*, 2018 WL 2422582, at *8

17  (Wu, J.) (emphasis in original).

18
19      **2.      Any Dispute About A Hypothetical New Arbitration Clause
               Is Not Ripe For Adjudication**

20      Plaintiffs' preemptive attack on any and all hypothetical new arbitration

21  clauses is not just meritless, but also clearly unripe.  A claim is not ripe for

---

22  [5]   In reaching this conclusion, the *Pardo* court canvassed a number of putative class
23     actions, and emphasized that *all of them* expressly permit "defendants to
       'promulgate a new arbitration provision' as long as they 'include clear notice of
24     this lawsuit and an opt-out provision.'"  *Id.* at *2 (quoting *Snarr v. HRB Tax Grp.,
       Inc.*, 2021 WL 4499415 at *9 (N.D. Cal. May 13, 2021), and citing *Jimenez v.
25     Menzies Aviation, Inc.*, 2015 WL 4914727 (N.D. Cal. Aug. 17, 2015) and
       *O'Connor v. Uber Techs., Inc.*, 2013 WL 6407583 (N.D. Cal. Dec. 6, 2013)).
26  [6]   Not only is the law on this question clear, it is also just common sense.  Under the
       Federal Arbitration Act, arbitration provisions are lawful and even encouraged.
27     They are rarely unconscionable and usually only for discrete reasons that a
       company can readily address.  A decision finding unconscionability, such as this
28     Court's, implicitly tells the defendant company how to come into compliance with
       applicable law.  So, of course the company can and should follow that course.

adjudication under Article III if it rests on "contingent future events that may not occur as anticipated, or indeed may not occur at all." *Trump v. New York*, 141 S. Ct. 530, 535 (2020) (quoting *Texas v. United States*, 523 U.S. 296, 300 (1998)). "The 'basic rationale' of this ripeness requirement is 'to prevent the courts, through avoidance of premature adjudication, from entangling themselves in abstract disagreements.'" *Twitter, Inc. v. Paxton*, 56 F.4th 1170, 1173 (9th Cir. 2022) (quoting *Portman v. Cnty. of Santa Clara*, 995 F.2d 898, 902 (9th Cir. 1993)).

Here, Plaintiffs' motion violates this fundamental justiciability principle by asking the Court to prejudge any and all conceivable arbitration clauses applicable to putative class members' potential claims in this case—before it is even clear how Defendants will revise their arbitration clause, or what notice and opt-out rights will be provided to consumers. There are obviously many ways in which a new arbitration clause between Defendants and putative class members could be perfectly legal. For example, with proper notice, Defendants could simply revert to the prior arbitration scheme that this Court and the Ninth Circuit upheld in *Oberstein v. Live Nation Ent., Inc.*, 2021 WL 4772885 (C.D. Cal. Sept. 20, 2021), *aff'd*, 60 F.4th 505 (9th Cir. 2023). There is no credible argument that doing so could be unconscionable—multiple Courts, including this one, have held that that arbitration scheme was lawful and enforceable. *Id.*; *see also Dickey v. Ticketmaster LLC*, 2019 WL 9096443, at \*10 (C.D. Cal. Mar. 12, 2019) (Wu, J.); *Lee v. Ticketmaster L.L.C.*, 2019 WL 0906442, at \*1 (N.D. Cal. Apr. 1, 2019), *aff'd*, 2020 WL 3124256 (9th Cir. June 12, 2020); *Nevarez v. Forty Niners Football Co., LLC*, 2017 WL 3492110, at \*15 (N.D. Cal. Aug. 15, 2017); *Himber v. Live Nation Worldwide, Inc.*, 2018 WL 2304770, at \*6 (E.D.N.Y. May 21, 2018). Alternatively, Defendants could seek to address this Court's procedural unconscionability concerns regarding whether consumers were properly notified about New Era's mass arbitration protocol, or the Court's substantive unconscionability concerns regarding limited appeal rights or the fairness and clarity of New Era's mass arbitration rules (which New Era

substantially revised following the Court's August 10th order).[7]  Ultimately, what precise shape a potential revised arbitration agreement might take—and what notice and opt-out rights will accompany those changes—is not yet known.

