**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
 willsears@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
 brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

**KELLER POSTMAN LLC**
Warren D. Postman (Bar No. 33069)
 wdp@kellerpostman.com
Albert Y. Pak (admitted *pro hac vice*)
 albert.pak@kellerpostman.com
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone:  (202) 918-1123

*Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT
# CENTRAL DISTRICT OF CALIFORNIA

| | |
|---|---|
| SKOT HECKMAN, LUIS PONCE, JEANENE POPP, and JACOB ROBERTS, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER LLC,<br><br>Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>The Honorable George H. Wu<br><br>**PLAINTIFFS' OPPOSITION TO DEFENDANTS' MOTION TO STAY**<br><br>Hearing Date: January 6, 2025 at 8:30 a.m. |

**TABLE OF CONTENTS**

**Page**

PRELIMINARY STATEMENT ................................................................................ 1

LEGAL STANDARD ............................................................................................... 1

ARGUMENT .............................................................................................................. 1

    A.    The SDNY Action Does Not Address All the Damages Claims Here, Including Those for the Citizens of 24 States and All U.S. Territories ....................................................................................................... 4

    B.    The SDNY Action Does Not Appear To Cover Both of the Classes or All the Claims Here, and Submissions There Indicate It Does Not ........................................................................................................ 4

    C.    This Court and the Ninth Circuit Have Invested Significant Resources ........................................................................................................ 6

    D.    Defendants Admit This Case Can Quickly Catch Up to the SDNY Action .............................................................................................................. 8

    E.    The Reason This Case Is Now Behind the SDNY Action Is Because Defendants Tried To Impose Unconscionable Arbitration Terms ............................................................................................ 9

    F.    This Court Is the True Locus of the Dispute .............................................. 9

    G.    Defendants' Terms of Use Require Plaintiffs To Litigate in This Court ....................................................................................................... 10

CONCLUSION ....................................................................................................... 10

# TABLE OF AUTHORITIES

**Page**

**Cases**

*Ali v. Quarterman*,
  607 F.3d 1046 (5th Cir. 2010) ................................................................................ 7

*Alltrade, Inc. v. Uniweld Prods., Inc.*,
  946 F.2d 622 (9th Cir. 1991) .......................................................................... 9, 10

*Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*,
  490 F.3d 718 (9th Cir. 2007) .............................................................................. 2, 3

*Clinton v. Jones*,
  520 U.S. 681 (1997) ............................................................................................ 1

*Complete Entertainment Resources LLC (d/b/a Songkick) v. Live Nation Entertainment, Inc.*,
  Case No. 15-cv-09814, 2017 WL 6512223 (C.D. Cal. Oct. 16, 2017) ............ 6, 7

*DEL Corp. v. Wildcat Fluids, LLC*,
  2020 WL 7374237 (W.D. La. Sept. 16, 2020) ................................................... 10

*Dependable Highway Express, Inc. v. Navigators Ins. Co.*,
  498 F.3d 1059 (9th Cir. 2007) ............................................................................. 2

*Fed. Trade Comm'n v. Mytel Int'l, Inc.*,
  2015 WL 13935988 (C.D. Cal. July 8, 2015) ..................................................... 1

*In re PG&E Corp. Sec. Litig.*,
  100 F.4th 1076 (9th Cir. 2024) .................................................................... 1, 2, 3

*In re Plastics Additives Antitrust Litig.*,
  2004 WL 2743591 (E.D. Pa. Nov. 29, 2004) ................................................... 3, 7

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  2011 WL 1399441 (N.D. Cal. Apr. 13, 2011) ..................................................... 7

*Landis v. N. Am. Co.*,
  299 U.S. 248 (1936) ......................................................................................... 1, 2

*Lockyer v. Mirant Corp.*,
  398 F.3d 1098 (9th Cir. 2005) ................................................................... 1, 7, 10

*McDonald v. Piedmont Aviation, Inc.*,
   625 F. Supp. 762 (S.D.N.Y. 1986) ................................................................... 4, 8

