1  QUINN EMANUEL URQUHART & SULLIVAN, LLP
2     Kevin Y. Teruya (Bar No. 235916)
      kevinteruya@quinnemanuel.com
3     Adam B. Wolfson (Bar No. 262125)
      adamwolfson@quinnemanuel.com
4     William R. Sears (Bar No. 330888)
      willsears@quinnemanuel.com
5  865 South Figueroa Street, 10th Floor
6  Los Angeles, California 90017-2543
   Telephone: (213) 443-3000
7
8  KELLER POSTMAN LLC
9     Warren Postman (Bar No. 330869)
      wdp@kellerpostman.com
10 1101 Connecticut Avenue, N.W., Suite 1100
   Washington, D.C., 20036-4312
11 Telephone: (202) 918-1123
12
   *Attorneys for Plaintiffs*
13
14
15              **UNITED STATES DISTRICT COURT**
        **FOR THE CENTRAL DISTRICT OF CALIFORNIA**
16                    **WESTERN DIVISION**
17
   Skot Heckman, Luis Ponce, Jeanene          CASE NO. 2:22-cv-00047-GW-GJS
18 Popp, and Jacob Roberts, on behalf of
   themselves and all those similarly         **PLAINTIFFS' MEMORANDUM OF**
19 situated,                                  **POINTS AND AUTHORITIES AND**
                                              **OBJECTIONS IN SUPPORT OF**
20              Plaintiffs,                    **MOTION TO MODIFY OR SET**
                                              **ASIDE THE MAGISTRATE**
21        v.                                   **JUDGE'S MARCH 3, 2025 ORDER**
                                              **DENYING PLAINTIFFS' FIRST *EX***
22 Live Nation Entertainment, Inc., and       ***PARTE* APPLICATION TO**
   Ticketmaster LLC,                          **MODIFY PROTECTIVE ORDER**
23
                Defendants.                    The Honorable George H. Wu
24
                                              Hearing Date:  April 17, 2025
25                                            Hearing Time:  8:30 AM
26
27
28
                                                    Case No. 2:22-cv-00047-GW-GJS
   ────────────────────────────────────────────────────────────
        PLAINTIFFS' MEM. AND OBJECTIONS ISO MOTION TO SET ASIDE OR MODIFY
                MARCH 3, 2025 MAGISTRATE JUDGE MINUTE ORDER

# **TABLE OF CONTENTS**

**Page**

INTRODUCTION ............................................................................................................. 1

STANDARD OF REVIEW ............................................................................................... 3

FACTUAL AND PROCEDURAL BACKGROUND ...................................................... 4

    A.    Defendants Originally Objected to Reproducing Third-Party Documents Here Due to Greater Protections for Third-Party Highly Confidential Documents in the Government Action ................. 4

    B.    The SDNY Protective Order Protects Third-Party Highly Confidential Documents from Disclosure to Defendants' In-House Counsel ......................................................................................... 6

    C.    Defendants Recently Agreed to Identical Protections for Highly Confidential Third-Party Documents in this District in *Donley* ............. 7

    D.    March 3, 2025 Magistrate Judge Minute Order ...................................... 7

ARGUMENT ..................................................................................................................... 8

I.    THE MAGISTRATE JUDGE'S ORDER IS CLEARLY ERRONEOUS AND CONTRARY TO LAW ....................................................... 8

    A.    The Order Erroneously Assumes Defendants' In-House Counsel Would Be "Deprived" of Documents They Have No Current Ability to Review—and Have Been Ordered *Not* to Review ................. 8

    B.    The Order is Contrary to Ninth Circuit Precedent Holding Such Protective Order Modifications Should 'Generally Be Granted,' And Requiring Consideration of Judicial Economy ............................ 10

    C.    The Order Ignores that Mr. Wall Admits He Advises Defendants on Competition Issues ........................................................................ 12

CONCLUSION ............................................................................................................... 15

1

## <u>TABLE OF AUTHORITIES</u>

2

<u>Page</u>

3

## <u>Cases</u>

4

*Beckman Indus., Inc. v. Int'l Ins. Co.*,
5
    966 F.2d 470 (9th Cir. 1992) ............................................................................ 10

