**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 057645)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

**KELLER POSTMAN LLC**
Warren D. Postman (Bar No. 33069)
wdp@kellerpostman.com
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone: (202) 918-1123

*Interim Co-Lead Class Counsel*

[Additional Counsel Listed on Signature Page]

**UNITED STATES DISTRICT COURT**

**CENTRAL DISTRICT OF CALIFORNIA**

| | |
|---|---|
| SKOT HECKMAN, LUIS PONCE, JEANENE POPP, & JACOB ROBERTS, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C.,<br><br>Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>The Honorable George H. Wu<br><br>**JOINT STATUS REPORT AND PLAINTIFFS' REQUEST FOR CASE MANAGEMENT AND SCHEDULING CONFERENCE** |

Plaintiffs and Defendants, by and through their respective counsel, submit this Joint Status Report to advise the Court on the outcome of the parties' discussions following the Court's direction at the January 6, 2025 status conference. The parties have engaged in discussions, including email communication, exchange of letters, and a meet and confer session. However, the parties were unable to reach agreement on three issues.

The parties have not agreed on the best way to proceed and identify their competing views below. Plaintiffs request that the Court set a status conference to address the below issues. Defendants believe that a status conference is unnecessary and premature at this point, and that certain issues should be resolved (if necessary) through briefing, for the reasons explained below.

**Issue 1: Request for A Case Management and Scheduling Conference**

    A.    **Plaintiffs' Position:**

The parties on February 14, 2025 submitted a joint case management statement and Rule 26(f) report. *See* Dkt. 297. The parties in that statement set forth their respective positions on the scope of discovery, the number of depositions, and an appropriate case schedule for class certification and merits proceedings. *Id.* The Court has not yet resolved the parties' disputes on those issues. Plaintiffs submit that a conference with the Court—on a date as soon as is practicable for the Court—to discuss these issues and the parties' competing proposals would be helpful.

    B.    **Defendants' Position:**

Defendants' Motion to Dismiss will be fully briefed today and is set for hearing on April 10, 2025. ECF No. 293. Defendants believe that the outcome of that hearing will have a significant impact on the appropriate scope of discovery and the case

schedule in this case. Defendants therefore submit that there is no reason to hold a scheduling conference until the Court has resolved Defendants' Motion to Dismiss. Alternatively, if the Court believes an earlier scheduling conference is appropriate, for efficiency reasons it should be set for the same date as the hearing on Defendants' Motion to Dismiss (i.e., April 10).

**Issue 2: Use Of *Songkick* Material**

    A.    **Plaintiffs' Position:**

During the January 6, 2025 status conference, Plaintiffs raised the potential use of material in their counsel's possession from *Complete Entertainment Resources LLC v. Live Nation Entertainment*, Case No. 15-cv-9814-DS (AGRx) (C.D. Cal.) (*"Songkick"*) in this litigation. Ex. 1, 1/6/2025 Hr'g Tr. 24:6-8. The Court ordered that Plaintiffs' counsel may access *Songkick* material, but must notify Defendants before any "use or disclosure" of non-public documents. Ex. 1, 1/6/2025 Hr'g Tr. 27:10-14. The Court directed that if Defendants then object, the Court would consider Defendants' objections. Ex. 1, 1/6/2025 Hr'g Tr. at 25:8-27:8 (the Court directed that "if the defense counsel has any objections to either release or even use, I will allow you to bring it to my attention prior to its either disclosure or use").

On February 20, 2025, via a detailed 8-page letter, Plaintiffs identified to Defendants the initial list of *Songkick* documents they intended to use in this matter. All were materials Songkick's expert economist, Professor Joseph Farrell, expressly relied upon for his opinions in that matter. Plaintiffs informed Defendants that they plan to provide these materials to a retained expert in this matter who has executed Exhibit A to the protective order in this case, in order to move forward with their own expert analysis relating to upcoming class certification proceedings, as well as the merits of the case. Ex. 2; Dkt. 62 (August 5, 2022 Protective Order). In subsequent

letters, Plaintiffs reminded Defendants that Quinn Emanuel had not only received a hold notice from the U.S. Department of Justice ("DOJ") for all *Songkick* materials shortly after that case settled, but that the firm had also let Defendants' counsel, Dan Wall—who is now in-house at Live Nation and subject to the Protective Order dispute detailed below—know that fact. Ex. 3, Mar. 4, 2025 A. Wolfson Ltr.; Ex. 4, Mar. 12, 2025 A. Wolfson Ltr.

