1  LATHAM & WATKINS LLP
     Timothy L. O'Mara (Bar No. 212731)
2      tim.o'mara@lw.com
     Andrew M. Gass (Bar No. 259694)
3      andrew.gass@lw.com
     Alicia R. Jovais (Bar No. 296172)
4      alicia.jovais@lw.com
     Samuel R. Jeffrey (Bar No. 347533)
5      sam.jeffrey@lw.com
   505 Montgomery Street, Suite 2000
6  San Francisco, California  94111-6538
   Telephone:  +1.415.391.0600
7  Facsimile:  +1.415.395.8095

8  *Attorneys for Defendants Live Nation*
   *Entertainment, Inc. and Ticketmaster L.L.C.*

9

10

                    **UNITED STATES DISTRICT COURT**

11

                    **CENTRAL DISTRICT OF CALIFORNIA**

12

13  Skot Heckman, Luis Ponce, Jeanene          Case No. 2:22-cv-00047-GW-GJS
14  Popp, and Jacob Roberts, on behalf of
    themselves and all those similarly
15  situated,                                  **DEFENDANTS' OPPOSITION TO**
                                               **PLAINTIFFS' MOTION TO**
16                                             **MODIFY OR SET ASIDE THE**
                        Plaintiffs,            **MAGISTRATE JUDGE'S**
17                                             **MARCH 3, 2025 MINUTE ORDER**
    v.                                         **DENYING PLAINTIFFS'** ***EX***
18                                             ***PARTE*** **APPLICATION TO**
    Live Nation Entertainment, Inc., and      **MODIFY PROTECTIVE ORDER**
19  Ticketmaster LLC,
                                               The Honorable George H. Wu
20                      Defendants.

21

22                                             Hearing Date: April 17, 2025

23                                             Hearing Time: 8:30 am

24                                             Courtroom: 9D, 9th Floor

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO
                                               DEFS.' OPPOSITION TO MOT. TO
                                               MODIFY OR SET ASIDE
                                               CASE NO. 2:22-CV-00047-GW-GJS

# <u>TABLE OF CONTENTS</u>

**Page**

I.    INTRODUCTION ................................................................................ 1

II.    FACTUAL AND PROCEDURAL BACKGROUND .................................. 2

    A.    The Protective Order ................................................................ 2

    B.    The Court's Proper Refusal To Order Wholesale
        Reproduction of All Third-Party Materials From *U.S. v.*
        *Live Nation* In This Case ........................................................ 3

    C.    Plaintiffs' Attempts To Skirt The Court's Directives
        Regarding Third-Party Discovery .......................................... 5

    D.    Plaintiffs' Demand For Modification Of The Protective
        Order ......................................................................................... 6

III.    LEGAL STANDARD ........................................................................ 6

IV.    ARGUMENT ................................................................................... 7

    A.    Plaintiffs Have Waived All Three Arguments In Their
        Motion By Not Raising Them Before The Magistrate
        Judge. ...................................................................................... 7

        1.    Plaintiffs Made Two Arguments In Their Ex Parte
            Application—Neither Of Which Supports Their
            New Arguments In This Motion ................................. 8

        2.    Plaintiffs Advance Three Completely New
            Arguments In This Motion, And Have Therefore
            Waived Them ............................................................ 9

    B.    All Three Of Plaintiffs' Arguments Also Fail On Their
        Own Terms ............................................................................ 11

        1.    The Magistrate Judge Correctly Recognized That
            Plaintiffs Seek Revocation Of In-House Counsel
            Access To Highly Confidential Documents. .......................... 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

i

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

2.    The Magistrate Judge Applied The Correct "Good
Cause" Standard For Modification Of A Protective
Order. ...................................................................................... 13

3.    The Magistrate Judge Properly Considered
Mr. Wall's Declaration. ......................................................... 14

V.    CONCLUSION ............................................................................................ 20

LATHAM & WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

# TABLE OF AUTHORITIES

**Page(s)**

### CASES

*AFMS v. United Parcel Serv.,*
2012 WL 3112000 (S.D. Cal. July 30, 2012) ..................................................... 12

*Aristocrat Techs. v. Int'l Game Tech.,*
2007 WL 9747649 (N.D. Cal. Feb. 1, 2007) ..................................................... 18

*Barnes & Noble v. LSI,*
2012 WL 601806 (N.D. Cal. Feb. 23, 2012) ............................................... 18, 19

*Blum v. Merrill Lynch Pierce Fenner & Smith Inc.,*
712 F.3d 1349 (9th Cir. 2013) ........................................................................ 6

*Brown Bag Software v. Symantec Corp.,*
960 F.2d 1465 (9th Cir. 1992) ............................................................. 17, 18, 20

*Cedars-Sinai Med. Ctr. v. AIG Specialty Ins.,*
2025 WL 504477 (C.D. Cal. Jan. 7, 2025) ...................................................... 16

*Coleman v. Quaker Oats Co.,*
232 F.3d 1271 (9th Cir. 2000) ........................................................................ 10

*CytoSport v. Vital Pharm.*
2010 WL 1904840 (E.D. Cal. May 10, 2010) .................................................. 20

*Donley v. Live Nation Entertainment, Inc.,*
No. 2:23-cv-06343-KK (C.D. Cal.) .................................................................. 8

*F.T.C. v. Advoc. Health Care Network,*
162 F. Supp. 3d 666 (N.D. Ill. 2016) ........................................................ 16, 17

*Foltz v. State Farm Mut. Auto. Ins.,*
331 F.3d 1122 (9th Cir. 2003) ............................................................. 1, 13, 14

*Grand River Enter. Six Nations, Ltd. v. Pryor,*
481 F.3d 60 (2d Cir. 2007) ........................................................................... 16

*In re Midland Credit Mgmt. Tel. Consumer Prot. Act Litig.,*
2020 WL 6504416 (S.D. Cal. Nov. 5, 2020) ..................................................... 2

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iii

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

*Indianapolis Airport Auth. v. Travelers Prop. Cas. Co. of Am.*,
   2015 WL 1013952 (S.D. Ind. Mar. 9, 2015) ........................................................ 10

*Intel Corp. v. VIA Techs.*,
   198 F.R.D. 525 (N.D. Cal. 2000) ........................................................................ 20

*Jerozal v. Stryker*,
   2023 WL 9474512 (C.D. Cal. Aug. 22, 2023), *adopted*, 2023 WL
   9474623 (C.D. Cal. Aug. 24, 2023) ...................................................................... 6

*Mad Catz Interactive, Inc. v. Razor USA, Ltd.*,
   2014 WL 4161713 (S.D. Cal. Aug. 19, 2014) ...................................................... 19

