Jordan D. Teti
HOGAN LOVELLS US LLP
1999 Avenue of the Stars, Ste. 1400
Los Angeles, CA 90067
jordan.teti@hoganlovells.com

Justin W. Bernick (*pro hac vice*
application pending)
HOGAN LOVELLS US LLP
555 Thirteenth Street, NW
Washington, D.C. 20004
justin.bernick@hoganlovells.com

*Attorneys for Non-Party Anschutz
Entertainment Group, Inc.*

# UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA

## WESTERN DIVISION

-------------------------------------------------------------

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated<br><br>        Plaintiffs,<br><br>  v.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>         Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>**DECLARATION OF SHAWN TRELL IN SUPPORT OF MOTION TO AMEND PROTECTIVE ORDER**<br><br>Hon. Judge George H. Wu<br><br>**DISCOVERY MATTER** |

-------------------------------------------------------------

I, Shawn Trell, declare as follows:

1.    I am Executive Vice President, Chief Operating Officer, and General Counsel for AEG Presents.  AEG Presents' parent company is Anschutz Entertainment Group, Inc. ("AEG"), a sports and live entertainment company. AEG Presents, AEG's live entertainment division, is a promoter of live music whose primary competition is Live Nation.  AXS, AEG's ticketing division, is a provider of primary and secondary ticketing services whose primary competition is Ticketmaster.

2.    I have been in my role as General Counsel for AEG Presents since 2003.  As a lawyer at AEG Presents, I do not operate in a strictly legal silo.  Instead, I work closely with the business team, including on matters such as strategic initiatives and reviewing and approving offers to provide concert promotion services.  In my experience, lawyers in the live entertainment industry can and do operate in hybrid business and legal roles and in close conjunction with their colleagues responsible for strategic initiatives and winning concert promotion and ticketing contracts.

3.    As part of AEG's response to a Civil Investigative Demand in the Department of Justice's pre-complaint investigation in the case captioned *United States et al. v. Live Nation Entertainment, Inc. & Ticketmaster L.L.C.*, No. 1:24-cv-03973-A  (S.D.N.Y)  ("Government  Action"),  AEG  produced  over  300,000 documents, deposition testimony, and extensive data from its ticketing and concert promotions businesses.  In the Government Action, AEG has produced several thousand documents and expects to produce tens of thousands more documents and additional deposition testimony and data throughout the duration of discovery.

4.    AEG's document productions in the Government Action (or its pre-complaint investigation) include documents from senior executives at AXS and AEG Presents responsible for strategic planning and for competing for and winning ticketing and concert promotion contracts, including when in direct competition with Live Nation and Ticketmaster.

5.      The documents in AEG's production include its most competitively-sensitive materials.   For example, with respect to AXS, AEG's document productions include documents detailing AXS's specific innovation and product development plans, AXS's public relations strategies—including relating specifically to the Government Action, AXS's internal formulation of its offers to venues for primary ticketing services, AXS's strategic plans that include discussions of AXS's strategy for competing against Ticketmaster, discussions with AXS's actual or prospective venue clients regarding the terms of AXS's ticketing services, and detailed pricing and cost information.  With respect to AEG Presents, AEG's document productions include strategic plans that include discussions of AEG Presents' strategy for competing against Live Nation, AEG Presents' public relations strategies—including relating specifically to the Government Action, AEG Presents' internal formulation of the terms of its offers to artists for concert promotion services, AEG Presents' communications with artists and artist managers regarding its efforts to win contracts for concert promotion services, and detailed pricing and cost information.

6.      If Live Nation or Ticketmaster employees were to learn of the contents of AEG's document productions, it would make it more challenging for AEG to compete in ticketing and concert promotions.   For instance, Ticketmaster employees could learn about plans for its ticketing platform development or otherwise co-opt AEG's proprietary innovations for its own use.  Live Nation employees could also learn about AEG Presents' tactics or plans for competing against Live Nation to win contracts for concert promotion and structure its competing offers to ensure AEG Presents' tactics are unsuccessful.  Moreover, in-house counsel for Live Nation or Ticketmaster can learn and use AEG's confidential information in their legal matters involving AEG.

7.      The disclosure described in Paragraph 6 threatens to irreparably harm AEG's business.

I declare under penalty of perjury that the foregoing is true and correct.

Executed on April 8, 2025

_____

Shawn Trell

3