# EXHIBIT 6

July 25, 2024

The Honorable Arun Subramanian
United States District Court, Southern District of New York
500 Pearl Street, Courtroom 15A
New York, New York 10007

*Re: United States, et al. v. Live Nation Entertainment, Inc., et al.*, No. 1:24-cv-03973

Dear Judge Subramanian:

Non-Party SeatGeek, Inc. ("SeatGeek"), through the undersigned counsel, respectfully requests leave to submit the below comments on the parties' competing protective order proposals filed July 19, 2024, and the Court's direction to the parties issued July 23, 2024. As a direct competitor of Defendant Ticketmaster, L.L.C. ("Ticketmaster") that was compelled to produce a significant volume of competitively sensitive materials to Plaintiffs in their investigation, SeatGeek will be directly impacted by the disclosure of its confidential materials to Defendants and has a substantial interest in this dispute.

SeatGeek is a mobile-first platform that competes directly with Ticketmaster in the primary and secondary (resale) ticketing sectors. As a primary ticketer, SeatGeek's principal U.S. focus has been on competition for contracts with venues hosting major professional sports teams. SeatGeek's primary competition for those contracts is Ticketmaster.

The documents SeatGeek was, and/or likely will be, required to produce in connection with this investigation and litigation include documents that a company would never want to fall into the hands of any competitor. They include forward-looking strategy documents, such as analyses of the likely impact of the addition or enhancement of certain product features; contracts with venues, the renewal of which will involve head-to-head competition with Ticketmaster; analyses of competitive opportunities, including discussions of sales calls with venues for whose business the two companies compete; correspondence with venues regarding contract negotiations; and confidential pricing, sales, and other financial data. SeatGeek is deeply concerned about the provision of access to confidential materials to in-house attorneys, especially those who are involved in competitive decision-making.

That concern is heightened by the fact that this case is largely about Defendants' history of threatening and retaliating against companies that do business with Defendants' competitors. SeatGeek hears on at least a weekly basis from venues that are reluctant even to meet with SeatGeek for fear of retaliation from Defendants. If the market were to learn that venues' contracts and other communications with Ticketmaster's competitors were made available to Defendants' senior management, SeatGeek's ability to market its product would be hindered even further.

Accordingly, SeatGeek requests that the Court consider two measures. *First,* SeatGeek respectfully requests that the Court reconsider its direction that Daniel Wall be permitted access to confidential documents. Not only does Mr. Wall's declaration confirm that he wears many

hats in his work for Defendants, reporting directly to Defendants' CEO, but he has been the public and outspoken face of Defendants' attack on the government's investigation and this lawsuit, making disparaging comments about SeatGeek's product in the process. *See, e.g.,* Dan Wall, "Update: Breaking Down the DOJ Lawsuit," at https://www.livenationentertainment.com/2024/05/update-breaking-down-the-doj-lawsuit/ (writing detailed refutation of allegations in this action, criticizing SeatGeek's technical capabilities, and attributing this lawsuit to "this Administration's decision to turn over antitrust enforcement to a populist urge"); Dan Wall, "The Truth About Ticket Prices," at https://www.livenationentertainment.com/2024/03/the-truth-about-ticket-prices/.

While the Court's direction prohibits Mr. Wall from accessing highly confidential information, his role should preclude him from access to *any* confidential information. He is, of course, free to speak publicly, and to attempt to shape investor, regulator, and public opinion in favor of his employer and against its competitors and Plaintiffs. He also is free to express his opinions about the strengths and weakness of Ticketmaster's product vis-à-vis those of its competitors. But it would be wholly inappropriate to allow him to conduct such a campaign with unilateral and unfettered access to confidential information disclosed in the case.

Preventing Mr. Wall from accessing non-party confidential information would not deny Mr. Wall the ability to assist the defense. This case is about Defendants' conduct, not that of non-parties, and thus the most important documents will be Defendants' documents, to which Mr. Wall has full access. To the extent that Mr. Wall's antitrust expertise and knowledge of Defendants' businesses are indispensable to the defense, he should be able to assist in that defense without requiring access to internal non-party documents or communications between non-parties. If the Court is concerned that it might become essential to disclose particular materials to Mr. Wall (or any other in-house counsel), it can permit Defendants to seek relief from the Court based on a document-specific showing of need that outweighs the non-party's confidentiality interest, rather than grant him blanket access to all non-party confidential information.

*Second,* while SeatGeek believes that no in-house counsel should have access to confidential materials—particularly in light of the retaliatory conduct alleged in this case—the Court should require Defendants, at a minimum, to publicly designate any proposed in-house counsel who would have access to such information prior to entry of the protective order. Given the parties' apparent disagreements about the appropriate limits on the role of in-house counsel who are permitted access to confidential materials, Defendants should identify any such in-house counsel either in the protective order itself or in another public filing so that non-parties will have an opportunity to evaluate each counsel's role and the Court can resolve any objections before any disclosure occurs.

SeatGeek appreciates the Court's careful attention to these issues, as well as the Court's desire to resolve them expeditiously given the case schedule. In a case brought to protect competition and consumers from Defendants' alleged anticompetitive behavior, it would be a perverse result if disclosure of strategic documents in this litigation, even though inadvertent, enabled Defendants to maintain or even expand their advantage over competitors.

2

Respectfully submitted,

COHEN & GRESSER LLP

 /s/ William E. Kalema
William E. Kalema
800 Third Avenue
New York, New York 10022

Melissa H. Maxman (*pro hac vice* motion forthcoming)
Ronald F. Wick (*pro hac vice* motion forthcoming)
2001 Pennsylvania Avenue, N.W.
Suite 300
Washington, D.C.  20006

wkalema@cohengresser.com
mmaxman@cohengresser.com
rwick@cohengresser.com

Attorneys for Non-Party SeatGeek, Inc.