# EXHIBIT 10

O7T6USAC                          Teleconference

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
-------------------------------x
UNITED STATES OF AMERICA, et
al.,

                    Plaintiffs,

            v.                              24 CV 3973(AS)

LIVE NATION ENTERTAINMENT,
INC., et al.,

                    Defendants.
-------------------------------x
                                        New York, N.Y.
                                        July 29, 2024
                                        1:00 p.m.

Before:

                    HON. ARUN SUBRAMANIAN,

                                        District Judge

            APPEARANCES (of speaking parties)

UNITED STATES DEPARTMENT OF JUSTICE
     Attorneys for Plaintiff United States of America
BY:  BONNY E. SWEENEY

KING & SPALDING LLP
     Attorneys for Plaintiffs United States of America
BY:  BRIAN WHITE

COHEN & GRESSER LLP
     Attorneys for Plaintiffs Maryland and Washington DC
BY:  RONALD F. WICK

CRAVATH SWAINE & MOORE LLP
     Attorneys for Defendants
BY:  DAVID R. MARRIOTT

HOGAN LOVELLS US LLP
     Attorneys for Intervenor Anschutz Entertainment Group,
BY:  JUSTIN BERNICK

SOUTHERN DISTRICT REPORTERS, P.C.
            (212) 805-0300

O7T6USAC                          Teleconference

THE COURT:  Let's get started.

I have received the parties' proposed protective order as well as submissions from some third parties — from SeatGeek, AEG, ASM Global, and APE — just today.

Mr. White, are you on the line?

MR. WHITE:  I am, your Honor.  This is Brian White.

THE COURT:  Okay.  Can you tell me where we are in discovery, just generally speaking?  I understood from the last hearing we had that you are in possession of documents that were turned over as part of the pre-complaint investigation.  And I take it those documents have not been turned over yet to the defendants.  That's correct, right?

MR. WHITE:  That is correct, your Honor.  We will produce them promptly upon issuance of the protective order.

THE COURT:  Is there any other discovery that's taken place to date?  If you can just give me a high-level summary of that.

MR. WHITE:  At a very high level, your Honor, we have received requests for production from the defendants, and that's the investigative file that will be produced after the PO is entered.  We have also served requests for production. We are expecting to get the responses to those very shortly. That's party discovery.

And we expect that third-party subpoenas will start to go out within the next -- well, early to mid August.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

THE COURT:  That's helpful.  They are going to be documents that you turn over from the pre-complaint investigation.  You are going to stamp them in accordance with the protective order, whatever is issued, and then produce those documents.

There are also going to be subpoenas with respect to third parties, and the third parties, subject to any objections that they have, will be turning over documents, and they too will be submitting them in accordance with the protective order.  Is all of that right?

MR. WHITE:  That's correct, your Honor.  I would just add that there's a mechanism in the proposed protective order that the parties sent for third parties, nonparties to designate documents that are in the department's production as confidential or highly confidential, as those are being produced now.

So if they have already been designated as confidential or highly confidential, they will go out in that form, otherwise there's a period of time I think the nonparties will have to make those kind of designations on what the department already has.

THE COURT:  Okay.  Understood.

Mr. Marriott or Mr. Pfeiffer, anything to add to that?

MR. MARRIOTT:  No, your Honor.  I think all of that is accurate.

This is David Marriott.

THE COURT: Okay. So let me tell you what I'm planning on doing, and I'm happy to hear from any of the third parties that filed letters. And I really do appreciate that you filed those letters, notwithstanding the fact that the Court had put in an order directing the parties to put in their proposed order. That's very helpful. And there's never a problem having more information. Sometimes mistakes are made, sometimes we overlook things and so I do appreciate the third parties putting in that information.

What I'm planning on doing is taking the proposed order from Thursday and taking Paragraph 7(c) which governs highly confidential material, taking that out of Paragraph 7, moving it in to replace what is now Paragraph 8(c). So the end result will be that highly confidential information is limited to outside counsel.

Confidential information can go to in-house counsel designated as the plaintiffs suggested initially. And the only addition would be the identification of those in-house counsel, which several of the parties had asked for. Now, to take a step back, that's what we're -- we'd be doing right now.

Mr. Marriott, Mr. Pfeiffer, I understand that as discovery actually moves forward and you receive documents, there may come a time where there are certain things, certain documents, deposition transcripts, briefs that are filed,

O7T6USAC                              Teleconference

attachments to briefs, certain key documents that you feel have to be provided to Mr. Wall or Ms. Tobias.  And you can make your case as to how that can happen.  You can go to the plaintiffs, seek their approval, if they don't agree or there are third parties that object and come to the Court and we can resolve that.

