# EXHIBIT 13

**UNITED STATES DISTRICT COURT**
**SOUTHERN DISTRICT OF NEW YORK**

|  |  |
|---|---|
| UNITED STATES OF AMERICA, et al., | |
| *Plaintiffs,* | Civil No. 1:24-cv-3973-AS -SLC |
| v. | **ORAL ARGUMENT REQUESTED** |
| LIVE NATION ENTERTAINMENT, INC. and TICKETMASTER L.L.C., | |
| *Defendants.* | |

**NON-PARTY ANSCHUTZ ENTERTAINMENT GROUP, INC.'S**
**OPPOSITION TO THE *HECKMAN* PLAINTIFFS'**
**MOTION TO INTERVENE AND MODIFY THE PROTECTIVE ORDER**

Non-party Anschutz Entertainment Group, Inc. ("AEG") respectfully submits this opposition to the motion to intervene and modify the protective order ("Motion") filed by the plaintiffs in *Heckman, et al. v. Live Nation Entertainment, Inc., et al.*, Case No. 2:22-cv-00047-GW-GJS (C.D. Cal.) ("*Heckman* Plaintiffs"). ECF No. 424. Due to AEG's status as a competitor of Defendant Live Nation Entertainment, Inc. ("Live Nation") in both primary ticketing and concert promotions, AEG has received sweeping discovery requests in this case. Specifically, AEG produced deposition testimony and over 300,000 documents in response to pre-Complaint Civil Investigative Demands ("CIDs") issued by the Department of Justice ("DOJ") and has produced (or will produce) a substantial volume of additional information in response to subpoenas issued by the parties during discovery in this action. *See* ECF No. 201-1 at 1. The *Heckman* Plaintiffs now request access to all of this information, regardless of whether such information is relevant to the claims and defenses in their case. Because the proper avenue for the *Heckman* Plaintiffs to obtain third-party discovery is to serve discovery requests on third-parties in that litigation, and

1

because the proposed amendment to the Protective Order likely would result in the disclosure of AEG's confidential and proprietary information in contravention of this Court's Protective Order, AEG respectfully requests that this Court deny the *Heckman* Plaintiffs' Motion.

## ARGUMENT

As a threshold matter, AEG agrees with Plaintiffs that permissive intervention is not justified here, for the reasons set forth in Plaintiffs' opposition, which AEG will not repeat here, but incorporates by reference. ECF No. 433 at 2-5. AEG writes separately to address the merits of the *Heckman* Plaintiffs' position with respect to the Protective Order in this case.

***First***, as the *Heckman* Plaintiffs acknowledge, this Circuit recognizes a presumption against modifying protective orders. *See* ECF No. 424. To overcome that presumption, the moving party must show "some extraordinary circumstance or compelling need." *Iridium India Telecom Ltd. v. Motorola, Inc.*, 165 F. App'x. 878, 880 (2d Cir. 2005) (quoting *Martindell v. Int'l Tel. & Tel. Corp.*, 594 F.2d 291, 296 (2d Cir. 1979)). The *Heckman* Plaintiffs argue that obtaining discovery materials in this litigation is more efficient than issuing discovery requests on the relevant third-parties, including AEG. But that alone is not a sufficient basis to modify the Protective Order. *Med. Diagnostic Imaging, PLLC v. Carecore Nat'l, LLC*, No. 06-cv-7764, 2009 WL 2135294, at *2 (S.D.N.Y. July 16, 2009) ("While the Court appreciates the need for efficiency, it is hardly an extraordinary or compelling circumstance."); *Md. Cas. Co. v. W.R. Grace & Co.*, No. 83-cv-7451, 1994 WL 419787, at *3 (S.D.N.Y. Aug. 10, 1994) (similar). Indeed, as the *Heckman* Court made clear, the proper method for obtaining third-party discovery is through serving tailored discovery requests on those third-parties. *Heckman*, Minute Order, ECF No. 292 at 2 (holding that plaintiffs may obtain "third-party discovery materials" "through the regular discovery process"); *see also United States v. Anthem, Inc.*, No. 20cv-2593, 2024 WL 1116276, at *4 (S.D.N.Y. Mar. 13, 2024) ("There could be a number of reasons why documents appropriately

