1

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 057645)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

**KELLER POSTMAN LLC**
Warren D. Postman (Bar No. 33069)
wdp@kellerpostman.com
1101 Connecticut Avenue, N.W, Suite 1100
Washington, D.C. 20036
Telephone: (202) 918-1123

*Interim Co-Lead Class Counsel*

2

3

4

5

6

7

8

9

10

11

12

13

14

## UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA

15

16

17

18

19

20

21

22

23

| | |
|---|---|
| SKOT HECKMAN, LUIS PONCE, JEANENE POPP, & JACOB ROBERTS, on behalf of themselves and all those similarly situated,<br><br>          Plaintiffs,<br><br>v.<br><br>LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER L.L.C.,<br><br>          Defendants. | Case No. 2:22-cv-00047-GW-GJS<br><br>The Honorable George H. Wu<br><br>**MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF PLAINTIFFS' MOTION FOR CLARIFICATION AND/OR MODIFICATION OF THE *SONGKICK* PROTECTIVE ORDER** |

24

25

26

27

28

Case No. 2:22-cv-000470-GW-GJS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION AND/OR MODIFICATION OF THE *SONGKICK* PROTECTIVE ORDER

## I.    <u>INTRODUCTION</u>

Plaintiffs' counsel previously litigated an antitrust case against Defendants to the eve of trial in this District. *Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc.*, Case No. 15-cv-9814-DSF (AGRx) (C.D. Cal.) ("*Songkick*"). There, the parties produced a large number of materials to each other, and Plaintiffs' counsel worked with multiple experts to generate detailed analyses demonstrating, *inter alia*, Ticketmaster's monopoly power in the relevant market for primary ticketing services, as well as the anticompetitive effects of many of the same acts Defendants are accused of committing here—including acts dating back to the time period covered by the *Songkick* case. For the complaint in this action, Plaintiffs relied heavily on publicly available versions of documents and expert analyses from *Songkick*, which contributed to this Court's finding that Plaintiffs plausibly stated their antitrust claims and that Defendants' motion to dismiss should be denied.

As detailed in previous submissions to the Court, *see* Dkt. 304, shortly after Songkick settled with Defendants, Plaintiffs' counsel received an instruction from the Department of Justice to retain copies of all *Songkick*-related materials. Plaintiffs' counsel informed Defendants' former outside (now in-house) counsel about that instruction and that it would retain those materials. *Id.* Defendants never told Plaintiffs' counsel they believed the hold had been lifted. Plaintiffs' counsel thus maintained the materials within their files ever since. They have not, however, used any still-confidential versions of the documents or shown them outside the firm.

Given the *Songkick* materials' plain relevance to this case, Plaintiffs asked Defendants in December 2024 to agree that the materials—**which are already in Plaintiffs' counsel's possession**—can be used in this case. Defendants refused. Plaintiffs issued discovery requests for the materials, thus subjecting Defendants to a Rule 26-based obligation to produce and/or permit use. Defendants refused again. They claimed the *Songkick* Protective Order barred use of the documents and that reviewing the documents would be "burdensome"—even though Defendants already

1    reviewed, produced, or received them in the prior litigation. This is an untenable
2    position Defendants have never seriously defended.

3        To cut through this Defendant-imposed logjam, Plaintiffs respectfully request
4    that the Court clarify the *Songkick* Protective Order does not prevent cross-use or
5    production of Defendants' own documents, data, and deposition testimony in this
6    case.  In the alternative, if the Court finds the *Songkick* Protective Order blocks
7    Defendants from producing and/or permitting use here of their own discovery
8    materials—a position Defendants did not, in fact, push in discussions with Plaintiffs
9    before the April 17 hearing—Plaintiffs respectfully request that the Court modify the
10   *Songkick* Protective Order to permit either Defendants' or Plaintiffs' counsel to
11   produce discovery materials from *Songkick* in response to RFPs 7-9.

