QUINN EMANUEL URQUHART & SULLIVAN, LLP
  Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
  Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
  William R. Sears (Bar No. 330888)
  willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN LLC
  Warren Postman (Bar No. 330869)
  wdp@kellerpostman.com
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C., 20036-4312
Telephone: (202) 918-1123

*Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated*

# UNITED STATES DISTRICT COURT
# FOR THE CENTRAL DISTRICT OF CALIFORNIA
# WESTERN DIVISION

| | |
|---|---|
| Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated,<br><br>Plaintiffs,<br><br>vs.<br><br>Live Nation Entertainment, Inc., and Ticketmaster LLC,<br><br>Defendants. | Case No: 2:22-cv-00047-GW-GJS<br><br>The Honorable George H. Wu<br><br>**JOINT STIPULATION PURSUANT TO LOCAL RULE 37-2.1 RE: PLAINTIFFS' MOTION TO COMPEL RESPONSES TO SECOND REQUESTS FOR PRODUCTION OF DOCUMENTS**<br><br>DISCOVERY MATTER<br><br>Hearing Date: June 9, 2025<br>Time: 8:30 a.m.<br><br>Action Filed: January 4, 2022<br><br>Discovery Cutoff Date: None Set<br>Pre-Trial Conference Date: None Set<br>Trial Date: None Set |

## TABLE OF CONTENTS

Page

I.   JOINT SPECIFICATION OF ISSUES IN DISPUTE ................................... 1

II.  PLAINTIFFS' POSITION ............................................................................ 2

III. DEFENDANTS' POSITION ........................................................................ 6

## I. JOINT SPECIFICATION OF ISSUES IN DISPUTE

Plaintiffs' motion relates to a subset of the following written discovery propounded on each Defendant: Plaintiffs' Feb. 3, 2025 Second Set of Requests for Production to Defendants, Nos. 7-8 ("RFP Nos. 7-8"). The complete language of each Request, and each Defendants' response thereto, is attached as **Exhibit A** hereto.

This motion applies specifically to the backup materials and materials cited in the expert report of Professor Joseph Farrell. The parties met and conferred regarding RFP Nos. 7-8 by phone on March 17, 2025. The parties also exchanged multiple rounds of correspondence regarding compliance with the *Songkick* Protective Order, including letters on February 20 and March 4, 2025, in which Plaintiffs included a list of the Bates numbers and specific data sources from Professor Farrell's reliance materials list and requested to use those specific materials from *Songkick* in this case. Subsequent to the meet and confer and correspondence, the parties briefed issues related to access to and use of the *Songkick* materials with the Court in multiple formats, culminating most recently in a June 2, 2025 hearing on Plaintiffs' motion to clarify and/or modify the *Songkick* Protective Order.

Professor Farrell's report and reliance materials list, which were publicly filed on the *Songkick* docket, are attached hereto as **Exhibit B**. A copy of the Court's order establishing the initial case schedule, as well as the Court's amendments to the case schedule, are attached hereto as **Exhibit C**.

In the hearing in this case on June 2, 2025, the Court requested that the parties submit the dispute as a formal motion using the Local Rule 37-2 submission format. The Court also denied Plaintiffs' motion to clarify and/or modify the *Songkick* Protective Order and noted that the *Songkick* Protective Order does not bar Defendants from producing the requested materials. The Court limited the parties' briefs to eight pages, total, which follow this notice of the dispute.

## II. PLAINTIFFS' POSITION

As the Court is aware, Plaintiffs' counsel previously litigated an antitrust case against Defendants past summary judgment and to the eve of trial in this District. *Complete Entertainment Resources LLC v. Live Nation Entertainment, Inc.*, Case No. 15-cv-9814-DSF (AGRx) (C.D. Cal.) ("*Songkick*"). Part of the record in that case was the expert opinions of Professor Joseph Farrell.

Professor Farrell is a Professor of Economics at University of California, Berkeley, who formerly served as Director of the Bureau of Economics at the Federal Trade Commission (FTC), Deputy Assistant Attorney General for Economic Analysis for the Antitrust Division of the US Department of Justice (DOJ), and Chief Economist for the Federal Communications Commission (FCC). Ex. B, Mar. 13, 2017 Expert Report of Joseph Farrell, at 1 (available at *Songkick* ECF No. 496-1). In the *Songkick* case, he conducted an economic analysis and submitted an expert report with his findings, as well as provided deposition testimony. Among other things, Professor Farrell found that:

- Venue (*i.e.*, primary) ticketing services provided to major US concert venues is a relevant product market for antitrust purposes, and that Ticketmaster has "substantial market power";
- Ticketmaster is "by far, the leading seller of ticketing services on behalf of concert venues";
- Ticketmaster's "long-term exclusive dealing in its venue ticketing contracts has kept per-ticket service fees paid by consumers (fans) high, not low";
- Although Ticketmaster contended there were "efficiencies" relating to its conduct, including the purported "need to recover upfront sums and limit artist presales to promote venue ticketing investments," Ticketmaster's purported efficiencies were "unconvincing in light of the applicable economic logic"; and

- "Empirical evidence does not support a theory that Ticketmaster's long-term exclusive dealing in venue ticketing benefits consumers."

