**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
  kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
  adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
  willsears@quinnemanuel.com
Jennifer D. English (Bar No. 273772)
  jenniferenglish@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
  brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone:  (213) 443-3000
Facsimile:  (213) 443-3100

**KELLER POSTMAN LLC**
Warren D. Postman (Bar No. 330869)
  wdp@kellerpostman.com
Jessica B. Beringer (*pro hac vice*)
  Jessica.beringer@kellerpostman.com
Alexios J. Dravillas (*pro hac vice*)
  ajd@kellerpostman.com
1101 Connecticut Avenue, N.W, Suite 1100
Washington, D.C. 20036
Telephone:  (202) 918-1123

*Interim Co-Lead Class Counsel*

# UNITED STATES DISTRICT COURT
## CENTRAL DISTRICT OF CALIFORNIA
### WESTERN DIVISION

| | |
|---|---|
| SKOT HECKMAN, LUIS PONCE, JEANENE POPP, and JACOB ROBERTS, on behalf of themselves and all those similarly situated, | Case No. 2:22-cv-00047-GW-DSR |
| | The Honorable George H. Wu |
| Plaintiffs, | **PLAINTIFFS' REPLY IN SUPPORT OF MOTION FOR CLASS CERTIFICATION AND APPOINTMENT OF CO-LEAD CLASS COUNSEL** |
| vs. | |
| LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER LLC, | **REDACTED VERSION OF DOCUMENT PROPOSED TO BE FILED PUBLICLY** |
| Defendants. | Hearing Date:    December 4, 2025 |
| | Hearing Time:    8:30 a.m. |
| | Courtroom:    9D, 9th Floor |

# **TABLE OF CONTENTS**

Page

I.   PRELIMINARY STATEMENT ...................................................................... 1

II.  ARGUMENT ................................................................................................. 3

   A.   By Not Moving to Exclude Professor Pathak's Opinions, Defendants Essentially Concede Predominance ...................................... 3

   B.   Defendants' "Antitrust Impact" Arguments Are Merits Questions Regarding the Persuasiveness of Plaintiffs' Common Proof of Classwide Injury ..................................................................................... 5

      1.   Defendants' General Attacks on Pathak's Model Do Not Disprove Its Common, Classwide Nature ........................................ 5

      2.   Pathak Reliably Approximates Fixed Costs ................................. 9

      3.   Fee-Related Arguments Are Classwide Merits Disputes ........... 11

      4.   Defendants' "False Positives" Arguments Are Baseless ........... 15

      5.   Pathak's Additional Analyses Confirm Classwide Impact ........ 17

   C.   Defendants' Liability Arguments Present Classwide Merits Disputes ................................................................................................. 19

      1.   Geographic Market Definition ................................................... 19

      2.   Tying and Coercion .................................................................... 20

      3.   Exclusive Dealing ...................................................................... 22

   D.   Defendants' Damages Arguments Do Not Defeat Class Certification ........................................................................................... 23

      1.   The Model Is Not Speculative .................................................... 24

      2.   The Model Accounts for Real-World Variation, and Defendants' "Below Cost" Fee Arguments Lack Merit ............... 25

      3.   *Comcast* Is Irrelevant ................................................................ 26

   E.   Defendant's Additional Predominance, Typicality, and Adequacy Arguments All Fail ............................................................. 27

      1.   Statute of Limitations Is A Common Question, and It Affects Only A Portion of Plaintiffs' Damages Claims Anyway ....................................................................................... 27

      2.   Defendants' Arbitration Arguments Also Do Not Preclude Certification ............................................................................... 28

1

III.    CONCLUSION ................................................................................................ 30

2

3

4

5

6

7

8

9

10

11

12

13

14

15

16

17

18

19

20

21

22

23

24

25

26

27

28

# TABLE OF AUTHORITIES

**Page**

## Cases

*2311 Racing LLC v. Nat'l Basketball Ass'n*,
  2025 WL 1793959 (S.D.N.Y. June 30, 2025) ....................................................... 6

*Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*,
  592 F.3d 991 (9th Cir. 2010) ............................................................... 19, 23

*Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*,
  247 F.R.D. 156, 173 (C.D. Cal. 2007) ................................................... 15

*Am. Soc. of Composers, Authors & Publishers v. Showtime/The Movie Channel, Inc.*,
  912 F.2d 563 (2d Cir. 1990) ................................................................... 7

*Avilez v. Pinkerton Gov't Servs.*,
  596 F. App'x 579 (9th Cir. 2015) .......................................................... 30

*Bell Atl. Corp. v. AT&T Corp.*,
  339 F.3d 294 (5th Cir. 2003) ................................................................ 24

*Berman v. Freedom Fin. Network*,
  400 F. Supp. 3d 964 (N.D. Cal. 2019) ................................................. 30

*Blue Cross & Blue Shield United of Wisconsin v. Marshfield Clinic*,
  152 F.3d 588 (7th Cir. 1998) ................................................................ 18

*Boumaiz v. Charter Commc'ns*,
  2021 WL 2189481 (C.D. Cal. May 19, 2021) ...................................... 30

*Burnett v. Nat'l Ass'n of Realtors*,
  2022 WL 1203100 (W.D. Mo. Apr. 22, 2022) .................................... 14

*Cash v. Arctic Circle, Inc.*,
  85 F.R.D. 618 (E.D. Wash. 1979) ........................................................ 21

*City of Phila. v. Bank of Am. Corp.*,
  2023 WL 6160534 (S.D.N.Y. Sept. 21, 2023), *aff'd*, 2025 WL
  2180607 (2d Cir. Aug. 1, 2025) ............................................................ 27

*Comcast Corp. v. Behrend*,
  569 U.S. 27 (2013) ................................................................................ 26

*Comedy Club, Inc. v. Improv W. Assocs.*,
    553 F.3d 1277 (9th Cir. 2009) ............................................................... 9

*De Coster v. Amazon.com, Inc.*,
    2025 WL 2836824 (W.D. Wash. Aug. 6, 2025) .................................... *passim*

*Dial Corp. v. News Corp.*,
    314 F.R.D. 108, 118-19 (S.D.N.Y. 2015) ............................................ 7

*Dominguez v. UAL Corp.*,
    666 F.3d 1359 (D.C. Cir. 2012) ............................................................ 24

*Eastman v. Quest Diagnostics Inc.*,
    724 F. App'x 556 (9th Cir. 2018) ......................................................... 23

*Ehret v. Uber Techs., Inc.*,
    148 F. Supp. 3d 884 (N.D. Cal. 2015) .................................................. 29

*El Aguila Food Prods., Inc. v. Gruma Corp.*,
    301 F. Supp. 2d 612 (S.D. Tex. 2003) .................................................. 26

*F.T.C. v. Elders Grain, Inc.*,
    868 F.2d 901 (7th Cir. 1989) ................................................................ 7

*Favell v. Univ. of S. California*,
    2025 WL 1774715 (C.D. Cal. May 13, 2025) ...................................... 4

*Fed. Trade Comm'n v. Qualcomm Inc.*,
    969 F.3d 974 (9th Cir. 2020) ................................................................ 23

*Freitas v. Cricket Wireless, LLC*,
    2022 WL 1082014 (N.D. Cal. Apr. 11, 2022) ...................................... 30

*Funeral Consumers All., Inc. v. Serv. Corp. Int'l*,
    695 F.3d 330 (5th Cir. 2012) ................................................................ 20

*George Lussier Enters., Inc. v. Subaru of New England, Inc.*,
    2001 WL 920060 (D.N.H. Aug. 3, 2001) ............................................. 21

*Giuliano v. Sandisk Corp.*,
    2015 WL 10890654 (N.D. Cal. May 14, 2015) .................................... 8, 9

*Hale v. Brinker Int'l*,
    765 F. Supp. 3d 904 (N.D. Cal. 2025) .................................................. 22

*Heerwagen v. Clear Channel Commc'ns*,
  435 F.3d 219 (2d Cir. 2006) ..................................................................... 20

*Herrera v. LCS Fin. Servs. Corp.*,
  274 F.R.D. 666 (N.D. Cal. 2011) ............................................................. 29

*In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*,
  276 F.R.D. 364 (C.D. Cal. 2011) ........................................................ *passim*

*In re Capacitors Antitrust Litig.*,
  2020 WL 870927 (N.D. Cal. Feb. 21, 2020) ............................................ 19

*In re Capacitors Antitrust Litig. (No. III)*,
  2018 WL 5980139 (N.D. Cal. Nov. 14, 2018) .................................... 11, 17

*In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*,
  2011 WL 6826813 (W.D. Okla. Dec. 28, 2011) ...................................... 21

*In re da Vinci Surgical Robot Antitrust Litig.*,
  2025 WL 964879 (N.D. Cal. Mar. 31, 2025) .............................. 21, 22, 23

*In re Elec. Books Antitrust Litig.*,
  2014 WL 1282293 (S.D.N.Y. Mar. 28, 2014) .......................................... 23

*In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. &*
  *Antitrust Litig.*,
  2020 WL 1180550 (D. Kan. Mar. 10, 2020) ............................................ 22

*In re Ethylene Propylene Diene Monomer (EPDM) Antitrust Litig.*,
  256 F.R.D. 82 (D. Conn. 2009) ............................................................... 26

*In re Glumetza Antitrust Litig.*,
  336 F.R.D. 468 (N.D. Cal. 2020) ............................................................ 24

*In re Google RTB Consumer Priv. Litig.*,
  2024 WL 2242690 (N.D. Cal. Apr. 4, 2024) ........................................... 22

*In re Graphics Processing Units Antitrust Litig.*,
  253 F.R.D. 478 (N.D. Cal. 2008) ....................................................... 14, 15

*In re IBM Peripheral EDP Devices Antitrust Litig.*,
  481 F. Supp. 965, 989-90 (N.D. Cal. 1979) .............................................. 7

*In re Kia Hyundai Vehicle Theft Litig.*,
  2024 WL 2104571 (C.D. Cal. Apr. 22, 2024) .......................................... 28

*In re Korean Ramen Antitrust Litig.*,
  2017 WL 235052 (N.D. Cal. Jan. 19, 2017) .................................................9, 25

*In re Linerboard Antitrust Litig.*,
  305 F.3d 145 (3d Cir. 2002) ...............................................................................28

*In re Lidoderm Antitrust Litig.*,
  2017 WL 679367 (N.D. Cal. Feb. 21, 2017).....................................................9, 17

*In re Live Concert Antitrust Litig.*,
  863 F. Supp. 2d 966 (C.D. Cal. 2012)................................................................20

