UNITED STATES DISTRICT COURT
CENTRAL DISTRICT OF CALIFORNIA

**CIVIL MINUTES - GENERAL**

| Case No. | CV 22-0047-GW-DSRx | Date | April 10, 2026 |
|---|---|---|---|
| Title | *Jeanene Popp, et al. v. Live Nation Entertainment, Inc., et al.* | | |

Present: The Honorable    GEORGE H. WU, UNITED STATES DISTRICT JUDGE

| Javier Gonzalez | None Present | |
|---|---|---|
| Deputy Clerk | Court Reporter / Recorder | Tape No. |

Attorneys Present for Plaintiffs:              Attorneys Present for Defendants:

None Present                                              None Present

**PROCEEDINGS:    IN CHAMBERS - TENTATIVE RULING ON PLAINTIFFS' MOTION FOR APPROVAL OF CLASS NOTICE PLAN [555]**

Attached hereto is the Court's Tentative Ruling on Plaintiffs' Motion [555] set for hearing on April 13, 2026 at 8:30 a.m.

                                                                                                    :

                                                Initials of Preparer    JG

***Jeanene Popp, Luis Ponce, and Jacob Roberts et al v. Live Nation Entertainment, Inc. et al***,
Case No. 2:22-cv-00047-GW-(GJSx); Tentative Ruling on Motion for Approval of Class Notice Plan

## I.    **Background**

On January 4, 2022, plaintiffs Skot Heckman,[1] Luis Ponce, Jeanene Popp, and Jacob Roberts (collectively, "Plaintiffs") brought this putative antitrust class action against Defendants Live Nation Entertainment, Inc. ("Live Nation") and Ticketmaster LLC ("Ticketmaster") (collectively, "Defendants"), alleging various anticompetitive practices in violation of Sections 1 and 2 of the Sherman Act, 15 U.S.C. §§ 1, 2.  *See generally* Complaint, Docket No. 1.

On March 8, 2022, Defendants moved to compel arbitration based upon an arbitration agreement contained in their terms of use.  *See* Docket No. 30.  The Court granted Plaintiffs' request to conduct limited discovery related to the validity, unconscionability, and severability of the dispute-resolution provisions in the terms of use.  *See* Docket No. 50.  On August 10, 2023, the Court denied Defendants' motion to compel arbitration, finding the arbitration agreement both procedurally and substantively unconscionable which thereby made it unenforceable.  *See Heckman v. Live Nation Ent., Inc.*, 686 F. Supp. 3d 939, 969 (C.D. Cal. 2023).  On September 8, 2023, Defendants appealed that order to the Ninth Circuit.  *See* Docket No. 212.  The same day, Defendants moved to stay the case pending resolution of the appeal on arbitrability as mandated by *Coinbase, Inc. v. Bielski*, 599 U.S. 736, 738 (2023), *see* Docket No. 213, which the Court granted, *see* Docket No. 229.  On October 28, 2024, the Ninth Circuit issued a published opinion affirming this Court's ruling.  *See Heckman v. Live Nation Ent., Inc.*, 120 F.4th 670, 690 (9th Cir. 2024).  Defendants then petitioned for a rehearing and for a rehearing en banc, which the Ninth Circuit denied and then issued a final mandate.

With a decision on Defendants' interlocutory appeal rendered, this Court lifted the stay on December 9, 2024 and ordered the parties to file a joint report addressing future proceedings in this litigation.  *See* Docket No. 262.  In the status report, Defendants argued that the Court should stay the case due to a similar antitrust action brought by the United States Department of Justice ("DOJ") and Attorneys General from thirty-nine states and the District of Columbia against

---

[1] On February 9, 2026, the parties stipulated to the dismissal of plaintiff Skot Heckman as a named plaintiff and representative in this action.  *See* Docket No. 550.

1

Defendants in the United States District Court for the Southern District of New York (the "Public Enforcer Action"). *See* Docket No. 269; *United States et al v. Live Nation Ent., Inc. et al*, Case No. 1:24-cv-03973-AS (S.D.N.Y.). The Court denied the motion to stay without prejudice. *See* Docket Nos. 283-84. On January 27, 2025, Defendants filed their motion to dismiss. *See* Docket No. 293. Following full briefing and oral argument, the Court granted the motion in part and denied it in part. *See* Docket No. 314. The allegations in this case are summarized in the Court's final ruling. *See id.* at 1-3.