Given the judicial consensus that Defendants and putative class members "may continue to agree to arbitrate disputes, *even this one*," under certain conditions, there is no basis to preemptively declare unlawful any and all potential revised arbitration clauses before such a clause even exists.  *McKee*, 2018 WL 2422582, at *8 (Wu, J.) (emphasis in original).  To the contrary, because no new arbitration agreement exists yet, Plaintiffs' challenge "is purely hypothetical" and unfit for adjudication.  *Thomas v. Anchorage Equal Rts. Comm'n*, 220 F.3d 1134, 1137 (9th Cir. 2000).  While Plaintiffs may want a preemptive decision on a hypothetical dispute, Article III does not permit adjudication of the abstract.  This inescapable ripeness problem independently demands denial of this motion.[8]

### 3.  There Is No Threat Of Irreparable Harm To The Putative Class

No irreparable harm would befall putative class members if Defendants obtain their consent to modified arbitration terms addressing the issues this Court identified with Defendants' current arbitration clause.  If Defendants do so successfully,

---

[7]  New Era ADR Rules & Procedures, available at https://www.neweraadr.com/rules-and-procedures/ (Aug. 21, 2023)  For example, New Era amended its rules to clarify that (a) any party may argue against the application of precedent, including by submitting briefing on that issue that "discusses whether or not, and to what extent, the Lead Decisions should be applied as Precedent in [their individual] case," and/or whether "the Precedent is contrary to the law," (b) "[i]n all events … the Neutral must individually decide each claim asserted by each party in a Mass Arbitration proceeding, giving due consideration to the facts and arguments advanced by the Parties in each case," and (c) "[p]arties have a right to discovery seeking non-privileged documents and information in an opposing Party's possession that are relevant to the claims or defenses at issue."  New Era Rules 6(b)(iii)(5)(d), 6(b)(iii)(5)(b), 6(b)(iii)(6)(a), 2(o)(i)(1).

[8]  Even with a new arbitration agreement in effect, courts routinely hold that "the issue of whether the arbitration provision is enforceable is not yet ripe for resolution" unless "a motion to compel arbitration is pending or threatened." *O'Connor*, 2013 WL 6407583, at *2; *see also Posern v. Prudential Sec., Inc.*, 2004 WL 771399, at *8 (N.D. Cal. Feb. 18, 2004); *Bowen v. First Fam. Fin. Servs., Inc.*, 233 F.3d 1331, 1340 (11th Cir. 2000).

putative class members who assent to revised terms will have knowingly and voluntarily agreed to litigate their potential antitrust claims in arbitration, pursuant to a process that comports with this Court's August 10th order, *McKee*, *Pardo*, and any other applicable caselaw.  Moreover, if the Ninth Circuit affirms on appeal, the Court could entertain on remand a motion under Rule 23(d) to assess the lawfulness of the new arbitration agreement with putative class members, just as the Court did in *McKee*.  *See McKee*, 2018 WL 2422582, at *4-5; *see also infra* Section II.B.4.  "The possibility that adequate … corrective relief will be available at a later date, in the ordinary course of litigation, weighs heavily against a claim of irreparable harm." *Sampson v. Murray*, 415 U.S. 61, 90 (1974).

> **4.    Resort To The All Writs Act Is Unwarranted And Improper**

Plaintiffs' attempt to obtain class-wide injunctive relief under the All Writs Act also fails on its own terms.  That is so for two reasons.

*First*, an adequate alternative remedy at law exists, foreclosing relief under the All Writs Act.  The All Writs Act does "not authorize [federal courts] to issue ad hoc writs whenever compliance with statutory procedures appears inconvenient or less appropriate."  *Pa. Bureau of Corr. v. U.S. Marshals Serv.*, 474 U.S. 34, 43 (1985).  On the contrary, relief under the All Writs Act is not "available" when a party has "other, adequate remedies at law."  *Clinton v. Goldsmith*, 526 U.S. 529, 537 (1999).

Here, if Plaintiffs believe that measures should be taken to prevent putative class members from knowingly and voluntarily agreeing to any amended arbitration agreement, the proper approach is to seek relief under Federal Rule of Civil Procedure 23(d).  As this Court recognized in *McKee*, a federal court properly "presiding over a putative class action" has "discretionary power" under Rule 23(d) to assess "arbitration agreements implemented while a putative class action is pending," including before class certification.  *McKee*, 2018 WL 2422582, at *4-5

1  (citation omitted).[9]  So if the Ninth Circuit concludes that this Court may properly

2  preside over a putative class in this case—and may therefore exercise discretionary

3  power under Rule 23(d)—Plaintiffs will be able to seek relief under that provision.