*Oberstein v. Live Nation Ent., Inc.*,
   60 F.4th 505 (9th Cir. 2023) .................................................................................. 6

*Oberstein v. Live Nation Entertainment, Inc.*,
   Case No. 20-cv-03888 (C.D. Cal.) ....................................................................... 6

*Pagtalunan v. Galaza*,
   291 F.3d 639 (9th Cir. 2002) ................................................................................ 2

*United States, et al. v. Live Nation Entertainment, Inc., et al.*,
   Case No. 1:24-cv-03973-AS (S.D.N.Y.) ............................................................... 1

*United States v. Agri Stats, Inc.*,
   2024 WL 3061570 (D. Minn. May 17, 2024) ...................................................... 8

*Universal Operations Risk Mgmt., LLC v. Glob. Rescue LLC*,
   2012 WL 2792444 (N.D. Cal. July 9, 2012) ...................................................... 10

**Rules & Statutes**

15 U.S.C. § 1 .............................................................................................................. 5

15 U.S.C. § 2 .............................................................................................................. 5

**Other Authorities**

https://help.ticketmaster.com/hc/en-us/articles/10468830739345-
   Terms-of-Use#section17 ................................................................................... 10

United States Census Bureau, *Annual and Cumulative Estimates of
   Resident Population Change for the United States*,
   https://www2.census.gov/programs-surveys/popest/tables/2020-
   2024/state/totals/NST-EST2024-CHG.xlsx ......................................................... 4

## PRELIMINARY STATEMENT

Pursuant to the Court's December 19, 2024 Order (Dkt. 271), Plaintiffs submit this opposition to Defendants' motion to stay this case pending the resolution of the Department of Justice and State Attorney General enforcer action in the Southern District of New York. *See United States, et al. v. Live Nation Entertainment, Inc. et al.*, Case No. 1:24-cv-03973-AS (S.D.N.Y.) ("SDNY Action"). Given the Court's invitation to incorporate by reference arguments made in the December 17, 2024 status report (Dkt. 269), Plaintiffs respectfully do so. However, they believe certain points discussed in the status report, as well as points that the Court raised at the December 9 and 19, 2024 hearings, are both dispositive and warrant further emphasis here.

## LEGAL STANDARD

A stay is an "extraordinary remedy that should be granted only when justice so requires." *Fed. Trade Comm'n v. Mytel Int'l, Inc.*, 2015 WL 13935988, at *4 (C.D. Cal. July 8, 2015). "Only in rare circumstances will a litigant in one cause be compelled to stand aside while a litigant in another settles the rule of law that will define the rights of both." *Lockyer v. Mirant Corp.*, 398 F.3d 1098, 1109 (9th Cir. 2005) (quoting *Landis v. N. Am. Co.*, 299 U.S. 248, 255 (1936)). Given the limited instances in which a stay is appropriate, a stay proponent "bears the burden of establishing its need." *Clinton v. Jones*, 520 U.S. 681, 708 (1997). It must show that need by addressing "three non-exclusive factors" the court "must weigh," including: "(1) the possible damage which may result from the granting of a stay; (2) the hardship or inequity which a party may suffer in being required to go forward; and (3) the orderly course of justice measured in terms of the simplifying or complicating of issues, proof, and questions of law." *In re PG&E Corp. Sec. Litig.*, 100 F.4th 1076, 1085 (9th Cir. 2024) (cleaned up).

## ARGUMENT

Unless there is a pending criminal investigation or case, Plaintiffs are unaware of any court staying a private antitrust lawsuit simply because public enforcers have later brought their own civil action in a different court. Parallel lawsuits are the rule,

1. not the exception, and it is notable that neither the DOJ nor any State Attorney General seeks to stay this case. A full analysis of each stay factor shows no stay is warranted.