6

*Brown Bag Software v. Symantec Corp.*,
7
    960 F.2d 1465 (9th Cir. 1992) .................................................................... 13, 14

8

*Fed. Trade Comm'n v. Advoc. Health Care Network*,
9
    162 F. Supp. 3d 666 (N.D. Ill. 2016) ............................................................... 14

10

*Foltz v. State Farm Mut. Auto. Ins. Co.*,
    331 F.3d 1122 (9th Cir. 2003) ............................................................. 3, 10, 12

11

*Intel Corp. v. VIA Technologies, Inc.*,
12
    198 F.R.D. 525 (N.D. Cal. 2000) .................................................................. 9, 13

13

*Moore v. USC Univ. Hosp. Inc.*,
14
    803 F. App'x 131 (9th Cir. 2020) (unpublished) ............................................ 12

15

*Olympic Refining Co. v. Carter*,
16
    332 F.2d 260 (9th Cir. 1964) .......................................................................... 10

17

*Roe v. Comm'r of Soc. Sec.*,
18
    651 F. App'x 583 (9th Cir. 2016) ..................................................................... 4

19

*Teva Pharmaceuticals USA, Inc. v. Corcept Therapeutics, Inc., et al.*,
    No. 24-cv-03567-NW, Dkt. 87 (N.D. Cal. Mar. 14, 2025) ............................. 15

20

*United States v. Live Nation Entertainment, Inc.*,
21
    No. 1:24-cv-03973-AS .................................................................................... 1

22

*United States v. U.S. Gypsum Co.*,
23
    333 U.S. 364 (1948) ......................................................................................... 4

24

*Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*,
25
    2010 WL 3629830 (N.D. Cal. Sept. 14, 2010) ............................................... 15

26

## <u>Rules/Statutes</u>

27

28 U.S.C. § 636(b)(1)(A) ........................................................................................ 3

28

1

Fed. R. Civ. P. 72 ................................................................................. 3

2

Fed. R. Civ. P. 72(a) .......................................................................... 3

3

Local Rule 72-2.1 ................................................................................ 3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

## **INTRODUCTION**

Plaintiffs appeal from Magistrate Judge Standish's Order denying Plaintiffs' *Ex Parte* Application to Modify the Protective Order (ECF No. 300) ("Order"). The reason Plaintiffs sought this relief is straightforward: in a parallel lawsuit brought by the United States and numerous state governments against Defendants in the Southern District of New York (*United States v. Live Nation Entertainment, Inc.*, No. 1:24-cv-03973-AS, "Government Action"), some 150 third parties have produced documents relevant to this case. Plaintiffs moved to modify the Protective Order here to prevent Defendants' in-house attorneys from reviewing those third parties' materials because (a) the third parties obtained those same protections in the Government Action, and (b) several of those third parties have indicated they will not reproduce their documents and other materials unless and until they obtain similar protections here. The modifications Plaintiffs seek are exactly what the Protective Order in the Government Action provides. The SDNY court denied access to Highly Confidential documents to both Mr. Wall and Ms. Tobias (the same in-house attorneys for Defendants at issue here), to the same third-party documents at issue here. So Plaintiffs assumed Defendants would just stipulate to modifying the Protective Order here to match that one—just as they did in another case in this District involving claims that substantially overlap factually with both this and the Government Action. Instead, Defendants refused—something that appears to be both a ploy to give their in-house lawyers access to competitively sensitive information they cannot currently obtain, and also to delay and obstruct third-party discovery in this case.

Given this background, Plaintiffs' request to modify the Protective Order should have presented an easy case for *ex parte* relief: it is necessary for Plaintiffs to obtain highly relevant information, to avoid unduly burdening third parties, and will impose no prejudice whatsoever on Defendants. Yet the Magistrate Judge denied Plaintiffs' request for synchronized protections across litigations in a three-sentence Order that did not address nor justify why third parties should receive less protections

in this case for the exact same materials they produced elsewhere with higher protections. The Order is clearly erroneous and contrary to law for at least three reasons.