Defendants responded by flatly, and repeatedly, taking the position that Plaintiffs cannot share or send any of the non-public Songkick reliance materials with Plaintiffs' expert. Ex. 5, Feb. 27, 2025 A. Jovais Email; Ex. 6, Mar. 6, 2025 T. O'Mara Ltr.; Ex. 7, Mar. 17, 2025 T. O'Mara Ltr. Rather than engage substantively with Plaintiffs' request, and rather than timely raising objections with the Court in keeping with the Court's direction from the hearing, Defendants instead opted instead to devote most of their responses on this issue to unfounded accusations aimed at Plaintiffs' counsel. *See id.* For example, Defendants questioned whether there was a valid U.S. Department of Justice legal hold notice sent to Plaintiffs' counsel that applies to the *Songkick* materials, even though Plaintiffs provided Defendants with a copy of the January 2018 DOJ hold notice, and even though Plaintiffs' counsel expressly notified Defendants of the DOJ hold covering these materials on January 23, 2018, which was shortly after the DOJ issued the hold. *See* Ex. 3, Mar. 4, 2025 A. Wolfson Ltr., Ex. A; Ex. 4, Mar. 12, 2025 A. Wolfson Ltr. The DOJ's litigation hold to Plaintiffs' counsel requires retention of all *Songkick* discovery. Ex. 4, at Ex. A ("preserve all documents and information…include[ing], but [] not limited to, those relating to…all products of discovery related to any litigation between Live Nation and CERG.").[1]

---

[1] Defendants insisted in their correspondence that Plaintiffs' counsel should have unilaterally ceased compliance with this litigation hold at some point after it issued, yet Defendants never identify the moment Defendants contend the litigation hold expired, or what basis (if any) Defendants would have for that contention. The litigation hold has clearly remained in force as the U.S. government has consistently pursued related litigation against Defendants over the last seven years. DOJ issued

Plaintiffs also reiterated to Defendants that the *Songkick* protective order permits retention of multiple categories of nonpublic material, including work product," court filings, documents marked as trial exhibits, deposition transcripts, deposition exhibits, backup material and unstructured departed employee data. Ex. 8, *Songkick* PO ¶ 18; *see also* Ex. 3, Mar. 4, 2025 A. Wolfson Ltr., at 1; Ex. 4, Mar. 12, 2025 A. Wolfson Ltr., at 2. Yet Defendants continued to take the position with Plaintiffs that Plaintiffs could not use of any nonpublic *Songkick* material in this litigation. Defendants provided no further basis, other than continuing arguments about supposed impropriety. *See* Mar. 17, 2025 LW letter at 1. Defendants seek to downplay these provisions of the *Songkick* Protective order in their arguments below, but their position is belied by the plain terms of the Protective Order. Ex. 8, *Songkick* PO ¶ 18. Nor, as Defendants contend, do Plaintiffs seek (or need) to modify the *Songkick* Protective Order in order to pursue this issue—the documents at issue are in Plaintiffs' counsel's possession, and Plaintiffs here have served RFPs here seeking these exact same materials. Plaintiffs' counsel are simply looking to streamline and expedite the process of reproducing these documents here, in order to move expert discovery and other discovery forward.

After Defendants' flat refusals, Plaintiffs initially sought a meet and confer under Local Rule 37-1, but then reminded Defendants the Court asked that this issue return directly to it rather than the Magistrate Judge, if Defendants insisted on raising objections to Plaintiffs' use. Ex. 9, Mar. 19, 2025 A. Wolfson Email.

---

a CID (No. 29299) to Songkick on January 25, 2018 and a separate CID to LNE on the same day. In 2024, the U.S. government sued Defendants in the Southern District of New York in litigation arising out of those CIDs. Further, federal prosecutions of two of Defendants' former employees that were heavily related to Defendants' actions underlying the *Songkick* matter were ongoing throughout most of the intervening seven years. Defendants have been aware of Plaintiffs' counsel's compliance with this litigation hold since January 24, 2018. Defendants could have raised objections to preservation of these documents at any point over the last seven years if they believed the litigation hold expired.