*Marshall v. Chater*,
   75 F.3d 1421 (10th Cir. 1996) ............................................................................... 7

*Matsushita Elec. Indus. Co. v. U.S.*,
   929 F.2d 1577 (Fed. Cir. 1991) ........................................................................... 19

*MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*,
   2021 WL 389820 (S.D. Cal. Feb. 4, 2021) .............................................. 10, 13, 19

*Moog v. Skyryse*,
   2023 WL 12032094 (C.D. Cal. Aug. 24, 2023) ..................................................... 7

*ODS Techs. v. Magna Ent.*,
   583 F. Supp. 2d 1141 (C.D. Cal. 2008) .............................................................. 16

*Olympic Refining v. Carter*,
   332 F.2d 260 (9th Cir. 1964) .............................................................................. 14

*Perry v. Brown*,
   667 F.3d 1078 (9th Cir. 2012) ............................................................................... 6

*Phillips ex rel. Ests. of Byrd v. Gen. Motors*,
   307 F.3d 1206 (9th Cir. 2002) ............................................................................... 2

*Rainone v. Paz*,
   2021 WL 8820865 (C.D. Cal. Jan. 4, 2021) ......................................................... 7

*Rivera v. NIBCO*,
   364 F.3d 1057 (9th Cir. 2004) ......................................................................... 7, 14

*San Jose Mercury News v. U.S. Dist. Ct.*,
   187 F.3d 1096 (9th Cir. 1999) ............................................................................ 11

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

iv

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

*Santella v. Grizzly Indus.*,
    2012 WL 5399970 (D. Or. Nov. 5, 2012) ................................................... 17, 19

*U.S. Steel v. United States*,
    730 F.2d 1465 (Fed. Cir. 1984) ........................................................... 17

*U.S. v. Boyce*,
    2014 WL 7507240 (C.D. Cal. May 2, 2014) ........................................... 7

*U.S. v. Live Nation Entertainment, Inc.*,
    No. 1:24-cv-3973-AS (S.D.N.Y.) .................................................. *passim*

*Vasudevan Software v. Int'l Bus. Machines*,
    2010 WL 3629830 (N.D. Cal. Sept. 14, 2010) ....................................... 17

*Westerfield v. Ethicon*,
    2020 WL 11421251 (C.D. Cal. Nov. 16, 2020) ....................................... 7

*Yent v. Baca*,
    2002 WL 32810316 (C.D. Cal. Dec. 16, 2002) ....................................... 7

**RULES**

Fed. R. Civ. P. 26(c) ....................................................................... 1, 14

Fed. R. Civ. P. 72(a) .......................................................................... 7

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

v

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

# I.    INTRODUCTION

A party seeking to modify a protective order to increase protections must establish "good cause." Fed. R. Civ. P. 26(c). "A party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result" absent modification. *Foltz v. State Farm Mut. Auto. Ins.*, 331 F.3d 1122, 1130 (9th Cir. 2003).

Under this standard, Plaintiffs' ex parte application for an emergency order revoking Defendants' in-house counsel's existing access to third-party materials presented an easy question for Magistrate Judge Standish. *See* ECF No. 298. Plaintiffs made no mention of the "good cause" standard, introduced no evidence, and presented their argument for modification in just two paragraphs. *See id.* at 5-6. In opposition, Defendants set forth the "good cause" standard, demonstrated why Plaintiffs failed to meet it (let alone under circumstances constituting an emergency warranting ex parte relief), and explained the necessity and propriety of maintaining their in-house counsel's access to the materials necessary to defend this allegedly billion-dollar case, supported by sworn, unrebutted declarations. *See* ECF No. 299. In keeping with Plaintiffs' supposed emergency timeline, Judge Standish ruled on Plaintiffs' application within hours of it being fully briefed, and found that "good cause has not been established for a blanket modification to the Protective Order that would deprive certain in house counsel that were previously, per stipulation of the Parties, permitted to review certain discovery from their ability to do so." ECF No. 300.

Unsatisfied with the result of their ex parte gambit, Plaintiffs now demand a re-do. Their Motion to Modify or Set Aside ("Motion") presents brand new arguments and evidence—and then faults Judge Standish for not considering cases and articles that Plaintiffs failed to cite, not applying balancing tests that Plaintiffs failed to mention, and not rejecting evidence that Plaintiffs failed to rebut. But "[t]his Court's function, on a motion for review of a magistrate judge's discovery

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

1

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

order, is not to decide what decision this Court would have reached on its own, nor to determine what is the best possible result considering all available evidence. It is to decide whether the Magistrate Judge, *based on the evidence and information before h[er]*, rendered a decision that was clearly erroneous or contrary to law." *In re Midland Credit Mgmt. Tel. Consumer Prot. Act Litig.*, 2020 WL 6504416, at *6 (S.D. Cal. Nov. 5, 2020) (citation omitted). On the record presented to Judge Standish, the answer is obviously no.

But even if Plaintiffs were entitled to *de novo* review, their Motion would still fail because Plaintiffs do not show "good cause" for additional confidentiality protections—and refuse to even acknowledge that the burden to demonstrate it rests with them. *See Phillips ex rel. Ests. of Byrd v. Gen. Motors*, 307 F.3d 1206, 1211 n.1 (9th Cir. 2002) (when a party seeks to modify a stipulated protective order, "the burden of proof … remain[s] with the party seeking protection"). Unable to discharge their burden, Plaintiffs again invoke the wrong precedents and articulate the wrong tests, all in service of an improper attempt to prevent Defendants' long-time antitrust counsel from meaningfully participating in the defense of this case. The Court should reject Plaintiffs' Motion for a do-over in full.

## II.    FACTUAL AND PROCEDURAL BACKGROUND

Plaintiffs' ex parte application and the instant Motion distort or omit relevant aspects of the procedural history in this case. Defendants briefly outline this history here to clarify the record.

### A.    The Protective Order

In 2022, the Parties negotiated and agreed to a Protective Order that would govern the treatment of all materials "produced or generated in disclosures or responses to discovery in this matter." ECF No. 62 ¶ 2.6. The Parties recognized then that discovery was "likely to involve the production and exchange of confidential, sensitive information that could cause business, competitive, and personal harm if disclosed publicly," including "trade secrets, operating plans,

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

2

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

market analyses, nonpublic contracts, negotiating positions and business negotiation strategies, and financial information that … could provide confidential, competitively sensitive information to the market and competitors." *Id.* ¶ 1.B.