But I think for present purposes, without knowing what has been produced and what's going to be produced, I think that makes the most sense.

Now, before I hear from the parties, if any of the third parties who made submissions would like to be heard on that proposal, I'm happy to hear you.  I think it answers all the objections that were raised, but I'd like to hear if anyone disagrees.  So I'll give you a second for anyone who wants to chime in on that front.

MR. BERNICK:  Your Honor, this is Justin Bernick from Hogan Lovells, counsel for AEG in this matter.  And we do believe that addresses the concerns raised in our letter for setting a default rule at this point in time in the case, and that would address those concerns.

MR. WICK:  Your Honor, this is Ron Wick, counsel for SeatGeek.  And we would echo Mr. Bernick's sentiments, that those concerns are addressed.

THE COURT:  Mr. Marriott, I know you disagree with that approach, so I'll give you a chance to respond.

MR. MARRIOTT:  Thank you, your Honor.

Well, I do disagree with that approach.  I very much do agree, however, with your Honor's approach in the July 23 order where you set out the notion of a two-tier protective order.  I think that does strike the right balance between protecting the competing interests of the third parties on the one hand, and the interests that the defendants have in being able to defend themselves on the other.

And the problem of course with what your Honor has just laid out as an alternative to that is it effectively rules everybody in-house for the moment that we've identified and who is involved in this, out of bounds for sharing information.  Which really means we get no benefit in the kind of traditional way that you would with a two-tiered order from the participation of in-house counsel.

And for reasons we've laid out in our other papers, your Honor, we think that the defendants need and benefit from meaningful input from, in this case, Mr. Wall and Ms. Tobias.

They won't be able to do the kind of thing we need most help from them doing without access to confidential information because what we expect is going to happen, your Honor, is that virtually all of the third-party information is going to be designated either confidential or highly confidential.  And without access to at least confidential information, it's going to be very hard for them

to do the job that they are accustomed to doing, and that we think is valuable for the defendants to be able to have them do.

It's not just an abstraction. It's going to be very difficult for them to provide meaningful impact, say, for example, in expert reports or summary judgment papers without access to the vast majority of the record that exists in this case.

And I thought your Honor said it very well in the 7/23 order, when you basically said that there's likely going to be no good argument for Mr. Wall or Ms. Tobias to be precluded from viewing confidential information subject to the limits that we have laid out, that the parties themselves to the case have agreed to. And we think, your Honor, that the protections that the protective order -- the agreed-upon protective order provides, really should be more than sufficient to address the concerns raised here by the third parties.

It is in our experience, your Honor, I think pretty typical that outside counsel at least is given some -- not just outside counsel, but in-house counsel is given some access to the confidential information in the case. And we'd be sort of going here, I think, to the other extreme if we basically set up a rule that says they get access to nothing unless we're able to make an application to the Court, which I think also

sets up a system that's going to become quite burdensome and onerous and make it difficult to kind of, in the realtime, get feedback that can be very valuable in litigating a case of this kind.

So I can say more, your Honor, but I think you understand that we think it's very important for them to be able to have access. And the protections that don't allow them to use the information for any purpose other than the litigation, we think go a very long way in offering any protection.

And the alternative approach really is kind of, I think, putting in-house counsel at a disadvantage. They really are in no worse position than anybody else here, to be able to live by the protections of a protective order. Every outside lawyer has to compartmentalize to some degree. We all have access to information that is confidential and highly confidential, and we're under the strictest obligations, both from protective orders and from ethical rules to use that information solely for purposes of litigating a case.

And in our judgment, there's really no reason here why Mr. Wall, who has 40-some years' experience doing this kind of thing, and Ms. Tobias to be able to do that same thing here.

The kind of compartmentalization that we are talking about, lawyers do it all the time. Everyone on this call does it to some degree, and respectfully we think Mr. Wall and

Ms. Tobias ought to be allowed to do that, your Honor.

THE COURT:  Well, I hear you on those concerns that you voice.  I guess one question I have is under the proposal that I just articulated, in-house counsel would have access to documents that were designated confidential as opposed to highly confidential.  And the parties hopefully put into the proposed order a definition of what would fall into that initial category of confidential documents.  They'd have access to that.

But precisely for the reason that you raised, which is that it may turn out that there's just no good argument for why Mr. Wall or Ms. Tobias should not see certain documents down the line, that maybe this is a tempest in a teapot.  Maybe there's not really an issue here.