2

requested and provided in another case—even if the subject matter of those cases seem to overlap—would be irrelevant or burdensome to provide in another case. . . . . [T]he appropriate thing to do is to request those documents.") (quoting *Insignia Sys. Inc. v. News Corp.*, No. 19-cv-1820, 2020 WL 12570807, at *1 (D. Minn. Mar. 24, 2020) (citation omitted)). This is precisely the procedure employed in other cases "related" to this one. For example, AEG received a subpoena in a class action brought by shareholder plaintiffs against Live Nation involving issues that overlap with this case and worked efficiently and cooperatively with those plaintiffs to produce documents responsive to the subpoenas it received, as well as to modify the protective order in that matter to protect the confidentiality of AEG materials. *See Brian Donley, et al. v. Live Nation Entertainment, Inc., et al.*, Case No. 2:23-cv-06343 (C.D. Cal.). There is no reason the *Heckman* Plaintiffs cannot follow a similar process here.

**Second,** AEG's discovery materials in this case, especially the CID materials, significantly exceed the scope of the *Heckman* litigation. Production of all those materials would go far beyond the scope of the *Heckman* Plaintiffs' subpoena power. In particular, the CIDs issued during the DOJ's pre-Complaint investigation were exploratory in nature, and the materials AEG produced in response to those CIDs far exceed the scope of the *Heckman* Plaintiffs' complaint. And even as to the materials produced during this litigation, the *Heckman* Plaintiffs themselves have admitted that their case is different from this one. In opposing Defendants' motion to stay their litigation, for example, the *Heckman* Plaintiffs argued (successfully) that their "tying claims differ from those public enforcers assert. The latter . . . focus on Defendants conditioning music artists' use of Defendants' large amphitheaters on those same artists' purchase of Defendants' concert promotion services. . . . In contrast, [the *Heckman*] Plaintiffs' tying claims focus on ticket purchasers and the overcharges they pay due to Defendants' various types of tying conduct." *Heckman*, Opp. to Mot.

3

to Stay, ECF No. 281 at 5-6. Indeed, the *Heckman* Plaintiffs seek damages for inflated Ticketmaster ticket prices, whereas Plaintiffs' case here directly alleges broader claims, including that Live Nation has monopolized the concert promotion market. Tens of thousands of competitively sensitive documents produced by AEG in the DOJ's investigation and this litigation relate to details of AEG's promotions business that are well beyond the scope of the *Heckman* Plaintiffs' ticketing claims. Handing over all of these (and other) confidential materials to the *Heckman* Plaintiffs—without proper narrowing to the issues relevant to the *Heckman* case—is thus unwarranted and improper. *See Anthem*, 2024 WL 1116276, at \*4 (collecting cases where "courts have found that requests for 'all' documents produced in another litigation . . . [to be] inherently overbroad requests requiring the Court to considerably scale back the information that a producing party must produce from another litigation or deny it entirely on the ground that a party must do its own work").

**Third,** granting the *Heckman* Plaintiffs' requested protective order modification risks eliminating the very protections the Protective Order in this action is designed to preserve and which AEG (and other third-parties) have repeatedly sought to maintain in this Court. While the *Heckman* Plaintiffs apparently seek access to all third-party discovery materials through the proposed Protective Order modification, their motion is not clear regarding what actually happens to those materials once they receive them. Because the *Heckman* Plaintiffs would have no need for documents or testimony that they could not use in the *Heckman* case, presumably any AEG information disclosed to the *Heckman* Plaintiffs from this case would become part of the *Heckman* discovery record and potentially subject to the governing protective order in the *Heckman* action ("*Heckman* Protective Order"). *Heckman*, ECF No. 62. While the Protective Order in this action prohibits disclosure of any Confidential or Highly Confidential material to Live Nation employees

with involvement in competitive decision-making, the *Heckman* Protective Order would, in contrast, allow "up to three" Live Nation in-house counsel to access even information that AEG designates as "HIGHLY CONFIDENTIAL—ATTORNEYS' EYES ONLY," regardless of whether those attorneys are involved in competitive decision-making. *Id*. at 12.