12   **II.    BACKGROUND**

13       **A.    *Songkick* Documents Underlie A Large Portion Of Allegations The**
14           **Court Found Plausible—Because The Cases Substantially Overlap**

15       The *Songkick* matter and this matter substantially overlap, reflecting the broad
16   reach and effects of Defendants' anticompetitive conduct.  Although the *Songkick*
17   action was brought by a ticketing competitor that Defendants sought to eliminate, both
18   cases involve similar facts and core liability theories.  Both cases address, for example,
19   Ticketmaster's dominant position in the primary ticketing services market,
20   Ticketmaster's web of long-term exclusive dealing agreements with concert venues,
21   and the effects stemming from the Ticketmaster-Live Nation Entertainment merger,
22   which created a vertically integrated monopoly with dominant market power in
23   multiple segments of the live music industry.  *See generally Songkick*, Case No. 15-
24   cv-9814-DSF (AGRx), ECF #409.

25       The legal claims also overlap between the matters. Both involve Section 1 and 2
26   claims centering on Defendants' abuse of their primary ticketing services monopoly.
27   *See*, *e.g.*, Dkt. 1 at ¶ 6 , Ex. 1 at ¶ 1 (*Songkick* Complaint).  And while *Songkick* involved
28   some claims not at issue in this matter (such as Defendants' corporate espionage and

Case No. 2:22-cv-000470-GW-GJS

1  trade secret misappropriation), those claims were added after the vast majority of
2  Defendants' documents had been produced because the document productions
3  demonstrated additional, non-antitrust bases of liability against Defendants. Ex. 2 at 1
4  (*Songkick* February 15, 2017 Request For Leave To File Its Amended Complaint)
5  ("Songkick seeks to file the Amended Complaint to assert…additional causes of
6  action…[for] Trade Secret Misappropriation[;] Unlawful Access to a Protected
7  Computer…good cause exists…because Songkick first learned of the factual basis for
8  its additional causes of action…through…Songkick's review of documents…"); *see*
9  *also* Ex. 3 (*Songkick* First Amended Complaint).

10  As noted above, the *Heckman* plaintiffs used publicly available materials from
11  the *Songkick* case as part of the foundation for the *Heckman* complaint (and, before
12  that, the *Oberstein* complaint). This public material contributed to the Court's
13  plausibility findings in denying Defendants' motion to dismiss here. *See* Dkt 314.
14  Plaintiffs now seek timely cross-use/production of the remaining *Songkick* discovery
15  material, including any nonpublic reliance materials underlying the publicly filed
16  expert reports, Defendants' deposition testimony from that case (and the supporting
17  deposition exhibits), and all other materials produced in the case—all to continue
18  pressing this case forward in a timely manner.

19  **B.   The Months-Long *Songkick* Materials Dispute In This Case**

20  During the January 6, 2025 status conference, Plaintiffs requested the Court's
21  permission to use *Songkick* materials already in Plaintiffs' counsel's possession. Ex. 4
22  (January 6, 2025 Hr'g Tr.) at 24:6-8. The Court directed that Plaintiffs' counsel may
23  access *Songkick* material, but must notify Defendants before any "use or disclosure" of
24  non-public documents. Ex. 4 (January 6, 2025 Hr'g Tr.) at 26:17-23. Plaintiffs
25  followed the Court's instructions and disclosed to Defendants an initial list of
26  documents that they sought to use here, each of which were relied on by Songkick's
27  expert economist. Ex. 5 (February 20, 2025 A. Wolfson Letter). Defendants responded
28  by flatly, and repeatedly, taking the position that Plaintiffs cannot share or send any of

the non-public *Songkick* reliance materials to Plaintiffs' expert, or otherwise use them in this case. Ex. 6 (Feb. 27, 2025 A. Jovais Email); Ex. 7 (Mar. 6, 2025 T. O'Mara Letter); Ex. 8 (Mar. 17, 2025 T. O'Mara Letter). Moreover, rather than timely raise objections with the Court as directed, Defendants have instead devoted their focus to making unfounded accusations aimed at Plaintiffs' counsel. *See*, *e.g.*, Ex. 8 (Mar. 17, 2025 T. O'Mara Letter).