Ex. B, Mar. 13, 2017 Expert Report of Joseph Farrell, at 3-4.

Professor Farrell also identified and summarized the extensive background information he relied on for his report, including evidence from data, documents, and deposition testimony produced in the *Songkick* matter. He cited these materials throughout his report, provided extensive lists of the materials he considered and relied upon, and provided detailed backup data for his various calculations and other analyses. *See generally* Ex. B, Mar. 13, 2017 Expert Report of Joseph Farrell; *see also id.* at appendix C (reliance materials).

Unsurprisingly, Defendants have never argued that Professor Farrell's opinions, nor the materials underlying those opinions, are irrelevant to this case. Nor could they. Just like Songkick, Plaintiffs here allege that Ticketmaster is a monopolist of primary ticketing services. *Compare* Ex. D, Dkt. 1 at ¶ 6, Ex. F at ¶ 1 (*Songkick* Complaint). Just like Songkick, Plaintiffs allege that Defendants' exclusive dealing and tying activities harmed competition in that market. *Compare* Ex. D, Dkt. 1 at ¶¶ 148-154, 164-173, Ex. E at ¶¶ 132-136, 143-154 (*Songkick* Complaint). Indeed, Plaintiffs integrated Professor Farrell's findings into their complaint exactly because of the substantial overlap between this and the *Songkick* case. *See, e.g.,* Ex. D, Dkt. 1 at ¶ 8 (expressly discussing Professor Farrell and the findings of his *Songkick* report); ¶ 17 (discussing Professor Farrell's finding that Defendants' conduct has led to higher prices for ticket purchasers on Ticketmaster's platform); ¶ 22 (discussing Professor Farrell's finding that Ticketmaster is the largest ticketing company in the United States); ¶¶ 48-65 (discussing the ticketing service markets and Professor Farrell's finding that Ticketmaster is dominant in the primary ticketing market); ¶ 70 (discussing that Ticketmaster has substantial market share); ¶¶ 148-154 (discussing

1  Ticketmaster's long-term exclusive deals). And Plaintiffs relied heavily on the charts
2  and calculations from his report to support their allegations. *See id.* at ¶¶ 8, 115-117.
3        Relevance under Rule 26(b)(1) is "defined broadly," *Gold v. Kaplan,* 2021 WL
4  6618643, at *2 (C.D. Cal. Dec. 2, 2021), and, as this Court previously noted, "the bar
5  for relevance is low." *Olivia Van Iderstine, et al. v. Live Nation Entertainment, Inc.,*
6  *et al.*, CV 20-3888-GW-GJSX, Dkt. 35 at 3 (C.D. Cal. Aug. 3, 2020) ("*Oberstein*").
7  Given how broadly relevance is defined, as well as the Ninth Circuit's mandate that
8  plaintiffs in collateral litigation may have access to relevant materials from previous
9  lawsuits, *see* Ex. F, Dkt. 351-1 at 6-7 (discussing the Ninth Circuit's *Foltz* precedent),
10 Plaintiffs submit they have met their burden to establish relevance and that it is proper
11 and proportional for them to use Professor Farrell's reports and underlying reliance
12 and backup materials in this case.
13       For the above reasons, Plaintiffs requested access to Professor Farrell's full
14 opinions and reliance/backup materials at the earliest moment they could; *i.e.*, once
15 they returned from the Ninth Circuit. *See* Ex. G (Jan. 6, 2025 Hr'g Tr.) at 26:6-16.
16 Defendants did not raise any specific relevance objections then, *see id.* at 24:1-28:3,
17 and never did so before the date Plaintiffs provided this portion of the joint submission
18 to them (June 3, 2025). It is thus their burden to demonstrate why production is not
19 appropriate. *Gold*, 2021 WL 6618643, at *3. Nevertheless, all Defendants have done
20 is either object based on Plaintiffs' counsel's retention of these materials at all (which
21 the Court recently addressed, *see* Ex. H, Dkt. 376), or by a general observation that
22 certain portions of the *Songkick* case differ from this case. But these do not change
23 the proper result here.
24       Regarding the former set of arguments, Plaintiffs respectfully refer to their
25 previous submissions on why it was proper for their counsel to retain the *Songkick*
26 documents and do not repeat them here. *See* Ex. F, Dkt. 351-1 at 1.
27       Regarding the differences in the *Songkick* case and this one, Plaintiffs note that
28