*In re Mushroom Direct Purchaser Antitrust Litig.*,
  319 F.R.D. 158 (E.D. Pa. 2016) .........................................................................20

*In re Online DVD Rental Antitrust Litig.*,
  2010 WL 5396064 (N.D. Cal. Dec. 23, 2010) ...............................................9, 11

*In re Optical Disk Drive Antitrust Litig.*,
  2016 WL 467444 (N.D. Cal. Feb. 8, 2016)......................................................14, 19

*In re Optical Disk Drive Antitrust Litig.*,
  303 F.R.D. 311, 321 (N.D. Cal. 2014) ...............................................................11

*In re Packaged Seafood Prods. Antitrust Litig.*,
  332 F.R.D. 308 (S.D. Cal. 2019) ........................................................................17

*In re Pork Antitrust Litig.*,
  2024 WL 2060386 (D. Minn. May 8, 2024) ......................................................18

*In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*,
  725 F.3d 244 (D.C. Cir. 2013)............................................................................16

*In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust
  Litig.*,
  421 F. Supp. 3d 12 (E.D. Pa. 2019)....................................................................27

*In re TFT-LCD (Flat Panel) Antitrust Litig.*,
  267 F.R.D. 291 (N.D. Cal. 2010) .......................................................................28

*In re Univ. of S. Cal. Tuition & Fees COVID-19 Refund Litig.*,
  695 F. Supp. 3d 1128 (C.D. Cal. 2023)..............................................................24

*Indiana Lumbermens Mut. Ins. Co. v. Reinsurance Results, Inc.*,
  513 F.3d 652 (7th Cir. 2008) ...............................................................................7

*Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*,
  2024 WL 5004632 (S.D.N.Y. Dec. 6, 2024) ........................................................ 5

*It's My Party, Inc. v. Live Nation, Inc.*,
  811 F.3d 676 (4th Cir. 2016) ................................................................. 20

*Lah v. Shell Oil Co.*,
  50 F.R.D. 198 (S.D. Ohio 1970) .............................................................. 21

*Le v. Zuffa, LLC*,
  2023 WL 5085064 (D. Nev. Aug. 9, 2023) ..................................................... 21

*Lucas v. Breg, Inc.*,
  212 F. Supp. 3d 950 (S.D. Cal. 2016) ........................................................ 28

*Lytle v. Nutramax Lab'ys, Inc.*,
  114 F.4th 1011 (9th Cir. 2024) ........................................................... 3, 24

*Martino v. McDonald's Sys., Inc.*,
  81 F.R.D. 81 (N.D. Ill. 1979) .............................................................. 21

*McLaughlin v. Am. Tobacco Co.*,
  522 F.3d 215 (2d Cir. 2008) ................................................................. 9

*Miller v. Travel Guard Grp., Inc.*,
  2023 WL 7106479 (N.D. Cal. Sept. 15, 2023) ................................................. 30

*Milonas v. Amerada Hess Corp.*,
  1976 WL 1312 (S.D.N.Y. Aug. 19, 1976) ...................................................... 21

*Moehrl v. Nat'l Ass'n of Realtors*,
  2023 WL 2683199 (N.D. Ill. Mar. 29, 2023) .................................................. 27

*Nat'l ATM Council, Inc. v. Visa Inc.*,
  2021 WL 4099451 (D.D.C. Aug. 4, 2021) ...................................................... 17

*Nat'l ATM Council, Inc. v. Visa Inc.*,
  2023 WL 4743013 (D.C. Cir. July 25, 2023) .................................................. 26

*Nitsch v. Dreamworks Animation SKG Inc.*,
  315 F.R.D. 270 (N.D. Cal. 2016) ............................................................ 29

*Noohi v. Johnson & Johnson Consumer Inc.*,
  146 F.4th 858 (9th Cir. 2025) ......................................................... 3, 24, 26

*O'Connor v. Uber Techs., Inc.*,
   904 F.3d 1087 (9th Cir. 2018) ........................................................................... 30

*Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*,
   31 F.4th 651 (9th Cir. 2022) ..................................................................*passim*

*Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp*.,
   100 F. App'x 296 (5th Cir. 2004) ..................................................................... 26

*Ray v. Nat'l Collegiate Athletic Ass'n*,
   2025 WL 775753 (E.D. Cal. Mar. 11, 2025) ..................................................... 6

*Sidibe v. Sutter Health*,
   103 F.4th 675 (9th Cir. 2024) ........................................................................... 16

*Stockwell v. City & Cnty. of San Francisco*,
   749 F.3d 1107 (9th Cir. 2014) ............................................................................. 3

*Teradata Corp. v. SAP SE*,
   124 F.4th 555 (9th Cir. 2024) ............................................................................. 6

*Ticketmaster Corp. v. Tickets.com, Inc.*,
   2003 WL 21397701 (C.D. Cal. Mar. 7, 2003) ................................................. 23

*Ticketmaster L.L.C. v. RMG Techs., Inc.*,
   536 F. Supp. 2d 1191 (C.D. Cal. 2008) ........................................................... 20

*Tyson Foods, Inc. v. Bouaphakeo*,
   577 U.S. 442 (2016) ...................................................................................... 3, 4

*United States v. Google LLC*,
   687 F. Supp. 3d 48 (D.D.C. 2023) ................................................................... 23

*Vaquero v. Ashley Furniture Indus., Inc.*,
   824 F.3d 1150 (9th Cir. 2016) ..................................................................... 23, 26

*Wal-Mart Stores, Inc. v. Dukes*,
   564 U.S. 338 (2011) ........................................................................................... 8

*Waste Mgmt. Holdings, Inc. v. Mowbray*,
   208 F.3d 288 (1st Cir. 2000) ............................................................................ 27

*Williams v. Sinclair*,
   529 F.2d 1383 (9th Cir. 1975) .......................................................................... 27

## **Statutes**

Phillip E. Areeda & Herbert Hovenkamp, Antitrust Law, §392 ............................... 6

## **Other Authorities**

Wright & Miller, 7A Fed. Prac. & Proc. Civ. § 1781 n.31 (3d ed.)........................ 21

5 Moore's Federal Practice—Civil § 23.45 (5)(c)(ii) (2025) .................................. 21

## I.    __PRELIMINARY STATEMENT__

Defendants fail to overcome Plaintiffs' showing that class certification is appropriate. Through a combination of documents, testimony, and already-admitted opinions from Professor Pathak, Plaintiffs establish that common proof shows Defendants illegally monopolized the relevant market for primary ticketing services in the U.S. and overcharged every Class member. Dkt. 471-1 ("Mot."). In response, Defendants invoke battles of the experts, fact disputes, and mischaracterizations of Plaintiffs' actual evidence and positions. None defeat class certification.

Defendants argue Professor Pathak is unable to show common impact, but they essentially concede—by not filing a *Daubert* motion—his opinions are relevant and his methodology is reliable. None of Defendants' challenges to Pathak's methodology present *individual* issues that predominate over *common* ones. At most, Defendants raise disputed, common expert questions for the jury.

To start, Pathak *specifically* accounts for variations between venues (explaining they would continue in the but-for world, just with lower fees across the board), selects an appropriate benchmark based on the best available evidence, and explains that—in line with decades of economic thought—a competitive but-for world would drive Ticketmaster's fees *towards* its costs, not "to" them (as Defendants misleadingly claim). As for Pathak's fixed cost estimate (█████, adjusted for inflation), Defendants misrepresent what that benchmark represents, ignore that it overstates Defendants' costs and is therefore conservative, and overlook real-world evidence and additional, more recent Defendant-produced documents supporting it. It is telling Defendants did not move to exclude Pathak's opinions, because Defendants' benchmark-related arguments fall apart with minimal scrutiny.

Defendants' fee-related and "false positive" arguments similarly fail. They either rely on misdirection (*e.g.*, by misrepresenting Plaintiffs' allegations and liability theories), or ask the Court to resolve disputed facts. Defendants' attempt to pick at the additional ways Pathak analyzed common impact—a review of the economic literature,

a sports regression, and a study of the lay record—ignores that if multiple analyses all corroborate each other, that strongly supports their end conclusion. Plaintiffs can rely on Pathak's admissible opinions to show classwide impact; none of Defendants' critiques show otherwise, and all are, in any event, demonstrably incorrect.

Defendants also attack Plaintiffs' proof of antitrust liability, arguing a different geographic market definition and that Plaintiffs need to make individualized showings of tying, coercion, and exclusive dealing. As for geographic market, Defendants' expert ██████████████████████████████████████ Defendants' attorney say-so is wrong, and Defendants do not explain why a different market (regional versus national) would matter at all. On tying, coercion, and exclusive dealing, Defendants are wrong under the law and facts. The core conduct commonly impacting Class members is Ticketmaster's web of exclusive deals, which Plaintiffs show through indisputably common evidence. How Ticketmaster obtained this web, including through tying and coercion, is relevant to Plaintiffs' broader case (including fraudulent concealment), but it is largely ***irrelevant*** to predominance because the end result is still an exclusive primary ticketing services deal. Therefore, proof of tying and coercion is unnecessary to establish the bases for class certification.

Moving to damages, Defendants argue Pathak's model is "speculative" and fails to account for variation among venues, both of which are false for the reasons mentioned above (and detailed below). Defendants also invoke an analysis from their expert, Dr. Johnson, that purportedly shows Pathak's model implies Defendants would charge fees on some tickets that are below Defendants' costs. This ignores: (1) all Class members overpaid in the real world because all service fees would decrease in the but-for world, and (2) Johnson's analysis suffers from multiple errors. And Defendants halfheartedly invoke the Supreme Court's *Comcast* opinion without explaining how Pathak's opinions allegedly fail to account for Plaintiffs' core, unified liability theory.

As a grab bag of final arguments, Defendants invoke the statute of limitations and a speculative motion to compel arbitration. These, too, do not defeat class

certification and, even if credited, could be addressed by amending the class definition.

At bottom, nothing in Defendants' Opposition (Dkt. 489-1, "Opp.") provides a reason to deny class certification. The Court should therefore grant Plaintiffs' Motion.

## II.   ARGUMENT

### A.   By Not Moving to Exclude Professor Pathak's Opinions, Defendants Essentially Concede Predominance

"With respect to the predominance inquiry specifically, a district court must evaluate the 'method or methods by which plaintiffs propose to use the class-wide evidence to prove the common question in one stroke." *Noohi v. Johnson & Johnson Consumer Inc.*, 146 F.4th 858, 863 (9th Cir. 2025) (cleaned up). The certification inquiry is "limited to resolving whether the evidence establishes that a common question is *capable* of class-wide resolution, not whether the evidence in fact establishes that plaintiffs would win at trial." *Lytle v. Nutramax Lab'ys, Inc.*, 114 F.4th 1011, 1023 (9th Cir. 2024) (cleaned up). "Resolving" the "persuasiveness" of Pathak's opinions "is the near-exclusive province of the jury." *Tyson Foods, Inc. v. Bouaphakeo*, 577 U.S. 442, 459 (2016).