On August 18, 2025, Plaintiffs filed a motion for class certification and appointment of co-lead class counsel. *See* Docket No. 472. On December 3, 2025, the Court granted the motion and certified the following Class:

> All purchasers in the United States who directly purchased a primary ticket and paid associated fees for primary ticketing services for an event at a major concert venue in the United States from Ticketmaster or one of its affiliated entities owned, directly or indirectly, by Live Nation Entertainment, Inc. at any point since 2010. Excluded from the Class are Defendants; the officers, directors or employees of Defendants; any entity in which any defendant has a controlling interest; any affiliate, legal representative, heir or assign of Defendants; federal, state or local governmental entities; any judicial officer presiding over this action and the members of his/her immediate family and judicial staff; any juror assigned to this action; and any purchaser that is judicially determined in this case to be subject to an enforceable arbitration agreement with Ticketmaster L.L.C. or Live Nation Entertainment, Inc. that governs the claims asserted in Heckman v. Live Nation Ent., Inc., Case No. 2:22-cv-00047-GW-KESx (C.D. Cal.).

*See* Docket No. 519, at 40; Docket No. 527 (accepting parties' stipulation to amend the proposed class definition).

On March 12, 2026, Plaintiffs filed the present Motion for Approval of Class Notice Plan ("Motion") seeking this Court's acceptance of the substance and format of the notice which they intend to provide to the Class – so that individual Class members may, if they choose, exercise their right to opt out. *See* Motion, Docket No. 555. Defendants filed a partial opposition in which they raised a limited number of objections to Plaintiffs' proposed notice plan. *See* Opp., Docket No. 557. Plaintiffs filed a reply, *see* Reply, Docket No. 560, and updated proposed notice form documents, *see* Updated Notice Documents, Docket No. 564.

## II.      **Legal Standard**

Under Rule 23(c)(2)(B), "the court must direct to class members the best notice that is practicable under the circumstances, including individual notice to all members who can be

identified through reasonable effort." Fed. R. Civ. P. 23(c)(2)(B). The Rule requires that the notice "clearly and concisely state in plain, easily understood language" the following:

(i)     the nature of the action;

(ii)     the definition of the class certified;

(iii)     the class claims, issues, or defenses;

(iv)     that a class member may enter an appearance through an attorney if the member so desires;

(v)     that the court will exclude from the class any member who requests exclusion;

(vi)     the time and manner for requesting exclusion; and

(vii)     the binding effect of a class judgment on members under Rule 23(c)(3).

*Id.* "[T]he class must be notified of a proposed settlement in a manner that does not systematically leave any group without notice." *Officers for Just. v. Civ. Serv. Comm'n of City & Cnty. of San Francisco*, 688 F.2d 615, 624 (9th Cir. 1982). To satisfy due process, notice must be "reasonably calculated, under all the circumstances, to apprise interested parties of the pendency of the action and afford them an opportunity to present their objections." *Mullane v. Cent. Hanover Bank & Tr. Co.*, 339 U.S. 306, 314 (1950). There is no statutory or due process requirement that all class members receive actual notice by mail or other means; rather "individual notice must be provided to those class members who are identifiable through reasonable effort." *Eisen v. Carlisle & Jacquelin*, 417 U.S. 156, 175 (1974).

## III.    <u>Discussion</u>

Plaintiffs, in conjunction with JND Legal Administration ("JND"),[2] propose a direct notice campaign via email to all members of the Class for whom Defendants provide an email address or for whom an email address can be obtained through an email append process,[3] supplemented by a targeted media campaign through major online outlets and services, a nationwide press release, and a website. *See* Motion at 3-5; Declaration of Jennifer Keough ("Keough Decl."), Docket No. 555-1, at ¶ 14. Plaintiffs indicate that the notices satisfy Rule 23 and due process because "[t]hey

---

[2] JND is described in the Motion as "a preeminent firm specializing in the administration of class action notice programs . . . ." Motion at 3.

[3] This process uses a commercial database to search for alternative email addresses associated with members of the Class. Motion at 3 n.1.

adequately describe this action, identify the Class and its specific definition, and provide instructions on how to request exclusion in clear, easy-to-read language that will be readily understood by the average Class member." Motion at 5.