4      What Plaintiffs cannot do, however, is simply ignore Rule 23(d) and seek an

5  immediate injunction under the All Writs Act.  Even though recourse under Rule

6  23(d) will not be available until after the appeal, Rule 23(d) still provides "an

7  adequate remedy at law which bars the granting of an [All Writs Act] injunction"

8  now—because it provides "a full, albeit delayed, opportunity to litigate the legality"

9  of any future revised arbitration clause.  *Church of Scientology of Cal. v. United*

10 *States*, 920 F.2d 1481, 1489 (9th Cir. 1990) (quoting *Bob Jones Univ. v. Simon*, 416

11 U.S. 725, 746 (1974)).  And because a Federal Rule of Civil Procedure "specifically

12 address[es] the issue at hand," it is "controlling."  *In re Est. of Ferdinand Marcos*

13 *Hum. Rts. Litig.*, 94 F.3d 539, 546 n.9 (9th Cir. 1996).  Independent of every other

14 fatal flaw, the availability of relief under Rule 23(d) requires that Plaintiffs' motion

15 be denied.

16      *Second*, Plaintiffs may not obtain preliminary injunctive relief under the All

17 Writs Act on behalf of putative class members, because no class has yet been

18 certified under Rule 23.  "Certification of a class is the critical act which reifies the

19 unnamed class members and, critically, renders them subject to the court's

20 power."  *In re Checking Account Overdraft Litig.*, 780 F.3d 1031, 1037 (11th Cir.

21 2015); *Gutierrez v. Wells Fargo Bank, NA*, 889 F.3d 1230, 1238 (11th Cir. 2018)

22 ("Class certification is the action that concretely identifies the plaintiffs; before that

23 point, any plaintiffs beyond those named in the complaint are speculative and

24

---

25 [9]  A Rule 23(d) order "limiting communications between parties and potential class
26 members should be based on a clear record and specific findings that reflect a
   weighing of the need for a limitation and the potential interference with the rights
   of the parties."  *Id.* (quoting *Gulf Oil Co. v. Bernard*, 452 U.S. 89, 101 (1981)).
27 "Such a weighing—identifying the potential abuses being addressed—should
   result in a carefully drawn order that limits speech as little as possible, consistent
28 with the rights of the parties under the circumstances."  *Id.* at 102.  Consequently,
   Rule 23(d) may not be used to address hypothetical future events.

beyond the reach of the Court's power."); *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1753784, at *4 (N.D. Cal. May 9, 2011) ("[P]utative class members are not parties to an action prior to class certification."). Accordingly, "in the absence of class certification"—or a proper exercise of the Court's supervisory authority under Rule 23(d)—a "preliminary injunction may properly cover only the named plaintiffs" in a putative class action. *Nat'l Ctr. for Immigrants Rts., Inc. v. I.N.S.*, 743 F.2d 1365, 1371 (9th Cir. 1984). Here, because Plaintiffs' requested injunction, by its terms, would "afford relief to unnamed class members," rather than "protect only the named plaintiffs' interests," it is "impermissibl[e]." *Takiguchi v. MRI Int'l*, 611 F. App'x 919, 920 (9th Cir. 2015).

To be sure, a "preliminary injunction may *incidentally* benefit putative class members prior to class certification." *Id.* (emphasis added). But that wrinkle only applies if "the breadth of the injunction is necessary to give *the named plaintiffs* the relief to which they would be entitled if they prevail." *Id.* (emphasis added); *accord Easyriders Freedom F.I.G.H.T. v. Hannigan*, 92 F.3d 1486, 1502 (9th Cir. 1996). There is no credible argument that an injunction that addresses whether the named plaintiffs may be bound by an amended arbitration agreement in this case would necessarily be so broad that it also "incidentally" prohibited putative class members from entering into a new arbitration agreement covering the putative class members' potential claims in this case.[10]

---

[10] Plaintiffs also assert that the "power conferred by the [All Writs] Act extends, under appropriate circumstances, to persons, who, though not parties to the original action or engaged in wrongdoing, are in a position to frustrate the implementation of a court order or the proper administration of justice." Mot. at 11 (quoting *United States v. N.Y. Tel. Co.*, 434 U.S. 159, 174 (1977)). True enough, but that principle has no application to this case. That principle permits federal courts to, for example, "issue orders to private companies and others to provide technical assistance that will help law enforcement apprehend a suspect under an outstanding warrant, or that will otherwise aid an ongoing criminal investigation." *Forbes Media LLC v. United States*, 61 F.4th 1072, 1075 (9th Cir. 2023). It has nothing to do with whether the Court may order class-wide injunctive relief before class certification, for reasons wholly divorced from the named plaintiffs' own interests.

### 5.     *Coinbase* **Prohibits The Requested Injunction As To The Putative Class**

In *Coinbase, Inc. v. Bielski*, the Supreme Court recently held that, "[w]hen a federal district court denies a motion to compel arbitration" and "the losing party" exercises its "statutory right to an interlocutory appeal" of that decision, "the district court must stay its pre-trial and trial proceedings while the interlocutory appeal is ongoing." 143 S. Ct. at 1918. As the Court knows, on August 10, 2023 the Court denied Defendants' motion to compel arbitration. ECF No. 202. Defendants timely appealed that decision on September 8, 2023, pursuant to 9 U.S.C. § 16(a). ECF No. 212. Under *Coinbase*, the filing of the notice of appeal "requires that [the] district court stay its proceedings while the interlocutory appeal on the question of arbitrability is ongoing." 143 S. Ct. at 1922; *see also id.* at 1919 (overruling contrary Ninth Circuit precedent).