In the recent status report, Defendants only addressed the third stay factor, arguing a stay would serve judicial economy and prevent conflicting rulings. Dkt. 269 at 10. Beyond mere platitudes, they never attempted to explain how, and that factor, judicial "efficiency" or "economy," "is not necessarily a sufficient ground to stay proceedings" on its own. *Dependable Highway Express, Inc. v. Navigators Ins. Co.*, 498 F.3d 1059, 1066 (9th Cir. 2007). Moreover, any claimed "efficiencies" from a stay are illusory. It is not possible that the SDNY Action could ever fully resolve this case, which presents broader claims on behalf of a broader group of individuals. Defendants are thus asking for years of further delay to litigation that must inevitably be conducted.

The second stay factor also strongly disfavors a stay. "[I]f there is even a fair possibility that the stay . . . will work damage to some one else," the stay proponent "must make out a clear case of hardship or inequity in being required to go forward." *PG&E*, 100 F.4th at 1087. Defendants have not even tried to (and cannot) make such a "clear case of hardship or inequity in being required to go forward." Defendants will eventually have to litigate this case in this Court regardless of how the SDNY Action is resolved. Defendants simply would prefer to put off the inevitable for as long as possible. But that interest is present in ***any*** case; the law confirms simply defending against litigation is far from the sort of "clear case of hardship or inequity" that justifies the extraordinary remedy of a stay, particularly one that severely harms Plaintiffs.

The first factor also militates against a stay. There is not just a "fair possibility" that staying this case will damage Plaintiffs—it is guaranteed. "[L]engthy and indefinite stays place a plaintiff effectively out of court," because they "amount[] to a refusal to proceed to a disposition on the merits." *Blue Cross & Blue Shield of Alabama v. Unity Outpatient Surgery Ctr., Inc.*, 490 F.3d 718, 724 (9th Cir. 2007). This is because delay "inherently increases the risk that witnesses' memories will fade and evidence will become stale." *Id.* (quoting *Pagtalunan v. Galaza*, 291 F.3d 639, 643

(9th Cir. 2002)). Presumptively, a stay is "extremely lengthy" and "effectively place[s] the plaintiffs out of court" if it is at least 18 months. *Id.*; *PG&E*, 100 F.4th at 1084. That concern is acute here, given the long duration of Defendants' misconduct and their suggestion they have not retained all relevant materials. Dkt. 269 at 20. Separately, a stay "would prejudice plaintiffs by" contravening their right to "the expeditious resolution of the lawsuit"—and it would be all the more "perverse if plaintiffs . . . were to receive slower justice than other plaintiffs because" Defendants' conduct "is sufficiently egregious to have attracted the attention of" public enforcers years later. *In re Plastics Additives Antitrust Litig.*, 2004 WL 2743591, at *6 (E.D. Pa. Nov. 29, 2004).

Relatedly, staying this case would also harm the public interest. The public has strong interests in: (a) "vigorously enforcing national anti-trust laws" through "private" litigation; (b) the use of the class action tool to vindicate anticompetitive conduct "on behalf of nationwide consumers"; and (c) the "timely" "flow of" cases through the "judicial docket." *Plastics*, 2004 WL 2743591, at *8. A stay would frustrate all these.

Defendants already delayed this case by years—well over the presumptively-lengthy 18-month time period. They did so by attempting to enforce unconscionable arbitration terms, and now ask to delay it for some further indefinite further amount of time for no good reason. Given the harm Defendants' delay has already caused Plaintiffs and the public, the only just result is to proceed with this case now. Defendants clearly cannot satisfy the first or second stay factors (they did not even try in the prior status report), and their showing on the third factor is both inadequate and insufficient.

Plaintiffs below discuss numerous uncontroverted facts that highlight and emphasize each of the above conclusions. In short, Defendants ask the Court to stay this case in favor of one across the country until some uncertain event at some unknown time. But the SDNY Action will not resolve all the claims or damages here, has (without any aspersions meant) not invested the same amount of judicial resources as this Court or the Ninth Circuit on these claims, is "ahead" in a way that is inequitable and illusory at best, is not actually the true locus of the dispute, and is in a forum where

Plaintiffs cannot even sue to vindicate their rights. Given these facts, and Defendants' inability to show any prejudice from proceeding in a forum of their choosing and against plaintiffs that do not assert fully-overlapping claims, Plaintiffs submit a stay (partial or otherwise) is unwarranted and would only create judicial inefficiencies and further harm Plaintiffs and the Classes. A stay would ensure stop-and-go piecemeal litigation and even more delay than has already occurred for no legitimate reason.