*First*, the Order assumes Defendants' in-house counsel were "previously" able to view the third parties' competitively-sensitive, Highly Confidential – Attorney's Eyes Only documents, and that Plaintiffs' proposed language would "deprive" Defendants' in-house counsel of documents already in their possession. *See* Order, at 1. This is a fundamental error that infects the entire Order, and it rests on a misunderstanding of the origins of the Protective Order in this action. In this action, only **one third party**—New Era ADR, Defendants' chosen arbitration provider whose rules were held unconscionable by this Court and the Ninth Circuit—has currently produced documents. And there is no concern about Defendants' in-house lawyers viewing **those** documents, because they are not competitively sensitive, and most of them are communications with Defendants or their lawyers anyway.

In contrast, Defendants' in-house lawyers **cannot** currently view the third-party documents produced in the Government Action. So Plaintiffs' proposed modifications to the Protective Order do not "deprive" Defendants of anything—they maintain the current status quo in both actions, where Defendants' in-house lawyers can view the New Era documents, but not competitively sensitive information produced by the third parties in the Government Action. Plaintiffs explained all this in their *ex parte* motion. *See* Feb. 28, 2025 *Ex Parte* Motion (ECF No. 298), at 1 (noting Plaintiffs' proposed modification sought to ensure that the over 150 third parties "will receive the same safeguards afforded to them elsewhere on highly similar claims"); Exhibit A to *Ex Parte* Motion (ECF No. 298-1), at 1-2 (Plaintiffs' proposed modification would alter the current Protective Order so that discovery material third parties designate Highly Confidential – Attorneys' Eyes Only "shall not be disclosed to any employees, including in-house counsel, of Defendants"; such documents could be denoted by stamping them "Direct Competitor Material – Outside Counsel Only").

The Magistrate Judge overlooked or misapprehended this, rendering the Magistrate Judge's Order clearly erroneous.

**Second**, the Order also clearly errs, and is contrary to law, by failing to apply Ninth Circuit authority that favors reasonable protective order modifications to protect third parties in cross-case discovery. *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122, 1132-33 (9th Cir. 2003). Also in violation of governing law, the Order failed to apply the required balancing test for assessing requests of this type. *Id*. By failing to conduct this analysis, the Order ignores that standardizing third-party protections across this case and the Government Action would promote efficiency and judicial economy, just as the Court previously recognized when ordering Defendants to produce the third-party documents to Plaintiffs. Judge Standish's Order now creates an inconsistent regime, lowering protections for third parties in this litigation despite other courts finding heightened safeguards are appropriate. The result is clearly erroneous, contradicts the Court's efficiency directive, diverges from related rulings, and unfairly prejudices numerous non-parties.

**Third**, the Order ignores that Defendants' in-house counsel Mr. Wall admits to providing advice on competitive decisions, which is reason alone to afford heightened protections to third parties with competitively sensitive information.

For these reasons, Plaintiffs respectfully object to the entirety of the Order pursuant to Fed. R. Civ. P. 72 and Local Rule 72-2.1. Plaintiffs request that the Court reconsider the Order, and modify it to grant Plaintiffs' *Ex Parte* Motion, to ensure the third-party protections in this Action are equal to those in the Government Action.

## **STANDARD OF REVIEW**

The Magistrate Judge's Order is a nondispositive ruling subject to review under Rule 72(a). Fed. R. Civ. P. 72(a); L.R. 72-2.1. A district judge must modify or set aside a magistrate judge's non-dispositive pretrial order if it is "clearly erroneous or contrary to law." Fed. R. Civ. P. 72(a); 28 U.S.C. § 636(b)(1)(A). "A finding is 'clearly erroneous' when although there is evidence to support it, the reviewing court

on the entire evidence is left with the definite and firm conviction that a mistake has been committed." *United States v. U.S. Gypsum Co.*, 333 U.S. 364, 395 (1948). An order is "contrary to law" when it fails to apply or misapplies relevant statutes, case law, or procedural rules. *Perez v. City of Fresno*, 519 F. Supp. 3d 718, 722 (E.D. Cal. 2021).