Defendants' continued refusal to allow sharing of the discrete set of expert economist reliance materials from the Songkick matter (as well as certain positions they are taking regarding third-party document protections, *see infra*) risks prejudicing Plaintiffs' ability to timely prepare expert reports relating to class certification. Defendants' goal is self-evidently delay, which is unfortunate because Plaintiffs asked them repeatedly to take a reasonable approach to avoid burdening the Court. Defendants, however, will not budge from their position and do not provide substantive reasons to foreclose access to highly relevant, overlapping materials.

Plaintiffs therefore respectfully request that the Court address these issues at a status conference, where Plaintiffs ask that the Court grant Plaintiffs permission to use the listed *Songkick* documents in this litigation, as well as any others Plaintiffs identify to Defendants in due course.

### B.     Defendants' Position:

As Defendants have repeatedly informed Plaintiffs, Defendants will not assent to Plaintiffs' violation of the protective order in *Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc. et al.*, Case No. 15-cv-9814-DSF-AGRx (C.D. Cal.) ("*Songkick*") by using in this case materials that they improperly retained from an entirely different case—a business-to-business dispute in which Plaintiffs' counsel represented a different client—that was settled over eight years ago.[2]

---

[2] Plaintiffs claim that Defendants should have "timely rais[ed] their objections with the Court in keeping with the Court's direction from the hearing." However, the Court was clear that, "before any use or disclosure of any nonpublic documents, you [(Plaintiffs' counsel)] will notify defense counsel of what your intentions are identifying, and if the defense counsel has any objections to either release or even use, I will allow you [(Plaintiffs' counsel)] to bring it to my attention prior to its either disclosure or use." Jan. 6 Hr'g Tr. at 26:19-23. Plaintiffs have been free to do so since Defendants stated their objections via email on February 27, 2025. Defendants' position has not changed since, and Defendants have responded to all of Plaintiffs' letters on this subject consistently and within the requested timeframe for response. There has been no delay.

Plaintiffs' representation at the January 6, 2025 hearing that, "under the confidentiality order and the operative settlement in [the *Songkick*] matter, [they] were able to retain copies" of confidential documents, was false. Jan. 6 Hr'g Tr. at 24:25-25:3. Neither the *Songkick* Protective Order nor the confidential settlement agreement in that case permitted the retention of any materials except those publicly filed on the docket and certain limited, specific categories (*e.g.*, work product) that Plaintiffs have not sought to use in this matter. *Songkick* Protective Order, ECF No. 22 ¶ 18.

Plaintiffs have since represented that they were prevented from complying with their destruction obligation in *Songkick* because they received a 2018 litigation hold from the Department of Justice regarding the "Acquisition by Live Nation Entertainment, Inc. ("LiveNation") of Assets of Complete Entertainment Resources LLC ("CERG") d/b/a Songkick." Seven years have now passed since the closure of that acquisition, and Plaintiffs should long ago have destroyed the materials. The current litigation in the Southern District of New York has nothing to do with a short-lived government review of Defendants' acquisition of certain assets from Songkick.

Regardless of the impropriety of Plaintiffs' counsel's indefinite retention of the *Songkick* materials, Plaintiffs' counsel remain prohibited from using those materials in this case under the clear terms of the *Songkick* Protective Order. *Songkick* Protective Order, ECF No. 22 ¶¶ 7, 8. Plaintiffs now claim that they "are simply looking to streamline and expedite" discovery, since "the documents at issue are in Plaintiffs' counsel's possession, and Plaintiffs here have served RFPs seeking these exact same materials." This argument is disingenuous. It ignores that the non-public documents are in Plaintiffs' counsel's possession precisely because Plaintiffs violated the *Songkick* Protective Order. To the extent Plaintiffs are seeking the same materials through document requests in this case, Plaintiffs can continue to pursue the materials that way—not through violation of a protective order in another case.

Defendants do not believe that this Court intended to give Plaintiffs carte blanche to violate that Protective Order, but if Plaintiffs persist in this improper request, Defendants request full briefing on the question of whether this Court may order revocation of a valid protective order entered by different court involving different plaintiffs in a different case. *See* Jan. 6 Hr'g Tr. at 24:20-24 ("[B]efore I could order it, I would have to ask Judge Fischer … or somebody would have to ask Judge Fischer if Judge Fischer has a problem with it being released, since it's over a confidentiality order.").