For that reason, the Parties agreed to additional protections for certain highly confidential materials beyond those laid out in Judge Standish's model order. While the model order permits the disclosure of confidential materials to all employees of the Parties "to whom disclosure is reasonably necessary," including all "House Counsel" (Stipulated Protective Order of Magistrate Judge Gail J. Standish, March 14, 2019 ¶ 7.2(b)), the Parties here agreed to a more restrictive provision in which, at most, "three (3) in-house counsel for the parties who either have responsibility for making decisions dealing directly with the litigation of the Action, or who are assisting outside counsel in the litigation of the Action" may access highly confidential materials. ECF No. 62 ¶ 7.3. Judge Standish found good cause for this provision and entered it as part of the Protective Order in this case. *Id.* at 19.

## B.  The Court's Proper Refusal To Order Wholesale Reproduction of All Third-Party Materials From *U.S. v. Live Nation* In This Case

Plaintiffs contend that the vast discovery record in *U.S. v. Live Nation Entertainment, Inc.*, No. 1:24-cv-3973-AS (S.D.N.Y.) ("*U.S. v. Live Nation*")—a "broader" government action involving productions from more than 150 third parties related to every aspect of the live entertainment industry, *see id.*, ECF No. 433 at 4—would be "a useful starting point for discovery" in this case. ECF No. 269 at 7, 19. At the January 6, 2025 status conference, Plaintiffs requested that the Court "order[] everything that [Defendants] have produced … [in *U.S. v. Live Nation*], produced to us within the next, you know, few weeks." *See* Jan. 6, 2025 Hr'g Tr. at 22:4-9.

This Court ordered reproduction of the materials that *Defendants* (not third parties) produced in *U.S. v. Live Nation* and the preceding DOJ investigations, and also stated clearly that, at this stage, discovery should be limited to what is "going

1    to be relevant to the issue of whether or not the Court certifies the class." *Id.* at

2    20:10-23; 23:8-11.

3        Following the hearing, Plaintiffs insisted that the Court had ordered the

4    reproduction of *all* materials produced by Defendants (not just those relevant to class

5    certification) *and* the materials of every third party in *U.S. v. Live Nation* (not just

6    Defendants). *See* ECF No. 291 at 1. In response, Defendants explained that

7    "[r]eproduction of third-party discovery materials was not addressed, nor could it

8    have been" at the January 6 conference, in part because Defendants are prohibited

9    from reproducing any materials but their own under the protective order in *U.S. v.*

10    *Live Nation*. ECF No. 290 at 3.

11        Plaintiffs then put their request to the Court directly: they "request[ed] that

12    Defendants produce to Plaintiffs the documents, data, and depositions (including

13    marked exhibits) of both Defendants and non-parties from the SDNY Action and the

14    preceding government investigations that exist, and that Defendants make rolling re-

15    productions of those materials going forward." ECF No. 291 at 2. The Court

16    rejected Plaintiffs' overbroad request: "[T]he Court wanted materials that [w]ere

17    germane to the briefing/hearing on class certification to be produced expeditiously,

18    but not necessarily all discovery regarding liability/damages. … With respect to the

19    production of third-party discovery materials, … [t]he Court *will not order*

20    Defendants to presently reproduce the materials. Instead, Plaintiffs may seek to

21    *specifically* compel these materials … *through the regular discovery process*." ECF

22    No. 292 at 1-2 (emphases added).

23        Defendants have since reproduced the materials that they had produced in *U.S.*

24    *v. Live Nation* and the preceding DOJ investigations—3.1 million documents and 12

25    billion observations of data—subject to the procedures and protections in the

26    governing Protective Order. Defendants will make rolling reproductions to

27    Plaintiffs as Defendants continue to produce materials in *U.S. v. Live Nation*.

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

4

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

**C.    Plaintiffs' Attempts To Skirt The Court's Directives Regarding Third-Party Discovery**

Rather than follow the Court's instruction and issue subpoenas to third parties right away, Plaintiffs instead served a document request on Defendants demanding the production of all materials, including unredacted third-party productions, from *U.S. v. Live Nation* and a host of other cases and investigations—in other words, precisely the same (and additional) materials that the Court ruled they could not obtain from Defendants.[1]   ECF No. 299 at 3.

Taking the position that the only obstacle to this overbroad and improper request was the protective order in the Southern District of New York, Plaintiffs then moved to intervene and seek modification of the protective order there to grant themselves access to all materials in that case.  *U.S. v. Live Nation*, ECF No. 424. In their motion, Plaintiffs represented to Judge Subramanian that this Court had "granted" Plaintiffs' request for the "reproduction of all documents previously produced in [*U.S. v. Live Nation*], including … third-party documents," when in fact this Court had *denied* that request.  *Id*. at 1.

The government plaintiffs and more than a dozen third parties objected to Plaintiffs' intervention and their requested modification.  *See U.S. v. Live Nation*, ECF Nos. 433-464.  They explained that *U.S. v. Live Nation* is a much "broader" case than this one—*e.g.*, because it involves allegations regarding promotion and venue ownership not relevant to Plaintiffs (ticket buyers) here—and therefore much of the discovery in that case would and should never be produced through the regular discovery process in this case.  *Id.*, ECF No. 433 at 4-5 (government plaintiffs stating that "the Heckman Plaintiffs would not ordinarily obtain discovery from many of the non-parties that have produced documents in this case—because the documents

---

[1]  Following Judge Standish's rejection of their ex parte application, Plaintiffs have issued more than 25 third-party subpoenas, effectively mooting any need for the ex parte procedures now, since they were premised on Plaintiffs' claim that "the scope and methods Plaintiffs must use to obtain non-party discovery will not be clear until this issue is resolved."  ECF No. 298 at 4.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

5

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

1    would be irrelevant in *Heckman*"); *id.,* ECF No. 446 at 2 (third party SDA objecting

2    that Plaintiffs are seeking "an 'end around' the rights and interests of third parties"

3    when they should "be required to proceed by way of subpoena and appropriate legal

4    process in [this] district," so that the third parties "will have proper notice and an

5    opportunity to evaluate and respond").    Judge Subramanian has not yet ruled on

6    Plaintiffs' motion to intervene.

7         **D.    Plaintiffs' Demand For Modification Of The Protective Order**

8         Plaintiffs then returned to this Court and claimed that the only plausible

9    objection to their intervention in *U.S. v. Live Nation* was that the protective order in

10   that case placed greater blanket restrictions on in-house counsel access to third-party

11   materials than the Protective Order in this case.    *See* ECF No. 298 at 1-2.    Plaintiffs

12   then demanded—without identifying any specific concerns about any particular

13   third parties, any specific classes of documents potentially at issue, or any specific

14   issues related to any of Defendants' in-house counsel—that Defendants agree to

15   modify the protective order in this case, revoking the access of all "in-house

16   counsel[] of Defendants" to any materials marked "HIGHLY CONFIDENTIAL –

17   ATTORNEYS' EYES ONLY."    ECF No. 303-3 at 4; *see also* ECF No. 299 at 4.

18   When Defendants declined to agree to modify the parties' negotiated Protective

19   Order, citing the importance of allowing a limited number of in-house litigators

20   managing this case to have full access to expert reports, briefs, exhibits, and the like,

21   Plaintiffs filed their ex parte application the next day.    ECF No. 298.    Judge Standish

22   denied the application.    ECF No. 300.