The problem, I think, is that we're trying to hypothesize what's going to be in the record, what Mr. Wall and Ms. Tobias might need to look at, and what the implications of that might be based on their forward-looking role with the defendants without having any documents turned over in discovery, which is what I started the call with.

So I think that once we have a record and documents have been produced, we're then going to have those compiled for various purposes.  You outline one purpose, preparation of expert reports.  There's going to be depositions, and then there's going to be briefing of all kinds.  And there may be

certain times where you'd like to show one or more of those things to Mr. Wall and Ms. Tobias, and you're going to be able to make an application along those lines.

And at that point, the Court is going to be able to look and see what type of information you want to show to them in light of the role that you want to maintain for them, which is to not be locked into this litigation and that's what they are doing. But rather, also maintain a non-litigation role where they advise on business transactions.

So to be very clear, this protective order is without prejudice to you making those types of applications, but I think it will be easier to review those. It's going to -- I agree with you, it may turn out to be burdensome and onerous for me, but I'll take the weight and hear the applications when they come in.

The problem I think that the third parties have articulated is if we put in place what I had proposed last week, it may turn out that information that's being received by Mr. Wall and Ms. Tobias is competitively sensitive. And even if they try their best to try to maintain those dual roles, there will be a concern that the third parties, having just complied with the government's investigation, somehow unwittingly put themselves in a position where their sensitive documents were being seen by a competitor. And not only the in-house counsel working on this litigation for the competitor,

but people who are actually going to be working on business transactions that had not anything to do with this litigation.

So that's just a long-winded way of saying, I'm going to put in the proposed order as I articulated with those provisos. And we'll issue that today.

Mr. Marriott, anything else other than the protective order that you see on the horizon right now that you could use the Court's assistance with?

MR. MARRIOTT: Thank you, your Honor.

May I ask a question, first, which I guess is a form of assistance. It may be a little bit different than what you had in mind.

So the application that you were talking about we'd be able to make, that's, I take it, going to be not an in-camera application. So anytime we want to request documents, we're going to have the plaintiffs seeing exactly what it is that we find interesting and want to show to Ms. Tobias and Mr. Wall. So is there a way that application can be effectively an in-camera obligation that protects our work product?

THE COURT: Well, I'll think about that. I'm not seeing how that would work. You would not be -- in my experience, this is how it usually comes up. There will be an expert report on, for instance, let's say damages, and you'd like to show that to the people who are actually going to be making decisions about the litigation on your end. And so you

ask the other side whether you can show some portion or all of that report on damages to your folks in-house. And then there's a discussion on that. And then you come to the Court if it doesn't work out. There's no confidential or secret sauce in what you're asking for your clients to be able to see.

Same thing for other depositions. If there's something that's critical that you want your -- I guess the way I'm putting it is, I don't know if this would be like a document-by-document type analysis.

I think what's going to happen is the litigation is going to come to a head at various points, whether it's in pretrial briefing of various kinds that are go to come up, whether it's expert reports, whether it's key depositions. And you're just going to be saying, these folks are so important they need to have access to these particular types of information, whether it's a transcript or report or a brief, and then you're going to go to the other side. I am thinking that there are going to be a lot of times where the parties are going to be able to work out what Mr. Wall and Ms. Tobias can see in a way that will satisfy you.

For instance, there may be certain underlying information that is redacted or you think shouldn't be shown to them. But the parties and the third parties may not have an issue with the top line information, the general contentions going to them, with the underlying details being known to

O7T6USAC                              Teleconference

outside counsel, potentially also in-house counsel designated under Paragraph 8, and you'll be able to proceed along those lines.

        If there comes a point where there's particular information, and you feel that you need to make an in-camera application about that, can you certainly make that application.  You may say we want to make an in-camera application.  The other side can object and say why they don't think that's appropriate, but we can handle that at that juncture.  So that's a roundabout and long-winded way of saying that we'll see.  I'll hear any application you have to make, but I want to give you some of my thinking on why I didn't think that would come up or be likely to come up.  But you never know.

        MR. MARRIOTT:  Your Honor, I understand the Court's ruling.  And while I don't, I'm afraid, share your optimism for how simple this is going to be, we'll do our best in good faith to make it work and hope not to have to burden the Court with too many applications.

        THE COURT:  Okay.  Understood.

        Mr. White, anything from plaintiffs' side?

        MR. WHITE:  Your Honor, thank you very much.

        This strikes me as a very constructive and thoughtful approach to take this incrementally and see where we might see issues and a way to resolve them.  So we appreciate that.