As AEG (and other third-parties) have previously explained, AEG has serious concerns with in-house counsel (like Mr. Dan Wall) obtaining access to *hundreds of thousands* of the most competitively sensitive documents at the company—documents related to the terms and conditions AEG offers artists and venues in direct competition with Live Nation. *See* ECF Nos. 201-1; 322. The risk of such disclosure is not theoretical. To their credit, when counsel for the *Heckman* Plaintiffs learned of AEG's confidentiality concerns, they promptly requested that counsel for Live Nation agree to the same protective order amendment that they agreed to in the *Donley* action, which would protect third-party information from disclosure to Live Nation employees. Counsel for Live Nation apparently refused that request yesterday. AEG cannot fathom any justification for counsel for Live Nation's refusal other than their intent to use the *Heckman* Protective Order to obtain Live Nation employee access to confidential information that they otherwise cannot access under the Protective Order in this case. AEG's serious concerns regarding the improper disclosure of its competitively sensitive information beyond the bounds of the Protective Order in this action is perhaps the most important reason why the *Heckman* Plaintiffs should proceed through traditional discovery channels instead of obtaining hundreds of thousands of sensitive documents through the "back door" of a Protective Order amendment. AEG should have the opportunity to both (1) withhold from production to the *Heckman* Plaintiffs highly sensitive (but irrelevant) information and (2) appropriately seek modifications to the *Heckman* Protective Order as appropriate to protect its substantial confidentiality interests.

*Fourth*, and relatedly, a protective order modification is disfavored where a third party "reasonably relied" on the protective order when producing documents. *SEC v. TheStreet.com*, 273 F.3d 222, 229 (2d. Cir. 2001). In producing its competitively sensitive information in this litigation, non-party AEG has reasonably relied on the language of the Protective Order that any recipient "shall not use such Highly Confidential or Confidential Discovery Material or Investigation Material *for any purpose other than in connection with this action . . . .*", as well as on the limitation, discussed above, that information designated Highly Confidential may not be shared with Live Nation employees. ECF No. 347 ¶¶ 1, 7 (emphasis added). Several courts in this District have denied modification of the Protective Order where, as here, a party or non-party has relied upon that language. *See, e.g.*, *Jose Luis Pelaez, Inc. v. Scholastic, Inc.*, 312 F. Supp. 3d 413, 417 (S.D.N.Y. 2018); *Nielsen Co. (U.S.), LLC v. Success Sys., Inc.*, 112 F. Supp. 3d 83, 121 (S.D.N.Y. 2015); *Med. Diagnostic Imaging*, 2009 WL 2135294, at *3. This Court should do the same. The *Heckman* Plaintiffs argue that third parties had knowledge that their CID materials could be incorporated into post-Complaint discovery. But third parties did *not* have notice that their documents and information would be used in any *other* litigation. Allowing the re-production of the entirety of a third party's pre-Complaint investigative productions to the government in a separate civil litigation is contrary to the limitations on discovery established by the Federal Rules of Civil Procedure and could chill third party cooperation in government investigations, as discussed in Plaintiffs' opposition. *See Pensacola Firefighters' Relief Pension Fund v. Merrill Lynch Pierce Fenner & Smith, Inc.*, 265 F.R.D. 589, 597 (N.D. Fla. 2010) ("[P]roduction of all of the documents produced to the SEC [as part of its investigation], without a more particularized request, could potentially allow plaintiff to bypass the limitations on the scope of discovery established by" the Federal Rules of Civil Procedure.).

AEG is willing to engage with the *Heckman* Plaintiffs through the subpoena process in the course of discovery in the *Heckman* litigation. Modifying the Protective Order in this case to allow the *Heckman* Plaintiffs access to everything that AEG has produced is inappropriate and risks the disclosure of competitively sensitive third-party materials to Live Nation employees, including materials that have no bearing on the claims and defenses in the *Heckman* action.

## CONCLUSION

For the foregoing reasons, AEG requests this Court to deny the *Heckman* Plaintiffs' motion to intervene and modify the Protective Order.

Dated: February 28, 2025

Respectfully submitted,
*/s/ Justin Bernick*
Justin W. Bernick (admitted pro hac vice)
Molly Pallman (admitted pro hac vice)
**HOGAN LOVELLS US LLP**
555 13th St. NW
Washington, DC 20004
Telephone: (202) 637-5600
Facsimile: (202) 637-5910
justin.bernick@hoganlovells.com
molly.pallman@hoganlovells.com

*/s/ Claude Szyfer*
Claude G. Szyfer
**HOGAN LOVELLS US LLP**
390 Madison Avenue
New York, New York 10017
Telephone: (212) 918-3000
Facsimile: (212) 918-3100
claude.szyfer@hoganlovells.com