To short circuit Defendants' delay tactics and avoid procedural arguments regarding production of the materials, Plaintiffs served RFPs requesting the *Songkick* materials. Ex. 9 (Plaintiffs' Second Set of RFPs). The RFPs aligned with the Court's guidance to move the case along efficiently via cross-use/production of discovery from other closely related matters—including but not limited to *Songkick*. *See* Dkt. 304 at 6 ("To the extent Plaintiffs are seeking the same materials through document requests in this case, Plaintiffs can continue to pursue the materials that way…"); Ex. 4 (Jan. 6, 2025 Hr'g Tr) at 23:24-25 ("THE COURT: I'm trying to catch up to the Court in the Southern District of New York"). Rather than acknowledge the materials' clear relevance and ease of production—either by authorizing use of what Plaintiffs' counsel already possess or by simply copying over the existing volumes from *Songkick*— Defendants continued to refuse. But their objections consist of little more than boilerplate references to supposed burden and relevance concerns (both of which are essentially nonexistent). Ex. 10 (Defendants' Objections And Responses To Plaintiffs' Second Request For The Production Of Documents); Ex. 11 (N. Hernandez March 7 Email); Ex. 12 (R. Gushman March 10 Email); Ex. 13 (N. Hernandez March 10 Email); Ex. 14 (A. Wolfson March 24 Letter); Ex. 15 (R. Gushman March 26 Email); Ex. 16 (R. Gushman March 27 Letter); Ex. 17 (E. Barton March 31 Email); Ex. 18 (R. Gushman April 1 Email); Ex. 19 (R. Gushman April 4 Email) Ex. 20 (E. Barton April 5 Email); Ex. 21 (E. Barton April 9 Email); Ex. 22 (R. Gushman April 9 Email); Ex. 23 (A. Wolfson April 9 Email); Ex. 24 (A. Wolfson April 10 Email); Ex. 25 (A. Wolfson April 14 Email); Ex. 26 (R. Gushman April 15 Email); Ex. 27 (J. English April

Case No. 2:22-cv-000470-GW-GJS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION AND/OR MODIFICATION OF THE *SONGKICK* PROTECTIVE ORDER

21 Email); Ex. 28 (A. Jovais April 22 Email); Ex. 29 (J. English April 23 Email); Ex. 30 (A. Wolfson April 24 Email); Ex. 31 (A. Jovais April 24 Email); Ex. 32 (A. Jovais April 28 Email); Ex. 33 (A. Wolfson April 28 Email). Incredibly, Defendants appeared to imply at the April 17 hearing that the *Songkick* protective order even prohibits ***Defendants*** from authorizing use of their own materials here due to the Order's "use" restriction. Ex. 34 (April 17, 2025 Hr'g Tr.) at 24:19-24. Defendants then repeated this contention in a meet and confer on April 21, 2025.

All *Songkick* documents, regardless of producing party, are now Defendants' documents because they purchased Songkick itself as part of the settlement in that case. Defendants have never argued they no longer have the documents (nor could they argue this, as Defendant Live Nation was placed under a legal hold in January 2018 when a U.S. Department of Justice Civil Investigative Demand directed to Defendants specifically requested all of the *Songkick* discovery materials). *See* Ex. 35 (Jan. 25, 2018 Civil Investigative Demand to Live Nation).

Instead, Defendants have argued that they may have already cross-produced most of the *Songkick* discovery materials in the DOJ litigation, in response to the government's document requests. That would of course mean the materials have already been produced here and there would be no burden at all for Defendants to confirm this is all a non-issue. However, the *Heckman* Plaintiffs tested Defendants' assertions by searching in the DOJ productions for documents publicly cited in the *Songkick* filings. Those searches show that these materials largely have ***not*** been produced to the DOJ or, by extension, to Plaintiffs here. Furthermore, Defendants' unsupported argument that most of the *Songkick* material would have been produced in connection with the DOJ's antitrust litigation underscores that the material is relevant to this case, and raises further questions about why Defendants have delayed producing the material in response to Plaintiffs' RFPs.

In short, Defendants have dragged out the *Songkick* material dispute since January 6, asserting excuse after excuse that either identify easily remedied "problems" or rely

-5-

1  on demonstrably false assertions. Plaintiffs informed Defendants they would not
2  countenance further delay tactics, and brought this motion as a result.