1  invoking such differences is no defense to production. Both cases fundamentally turn
2  on Ticketmaster's monopoly power in the primary ticketing services market and how
3  it has abused that power to harm competition and consumers. *See supra*. In *Songkick*,
4  the plaintiff was an artist presale ticketing service provider and therefore its harm
5  stemmed from the ways that Ticketmaster used its broader monopoly power in two
6  markets (primary and artist presale ticketing) to harm competition and, by extension,
7  Songkick. *See generally* Ex. I, *Songkick*, Case No. 15-cv-9814-DSF (AGRx), ECF
8  #409 (Order denying summary judgment). Here, Plaintiffs focus on their personal
9  harm from abuses in one of those markets (primary ticketing) based on much of the
10 same conduct (*e.g.*, exclusive dealing, tying), involving the same counterparties
11 (venues), with the same effects (exclusion of competitors and the subsequent increase
12 in consumer fees above the competitive level). Plaintiffs here also have claims
13 stemming from Defendants' abuses in the secondary ticketing services market, but
14 that does not render Professor Farrell's analyses and underlying materials irrelevant—
15 it just means that Plaintiffs must seek out and use other discovery **in addition to**
16 Professor Farrell's directly-on-point opinions and backup materials.

17        Nor would there be any burden for Defendants to produce the materials.
18 Defendants have the materials in their possession and could easily reproduce them in
19 this case, or deem the versions in Plaintiffs' counsel's files to be produced.

20        For these reasons, none of Defendants' arguments against production stand up
21 to scrutiny here. Given the joint nature of this submission, it is possible Defendants
22 will come up with new arguments Plaintiffs have never seen before they provide this
23 portion of the submission on June 3, 2025. If that occurs, Plaintiffs request the right
24 to address those arguments before the Court at the June 9, 2025 hearing. Notably,
25 below, Defendants argue Plaintiffs never previously requested the deposition
26 transcripts on which Professor Farrell relied for his opinions. Plaintiffs expressly did
27 in their February 2025 discovery requests and various meet and confers.
28

### III. DEFENDANTS' POSITION

On February 3, 2025, Plaintiffs served their Second Set of RFPs on Defendants, seeking (among other things) copies of every single document, pleading, summary judgment brief, written discovery, expert report, and deposition from each of the *Songkick* litigation, the *Oberstein* litigation, several Department of Justice proceedings, the government review of the Live Nation-Ticketmaster merger, and every government investigation or litigation relating to any actual or potential acquisition by Defendants. *See* **Exhibit A** (RFP Nos. 7-8). In response to these extremely overbroad requests, Defendants offered to meet and confer. *See id.* Plaintiffs never offered any specific proposal to narrow the *Songkick*-related portions of RFP Nos. 7-8.

Instead, Plaintiffs pursued an entirely distinct strategy: attempting to modify the *Songkick* Protective Order so they could use all documents from that different case in this one. As part of that strategy, Plaintiffs provided Defendants a list of dozens of documents in their files from the *Songkick* matter that they wanted to provide to their experts in this case. *See* **Exhibits J and K**. Defendants declined to agree that Plaintiffs' counsel could violate the *Songkick* Protective Order by using in this case documents they retained from that different case. Plaintiffs then filed a motion asking the Court allow that, ECF No. 351, and the Court denied that motion on Monday, June 2, 2025, ECF No. 378. At the June 2 hearing, Plaintiffs then asked for an expedited motion to compel the Farrell "expert report" and "underlying materials." June 2, 2025 Hr'g Tr. at 10:16-25; *see also id.* at 5:5-13 (seeking "the expert reports and the underlying materials, the backup materials, the cited materials"). The Court allowed that and ordered Plaintiffs to tell Defendants what specifically they were seeking by Tuesday, June 3, at noon. *Id.* at 11:16-24.

On Tuesday, June 3, Plaintiffs for the first time narrowed their discovery request from every document in the *Songkick* litigation to the "list of the Bates

numbers and specific data sources from Professor Farrell's reliance materials list"—*i.e.*, the documents listed in their letters related to the protective order dispute. *See* **Exhibits J and K**. Defendants do not believe that an expert report from nearly a decade ago, prepared in a different case asserting different claims (*e.g.*, trade secret, tort, and Computer Fraud and Abuse Act claims, among others[1]), for a different client of Plaintiffs' counsel, is the proper subject of discovery in this case. Indeed, a primary focus of the Farrell report is an alleged market for "artist presales," which is *not* a market at issue here.