Here, Defendants did not move to exclude Pathak's opinions—essentially conceding they are reliable and admissible regarding classwide impact and damages. *See* Mot. 14–19, Pathak §§VI–VII, & Pathak Reply §§II–X (describing Pathak's impact and damages opinions); *In re Aftermarket Auto. Lighting Prods. Antitrust Litig.*, 276 F.R.D. 364, 369–75 (C.D. Cal. 2011) (Wu, J.) (classwide "proof of impact and damages" satisfied predominance in antitrust case). If a jury credits Pathak's testimony, Plaintiffs win; if not, Plaintiffs lose. Either is an across-the-board result applying to all Class members and thus supports predominance. *Stockwell v. City & Cnty. of San Francisco*, 749 F.3d 1107, 1116 (9th Cir. 2014) (where common evidence "will either succeed as to the class as a whole ... or fail ... with respect to the class as a whole," that "strengthen[s], not weaken[s], the case for certification"). This satisfies predominance.

For example, in *Olean*, the Ninth Circuit rejected similar anti-certification

1  arguments from the exact same defense expert (Johnson), noting certification is
2  appropriate if "expert evidence [i]s capable of answering a common question for the
3  entire class in one stroke, and could reasonably sustain a jury verdict in favor of the
4  plaintiffs, even though a jury could still decide that the evidence was not persuasive."
5  *Olean Wholesale Grocery Coop., Inc. v. Bumble Bee Foods LLC*, 31 F.4th 651, 668
6  (9th Cir. 2022) (cleaned up).

7      This Court has repeatedly applied these principles. In *Favell v. Univ. of S.*
8  *California*, it explained the defendant—like Defendants here—"overstate[] ... what the
9  district court must do when presented with an expert dispute at class certification."
10 2025 WL 1774715, at *9 (C.D. Cal. May 13, 2025). Only "glaring issues"—not run-
11 of-the-mill disputes as to whether the plaintiff expert "in fact establishes that plaintiffs
12 would win"—can preclude certification. *Id.* In *Aftermarket Auto.*, this Court explained
13 "where a court is confronted with two opposing expert analyses ... the Court is not
14 supposed to decide at the certification stage which expert analysis or model is better,"
15 arguments that an expert's "analysis is flawed" do not defeat certification, and "a court
16 need not plunge into the weeds of an expert dispute about potential technical flaws in
17 an expert methodology." 276 F.R.D. at 373–74 (cleaned up).

18     Defendants invoke Rule 23's "rigorous assessment" requirement in passing
19 (Opp. 9 n.1), but that changes nothing. Pathak's methodology, which Defendants
20 concede by (in)action is reliable, demonstrates classwide impact. Because it ***can*** prove
21 common impact without individual inquiries, common issues predominate. Whether a
22 jury will ***agree*** with this methodology is a question for another day. *Olean*, 31 F.4th at
23 668; *Tyson*, 577 U.S. at 459–60.

24     Indeed, Defendants' own counterarguments rest on common evidence (*e.g.*,
25 expert testimony) and raise common issues (*e.g.*, how to measure Defendants' costs).
26 These support predominance. *Tyson*, 577 U.S. at 459. And they are similar to
27 arguments two courts recently rejected in certifying classes based on Pathak's opinions.
28 *De Coster v. Amazon.com, Inc.*, 2025 WL 2836824, at *18 (W.D. Wash. Aug. 6, 2025)

("dispute between the parties' experts is insufficient to defeat class certification on the issue of predominance"); *Iowa Pub. Employees' Ret. Sys. v. Merrill Lynch, Pierce, Fenner & Smith Inc.*, 2024 WL 5004632, at *17 (S.D.N.Y. Dec. 6, 2024) (similar).

Finally, Defendants' critiques—addressed below—lack merit. But the point is they raise battles of the experts on questions common to every Class member, not grounds to defeat certification.

## B.   Defendants' "Antitrust Impact" Arguments Are Merits Questions Regarding the Persuasiveness of Plaintiffs' Common Proof of Classwide Injury

Defendants' generalized attacks on Pathak's model (*see* Opp. §IV.A.1.a.), challenges regarding fixed costs, how fees are set, and purported false positives (Opp.§IV.A.1.a.(1)–(3)), and critiques of Pathak's additional impact analyses (*e.g.*, his application of economic literature, his sports regression, and his analysis of the record) all fail (Opp. §IV.A.1.b.). Ironically, what they do show is certification is proper because Defendants plan to rebut Plaintiffs' common evidence of classwide impact with arguments and "proof" that are themselves common.

### 1.   Defendants' General Attacks on Pathak's Model Do Not Disprove Its Common, Classwide Nature

Pathak's model compares the service fees Class members paid to the fees they would have paid in a more competitive but-for world—the difference is the "overcharge" (*i.e.*, damages). Pathak ¶¶137–41, 171–86. The model expressly accounts for variations in the specific fees at different venues because those same variations would exist in the but-for world. *Id.* ¶¶182–83. Because competition drives prices *toward* (not to) costs, Pathak estimated competitive fixed costs using what LNE ███████████████████████████████████ for ticketing services in the short period where LNE and Ticketmaster directly competed in primary ticketing: ████ per ticket (adjusted for inflation). Pathak ¶171. To this, he added Ticketmaster's actual variable costs ████████████████████ This yielded conservative but-for

1  pricing estimates of ████████ per ticket—in line with ████████████

2  Pathak ¶¶175–81 & n.291.

3      Defendants mischaracterize Pathak's opinions with general critiques that boil

4  down to disputes regarding "what the 'but for' world would look like," which this Court

5  has explained do not defeat certification. *Aftermarket Auto.*, 276 F.R.D. at 373–74; *see*

6  *also Teradata Corp. v. SAP SE*, 124 F.4th 555, 571–75 (9th Cir. 2024) (where

7  plaintiffs' expert was admissible, triable issue existed regarding harm to competition

8  even though "a trier of fact might disagree" with expert).

9      ***First***, Defendants fault Pathak for constructing a "but-for world benchmark,"

10  rather than looking to "another market" in the "real world" with "the same features[.]"

11  Opp. 9–10. Notably, they neither identify any such "real world" example nor explain

12  why it would be "better." *Id.* Nor do they explain why choosing the best of imperfect

13  benchmarks means a jury could not find for the Class on this common evidence. *Id.*

14  Defendants' amorphous "better benchmark" argument therefore fails because a dispute

15  "concerning the appropriate method for measuring impact" is no reason to deny

16  certification. *Ray v. Nat'l Collegiate Athletic Ass'n*, 2025 WL 775753, at *9 (E.D. Cal.

17  Mar. 11, 2025) (granting certification in antitrust case).

18      Moreover, although Defendants dispute whether Pathak utilized the ***best***

19  benchmark, they do not dispute Pathak's ***method***—utilizing a benchmark to model the

20  but-for world—is capable of showing impact. That, too, is dispositive. *Aftermarket*

21  *Auto.*, 276 F.R.D. at 374 (granting certification; common issues regarding impact

22  predominated where undisputed method "a 'standard' way to develop a hypothetical

23  'but for' world" to "analyz[e] the impact of" anticompetitive conduct, but defendants

24  disputed "application of that methodology"). Defendants' citations (Opp. 9–10) do not

25  address certification and are thus inapposite. *See* Phillip E. Areeda & Herbert

26  Hovenkamp, Antitrust Law, §392 (describing yardstick, not before-and-after

27  benchmark method); *2311 Racing LLC v. Nat'l Basketball Ass'n*, 2025 WL 1793959,

28  at *4 (S.D.N.Y. June 30, 2025) (similar, vis-á-vis relevance for non-party subpoena).

#:12853

Defendants' nitpicks of Pathak's benchmark approach also ignore that Defendants' misconduct spanned decades and the entire market, meaning no completely untainted real-world benchmark exists. Pathak ¶171; Pathak Reply ¶¶3, 22–23, 40; Ex. 45 (Pathak Tr.) at 162:7–163:5. Pathak's decision to use the best available benchmark was reasonable and creates no certification issue—especially since Johnson offers no alternative. *Cf. Dial Corp. v. News Corp.*, 314 F.R.D. 108, 118–19 (S.D.N.Y. 2015) (granting certification in antitrust case; explaining "perfectly comparable benchmark" is "impossible" where defendants' anticompetitive conduct tainted market, and disputes about proper benchmarks were for "the merits stage").

***Second***, Defendants mischaracterize Pathak as opining that "in a but-for, competitive world, Ticketmaster's price to venues (*i.e.*, its 'net service fees') would equal its costs" and argue on this basis that Pathak's "economics-textbook utopia does not translate to the real world." Opp. 3, 10 (cleaned up). This is incorrect. Pathak opines that "[c]ompetition drives prices ***towards cost***, so a competitive market has prices ***near cost***." Pathak ¶179. As Defendants' citations show, Pathak explicitly corrected Defendants on this exact point at deposition. Opp. 10 & n.2; Ex. 45 (Pathak Tr.) at 168:13–169:2. Pathak further explains how his model is consistent with price approaching (not equaling) cost (Pathak Reply ¶¶19, 35), which accords with well-accepted economics. *E.g.*, *Indiana Lumbermens Mut. Ins. Co. v. Reinsurance Results, Inc.*, 513 F.3d 652, 658 (7th Cir. 2008) (Posner, J.) (explaining that in "[i]n a competitive market, price tends to be driven down to or at least near cost").[1]

***Finally***, Defendants wrongly assert Pathak's model "ignores" variations across venues and improperly uses "aggregate" proof. Opp. 11–12. Pathak ***explicitly*** accounts

---

[1] Defendants' mischaracterization renders irrelevant their citations regarding "perfect competition." Opp. 10. That is not what Pathak opines. In any event, those cases are not class certification decisions, address different issues like market definition (*Elders Grain*), copyright licenses under a government consent decree (*Am. Soc. of Composers*), and predatory pricing as anticompetitive conduct (*In re IBM*), and do not make broad pronouncements on economic questions as matters of law.

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION [REDACTED]

1  for variation by ████████████████████████████████████████████

2  ████████████████████████████████████████████████████████████

3  ████████████████████ Specifically, Pathak: ████████████████████

4  ████████████████████████████████████████████████████████████

5  ████████████████████████████████████████████████████████████

6  ██████████████████████████████████████████ Pathak ¶¶182–83, 212–213.