Plaintiffs' proposed notice plan appears to the Court to lack any apparent deficiencies and to be adequate to apprise members of the Class of their status and associated rights. Plaintiffs indicate that the combination of notice methods should exceed the 70% threshold required for adequate notice to the Class.  Motion at 1.  Courts have found that notice plans with similar reach are reasonable.  *See, e.g.*, *In re Packaged Seafood Prods. Antitrust Litig.*, No. 3:15-md-02670-DMS-(MDD), 2023 WL 2483474, at *2 (S.D. Cal. Mar. 13, 2023) (first citing *Beck-Ellman v. Kaz USA, Inc.*, No. 3:10-cv-02134-H-(DHB), 2013 WL 1748729, at *3-4, *8-9 (S.D. Cal. Jan. 7, 2013); and then citing *Chinitz v. Intero Real Est. Servs.*, No. 5:18-cv-05623-BLF, 2020 WL 7042871, at *1 (N.D. Cal. Dec. 1, 2020)).  The targeted digital effort includes twenty-six million digital impressions over four weeks.[4]  Keough Decl. ¶ 30.  The press release will be distributed nationwide to thousands of English and Spanish media outlets.  *Id.* ¶ 34; *see* Ex. E, Docket No. 555-6.  The Court observes that the notice documents are written in plain language and contain easily understandable summaries of the case and the options available to members of the Class.  *See, e.g.*, Long Form Notice, Ex. B, Docket No. 555-3.  JND affirms that the proposed notice plan provides the best notice practicable under the circumstances and is designed to provide members of the Class with the opportunity to review the notice and the ability to easily take next steps to learn more.  Keough Decl. ¶ 44.  The Court sees no reason to find otherwise.  *See Bruno v. Quten Rsch. Inst., LLC*, No. 8:11-cv-00173-DOC-(Ex), 2012 WL 12886843, at *1 (C.D. Cal. July 16, 2012) ("Notice plans are not expected to reach every class member; Rule 23 requires the best notice 'practicable,' not perfect notice." (citing Fed. R. Civ. P. 23(c)(2)(B))).

Defendants, however, raise three objections to the proposed notice plan: First, Defendants contend that the use of the "Ticketmaster" trademark in the notice website URL is "unnecessary, given the extensive direct email notice plan proposed by Plaintiffs."  Opp. at 1-2.  Defendants

---

[4] Banner placements will run in both English and Spanish across all devices, with an emphasis on mobile.  Keough Decl. ¶ 32.  The digital ads will directly link to the notice website, where members of the Class may access more information about the class action.  *Id.*; *see* Ex. D, Docket No. 555-5.

The digital effort is also scalable such that additional digital impressions may be purchased over the course of the campaign in order to guarantee that a minimum threshold of 70% reach is achieved if the anticipated email bounce back/undeliverable rate is greater than expected.  Keough Decl. ¶ 30 n.7.

instead propose an alternative URL of "www.TicketFeeClassAction.com." *Id.* Second, Defendants contend that Plaintiffs have added language that appears to opt consumers in this case out of "any other" cases, and specifically the Public Enforcer Action. *Id.* at 2. Defendants argue that the inclusion of such language is wrong as a matter of law and affirmatively misleading because the sole mechanism by which consumers can elect to opt out of state *parens patriae* actions is via the separate, Attorney General notice process set forth in 15 U.S.C. § 15c(b). *Id.* Third, Defendants contend that notice be provided to members of the Class only after the conclusion of the ongoing trial in the Public Enforcer Action in order to avoid prejudicing jurors in that action who may receive the notice. *Id.* The Court addresses each objection in turn.

### A. Use of "Ticketmaster" in Notice Website URL

Plaintiffs' proposed website name for notice is "TicketmasterFeeClassAction.com." Motion at 1-2. Plaintiffs assert that the inclusion of "Ticketmaster" in the website URL provides more clarity regarding the nature of the case and the alleged claims because "[t]his case is a case about overcharges on Ticketmaster's primary ticketing fees . . . not about AEG's, SeatGeek's, or any other primary ticketing service provider's fees." *Id.* at 7.

While Defendants do not object to the use of the "Ticketmaster" trademark in the text of the various notice documents, they object to its inclusion in the notice website URL.[5] *See* Opp. at 2. Defendants claim that use of the trademark in such manner "is likely to confuse and mislead online consumers who are not members of the class by presenting a URL that is confusingly similar to Ticketmaster's own website (www.ticketmaster.com) and could even be read as suggesting that Ticketmaster itself sponsors this action." *Id.* at 2-3 (citations omitted). Defendants further claim that such "use is unnecessary and will do nothing to advance the goals of the class notice procedure in light of the robust notice that will be provided directly to class members via email." *Id.* at 3.