*Coinbase* rests on the "background principle" that "[a]n appeal, including an interlocutory appeal, 'divests the district court of its control over those aspects of the case involved in the appeal,'" and results in an "automatic stay" of all "proceedings while the interlocutory appeal is ongoing." *Id.* at 1919-21 (quoting *Griggs v. Provident Consumer Discount Co.*, 459 U.S. 56, 58 (1982)). Notably, *Coinbase* held that because "the question on appeal is whether the case belongs in arbitration or instead in the district court, the entire case is essentially 'involved in the appeal.'" *Id.* at 1919-20. The Court emphasized that only truly peripheral aspects of the district court litigation (e.g., "the awarding of costs and attorney's fees") may not be involved in the appeal, and the Court made it clear that a broad stay is particularly important in putative class actions: "Absent a stay, parties also could be forced to settle to avoid the district court proceedings (including discovery and trial) that they contracted to avoid through arbitration. That potential for coercion is especially pronounced in class actions, where the possibility of colossal liability can lead to what Judge Friendly called 'blackmail settlements.'" *Id.* at 1920-21.

Here, entering the class-wide injunction that Plaintiffs seek would require the Court to make an initial determination about who exactly Defendants cannot make agreements with—and thus who exactly belongs in any putative class. *See, e.g.*, *Snarr*, 2021 WL 4499415, at *7, *9 n.4 ("Plaintiffs seek preliminary injunctive relief on behalf of the entire putative class. The Court therefore must apply the standard for preliminary injunctive relief in conjunction with evaluating whether provisional class certification is warranted.").  Since the determination of whether this case is or is not a putative class action that may proceed in federal court *is* the issue on appeal, Plaintiffs' requested injunction raises issues that are squarely "involved in the appeal," and *Coinbase* prohibits the Court from addressing them now.

Plaintiffs protest that their request for a class-wide injunction seeks only "to preserve the status quo" pending appeal and "does *not* modify the order under appeal." Mot. 14-15 (emphasis in original).  Not so.  The Court's August 10th order was an adjudication of whether the arbitration clause could be enforced against the four named plaintiffs in this case.  Putative class members were not—and are not— before the Court at this time.  *See, e.g.*, *In re Checking Account Overdraft Litig.*, 780 F.3d at 1036-38.  The requested injunction would preclude the putative class members from agreeing to "any modified arbitration clause"—no matter how lawful, and no matter how freely they agreed to the provision.  Prop. Order at 1.  Because putative class members are not encompassed by the Court's August 10th order, Plaintiffs' request for an injunction that limits putative class members' right to freely enter into an arbitration contract with Defendants is "not addressed to maintenance of the status quo during pendency of the appeal"; rather, it seeks a drastic "change from the status quo." *McClatchy Newspapers v. Cent. Valley Typographical Union No. 46, Int'l Typographical Union*, 686 F.2d 731, 735 (9th Cir. 1982).

In short, there is no way to reconcile Plaintiffs' request for injunctive relief as to putative class members with *Coinbase* and the scope of the stay that it imposes on this case pending appeal of the Court's August 10th order.  *Coinbase*, 143 S. Ct.

at 1919-20.   For this reason too, Plaintiffs' motion for a preliminary injunction should be denied.

## III.   CONCLUSION

For the foregoing reasons, the Plaintiffs' motion for a preliminary injunction must be denied.

Dated:  September 21, 2023

Respectfully Submitted,

LATHAM & WATKINS LLP

By: _Timothy L. O'Ma____

Timothy L. O'Mara

505 Montgomery Street, Suite 2000
San Francisco, California  94111-6538
Telephone:  +1.415.391.0600
Facsimile:  +1.415.395.8095
tim.o'mara@lw.com

*Attorneys for Defendants*
*Ticketmaster L.L.C. and Live Nation*
*Entertainment, Inc.*

1
2

## CERTIFICATE OF COMPLIANCE

3
4
5

The undersigned, counsel of record for Defendants Ticketmaster L.L.C. and Live Nation Entertainment, Inc., certifies that this brief contains 5,557 words, which complies with the word limit of L.R. 11-6.1.

6
7       Dated: September 21, 2023
8                                                        Timothy L. O'Mara
9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28