### A. The SDNY Action Does Not Address All the Damages Claims Here, Including Those for the Citizens of 24 States and All U.S. Territories

This suit advances damages claims on behalf of Classes covering "[a]ll end-user purchasers in the United States"—*i.e.*, in all 50 states plus the District of Columbia and U.S. territories. Dkt. 1 ¶131. While the SDNY Action involves consolidated claims by the federal Department of Justice ("DOJ") and 39 States plus the District of Columbia, the DOJ does not seek damages at all. *See* SDNY Action, Dkts. 308 at 1 & 257 ¶ 517(j). The only damages claims in that case are from a group of 26 States and the District of Columbia, which seek *parens patriae* damages. Dkt. 269 at 6–7 & n.4 (identifying excluded states). The SDNY Action thus does not seek damages for the citizens of 24 States or any U.S. territories, a total of over 148 million people.[1] As one notable example, no party in the SDNY Action seeks damages for citizens of California, where this case has long been pending, where Defendants are headquartered, and which is by itself one of the world's largest economies. Staying this case in favor of one where large swaths of the Classes are unrepresented makes no sense. *Cf. McDonald v. Piedmont Aviation, Inc.*, 625 F. Supp. 762, 767 (S.D.N.Y. 1986) (denying stay, including for lack of identity of parties, since plaintiff has the "right to chart the course of his own litigation and to prosecute his claims in the manner of his choice").

### B. The SDNY Action Does Not Appear To Cover Both of the Classes or All the Claims Here, and Submissions There Indicate It Does Not

Plaintiffs seek to represent nationwide classes for both primary and secondary

---

[1] United States Census Bureau, *Annual and Cumulative Estimates of Resident Population Change for the United States*, https://www2.census.gov/programs-surveys/popest/tables/2020-2024/state/totals/NST-EST2024-CHG.xlsx.

ticket purchasers; *i.e.*, original purchasers of tickets as well as resale ticket purchasers. Dkt. 1 ¶ 131. Conversely, the public enforcers pursue relief for antitrust violations in the "fan-facing primary ticketing market," which specifically excludes secondary ticketing services. SDNY Action, Dkt. 257 ¶ 161; *see also id.* ¶¶ 167, 176–79 (explaining how "secondary ticketing services are not reasonable substitutes" for primary ticketing services and should be excluded from the market definition).

In the "alternative," the public enforcers do allow for another definition of the fan-facing ticketing market that "includes both primary concert ticketing offerings and services that provide resale for concert tickets to fans at major concert venues." SDNY Action, Dkt. 257 ¶ 185. However, it is not clear that this market definition would encompass secondary ticket purchasers or their damages. For example, the public enforcers' complaint states that "fans throughout the United States have overpaid for primary concert tickets purchased from Ticketmaster," *id.* ¶ 158, but does not appear to include such an allegation for secondary tickets. In addition, in their opposition to Defendants' motion to dismiss, the group of State AGs that seek *parens patriae* damages imply that they only do so for primary ticket purchases. *See* SDNY Action, Dkt. 308 at 16 (State AGs stating they "Have Standing to Seek Damages in the Fan-Facing **Primary**-Ticketing Market"). The uncertainty as to whether the SDNY Action seeks damages for secondary market purchases, as Plaintiffs do here, only further highlights why a stay of Plaintiffs' case here is unwarranted.