## FACTUAL AND PROCEDURAL BACKGROUND

This antitrust case alleges that Defendants engaged in a long-running scheme to foreclose competition in the primary and secondary ticketing services markets for major concerts throughout the nation. The current dispute relates to Plaintiffs' efforts to obtain third-party discovery (including materials that have already been produced in substantial part in the parallel Government Action) and the appropriate protections needed for that discovery in order to ensure that reproduction of third-party documents in this Action does not subvert third parties' already-expressed concerns over producing materials in antitrust litigation with Defendants—concerns that led to specific protections in the overlapping Government Action Protective Order that Defendants now contest here.

### A. Defendants Originally Objected to Reproducing Third-Party Documents Here Due to Greater Protections for Third-Party Highly Confidential Documents in the Government Action

The Court initially ordered Defendants to reproduce all third-party materials from the Government Action at the January 6, 2025 hearing. However, Defendants then represented to the Court that they could not do so because of the protections afforded to these documents under the Government Action Protective Order. *See* 1/20/2025 Defs. Status Report (ECF No. 290), at 3. In response, Plaintiffs approached Defendants with what they expected to be a simple, noncontroversial request; *i.e.*, that

Defendants stipulate to modifying the Protective Order in this Action[1] to add the same third-party protections Defendants had already been ordered to provide in the Government Action, and to which they willingly stipulated four months ago in *Donley v. Live Nation Entertainment, Inc.*, No. 2:23-cv-06343-KK (C.D. Cal.), a securities class action based on the same core facts as this case and the Government Action.

Plaintiffs expected that this proposal would alleviate Defendants' stated concern and allow cross-production of the third-party documents here without the need to burden the Court with motion practice. Defendants, however, refused to stipulate. Plaintiffs then filed their *Ex Parte* Application. (ECF No. 298), which sought to revise the Protective Order in this Action to state, in core relevant part: "documents or other material or information produced or disclosed by non-parties in or in connection with this action, whether directly by non-parties or indirectly by any entity to which non-parties previously produced or disclosed such material or information, and designated by or on behalf of a non-party as "HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY," may be disclosed only to the individuals described in Paragraph 7.3(b) of the Protective Order, and shall not be disclosed to any employees, including in-house counsel, of Defendants." Pls. Proposed Addendum to Protective Order for Highly Sensitive Competitive Information (ECF No. 298-1), at 2.

Defendants opposed, (ECF No. 299) even though the sole purpose of Plaintiffs' proposed modification was (and is) to prevent competitively-sensitive information from reaching Defendants' in-house counsel who—as their own declarations confirm, *see infra*—advise on competition-related matters directly implicating the very third parties whose information would be produced. Indeed, the declaration of Mr. Wall, Defendants' Executive Vice President for Corporate and Regulatory Affairs, states

---

[1]    The Protective Order in this Action was entered on August 5, 2022. *See* ECF No. 62.

he, a former Latham partner and now lead in-house attorney at Live Nation, "provid[es] legal advice on" matters including "regulatory and public affairs matters" and "all competition-related issues" to his employer. Decl. of Daniel M. Wall in Support of Defs. Opp. to Pls. First *Ex Parte* App. to Amend Protective Order ¶ 5 (ECF No. 299-2).

**B.    The SDNY Protective Order Protects Third-Party Highly Confidential Documents from Disclosure to Defendants' In-House Counsel**

In the Government Action, third parties raised numerous concerns over producing materials to Defendants without adequate protections from disclosure to in-house attorneys. Based on these concerns, Judge Subramanian of the SDNY entered an Amended Protective Order on November 15, 2024 that expressly limits access to Highly Confidential materials, including third-party materials, to "outside counsel" only. Ex. A (Government Action Protective Order), ECF No. 347 at 4-5, ¶ 7(b). Highly Confidential information is defined to include highly sensitive commercial information, of the sort third parties understandably would want safeguarded from competitors:

> a. trade secrets, including non-public, commercially sensitive customer lists;
>
> b. current or future non-public financial, marketing, or strategic business planning information;
>
> c. current or future non-public information regarding prices, costs, or margins;
>
> d. information relating to research, development, or plans for existing or proposed future acquisitions or expansions;
>
> e. evaluation of the strengths and vulnerabilities of product or service offerings, including non-public pricing and cost information;

f. confidential contractual terms, proposed contractual terms, or negotiating positions (including internal deliberations about negotiating positions) taken with respect to Defendants or competitors or customers of Defendants;

g. personnel files;

h. sensitive personally identifiable information;

i. communications that disclose any Highly Confidential Information; or

j. any other category of information hereinafter given Highly Confidential status by the Court.