Before the Court has the benefit of full briefing on that issue, Defendants believe that a conference on the issue would be premature.

## Issue 3: Modification Of Protective Order

### A. Plaintiffs' Position

On February 28, 2025, Plaintiffs filed an *ex parte* application to modify the protective order in this case to protect third parties' highly confidential materials from disclosure to Defendants' in-house counsel; *i.e.*, the same third-party protections the SDNY has applied in the Government Action, and to which Defendants stipulated in *Donley, et al. v. Live Nation Entertainment, Inc., et al.*, Case No. 2:23-cv-06343-KK, Dkt. 79 (C.D. Cal. Oct. 31, 2024), which is a securities class action based on Defendants' alleged failure to disclose the core conduct at issue in this case and the Government Action. Dkt. 298. Defendants filed an Opposition on March 3, 2025. Dkt. 299. Judge Standish denied Plaintiffs' application on March 3, 2025. Dkt. 300. Plaintiffs have moved to modify or vacate Judge Standish's ruling, Dkt. 303, and Plaintiffs have requested that the Court hear arguments on their Motion to Modify or Set Aside the Magistrate Judge's March 2, 2025 Order on April 17, 2025.

By this status report, Plaintiffs do not intend to argue the merits of their request. However, they do note that they have begun issuing third-party subpoenas and this issue has come up repeatedly because several different third parties are concerned about producing highly confidential materials that individuals within an alleged industry monopolist—and, in several cases, third parties' biggest competitor—could then access. Plaintiffs also understand that several of those third parties plan to move within days for the same relief from the current Protective Order, to ensure their materials retain the same protections here as in other cases.

Given these circumstances, Plaintiffs are happy to discuss this issue with the Court in advance of the currently-scheduled April 17, 2025 hearing, if the Court would find it helpful.

**B.     Defendants' Position**

Defendants' brief opposing Plaintiffs' motion to modify or set aside Judge Standish's order denying their ex parte application to revoke Defendants' in-house counsel's access to highly confidential materials (ECF No. 303) is not due to be filed until Thursday, March 27, 2025, and the hearing on that motion has been set for April 17, 2025. Accordingly, Plaintiffs' request to discuss the issue with the Court in advance of the April 17, 2025 hearing is premature and unnecessary at this stage. Defendants will respond in due course.

| | | |
|---|---|---|
| Dated: March 26, 2025 | | Respectfully submitted, |
| | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By: | */s/ Kevin Y. Teruya* |
| | | Kevin Y. Teruya (Bar No. 057645) |
| | | kevinteruya@quinnemanuel.com |
| | | Adam B. Wolfson (Bar No. 262125) |
| | | adamwolfson@quinnemanuel.com |
| | | William R. Sears (Bar No. 330888) |
| | | willsears@quinnemanuel.com |
| | | 865 South Figueroa Street, 10th Floor |
| | | Los Angeles, CA 90017-2543 |
| | | Telephone: (213) 443-3000 |
| | | Facsimile: (213) 443-3100 |
| | | |
| | | KELLER POSTMAN LLC |
| | | Warren Postman (Bar No. 33069) |
| | | wdp@kellerpostman.com |
| | | Albert Pak (*pro hac vice* forthcoming) |
| | | albert.pak@kellerpostman.com |
| | | 1100 Vermont Avenue, N.W., 12th Fl. |
| | | Washington, D.C. 20005 |
| | | Telephone: (202) 918-1123 |
| | | |
| | | *Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts* |
| Dated: March 26, 2025 | | Respectfully submitted, |
| | | LATHAM & WATKINS LLP |
| | By: | */s/ Timothy L. O'Mara* |
| | | Timothy L. O'Mara |
| | | |
| | | 505 Montgomery Street, Suite 2000 |
| | | San Francisco, California 94111-6538 |
| | | Tel.: +1.415.391.0600 |
| | | Fax: +1.415.395.8095 |
| | | tim.o'mara@lw.com |
| | | |
| | | *Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.* |

## **ATTESTATION**

I am the ECF user whose identification and password are being used to file the foregoing Joint Status Report. Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, Kevin Y. Teruya, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized such filing.

Dated:  March 26, 2025                                          */s/ Kevin Y. Teruya*
                                                                                      Kevin Y. Teruya