23   **III.   LEGAL STANDARD**

24        A magistrate judge's decisions on non-dispositive motions are "entitled to

25   great deference by the district court."    *Jerozal v. Stryker*, 2023 WL 9474512, at *4

26   (C.D. Cal. Aug. 22, 2023) (citation omitted) (Wu, J.), *adopted*, 2023 WL 9474623

27   (C.D. Cal. Aug. 24, 2023).    Accordingly, the "district court must affirm [a]

28   magistrate judge's ruling" under Federal Rule of Civil Procedure 72(a) unless it is

1   clearly erroneous—*i.e.*, the district court "is left with the definite and firm conviction

2   that a mistake has been committed"—or contrary to law. *Moog v. Skyryse*, 2023 WL

3   12032094, at *3-4 (C.D. Cal. Aug. 24, 2023) (citation omitted) (Wu, J.). A decision

4   is contrary to law only when it "fails to apply or misapplies relevant statutes, case

5   law or rules of procedure." *Yent v. Baca*, 2002 WL 32810316, at *2 (C.D. Cal. Dec.

6   16, 2002); s*ee also Rivera v. NIBCO*, 364 F.3d 1057, 1063 (9th Cir. 2004) ("We may

7   not overturn a protective order simply because we might have weighed differently

8   the various interests and equities; instead, we must ascertain whether the order was

9   contrary to law."). "This standard is deferential, and a district court 'may not simply

10   substitute its judgment' for that of the magistrate judge as it would on de novo

11   review." *Rainone v. Paz*, 2021 WL 8820865, at *2 (C.D. Cal. Jan. 4, 2021) (citation

12   omitted) (Wu, J.).

13   **IV.   ARGUMENT**

14       **A.   Plaintiffs Have Waived All Three Arguments In Their Motion By
           Not Raising Them Before The Magistrate Judge.**

15

16       "Motions to reconsider a magistrate judge's ruling 'are not the place for

17   parties to make new arguments not raised in their original briefs.'" *Westerfield v.*

18   *Ethicon*, 2020 WL 11421251, at *1 (C.D. Cal. Nov. 16, 2020) (citation omitted)

19   (Wu, J.). It is therefore "exceedingly difficult, if not impossible, for a litigant to

20   demonstrate clear error based on information that the litigant failed to present to the

21   court whose ruling is under review." *Id.*; *see also Marshall v. Chater*, 75 F.3d 1421,

22   1426 (10th Cir. 1996) ("Issues raised for the first time in objections to the magistrate

23   judge's recommendation are deemed waived."). Here, all three of Plaintiffs'

24   arguments are waived because they did not present them to Judge Standish in their

25   original emergency application. *See U.S. v. Boyce*, 2014 WL 7507240, at *7 (C.D.

26   Cal. May 2, 2014) ("It would defeat th[e] purpose [of the Federal Magistrate's Act]

27   if the district court was required to hear matters anew on issues never presented to

28   the magistrate. Parties must take before the magistrate, 'not only their 'best shot'

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

7

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

1    but all of their shots.'" (citation omitted)).

2        **1.    *Plaintiffs Made Two Arguments In Their Ex Parte***
3            ***Application—Neither Of Which Supports Their New***
            ***Arguments In This Motion.***

4        Plaintiffs made just two arguments to justify their proposed modification of
5    the protective order in their original ex parte application to the magistrate judge:
6    (1) the modifications would make unspecified third parties "feel comfortable"; and
7    (2) Defendants once agreed to an allegedly similar modification involving two third
8    parties in a different case, *Donley v. Live Nation Entertainment, Inc.*, No. 2:23-cv-
9    06343-KK (C.D. Cal.).  ECF No. 298 at 2-3, 5-6.  Plaintiffs did not introduce any
10   evidence in support of their request, did not reference any specific concerns
11   regarding Defendants' in-house counsel from any actual or potential third-parties,
12   and did not or refer to any specific classes of documents.  Nor did they cite any law
13   relating to the "good cause" standard for expansion of a protective order—or even
14   use the phrase "good cause."  In essence, their request boiled down to identifying
15   purportedly similar restrictions in *U.S. v. Live Nation* and *Donley*, and challenged
16   Defendants to explain why those provisions *shouldn't* apply here—without
17   proffering any specific reasons why they *should*.  *See* ECF No. 298 at 2 (arguing
18   Defendants "never explain[ed] here why third parties should receive less protection
19   than" in those cases).

20       In response, Defendants explained that there was no good cause to modify the
21   Protective Order.  ECF No. 299 at 5-13.  The Protective Order remains as fair and
22   reasonable as it was when the Parties first agreed to it, including because two of the
23   in-house litigators responsible for managing this case (Daniel Wall and Kimberly
24   Tobias) need access to all materials in order to effectively defend against these
25   allegedly billion-dollar claims.  *Id*.  Defendants introduced declarations from
26   Mr. Wall and Ms. Tobias explaining their roles—*neither of which involve*
27   *competitive decision-making*—and highlighting the serious prejudice which would
28   result if they were deprived of access to what are likely to be some of the most

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

8

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

1   important materials in this case.  ECF Nos. 299-2; 299-3; *see also* ECF No. 299 at

2   7-9, 12-13.  In addition, Defendants explained why the situations in *U.S. v. Live*

3   *Nation* and *Donley* were distinguishable from the situation here, such that the

4   protective order provisions in those cases should not apply in this one.  ECF No. 299

5   at 9-12.

6        On the basis of these arguments and Defendants' unrebutted evidence, Judge

7   Standish correctly found that Plaintiffs had not made the requisite "good cause"

8   showing "for a blanket modification of the Protective Order that would deprive

9   certain in house counsel that were previously, per stipulation of the Parties, permitted

10  to review certain discovery from their ability to do so."  ECF No. 300.

11       **2.    *Plaintiffs Advance Three Completely New Arguments In This***
                 ***Motion, And Have Therefore Waived Them.***

12

13       Plaintiffs now fault Judge Standish for allegedly not considering the following

14  three factual and legal arguments, which they claim "infect" the decision and require

15  it to be set aside.  Plaintiffs are incorrect.