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

You asked Mr. Marriott if there's anything else that might be coming across the transom in the short term. We're meeting and conferring on a number of discovery-related items; the ESI protocol, the deposition protocol, the expert protocol and some issues relating to initial disclosures. I don't think we're at an impasse on any of those yet. We might get to that point, either resolve them or get to an impasse. So you may see letters from the parties.

One area where there's a little bit of a logjam, if you were inclined to give us an indication of your thoughts on this, that might be helpful for the meet-and-confer process, is document production.

We have a pretty tight discovery schedule here, and we're mindful of your admonition recently that the trial date is set in stone. We've asked the defendants to agree to substantial completion deadlines of document production after responses to document requests are served. And the position we've received from defendants was to keep it open-ended, and just have a requirement for rolling productions.

I don't think that's going to work. I think we're going to need some substantial completion deadlines. And if you have a view on that, your Honor, that might help with the ongoing meet-and-confer.

THE COURT: Well, Mr. Marriott, what's the issue with the substantial completion deadline, even if it's way out in

the future?  It gives you some certainty that if you have that deadline in place, then you can sequence the remaining part of discovery in a way that works with the date when you know you're at least supposed to get most of the documents that are in play.

MR. MARRIOTT:  Sure, your Honor.  Again, Dave Marriott.

I don't know that there's anything necessarily problematic in concept about the idea of having a substantial completion deadline.  But that is not, to my mind, what's been discussed so far in the very, what I'd characterize as somewhat preliminary meet-and-confers.

What I believe has been discussed is this idea that the plaintiffs would serve a document demand, and we'd presumptively -- not even presumptively, we would be under order of the Court to complete substantially the production of those documents within 60 days of their serving the requests. And I think that is just not workable in the abstract to be obligated to substantially complete a production that you haven't even -- had an opportunity to respond and object to. There hasn't been a meet-and-confer about.

It may be that it's possible with some categories of documents to produce within 60 days of the receipt of the request; it may be as to others entirely unworkable.

So I think what we've simply done so far is express

skepticism that we can, in the abstract, as a general matter, agree that every time they serve a request, we are obligated by court order to respond within 60 days.

THE COURT: Understood. And, Mr. Marriott, can you help me. So in terms of the production of the defendant's documents, there were no productions made prior to this litigation, right? So everything is happening from scratch on the defendant's side?

MR. MARRIOTT: No, that's not quite right, your Honor. There were considerable productions, significant productions made in connection with the investigation. So a very large volume of documents was produced and made available to the plaintiffs over the course of the long period of time.

So they're now asking for more documents in addition to those, and those productions that are specific to this litigation have not yet occurred.

THE COURT: So you're saying they've got a lot to chew on, and if they want to propose a substantial completion deadline for everything that they are asking you to produce, you can probably talk about that. Might be able to work something out.

Your objection is just to having hard deadlines for individual requests for production because you're going to be working on about a billion different things at the same time. And it just might not be feasible to have request-by-request

deadlines.  Is that fair?

MR. MARRIOTT:  That's not only fair, it's exactly right.  That's correct.

THE COURT:  Okay.  Mr. White, that seems reasonable, but it seems like you maybe need to just speak more with Mr. Marriott, because I'm not -- in concept, I'm not seeing an objection to the general requirement of a substantial completion deadline.  And, you know, I think -- and you do have a lot of documents that you have received, I'm hearing, in the pre-complaint investigation.

And so it seems like you can probably work it out along the parameters that we're discussing.  Maybe one substantial completion deadline at a certain juncture where it will give you enough time to be able to work on expert reports, depositions, et cetera.  But maybe a 60-day deadline for each individual request is not going to be feasible given the volume and scope of discovery here, and the fact that you already have a voluminous set of documents that you've received in the pre-complaint investigation.

Does that make sense?

MR. WHITE:  Your Honor, I would just respond to that briefly by saying I'm not sure we would agree with the characterization of the pre-complaint document production being substantial.  But we do have some information.  We expect to get a lot more in discovery in the litigation.

O7T6USAC                                Teleconference

But I do think our propose -- I don't want to get too in the weeds in this context, but our proposal was that any documents that aren't subject to an objection would be produced within 60 days of the request.

I'm not sure how much further out we can go than that, given that we have less than a year to complete discovery and we're probably not going to start depositions until document production is largely complete. But we'll take on board what you said this morning. It sounds like the direction we're heading is a substantial completion deadline, but it may not be 60 days after each request that we serve.

THE COURT: Yeah, it might mean you need to get all your requests out immediately so that there isn't an issue along these lines. But just give me one second.

(Pause)

THE COURT: So the real deadlines come up, expert reports are due by July 28 of next year, and all fact depositions must be completed by June 27, 2025. You're getting out requests right now.