3  **III.   ARGUMENT**

4      **A.   The Court Should Clarify That The *Songkick* Protective Order**
5          **Does Not Prevent Cross-Use/Production Here**

6          **1.   Ninth Circuit Law Strongly Supports Plaintiffs' Request For**
7              **Reproduction/Cross-Use**

8          The Ninth Circuit has established a clear policy favoring access to discovery
9  materials in subsequent, related litigation. *Foltz v. State Farm Mut. Auto. Ins. Co.,*
10 331 F.3d 1122, 1131 (reversing a denial of motion to modify protective order for
11 collateral litigation purposes); *Beckman Indus., Inc. v. Int'l Ins. Co.,* 966 F.2d 470
12 (9th Cir. 1992) (affirming a modification of protective order for collateral litigation
13 purposes); *Olympic Refining Co. v. Carter,* 332 F.2d 260 (9th Cir. 1964) (reversing a
14 denial of motion to intervene and modify protective order for collateral litigation
15 purposes); *CBS Interactive, Inc. v. Etilize, Inc*., 257 F.R.D. 195, 206 (N.D. Cal. 2009).
16 "Allowing the fruits of one litigation to facilitate preparation in other cases advances
17 the interests of judicial economy by avoiding the wasteful duplication of discovery."
18 *Foltz,* 331 F.3d at 1131.  A party's reliance on a protective order does not justify
19 refusal to modify that protective order when a reasonable request for disclosure has
20 been made. *Olympic Ref. Co.*, 332 F.2d at 264*; Choi v. 8th Bridge Cap., Inc.*, 2021
21 WL 1573819, at *3 (C.D. Cal. Mar. 30, 2021) (reliance on protective order did not
22 outweigh interest in avoiding duplicative discovery); *CBS Interactive, Inc*, 257 F.R.D.
23 at 206 ("In the Ninth Circuit, there is a strong policy favoring access to discovery
24 materials to meet the needs of parties in collateral litigation"); *Kraszewski v. State*
25 *Farm Gen. Ins. Co.*, 139 F.R.D. 156, 159 (N.D. Cal. 1991).  Where the protective
26 order from the original case contemplates modification, a party who agreed to it may
27 not later object when a different litigant seeks to invoke such modification.  *Id.*
28 (modifying protective order so plaintiff's counsel could use the materials for different

lawsuit against defendant).  The Ninth Circuit has made clear that protective orders should be modified to allow use of the discovery in related litigation. *Foltz*, 331 F.3d at 1131; *Choi*, 2021 WL 1573819, at *3; *Kraszewski*, 139 F.R.D. at 159.

Protective orders "do not prevent the party who furnished the confidential information from being ordered to produce the same information in another case." *Id.* at 161 (citing MLC § 21.431 at 53 n. 61); *Olympic*, 332 F.2d at 264 (ordering a protective order was "subject to modification to meet the reasonable needs of other parties in other litigation") (citing Fed. R. Civ. P. 43(a)).

### B.    The *Songkick* Materials Are Clearly Relevant To This Case

Defendants have no basis to argue irrelevance, and have never provided any basis beyond boilerplate objection. Plaintiffs utilized public versions of many of those materials for their Complaint, and they contributed to the Court's conclusion that Plaintiffs plausibly stated antitrust claims.   Among other things, the *Songkick* materials support the factual showing that Ticketmaster has monopoly power in primary ticketing services, and that Defendants' efforts to obtain a web of exclusive deals with major concert venues throughout the United States have substantial anticompetitive effects.  Dkt. 1 at ¶¶ 7, 12, 14, 18.  It is clear Defendants have tried their best to prevent Plaintiffs' use of the ***confidential*** aspects of these materials exactly because they help support Plaintiffs' proof—including, in particular, their showing for class certification, which is quickly approaching.  Given the materials' clear relevance, there is a strong basis under Ninth Circuit law to permit their use and production here. *See Foltz*, 331 F.3d at 1131; *Beckman Indus.,* 966 F.2d at 470.

### C.    There Is No Burden Because Plaintiffs' Counsel Already Have The Requested *Songkick* Materials In Their Possession

Defendants have argued it would be "burdensome" for them to produce or permit the use of the *Songkick* materials in this case. Ex. 32 (A. Jovais April 28 Email). This is an unsupportable assertion because (a) Plaintiffs' counsel already have the materials in their possession, and (b) Defendants—including the same law firm and,

-7-

to large extent, same legal team—already reviewed these documents and/or received them in litigation. Given the lack of burden (and, thus, clear proportionality), this also supports permitting cross-use/production. *Foltz*, 331 F.3d 1131 (rejecting burden of document review as sufficient to prohibit production).