Nonetheless, to avoid burdening the Court with a discovery dispute, Defendants agreed on June 4 to produce the Farrell report, the backup data for the Farrell report, and the Bates-stamped reliance materials cited in the Farrell report. These are the exact materials Plaintiffs had sought to use in multiple letters related to the *Songkick* Protective Order dispute. *See* **Exhibits J and K**. And they are the materials Plaintiffs requested in their draft of this submission—*i.e.*, the "list of the Bates numbers and specific data sources from Professor Farrell's reliance material." *See supra*.

After Defendants agreed to produce these materials, Plaintiffs then demanded additional materials—the 15 deposition transcripts referenced in the Farrell report. Plaintiffs never requested these deposition transcripts in any of their letters on the *Songkick* Protective Order issue, in any of the extensive briefing on use of the *Songkick* materials, or in any of the parties' correspondence to date, except insofar as transcripts are included in Plaintiffs' sweeping definition of "documents" in their vastly overbroad RFP Nos. 7 and 8.

Adding new requests about which the parties have never conferred in a motion to compel is improper under Rule 37(a)(1), particularly under the expedited

---

[1] Plaintiffs misleadingly include the original *Songkick* complaint, rather than the first amended *Songkick* complaint, as an exhibit. The first amended *Songkick* complaint contains multiple trade secret claims and a claim for violation of the Computer Fraud and Abuse Act, which plainly have nothing to do with the issues in *Heckman*.

1  procedures that Plaintiffs sought based on their representation to the Court that the
2  specific materials they would request had been repeatedly discussed and briefed by
3  the parties.  As Defendants would have explained had the parties met and conferred
4  regarding the *Songkick* deposition transcripts, those transcripts contain various
5  material that is completely irrelevant to the issues in this case.  For example, the
6  depositions in that case covered claims such as trade secret misappropriation,
7  promissory estoppel, violation of the Computer Fraud and Abuse Act, and intentional
8  interference with contractual relations—each of which has nothing to do with the
9  antitrust allegations at issue in *Heckman*.

10  The Court should reject Plaintiffs' eleventh-hour request for the entirety of
11  more than a dozen transcripts from a different case with different claims and different
12  alleged markets—at least until the parties have met and conferred on this issue.  If,
13  after the meet-and-confer process, Plaintiffs still believe every single line of every
14  single *Songkick* deposition transcript is somehow relevant to the issues in this case,
15  they can file an ordinary discovery motion, and the Court can consider the issue on a
16  regular briefing schedule.

| | | |
|---|---|---|
| Dated: June 5, 2025 | | Respectfully submitted, |
| | | QUINN EMANUEL URQUHART & SULLIVAN, LLP |
| | By: | */s/ Kevin Y. Teruya* |
| | | Kevin Y. Teruya (Bar No. 235916) <br> kevinteruya@quinnemanuel.com <br> Adam B. Wolfson (Bar No. 262125) <br> adamwolfson@quinnemanuel.com <br> William R. Sears (Bar No. 330888) <br> willsears@quinnemanuel.com <br> 865 South Figueroa Street, 10th Floor <br> Los Angeles, California 90017-2543 <br> Telephone: (213) 443-3000 <br> Facsimile: (213) 443-3100 |
| | | KELLER POSTMAN LLC <br> Warren Postman (Bar No. 330869) <br> wdp@kellerpostman.com <br> 1101 Connecticut Avenue, N.W., Suite 1100 <br> Washington, D.C., 20036-4312 <br> Telephone: (202) 918-1123 |
| | | *Attorneys for Plaintiffs Skot Heckman, Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated* |
| Dated: June 5, 2025 | | Respectfully submitted, |
| | | LATHAM & WATKINS LLP |
| | By: | */s/ Timothy L. O'Mara* <br> Timothy L. O'Mara |
| | | 505 Montgomery Street, Suite 2000 <br> San Francisco, California 94111-6538 <br> Tel.: +1.415.391.0600 <br> Fax: +1.415.395.8095 <br> tim.o'mara@lw.com |
| | | *Attorneys for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.* |

# ATTESTATION OF E-FILED SIGNATURES

I, Kevin Teruya, am the ECF user whose ID and password are being used to file this stipulation. In compliance with Local rule 5-4.3.4, I attest that all signatories are registered CM/ECF filers and have concurred in this filing.

Dated: June 5, 2025                     Respectfully submitted,

                                        QUINN EMANUEL URQUHART & SULLIVAN, LLP

                                   By:  */s/ Kevin Y. Teruya*
                                        Kevin Y. Teruya