7  In this way, Pathak's model addresses venue-by-venue variation, "does not require

8  venue or customer specific inquiry," and shows that Ticketmaster's fees to consumers

9  in all instances would be lower (resulting in common impact). *Id.*; Pathak Reply ¶¶12–

10  18, 25–34.

11  In addition to being wrong, Defendants' argument regarding "aggregate" proof

12  is a repackaged argument antitrust defendants raise in virtually every class action. In

13  *Olean*, the Ninth Circuit explained the defendants (through Johnson) were incorrect

14  that certification was inappropriate simply because the plaintiffs' model used

15  "averaging assumptions" that supposedly "'paper[ed] over' individualized differences

16  among class members." 31 F.4th at 677. Whether the model correctly found the

17  anticompetitive conduct "resulted in a 10.28 percent overcharge for the entire class" or

18  instead "flies against common sense and empirical evidence" was "for the jury, not the

19  court, to decide," so certification was appropriate. *Id.* at 677–78; *Giuliano v. Sandisk*

20  *Corp.*, 2015 WL 10890654, at *18 (N.D. Cal. May 14, 2015) (granting certification

21  where expert "used aggregated and averaged data to establish antitrust impact."").

22  Indeed, as another court recently found in certifying an antitrust class action based on

23  Pathak's opinions, disputes with Pathak's conclusions and arguments about supposed

24  "masking" are issues for trial. *De Coster*, 2025 WL 2836824, at *16 n.20, *18.

25  Defendants' claim that Pathak's methodology amounts to an impermissible

26  "Trial by Formula" is also misguided. Opp. 12. Defendants' citations involved claims

27  where individualized proof elements or defenses were central to the case and the non-

28  antitrust claims at issue. *Wal-Mart Stores, Inc. v. Dukes*, 564 U.S. 338, 366–67 (2011)

1    (employment discrimination case; statute allowed employer to put forward employee-

2    specific backpay evidence); *McLaughlin v. Am. Tobacco Co.*, 522 F.3d 215, 222–23

3    (2d Cir. 2008) (RICO claim; individual reliance substantive element). No similar issues

4    apply in antitrust cases, and the common evidence Plaintiffs identify—Pathak's

5    analysis, plus record documents and testimony—is the same each Class member would

6    use individually. That supports, not undermines, certification.

### 2.    **Pathak Reliably Approximates Fixed Costs**

8        Defendants critique Pathak's fixed cost estimates (Opp. 12–14), but that

9    highlights yet another classwide dispute. *Giuliano*, 2015 WL 10890654, at *17 (claim

10   that plaintiff expert's "economic analysis is fundamentally and fatally flawed" does

11   "not support a finding that individual issues predominate"); *In re Online DVD Rental

12   Antitrust Litig.*, 2010 WL 5396064, at *10 (N.D. Cal. Dec. 23, 2010) (plaintiffs "need

13   not demonstrate that their analysis captures all the proper variables and thus reaches

14   the 'right' answer"); *In re Lidoderm Antitrust Litig.*, 2017 WL 679367, at *12, *18

15   (N.D. Cal. Feb. 21, 2017) ("dispute" about "what the appropriate inputs should be" into

16   model and "what the but-for price should have been" do not defeat predominance); *In

17   re Korean Ramen Antitrust Litig.*, 2017 WL 235052, at *13, *16 (N.D. Cal. Jan. 19,

18   2017) (similar; defendants' "criticisms" regarding expert's "underestimated costs"

19   "and the role they play in setting his but-for price" were merits issues).

20       Defendants' arguments are also wrong. They claim ███████████████████

21   ████████████████████████████████████████████████████████████████████

22   ████████████████████████████████████████████████████████████████████

23   ████████████████████████████████[2] Moreover, Defendants mischaracterize the

24   ████████████████████ which: ███████████████████████████████████████



25   ───────────────────────────────────────────────

26   [2]   The ████████████ does not bind Plaintiffs, as they were not parties to it. *Comedy
     Club, Inc. v. Improv W. Assocs.*, 553 F.3d 1277, 1288 (9th Cir. 2009). In addition,

27   Defendants did not produce the ███████████ in discovery, instead waiting to
     sandbag Plaintiffs with it in their Opposition. Defendants then refused to make the

28   ████████████████████████ until November 18, just days before this Reply.

1  ███████████████████████████████████████████████████████

2  ███████████████████████████████████████████████████████

3  ███████████████████████████████████████████████████████

4  ███████████████████████████████████████████████████████

5  ████████████████████████████████████████ Ex. 47 (Arbitration

6  Order) ¶¶90, 95, 107, 343. Real-world results bear out the estimates from ██████████

7  ████████████████████████████████████ LNE quickly became a major

8  ticketing competitor to Ticketmaster before they merged. Pathak ¶173.

9      Defendants also ignore that the █████ **fixed cost** benchmark conservatively

10  overstates Defendants' actual costs, thereby understating impact and damages. Pathak

11  ¶¶180–81; Pathak Reply ¶77. For example, the benchmark includes █████████████

12  ███████████████████████████████████████████████████████

13  ████████████████████████████ Pathak ¶180. Attributing the entire █████ to fixed

14  costs thus overstates the benchmark in Defendants' favor.

15      Similarly, Defendants argue that the cost estimate is "from 2008" and thus

16  "say[s] nothing about costs through 2025." Opp. 13–14. But that ignores that Pathak

17  made the same inflation adjustments as the ████████████ (*increasing* the cost over

18  time). Pathak ¶175; Ex. 45 (Pathak Tr.) at 177:3–177:14. This is yet another

19  conservative adjustment.

20      Even if this were not the case, additional evidence supports using the ████████

21  fixed cost estimate. ███████████████████████████████████

22  ███████████████████████████████████████████████████████

23  ███████████████████ Pathak Reply ¶¶79–80; Ex. 48 (LNE-LIT24-001212592) at -600;

24  Ex. 49 (LNE-LIT24-001215021) at -029–30. Using that cost in Pathak's model shows

25  the same classwide impact and in fact *increases* damages by a slight amount—showing

26  the █████ cost is consistent with ██████████████████████

27  Pathak Reply ¶¶79–80.

28      Defendants, through Johnson's report (Dkt. 489-2, ¶139), rely on a single

document (LNE-LIT24-000418415, describing ███████████████ to argue

████████████████████████████████████ Opp. 13–14. But Johnson

███████████████████████████████████████████████████████████

██████████████████████████████ Ex. 46 (Johnson Tr.) at 246:9–250:21,

253:25–258:15. At most, Defendants have identified a classwide dispute about which

evidence more persuasively details their cost structure, bolstering the case for

certification. *DVD*, 2010 WL 5396064, at *10 (defendants' impact arguments,

"themselves made with reference to generalized proof applicable to the class,"

supported certification).

Defendants' sole citation (Opp. 14), *In re Optical Disk Drive Antitrust Litig.*, is

not to the contrary. There, the expert's analysis "assume[d] the very proposition" it

purported to prove. 303 F.R.D. 311, 321 (N.D. Cal. 2014). Pathak does not "assume"

classwide injury; he developed a quantitative model showing it. Pathak Reply ¶35; *De

Coster*, 2025 WL 2836824, at *16–*17 (rejecting defendant's argument Pathak's

model "assume[s] its conclusion" and explaining model's persuasiveness "not the

question" at certification). The model's findings are corroborated by Pathak's other

analyses of the literature, concert and sport fees, and the lay record. *In re Capacitors

Antitrust Litig. (No. III)*, 2018 WL 5980139, at *8 (N.D. Cal. Nov. 14, 2018) (*ODD*

inapt where, as here, plaintiff relied on "multiple sources of evidence" to show

classwide impact). Furthermore, as Johnson himself admitted, ███████████████

█████████████████████████████████████████████████████████████ Ex.

46 (Johnson Tr.) at 126:17–127:16. If the jury accepts Pathak's admissible model and

its inputs (*e.g.*, the fixed cost estimate), Pathak shows Class members all paid more

than they should have; *i.e.*, they were impacted under Johnson's own ████████████

### 3.    <u>Fee-Related Arguments Are Classwide Merits Disputes</u>

Defendants next make several fee-related arguments to suggest individual issues

predominate. They do not.

*First*, Defendants argue (Opp. 14) "Ticketmaster does not set ticket prices paid

1  by fans"; artists do. But Plaintiffs claim overcharges on *service fees*, not ticket prices

2  (*i.e.*, their face value). Dkt. 1 ¶121; Pathak ¶208.

3  **Second**, as to service fees, Defendants claim that venues, not Ticketmaster, set

4  them, and those fees result from purported individualized factors specific to the venues.

5  Opp. 14. But, as Pathak explains (and the common evidence shows), while ███████

6  ████████████████████████████████████████████████████

7  ████████████████████████████████████████████████████

8  ██████ *E.g.*, Pathak ¶200 n.302 █████████████████████ Ex. 45 (Pathak

9  Tr.) at 130:19–25 ███████████████

10  ██████████████████████████ Pathak Reply ¶¶10; Ex. 40 at -270

11  ████████████████████████████ Ex. 15 at -023

12  ████████████████████████████████████████████████████

13  ██████████████████████████████ Ex. 50 (LNE-LIT24-003376025)

14  ████████████████████████████████████████████████████

15  █████████████████████████ Ex. 51 (LNE2019-CID-0104230) at -231

16  ███████████████████████████████ Ex. 52 (LNE-00445939)

17  ████████████████████████ That anticompetitively inflates the baseline

18  for service fees across the board, regardless of any supposed "variations" from any

19  individual venue's negotiations or goals. Pathak Reply ¶¶10–15. As *Olean* recognized,

20  this suffices for certification. 31 F.4th at 677–78 (rejecting argument "individualized

21  negotiations and different bargaining power" precluded "common proof of injury"

22  because conduct could have "artificially inflated the baseline").

23      In any event, Pathak also accounts for ███████████████████

24  ████████████████████████████ Regarding ████████████ Pathak

25  conservatively assumes they would remain the same in the but-for world and

26  incorporates them into his model using real-world data. Pathak ¶213; Pathak Reply

27  ¶¶12, 18. Regarding ███████████████ Pathak explains his analysis "does not

28  differ" by ████████████ because ████████████████████████████

1    ██████████████████████████████████████████████ Pathak ¶41.

2    His analysis also uses real-world data that already bakes in Defendants' service fees,

3    no matter how they are set. Pathak Reply ¶¶11–12, 15–18.