The Court is largely unpersuaded by Defendants' arguments as to why the use of "Ticketmaster" in the notice website URL should be prohibited. First, Defendants' reliance on three out-of-circuit cases from the Eastern District of New York is particularly unpersuasive. All three of the cases Defendants cite in support of their arguments involve the use of a defendant's logo in a proposed notice to potential members of a Fair Labor Standards Act ("FLSA") collective

---

[5] Plaintiffs point out that Defendants cannot object to the use of "Ticketmaster" in the text of the notices because this use "describes this lawsuit and provides the most information to the class members." *See* Reply at 1. Plaintiffs argue that "a similarly descriptive notice website URL provides the same sort of necessary information." *Id.*

action. *See Singh v. Anmol Food Mart, Inc.*, No. 1:22-cv-05475-RER-(JAM), 2024 WL 308241, at *4-5 (E.D.N.Y. Jan. 26, 2024); *Ding v. Mask Pot Inc.*, 347 F.R.D. 417, 433-34 (E.D.N.Y. 2024); *Panora v. Deenora Corp.*, 521 F. Supp. 3d 177, 180 (E.D.N.Y. 2021). The court in *Singh* explained that "courts routinely deny the use of a defendant's logo on an FLSA notice because unauthorized use of the logo is a copyright violation and the logo's presence sends a message to recipients 'that this is an important mailing from their current or former employer and even suggests that [the defendant] wants and expects them to join the action.'" *Singh*, 2024 WL 308241, at *5 (alteration in original) (quoting *Panora*, 521 F. Supp. 3d at 180) (citing *Hong v. Haiku @ WP Inc.*, 582 F. Supp. 3d 117, 135 (S.D.N.Y. 2022)). None of these cases involve, as here, the use of a defendant's name in the URL of a website intended to provide notice to potential members of a class action. The Court fails to see how inclusion of "Ticketmaster" in the proposed notice website URL constitutes a copyright violation[6] under these circumstances or how it could suggest to potential members of the Class that Ticketmaster either wishes or expects them to join the class action. The Court disagrees with Defendants' position that the mere mention of "Ticketmaster" in the notice website URL suggests Ticketmaster's sponsorship of the class action.[7] The notice documents explicitly state that "Live Nation and Ticketmaster deny Plaintiffs' claims and deny any liability." *See, e.g.*, Ex. C, Docket No. 555-4, at 1. Furthermore, the inclusion of a defendant's name in the URL for a website designed to provide class members with additional information is featured in one of the Federal Judicial Council's model class notices. *See* Federal Judicial Center's Class Action Certification: Full Notice, https://www.fjc.gov/sites/default/files/2016/ClaAct11.pdf (last visited Apr. 9, 2026).

Second, Defendants suggest that "where use of a trademark is not necessary or appropriate in the context of a case, courts can (and do) require the exclusion of trademarks from notice website URLs." Opp. at 5 (citations omitted). Defendants' supporting authorities, however, do not necessarily stand for this broad proposition. In *Keim v. ADF Midatlantic, LLC*, No. 9:12-cv-80577-KAM, 2019 WL 8262656 (S.D. Fla. Feb. 1, 2019), the court required the removal of a defendant's name from a proposed URL where there were five defendants in the litigation and the

---

[6] And even if it were somehow potentially a copyright violation, arguably it would amount to fair use of the name.

[7] Plaintiffs argue that there is little likelihood of confusion regarding Defendants' affiliation with the notice website because the proposed notice website URL "makes clear that the notice website's 'sole purpose' is a class action related to Ticketmaster's fees." *See* Reply at 2.