Beyond its more limited scope, the SDNY Action also will not resolve all of the legal claims here. For example, Plaintiffs here pursue tying and vertically-arranged boycott theories here as part of their monopolization, attempted monopolization, and conspiracy claims. *See, e.g.*, Dkt. 1 ¶¶ 143–47, 164–76, 185–87, 196–200. Yet, the public enforcers do not appear to pursue an attempted monopolization claim at all, or any vertical boycott theory. Moreover, Plaintiffs' tying claims differ from those the public enforcers assert. The latter pursue tying claims under Sections 1 and 2 of the Sherman Act that focus on Defendants conditioning music artists' use of Defendants'

large amphitheaters on those same artists' purchase of Defendants' concert promotion services. *See* SDNY Action, Dkt. 257 ¶¶ 241–45, 259, 517(c). The harm necessarily focuses on music artists. In contrast, Plaintiffs' tying claims focus on ticket purchasers and the overcharges they pay due to Defendants' various types of tying conduct.

### C. This Court and the Ninth Circuit Have Invested Significant Resources

Defendants claim a stay would further "judicial efficiency." Dkt. 269 at 10. But this case is now several years old, and it has gone to the Ninth Circuit and back. Dkts. 212, 253. Before that, this Court and Magistrate Judge Standish both oversaw months of discovery into Defendants' decision to switch to New Era ADR, and this Court also held multiple rounds of briefing, as well as multiple hearings, on Defendants' motion to compel arbitration. *See*, *e.g.,* Dkts. 30, 34, 71, 98, 133, 150, 164, 166, 169, 172.

However, even before this case, both this Court and the Ninth Circuit also invested substantial resources in *Oberstein v. Live Nation Entertainment, Inc.*, Case No. 20-cv-03888 (C.D. Cal.), which was filed on April 28, 2020 and makes virtually identical allegations as Plaintiffs make in this case. The Court is of course aware that, in *Oberstein,* it adjudicated three discovery motions, limited discovery, and a motion to compel arbitration. *Oberstein*, Dkts. 29, 35, 41, 46, 51, 59. And on October 29, 2021, Plaintiffs appealed this Court's order to the Ninth Circuit. *Oberstein*, Dkt. 122. On February 13, 2023—after another 16 months of appellate litigation, including full briefing and oral arguments—the Ninth Circuit affirmed this Court's order. *Oberstein v. Live Nation Ent.*, *Inc.*, 60 F.4th 505 (9th Cir. 2023).

But, even *Oberstein* is not the first case in which a court in this District invested substantial resources addressing many of the core issues implicated by Plaintiffs' allegations. From 2015–2018, Judge Fischer of this District oversaw an antitrust case against Defendants related to their anticompetitive conduct throughout the nation. That case, *Complete Entertainment Resources LLC (d/b/a Songkick) v. Live Nation Entertainment, Inc.*, Case No. 15-cv-09814 ("*Songkick*"), resulted in a summary judgment decision finding that claims highly similar to those in this case (*e.g.*,

exclusive dealing, tying, and the like) should go to trial, *see* 2017 WL 6512223 (C.D. Cal. Oct. 16, 2017), and the Court also issued a number of key pretrial rulings. The case then publicly settled on the eve of trial for $110 million and certain additional confidential consideration. Co-Lead Class Counsel in this case represented the plaintiff in *Songkick* and will bring that experience to bear in moving this case forward swiftly.

Defendants essentially ignore this near-decade of experience because they claim a different court across the country might address certain overlapping factual and legal questions, such that a stay would reduce the number of courts that may touch upon those questions. That could be said of every stay request and does not suffice. *Lockyer*, 398 F.3d at 1105 (stay inappropriate where sole potentially legitimate ground was claimed judicial economy); *Ali v. Quarterman,* 607 F.3d 1046, 1047, 1049 (5th Cir. 2010) (stay of one case improper based on mere fact case "materially identical" to another). In fact, courts have determined that where public enforcers file cases that mirror earlier-filed private plaintiff cases, those later-filed public enforcer cases, not the private plaintiff cases, should be stayed. *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 2011 WL 1399441, at *4 (N.D. Cal. Apr. 13, 2011).