Ex. A (Government Action Protective Order), ¶ 2.

### C.    Defendants Recently Agreed to Identical Protections for Highly Confidential Third-Party Documents in this District in *Donley*

On October 31, 2024, Defendants stipulated in another matter, *Donley*, to a Protective Order addendum that parallels the protections in the Government Action Protective Order, preventing Defendants' in-house counsel from accessing third-party confidential materials. *Donley* Joint Mot. For Stip. Addendum to Protective Order for Highly Competitively Sensitive Information (ECF No. 79), at 2-3. The *Donley* case, which is proceeding in this District, involves many of the same factual issues as this case, as both concern Defendants' allegedly anticompetitive conduct in the live entertainment industry. Plaintiffs modeled their proposed Protective Order modification after the addendum Defendants had already agreed to in *Donley*. *See id.*; *see also* ECF No. 298-1 (Plaintiffs' proposed modification).

### D.    March 3, 2025 Magistrate Judge Minute Order

On March 3, 2025, the Magistrate Judge denied Plaintiffs' *Ex Parte* Application to Modify the Protective Order via minute Order. (ECF No. 300.) In the Order, the Magistrate Judge found that (a) the proposed change was a "blanket

modification to the Protective Order," even though it was expressly only for third-party productions; and (b) the requested Protective Order modifications supposedly would "deprive certain in house counsel that were previously, per stipulation of the Parties, permitted to review certain discovery from their ability to do so," even though Defendants have not been permitted to review third parties' competitively-sensitive information in this case. Order, at 1.[2] The Order provides no other analysis. Nor does the Order explain why the protections from the Government Action should not be honored here, in this Action, where third parties producing materials for overlapping claims have already expressed substantial concerns with Defendants' in-house attorneys reviewing their materials.

## ARGUMENT

## I.     THE MAGISTRATE JUDGE'S ORDER IS CLEARLY ERRONEOUS AND CONTRARY TO LAW

### A.     The Order Erroneously Assumes Defendants' In-House Counsel Would Be "Deprived" of Documents They Have No Current Ability to Review—and Have Been Ordered *Not* to Review

In their Opposition, Defendants repeatedly argued that the requested modification of the Protective Order would "renege" on their expectations under the existing Protective Order of their current rights to view documents. Opp (ECF No. 299) at 8. Defendants failed to make clear to the Court, however, that no such third-party documents have yet been produced in this Action. *Id.* Defendants therefore would not be retroactively deprived of anything. Rather, as noted above, the only third party that has produced documents to date is New Era ADR, Defendants' arbitration provider, whose documents raise none of the competitive concerns inherent in

---

[2]   The New Era ADR productions earlier in this case were largely communications and other materials Defendants and their in-house attorneys reviewed with New Era, due to their coordination on the development and substance of New Era's arbitration rules. *See* ECF No. 243 at 7.

allowing Defendants' in-house lawyers to view the highly confidential and competitively sensitive information of their competitors and other market participants.

Thus, Plaintiffs merely sought to confirm that protections the SDNY Court already expressly ordered in the parallel Government Action for the same Highly Confidential third-party documents would apply here. *See* ECF No. 298. The slight revision Plaintiffs sought would merely keep Defendants from subverting the protections in the Government Action. And Plaintiffs' proposed revision would not bar Defendants' outside counsel from viewing the third parties' Highly Confidential material, which is consistent with the way third-party documents are protected in the Government Action, as well as under the addendum Defendants agreed to in *Donley*. Courts consistently recognize that requiring a party to rely on its outside counsel for certain highly confidential materials does not create an undue burden or prejudice. *See Intel Corp. v. VIA Techs., Inc.*, 198 F.R.D. 525, 528-29 (N.D. Cal. 2000) (requiring a party to rely on its competent outside counsel "does not create an 'undue and unnecessary burden.'").