16       *First*, Plaintiffs claim that Judge Standish clearly erred by "assum[ing] that

17  Defendants' in-house attorneys legitimately expected to be able to review … third

18  parties' Highly Confidential materials," because they now read the Protective Order

19  as applying only to the productions of New Era ADR.  ECF No. 303-1 at 8-10.  But

20  Plaintiffs never argued that Defendants' in-house counsel could not have

21  "legitimately expected" to review third-party highly confidential material, nor that

22  the Protective Order was limited to New Era.  In fact, Plaintiffs never mentioned

23  New Era in their ex parte motion at all, and admitted that "the original Protective

24  Order in this case … does not currently have [the] added protections" for third-party

25  materials—*i.e.*, they recognized, just as Judge Standish did, that Defendants' in-

26  house counsel *did* expect to be able to review third-party highly confidential

27  material, as provided for in the Protective Order.  ECF No. 298 at 2.

28       *Second,* Plaintiffs argue that the order "is also contrary to law, and clearly

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

9

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

1    erroneous, because it fails to follow the standard set forth in *Foltz v. State Farm*."

2    ECF No. 303-1 at 10-12.  Specifically, Plaintiffs claim *Foltz* prescribes a balancing

3    test that the Magistrate Judge erred both by not applying and misapplying (*e.g.*, by

4    mis-weighing factors like "efficient discovery," "judicial economy," and

5    Defendants' "reliance interests," as well as the "reasonable nature of Plaintiffs'

6    proposed modification").  *Id.*  As Defendants explain below, *Foltz* is inapposite.  But

7    this argument is also waived because Plaintiffs never cited *Foltz* in their ex parte

8    application.  Nor did they argue for any balancing test at all, or even mention a single

9    one of the factors which Judge Standish supposedly failed to weigh.

10    *And third,* Plaintiffs argue that Judge Standish clearly erred by failing to

11    second-guess Mr. Wall's in-house role, which Plaintiffs now claim involves

12    competitive decision-making.  *Id.* at 12-15.  In support of this argument, Plaintiffs

13    cite for the first time a February 2023 Reuters article, *see id.* at 13 n.3, but before

14    Judge Standish they never raised any arguments at all regarding *any* of Defendants'

15    in-house counsel, Mr. Wall included, nor even inquired which in-house counsel

16    would stand to lose access under Plaintiffs' proposed modification.  By failing to

17    raise these counsel-specific arguments and evidence in their ex parte application,

18    Plaintiffs waived any argument regarding the role of Mr. Wall or anyone else.[2]

19    Plaintiffs' Motion is an improper request for the Court to displace Judge

20    Standish's considered order on the basis of arguments and evidence not submitted

21    to her.  The Court should reject the Motion based on waiver alone.  *See Indianapolis*

22    *Airport Auth. v. Travelers Prop. Cas. Co. of Am.*, 2015 WL 1013952, at *2-3 (S.D.

23

24    _____

25    [2]  To the extent Plaintiffs intend to argue they were prevented from doing so because
      they did not have the opportunity to file a reply, this is incorrect because
      "Plaintiffs [as the party seeking revocation of access] bear the burden of showing

26    that a risk of inadvertent disclosure exists" on a counsel-by-counsel basis.
      *See MedImpact Healthcare Sys., Inc. v. IQVIA Inc.*, 2021 WL 389820, at *2 (S.D.

27    Cal. Feb. 4, 2021).  By not doing so in their application, they waived the argument
      on reply, even if they had been entitled to one.  *See Coleman v. Quaker Oats Co.*,

28    232 F.3d 1271, 1289 n.4 (9th Cir. 2000) ("[I]ssues cannot be raised for the first
      time in a reply brief.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

10

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

1   Ind. Mar. 9, 2015) ("[R]eliance on arguments or evidence not presented to the

2   Magistrate Judge is impermissible. … To invoke schoolyard vernacular: no do-

3   overs.").

4       **B.    All Three Of Plaintiffs' Arguments Also Fail On Their Own Terms.**

5       Even if Plaintiffs were writing on a blank slate, their Motion would still fail

6   because, again, Plaintiffs do not show "good cause" for additional confidentiality

7   protections.  Plaintiffs cite the wrong test, and even their own cases stand for the

8   "well-established" principle that discovery materials are "presumptively public"—

9   meaning that in-house counsel access is the rule and revocation the exception.  *See*

10  *San Jose Mercury News v. U.S. Dist. Ct.*, 187 F.3d 1096, 1103 (9th Cir. 1999).  And

11  even if Plaintiffs had articulated the correct test, they could not meet it: as

12  Defendants' unrebutted declarations establish, there is no "good cause" to revoke

13  the access of Defendants' in-house counsel to the materials they need to defend this

14  allegedly billion-dollar case.

15      **1.    *The Magistrate Judge Correctly Recognized That Plaintiffs***
        ***Seek Revocation Of In-House Counsel Access To Highly***
16      ***Confidential Documents.***

17      Plaintiffs' first new argument is that the Magistrate Judge erroneously

18  assumed that the Parties expected the Protective Order to apply to all third-party

19  materials in this case, when it should only properly apply to the productions of "***one***

20  ***third party***—New Era ADR." ECF No. 303-1 at 2 (emphasis in original).  According

21  to Plaintiffs, because the only third-party documents produced in this case to date

22  are from New Era ADR, and because Defendants' in-house counsel may not view

23  highly confidential third-party documents in *U.S. v. Live Nation*, Defendants' in-

24  house counsel would not really be "deprived of anything" if their access to highly-

25  confidential third-party material were revoked. *Id.* at 8-10.  Thus, Plaintiffs claim,

26  Judge Standish "overlooked or misapprehended" the fact that their "Ex Parte

27  Application to Modify Protective Order" was *really* designed to "maintain the status

28  quo."  *Id.* at 2-3.  This argument fails.

LATHAM&WATKINSLLP
ATTORNEYS AT LAW
SAN FRANCISCO

11

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

To begin, obviously the Protective Order in this case was not intended solely to govern the productions of New Era ADR and no other third party.  Like most protective orders, the Protective Order here was negotiated before the first productions in this case and designed to apply to all "Discovery in this Action."  ECF No. 62 ¶ 1.  For that reason, the Order makes clear that "[t]he terms of this Order are applicable to information produced by a Non-Party in this Action" and defines "Non-Party" as "any natural person, partnership, corporation, association or other legal entity not named as a Party to this Action"—not just New Era.  *Id.* ¶¶ 9, 2.10. Plaintiffs' arguments to the contrary make no sense alongside the actual provisions of the order.  And there is nothing suspect about a Protective Order negotiated by the Parties without the direct involvement of every potential third party.  *See AFMS v. United Parcel Serv.*, 2012 WL 3112000, at *7 (S.D. Cal. July 30, 2012) ("There is no reason to think that … [a third party's] generalized and unsubstantiated assertions of fear of disclosure … are not alleviated by" "a protective order … that was presumably negotiated at arms-length" by the parties.).