MR. WHITE: Yes, your Honor, we sent out requests. And I suspect we'll have some supplemental requests.

THE COURT: And if I remember correctly, there are quite a few depositions you intend to take.

MR. WHITE: That's correct, your Honor.

THE COURT: But what you're saying is that if -- well,

if you're 60 days out, I think the real truth here, and I'm happy to hear from Mr. Marriott here as well, but is that you've got to get your requests out immediately. There's definitely going to be follow-up, but I think what you're saying is, we need -- we're going to get all our requests out. I don't know if you need to have a 60-day deadline for each individual request.

But I hear you, that there may need to be a substantial completion deadline that is well in advance of those expert and deposition deadlines. So if you do the math, maybe it's not 60 days, but it's got to be close to that or else you're not going to have enough time to be ready to do depositions to get your experts ready. Is that fair?

MR. WHITE: That's exactly right, your Honor.

THE COURT: I don't disagree with that. And I'll hear the parties on what they propose as substantial completion deadline, if they want the Court to put it in.

Mr. Marriott, I know that you don't want it to be 60 days, but do you disagree with the math in terms of the schedule?

MR. MARRIOTT: Well, I certainly don't disagree with what the schedule says, your Honor. And I think those dates are all right. What I disagree with is the idea that there hasn't been a substantial production. I think it was over 600,000 pages of -- 600,000 documents, right, put aside pages.

O7T6USAC                                    Teleconference

So I think that's a lot of documents. I think that's substantial.

We don't have a problem in concept with coming up with a date here after we have the requests for producing the information. I think the simplest thing to do is, as your Honor suggests, they ought to get out the requests. We have got the initial request, we have a more recent request that just came out. If they have got another follow-up on something in a request, in my view they ought to serve that. And we can begin, when we have the exact requests in mind, and we know what we're talking about, decide what the right cut off is.

But I think we all share the objective of having the documents produced in advance of depositions and certainly in advance of expert reports. So we're hoping to having their be, as I said, a substantial production deadline. We just need to have the requests sort of a bit more pinned down than they are and then we can come up with that.

But I don't think 60 days, as a general matter, is a realistic deadline because it doesn't -- it's sort of unmoored to the particular requests, and the answer to whether we can may depend on the particular request.

THE COURT: Mr. White, you're getting out your requests and then the parties are meeting and conferring about all of that on both sides. And is it fair to say that you're trying to get those meet-and-confers done within the next month

or so?

MR. WHITE:  Yes, that seems realistic to me, your Honor.  And like I said before, we have sent a round of requests out already.  The responses to those are due in a few weeks.  So I think the discussion this morning has been helpful and will inform the meet-and-confers that goes forward.  And I hope it doesn't take, you know, all of August in order to get those issues resolved.  But we will move forward and keep in mind what you have indicated today.

THE COURT:  Okay.  Thank you.  And I can kind of see the future here, which is that we may need to have an in-person hearing probably not in August, but maybe in early September.  Because if you're having all these discussions over the next 30 days or so, hopefully faster than that, but in the next 30 days, it may be helpful to all sides to have a hearing where we just would through anything that's been unresolved and see if we can just figure things out in a way that would -- to do what you're saying, which is have to some sort of substantial completion deadline that is at least six months in advance of the deposition cutoff in the case, so that you have adequate time to make sure you've got most of the documents that you will need.  And then you can start taking depositions.

Does that seem about right?

MR. WHITE:  I think that would be very helpful, your Honor.  And maybe a date, just thinking through the

O7T6USAC                              Teleconference

mechanics of what we have going on right now.  Maybe a date in mid-September would be more informative than the early part of September.

THE COURT:  Okay.  So why don't you talk with Mr. Marriott and see if there's maybe a set of dates that the parties think would be the most helpful time to have a hearing. And then in advance of that, I'll take the parties' submissions on what the outstanding issues are and I'll make time for you all.

So if you can give me maybe like three different days in mid-September where the parties would be available for an in-person hearing, then we'll go ahead and set that up and then we'll have -- the parties can put in any submissions they want in advance to tee up issues for the Court.

MR. WHITE:  We can certainly confer and get back to you on that.  Thank you, your Honor.

THE COURT:  Okay.  Well, thank you very much.

Mr. Marriott, anything else for the defendants?

MR. MARRIOTT:  Nothing today, your Honor, thank you.

THE COURT:  Well, I thank everyone for joining today and we'll get out an order, the protective order.  And if there's anything further that the Court could help with, please let us know.  Thanks a lot, we are adjourned.

(Adjourned)

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300