### D.    Defendants' Attempts To Use The *Songkick* Protective Order To Their Advantage Are Unavailing

#### 1.    Paragraphs 7 And 8 Do Not Bar Cross-Use Or Production

To the extent Defendants argue the *Songkick* protective order prevents them from producing the requested documents, citing (as they have previously) Paragraphs 7 and 8 of the Order, this is incorrect. Ex. 34 (April 17, 2025 Hr'g Tr.) 24:20-22; 27:1-3. Paragraphs 7 and 8 provide the conditions for access to and use of confidential information. Ex. 36 (*Songkick* PO) at ¶¶ 7, 8. Paragraph 7 reads:

> Access to and use of CONFIDENTIAL INFORMATION: A receiving party may access or use CONFIDENTIAL INFORMATION that is disclosed or produced by a disclosing party only in connection with the prosecution of, defense of, appeal of, attempted settlement of, or the enforcement of insurance rights with respect to, this action. Unless otherwise ordered by the Court or permitted in writing by each disclosing party, CONFIDENTIAL INFORMATION may be disclosed only to the categories of persons below and under the conditions described in this Order: [lists categories of persons].

Paragraph 8 reads:

> Execution of Confidentiality Agreement: Prior to disclosure of CONFIDENTIAL INFORMATION to persons described in Paragraphs 7(b), (c), (d), (e), (g), (h), and (j) such person shall be shown a copy of this Order and shall sign the "Agreement to Respect Confidential Information and Highly Confidential Information" (Exhibit A).

Neither bars Defendants from producing or allowing use of their own documents in response to a valid RFP in a different case; Defendants are in no way precluded from deciding what they want to do with their own documents. Indeed, as noted above, the

production of documents from prior, related litigation is standard despite the presence of a protective order.

## 2. Paragraph 19 Permits Production

Paragraph 19 of the *Songkick* Protective Order expressly contemplates and permits the production of documents designated as confidential or highly confidential under the order, if any person having possession, custody, or control of them receives a subpoena or other process or order in another case for their production.

Paragraph 19 reads:

> In the event any person…having possession, custody, or control of any CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION produced in this action receives a subpoena or other process or order to produce such information, such subpoenaed person or entity shall promptly notify by e-mail the attorneys of record of the designating party…. The receiving party shall not produce the requested CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION unless and until a court of competent jurisdiction so directs, except if the designating party (a) consents, or (b) fails to file a motion to quash or fails to notify the receiving party in writing of its intention to contest the production…prior to the date designated for production, in which event the receiving party may produce on the designated production date, but no earlier. The designating party asserting the confidential treatment shall have the burden of defending against such subpoena, process, or order. The person…receiving the subpoena or other process or order shall be entitled to comply with it except to the extent the designating party asserting the confidential treatment is successful in obtaining an order modifying or quashing it.

Defendants have possession, custody, and/or control over the documents (whether in their own possession or in Plaintiffs' counsel's possession). And because Defendants did not file a motion to quash or notify Plaintiffs of their intent to do so before the response date on Plaintiffs' RFPs, and Defendants do not have a valid basis to quash in any event, they are permitted to produce the *Songkick* discovery materials pursuant to the express terms of Paragraph 19—in other words, the *Songkick* Protective Order does not bar the production in this action.

### E.    <u>Defendants Have Their Own Copies Of The *Songkick* Materials</u>

Finally, Defendants raised for the first time in the parties' April 17 and April 21, 2025 meet and confers that they may need extra time to extract the *Songkick* materials from their "work product file." Ex. 27 (J. English April 21 e-mail). When pressed, however, Defendants could not represent that they do not have the documents in easily reproduced formats, such as copies of their production volumes (which would contain the load files and unmarked versions of all their documents) and an archive of their document review database. Defendants contend that it would be burdensome to produce the discovery materials, but making a copy of existing production volumes and/or copying their document review archive is not overly burdensome. It is also highly unlikely that a firm as established as Defendants' counsel lacks, for example, an organized case file containing deposition transcripts and exhibits that could be readily located and reproduced.