4        *Third*, Defendants speculate that, in the but-for world, venues might not "pass

5    through" **all** fee reductions to consumers. Opp. 14–15. But this ignores that ***any***

6    reduction in fees shows impact—no matter the pass-through rate. Pathak Reply ¶50;

7    *Olean*, 31 F.4th at 679 (at class certification, "the question is whether each member of

8    the class can rely on" common model "to show antitrust impact of any amount"—

9    "individualized differences among the overcharges imposed on each purchaser may

10    require a court to determine *damages* on an individualized basis ... such a task would

11    not undermine model's ability to provide evidence of common *impact*") (emphases in

12    original). If anything, Defendants' argument relates to the **amount** of damages, not the

13    fact of damages (*i.e.*, impact), as ████████████ Ex. 46 (Johnson Tr.) at 125:14–

14    127:17 ██████████████████████████████████████████████

15    ██████████████████████████████████████████████

16    ██████████████████████

17        Moreover, Defendants at best raise a classwide merits dispute. Pathak's

18    admissible opinion is that venues would pass on savings from reduced Ticketmaster

19    fees to Class members in the but-for world because they would get the same economics

20    as before. So, there is no reason to expect the savings would **not** inure to Class

21    members' benefit. Ex. 45 (Pathak Tr.) at 212:12–216:21. Pathak further explains

22    economic literature and theory supports his opinion, as does the record: ████████

23    ██████████████████████████████████████████ *E.g.*, Pathak Reply

24    ¶¶21, 36–38, 41, 47–49; Ex. 53 (LNE2019-CID-0496338) at -338–39 ████████

25    ██████████████████████████████████████████████

26    ██████ Defendants' opposing views about what venues would do provides no basis to

27    deny certification. *Aftermarket Auto.*, 276 F.R.D. at 373–74 ("opposing expert

28    analyses" of "what the 'but for' world would look like" presented merits dispute);

*Burnett v. Nat'l Ass'n of Realtors*, 2022 WL 1203100, at *15 (W.D. Mo. Apr. 22, 2022) (similar; which expert's "but-for world is accurate" was merits issue).

**Fourth**, Defendants point to nine "case studies" from Johnson that supposedly show "[v]enues ... do not inevitably pass any savings along to fans." Opp. 15–16. But, as Pathak explains, these studies ███████████████████████████████████ ████████████████████████████████████████████████████████████████ Pathak Reply ¶¶40–41. Further, these cherry-picked examples, *see* Ex. 46 (Johnson Tr.) at 267:15–271:12, have little probative value because ███████████ ████████████████████████████████████████████████████████████████ ███████████████████████████████████████████████████████ Pathak Reply ¶¶42–43. Using regression analysis to control for time-varying effects, Pathak shows that service fees ██████████████████████████████████ ████████████████████████████ *Id.* ¶¶44–45. This dispute highlights why certification is appropriate. *De Coster*, 2025 WL 2836824, at *18 ("even when compelling evidence exists that contradict expert testimony, the crucial point is that whether the theory is right or wrong, it is something that can be decided on a class-wide basis") (cleaned up); *In re Optical Disk Drive Antitrust Litig.*, 2016 WL 467444, at *11 (N.D. Cal. Feb. 8, 2016) (similar; defendant's evidence "contradicting" plaintiff expert's opinion that "cost savings are virtually always passed through" was merits issue).[3]

Defendants' cited cases are not to the contrary. Opp. 16. *In re Graphics Processing Units Antitrust Litig.* simply held the plaintiffs' expert could not "simply stat[e] that 'economic theory' dictates that prices for [different categories of class members] generally go up together" without seeing if theory was consistent with actual evidence from the "highly heterogeneous" markets and products in question. 253 F.R.D. 478, 490–91, 496 (N.D. Cal. 2008). Here, Defendants identify no reason to think

---

[3]  Defendants' arguments should also be taken with a grain of salt, since they rely on ████████████████████████████████ that Defendants delayed producing until *after* Plaintiffs' Motion and Pathak's opening report for tactical reasons.

different categories of Class members would have different overcharge results, and Defendants' primary ticketing services are not a "highly heterogeneous" product. In any event, *GPU* ultimately certified a class. 253 F.R.D. at 497–98.

Defendants also cite *Allied Orthopedic Appliances, Inc. v. Tyco Healthcare Grp. L.P.*, but they omit a critical fact that drove denial of certification: the plaintiffs themselves individually negotiated. 247 F.R.D. 156, 173–74 (C.D. Cal. 2007). Here, Class members (*e.g.*, fans) ***do not*** individually negotiate ticketing fees with Defendants, and Pathak accounts for venue variations. Pathak ¶140; Pathak Reply §§II–III.

### 4.    Defendants' "False Positives" Arguments Are Baseless

Defendants ironically cite *Olean* to argue Pathak's model generates "false positives," precluding certification. Opp. 17. The defendants there (through Johnson) leveled similar arguments, which failed because they misunderstood the plaintiffs' expert model. *Olean*, 31 F.4th at 681 n.29. So, too, here.

**Legacy Contracts.** According to Defendants (Opp. 17–18), Plaintiffs contend the anticompetitive conduct began at the start of the Class period in 2010 (after the Ticketmaster-LNE merger) and Pathak's model therefore demonstrates "false positives" because it shows injuries based on pre-Class period ("legacy") Ticketmaster contracts. This argument exhibits mistake after mistake.

Plaintiffs seek ***damages*** back to 2010 because that is the earliest they can do so under the statute of limitations. But it is undisputed that, before then, Ticketmaster engaged in the primary anticompetitive conduct at issue in this case; *i.e.*, locking up venues with exclusive contracts. *E.g.*, Dkt. 1 ¶¶7, 87 (Complaint); Pathak ¶19; Ex. 45 (Pathak Tr.) at 47:23–48:9, 55:17–19 ("so what I have opined on is exclusive contracts and their anticompetitive effects existed before 2010."). Neither Plaintiffs nor Pathak contend the pre-2010 period was unaffected by anticompetitive conduct. Rather, ample evidence shows that Ticketmaster amplified preexisting market power after the merger, meaning the effects of its pre-Class period conduct lingered and then grew, post-2010.

Defendants' attempt to analogize Pathak's model to the one rejected in *In re Rail*

*Freight Fuel Surcharge Antitrust Litig.* is unavailing. *Rail Freight* involved a price-fixing conspiracy to overcharge shippers that began in 2003. 292 F. Supp. 3d 14, 34–35 (D.D.C. 2017). Certain shippers, excluded from the class, were subject to "legacy contracts" and "rates negotiated before any conspiratorial behavior was alleged to have occurred." *Id.* at 59. Yet the plaintiffs' expert "conceded [his model] measured overcharges to legacy shippers and class members alike." *In re Rail Freight Fuel Surcharge Antitrust Litig.-MDL No. 1869*, 725 F.3d 244, 253 (D.C. Cir. 2013).

That is not the case here. Contrary to the expert in *Rail Freight*, Pathak disputes his model shows "false positives." Pathak Reply ¶¶24, 51. But, just as important, Ticketmaster engaged in exclusive dealing before and after the start of the Class period. Dkt. 1 (Complaint) ¶¶52, 57, 81, 87; Mot. 2; Pathak ¶¶171, 174; Pathak Reply ¶¶51–53. Therefore, even the pre-2010 contracts are affected by the anticompetitive conduct, and purchasers that paid fees on those contracts ***during the Class period*** are in the Class. Pathak Reply ¶¶51–58. Moreover, any limitation is to how far back Plaintiffs can seek damages, not whether pre-Class period evidence is relevant. *Sidibe v. Sutter Health*, 103 F.4th 675, 699–703 (9th Cir. 2024) ("evidence of anticompetitive actions before the statute of limitations period" relevant in antitrust cases) (cleaned up).

**<u>Other Contracts</u>**. Defendants also claim Pathak's methodology would improperly find damages if applied to ticket purchases "at venues with non-exclusive contracts," smaller venues outside Plaintiffs' major concert venues market, and on sporting tickets. Opp. 18. But Defendants cite nothing from the record—not even Johnson—for this argument. *Id.* Nor do Defendants argue that the damages results Pathak submitted in this case actually include any of these categories.

Defendants' attorney say-so also misconstrues Pathak's opinions. Pathak explains that Defendants' widespread use of exclusive contracts has "market-wide impacts" by "den[ying] rival" primary ticketers scale, which allows Defendants to impose supracompetitive fees even at (the few) venues that are non-exclusive. Ex. 45 (Pathak Tr.) at 32:11–34:1; Pathak ¶¶143–45, 151; Pathak Reply ¶24. The same logic

holds for smaller venues. Pathak Reply ¶24. And, for sports, Pathak shows Defendants' fees on concert tickets (*i.e.*, what Class members paid) are actually higher than on sporting tickets, underscoring Defendants' concert venue power. Pathak ¶¶187–94.

\*　　　\*　　　\*　　　\*　　　\*

Courts facing similarly ginned-up "false positives" arguments—including by Johnson—reject them. *In re Packaged Seafood Prods. Antitrust Litig.*, 332 F.R.D. 308, 325–26, 328 (S.D. Cal. 2019) (Johnson offered "false positives" critique, plaintiffs' expert disagreed, and "determining which expert is correct" was merit issue); *De Coster*, 2025 WL 2836824, at \*16–\*17 ("false positives" critique of Pathak was merits issue). This Court should do the same.

### 5.    Pathak's Additional Analyses Confirm Classwide Impact

Defendants quibble with Pathak's additional impact analyses, Opp. 19–20, but ignore that these analyses "are all reinforcing each other" and that predominance requires a holistic approach. Ex. 45 (Pathak Tr.) at 117:15–118:17; *Capacitors*, 2018 WL 5980139, at \*5–\*8 (looking collectively to "multiple sources of evidence" to assess impact). In any case, Defendants' critiques fail.

***First***, Defendants incorrectly assert Pathak's analysis of the economic literature is "inadequate" because most of it is "decades old, and none of it specific to Defendants or this case[.]" Opp. 19. That is wrong: Pathak cites recent economic and competition authorities, as well as literature ***directly addressing exclusive dealing by Ticketmaster***. *E.g.*, Pathak ¶¶145 n.237, 153 n.248, 157 n.257; Pathak Reply ¶¶71–72. Moreover, Defendants offer no competing literature review, and Johnson himself has written that using "textbook models" such as these "to shed light on a specific question of interest" is "a perfectly acceptable scientific practice." Ex. 43 at 4 ("Frictions and Sticking Points" Article). Courts regularly find predominance regarding impact where, as here, economic literature corroborates the expert's analyses. *Nat'l ATM Council, Inc. v. Visa Inc.*, 2021 WL 4099451, at \*6 (D.D.C. Aug. 4, 2021) ("significant academic literature ... in support of" plaintiffs' claims favors predominance regarding impact); *Lidoderm*,

1  2017 WL 679367, at *10 (N.D. Cal. Feb. 21, 2017) (similar).