URL was underinclusive in naming only one. *Id.* at \*2 (finding that the reference to one defendant in the URL "place[d] undue attention on [that defendant's] alleged role in [the case], to the exclusion of the other entities"). That is simply not the case here, and Defendants make no similar argument as to why the use of "Ticketmaster" in the notice website URL is not appropriate in the context of this class action.[8] *Chen v. Thai Greenleaf Rest. Corp.*, No. 2:21-cv-01382-MKB-(JMW), 2024 WL 3742718 (E.D.N.Y. Aug. 9, 2024), similar to the aforementioned cases from the Eastern District of New York, concerns the use of a defendant's logo on mailings to potential members of an FLSA collective action. *See id.* at \*7. Plaintiffs are not seeking to include Ticketmaster's logo on any of the notice documents.[9] While the Court acknowledges that members of the Class will receive direct email notices that clearly describe the class action as concerning Ticketmaster and not other primary ticketing service providers, the Court agrees with Plaintiffs that "[t]he proper use of 'Ticketmaster' to describe the lawsuit does not change simply because it is used in a website to once again describe this class action in a literally true way." *See* Motion at 8; Reply at 2 ("[T]he fact that there are *additional* notice documents does not mean the notice URL should be any less descriptive about the nature of the case." (emphasis in original) (citing *id.* at 7).

Accordingly, the Court would overrule Defendants' first objection regarding the use of "Ticketmaster" in the notice website URL.

### B. Inclusion of Language Regarding the Public Enforcer Action

Plaintiffs propose including the following language in the various notice documents:

> If you do nothing, then you will remain in the class, **which will indicate that you wish to pursue your rights against Defendants in this case rather than any other (including but not limited to *United States of America et al. v. Live Nation Entertainment, Inc. et al.*, No. 1:24-cv-03973-AS (S.D.N.Y.))**, and you will be bound by all past, present, and future orders, findings, and judgments in this class action, whether favorable or unfavorable.

Motion at 8. Defendants object to the bolded portion and contend that "[t]his is quintessential 'opt out' language" that is wrong as a matter of law and introduces the kind of confusion that courts

---

[8] Plaintiffs suggest that *Keim* is actually more supportive of their position that "a URL should be reasonably specific to identify that this is not a class action about ticketing generally, but instead about Ticketmaster's fees." *See* Reply at 5 (citing Motion at 7-8).

[9] Plaintiffs indicate that they specifically agreed to change the online imagery they had used for the various notice documents at the request of Defendants to eliminate any potential confusion with Defendants' logos. Reply at 2 n.2 (citation omitted).

seek to avoid in class notice materials.  *See* Opp. at 6-8.  Defendants indicate the 15 U.S.C. § 15c[10] provides the sole method for opting out of a *parens patriae* action like the Public Enforcer Action and that the court in that case has not yet directed the state Attorneys General to provide notice to class members.  *Id.* at 7.

Because "[c]ertain states seek *parens patriae* damages for similar claims as Plaintiffs assert here," Plaintiffs argue that "[c]lass members should . . . understand that, if they choose to remain in the class here, they are indicating by action that they want to vindicate their rights here rather than in another action that might vindicate those same rights."  Motion at 9.  Plaintiffs insist that the bolded portion does not opt members of the Class out of the *parens patriae* claims in the Public Enforcer Action; rather, "[t]he language is an indication of class members' intent for ***this*** action."  *Id.* (emphasis in original).

The Court acknowledges Plaintiffs' wish to clarify to potential members of the Class that there are currently two actions asserting damages claims based on the same core theories; however, the Court is inclined to agree with Defendants that the bolded portion is confusing and potentially misleading.  A plain reading of the uncontested notice language indicates that recipients of any notice of this action would understand that "do[ing] nothing" amounts to "remain[ing] in the class" and "be[ing] bound by all past, present, and future orders, findings, and judgments in this class action."  *See* Motion at 8.  The Court would understand such language to be sufficient to place recipients on notice of "what inaction does ***in this case***."  *See* Reply at 6.  While the bolded portion certainly adds more information, it also appears to suggest to recipients that in choosing to remain part of the Class here, they do not intend to "pursue [thei]r rights against Defendants in . . . any other[ action] (including [the Public Enforcer Action])."  *See* Motion at 8.  The bolded portion, however, can have no binding effect for the reasons articulated by Defendants with respect to 15 U.S.C. § 15c.  As Defendants argue, therefore, Plaintiffs appear to be "t[aking] the confusing position that this language is both necessary and also a legal nullity."  *See* Opp. at 6.