Moreover, Defendants' efficiency arguments do not grapple with the substantial differences between the cases discussed above. Those make clear that regardless of the SDNY Action's outcome, this case will proceed. A stay would thus merely delay, not eliminate, the Court's expenditure of resources because it would only pause this case, with it to inevitably resume in the future. Allowing Plaintiffs to finally proceed with their case now in parallel is the most efficient course, which is all the more true given the years and resources this Court, the Ninth Circuit, and this District have all already spent adjudicating this case and its predecessors. *See Plastics*, 2004 WL 2743591, at *7 (stay denied because it would "hinder[] the Court's responsibility to keep its docket moving" and case "ha[d] been lingering on the docket for more than 18 months").

"Comity"—the only other basis Defendants previously offered in support of their stay request—does not require otherwise. Defendants argued it might "embarrass"

the court presiding over the SDNY Action if this one reached inconsistent results. But they have not explained—and, Plaintiffs submit, cannot explain—how exactly that could be so. Indeed, Defendants are the only ones that have thus far created a risk of inconsistent results; specifically, by: (a) filing a partial motion to dismiss the SDNY action notwithstanding that another Court within this District already found that related claims are viable and should proceed to trial; and (b) arguing that this Court's order denying arbitration and the Ninth Circuit's affirmance are wrong.

In any event, Defendants' concerns of comity do not suffice. District courts are not strictly bound by one another's rulings. There is nothing unusual about district courts reaching different rulings, and that possibility does not itself require a stay. *McDonald*, 625 F. Supp. at 767–68 (finding that "uncertain risks of inconsistent results . . . are not [a] persuasive" basis for stay, and denying request as a result); *United States v. Agri Stats, Inc.*, 2024 WL 3061570, at *4 (D. Minn. May 17, 2024) (same).

### D. Defendants Admit This Case Can Quickly Catch Up to the SDNY Action

Although Defendants have argued that the SDNY Action is "significantly more advanced" than this case, Dkt. 269 at 13, their motion to partially dismiss that case is still pending, the parties there will not finish discovery until the latter half of 2025, and trial is in 2026. SDNY Action, Dkt. 169. Notably, Defendants conceded in the recent status report here that they have already produced "millions of documents." Dkt. 269 at 16. Defendants can reproduce those documents (and the others Plaintiffs requested from the *Songkick* case and the recent investigations) essentially at the click of a button; they indicated during the parties' December 12, 2024 meet-and-confer that they do not even have any objections to doing so if the Court denies their stay request. Given Defendants and Plaintiffs also already agreed to electronic discovery protocols and a protective order in this case, *see* Dkts. 59, 60, 61, 62, Defendants can quite literally make immediate productions to Plaintiffs without concern. That will jumpstart discovery and bring this case in parity with the SDNY Action almost overnight.

The only other consideration is Defendants' anticipated motion to dismiss in this

case. In the SDNY Action, Defendants only moved for partial dismissal, and the court there has not yet held a hearing on that motion. SDNY Action, Dkts. 272, 372. Assuming this Court denies Defendants' stay request and requires them to file any motion to dismiss within 21 days (as indicated at the recent status conference), the parties here will promptly brief any issues Defendants raise, once again showing this case will very quickly catch up to the SDNY Action.

### E. The Reason This Case Is Now Behind the SDNY Action Is Because Defendants Tried To Impose Unconscionable Arbitration Terms

The equities also weigh against a stay. The SDNY Action is only ahead of this one (for now) because Defendants spent the last two years trying to enforce unconscionable arbitration terms. During that process, they insisted on (and, pursuant to the Supreme Court's *Coinbase* precedent) obtained a stay while they appealed the Court's denial of their arbitration motion. All of that is a situation of their own making, and they should not be permitted to obtain a stay based on the status of this case.

### F. This Court Is the True Locus of the Dispute

At the recent status conference, this Court noted both Defendants maintain their headquarters in this District. December 19, 2024 Hrg. Tr. at 4–5. Their core personnel are located here and, unlike the SDNY Action, the vast majority of employees, directors, and officers are subject to trial subpoenas in this Court—meaning that any trial in this action will see far more live witnesses than the SDNY Action. All of this shows this District is clearly the true locus of the case. Plaintiffs presume that is why (as discussed below), Defendants chose this forum for lawsuits of exactly this type.