Defendants' Opposition also failed to note that the third parties whose Highly Confidential documents are at issue were not involved in negotiating the August 5, 2022 Protective Order in this Action—which, again, was negotiated during pre-arbitration discovery when the only third party at issue was New Era. Nor were the protections the courts applied to third-party documents in the Government Action and *Donley* known nearly three years ago, when the parties entered into the stipulated Protective Order here. The Government Action was not even filed until 2024, and the current Protective Order there was entered in November 2024. Defendants cannot legitimately argue that a Protective Order that was stipulated in this Action before the Government Action was even filed, and at a time when the only motion pending was a motion to compel arbitration, somehow trumps valid protections that Defendants have since agreed to in another action (*Donley*), and which other courts have ordered

(*Donley* and the Government Action), in order to protect third parties' Highly Confidential documents.

In short, to the extent the Order assumes that Defendants' in-house attorneys legitimately expected to be able to review the third parties' Highly Confidential materials—or had somehow already received and reviewed those materials in this Action, that is clearly erroneous. *See* Order, at 1 (reasoning that the requested modification would "deprive" in-house counsel of access they "previously" had).

**B.    The Order is Contrary to Ninth Circuit Precedent Holding Such Protective Order Modifications Should 'Generally Be Granted,' And Requiring Consideration of Judicial Economy**

The Magistrate Judge's Order is also contrary to law, and clearly erroneous, because it fails to follow the standard set forth in *Foltz v. State Farm Mut. Auto. Ins. Co.*, 331 F.3d 1122 (9th Cir. 2003). Under *Foltz*, "where reasonable restrictions on collateral disclosure will continue to protect an affected party's legitimate interests in privacy, a collateral litigant's request to the issuing court to modify an otherwise proper protective order so that collateral litigants are not precluded from obtaining relevant material should generally be granted." *Id.* at 1132 (citing *Beckman Indus., Inc. v. Int'l Ins. Co.*, 966 F.2d 470, 475 (9th Cir. 1992)); *Olympic Refining Co. v. Carter*, 332 F.2d 260, 265-66 (9th Cir. 1964)). The Ninth Circuit emphasized that "[a]llowing the fruits of one litigation to facilitate preparation in other cases advances the interests of judicial economy by avoiding the wasteful duplication of discovery." *Id.* at 1131. *Foltz* also directs that courts weighing protective order modifications should "weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery." *Id.* at 1133 ("before deciding to modify the protective order, the court that issued it [protective order] must consider other factors in addition to the relevance of the protected discovery to the collateral litigation. In particular, it must weigh the countervailing reliance interest of the party opposing modification against the policy of avoiding duplicative discovery.").

Here, beyond seeking the Protective Order modification to protect third parties' sensitive information from disclosure, Plaintiffs requested the modification of the Protective Order to promote efficient discovery and judicial economy. Facilitating the reproduction of third-party materials previously produced in or in connection with the government's investigations and civil action serves these interests. This Court has already recognized the benefits to judicial economy and efficiency of reproducing third-party materials from the Government Action by originally ordering Defendants to reproduce documents here, and the Court only revised its order as it relates to third-party materials after Defendants noted the more stringent limitations under the Protective Order in the Government Action. 1/6/25 Tr. at 23:8-11. Plaintiffs' proposal is simply a response to the concerns Defendants themselves, as well as the Government and various third parties, all identified, and an attempt to bring the Protective Order here in line with the Government Action and *Donley*, so that the efficiency and economy benefits can also apply to third-party documents without further burdening this Court or undermining the protections in the Government Action Protective Order. And as set forth above, Defendants cannot show reliance on the current Protective Order when it comes to third-party materials. Defendants could not fairly have assumed that a Protective Order entered here, before third-party discovery on the merits of Plaintiffs' claims even began, would somehow be a legitimate means to subvert the Government Action Protective Order as to the same third-party Highly Confidential documents. Nor can Defendants argue that anyone relied on the Protective Order currently in place in this Action in order to obtain, or review, third-party Highly Confidential documents, because no such third-party documents have been produced in this Action.