The Magistrate Judge therefore did not "clearly err" by reading Plaintiffs' proposed modification as a revocation of in-house counsel's access to a class of materials they can currently view.  This is not hard to see.  The Protective Order currently permits disclosure of "any information or item designated 'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY" … to: … up to three (3) in-house counsel for the parties."  ECF No. 62 ¶ 7.3.  Plaintiffs now demand to modify the order so that third-party materials designated "'HIGHLY CONFIDENTIAL – ATTORNEYS' EYES ONLY' … shall not be disclosed to any employees, including in-house counsel, of Defendants."  ECF No. 303-3 at 4.  There is no other way to read this—Plaintiffs agreed that three of Defendants' in-house counsel should be able to access all the materials necessary to defend this case, and now they think that zero should be able to.  That is not the status quo, and the Magistrate Judge did not "clearly err" by recognizing as much.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

12

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

## 2. *The Magistrate Judge Applied The Correct "Good Cause" Standard For Modification Of A Protective Order.*

Plaintiffs' second new argument is that the Magistrate Judge's order was contrary to law because it failed to follow *Foltz*, which purportedly holds that requests to strip in-house counsel of access to discovery materials should "generally be granted" and "requir[e] consideration of judicial economy." ECF No. 303-1 at 10 (capitalization normalized) (citing *Foltz*, 331 F.3d 1122).

This is not the law. As Defendants explained in their opposition to Plaintiffs' ex parte motion, a court may modify a protective order to *increase* confidentiality protections only upon a showing of "good cause." *See* ECF No. 299 at 4-5. When determining whether to place restrictions on in-house counsel under this "good cause" standard, "courts balance the conflicting interests of the parties involved," comparing "the risk of inadvertent disclosure of the producing party's confidential information" with "the risk that restricting access to confidential information might impair the [other] party's ability to litigate the case." *MedImpact*, 2021 WL 389820, at *1 (citation omitted). The moving party "bear[s] the burden of showing that a risk of inadvertent disclosure exists (i.e., that Defendants' [in-house counsel] participate in competitive decision-making)." *Id*. at *2. Only if the moving party makes that showing "on an attorney-by-attorney basis" does the burden shift to the opposing party "to demonstrate actual prejudice to their case if access is not granted." *Id*.

*Foltz* is not to the contrary—in fact, it reaffirms the rule that a protective order requires a specific showing of "good cause" and that the "party asserting good cause bears the burden, for each particular document it seeks to protect, of showing that specific prejudice or harm will result if no protective order is granted." 331 F.3d at 1310. Plaintiffs have turned the case on its head, contorting it to somehow stand for a rule *favoring* confidentiality protections, even in the absence of good cause. ECF No. 303-1 at 10-12. But the case itself makes clear the flaws in Plaintiffs' reading. In *Foltz*, the district court had previously entered blanket protective orders which

1   prevented the parties from disclosing any discovery materials outside of that case.

2   331 F.3d at 1128.  Collateral litigants then sought to intervene to seek modification

3   of the protective orders in *Foltz* to *reduce* confidentiality protections and allow the

4   materials to be used in their collateral litigation.  *Id.* at 1128-29.  The Ninth Circuit

5   held that the party *opposing disclosure* and *demanding confidentiality protections*

6   had the burden of showing good cause under Rule 26(c) and that, in the absence of

7   a specific showing, *reductions* in confidentiality should "generally be granted."  *Id.*

8   at 1131-32; *see also Rivera*, 364 F.3d at 1063 n.3 (citing *Foltz* and explaining that

9   "we may consider the principles militating in favor of and against discovery" only

10  "[w]hen a protective order is *overbroad*" (emphasis added)).[3]

11         The situation in *Foltz* is therefore the reverse of the one at hand.  Here,

12  Plaintiffs have sought to intervene in a different court which originally granted

13  blanket confidentiality protections that prevent them from accessing materials they

14  want to use in their case—so far so good.  But instead of requesting that the Southern

15  District of New York *lower* those protections unless they can be justified via a

16  specific showing of good cause (like the intervenors in *Foltz*), Plaintiffs have

17  returned to this Court and demanded that it *increase* the confidentiality protections

18  here in hopes that "synchronized protections," ECF No. 303-1 at 1, might make the

19  third parties in *U.S. v. Live Nation* feel more "comfortable," ECF No. 298 at 2—all

20  without even trying to make a showing of good cause.  Because Plaintiffs are the

21  party seeking increased protections, they bear the burden to demonstrate good cause

22  under *Foltz*.  Judge Standish correctly applied the law.

23              **3.     *The Magistrate Judge Properly Considered Mr. Wall's***
                         ***Declaration.***
24

25         As Defendants explained, Mr. Wall is a long-time Latham & Watkins partner,

26

27  [3]  *Olympic Refining* is no different: there, a collateral litigant sought access to
        documents subject to a protective order, and the Ninth Circuit directed the district
28      court to *reduce* protections to allow access.  *Olympic Refining v. Carter*, 332 F.2d
        260, 265-66 (9th Cir. 1964) (cited in Mot. at 10).

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

14

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

1   and one of the preeminent antitrust lawyers in the nation.  He has represented

2   Defendants for decades, including in this case and in *U.S. v. Live Nation* since their

3   inception.  Having recently retired from Latham, he is now Defendants' primary in-

4   house counsel, but in that role remains one of the principal attorneys defending these

5   cases.  ECF No. 299 at 7-9.  His role with Defendants is legal—he is "not involved

6   from a business or operational perspective in decision-making relating to

7   competitors, potential competitors, customers, or distribution partners—including

8   decisions regarding contracts; marketing; pricing; product or service development

9   or design; product or service offerings; research and development; mergers and

10  acquisitions; or licensing, acquisition, or enforcement of intellectual property

11  rights."  ECF No. 299-2 ¶ 7.  In other words, his role does "not involve competitive

12  decision-making."  *Id.*

13       Nonetheless, Plaintiffs' final argument is that Judge Standish clearly erred by

14  failing to *sua sponte* reject Mr. Wall's sworn declaration and conclude that his role,

15  as described above, actually *does* involve competitive decision-making.  ECF No.