### F.    <u>Paragraph 20 Of The *Songkick* Protective Order Explicitly Allows Modification</u>

Paragraph 20 of the *Songkick* protective order states:

> Enforcement of this Protective Order and Continuing Jurisdiction: The Court retains jurisdiction even after termination of this action to make such amendments, modifications, deletions, and additions to this Order as the Court may from time to time deem appropriate. The recipient of any CONFIDENTIAL INFORMATION or HIGHLY CONFIDENTIAL INFORMATION hereby agrees to subject himself/herself to the jurisdiction of this Court for the purpose of any proceedings related to the performance under, compliance with, or violations of this Order…

Where a party has agreed to a protective order that explicitly contemplates modification, they may not later object to such modification merely on the basis that it would change the terms on which they produced documents. *Kraszewski,* 139 F.R.D. at 159. Here, Defendants expressly agreed in *Songkick* that the Protective Order there could be modified. To the extent the Court finds that the *Songkick* Protective Order bars use of the documents in *Heckman*, therefore, the Court may

1  modify the Order to allow cross-use/production here, if appropriate.  Dkt. 331 ("The

2  Court has inquired of Judge Dale Fischer and she has indicated that she approves of

3  the handling by [Judge Wu]").

4      The Court's ability to modify the *Songkick* Protective Order further supports

5  cross-use/production—particularly because the documents are highly relevant and

6  require little to no effort from Defendants.  *See Verizon California Inc. v. Ronald A.*

7  *Katz Tech. Licensing, L.P.*, 214 F.R.D. 583, 585–86 (C.D. Cal. 2003) (district court

8  has the power to modify or lift protective orders).

9  **IV.    CONCLUSION**

10     The *Songkick* materials are highly relevant to this case.  Allowing their use here

11 comports with the Ninth Circuit's directive that such use is highly favored.  *Foltz*, 331

12 F.3d at 1132; *Olympic Ref. Co.*, 332 F.2d at 265; *Choi*, 2021 WL 1573819, at *3; *CBS*

13 *Interactive, Inc.*, 257 F.R.D. at 206; *Kraszewski*, 139 F.R.D. at 161.  Defendants have

14 failed for four months to articulate any substantive reason they should be exempted

15 from this standard obligation—especially because Plaintiffs' counsel ***already have***

16 ***the materials in their possession***.  Plaintiffs respectfully request that the Court clarify

17 the *Songkick* protective order does not prohibit the production of the requested

18 documents in this case, or, in the alternative, modify the Protective Order to permit

19 the cross-use/production here.

20

21

22

23

24

25

26

27

28

Case No. 2:22-cv-000470-GW-GJS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION AND/OR MODIFICATION OF THE *SONGKICK* PROTECTIVE ORDER

1   Dated: May 5, 2025                         Respectfully submitted,

2

3                                 QUINN EMANUEL URQUHART & SULLIVAN, LLP

4                     By: */s/ Kevin Y. Teruya*

5                                 Kevin Y. Teruya (Bar No. 057645)

6                                 kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)

7                               adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)

8                               willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor

9                               Los Angeles, CA 90017-2543
Telephone: (213) 443-3000

10                              Facsimile: (213) 443-3100

11                              KELLER POSTMAN LLC
Warren Postman (Bar No. 33069)

12                             wdp@kellerpostman.com
1100 Vermont Avenue, N.W., 12th Fl.

13                             Washington, D.C. 20005
Telephone: (202) 918-1123

14                              *Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts*

15

16

17

18

19

20

21

22

23

24

25

26

27

28

**CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated, certifies that this brief contains 3827 words and complies with the word limit of L.R. 11-6.1.

Dated: May 5, 2025

/s/ Kevin Y Teruya

Kevin Y. Teruya

Case No. 2:22-cv-000470-GW-GJS

MEMORANDUM OF POINTS AND AUTHORITIES IN SUPPORT OF MOTION FOR CLARIFICATION AND/OR MODIFICATION OF THE SONGKICK PROTECTIVE ORDER