2      **Second**, Defendants attack Pathak's sports regression, citing his
3  acknowledgement that it "does not eliminate the possibility" that sporting fees are
4  generally less than concert fees for reasons unrelated to Defendants' conduct. Opp. 19.
5  But this overlooks that the regression simply acts as a robustness check on Pathak's
6  cost-based methodology, which corroborates his other analyses. Ex. 45 (Pathak Tr.) at
7  148:11–150:10; Pathak Reply ¶¶67–70. Pathak's decision to perform a regression to
8  confirm his results enhances, rather than undermines, his opinions.

9      Further, contrary to Defendants' assertions, an expert need not "rule out" all
10  other possibilities to plausibly show classwide impact. *In re Pork Antitrust Litig*., 2024
11  WL 2060386, at *11, *24–*25 (D. Minn. May 8, 2024) (granting certification; rejecting
12  similar critique of expert as irrelevant to predominance). While Defendants offer
13  competing reasons why sports fees might be lower than concert fees (Opp. 19 n.8),
14  whether Pathak's admissible sports regression proves concert fees are artificially
15  inflated is a classwide merits dispute. *De Coster*, 2025 WL 2836824, at *16–*17
16  ("[w]hether Dr. Pathak's opinion is ultimately persuasive is not the question" at
17  certification);*AftermarketAuto*, 276 F.R.D. at 373–74 (same as to expert's regression).

18      Defendants' citation (Opp. 19) to *Blue Cross & Blue Shield United of Wisconsin*
19  *v. Marshfield Clinic* is not to the contrary. It found, **after trial**, that an expert's study
20  could not sustain a jury finding where it "fail[ed] to correct for salient factors[.]" 152
21  F.3d 588, 592–93 (7th Cir. 1998). This is not trial, and Pathak's regression controls for
22  various "venue-year factors that could affect pricing[.]" Pathak ¶189–90.

23      **Third**, Defendants critique Pathak's analysis showing that Defendants' net
24  service fees and aggregate profit margins have increased over time, arguing he
25  supposedly does not address why Defendants' "fees and margins" have "gone up."
26  Opp. 20. But Defendants ignore his explanation (Pathak ¶184), which is that this
27  analysis reinforces his other analyses explaining that Defendants' **conduct** allowed
28  them to increase fees and profits. Pathak ¶¶142–170. Pathak also considers and rejects

Defendants' critiques of his analysis of net service fees and profits. Pathak Reply ¶¶59–66. While Defendants challenge this analysis' persuasiveness, that is a classwide merits dispute. *Olean*, 31 F.4th at 672 n.16; *De Coster*, 2025 WL 2836824, at *16–*17.

**Fourth**, Defendants complain that Pathak "ignores contrary documents" and "misinterprets" the ones he relies on. Opp. 20. That is not true, but even if it were, it provides no basis to deny certification. *In re Capacitors Antitrust Litig.*, 2020 WL 870927, at *2 (N.D. Cal. Feb. 21, 2020) (arguments expert "ignored 'undisputed marketplace facts'" did not defeat certification); *De Coster*, 2025 WL 2836284, at *18 (whether "compelling evidence exists that contradict[s] expert testimony" merits, not class, issue) (cleaned up); *ODD*, 2016 WL 467444, at *11 (similar). Moreover, far from showing that Pathak "misinterprets" anything, the few "explanations" Defendants offer (*e.g.*, Johnson ¶¶108–13) provide only a defensive and different interpretation. Disputes of fact do not defeat certification. In Defendants' sole citation, *Tyco*, the expert repeatedly ignored "equally reliable predictions and conclusions found in the very same internal documents" on which he relied, which were pertinent "given the Plaintiffs' theory in this case." 247 F.R.D. at 173–74. Here, ***Defendants*** ignore much of Pathak's support and try to explain it away.

## C.    Defendants' Liability Arguments Present Classwide Merits Disputes

Ignoring the weight of authority confirming that liability questions typically predominate in antitrust cases (Mot. 12–14), Defendants challenge market definition and Plaintiffs' conduct theories. Opp. §IV.A.2. Defendants' arguments fail.

### 1.    Geographic Market Definition

Defendants dispute the geographic scope of Plaintiffs' primary ticketing services market, contending it should be regional, not national. Opp. 21–23. Tellingly, Defendants never say this actually matters, *i.e.*, that Defendants lack market power in particular regions or that this would mean Pathak's overcharge analysis is incorrect. Indeed, Johnson ***offers no affirmative opinion on geographic market definition***. Ex. 46 (Johnson Tr.) at 24:9–17, 29:22–30:17. And even if he did, this is a common,

classwide question because the jury's determination either way resolves the issue classwide. *In re Mushroom Direct Purchaser Antitrust Litig.*, 319 F.R.D. 158, 196–97 (E.D. Pa. 2016) (certifying class; rejecting Johnson's critique markets were regional, not national, as classwide merits dispute); *De Coster*, 2025 WL 2836824, at *21 (dispute about Pathak's market definition was merits, not class, issue).

In any event, Defendants' arguments are again misguided. Plaintiffs' proffered market is for primary ticketing ***services***; not tickets. Pathak ¶82, 85–94. As Pathak explains, "ticket service provision is a national product" and "the product itself really has no big geographic component." Ex. 45 (Pathak Tr.) at 99:1–16. Accordingly, Defendants' assertion about fans' willingness to travel to concerts is a red herring, and their cases are inapposite since none address ***ticketing services***. *In re Live Concert Antitrust Litig.*, 863 F. Supp. 2d 966, 987 (C.D. Cal. 2012) (live rock music concerts market; *Daubert* motion, not certification); *It's My Party, Inc. v. Live Nation, Inc.*, 811 F.3d 676, 682 (4th Cir. 2016) (concert promotion market; summary judgment, not certification); *Heerwagen v. Clear Channel Commc'ns*, 435 F.3d 219, 228 (2d Cir. 2006) (rock concert tickets); *Ticketmaster L.L.C. v. RMG Techs., Inc.*, 536 F. Supp. 2d 1191 (C.D. Cal. 2008) (resale tickets market; motion to dismiss, not certification); *Funeral Consumers All., Inc. v. Serv. Corp. Int'l*, 695 F.3d 330, 348–50 (5th Cir. 2012) (funeral caskets).

## 2.    Tying and Coercion

Defendants next assert that their tying and coercion raise individual issues because whether "Defendants coerced venues into using Ticketmaster" is a "separate question" for "each venue[.]" Opp. 23–26. This mischaracterizes Plaintiffs' claims and ignores on-point precedent.

***First***, Defendants' tying and coercion are simply a "stick" to obtain some exclusive deals. Pathak Reply ¶8. Exclusive dealing, however, raises fees for all Class members, ***regardless*** of why the venue entered the exclusive deal. Pathak ¶¶96, 143-145; Ex. 17 at -273. Thus, Plaintiffs' common impact showing (which proceeds from

the effects Defendants' exclusive deals caused) does not depend on any supposed "individual" issues regarding tying and coercion. Further, Pathak's model accounts for any such variation anyway (Pathak Reply §§II–III), meaning the Court can resolve Plaintiffs' claims by reference to common evidence. *De Coster*, 2025 WL 2836824, at *7–*10 (common evidence, including Pathak's analysis, established predominance regarding antitrust violation).

**Second**, Defendants wrongly suggest courts cannot certify antitrust tying and coercion claims for class action treatment. Opp. 23–25. In doing so, they ignore Plaintiffs' contrary citations. *See* Mot. 13–14; *In re da Vinci Surgical Robot Antitrust Litig.*, 2025 WL 964879, at *7–*10 (N.D. Cal. Mar. 31, 2025) (common questions predominated regarding tying, rejecting expert-driven attack as "merits question"); *Le v. Zuffa, LLC*, 2023 WL 5085064, at *23–*25 (D. Nev. Aug. 9, 2023) (granting certification; defendants' "coercive tactics" and "threats" were common issues).[4]

Defendants' few citations are distinguishable. Opp. 23. They generally involve situations where the ***plaintiff class member*** was coerced into a tying arrangement. *Lah v. Shell Oil Co.*, 50 F.R.D. 198, 199–200 (S.D. Ohio 1970) (gas stations challenged their tying contracts with Shell); *Cash v. Arctic Circle, Inc.*, 85 F.R.D. 618, 619–20 (E.D. Wash. 1979) (franchisees challenged their tying contracts with defendant); Wright & Miller, 7A Fed. Prac. & Proc. Civ. §1781 n.31 (3d ed.) (all plaintiffs directly subject to tie; in such cases need to look to "contract entered into with each class member"); 5 Moore's Federal Practice—Civil §23.45 (5)(c)(ii) (2025) (similar; no case from this century).

That distinction is critical: where plaintiff class members claim damages because

---

[4] Many other cases certify tying claims for class action treatment. *See, e.g.*, *In re Cox Enters., Inc. Set-Top Cable Television Box Antitrust Litig.*, 2011 WL 6826813, at *8 (W.D. Okla. Dec. 28, 2011); *George Lussier Enters., Inc. v. Subaru of New England, Inc.*, 2001 WL 920060, at *15–*17 (D.N.H. Aug. 3, 2001); *Martino v. McDonald's Sys., Inc.*, 81 F.R.D. 81, 89 (N.D. Ill. 1979); *Milonas v. Amerada Hess Corp.*, 1976 WL 1312, at *4 (S.D.N.Y. Aug. 19, 1976).

they were **themselves** subject to a tie, individualized inquiry might be necessary to determine commonality (*e.g.*, whether a class member was actually injured and/or actually forced into a tie). Here, Plaintiffs (*e.g.*, fans) do not claim **they** were subject to tying or coercion; they contend tying of venues was one strategy Defendants used to facilitate market-wide exclusive dealing. Whether Defendants tied or coerced specific venues does not differ by Class member, nor does that affect whether fans suffered overcharges due to Defendants' market-wide web of exclusive deals (some, but not all, of which were obtained by tying/coercion).

**Third**, Defendants' argument (Opp. 23) that ticketing agreements are not uniform leads nowhere. Opp. 23. As detailed above, Pathak's model specifically accounts for differences in ticketing agreements and measures their market-wide and individual impacts, regardless of how Ticketmaster obtained them.