On April 7, 2026, Plaintiffs filed updated proposed notice form documents in support of

---

[10] Through 15 U.S.C. § 15c, Congress specifically authorizes the filing of an antitrust lawsuit by a State as *parens patriae* to recover damages for injury to its citizens.  The statute requires the State to give notice of its *parens patriae* action to its citizens and an opportunity to elect to exclude themselves from the claim for monetary relief being made on their behalf by the State.  *See* 15 U.S.C. § 15c(b).

the Motion.[11]  *See generally* Updated Notice Documents.  In response to Defendants' objection to Plaintiffs' proposed language regarding the Public Enforcer Action and upon conferring with the States involved in that action, Plaintiffs now proffer the following revised language:

> If you do nothing, then you will remain in the class, which will indicate that you wish to pursue your rights against Defendants in this case, and you will be bound by all past, present, and future orders, findings, and judgments in this class action, whether favorable or unfavorable.  If any money is awarded to the class, through either settlement or judgment after trial, you may get a share of the award.  But by staying in the class, you will give up your right to sue Defendants separately for the claims in this case, whether individually or as part of a class.  You may wish to consider that 20 States are also pursuing damages on behalf of their residents for the same or similar violations as those alleged in this case in a separate case proceeding in New York, *United States of America et al. v. Live Nation Entertainment, Inc. et al.*, No. 1:24-cv-03973-AS (S.D.N.Y.).  The 20 States are: Arizona, Colorado, Connecticut, Florida, Illinois, Indiana, Michigan, Nevada, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, South Carolina, Utah, Washington, West Virginia, Wisconsin, the Commonwealth of Pennsylvania, and the District of Columbia.

*See* Ex. A, Docket No. 564-1, at 7.  Defendants continue to object to such language (presumably for the same reasons).  *See* Updated Notice Documents at 2.  Although the Court observes no issue with the first three sentences of the proposed revised language, the last two sentences pose the same problem already identified.  The implication of the last two sentences when read in context is that remaining in the Class here means "giv[ing] up [the] right" to seek damages in the Public Enforcer Action.  The Court recognizes that 15 U.S.C. § 15c contemplates the exclusion of "duplicat[ive] amounts [of monetary relief] which have been awarded for the same injury" in a *parens patriae* action, *see* 15 U.S.C. § 15c(a)(1), and that Plaintiffs are seeking for "potentially overlapping citizens" four times what is being sought in the Public Enforcer Action, *see* Reply at 8.  Nonetheless, the Court fails to understand precisely what information potential members of the Class here are effectively gaining by being notified of the damages claims in the Public Enforcer Action.  As such, the relevance of notifying potential members of the Class here about the claims in the Public Enforcer Action is unclear.  Insofar as Plaintiffs believe that a potential member's decision to remain in the Class here has some bearing on the damages he or she could seek in the Public Enforcer Action (or vice versa), Plaintiffs have not made that sufficiently clear either in

---

[11] The Court acknowledges that "[t]he updated notice form documents are identical in nearly every respect, except that they (a) reflect the new case caption, and (b) provide updated language regarding the S.D.N.Y. action."  *See* Updated Notice Documents at 2.

their Motion papers or in their proposed revised language.

Accordingly, the Court would sustain Defendants' second objection regarding the inclusion of the language referring to the Public Enforcer Action. The Court will entertain further argument from Plaintiffs to the extent they still believe such language is necessary.

### C. Delay Notice until after the Conclusion of the Jury Trial in the Public Enforcer Action

Defendants indicate that the court in the Public Enforcer Action permitted the inclusion of jurors who have purchased tickets from Ticketmaster. Opp. at 8. Because active jurors in that trial may be members of the Class here, Defendants contend that notice should be provided only after the conclusion of the trial in the Public Enforcer Action to avoid any prejudice. *Id.*

Plaintiffs do not wish to delay notice to some eighty-eight million people who are potential members of the Class here until trial concludes in the Public Enforcer Action for the following four reasons. First, Defendants have not actually indicated that any of the active jurors in that trial are potential members of the Class here. *See* Reply at 9. Second, Defendants do not sufficiently explain how providing notice to potential members of the Class here would prejudice active jurors in that trial, especially given that the notices make clear that there has been no liability finding in this action. *Id.* Third, the Court may implement a timing requirement unique to the active jurors in that trial so as to avoid delaying notice to the millions of other potential members of the Class. *Id.* Fourth, the timing consideration is largely mooted by the possibility that there may not be any meaningful overlap between the notice period and the completion of the jury trial in the Public Enforcer Action. *Id.*