When assessing a stay request, if one action is the true locus of the dispute, that weighs in favor of allowing plaintiffs to proceed in that forum. Indeed, Defendants previously invoked the "first-to-file rule" and the Ninth Circuit's decision in *Alltrade, Inc. v. Uniweld Prods., Inc.*, 946 F.2d 622 (9th Cir. 1991). *See* Dkt. 269 at 12–13. Yet *Alltrade* itself makes clear that a proper consideration in deciding which, if any, case should proceed among a group of overlapping ones is "convenience," including the

location of evidence and witnesses. *See* 946 F.2d at 627–28. This Court already suggested that favors this District, December 19, 2024 Hrg. Tr. at 5, and Defendants apparently did not believe the SDNY was a particularly convenient forum, given they attempted to transfer the public enforcer case out of it.

### G. **Defendants' Terms of Use Require Plaintiffs To Litigate in This Court**

A final relevant fact is that the Ticketmaster Terms of Use require Plaintiffs to file suit in this Court.[2] Thus, Defendants ask the Court to prevent Plaintiffs from pursing their claims in the only Court permitted to oversee those claims. Defendants clearly cannot demonstrate they will be prejudiced or suffer a clear case of hardship or inequity from proceeding in the very forum they chose in their contract of adhesion. *Lockyer*, 398 F.3d at 1112 (staying case inappropriate, as defendant's "being required to defend a suit, without more, does not constitute a 'clear case of hardship or inequity'"). In contrast, if Plaintiffs are prohibited from proceeding in that forum, they have no right to proceed anywhere else, thus demonstrating the damage to them from a stay.

"[I]t is improper for a party to invoke the first-to-file rule where the parties have entered into a contract containing a forum selection clause." *Universal Operations Risk Mgmt., LLC v. Glob. Rescue LLC*, 2012 WL 2792444, at *5 (N.D. Cal. July 9, 2012). While Defendants attempt to do just that, Dkt. 269 at 13, "the first-to-file rule is not a legitimate basis for permitting" Defendants "to escape [their] contractual obligation to litigate claims" in this forum, which they designated. *DEL Corp. v. Wildcat Fluids, LLC*, 2020 WL 7374237, at *5 (W.D. La. Sept. 16, 2020) (collecting cases). Plaintiffs should not be made to wait because they filed suit where Defendants required, public enforcers did not, and due to Defendants' own conduct, the later-filed public enforcer case has made progress that Defendants have prevented in this case.

### **CONCLUSION**

For these reasons, the Court should deny Defendants' motion to stay.

---

[2] *See* Section 17, https://help.ticketmaster.com/hc/en-us/articles/10468830739345-Terms-of-Use#section17 (requiring claims to be brought in Los Angeles County).

| | | |
|---|---|---|
| Dated: December 30, 2024 | | Respectfully submitted, |
| | By | */s/ Kevin Y. Teruya* |

QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin Y. Teruya (Bar No. 235916)
 kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
 adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
 willsears@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
 brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN LLC
Warren D. Postman (Bar No. 33069)
 wdp@kellerpostman.com
Albert Y. Pak (admitted *pro hac vice*)
 albert.pak@kellerpostman.com
1101 Connecticut Avenue, N.W., Ste. 1100
Washington, D.C. 20036
Telephone: (202) 918-1123

*Interim Co-Lead Class Counsel*

**CERTIFICATE OF COMPLIANCE REGARDING WORD LIMIT**

I, Kevin Teruya, the undersigned counsel of record for Plaintiffs, certify that this brief contains 3,736 words, which complies with the word limit of Civil Local Rule 11-6.1.

Dated: December 30, 2024                    */s/ Kevin Y. Teruya*
                                              Kevin Y. Teruya

**SIGNATURE ATTESTATION**

I am the ECF user whose identification and password are being used to file the foregoing document. Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, Kevin Y. Teruya, attest that I have obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: December 30, 2024                    */s/ Kevin Y. Teruya*
                                              Kevin Y. Teruya