The Order also ignores that Plaintiffs' proposed modification would simply provide the "reasonable restrictions" contemplated by *Foltz*. Plaintiffs' proposed modifications would only restrict in-house counsel from accessing certain highly confidential third-party materials, while leaving outside counsel's access completely

intact. *See* ECF No. 298-2. These restrictions are particularly reasonable given that they would simply align the in-house counsel access provisions here with the protections Judge Subramanian ordered in the Government Action, and which Defendants accepted by stipulation in *Donley*. *See* Ex. A, Government Action Protective Order ¶ 7(b); *Donley* Protective Order (ECF No. 79), at 2-3; *see also Moore v. USC Univ. Hosp. Inc.*, 803 F. App'x 131, 132 (9th Cir. 2020) (unpublished) ("district court may not unilaterally alter a protective order issued in a different district court") (citing *Foltz*, 331 F.3d at 1132).

The Order clearly errs, and is contrary to law, by failing to weigh the interest in efficient discovery and judicial economy of Plaintiffs' proposed modification, by failing to recognize this Court's intent to allow cross-case discovery in light of those interests (1/6/25 Tr. at 23:8-11), and by failing to recognize the reasonable nature of Plaintiffs' proposed modification.

## C.    The Order Ignores that Mr. Wall Admits He Advises Defendants on Competition Issues

The Order also clearly errs and is contrary to law because it fails to consider or address in-house counsel Mr. Wall's express acknowledgement, in a declaration filed in response to Plaintiffs' Ex Parte Motion, that he "provide[s] legal advice on regulatory and public affairs matters, all competition-related issues, and litigation risks related to competition and consumer protection issues" and is "the primary in-house counsel advising Live Nation on all issues relating to competition and antitrust litigation, generally." Wall Decl. (ECF No. 299-2), ¶¶ 5-6. In addition, Mr. Wall reportedly told Reuters, after joining Defendant Live Nation, that he would not be a member of the company's legal team, and that his position at Live Nation is instead

"intended to capture the high-profile things that are happening at any moment in time," including fallout from a botched sale of Taylor Swift concert tickets last year.[3]

In *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir. 1992), the Ninth Circuit determined that when in-house counsel advises their employer on competitive matters, this constitutes involvement in competitive decision-making. Based on this finding, *Brown Bag* prohibited the in-house counsel from accessing competitively sensitive documents. The court explained that because in-house counsel's job "would necessarily entail advising his employer in areas relating to [the competitor's] trade secrets," allowing access to sensitive competitive information would place counsel in an "untenable position." This impossible situation would force counsel to either "refuse his employer legal advice on a host of contract, employment, and competitive marketing decisions" or risk "improperly or indirectly reveal[ing] [the competitor's] trade secrets." *Id*. at 1471.

Particularly relevant to the current motion is that *Brown Bag* noted the magistrate in that case "expressly credited in-house counsel's integrity and good faith," but still had to consider "whether Brown Bag's counsel could lock-up trade secrets in his mind, safe from inadvertent disclosure to his employer once he had read the documents." *Id.* at 1471; *see also Intel Corp.*, 198 F.R.D. at 529 ("it is necessary to examine the role of in-house counsel in the corporation to determine whether knowledge of confidential information would place the counsel 'in the untenable position of having to refuse his employer legal advise on a host of ... decisions lest he improperly or indirectly reveal … trade secrets.'").

Here, Mr. Wall's express admission that he advises on competitive issues (Wall Decl. ¶¶ 5-6, ECF No. 299-2) should, by itself, bar him from viewing Highly

---

[3] Sara Merken, *Live Nation hires ex-Latham antitrust chief Dan Wall,* REUTERS (Feb. 6, 2023), available at https://www.reuters.com/legal/legalindustry/live-nation-hires-ex-latham-antitrust-chief-dan-wall-2023-02-06/.