16  303-1 at 12-15.  According to Plaintiffs, Mr. Wall's testimony is contradicted by his

17  statement (in that same declaration) that he "provide[s] legal advice on regulatory

18  and public affairs matters, all competition-related issues, and litigation risks related

19  to competition and consumer protection issues" and that he is "the primary in-house

20  counsel advising Live Nation on all issues relating to competition and antitrust

21  litigation, generally."  *Id.* at 12.  Plaintiffs also claim it is contradicted by a 2023

22  Reuters article (cited for the first time in their Motion) in which Mr. Wall reportedly

23  stated that his role is "intended to capture the high-profile things that are happening

24  at any moment in time."  *Id.* at 12-13.

25       Abandoning their vague balancing test from *Foltz*, Plaintiffs now concede that

26  *Brown Bag* articulates the appropriate standard for restrictions on in-house counsel

27  access to confidential materials, but they read it as mandating an absolute bar on

28  such access "when in-house counsel advises their employer on competitive matters."

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

15

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

1    ECF No. 303-1 at 13.  Plaintiffs claim that Mr. Wall's declaration and the Reuters

2    article constitute admissions that he does so, and so Judge Standish clearly erred in

3    finding that Mr. Wall could retain his access to highly confidential third-party

4    materials.[4]  *Id.* at 15.

5              a.    *The Magistrate Judge Was Not Required To Question*
                     *Sworn Declarations Which Plaintiffs Did Not Rebut.*
6

7          As an initial matter, Plaintiffs are wrong to fault Judge Standish for not

8    questioning Mr. Wall's declaration *sua sponte* or searching for two-year-old articles

9    which supposedly contradict it—"it is not the role of the Court to make parties'

10   arguments for them."  *Cedars-Sinai Med. Ctr. v. AIG Specialty Ins.*, 2025 WL

11   504477, at *1 (C.D. Cal. Jan. 7, 2025).  That is especially true here, where Plaintiffs'

12   failure to discharge their burden to present specific arguments on a counsel-by-

13   counsel basis meant that Judge Standish was bound to accept Mr. Wall's statement.

14   *See ODS Techs. v. Magna Ent.*, 583 F. Supp. 2d 1141, 1145 (C.D. Cal. 2008) ("The

15   Court cannot overlook the unrebutted and sworn assertions that in-house counsel has

16   no role whatsoever in defendant's competitive decisionmaking." (citation omitted,

17   cleaned up)).[5]  Plaintiffs cite just one out-of-circuit case, *F.T.C. v. Advoc. Health*

18   *Care Network*, which purportedly required Judge Standish to interrogate Mr. Wall's

19   declaration on her own, but that case did no such thing.  162 F. Supp. 3d 666, 670-

20   71 (N.D. Ill. 2016).  There, the movants *themselves* presented unchallenged evidence

21   regarding the role of the in-house counsel *to the magistrate judge*, who evaluated the

22   evidence and argument submitted by both sides in the context of the actual

23   documents at issue.  *Id.* at 671-74.  Because Plaintiffs declined to submit any

24

25   [4]  Defendants note that Plaintiffs have raised no argument, even now, regarding the
     role of Ms. Tobias and therefore concede that her access to all discovery materials
26   is entirely proper.

27   [5]  *Cf. also Grand River Enter. Six Nations, Ltd. v. Pryor*, 481 F.3d 60, 67-68 (2d Cir.
     2007) ("[T]he burden of proof and persuasion rested squarely on Grand River. To
28   the extent that there was a dearth of evidence, Grand River is to blame.
     Consequently, Grand River should not now be allowed to complain that the
     district court relied on the limited evidence that *was* provided.").

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

16

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

1    evidence, Judge Standish rightfully did not do it for them.

2           b.    *Mr. Wall Is Not A Competitive Decision-Maker Under*
3                 *Brown Bag.*

4           Even if Plaintiffs' late-breaking arguments and evidence were not waived,

5    they do not pass muster under *Brown Bag*, because that case specifically rejects the

6    kind of "arbitrary distinctions" between in-house and outside counsel that Plaintiffs

7    demand. *Brown Bag Software v. Symantec Corp.*, 960 F.2d 1465, 1470 (9th Cir.

8    1992). It instead requires the Court to evaluate the actual evidence presented

9    regarding the "risk of inadvertent disclosure" due to "the factual circumstances of

10   any counsel's relationship to the party demanding access." *Id.*; *see also U.S. Steel*

11   *v. United States*, 730 F.2d 1465, 1468 (Fed. Cir. 1984) (risk must be analyzed "on a

12   counsel-by-counsel basis"). The "crucial factor" is "whether in-house counsel [i]s

13   involved in 'competitive decisionmaking.'" *Brown Bag*, 960 F.2d at 1470 (citation

14   omitted). "A competitive decision-maker is one who advis[es] on decisions about

15   *pricing or design* 'made in light of similar or corresponding information about a

16   competitor.'" *Santella v. Grizzly Indus.*, 2012 WL 5399970 at *5 (D. Or. Nov. 5,

17   2012) (citation omitted) (emphasis changed). This necessarily involves a fact-

18   specific analysis of the evidence presented regarding the in-house counsel's actual

19   role. *See id.* at 5-7.[6] Plaintiffs' reading of *Brown Bag*—that a proscription on access

20   applies to anyone who "advises their employer on competitive matters"—is

21   frivolous.

22          In this light, Plaintiffs' arguments regarding Mr. Wall's role wither. First,

23   Plaintiffs claim that Mr. Wall's statement that he "provide[s] legal advice on …

24   _____

25   [6]   *Vasudevan Software v. Int'l Bus. Machines*, which Plaintiffs cite at 15, is a perfect
         example—there, the sole in-house counsel at the plaintiff company in a patent
26       infringement suit (1) "play[ed] an integral role in the conduct of VSi's business";
         (2) was also a principal at VSi in addition to her in-house counsel role; and (3) was
27       married to the president and CEO, who was also the named inventor of the patent
         at issue. 2010 WL 3629830, at *1-2 (N.D. Cal. Sept. 14, 2010). In *that* context,
28       the court recognized that there was an unavoidable risk that the in-house counsel
         could not "simply forget what he or she has learned" and still maintain her
         multiple, interconnected roles. *Id.* at *2.

issues related to competition and antitrust litigation" is an admission that he is a competitive decision-maker.    ECF No. 303-1 at 12.    This interpretation is disingenuous, and obviously wrong—Mr. Wall clearly refers to legal advice in the field of "competition and antitrust" law,[7] and in the same paragraph of his declaration unequivocally confirms that his role does "not involve competitive decision-making." ECF No. 299-2 ¶ 7.  Under Plaintiffs' obtuse reading, *every* in-house antitrust counsel would be a competitive decision-maker under *Brown Bag*, which is exactly the kind of "arbitrary distinction[] based on type of counsel" that the case rejected.  *Brown Bag,* 960 F.2d at 1470; *see also, e.g.*, *Aristocrat Techs. v. Int'l Game Tech*., 2007 WL 9747649, at *5 (N.D. Cal. Feb. 1, 2007) ("An attorney who provides legal advice incidental to business transactions, or negotiating or reviewing contracts, is not involved in the competitive decisionmaking of the company.").