**Finally**, the "evidence" Defendants say they would invoke to defend against tying and coercion (Opp. 24–25, n.11) **might** address the "why" behind certain venues' reason to enter exclusive deals—**but they are still exclusive deals** (and thus actionable). Further, Defendants' non-antitrust authorities about "coercion" and "consent" are inapposite because they address cases where a key question (not pertinent here) was whether each class member was coerced. *Hale v. Brinker Int'l*, 765 F. Supp. 3d 904, 907, 915–18 (N.D. Cal. 2025) (wage-and-hour case; individual evidence required to determine whether employer "coerced" each class member not to take breaks); *In re Google RTB Consumer Priv. Litig.*, 2024 WL 2242690, at *11–14 (N.D. Cal. Apr. 4, 2024) (individual proof required to determine whether each class member consented to at-issue data practices where consent was affirmative defense to state law claims).

### 3.     Exclusive Dealing

Defendants' exclusive dealing arguments fare no better. Opp. 25–26. Cases Plaintiffs cited (Mot. 13), but which Defendants do not address, show that exclusive deals' foreclosure effect is a predominating common question. *da Vinci*, 2025 WL 964879, at *7–8; *In re EpiPen (Epinephrine Injection, USP) Mktg., Sales Pracs. &*

*Antitrust Litig.*, 2020 WL 1180550, at \*51–52 (D. Kan. Mar. 10, 2020). And, contrary to Defendants' assertion, "supposed pro-competitive effects [of an anticompetitive practice] do not provide an impediment to certification" because their "existence or non-existence" is "a common issue for the class to litigate." *In re Elec. Books Antitrust Litig.*, 2014 WL 1282293, at \*16 (S.D.N.Y. Mar. 28, 2014).

Despite these and other authorities certifying classes in exclusive dealing cases, Defendants argue individualized issues stem from the specifics of individual contracts, venues, geographies, and time. But whether Defendants engaged in widespread exclusive dealing does not differ by Class member. Nor, as Pathak explains, do the exclusive deals' effects vary by Class member. Pathak Reply ¶¶8, 15, 24. That Defendants disagree with this theory—and hope to claim that isolated deals are procompetitive—presents a classwide merits issue resolved with common evidence. *da Vinci*, 2025 WL 964879, at \*7–\*8, \*11 (certifying class in exclusive dealing case).

Defendants' citations do not say otherwise. *Ticketmaster Corp. v. Tickets.com, Inc.* is a 20-year-old, non-class action decision predating Defendants' merger by years that does not address recent evidence or current economic thinking on exclusive dealing. 2003 WL 21397701, at \*5 (C.D. Cal. Mar. 7, 2003). Defendants' other cases do not address predominance. *Allied Orthopedic Appliances Inc. v. Tyco Health Care Grp. LP*, 592 F.3d 991, 996 (9th Cir. 2010) (summary judgment); *Fed. Trade Comm'n v. Qualcomm Inc.*, 969 F.3d 974, 982 (9th Cir. 2020) (bench trial); *United States v. Google LLC*, 687 F. Supp. 3d 48, 55 (D.D.C. 2023) (summary judgment); *Eastman v. Quest Diagnostics Inc.*, 724 F. App'x 556, 557 (9th Cir. 2018) (motion to dismiss).

### D.    Defendants' Damages Arguments Do Not Defeat Class Certification

Defendants claim individual damages issues predominate, but "damage calculations alone cannot defeat certification." *Vaquero v. Ashley Furniture Indus., Inc.*, 824 F.3d 1150, 1155 (9th Cir. 2016); *Olean*, 31 F.4th at 681–82 (similar).[5] Indeed,

---

[5]  The 22-year-old case Defendants cite is from outside the Ninth Circuit and involved a situation where, unlike here, a classwide formula could not reasonably approximate

the Ninth Circuit recently affirmed certification where the plaintiff merely offered a
"proposed," "unexecuted" damages model. *Noohi*, 146 F.4th at 863; *Lytle*, 114 F.4th
at 1029. Here, Pathak offers far more than that: he shows how his model can calculate
both classwide damages (alone sufficient for certification) ***and*** individual damages for
each Class member. Defendants' attacks on that model are premature and incorrect
merits arguments that do not outweigh common issues.

### 1.     The Model Is Not Speculative

Defendants repeat their impact arguments and assert Plaintiffs' model "piles
speculation atop speculation[.]" Opp. 26–27. As shown above, this is wrong; Pathak's
model rests on real-world cost evidence and well-established economic theory. Courts
routinely certify classes based on similar models. Mot. 18.

Regardless, Defendants' critique that Plaintiffs' model is speculative is poorly
taken, given that "we can't know exactly what would have happened in th[e] but-for
world," since Defendants' conduct prevented it from existing. *In re Glumetza Antitrust
Litig.*, 336 F.R.D. 468, 479–80 (N.D. Cal. 2020) (granting certification). That is why,
in antitrust cases, damages "calculations need not be exact," plaintiffs are "afford[ed]
relatively broad leeway," and "[e]stimates are … the only way to replay the film
without the violation." *Id.* (cleaned up). Indeed, Johnson has confirmed the same in his
writing. Ex. 44 (Johnson on Antitrust Damages) at 2, 6 (recognizing "imprecision of
antitrust damages" and plaintiffs are afforded "leeway"). Defendants cite no opinion
holding otherwise in the certification context, instead relying on *Dominguez v. UAL
Corp.*, a summary judgment decision about Article III standing. 666 F.3d 1359, 1360–
61 (D.C. Cir. 2012). Moreover, the persuasiveness of an expert's damages model is not
resolvable at certification. *In re Univ. of S. Cal. Tuition & Fees COVID-19 Refund
Litig.*, 695 F. Supp. 3d 1128, 1159 (C.D. Cal. 2023).

---

damages. *Bell Atl. Corp. v. AT&T Corp.*, 339 F.3d 294, 306–07 (5th Cir. 2003).

## 2. The Model Accounts for Real-World Variation, and Defendants' "Below Cost" Fee Arguments Lack Merit

Defendants next assert Pathak's model: (1) results in service fees below Defendants' costs at some venues in some years (supposedly █████████); and (2) does not account for real-world variation among fees by venue and concert. Opp. 27–31. As noted above, the latter argument is just wrong. *Supra* at §II.B.

As for the former, Pathak considered and rejected it. Defendants (like many companies) lose money on some sales, which is economically rational when the business is profitable overall; *e.g.*, ***over the life of a venue contract***. That is exactly the case for Defendants' primary ticketing business. Pathak Reply ¶¶86–88, 93. Because Defendants' conduct inflated service fees on ***all*** Class members' tickets in the actual world, this just means that fees on "below cost" tickets would be even ***lower*** in the but-for world. *Id*. Thus, even "below cost" purchasers were overcharged. *Id*. Moreover, Defendants' argument that Pathak's "damages model" would require "below actual cost sales" is a classwide merits dispute. *Korean Ramen*, 2017 WL 235052, at *16–*17 (defendants' argument that damages model yielded "multiple years of below actual cost sales" was merits, not class, issue).

In any event, Johnson inflates his ████ "below cost" figure because he uses Pathak's benchmark for that analysis, but the benchmark ***overestimates*** costs (to Defendants' benefit). Accordingly, the rate of purportedly "below cost" tickets in the but-for world is less than ████ Pathak Reply ¶89.

Indeed, this is further proven by two egregious errors in Johnson's analysis, including that he: (1) focuses on single years of multi-year contracts; and (2) determines "profitability" by only looking at base service fees for concerts, while ignoring Ticketmaster's many other fees. Focusing on one year of a multi-year contract ignores that Ticketmaster often loses money in the first year, but makes it back (in spades) in subsequent years. Pathak Reply ¶90. And focusing only on base service fees, while ignoring multiple other fees, incorrectly suggests that hugely profitable contracts

1  are, in fact, unprofitable. Pathak Reply ¶¶90–91. Fixing Johnson's errors shows

2  Ticketmaster lost money on only ███ of concert tickets in the actual world, which

3  would increase just ███ in the but-for world. *Id.* ¶92.

4       Accordingly, any increase in below-cost-tickets in the but-for world is *de*

5  *minimis*, not an impediment to certification. Pathak Reply ¶¶92–93; *Olean*, 31 F.4th at

6  669 (alleged presence of even "more than a de minimis" number of undamaged sales

7  does not bar certification). And Johnson's errors confirm why courts reject such

8  arguments based on a "reconfiguration" of a plaintiff's model—they are fraught with

9  credibility problems only a fact-finder should resolve. *Nat'l ATM Council, Inc. v. Visa*

10 *Inc.,* 2023 WL 4743013, at *11 (D.C. Cir. July 25, 2023); *In re Ethylene Propylene*

11 *Diene Monomer (EPDM) Antitrust Litig.*, 256 F.R.D. 82, 100 (D. Conn. 2009).

12      Defendants' citations are off-base. Opp. 31. *El Aguila Food Prods., Inc. v.*

13 *Gruma Corp.*, excluded an expert under *Daubert during trial*. 301 F. Supp. 2d 612,

14 626, 633 (S.D. Tex. 2003). Here, Defendants filed no *Daubert*, and this is not trial.

15 *Piggly Wiggly Clarksville, Inc. v. Interstate Brands Corp.*, denied certification because

16 the expert "did *not* offer" a damages formula "but merely opined that one could be

17 found." 100 F. App'x 296, 299–300 (5th Cir. 2004). Pathak offered a model and ran it.[6]

18            **3.    _Comcast_ Is Irrelevant**

19      Defendants make a halfhearted argument (Opp. 31–32) that *Comcast Corp. v.*

20 *Behrend*, 569 U.S. 27, 35 (2013), bars certification because Pathak's damages model

21 does not "disaggregate the effects of Plaintiffs' three conduct theories." *Comcast* does

22 not apply here. In *Comcast*, the plaintiffs asserted four *different* impact theories, but

23 only one survived and the model could not disaggregate damages between them. *Id.* at

24 35–37. Here, the exclusive dealing, tying, and coercion are *not* distinct theories that

25 produce separate damages. Rather, exclusive dealing is the "anchor," and tying and

26

27 ──────────

[6]  *Piggly Wiggly* is also two decades old and conflicts with Ninth Circuit law holding

28 that neither individual damages issues nor an expert not running a damages model
   defeat predominance. *Vaquero*, 824 F.3d at 1155; *Noohi*, 146 F.4th at 863–64.

coercion reinforce the exclusive dealing. Ex. 45 (Pathak Tr.) at 34:3–35:11, 61:13–66:3. So, while Defendants' tying and coercion facilitate exclusive deals (by forcing some venues into the deals), the exclusive dealing is the end result and the basis for Pathak's impact and damages opinions. Pathak Reply ¶8. *Moehrl v. Nat'l Ass'n of Realtors*, 2023 WL 2683199, at *20 (N.D. Ill. Mar. 29, 2023) (certifying class; "[n]o *Comcast* problem" where plaintiffs "have only a single theory of impact"); *In re Suboxone (Buprenorphine Hydrochloride & Nalaxone) Antitrust Litig.*, 421 F. Supp. 3d 12, 35–39 & n.5 (E.D. Pa. 2019) (similar; "expert need not segregate and attribute a fixed amount of damages to any one act").