The Court is inclined to agree with Plaintiffs that delaying notice is unnecessary and thus overrule Defendants' third objection regarding the timing of notice to potential members of the Class in this action. If it becomes the case that trial in the Public Enforcer Action has not yet concluded by the time this Court issues a final ruling on the Motion and the point in time when the class notice is actually ready to be sent out, the Court may entertain Plaintiffs' suggestion of "a juror-specific process that delays notice for just those individuals." *See* Reply at 9-10. The Court will note, however, that it sees little reason to delay notice in this action when, as Plaintiffs indicate, there likely will be no meaningful overlap between the time when notices are actually distributed and the time when the jury trial concludes in the Public Enforcer Action.[12]

---

[12] It has been reported that closing arguments began on Thursday April 9, 2027, in the Public Enforcer Action in

## IV.    <u>Conclusion</u>

Based on the foregoing, the Court would **GRANT** the Motion insofar as it seeks approval of Plaintiffs' proposed notice plan but would **STRIKE** the following language from the amended version:

> You may wish to consider that 20 States are also pursuing damages on behalf of their residents for the same or similar violations as those alleged in this case in a separate case proceeding in New York, *United States of America et al. v. Live Nation Entertainment, Inc. et al.*, No. 1:24-cv-03973-AS (S.D.N.Y.). The 20 States are: Arizona, Colorado, Connecticut, Florida, Illinois, Indiana, Michigan, Nevada, New Hampshire, New Jersey, New York, North Carolina, Rhode Island, South Carolina, Utah, Washington, West Virginia, Wisconsin, the Commonwealth of Pennsylvania, and the District of Columbia.

Plaintiffs shall prepare and submit for this Court's review an amended version of the notice plus a new proposed timeline for their notice plan by a date to be determined at the hearing on the Motion.

## V.    <u>Nits</u>

The Court also has the following nits with respect to the Updated Notice Documents which it will discuss with the parties at the April 13, 2027 hearing:

- On page 1 of the Long Form Notice (*see* Docket No. 564-1), and throughout the document, sometimes the letter "n" in the word "notice" is in uppercase and other times it's in lowercase. It should be consistent. As the reference is to the particular "Notice of Pendency of Class Action" document, I would suggest using an uppercase "N" at all points.

- For all of the Notice documents, the case name is inconsistently referenced – *see, e.g.,* on page 1 as "*Popp, et al. v. Live Nation Entertainment, Inc. and Ticketmaster LLC*" and on page 5 as "*Popp v. Live Nation Ent., Inc.*" The name used should be consistent along with the punctuation marks that immediately follow it.

  Also, while the case caption was updated on March 25, 2026 to read "JEANENE POPP, LUIS PONCE, and JACOB ROBERTS, on behalf of themselves and others similarly situated v. LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER LLC.," from January 4, 2022 to the latter date, the case caption had been "*Heckman, et al. v. Live Nation Ent., Inc. et al.*" Should there be a reference to Heckman since most members of the public who are familiar with this litigation would recognize the name

---

the Southern District Of New York. *See* https://www.law360.com/articles/2463794/states-tell-jury-that-live-nation-isn-t-above-the-law- (last visited 4/10/26).

Heckman rather than Popp?

- The text immediately under the title "NOTICE OF PENDENCY OF CLASS ACTION" NOW READS:" "If you purchased a primary ticket for an event at certain concert venues directly from Ticketmaster or an affiliate Live Nation entity and paid fees for primary ticketing services at any point since 2010, a class action may affect your rights." Perhaps the last line could read: "a class action *has been filed that* may affect your rights."

- On page 4 in the last line of the third paragraph (and also on pages 4, 5, 6 and 8), the word "question" followed by a number is used, *e.g.* "in question 11 below)." However, what is being referenced is not the question but actually the answer which follows the question. The I would suggest using the word "section" is place of the word "question."

- On page 4 in the second line of the last paragraph, the word "defendant" should begin with a capital "D."

- The phrase "major concert venue" is defined on pages 1, twice on 4, and again on 5. Perhaps one could remove the definitions in the answers to questions 3 and 5.

- On page 7 of the Long-Form Notice in the answer to question 16, there should be a comma after the word "Plaintiffs" in the section titled "Do I have to come to the trial?"

- On page 7 in the answer to question 17, remove the word "participate" and substitute in its place "submit claims to receive a portion of any moneys or other benefits."

- On page 8 of the Long-Form Notice, the link to the PACER system incorrectly follows the phone number for the notice administrator. The link should be included in the preceding sentence regarding access to the docket in this case.

12