Confidential third-party documents in this Action. And Mr. Wall's reported admission goes even further than his declaration, indicating he is not even part of the legal team at Live Nation,[4] which further underscores Mr. Wall's business-side role and the inherent risk in allowing third parties' competitively sensitive information to be shared with him. Under the Protective Order, such documents would only be designated Highly Confidential because they include "trade secrets, including non-public, commercially sensitive customer lists," "current or future non-public financial, marketing, or strategic business planning information," "current or future non-public information regarding prices, costs, or margins," and other highly sensitive competitive information. Ex. A, Government Action Protective Order, at 2-3, ¶ 2(a)-(j); *see also* ECF No. 298-1 at 1-2 (explaining that additional protections are necessary to protect competitive information like "confidential terms of non-parties' contracts" and "information about non-parties' respective competitive strategies" in this case). The Order contains no explanation for why Mr. Wall should be able to access these Highly Confidential, competitively sensitive third-party documents given Mr. Wall's express admission that he provides competitive advice. (Wall Decl. ¶¶ 5-6, ECF No. 299-2).

To the extent the Magistrate Judge simply accepted, *sub silentio*, Mr. Wall's conclusory statement from his declaration that he "is not involved in competitive decision-making," that is contrary to what *Brown Bag* requires. The Ninth Circuit instructs that courts must examine "the factual circumstances of any counsel's relationship to the party demanding access." 960 F.2d at 1470. And merely claiming a lack of competitive decision-making is insufficient to support an argument regarding whether in-house counsel are involved such decisions. *See, e.g.*, *Fed. Trade Comm'n v. Advoc. Health Care Network*, 162 F. Supp. 3d 666 (N.D. Ill. 2016) ("merely insisting that one is not 'involved in competitive decision-making' cannot... serve as

---

[4]  Merken, *supra* note 3.

a shibboleth the mere invocation of which permits access to Highly Confidential information"). An "in-house counsel who is exposed to a competitor's confidential information often cannot simply forget" what they learned. *Vasudevan Software, Inc. v. Int'l Bus. Machines Corp.*, 2010 WL 3629830, at *2 (N.D. Cal. Sept. 14, 2010); *see also Teva Pharmaceuticals USA, Inc. v. Corcept Therapeutics, Inc., et al.*, No. 24-cv-03567-NW, Dkt. 87 (N.D. Cal. Mar. 14, 2025) (issuing protective order that prevents in-house counsel from reviewing highly confidential materials, in particular because the Court was "unimpressed" with in-house counsel's "generic assertions" they need access to such materials for litigation management purposes).

Moreover, the SDNY court denied access to Highly Confidential documents to both Mr. Wall and Ms. Tobias (the same in-house attorneys for Defendants at issue here), to the same third-party documents at issue here, and Defendants stipulated to modifying the Protective Order to bar in-house counsel access to such Highly Confidential documents in another case in this District involving claims that substantially overlap with both this and the Government Action. This further demonstrates that Mr. Wall and Ms. Tobias should not be granted access here.

By failing to acknowledge, or provide any analysis regarding, the admissions in declarations regarding Defendants' in-house counsel being involved in competitive decisions, the Order clearly errs, and is contrary to law.

## CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court reconsider and modify the Magistrate Judge's Order to grant Plaintiffs' Application to Modify the Protective Order as proposed. *See* ECF No. 298-1; ECF No. 298-2. In the alternative, Plaintiffs request that upon reconsideration, the Court vacate the Order entirely and direct Magistrate Judge Standish to enter a new Order consistent with Plaintiffs' requested modification.

Dated: March 17, 2025

Respectfully submitted,

QUINN EMANUEL URQUHART & SULLIVAN, LLP

By: */s/ Kevin Y. Teruya*
_____
Kevin Y. Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000;
Facsimile: (213) 443-3100

KELLER POSTMAN LLC
Warren Postman (Bar No. 330869)
wdp@kellerpostman.com
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C., 20036-4312
Telephone: (202) 918-1123

*Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated*

# CERTIFICATE OF COMPLIANCE

The undersigned, counsel of record for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated, certifies that this brief contains 4,457 words and complies with the word limit of L.R. 11-6.1.

Dated: March 17, 2025

/s/ Kevin Y. Teruya
_____
Kevin Y. Teruya