Second, Plaintiffs argue that a 2023 article in which Mr. Wall reportedly stated his job would involve addressing "high profile things that are happening" with the company, including the fallout from the sale of Taylor Swift concert tickets in 2022, somehow indicates that he is a competitive decision-maker.  ECF No. 303-1 at 13-14.  It does not, as the Taylor Swift onsale itself demonstrates: that onsale resulted in the filing of multiple antitrust lawsuits before this very court, which Mr. Wall participates in managing.  And "[m]aking such comments about pending litigation … [is] a quintessentially legal responsibility." *Barnes & Noble v. LSI*, 2012 WL 601806, at *3 (N.D. Cal. Feb. 23, 2012); *see also id.* ("[T]he court fails to see how Mr. DeFelice's public statements regarding B & N's then-current litigation or its antitrust concerns constitute, or suggest his participation in, competitive decisionmaking.").

---

[7] This is the same sense in which the Antitrust Division of the Department of Justice, for example, refers to the "federal antitrust and competition laws."  *See, e.g.*, https://www.justice.gov/atr/antitrust-laws-and-you.

Finally, the fact that Mr. Wall's role involves advising business-side employees on legal matters does not undercut the fundamentally legal role that he plays. *See Matsushita Elec. Indus. Co. v. U.S.*, 929 F.2d 1577, 1580 (Fed. Cir. 1991) ("[T]he standard is not 'regular contact' with other corporate officials who make 'policy,' or even competitive decisions, but 'advice and participation' in 'competitive decisionmaking.'" (citation omitted)); *see also Santella*, 2012 WL 5399970 at *6 ("[C]ontact with competitive decision-makers … [is] insufficient. … Instead, Mr. Domeny must be in a position to effectuate or direct decisions made using knowledge that is tainted by [a competitor's] confidential information."). Nor is job title an effective rubric for analyzing competitive decision-making, which is why courts regularly permit access to in-house counsel who also have non-legal titles. *See Mad Catz Interactive, Inc. v. Razor USA, Ltd.*, 2014 WL 4161713, at *4 (S.D. Cal. Aug. 19, 2014) (permitting employee who served as "(1) General Counsel; (2) Corporate Secretary; and (3) Vice President of Business Affairs" to access sensitive materials).

c.    *Plaintiffs Do Not Contest The Serious Prejudice Which Would Result If Mr. Wall's Access To Documents Were Revoked.*

Even if Plaintiffs had made the requisite initial showing that Mr. Wall's access to documents would result in an unavoidable risk of inadvertent disclosure, that is only half the equation. *Brown Bag* then requires consideration of "the risk that restricting access to confidential information might impair the requesting party's ability to litigate the case." *MedImpact*, 2021 WL 389820, at *1. In their opposition, Defendants demonstrated the serious prejudice that would result to their case if Mr. Wall—Defendants' long-time antitrust counsel and former lead counsel in this very case (as well as in the Ticketmaster-Live Nation merger and the investigations and lawsuits which preceded this case)—is prevented from fully participating in their defense. *See* ECF No. 299 at 7-9, 12-13. Plaintiffs' only response is another vast oversimplification: "Courts consistently recognize that requiring a party to rely

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

1    on its outside counsel for certain highly confidential materials does not create an

2    undue burden or prejudice." ECF No. 303-1 at 9.

3         But this blanket rule is not what *Brown Bag* requires: instead, the Court must

4    examine "the nature of the claims and of a party's opportunity to develop its case

5    through alternative discovery procedures" to determine "how the protective order

6    could … prejudice its case." *Brown Bag*, 960 F.2d at 1470. So, while it may be the

7    case that *some* parties would not be unduly prejudiced if *some* in-house counsel were

8    not permitted to access *some* documents,[8] in *this* case, Mr. Wall's unique skills,

9    experience, and knowledge are indispensable to Defendants' ability to effectively

10    defend themselves. *See CytoSport v. Vital Pharm.* 2010 WL 1904840 at *2 (E.D.

11    Cal. May 10, 2010) ("Courts have found actual prejudice where a party has shown

12    that the use of in-house counsel was necessary due to the specialized expertise of the

13    counsel."). No other person is better qualified to assess the relevance and importance

14    of third-party documents which may relate directly to legal matters which Mr. Wall

15    may himself have taken the lead in addressing. Unspecified concerns from

16    unspecified third parties about allegedly sensitive documents are far from sufficient

17    to justify depriving Defendants of the benefit of Mr. Wall's experience.

18   **V.     CONCLUSION**

19         Defendants' respectfully request that the Court deny Plaintiffs' Motion in full.

20

21                      *[Signature on following page]*

22

23

24

25

26

---

[8]   For example, in *Intel Corp. v. VIA Techs.*, which Plaintiffs cite at 9, the court

27   found insufficient prejudice when the in-house counsel in question had not litigated a case in years and demonstrated no specialized knowledge related to the

28   claims. 198 F.R.D. 525, 528-29 (N.D. Cal. 2000). The same can obviously not be said here.

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

20

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

1    Dated:  March 27, 2025                          Respectfully Submitted,

2                                                    LATHAM & WATKINS LLP

3                                              By:  */s/ Timothy L. O'Mara*

4                                                    Timothy L. O'Mara

5                                                    505 Montgomery Street, Suite 2000
                                                     San Francisco, California  94111-6538
6                                                    Telephone:  +1.415.391.0600
                                                     tim.o'mara@lw.com

7                                                    *Attorneys for Defendants*
                                                     *Live Nation Entertainment, Inc. and*
8                                                    *Ticketmaster L.L.C.*

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

21

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS

1
2

# **CERTIFICATE OF COMPLIANCE**

3
4
5

The undersigned, counsel of record for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C., certifies that this brief contains 6,751 words, which complies with the word limit of L.R. 11-6.1.

6

7
8

Dated: March 27, 2025                                  */s/ Timothy L. O'Mara*

Timothy L. O'Mara

9
10
11
12
13
14
15
16
17
18
19
20
21
22
23
24
25
26
27
28

LATHAM&WATKINS LLP
ATTORNEYS AT LAW
SAN FRANCISCO

22

DEFS.' OPPOSITION TO MOT. TO
MODIFY OR SET ASIDE
CASE NO. 2:22-CV-00047-GW-GJS