### E. Defendant's Additional Predominance, Typicality, and Adequacy Arguments All Fail

Defendants also raise supposed individualized issues regarding the statute of limitations and arbitration. Opp. §IV.B. These arguments fail.

#### 1. Statute of Limitations Is A Common Question, and It Affects Only A Portion of Plaintiffs' Damages Claims Anyway

Defendants' assertion that limitations issues bar certification is undone by their own authority. Opp. 32. *Waste Mgmt. Holdings, Inc. v. Mowbray* **affirmed the grant of certification** over similar arguments because "[a]s long as a sufficient constellation of common issues binds class members together," limitations issues "will not automatically foreclose class certification." 208 F.3d 288, 296 (1st Cir. 2000). Ninth Circuit authority is in accord. *Williams v. Sinclair*, 529 F.2d 1383, 1388 (9th Cir. 1975) ("existence of a statute of limitations issue does not" defeat predominance given "a sufficient nucleus of common questions"). Indeed, across Circuits, the "weight of authority is firmly on Plaintiffs' side," and courts frequently hold that fraudulent concealment issues are common and hinge on classwide evidence. *City of Phila. v. Bank of Am. Corp.*, 2023 WL 6160534, at *13 (S.D.N.Y. Sept. 21, 2023), *aff'd*, 2025 WL 2180607 (2d Cir. Aug. 1, 2025) (collecting cases). Even if there were some individual limitations issues, they do not negate the many other common issues, present

only merits questions, affect only part of the Class period, and "can be adjudicated in a later phase." *In re TFT-LCD (Flat Panel) Antitrust Litig.*, 267 F.R.D. 291, 310 (N.D. Cal. 2010); *In re Linerboard Antitrust Litig.*, 305 F.3d 145, 163 (3d Cir. 2002) (similar).

Here, Plaintiffs allege Defendants fraudulently concealed the extent of their anticompetitive conduct from the market. Dkt. 1 ¶¶124–30. Defendants try to distinguish case law showing that fraudulent concealment is an inherently common issue by arguing that one case Plaintiffs cited (*TFT-LCD*) is about price-fixing and, unlike monopolization, price-fixing cases are supposedly just about "one" anticompetitive act. That ignores price-fixing, by its very nature (and just like here), involves fraudulent concealment of multiple acts over a period of time. Defendants' "best" limitations argument therefore fails under its own logic.

Defendants' citations do not help them. *Lucas v. Breg, Inc.* involved fraud-based claims regarding defective products, which were completely time-barred absent tolling, and substantive liability turned on class members' understandings of the defendant's "instructions and warnings," which "periodically changed" over a 24-year period. 212 F. Supp. 3d 950, 971 (S.D. Cal. 2016). *In re Kia Hyundai Vehicle Theft Litig.*, involved insurers' subrogation claims; the court struck class allegations because they did not dispute the statute of limitations raised some individual issues. 2024 WL 2104571, at *3–*4, *7 (C.D. Cal. Apr. 22, 2024). These cases differ materially from an antitrust case alleging market-wide, common concealment of conduct with widespread anticompetitive effects.

### 2. Defendants' Arbitration Arguments Also Do Not Preclude Certification

Defendants' final argument (Opp. 33) is that Plaintiffs are atypical and inadequate because (according to Defendants) some Class members did not agree to the New Era terms when they were operative. Defendants' argument ignores the text of Ticketmaster's arbitration agreements and this Court's decision denying their prior motion to compel arbitration, but also is no actual impediment to certification.

For as long as the Ticketmaster Terms have contained an arbitration clause, those same Terms have expressly stated that, when a user creates an account, they agree to be bound by future updates to the Terms as soon as the updates are posted on the Ticketmaster website. *Van Iderstine v. Live Nation Entertainment, Inc.*, Case No. 2:20-cv-03888, Dkt. 26-44 (2011 Terms), Dkt. 26-43 (2013 Terms), Dkts. 26-42, 26-41, 26-40, 26-39 (2014, 2015, 2016, and 2017 Terms); *Heckman*, Dkts. 31-31, 31-32, 31-33, 31-34, 31-35 (2018 to 2021 Terms). This Court observed the same in denying Live Nation's motion to compel. Dkt. 202 at 13 ("Defendants in their TOU reserve[d] the right to 'make changes to the Terms at any time,' which will become 'effective immediately' and will apply to any dispute irrespective of when it arose.").

After imposing a set of unconscionable Terms that overwrote prior versions according to the Terms' own language, Defendants cannot now pretend those prior versions of the Terms spring back to life just because Defendants believe they are an obstacle to class certification. Rather, as this Court held, the proper remedy for the unconscionability of the 2021 Terms was to eliminate the arbitration requirement entirely. Dkt. 202 29 (finding "unconscionability permeates the arbitration clause and declin[ing] to sever the offending provisions"). Defendants are thus simply wrong that there are any Class members who are subject to the prior versions of the Terms.

But the question of remaining arbitrability is ultimately irrelevant right now because, even if there were some members of the Class still subject to arbitration, that would not preclude class certification. First, "a named plaintiff is not rendered inadequate" or atypical "merely because he or she is not subject to every affirmative defense that a defendant may assert against particular absent class members." *Nitsch v. Dreamworks Animation SKG Inc.*, 315 F.R.D. 270, 284–85 (N.D. Cal. 2016) (Koh, J.) (rejecting similar adequacy and typicality challenges based on arbitration clauses). Moreover, as many courts have observed, "whether an absent class member is bound by [an] arbitration clause is a question that can be dealt with on a class-wide basis." *Ehret v. Uber Techs., Inc.*, 148 F. Supp. 3d 884, 902 (N.D. Cal. 2015); *accord Herrera*

1    *v. LCS Fin. Servs. Corp.*, 274 F.R.D. 666, 681 (N.D. Cal. 2011); *Miller v. Travel Guard*
2    *Grp., Inc.*, 2023 WL 7106479, at *18 (N.D. Cal. Sept. 15, 2023). Similarly, even if the
3    Court were to eventually determine that some Class members are subject to arbitration,
4    they could be excluded from the class definition. *Freitas v. Cricket Wireless, LLC*, 2022
5    WL 1082014, at *9–10 (N.D. Cal. Apr. 11, 2022) (excluding members of class subject
6    to arbitration agreement after class was successfully certified). Defendants confirm this
7    by claiming they can supposedly identify such individuals. Opp. 33.

8        Nor do Defendants' own citations support denying certification. In *Avilez v.*
9    *Pinkerton Gov't Servs.*, 596 F. App'x 579 (9th Cir. 2015), the Ninth Circuit (in a non-
10   precedential opinion) held only that the district court had to enter "a revised class
11   certification order" to account for class members subject to an arbitration agreement.
12   *Id.* at 579. *Boumaiz v. Charter Commc'ns* held that "***to the extent***" some class members
13   were subject to arbitration agreements, the class representative was not typical of them.
14   2021 WL 2189481, at *6–*7 (C.D. Cal. May 19, 2021). In *Berman v. Freedom Fin.*
15   *Network*, 400 F. Supp. 3d 964 (N.D. Cal. 2019), the court denied certification ***without***
16   ***prejudice*** so the class representatives could redefine the class to exclude members that
17   were unquestionably subject to arbitration. *Id.* at 987–88. And, *O'Connor v. Uber*
18   *Techs., Inc.*, simply reversed certification after finding the district court erroneously
19   denied arbitration. 904 F.3d 1087, 1094–95 (9th Cir. 2018). Accordingly, to the extent
20   the Court concludes some members of the Class are subject to arbitration, the Court
21   can simply remove those individuals from the Class.

22   **III.    CONCLUSION**

23       For these reasons, Plaintiffs' Motion should be granted.

24

25

26

27

28

1    Dated:  November 21, 2025         Respectfully submitted,

2

3                         By    */s/ Kevin Y. Teruya*

4                                 QUINN EMANUEL URQUHART & SULLIVAN, LLP

5                                 Kevin Y. Teruya (Bar No. 235916)
                                  kevinteruya@quinnemanuel.com

6                                 Adam B. Wolfson (Bar No. 262125)
                                  adamwolfson@quinnemanuel.com

7                                 William R. Sears (Bar No. 330888)
                                  willsears@quinnemanuel.com

8                                 Jennifer D. English (Bar No. 273772)
                                  jenniferenglish@quinnemanuel.com

9                                 Brantley I. Pepperman (Bar No. 322057)
                                  brantleypepperman@quinnemanuel.com

10                               865 South Figueroa Street, 10th Floor
                              Los Angeles, California 90017-2543

11                               Telephone:  (213) 443-3000
                              Facsimile:   (213) 443-3100

12                               KELLER POSTMAN LLC

13                               Warren D. Postman (Bar No. 330869)
                              wdp@kellerpostman.com

14                               Jessica B. Beringer (*pro hac vice*)
                                Jessica.beringer@kellerpostman.com

15                               Alexios J. Dravillas (*pro hac vice*)
                                ajd@kellerpostman.com

16                               1101 Connecticut Avenue, N.W., Ste. 1100
                              Washington, D.C. 20036

17                               Telephone:  (202) 918-1123

18                               *Interim Co-Lead Class Counsel*

19

20

21

22

23

24

25

26

27

28

PLAINTIFFS' REPLY ISO MOTION FOR CLASS CERTIFICATION [REDACTED]

1

## **SIGNATURE ATTESTATION**

I am the ECF user whose identification and password are being used to file the foregoing document. Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, Kevin Y. Teruya, attest that I have obtained concurrence in the filing of this document from each of the attorneys identified on the caption page and in the above signature block.

Dated: November 21, 2025

*/s/  Kevin Y. Teruya*

Kevin Y. Teruya

1

## **CERTIFICATE OF COMPLIANCE**

The undersigned, counsel of record for Plaintiffs Luis Ponce, Jeanene Popp, and Jacob Roberts, on behalf of themselves and all those similarly situated, certifies that this brief contains 9,955 words and complies with the word limit of L.R. 11-6.1 as modified by the Court's October 30, 2025 Order granting Plaintiffs up to 10,000 words for Plaintiffs' Reply.

Dated: November 21, 2025

_/s/ Kevin Y. Teruya_

Kevin Y. Teruya