**Redacted Version of Document Proposed to Be Filed Under Seal**

**QUINN EMANUEL URQUHART & SULLIVAN, LLP**
Kevin Y. Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
willsears@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, CA 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

**KELLER POSTMAN LLC**
Warren D. Postman (Bar No. 330869)
wdp@kellerpostman.com
1101 Connecticut Avenue, N.W., Suite 1100
Washington, D.C. 20036
Telephone: (202) 918-1123

*Co-Lead Class Counsel*

[Additional Counsel Listed on Signature Page]

## UNITED STATES DISTRICT COURT

## CENTRAL DISTRICT OF CALIFORNIA, SOUTHERN DIVISION

| | |
|---|---|
| JEANENE POPP, LUIS PONCE, and JACOB ROBERTS, on behalf of themselves and all those similarly situated, <br><br> Plaintiffs, <br><br> vs. <br><br> LIVE NATION ENTERTAINMENT, INC., and TICKETMASTER LLC, <br><br> Defendants. | Case No. 2:22-cv-00047-GW-KES <br><br> The Hon. George H. Wu <br> The Hon. Karen E. Scott <br><br> Discovery Document: Referred to Magistrate Judge Karen E. Scott <br><br> **JOINT STIPULATION REGARDING PLAINTIFFS' MOTION TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY** <br><br> Motion Hearing: June 9, 2026 <br> Time: 10:00 AM <br><br> Discovery Cutoff Date: June 30, 2026 <br> Pre-Trial Conference Date: June 24, 2027 <br> Trial Date: July 6, 2027 |

Case No. 2:22-cv-00047-GW-KES
JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

## TABLE OF CONTENTS

|  |  | Page |
|---|---|---|
| I. | PLAINTIFFS' INTRODUCTORY STATEMENT | 1 |
| II. | DEFENDANTS' INTRODUCTORY STATEMENT | 3 |
| III. | CONCERT ROUTING (TOPICS 2, 3, 5, AND 6) | 5 |
| | a. Text of Topics 2, 3, 5, and 6; Defendants' Objections and Responses Thereto | 5 |
| | b. Plaintiffs' Statement: Defendants Cannot Unilaterally Foreclose Discovery on Plaintiffs' Well-Pleaded Claims | 13 |
| | i. Background | 13 |
| | ii. Defendants' "False Premise" Objection Cannot Defeat Proper Deposition Topics | 16 |
| | iii. Plaintiffs' Topics Do Not Even Contain the Premises that Defendants Claim | 17 |
| | iv. Defendants Remaining Objections Hold No Water | 18 |
| | v. Conclusion as to Topics 2, 3, 5, and 6 | 19 |
| | c. Defendants' Statement | 19 |
| | i. Plaintiffs' Topics Are Argumentative And Based On A False and Disputed Premise | 21 |
| | ii. Defendants Have Already Provided Deposition Testimony, and Agreed to Provide Further Deposition Testimony, on the Factors Live Nation Considers when Routing Concerts | 23 |
| | iii. Topics 2, 3, 5 and 6 call for speculation, are unduly burdensome, and are not proportional to the needs of the case | 25 |
| | iv. Conclusion on Topics 2, 3, 5 and 6 | 27 |
| IV. | CONTRACT TRACKING (TOPIC 8(G), 30) | 27 |
| | a. Text of Interrogatory 7, and Topics 8 and 30; Defendants' Objections and Responses Thereto | 27 |
| | b. Plaintiffs' Statement: Defendants Cannot Avoid Relevant Testimony on Improper Objections | 37 |
| | i. Background | 37 |
| | ii. Defendants Cannot Avoid Corporate Testimony by Asserting That No Tracking System Exists | 40 |
| | 1. Defendants Cannot Refuse to Testify on the Grounds that Contract Databases, Including the Ones Identified by Name, Do Not Exist | 41 |
| | 2. Defendants Cannot Refuse to Testify to the Entirety of Topic 30 and 8(g) based on One Subpart of Topic 30 | 42 |
| | 3. Defendants Cannot Point to Produced Documents as a Substitute for Testimony on Term Lengths | 43 |

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

4.    Defendants' Remaining Objections Should be Overruled ...................................................... 44

iii.   Conclusion as to Topics 30 and 8(g) ........................................... 45

c.    Defendants' Statement .......................................................... 45

i.    Defendants Cannot Be Compelled to Designate a Witness on a Tracking System That Does Not Exist ........................... 46

ii.    Topic 8(g) Is Subsumed by the Agreed Scope of Topics 8, 9, and 29 ........................................................................... 47

iii.   Plaintiffs' Authorities Do Not Support Compelling Testimony Here ................................................................. 48

iv.   Conclusion as to Topics 8(g) and 30 ........................................... 49

V.    PRIMARY TICKETING INSIDE AND OUTSIDE OF THE UNITED STATES (TOPIC 18) ........................................................................... 49

a.    Text of Topic 18; Defendants' Objections and Responses Thereto ................................................................................ 49

b.    Plaintiffs' Statement: Defendants Cannot Refuse Testimony Based on Conclusory Objections that Benchmark Information is Irrelevant ............................................................................... 51

i.    Background ..................................................................... 51

ii.    Evidence of Defendants' Foreign Conduct And Comparisons to U.S. Market Are Highly Relevant ................... 52

iii.   Defendants' Remaining Objections to International Comparison Testimony Are Unsupported Boilerplate ............... 54

iv.   Conclusion as to Topic 18 ................................................. 56

c.    Defendants' Statement .......................................................... 56

i.    The U.S. and Non-U.S. Primary Ticketing Markets Are Structurally Different And Have Little Relevance To This Case ................................................................................. 56

ii.    Topic 18 Imposes A Disproportionate Burden Under Rule 26(b)(1) ........................................................................... 58

iii.   Conclusion as to Topic 18 ................................................. 59

VI.   PLAINTIFFS' CONCLUSION ........................................................... 59

VII.  DEFENDANTS' CONCLUSION .......................................................... 60

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

Pursuant to Local Civil Rule 37-2, Plaintiffs hereby submit this Joint Stipulation regarding Plaintiffs' Rule 30(b)(6) Deposition Notice to Defendants Live Nation Entertainment, Inc. and Ticketmaster LLC ("Defendants") served on January 29, 2026 (the "Notice").

## I.    PLAINTIFFS' INTRODUCTORY STATEMENT

Defendants have yet again resorted to the same tired delay and stonewalling tactics—this time directed at Plaintiffs' Rule 30(b)(6) deposition notice. Plaintiffs seek three categories of targeted testimony regarding their claims that Defendants Live Nation Entertainment, Inc. and Ticketmaster, LLC maintained an unlawful monopoly over primary ticketing services for major concert venues in the United States to the detriment of concertgoers. First, Plaintiffs seek testimony related to their extensively-pled allegations that Defendants have conditioned concert promotion services on the use of Ticketmaster for primary ticketing, including how routing concerts to or away from major concert venues affects Defendants' business. Second, Plaintiffs seek testimony related to how Defendants track the contracts Plaintiffs challenge as anticompetitive and which Defendants have repeatedly invoked in support of their defenses. Third, Plaintiffs seek testimony related to differences between Defendants' primary ticketing inside and outside of the United States, which is relevant to Plaintiffs' liability and damages theories as a benchmark.

In every case, Defendants refuse to provide testimony, stating, cavalierly, that the Topics are based on a "false premise" or are "irrelevant." The Court should overrule Defendants' improper objections and require them to designate witnesses on the Topics as written.

*First*, Defendants refuse to designate a witness to testify, essentially, on the effects of Defendants' concert routing decisions to or away from major concert venues that do or do not use Ticketmaster. These Topics are plainly relevant to Plaintiffs' well-documented allegations—underscored by the jury's recent sweeping verdict in the parallel *United States v. Live Nation Entertainment, Inc.*, No. 1:24-cv-03973

(S.D.N.Y. May 24, 2024) (the "Government Action")—that Defendants punish venues who do not use Ticketmaster by routing concerts away. *See, e.g.*, Pls.' Ex. A (Compl., Dkt. 1) at ¶¶ 9, 52, 90, 92, 94, 147, 155-157, 164-158 ("'[V]enues throughout the United States have come to expect that refusing to contract with Ticketmaster will result in the venue receiving fewer Live Nation concerts or none at all'"); Pls.' Ex. B (Am. Compl. at ¶¶ 89-94, 152, *United States v. Live Nation Ent., Inc.*, No. 1:24-cv-03973 (S.D.N.Y. Aug. 30, 2024), Dkt. 257) (same).

Defendants' retort is that Plaintiffs cannot take such discovery as it is too close to Plaintiffs' theory of the case, which Defendants contend is false. *See* Pls.' Ex. C at Responses to Topics 2, 3, 5, 6. But this is exactly why discovery is warranted: to test whether Defendants' assertions are accurate. And even *if* Defendants' contentions were considered, the Topics do not assume that Defendants route concerts based on whether a venue uses Ticketmaster. The Topics ask, for example, only about the effects of scheduling or routing concerts to or away from venues that do or do not use Ticketmaster; they say nothing about **why**. In fact, Defendants have already offered for other Topics to designate witness(es) on the factors Defendants' consider when routing concerts, *i.e.*, on "why." Defendants have clearly conceded that the topic of concert routing is relevant. There is no principled reason why Defendants cannot provide testimony on the effects of such routing decisions. Defendants should be required to designate witness(es) on these Topics as written.

***Second***, Defendants refuse to designate a witness to testify about how Defendants track their Primary Ticketing Service contracts and about the various term lengths of those contracts. Defendants say that they cannot provide testimony because they claim they have already produced the relevant contracts, and they "do not maintain a centralized ticketing contract database" that would allow them to further respond. *See* Pls.' Ex. C at Responses to Topics 30 and 8(g). As Plaintiffs have explained, however, Defendants have **not** produced all relevant contracts, and a "centralized ticketing contract database" does exist. Regardless, the dispute over

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

whether the database exists only highlights the importance of testimony on the issue—if there is truly no other way to provide this information, then Rule 30(b)(6) testimony is all the more necessary. Moreover, Plaintiffs' Topics do not generally assume a contract database—they ask about *how* Defendants track their primary ticketing contracts with venues and about how Defendants "deci[de] to enter Primary Ticketing Service contracts . . . [of v]arious term lengths." Pls.' Ex. C at Topics 30 and 8(g). This testimony is relevant and plainly within Defendants' corporate knowledge. Defendants should be required to designate witness(es) on these Topics as written.

*Third*, Defendants refuse to provide testimony on the differences between Defendants' primary ticketing services inside and outside of the United States, which is relevant to Plaintiffs' liability and damages theories. Plaintiffs allege that Defendants' unlawful exclusive ticketing agreements in the United States have artificially inflated ticket costs as compared to other countries. *See, e.g.*, Pls.' Ex. A (Compl., Dkt. 1) at ¶ 11 ("[M]arkets [like the United Kingdom] that are not encumbered by Ticketmaster's monopoly over ticketing services demonstrate much lower prices for consumers[.]") (cleaned up); *id.* at ¶ 117 (similar); Dkt. 471-33, Decl. Of Parag Pathak ISO Mot. For Class Cert. at ¶¶ 109-110 (evidence of lower output of ticket sales in the United States is direct evidence of Defendants' market power in primary ticketing to major concert venues). Defendants state nothing more than a conclusory objection that the Topic is "irrelevant." It is not, as Plaintiffs' allegations show. Defendants should be required to designate witness(es) on this Topic as written.

With fact discovery closing on June 30, 2026, and depositions already scheduled, Plaintiffs respectfully request that the Court order Defendants to designate and produce witnesses prepared to testify on all disputed Topics as written.

## II.    DEFENDANTS' INTRODUCTORY STATEMENT

Plaintiffs' motion is a study in overreach.  Beyond the narrow handful of topics at issue in this motion, Defendants have already provided or agreed to provide an extraordinary volume of discovery to Plaintiffs.  After an extensive meet and confer,

Defendants agreed to designate one or more 30(b)(6) witnesses on the substantial majority of Plaintiffs' Topics—including allegations at the heart of Plaintiffs' Complaint: the factors that drive Live Nation's concert routing decisions; the factors and business terms that drive Ticketmaster's negotiation of ticketing contracts with venues; Defendants' competitive analyses of the concert promotion and primary ticketing markets; and Defendants' financial reporting and metrics. *See* Pls.' Ex. G. That is on top of Defendants' re-production of documents produced in the Government Action, Defendants' re-production of the Live Nation deposition transcripts from the Government Action (including a Rule 30(b)(6) deposition of Live Nation on concert routing), and the fact that Plaintiffs have access to the trial record from the Government Action.  By any reasonable measure, Plaintiffs already have the discovery they need to try their case.

The narrow handful of Topics that remain in dispute are not in dispute because Defendants are stonewalling.  They are in dispute because they ask Defendants to do things Rule 30(b)(6) does not require.

**Topics 2, 3, 5, and 6 (Concert Routing Effects) ask Defendants to prepare a witness on the "effects" of a practice they do not engage in.**  Live Nation does not route concerts to or away from venues based on whether the venue uses Ticketmaster, as Defendants have stated repeatedly in this litigation and have confirmed under oath in the Government Action.  There are accordingly no corporate "analyses, studies, or assessments of the effects" of the practice for a witness to be prepared on. To be clear, Plaintiffs will have a full opportunity to probe the underlying factual allegation (i.e., Defendants' actual routing practices) through the 30(b)(6) deposition Defendants have already agreed to provide on Topics 1 and 4, which expressly covers "any typical internal studies or analyses of whether Live Nation routes concerts based on whether a venue contracts with Ticketmaster."  What Defendants will not do and cannot do is stipulate to the truth of Plaintiffs' merits theory and prepare a witness on the "effects" of a practice that did not occur.

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

**Topics 8(g) and 30 (Contract Tracking) ask Defendants to prepare a witness on a contracts-tracking system that does not exist.** This is the same database dispute Plaintiffs raised in their pending motion to compel responses to RFPs 44–46 and ROG 10. The evidentiary record is the same: █████████████ ████████████████████████████████████████████████ ████████████████████████████████████████████████ ████████████████████████████████. *See* Caudillo Decl., Dkt. 571-15. Live testimony on the subject would amount to an oral repetition of Mr. Caudillo's sworn declaration. Rule 30(b)(6) does not require that.

**Topic 18 (US vs. Foreign Ticketing) asks Defendants to prepare a witness on international operations to support a damages theory Plaintiffs have not pled.** Topic 18 calls for testimony spanning multiple foreign jurisdictions and a 15+-year period in service of a "benchmark" theory absent from the Complaint and not endorsed by Plaintiffs' class certification expert. The U.S. and non-U.S. primary ticketing markets are structurally different in nearly every dimension that bears on competitive dynamics, and Plaintiffs cannot use a generic Rule 30(b)(6) Topic to develop, mid-discovery, a damages theory of the case they did not plead and have never pursued.

Each of these Topics fails for an independent reason, but they share a common feature: each would require Defendants to provide testimony that adds nothing to the comprehensive discovery already produced but would be extraordinarily burdensome for Defendants to comply with. The motion should be denied in its entirety.

### III.    CONCERT ROUTING (TOPICS 2, 3, 5, AND 6)

#### a.  Text of Topics 2, 3, 5, and 6; Defendants' Objections and Responses Thereto

Pursuant to Civil Local Rule 37-2.1, the text of Topics 2, 3, 5, and 6 from Plaintiffs' Rule 30(b)(6) Notice of Deposition served on January 29, 2026 (Pls.' Ex.

D), and Defendants' Objections and Responses thereto (Pls.' Ex. C) served on March 1, 2026, are reproduced in full here.

**TOPIC NO. 2:**

Your understanding, including any analyses, studies, or assessments, of the effects on Major Concert Venues that do not use Ticketmaster, have contracted with or otherwise selected a Primary Ticketing Service vendor other than Ticketmaster, have indicated they will select a Primary Ticketing Service vendor other than Ticketmaster, or are in the process of selecting a Primary Ticketing Service vendor, of your decisions to schedule or route concerts to or away from such venues, including any economic or non-economic harm to Major Concert Venues when concerts are scheduled or routed away, such as loss of revenue, income, or profits; loss of concertgoer traffic; harm to reputation; or any other harms.

**DEFENDANTS' RESPONSE TO TOPIC NO. 2:**

Defendants incorporate by reference each of their General Objections and Objections to Definitions.

Defendants object that Topic No. 2 lacks foundation, is argumentative, and is based on a false premise; artists are the ultimate decisionmakers on tour routing, and Defendants do not improperly or unlawfully steer concerts to or away from venues based on who the venue's ticketing provider is. Defendants are unable to identify a witness who can testify to Plaintiffs' unsupported premise. Defendants further object to this Topic to the extent it calls for speculation or requires Defendants to adopt Plaintiffs'

characterization of Defendants' business operations. Defendants further object that this Topic calls for Defendants to speculate about "effects on Major Concert Venues," which are third parties. Defendants further object to this Topic as unduly burdensome because Defendants cannot prepare a witness to testify on a nonexistent subject. Defendants further object and incorporate by reference their objections to the defined term "Major Concert Venues," which is defined in a way that does not track ordinary industry usage of that term, if any, and is therefore vague, overbroad, and imposes an undue burden on Defendants. As phrased with the term "Major Concert Venues," this topic is not one that can be answered by a witness in a Rule 30(b)(6) context.

Subject to and without waiving the foregoing objections, Defendants respond that they are unable to designate a witness to testify regarding this Topic because the premise underlying the Topic is factually incorrect. Further, "Major Concert Venues" as defined is not a concept used by Defendants in their ordinary business, and therefore Defendants do not analyze or study their business in relation to that concept. Accordingly, no testimony can be provided on this subject.

**TOPIC NO. 3:**

The effects on Your business of scheduling or routing concerts to or away from Major Concert Venues that do not use Ticketmaster, have contracted with or otherwise selected a Primary Ticketing Service vendor other than

Ticketmaster, have indicated they will select a Primary Ticketing Service vendor other than Ticketmaster, or are in the process of selecting a Primary Ticketing Service vendor, including:

a. Any payments, revenues, income, profits, or other monetary benefits Live Nation or any of its subsidiaries received because of concerts hosted at such Major Concert Venues that Live Nation or its subsidiaries ceased receiving or received in lesser amounts as a result of scheduling or routing a concert elsewhere; and

b. Any actual or perceived monetary or non-monetary benefits You or any of Your subsidiaries gain or would gain from scheduling or routing concerts to such Major Concert Venues, including any reduction in the actual or perceived competitive threat that other Primary Ticket Service vendors posed to Your businesses.

**DEFENDANTS' RESPONSE TO TOPIC NO. 3:**

Defendants incorporate by reference each of their General Objections and Objections to Definitions.

Defendants object that Topic No. 3 lacks foundation, is argumentative, and is based on a false premise; artists are the ultimate decisionmakers on tour routing, and Defendants do not improperly or unlawfully steer concerts to or away from venues based on who the venue's ticketing provider is. Defendants are unable to identify a witness who can testify to Plaintiffs' unsupported premise. Defendants further object to this Topic to the extent it calls for speculation or requires Defendants to adopt Plaintiffs'

characterization of Defendants' business operations. Defendants further object to this Topic as unduly burdensome because Defendants cannot prepare a witness to testify on a nonexistent subject. Defendants further object and incorporate by reference their objections to the defined term "Major Concert Venues," which is defined in a way that does not track ordinary industry usage of that term, if any, and is therefore vague, overbroad, and imposes an undue burden on Defendants. As phrased with the term "Major Concert Venues," this topic is not one that can be answered by a witness in a Rule 30(b)(6) context.

Subject to and without waiving the foregoing objections, Defendants respond that they are unable to designate a witness to testify regarding this Topic because the premise underlying the Topic is factually incorrect. Further, "Major Concert Venues" as defined is not a concept used by Defendants in their ordinary business, and therefore Defendants do not analyze or study their business in relation to that concept. Accordingly, no testimony can be provided on this subject.

**TOPIC NO. 5:**

Your understanding, including any analyses, studies, or assessments, of the effects on Major Concert Venues that are using Ticketmaster, have agreed to use Ticketmaster, or are renegotiating or in the process of renewing a contract with Ticketmaster, of your decisions to schedule or route concerts to or away from such venues, such as increase in revenue, income, or profits; increased compensation related

to Live Nation Events as a result of contractual provisions; increase in concertgoer traffic; increase in Live Nation Events scheduled or routed to the venue as a result of contractual guarantees; benefits to reputation; or any other benefits.

**DEFENDANTS' RESPONSE TO TOPIC NO. 5:**

Defendants incorporate by reference each of their General Objections and Objections to Definitions.

Defendants object that Topic No. 5 lacks foundation, is argumentative, and is based on a false premise; artists are the ultimate decisionmakers on tour routing, and Defendants do not improperly or unlawfully steer concerts to or away from venues based on who the venue's ticketing provider is. Defendants further object to this Topic to the extent it calls for speculation or requires Defendants to adopt Plaintiffs' characterization of Defendants' business operations. Defendants further object that this Topic calls for Defendants to speculate about "effects on Major Concert Venues," which are third parties. Defendants further object to this Topic as unduly burdensome because Defendants cannot prepare a witness to testify on a nonexistent subject. Defendants further object and incorporate by reference their objections to the defined term "Major Concert Venues," which is defined in a way that does not track ordinary industry usage of that term, if any, and is therefore vague, overbroad, and imposes an undue burden on Defendants. As phrased with the term "Major

Concert Venues," this topic is not one that can be answered by a witness in a Rule 30(b)(6) context.

Subject to and without waiving the foregoing objections, Defendants respond that they are unable to designate a witness to testify regarding this Topic because the premise underlying the Topic is factually incorrect. Further, "Major Concert Venues" as defined is not a concept used by Defendants in their ordinary business, and therefore Defendants do not analyze or study their business in relation to that concept. Accordingly, no testimony can be provided on this subject.

**TOPIC NO. 6:**

The effects on Your business of scheduling or routing concerts to or away from Major Concert Venues that use Ticketmaster, have agreed to use Ticketmaster, or are renegotiating or in the process of renewing a contract with Ticketmaster, including:

a. Any payments, revenues, income, profits, or other monetary benefits Live Nation or any of its subsidiaries received because of concerts hosted at Major Concert Venues that Live Nation or its subsidiaries ceased receiving or received in lesser amounts as a result of scheduling or routing concerts to Major Concert Venues that use Ticketmaster, have agreed to use Ticketmaster, or are renegotiating or in the process of renewing a contract with Ticketmaster; and

b. Any actual or perceived monetary or non-monetary benefits You or any of Your subsidiaries gain

from scheduling or routing concerts to such Major Concert Venues, including any reduction in the actual or perceived competitive threat that other Primary Ticket Service vendors posed to Your businesses; any monetary benefits, such as increased concertgoers, sales, revenues, income, or profits at Major Concert Venues using Ticketmaster; and any increased likelihood that any venues not using Ticketmaster or considering other Primary Ticketing Service vendors will use Ticketmaster.

**DEFENDANTS' RESPONSE TO TOPIC NO. 6:**

Defendants incorporate by reference each of their General Objections and Objections to Definitions.

Defendants object that Topic No. 6 lacks foundation, is argumentative, and is based on a false premise; artists are the ultimate decisionmakers on tour routing, and Defendants do not improperly or unlawfully steer concerts to or away from venues based on who the venue's ticketing provider is. Defendants further object to this Topic to the extent it calls for speculation or requires Defendants to adopt Plaintiffs' characterization of Defendants' business operations. Defendants further object to this Topic as unduly burdensome because Defendants cannot prepare a witness to testify on a nonexistent subject. Defendants further object to the entirety of this Topic as vague and ambiguous; Defendants are unable to parse the meaning of this Topic as phrased, including the two subparts. Defendants further object and incorporate by reference their objections to the defined term "Major Concert Venues,"

-12-                                    Case No. 2:22-cv-00047-GW-KES

which is defined in a way that does not track ordinary industry usage of that term, if any, and is therefore vague, overbroad, and imposes an undue burden on Defendants. As phrased with the term "Major Concert Venues," this topic is not one that can be answered by a witness in a Rule 30(b)(6) context.

Subject to and without waiving the foregoing objections, Defendants respond that they are unable to designate a witness to testify regarding this Topic because the premise underlying the Topic is factually incorrect. Further, "Major Concert Venues" as defined is not a concept used by Defendants in their ordinary business, and therefore Defendants do not analyze or study their business in relation to that concept. Finally, as drafted Defendants are unable to parse the meaning of this Topic, including its subparts, because it is vague and ambiguous. Accordingly, no testimony can be provided on this subject.

**b. Plaintiffs' Statement: Defendants Cannot Unilaterally Foreclose Discovery on Plaintiffs' Well-Pleaded Claims**

*i.  Background*

Plaintiffs allege that Defendants have maintained monopoly power in the market for primary ticketing services by conditioning access to their concert promotion services on venues agreeing to use Ticketmaster. *See, e.g.*, Pls.' Ex. A (Compl., Dkt. 1) at ¶ 57 (DOJ consent decree prohibited Defendants from "punish[ing] or threaten[ing] to punish venues with less concerts if the venue decide not to use Ticketmaster."), ¶ 58 (DOJ consent decree renewed for five-and-a-half years based on multiple violations of the decree), ¶ 92 (New York Times reporting DOJ investigations into evidence-backed claims that Live Nation Entertainment "'has

used its control over concert tours to pressure venues into contracting with its subsidiary, Ticketmaster'''), ¶ 94 (citing six high-profile examples of LNE threatening to and actually diverting concerts away from venues that did not use Ticketmaster in 2012, 2017, 2018, and more).[1]

Plaintiffs' allegations are further supported by the recent sweeping jury verdict on similar theories in the parallel Government Action. Pls.' Ex. B (Am. Compl. at ¶¶ 89-94, 152, *United States v. Live Nation Ent., Inc.,* No. 1:24-cv-03973 (S.D.N.Y. Aug. 30, 2024), Dkt. 257) ("Live Nation's reputation and history of retaliation [against venues for not using Ticketmaster] are so well known in the industry that Live Nation does not have to (although it still does) explicitly threaten individual venues"; "[o]nce the venue switched, Live Nation . . . re-rout[ed] concerts to other venues;" Live Nation's threats "ha[ve] forced at least one ticketing rival to agree to venues['] 'make good' or 'lost event guarantee' clauses in some of its ticketing contracts if those venues choose that rival and Live Nation, as predicted, retaliates.");

---

[1]    *See also* Pls.' Ex. A (Compl., Dkt. 1) at ¶ 9 ("Venue operators must take into account the very real possibility that Live Nation Entertainment will not route tours through their venues if they do not select Ticketmaster as their primary ticketing service provider. . . . Live Nation Entertainment's CEO and President, Michael Rapino, [has] publicly admitted . . . that, if a venue wants to use a ticketing service provider other than Ticketmaster, the venue 'won't be the best economic place anymore because we don't hold the revenue.'"), ¶ 52 ("Live Nation Entertainment promotes the great majority of major concert tours each year and routes those tours through major concert venues for which Ticketmaster is the primary ticketing service provider."), ¶ 90 ("'[V]enues throughout the United States have come to expect that refusing to contract with Ticketmaster will result in the venue receiving fewer Live Nation concerts or none at all"), ¶ 91 (Senators Richard Blumenthal and Amy Klobuchar reported that they were "deeply disturbed by reports that Ticketmaster has . . . retaliat[e]d against venues that use a competing ticket platform.' to the head of the DOJ Antitrust Division"), ¶¶ 155-157 (Defendants have used their monopoly power in th[e] relevant markets[, including for concert promotion services] to monopolize the relevant market for primary ticketing services for major concert venues[.]"), ¶¶ 164-168 (Defendants have conditioned the provision of concert promotion services on the use of primary ticketing services from Ticketmaster.").

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

Pls.' Ex. E (Verdict Form, *United States v. Live Nation Ent., Inc.,* No. 1:24-cv-03973 (S.D.N.Y. Apr. 15, 2026), Dkt. 1417).

Thus, Plaintiffs served their Rule 30(b)(6) Notice of Deposition on January 29, 2026 with Topics 2, 3, 5, and 6, asking about the effects of Defendants' decisions to route concerts to or away from venues that do or do not use Ticketmaster. Plaintiffs asked about Defendants' understanding of the effect on Defendants' business and on venues. Plaintiffs asked, for example, about "payments, revenues, income, [or] profits . . . [Defendants] received because of concerts hosted at Major Concert Venues [that do not use Ticketmaster]" that Defendants did not receive when a concert was routed elsewhere, *e.g.*, Pls.' Ex. D at Topic 3, or any "increase in revenue, income or profits; . . . increase in concertgoer traffic; increase in Live Nation Events scheduled or routed to the venue as a result of contractual guarantees; benefits to reputation; or any other benefits" that venues received when concerts were routed to Major Concert Venues using Ticketmaster, see Pls.' Ex. D at Topic 5. On March 1, 2026, Defendants served their Objections and Responses, refusing to designate any witnesses on these Topics because "the premise underlying the Topic is factually incorrect" and therefore "no testimony c[ould] be provided on the subject." Pls.' Ex. C at Responses to Topics 2, 3, 5, 6.

Plaintiffs informed Defendants in their Local Rule 37-1 Letter that Defendants' disagreement with the factual premise of a Topic does not eliminate their obligation to testify. Pls.' Ex. F (3/11/26 J. English Ltr. to A. Jovais) at 2-3. At the Parties 3/23 meet and confer, Defendants maintained the same objection, stating that the topics were unworkable because of the "factual premise."

Plaintiffs respectfully seek an order compelling Defendants to designate and fully prepare a witness to testify on Topics 2, 3, 5, and 6 as written.

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

### ii. Defendants' "False Premise" Objection Cannot Defeat Proper Deposition Topics

Defendants explained at the 3/23 meet and confer that they refuse to provide testimony because the Topic gets at the core of Plaintiffs' theory. But that's exactly why this testimony is necessary. Under Rule 30(b)(6), the scope of the deposition is "determined solely by relevance under Rule 26, that is, that the evidence sought may lead to the discovery of admissible evidence." *Campbell v. Facebook Inc.*, 310 F.R.D. 439, 450 (N.D. Cal. 2015) (internal quotation omitted). Defendants have already admitted relevance here, by acknowledging that the testimony sought is central to Plaintiffs' theory.

Defendants' sole ground for refusing to designate a witness on the routing of concerts "to or away" from venues that do or do not use Ticketmaster is that Defendants allegedly (1) do not improperly or unlawfully steer concerts to or away from venues based on who the venue's ticketing provider is, and (2) do not route tours, as "artists are the ultimate decisionmakers on tour routing." *See* Pls.' Ex. C at Responses to Topics 2, 3, 5, 6. But Plaintiffs have pled the opposite. As noted, Plaintiffs have comprehensively pled, for example, that Defendants *do* route concerts, and that they frequently do so based on whether a venue uses Ticketmaster. *See, e.g.*, Pls.' Ex. A (Compl., Dkt. 1) at ¶¶ 9, 52, 57, 58, 90-94, 155-157, 164-168. And Plaintiffs have pled that "Live Nation Entertainment's power and control over the shape of artists' careers, [has] ma[de] them more reluctant than ever to defy Live Nation Entertainment . . ., including by . . . planning tours that try to focus on non-Ticketmaster-controlled major concert venues (to the extent that is possible, which, for tours in the United States, it is not)." *Id.* at ¶ 78. The fact that a jury in the Government Action recently entered a sweeping verdict against Defendants on similar allegations further undermines Defendants' objection. *See, e.g.*, Pls.' Ex. B (Am. Compl., *United States v. Live Nation Ent., Inc.*, No. 1:24-cv-03973 (S.D.N.Y. Aug.

30, 2024), Dkt. 257) at ¶¶ 89-94, 152; *see* Pls.' Ex. E (Verdict Form, *United States v. Live Nation Ent., Inc.,* No. 1:24-cv-03973 (S.D.N.Y. Apr. 15, 2026), Dkt. 1417).

Defendants obviously take issue with Plaintiffs' allegations, but if Defendants contend that no offending conduct occurred, they may designate a witness to so testify. What Defendants cannot do is unilaterally foreclose discovery by characterizing Plaintiffs' well-pleaded theories as "nonexistent," *see* Pls.' Ex. C at Responses to Topics 2, 3, 5, 6, and refusing to provide testimony. *See, e.g., PerkinElmer Health Scis., Inc. v. SCR Living LLC*, 2022 WL 2197002, at *2 (C.D. Cal. Feb. 4, 2022) (citation omitted) ("Once served with the deposition notice under Rule 30(b)(6), the responding party is required to produce one or more witnesses knowledgeable about the subject matter of the noticed topics."). Defendants cannot avoid their obligations by asserting "legal conclusions on questions that are not properly before the Court at th[e] time, and upon which no final determination has been made." *Ellis v. Corizon, Inc.*, 2018 WL 1865158, at *3 (D. Idaho Apr. 18, 2018). To do so would be to flout the purpose of discovery altogether.

### iii. Plaintiffs' Topics Do Not Even Contain the Premises that Defendants Claim

Defendants' objections also rely on mischaracterizations of the testimony sought. For example, Defendants claim that Topics 3 and 6 are argumentative because they purportedly imply that Defendants "improperly or unlawfully steer concerts to or away from venues based on who the venue's ticketing provider is." Pls.' Ex. C at Responses to Topics 3, 6. Plaintiffs' Topics do no such thing. Topics 3 and 6 ask about the effects on Defendants' business of scheduling or routing concerts to **_or_** away from Major Concert Venues that do **_or_** do not use Ticketmaster. Pls.' Ex. D at Topics 3, 6. The Topic says nothing about **_why_** concerts are routed to or away from venues that do or do not use Ticketmaster, only what the effects of routing concerts to or away from venues is on Defendants' business, whenever such routing happens. *See also id.* at Topics 2, 5.

In fact, Defendants have already agreed to provide testimony on "the process Live Nation uses to make concert routing decisions, including . . . the factors and reasons that Live Nation typically considers when making concert routing decisions[,]" i.e., on "why." Pls.' Ex. G (Emails re: 30(b)(6)) at 1, 11-12. Defendants thus implicitly acknowledge that the topic of concert routing is relevant and proper, and there is no principled reason why Defendants cannot provide testimony on Topics 2, 3, 5, and 6. It cannot be the case that the factors Defendants consider in concert routing can be relevant but that the effects of their concert routing decisions would not be. *Campbell*, 310 F.R.D. at 450 (internal quotation omitted) (scope of Rule 30(b)(6) depositions "determined solely by relevance under Rule 26").

### iv.  Defendants Remaining Objections Hold No Water

Defendants include an objection that Topic 2—which asks about Defendants' understanding of the effects of routing concerts to or away from Major Concert Venues that do not use Ticketmaster on such venues, for example—is speculative. But the Topic asks for "[Defendants'] understanding, including any analyses, studies, or assessments, of the effects" of Defendants' routing decisions. Plaintiffs do not seek testimony about third parties' internal workings. To the extent Defendants object to the term "Major Concert Venue" on the grounds that it purportedly "does not track ordinary industry usage of the term," that objection is meritless in light of a recent jury finding that Defendants monopolized a market for primary ticketing services to "major concert venues." Plaintiffs are also willing to work with Defendants to address any perceived ambiguities. Plaintiffs have already agreed, for example, that Defendants may testify as to Topics 1 and 4 regarding concert routing for venues generally. *See* Pls.' Ex. G (Emails re: 30(b)(6)) at 1, 12. Defendants have not stood on their objection to "Major Concert Venue," however, but have refused to consider any form of these Topics on the basis that they are "too close" to Plaintiffs' theory of the case. Defendants' objections should be overruled. *See Richmark Corp. v. Timber Falling Consultants*, 959 F.2d 1468, 1473 (9th Cir. 1992) ("It is well established that

a failure to object to discovery requests within the time required constitutes a waiver of any objection.").

### v.  Conclusion as to Topics 2, 3, 5, and 6

Plaintiffs respectfully request that the Court require Defendants to designate and produce one or more witnesses prepared to testify on Topics 2, 3, 5, and 6 as noticed.

### c.  Defendants' Statement

Plaintiffs' motion attacks a strawman.  Their primary argument rests on the false assertion that Defendants are trying to "foreclose discovery" on Plaintiffs' allegation that Live Nation (a concert promoter that works with artists to plan and execute concert tours) routes concerts away from venues that do not use Ticketmaster (Live Nation's subsidiary that provides primary ticketing services to venues). Plaintiffs allege that whether a venue uses or plans to use Ticketmaster for primary ticketing is a key factor in Live Nation's routing decisions. ECF No. 1 ("Complaint") ¶ 9.  That allegation appears throughout the complaint and is central to Plaintiffs' Sherman Act claims; Defendants vehemently deny it.  But regardless, Defendants have already provided extensive discovery on the underlying allegation about their routing practices and have agreed to provide more.

**Critically, Defendants have already provided—and will provide— extensive 30(b)(6) and other testimony on Live Nation's role in concert routing decisions and the factors Live Nation considers.**  The routing allegation was a central issue in the parallel action *United States v. Live Nation Entertainment, Inc.*, No. 1:24-cv-03973 (S.D.N.Y.) (the "Government Action").  Discovery in that action included document productions about routing, individual depositions of Live Nation personnel involved in routing, a Rule 30(b)(6) deposition of Live Nation on how it makes routing decisions, and other written discovery on the concert routing process. All of that material has been re-produced to Plaintiffs in this case, and the parties have agreed that depositions taken in the Government Action may be treated as if taken

here.   Plaintiffs therefore *already have* multiple depositions—including a Rule 30(b)(6) deposition of Live Nation—on routing and whether a venue's use or non-use of Ticketmaster is a factor in routing decisions.

On top of all of that, Defendants readily agreed to *another* Rule 30(b)(6) deposition in this case regarding "the process Live Nation uses to make concert routing decisions, including any typical analysis of routing decisions **and the factors or reasons that Live Nation typically considers when making concert routing decisions.**" Pls.' Ex. G at 6.  Defendants also agreed to include testimony on "any typical internal studies or analyses of whether Live Nation routes concerts based on whether a venue contracts with Ticketmaster (and if so, any typical quantification of such routing)." *Id.*  Thus, to the extent there are any remaining areas to explore beyond what has already been produced from the Government Action, Plaintiffs will have ample opportunity to ask whatever questions they may have—including whether a venue's use or non-use of Ticketmaster is a factor in concert routing decisions, as they allege.

So what remains?  Only Topics 2, 3, 5 and 6—which seek something altogether different and are both deeply argumentative as well as opaque, ill-defined, speculative, and burdensome (if not impossible) to respond to.  In particular, they seek to force Defendants to prepare a witness to testify about the "effects on Major Concert Venues" (Topics 2, 5) and the "effects on Your business" (Topics 3, 6) of "[Defendants'] decisions to schedule or route concerts to or away" from "Major Concert Venues" *based on whether the venue selected Ticketmaster as its primary ticketer*.

This is the antitrust equivalent of "When did you stop cheating on your taxes?"—a loaded question that assumes its disputed premise as fact. The Topics presuppose that Live Nation routes concerts based on whether the venue uses Ticketmaster, then ask Defendants to prepare a witness to testify about the "effects" of that supposed practice.  Worse, the Topics also seek binding corporate testimony

-20-    Case No. 2:22-cv-00047-GW-KES

speculating about "economic and non-economic effects" on hundreds of third-party venues, a subject Live Nation cannot reasonably prepare any witness on, even if the underlying premise were undisputed. The motion to compel testimony on these Topics should be denied.

### i.    Plaintiffs' Topics Are Argumentative And Based On A False and Disputed Premise

Plaintiffs feign surprise at Defendants' objection, claiming that their topics "do not even contain the premises that Defendants claim" because they supposedly "say[] nothing about *why* concerts are routed to or away from venues that do or do not use Ticketmaster". *Supra* at 17. Even a cursory reading of Plaintiffs' topics disproves their argument.

Let's start with Topic 2, which focuses exclusively on venues using a Primary Ticketing Service vendor "*other than* Ticketmaster." Under Plaintiffs' theory, these are the venues that Defendants supposedly punish by routing concerts away from them. Complaint ¶ 90. As expected, Topic 2 focuses explicitly on the supposed harmful effects to these venues of that routing practice, specifying that it seeks testimony about "any economic or non-economic *harm* to Major Concert Venues when concerts are scheduled or routed away, such as *loss* of revenue, income or profits; *loss* of concertgoer traffic; *harm* to reputation; or any other *harms*."

Compare that to Topic 5, Plaintiffs' companion topic that also asks about effects on "Major Concert Venues" but focuses instead on venues "that are using Ticketmaster." Again, under Plaintiffs' theory, these are the favored venues that are supposedly rewarded with regular access to Live Nation concert content. As expected, Topic 5 says nothing at all about harm and instead seeks testimony about any "*increase* in revenue, income, or profits; *increased* compensation related to Live Nation Events as a result of contractual provisions; *increase* in concertgoer traffic; *increase* in Live Nation Events scheduled or routed to the venue as a result of contractual guarantees; *benefits* to reputation; or any other *benefits*." Topics 2 and 5

are two sides of the same argumentative coin: both topics assume that venues who do *not* use Ticketmaster suffer "harm" (Topic 2) and venues who do use Ticketmaster reap the benefits and are rewarded (Topic 5). And after assuming the truth of that core factual allegation—that Defendants allegedly route concerts based on a venue's chosen ticketing platform—Plaintiffs demand that Defendants locate and prepare a witness to talk about the "effects" of that supposed routing practice on venues.

Topics 3 and 6 are similar but with a focus on "effects on [Defendants'] business." Whereas Topic 3(a)—focused on venues that do *not* use Ticketmaster—asks about payments or benefits received because Defendants "rout[ed] a concert elsewhere" (i.e., as a result of Defendants' alleged practice of depriving such venues of concert content based on whether they use Ticketmaster), by contrast Topic 6(a)—focused on venues that *do* use Ticketmaster—asks about benefits received "as a result of scheduling or routing concerts to Major Concert Venues *that use Ticketmaster.*"

The plain text of these topics assumes the truth of one of the foundational factual allegations supporting Plaintiffs' case: their contention that Defendants route concerts away from venues that do not use Ticketmaster and to venues that do use Ticketmaster. Defendants cannot find and prepare a witness to testify about the "effects" of an assumed practice that did not, in fact, occur—much less as to hundreds of third-party "Major Concert Venues" about which Defendants have no corporate knowledge. And to the extent Plaintiffs contend that Defendants can and should present a witness to testify that Defendants do not route concerts based on whether a venue uses Ticketmaster, Defendants *have already agreed to do so* and therefore Topics 2, 3, 5 and 6 do not add anything at all. *Infra.*

Plaintiffs' principal response—that Defendants' "false premise" objection "cannot defeat" a properly noticed Topic—misses the point. Defendants are not objecting to relevance, and they are not asking the Court to resolve a merits dispute prematurely. Rule 30(b)(6) requires a corporation to designate a witness who is "knowledgeable about the subject matter of the noticed topic"—knowledge that is

"known or reasonably available to the organization." Fed. R. Civ. P. 30(b)(6). Where the noticed Topic posits a corporate practice that the corporation does not have, there is no "subject matter" within the corporation's knowledge to designate a witness on. A witness produced to testify on Topics 2, 3, 5, and 6 as Plaintiffs have noticed them would have nothing to say beyond confirming what Defendants have already represented to Plaintiffs and to the Court: Live Nation does not route concerts based on whether a venue uses Ticketmaster, and accordingly does not maintain or generate any "analyses, studies, or assessments of the effects" of such routing.

Plaintiffs' own authorities recognize that limit.  Each of the cases Plaintiffs cite address topics on which the responding party either had institutional knowledge or could reasonably acquire it. *See Campbell v. Facebook Inc.*, 310 F.R.D. 439, 449-50 (N.D. Cal. 2015) (seeking 30(b)(6) testimony explaining how certain Facebook source code works); *Ellis v. Corizon, Inc.*, 2018 WL 1865158, at *1 (D. Idaho Apr. 18, 2018) (seeking 30(b)(6) testimony from medical provider defendant related to its policies and procedures, contracts, and compensation structure); *PerkinElmer Health Scis., Inc. v. SCR Living LLC*, 2022 WL 2197002, at *1 (C.D. Cal. Feb. 4, 2022) (compelling 30(b)(6) designation of "knowledgeable persons" where defendant "did not object to any of the categories for examination," yet wholly failed to produce a witness on the noticed deposition date).  None require a corporation to designate a witness to manufacture testimony about facts that do not exist, or to confirm a corporation's negative answer to a Topic for hours of deposition time.

### ii.   Defendants Have Already Provided Deposition Testimony, and Agreed to Provide Further Deposition Testimony, on the Factors Live Nation Considers when Routing Concerts

To be clear, Plaintiffs will have a full and fair opportunity to explore the disputed factual premise: whether or not Live Nation routes concerts to venues based on whether those venues use or will use Ticketmaster as their primary ticketing

platform.  In fact, Plaintiffs *already have* extensive discovery on this topic, including multiple depositions and written discovery.  This includes:

- A Rule 30(b)(6) deposition of Defendants on the topic: "Your procedures, policies, guidelines, and/or practices relating to submitting offers to Artists or the Artists' Representatives in connection with Live Entertainment Events in the United States, including but not limited to … Main factors considered in determining routing . . . ."  This deposition was taken in the Government Action on June 4, 2025 and lasted approximately four hours.  Defendants' corporate representative testified that Live Nation's tour offers are not affected by whether Ticketmaster is the ticketer of a given venue.  That transcript was produced to Plaintiffs in this action and the parties have agreed that they may treat it as if taken in this litigation.

- A Rule 30(b)(6) deposition of Defendants on the topic: "Your documentation of the rationale for scheduling and routing decisions…."  This deposition was taken in the Government Action on June 20, 2025 and lasted approximately one hour.  Defendants' corporate representative testified that, all else held equal, Live Nation does not try to route shows to venues ticketed by Ticketmaster.  That transcript was also produced to Plaintiffs in this action.

- A Rule 30(b)(1) deposition of Omar Al-Joulani taken on September 10, 2025 in the Government Action, which lasted approximately seven hours.  Mr. Al-Joulani is the President of Touring and Co-President of U.S. Concerts.  His deposition covered many aspects of how Live Nation promotes and routes concerts, including whether Live Nation promoters try to route tours through venues ticketed by Ticketmaster.  Mr. Al-Joulani testified that they do not.  That transcript was also produced to Plaintiffs in this action.

- A set of Requests for Admission in the Government Action which included the Request "Admit that Live Nation considers a Venue's Primary Ticketing Services provider when advising an artist or artist's representatives on the selection of a Venue for a Concert." Defendants denied this Request.

Defendants agreed to provide more to Plaintiffs in this case. Defendants readily offered *another* Rule 30(b)(6) deposition on "the process Live Nation uses to make concert routing decisions, including any typical analysis of routing decisions **and the factors or reasons that Live Nation typically considers when making concert routing decisions**" and "any typical internal studies or analyses of whether Live Nation routes concerts based on whether a venue contracts with Ticketmaster (and if so, any typical quantification of such routing)." *Supra* at 17, 19–20.

As a result, Plaintiffs already have fulsome discovery on the core factual allegation—whether Defendants do, in fact, route concerts based on whether a venue uses Ticketmaster—and they are poised to receive even more given Defendants' cooperative approach to discovery on this topic.

That is not a "logical inconsistency," as Plaintiffs claim. Defendants have agreed to provide testimony on the underlying factual question: whether Live Nation's routing turns on a venue's choice of ticketer. They have not agreed, and cannot agree, to designate a witness to testify about the "effects" of a practice that does not occur.

### iii. Topics 2, 3, 5 and 6 call for speculation, are unduly burdensome, and are not proportional to the needs of the case

The touchstone of Rule 26 is proportionality: any discovery request must seek information "relevant to any party's claim or defense and proportional to the needs of the case." Fed. R. Civ. P. 26(b)(1). In the Rule 30(b)(6) context, that requirement is paired with a textual obligation that the deposing party "describe with reasonable particularity the matters for examination," Fed. R. Civ. P. 30(b)(6), a requirement

designed to ensure that the corporation can identify a knowledgeable witness and "prepare the designated person to testify competently on the noticed topics." *See Luna v. County of Riverside*, 2022 U.S. Dist. LEXIS 201601, at *6 (C.D. Cal. Nov. 4, 2022) ("To meet the 'reasonable particularity' standard, the 30(b)(6) notice . . . must contain sufficient information to put the receiving party on notice of the areas of inquiry that will be explored in the deposition.").

Topics 2, 3, 5 and 6 fail those tests. The Topics are argumentative and assume key facts, *supra*, and they ask a witness to speculate about the "effects" of a supposed practice that did not occur. Plaintiffs seek binding corporate testimony about the "harm to reputation" and "other harms" supposedly suffered by venues that do not use Ticketmaster. Defendants have no obligation under Rule 30(b)(6), and no institutional ability, to designate a witness to speculate about the financial or reputational harms third-party venues may have suffered as a result of a practice Defendants did not engage in. Nor are Defendants able to speculate about the effects on their own business of a practice that did not occur. The information sought is not "known or reasonably available to the organization" within the meaning of Rule 30(b)(6).

This issue is compounded by Plaintiffs' demand that Defendants engage in this exercise with a strict focus on what they call "Major Concert Venues," a litigation-constructed category that Plaintiffs define as the top 500 U.S. concert venues by ticket sales according to *Pollstar* in each year of the 15-year class period. "Major Concert Venues" however it is defined—much less using Plaintiffs' made-for-litigation definition based on ticket sales reported to *Pollstar*—is not an industry accepted term and is not a concept that Defendants have ever used to run their business. As a result, demanding testimony as to "Major Concert Venues" would presumably require Defendants to first take Plaintiffs' litigation-driven list of venues, identify a witness with knowledge of those venues, and then prepare that witness to testify as to the "effects" on such "Major Concert Venues" and the "effects" on Defendants'

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

businesses of their supposed dealings with those "Major Concert Venues." The burden of responding to these topics would be extreme, if it could be done at all, and far in excess of any marginal discovery benefit that these topics may yield.

Last, it bears emphasizing that, to the extent Plaintiffs want third-party effects evidence, third-party discovery is fully available to them. It is not appropriate nor required under Rule 26 or Rule 30 for Defendants to shoulder the burden of preparing witnesses on argumentative topics of such unbounded scope.

### iv.  Conclusion on Topics 2, 3, 5 and 6

Defendants will produce a witness on the agreed scope of Topics 1 and 4 who will be prepared to address the routing analyses Plaintiffs claim to need. There is no further testimony that a witness on Topic 2, 3, 5, and 6 could reasonably provide. The motion to compel testimony on these Topics should be denied.

### IV.    CONTRACT TRACKING (TOPIC 8(G), 30)

#### a. Text of Interrogatory 7,[2] and Topics 8 and 30; Defendants' Objections and Responses Thereto

Pursuant to Civil Local Rule 37-2.1, the text of Interrogatory 7, and Topics 8 and 30 from Plaintiffs' Rule 30(b)(6) Notice of Deposition served on January 29, 2026 (Pls.' Ex. D), and Defendants' Objections and Responses thereto served on March 1, 2026 (Pls.' Ex. C), are reproduced in full here.

**INTERROGATORY NO. 7:**

Explain what percentage of TICKETMASTER'S contracts to act as a PRIMARY TICKETING SERVICE PROVIDER in the United States include provisions that

---

[2] Since Defendants' response to Topic 8(g) references their response to Interrogatory 7, the text and Defendants' response to Interrogatory 7 from Plaintiffs' Second Set of Interrogatories served on June 12, 2025 (Pls.' Ex. H) and Defendants' Objections and Responses thereto served on August 22, 2025 (Pls.' Ex. I) are included for reference.

TICKETMASTER shall be the only PRIMARY TICKETING SERVICE PROVIDER for the venue in question.

## DEFENDANTS' RESPONSE TO INTERROGATORY NO. 7:

Defendants incorporate by reference each of their General Objections and Objections to Definitions and Instructions.

Defendants object to Interrogatory No. 7 as vague and ambiguous, including in its use of the undefined term "venue."

Defendants further object to this Interrogatory to the extent it seeks information that is not maintained in the ordinary course of business.

Defendants further object to this Interrogatory to the extent it seeks third-party confidential and/or proprietary information that is subject to restrictions on use or disclosure, including restrictions imposed by protective orders entered by other courts.

Defendants further object to this Interrogatory to the extent responsive information is already in Plaintiffs' possession, custody, or control, or will be provided to Plaintiffs—including via reproduction of the DOJ Materials or productions made by third parties.

Subject to and without waiving their objections, Defendants respond as follows:

This interrogatory appears to obliquely address exclusivity in primary ticketing contracts. There is no meaningful phenomenon in the United States of venues asking for a non-exclusive agreement in the sense that two or more primary ticketing companies would split the core primary ticketing rights for the same events. Accordingly, the majority of Ticketmaster's primary ticketing contracts include some form of "exclusivity" provision.

The terms "exclusive" and "non-exclusive" are commonly used in the ticketing space, but they do not have well-defined meanings. Venues and teams frame their ticketing rights as an exclusive asset to be auctioned to the highest bidder for a variety of reasons, including that this commercial structure maximizes the venues' or teams' own revenue. However, the scope of the "exclusivity" in a primary ticketing services contract is defined by the client, and in most instances an "exclusive" ticketing contract does not cover one hundred percent of the primary ticketing inventory. To the contrary, Ticketmaster's primary ticketing services contracts typically include some level of non-exclusivity or exclusivity carveouts whereby another entity distributes some portion of the primary tickets in certain circumstances, including for specified events. Some examples include:

- Olympics
- NCAA tournament
- League All-Star games
- NFL Super Bowl
- MLB World Series

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

- FIFA World Cup
- Season seat sales (including premium inventory—*i.e.*, suites, club seats, loge boxes)
- Fan clubs
- Box office
- Political events
- Private events
- Buy-outs for one-off events
- Charity events
- Convention-style events
- Community or cultural events
- Religious events
- Events taking place in the venue parking lot
- Instances where Ticketmaster tickets the majority of events at a venue, but a team/tenant at the venue has a ticketing deal with another ticketing provider for their events at the venue, *e.g.*:

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY



All such contracts are referred to as "exclusive" in the ordinary course of Defendants' business, notwithstanding that a portion of the primary tickets is being sold and/or serviced by someone other than Ticketmaster. Carveouts and contract provisions like the above are pervasive across Ticketmaster's contracts, but the specifics vary on a contract-by-contract basis.

There is a less common scenario in which a client requests an exception that allows the venue(s), promoter, or content owner to select its preferred ticketing company on an event-by-event basis. In that scenario, the preferred ticketing company selected by the venue(s), promoter, or content owner for any given event would exclusively ticket that event. Defendants are presently aware that ████ ████████████████████ has a contract with Ticketmaster that ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████ Defendants are further aware that the ██ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████████████████████████████ ████████. This arrangement and related contract provisions were proposed and adopted at ████████ request. There is also an exception to the above for ████ ████████████████████████████████ ████████████████████████████████ ████████.

**TOPIC NO. 8:**

Your decision to enter Primary Ticketing Service contracts with Major Concert Venues that are Long-Term and/or exclusive, including:

a.     Any and all reasons for Your decision to enter into contracts of such length and exclusivity;

b.     Any analyses, studies, or assessments You conducted or relied upon related to contract duration or exclusivity;

c.     How frequently the opening bids You have submitted to Major Concert Venues have stated that the Ticketmaster contract would be Long-Term and exclusive;

d.     The identities of all persons involved in drafting, revising, reviewing, advising on, negotiating, and authorizing the Long-Term or exclusive nature of these contracts;

e.     Any and all policies related to negotiation objectives for specific contractual provisions, including but not limited to term length and exclusivity;

f.     Whether and how frequently You have agreed to contracts in which other Primary Ticketing Service vendors were expressly permitted to provide Primary Ticketing Services in tandem with Ticketmaster (and not merely in presales), and the details of any such agreements; and

g.     The various term lengths of Primary Ticketing Service contracts with Major Concert Venues, including the average term length and the number of contracts you have entered that are two years or shorter.

**DEFENDANTS' RESPONSE TO TOPIC NO. 8:**

Defendants incorporate by reference each of their General Objections and Objections to Definitions.

-33-                    Case No. 2:22-cv-00047-GW-KES

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

Defendants object to Topic 8 as overbroad, unduly burdensome, and disproportionate to the needs of the case to the extent it requires Defendants to conduct a retrospective compilation or quantitative analysis of agreements spanning approximately sixteen years. Defendants produced the relevant agreements, and Plaintiffs are equally positioned to analyze the frequency or number of such agreements from the documents produced. Rule 30(b)(6) does not require a responding entity to create new analyses or summaries of voluminous records, or prepare a witness to testify about such new analyses or summaries. Similarly, this Topic is overbroad and disproportionate in that it asks Defendants to prepare a witness to testify about the "identities" of every individual involved in drafting every single contract that is "exclusive" (a term that is undefined). Defendants further object to this Topic to the extent the requested information is more reasonably available through other means, including Defendants' responses to Plaintiffs' requests for production, through Defendants' responses to Plaintiffs' Interrogatories (including Interrogatory No. 7), and through third-party discovery. Defendants further object to this Topic as vague and ambiguous, including in its use of the undefined terms "Long-Term," "exclusive," and "exclusivity." Defendants further object that they are unable to parse the meaning of this topic as drafted or prepare a witness on it given its vagueness and breadth. For example, this asks Defendants to prepare a witness to testify

about all policies related to "specific contractual provisions", which presumably means *all* contractual provisions in *all* contracts with any "Major Concert Venue" that is "exclusive" (a term that is undefined). Defendants further object and incorporate by reference their objections to the defined term "Major Concert Venues," which is defined in a way that does not track ordinary industry usage of that term, if any, and is therefore vague, overbroad, and imposes an undue burden on Defendants. As phrased with the term "Major Concert Venues," this topic is not one that can be answered by a witness in a Rule 30(b)(6) context.

Subject to and without waiving the foregoing objections, Defendants refer Plaintiffs to the documents and data already produced in this litigation, including the DOJ Materials produced from the DOJ Matter. Further, "Major Concert Venues" as defined is not a concept used by Defendants in their ordinary business, and therefore Defendants do not analyze or study their business in relation to that concept.

**TOPIC NO. 30:**

How you track the contracts that You have offered, maintained, or entered into with a Major Concert Venue to use You as its Primary Ticketing Services vendor, including:

a. The reports, contents, fields, and data in any database(s) You maintain for Your Primary Ticketing Services contracts with venues, including but not limited to:

(i) Your "SAP ICM Contracts Module"; and/or (ii) Your "Ticketing and Contract Management Systems";

b. For each Primary Ticketing Services contract that You offered, maintained, or entered into with a Major Concert Venue between January 1, 2020 and the present, all reports, contents, fields, and data You maintain for that contract in any database fitting the criteria in subtopic (a), including but not limited to any "Contract Abstract report"; and

c. Any key terms that You have offered, maintained, or entered into with a Major Concert Venue requiring the Major Concert Venue to (in whole or in part) exclusively use You as the Primary Ticketing Services provider, including (i) how You track such key terms in the ordinary course of business; (ii) how such key terms have changed over time (if at all); and (iii) reports, analyses, or summaries You have prepared or received regarding the terms (including regarding their actual or potential effect on competition).

**DEFENDANTS' RESPONSE TO TOPIC NO. 30:**

Defendants incorporate by reference each of their General Objections and Objections to Definitions.

Defendants object to Topic No. 30 to the extent it calls for speculation or requires Defendants to adopt Plaintiffs' characterization of Defendants' business operations. Defendants do not maintain a centralized ticketing contract database in the manner suggested by the Topic. Defendants further object to this Topic as unduly

burdensome because Defendants cannot prepare a witness to testify on a nonexistent subject. Defendants further object to this Topic as vague and ambiguous, including in its use of the undefined terms "reports, contents, fields, and data" and "key terms," and its use of the quoted but unattributed phrases "SAP ICM Contracts Module," "Ticketing and Contract Management Systems," and "Contract Abstract report." Defendants further object and incorporate by reference their objections to the defined term "Major Concert Venues," which is defined in a way that does not track ordinary industry usage of that term, if any, and is therefore vague, overbroad, and imposes an undue burden on Defendants. As phrased with the term "Major Concert Venues," this topic is not one that can be answered by a witness in a Rule 30(b)(6) context.

Subject to and without waiving the foregoing objections, Defendants respond that they are unable to designate a witness to testify regarding this Topic because the underlying premise of the Topic is factually incorrect.

**b. Plaintiffs' Statement: Defendants Cannot Avoid Relevant Testimony on Improper Objections**

**i. Background**

As discussed in Plaintiffs' Joint Stipulation on RFPs and ROGs, *see* Pls.' Ex. J (4/20/26 Joint Stipulation, Dkt. 571) at 1-2, 23, 29, Plaintiffs have alleged that Defendants have maintained monopoly power in the market for primary ticketing services for major concert venues through, *inter alia*, exclusive dealing. *See, e.g.*, Pls.' Ex. A (Compl., Dkt. 1) at ¶¶ 7, 12, 42, 61, 148-154. Defendants have repeatedly responded that Plaintiffs must show that *each* agreement forecloses competition, and

have specifically invoked the individual terms of contracts as a defense multiple times, arguing, for example, that "th[e] [exclusive dealing] inquiry will turn on the specific terms of individual venue contracts, like duration, terminability, and scope of exclusivity." *See, e.g.*, Pls.' Ex. K (Opp. to Mot. for Class Cert., Dkt. 490) at 25 (emphasis in original); *see also* Pls.' Ex. L (Mot. to Dismiss, Dkt. 293-1) at 18 ("[S]pecific venue agreement[s] [must] substantially foreclose[] competition[.]"); Pls.' Ex. M (Answer, Dkt. 375) ("refer[ring] to [ticketing services] agreements for their full and accurate contents" throughout); Pls.' Ex. N (Defs.' Mem. ISO Summ. J. at 33, United States v. Live Nation Ent., Inc., No. 1:24-cv-03973 (S.D.N.Y. Nov. 18, 2025), Dkt. 724) ("Plaintiffs . . . [must] show that particular Ticketmaster exclusive contracts have anticompetitive effect."); Pls.' Ex. O (Reply ISO Mot. Summ. J. at 11, n. 6, United States v. Live Nation Ent., Inc., No. 1:24-cv-03973 (S.D.N.Y. Dec. 29, 2025), Dkt. 809) ("[U]nder Section 1 of the Sherman Act[,] [Plaintiffs] cannot aggregate contracts[.]"). While Plaintiffs do not agree they must make such a contract-by-contract showing, they have sought discovery regarding the specific contracts to rebut Defendants' arguments. The documents Defendants have produced reflect they have one or more databases containing and relying on these contract terms. Plaintiffs therefore sought testimony relating to Defendants' databases, but Defendants refuse to provide it.

Topic 30 of Plaintiffs' Rule 30(b)(6) Notice asks how Defendants track their Primary Ticketing Services contracts and Topic 8(g) asks about the various term lengths of Primary Ticketing Service contracts. Pls.' Ex. D at Topics 30, 8(g). For Topic 30, Plaintiffs specifically asked about the "reports, contents, fields, and data in any database(s) [Defendants] maintain for [their] Primary Ticketing Services contracts with venues, including but not limited to . . . [Defendants'] 'SAP ICM Contracts Module,'" exports of the aforementioned between January 1, 2020 and the present, and Defendants' key contractual terms regarding exclusivity. *Id.* at Topic 30. For Topic 8(g), Plaintiffs asked specifically about the average contract term length

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

and the number of contracts Defendants have entered that are two years or shorter. *Id.* at Topic 8(g).

On March 1, 2026, Defendants responded that they are "unable to designate a witness [for Topic 30] . . . because the underlying premise of the Topic is factually incorrect." Pls.' Ex. C at Response to Topic 30. Defendants stated for 8(g) that they could not provide testimony without conducting a retrospective compilation or quantitative analysis or quantitative analysis of agreements. *Id.* at Response to Topic 8(g). Therefore for Topic 8(g), Defendants directed Plaintiffs to previously produced documents and data. *Id.* For Topic 8(g), Defendants also objected to the definition of "Major Concert Venue" as vague. *Id.*

Critically, however, and as Plaintiffs have previously explained, *see* Pls.' Ex. J (4/20/26 Joint Stipulation, Dkt. 571) at 30-31, Defendants' own documents contradict their denials of the existence of primary ticketing contract databases: Defendants' production contains numerous documents referencing the SAP ICM Contracts Module, for example, by name and explaining its contents. In their 3/10 and 3/11 Local Rule 37-1 Letters, Plaintiffs cited and excerpted documents such as these that referred to and discussed the "SAP ICM contracts module," including multiple System/Service Organization Controls reports stating that "*[a]ll* existing client contracts and related terms [including the financial terms that are applied to Defendants' business] are entered into the SAP ICM contracts module." Pls.' Ex. Q (3/10/26 J. English Ltr. to A. Jovais) at 3-4 (citing LNE-LIT24-003852444 (2023 Systems and Organizations Controls (SOC) Report describing Ticketmaster's Ticketing and Contract Management Systems) (emphasis added); LNE-LIT24-000517518 (similar SOC report for TM from 2017); *see also id.* at 4-6 (citing and excerpting LNE-LIT24-000927438, LNE22-001100676, LNE-LIT24-006536697, LNE22-000658879, LNE-01492638, LNE22-002091172); Pls.' Ex. F (3/11/26 J. English Ltr. to A. Jovais) at 3; *see also* Dkt. 583-4, Pls.' Supp. Mem. at 3-4.

-39-                    Case No. 2:22-cv-00047-GW-KES
JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

Pursuant to Local Civil Rule 37-1, the parties met and conferred on March 20, 2026. Defendants explained that although the SAP ICM Contracts database did exist and did contain contract terms, it was allegedly not responsive because it was not "*for*" the purpose of managing contracts but, rather, for financial settlements of Defendants' ticketing business. Defendants therefore refused to designate a witness for Topic 30 because there was allegedly no such database on which Defendants could testify, and no database that would be able to provide the information on term lengths Defendants purportedly needed to testify for Topic 8(g). On March 23, Plaintiffs confirmed that Defendants were not standing on any other objection for the database-related discovery.

Plaintiffs respectfully seek an order compelling Defendants to designate and fully prepare a witness to testify on Topics 30 and 8(g) as written.

### ii. Defendants Cannot Avoid Corporate Testimony by Asserting That No Tracking System Exists

Plaintiffs have alleged that "[t]he primary source of, and barrier surrounding, Ticketmaster's market dominance is a nationwide web of long-term exclusive dealing contracts with the vast majority of major concert venues throughout the United States." *See, e.g.*, Pls.' Ex. A (Compl., Dkt. 1) ¶¶ 61–62. And Defendants have repeatedly invoked the specific terms of those contracts in support of their defenses, including in their opposition to class certification. *See, e.g.*, Pls.' Ex. P (Defs.' Opp. To Pls.' Mot. For Class Cert., Dkt. 488-2) at 25 (arguing Plaintiffs' exclusive dealing claim "turn[s] on the specific terms of *individual* venue contracts, like duration, terminability, and scope of exclusivity"). The terms of Defendants' contracts are thus plainly relevant and Defendants' various gambits to avoid testifying about them should be overruled.

**1. Defendants Cannot Refuse to Testify on the Grounds that Contract Databases, Including the Ones Identified by Name, Do Not Exist**

Defendants' argument that they cannot put forward a Rule 30(b)(6) corporate representative to testify about their venue contracts because a database supposedly containing those contracts does not exist is not a basis to object to providing a corporate witness to testify on this Topic. Plaintiffs need only identify 30(b)(6) Topics with "reasonable particularity," which they have done. *See* Pls.' Ex. J (4/20/26 Joint Stipulation, Dkt. 571) at 31-33; Fed. R. Civ. P. 30(b)(6) (noticed party "must designate one or more officers, directors, or managing agents" when notice "describe[s] with reasonable particularity the matters for examination"). Topic 30 is clear in what it asks, including in its identification of relevant databases by name based on documents Defendants produced showing that those databases contains information about venue contracts. Because Plaintiffs have satisfied the "reasonable particularity" standard, "the scope of the deposition is determined *solely* by relevance under Rule 26." *U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428, 432 (D. Nev. 2006) (emphasis added). Defendants make no objection under Rule 26—they have no argument about relevance. Plaintiffs' request should be granted on this basis alone.

Moreover, although Defendants' assertion that the database does not exist should not be credited given the many documents showing it does, this argument only underscores the importance of the requested testimony. Defendants' own documents show the SAP ICM database, for example, is relevant and includes "[a]ll existing client contracts and related terms," including the financial terms that Plaintiffs have explained are especially relevant as they are applied in real time to Defendants' business. *See* Pls.' Ex. Q (3/10/26 J. English Ltr. to A. Jovais) at 3-5; Pls.' Ex. J (4/20/26 Joint Stipulation, Dkt. 571) at 2, 32-33. That information is plainly relevant and Plaintiffs should be allowed to understand exactly what it consists of, how it is stored, and how it might be exported for use in this case. Defendants certainly cannot

refuse to provide the information in it while simultaneously refusing to testify about it at deposition, given its apparent relevance.

### 2. Defendants Cannot Refuse to Testify to the Entirety of Topic 30 and 8(g) based on One Subpart of Topic 30

Defendants claim the SAP ICM database is not a contract database, but that assertion was debunked in the parties' 4/20 joint stipulation and Plaintiffs' supplemental memorandum. *See* Pls.' Ex. J (4/20/26 Joint Stipulation, Dkt. 571) at 2, 31-34; Dkt. 583-4, Pls.' Supp. Mem. at 3-4. Regardless, even *if* Defendants' objection to the "characterization" of Defendants' contract databases had any merit (which it does not), Defendants cannot object to the entirety of Topic 30 or to 8(g) on this ground alone. Topic 30 asks "[h]ow Defendants track the contracts that [Defendants] have offered, maintained or entered into with a Major Concert Venue to use [Ticketmaster] as its Primary Ticketing Service Vendor," with specific mention of the "SAP ICM Contracts Module" as one example. Pls.' Ex. D at Topic 30. Defendants cannot hide behind an issue they have with the purported characterization of a contract database in one subpart of one Topic to avoid answering questions about how they track contracts or about the term length of their contracts generally.

Defendants' assertion that Ticketmaster, the largest primary ticketing service provider for major concert venues in the United States for at least *three decades*, Pls.' Ex. A (Compl., Dkt. 1) at ¶ 52, has no way of "track[ing] [its] contracts," also strains belief. *See* Pls.' Ex. G (Emails re: 30(b)(6)) at 20 (Pls.' Memorialization Email). Defendants are obligated to "prepare [30(b)(6) witnesses] to fully and unevasively answer questions about the designated subject matter." *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534, 539 (D. Nev. 2008). Database or not, Defendants must provide a witness to testify as to "[h]ow Defendants track" their primary ticketing contracts and about the term length of their contracts. *See Great Am. Ins. Co. of New York*, 251 F.R.D. at 540 ("Although adequately preparing a Rule

30(b)(6) deposition can be burdensome, this is merely the result of the concomitant obligation from the privilege of being able to use the corporate form in order to conduct business." (cleaned up)). Defendants fail to advance any plausible argument to the contrary. If Defendants truly do not track their primary ticketing contracts, they must designate a witness to so testify. And either way, they must produce a witness to testify how Defendants consider and understand the various term lengths of their contracts.

### 3. Defendants Cannot Point to Produced Documents as a Substitute for Testimony on Term Lengths

Defendants claim, for Topic 8(g) asking about the term lengths of contracts, that "the requested information is more reasonably available through other means, including Defendants' responses to Plaintiffs requests for production, through Defendants' responses for Plaintiffs' Interrogatories (including Interrogatory No. 7), and through third-party discovery." Pls.' Ex. C at Response to Topic 8. This argument fails because Defendants have refused to provide the requested information through other channels of discovery. As Plaintiffs have explained, Interrogatory 7 provides no such information, as it only addresses exclusivity provisions at a high level of abstraction. *See* Pls.' Ex. J (4/20/26 Joint Stipulation) at 39. As to documents, Plaintiffs have explained that the "DOJ Materials" do not contain a complete production of all primary ticketing contracts and that Plaintiffs furthermore were not involved in that search process and thus have no insight into how it was performed. *Id.* at 25-26.

Even if Defendants had provided this information (they have not), it is well established that "[p]roducing documents and responding to written discovery is not a substitute for providing a thoroughly educated Rule 30(b)(6) deponent." *Great Am. Ins. Co. of New York*, 251 F.R.D. at 541. "[I]n responding to a Rule 30(b)(6) notice or subpoena, a corporation may not take the position that its documents state the company's position . . . Corporations are not entitled to declare themselves mere

document-gatherers." *Kelly v. Provident Life & Acc. Ins. Co.*, 2011 WL 2448276, at *3 (S.D. Cal. June 20, 2011) (internal quotation omitted). *Chu v. UNUM Life Ins. Co. of Am.*, 2025 WL 736614, at *4 (C.D. Cal. Feb. 13, 2025) ("[A] Rule 30(b)(6) deposition is a separate discovery vehicle from a Rule 34 request for production of documents.").

It is precisely because 30(b)(6) deponents are able "to provide knowledgeable answers reasonably available to the corporation, which includes information ascertainable from . . . files, documents produced in th[e] case, information from past employees, witness testimony and exhibits, or any other sources available to the corporation," that "[d]epositions provide a more complete means to obtain information and are, therefore, favored." *Kelly*, 2011 WL 2448276 at *5. Topic 8(g) does not ask Defendants to recite the term lengths of all of their contracts, but for testimony on Defendants' "decision to enter Primary Ticketing Service Contracts," including as related to contracts of "various term lengths." Pls.' Ex. D at Topic 8(g). An incomplete set of documents that Defendants have produced is not an adequate substitute for Defendants' testimony.

### 4. Defendants' Remaining Objections Should be Overruled

Defendants' remaining objections include that terms taken from their own documents such as "SAP ICM Contracts Module," "Ticketing and Contract Management Systems," and "Contract Abstract report" are "vague and ambiguous" for being "quoted but unattributed." Pls.' Ex. C at Response to Topic 30. But these terms are facially unambiguous, are based on terms Defendants use in the ordinary course of business, and Plaintiffs have provided Defendants with the documents from where these terms came. *See, e.g.*, Pls.' Ex. Q (3/10/26 J. English Ltr. to A. Jovais) at 3-6.

As with Topics 2, 3, 5, and 6, Defendants also object to the defined term "Major Concert Venues," which according to Defendants is "defined in a way that does not

-44-    Case No. 2:22-cv-00047-GW-KES

track ordinary usage of that term." Pls.' Ex. C at Response to Topic 30. But, as noted, Plaintiffs have agreed to discuss certain Topics, such as Topics 1 and 4, *see* Pls.' Ex. G (Emails re: 30(b)(6)) at 1, 12, with respect to all venues. Plaintiffs remain willing to work with Defendants on these issues, but Defendants have thus far refused to engage on Topics 30 and 8(g) at all. Defendants' boilerplate objections should therefore be overruled.

### iii.  Conclusion as to Topics 30 and 8(g)

Plaintiffs respectfully request that the Court order Defendants to designate a witness to provide testimony on Topics 30 and 8(g) as noticed.

### c.  Defendants' Statement

Plaintiffs do not dispute that they have already received extensive discovery on the venue contracts themselves.  Defendants produced their full set of venue ticketing contracts in the parallel Government Action, re-produced those contracts in this case, and agreed to a supplemental production addressing Plaintiffs' questions identified during meet-and-confer.  Defendants have also agreed to designate a witness on the substantive ground of Topic 8: "[t]he factors and business terms Ticketmaster typically considers when negotiating ticketing contracts with venues, including without limitation the Long-Term and/or exclusive nature of such contracts, any typical analyses, studies or assessments related to contract duration or exclusivity, and any policies that apply to such negotiations, including renewals."  Pls.' Ex. G at 6. And Defendants have already provided a detailed interrogatory response on how "exclusivity" operates in this industry.  *Supra*, Interrogatory 7.  Plaintiffs have the contracts.  They have detailed written discovery on what "exclusivity" means in this industry.  And they will have a 30(b)(6) witness on the factors that go into negotiating the contracts.

Topics 8(g) and 30 therefore focus on something else: a hypothetical "contract management system" that Plaintiffs imagine can produce, *inter alia*, "the average term length and the number of contracts [Defendants] have entered that are two years or

shorter" (Topic 8(g)) and "reports, contents, fields, and data in . . . database(s)" plus a detailed account of "key terms" — including "how such key terms have changed over time" and "their actual or potential effect on competition" (Topic 30). **It does not exist.** Defendants have explained as much repeatedly, including in the dispute already fully briefed and pending before the Court on Plaintiffs' motion to compel responses to RFPs 44–46 and ROG 10. *See* Joint Stip. re RFPs and Rogs, Dkt. 571, at 23–30; *see also* Caudillo Decl., Dkt. 571-15 ¶¶ 3–11.

As a result, what Plaintiffs are really asking the Court to do is to compel Defendants to first create the analyses they wish existed *and then* prepare a witness to testify about it. This approach is not appropriate under Rule 26 and Rule 30, and as a result Plaintiffs' motion on Topics 8(g) and Topic 30 should be denied.

### i. Defendants Cannot Be Compelled to Designate a Witness on a Tracking System That Does Not Exist

Plaintiffs' argument depends on the premise that Defendants "track" their primary ticketing contracts in the way Plaintiffs imagine—through a contracts database queryable by term length, exclusivity, or other key terms. They do not.

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

Plaintiffs are aware of all of this. They have it in writing in Defendants' RFP and interrogatory responses, in Mr. Caudillo's declaration, and in the prior briefing pending before the Court. Yet Plaintiffs ask the Court to use Rule 30(b)(6) to relitigate the database dispute by demanding live testimony on the same subject. The testimony, on this record, would amount to an oral repetition of Mr. Caudillo's sworn declaration. Rule 30(b)(6) does not require that.

Plaintiffs' rejoinder that Defendants' "assertion that Ticketmaster . . . has no way of 'track[ing] [its] contracts' . . . strains belief" is empty rhetoric without a record. The unrebutted record shows that Ticketmaster keeps its primary ticketing contracts as executed documents in a central file. Those documents have been collected and produced repeatedly in connection with the parallel Government Action and then re-produced to Plaintiffs in this matter. Plaintiffs have those contracts. They can review them. What Plaintiffs do not have—because it does not exist—is a queryable database that allows analysis and automated retrieval of contracts by exclusivity, duration, or other "key terms." Rule 30(b)(6) does not require Defendants to designate a witness to testify, in deposition format, that a database does not exist, particularly where Defendants have already said exactly that, in writing and under oath.

### ii.  Topic 8(g) Is Subsumed by the Agreed Scope of Topics 8, 9, and 29

Topic 8(g)—to the extent it can be read independently of the contracts-database dispute—seeks testimony on Defendants' "decision to enter" primary ticketing contracts of "various term lengths" and other configurations. Defendants have

-47-                    Case No. 2:22-cv-00047-GW-KES

already agreed to designate a witness on the substantive ground Topic 8(g) is asking about; i.e., Defendants have agreed to provide a witness for Topics 8, 9, and 29 on "[t]he factors and business terms Ticketmaster typically considers when negotiating ticketing contracts with venues, including without limitation the Long-Term and/or exclusive nature of such contracts, any typical analyses, studies or assessments related to contract duration or exclusivity, and any policies that apply to such negotiations, including renewals." Pls.' Ex. G at 6.

Thus, if Defendants conduct typical analyses of contract duration or exclusivity, the witness Defendants present on the agreed-upon aspects of Topic 8 will be prepared to testify to them. And if Defendants do not, the witness will confirm that instead. Given this, the only *possible* function Topic 8(g) could serve is to attempt to require Defendants to prepare a witness to provide quantitative answers, e.g., "how many contracts are two years or shorter." But Defendants do not maintain the type of queryable contracts database that could answer this question, and it is not appropriate under the guise of Rule 30(b)(6) to force Defendants to perform analyses that they both do not do in the normal course of their business and would be just as burdensome for Defendants to do as Plaintiffs.

### iii. Plaintiffs' Authorities Do Not Support Compelling Testimony Here

Each of the cases Plaintiffs cite—*U.S. E.E.O.C. v. Caesars Ent., Inc.*, 237 F.R.D. 428 (D. Nev. 2006); *Great Am. Ins. Co. of New York v. Vegas Const. Co.*, 251 F.R.D. 534 (D. Nev. 2008); *Kelly v. Provident Life & Acc. Ins. Co.*, 2011 WL 2448276 (S.D. Cal. June 20, 2011); and *Chu v. UNUM Life Ins. Co. of Am.*, 2025 WL 736614 (C.D. Cal. Feb. 13, 2025)—address a corporation that had institutional knowledge of the noticed subject matter and refused to prepare a witness on it. None require a corporation to designate a witness to testify about systems and analyses that do not exist.

Plaintiffs' related principle—that "documents are not a substitute for a witness"—has nothing to do with this dispute. Defendants are not standing on documents in lieu of a witness. Defendants have agreed to a witness on Topics 8, 9, and 29 on the same factual ground Plaintiffs claim to need, namely "the factors and business terms Ticketmaster typically considers when negotiating ticketing contracts with venues, including without limitation the Long-Term and/or exclusive nature of such contracts, any typical analyses, studies or assessments related to contract duration or exclusivity, and any policies that apply to such negotiations, including renewals." What Defendants will not do is duplicate that testimony with a separate witness on a non-existent contracts database and its non-existent reports and outputs.

### iv.  Conclusion as to Topics 8(g) and 30

Topic 30 should be denied in its entirety given that there is no database like the one Plaintiffs seek to force testimony about. Topic 8(g) should be denied because it is either subsumed by the agreed scope of Topics 8, 9, and 29 and requires no further compulsion or seeks testimony about non-existent outputs from the same non-existent contract database raised by Topic 30.

## V.  PRIMARY TICKETING INSIDE AND OUTSIDE OF THE UNITED STATES (TOPIC 18)

### a. Text of Topic 18; Defendants' Objections and Responses Thereto

Pursuant to Civil Local Rule 37-2.1, the text of Topic 18 from Plaintiffs' Rule 30(b)(6) Notice of Deposition served on January 29, 2026 (Pls.' Ex. D), and Defendants' Objections and Responses thereto served on March 1, 2026 (Pls.' Ex. C), are reproduced in full here.

**TOPIC NO. 18:**

The differences between Your Primary Ticketing Service business in the United States and outside of the United States, including:

a.      All analyses, studies, or assessments of the difference and causes of the difference in ticketing fees; and

b.      All analyses, studies, or assessments of the difference and causes of the difference in sell-through rates.

**DEFENDANTS' RESPONSE TO TOPIC NO. 18:**

Defendants incorporate by reference each of their General Objections and Objections to Definitions.

Defendants object to Topic No. 18 as overbroad and that it seeks information not relevant to any claims or defenses in this case and is not proportionate to the needs of the case. Primary ticketing services outside of the United States occur in conditions and under legal rights and regimes that are not comparable or relevant to the primary ticketing services and legal rights at issue in Plaintiffs' claims about United States primary ticketing services. Defendants further object to this Topic as unreasonably cumulative and burdensome to the extent the requested information is more reasonably available through other means, including Defendants' responses to Plaintiffs' requests for production and Defendants' reproduction of the DOJ Materials. Defendants further object to this Topic to the extent it calls for legal conclusions or seeks expert testimony from witnesses not proffered as experts.

Subject to and without waiving the foregoing objections, Defendants will not designate a witness in this Action on an irrelevant Topic.

### b. Plaintiffs' Statement: Defendants Cannot Refuse Testimony Based on Conclusory Objections that Benchmark Information is Irrelevant

#### i. Background

Plaintiffs allege that outside the United States, where venues are not locked into long-term exclusive contracts with Ticketmaster to provide primary ticketing services, venues sell tickets through various primary ticketing services, and ticket fees are lower. *See* Pls.' Ex. A (Compl., Dkt. 1) at ¶ 11 ("[M]arkets [like the United Kingdom] that are not encumbered by Ticketmaster's monopoly over ticketing services demonstrate much lower prices for consumers. . . . [F]or example, . . . while service fees for U.S. venues . . . averaged 22% and could go as high as 38%, in the United Kingdom . . . ticket fees are lower than in the United States—around 10 percent to 15 percent of a ticket's face value[.]") (cleaned up), ¶ 117 ("The United Kingdom is an example of a geographic market in which no one provider has extensive exclusive deals for primary ticketing services. . . . As the data show, ticketing fees in the U.S. (under Ticketmaster's exclusive dealing dominance) are invariably higher than the fees for tickets with the same face value in the U.K."). And Plaintiffs' expert has clearly articulated the relevance and evidence of a lower output of ticket sales as direct evidence of Defendants' market power in primary ticketing to major concert venues. *See* Dkt. 471-33 (Decl. of Parag Pathak ISO Mot. For Class Cert.) at ¶¶ 109-10.

Topic 18 of Plaintiffs' Rule 30(b)(6) notice therefore seeks testimony about the differences between Defendants' primary ticketing operations inside and outside of the United States, including differences in ticketing fees and sell-through rates. On March 1, 2026, Defendants served their Objections and Responses, stating objections that ticketing outside the United States was not comparable; that the information was more readily available through other means, such as documents; and that they "will not designate a witness in this Action on an irrelevant Topic." Pls.' Ex. C at Response

to Topic 18. Plaintiffs explained in their Local Rule 37-1 letter that evidence of Ticketmaster's fees, as well as primary ticketing services practices, outside of the United States, is directly relevant to Plaintiffs' damages and liability theories "as benchmarks and substantially less restrictive alternatives to the system Defendants maintain [in the United States]." Pls.' Ex. F (3/11/26 J. English Ltr. to A. Jovais) at 4. Defendants did not address these points but maintained their objection to relevance at the parties' March 23 meet and confer.

Plaintiffs respectfully seek an order compelling Defendants to designate and fully prepare a witness to testify on Topic 18 as written.

### ii. Evidence of Defendants' Foreign Conduct And Comparisons to U.S. Market Are Highly Relevant

Defendants object to Topic 18 by claiming that international markets are irrelevant, but courts routinely hold that discovery regarding international markets is relevant and discoverable in antitrust cases. A "liberal discovery approach to documents discussing purely foreign activities has been followed by a number of [] courts that have addressed the issue in the domestic antitrust context." *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573-74 (D. Kan. 2009) (collecting cases, and noting that the party opposing discovery failed to identify any contrary authority); *see also, e.g., In re Apple iPhone Antitrust Litig.*, No. 4:11-cv-06714, Dkt. No. 919, slip op. at 4-6 (N.D. Cal. Aug. 19, 2024) (ordering Apple to produce documents related to its responses to the European Union's Digital Markets Act because "[i]n Europe, Apple is doing some of the very things it refuses to do in the U.S. because of privacy, security and other concerns, and it is doing them with some apparent success. Plaintiffs say this may show that Apple's pro-competitive justifications for its complete control over app distribution are not as important as Apple says they are. This is a good theory of relevance") (attached as Pls.' Ex. R); *Fed. Trade Comm'n v. Amazon.com, Inc.*, 2024 WL 5238834, at *5 (W.D. Wash. Dec. 27, 2024) (ordering production of documents relating to defendant's actions in the U.K., European Union and Germany

on grounds the discovery is relevant and proportional); *Frame-Wilson v. Amazon.com, Inc.*, 2023 WL 4201679, at *3 (W.D.Wash., 2023) (data from Amazon sales in the United Kingdom and Germany are "relevant and important . . . . [as a benchmark] for impact or damages[.]"); *see generally Kellam Energy, Inc. v. Duncan,* 616 F. Supp. 215, 219 (D. Del. 1985) ("regardless of how [the] geographic market is eventually defined in this [antitrust] action, the boundaries of that market do not set the geographic limit of discovery").

Courts have specifically compelled defendants in antitrust cases to provide Rule 30(b)(6) testimony on their international operations as relevant to assessing domestic competitive effects. *United States v. Dentsply Int'l, Inc.* is instructive. 2000 WL 654286, at *3 (D. Del. May 10, 2000). There, the Department of Justice's Antitrust Division sought Rule 30(b)(6) testimony on a defendant's competitive position in other countries. *Id.* at *2. The court rejected the defendant's relevance objection and ordered the defendant to produce a witness on international issues, including market share, policies, and strategic or business plans in the international markets. *Id.* at *3. The court reasoned that comparing market share in the United States to market share in the other countries "may be relevant to assessing the competitive effects" of conduct in the United States, and that comparing the defendant's policies in the United States to those used in other countries could be probative of the "purpose and significance" of the antitrust defendant's conduct in the United States. *Id.* at *5.

Here, as in *Dentsply*, the Rule 30(b)(6) testimony sought in Topic 18 is highly relevant to Plaintiffs' antitrust claims. The information sought could shed light on the feasibility of Defendants' asserted procompetitive justifications in the United States, for example. Defendants' actions in these international markets, and testimony regarding differences in ticket sell-through rates in international markets versus the United States market, may also inform whether less restrictive alternatives to Defendants' long-term exclusive dealing are available here. As noted above, evidence

of Ticketmaster's ticket fees outside of the United States is also relevant to Plaintiffs' damages theories.

Defendants' assertion that international ticketing markets are "not comparable" to the United States proves Plaintiffs' point: the different way the international markets operate is *why* Topic 18 is relevant to Plaintiffs' claims. At a minimum, it confirms the need for discovery, since Plaintiffs should not have to take Defendants' word that international markets are "not comparable" without the ability to test that assertion through examination of a corporate witness.

Even if Defendants *could* articulate a reason why some of the information sought in Topic 18 might not be highly relevant (they have not), only a "minimal showing" is required to show relevance. *O. L. v. City of El Monte*, 2021 WL 926392, at *2 (C.D. Cal. Feb. 1, 2021). Once relevance is established, "[t]he party who resists discovery has the burden to show that discovery should not be allowed, and has the burden of clarifying, explaining, and supporting its objections with competent evidence." *Doe v. Trump*, 329 F.R.D. 262, 270–71 (W.D. Wash. 2018) (internal citations and quotations omitted). And courts routinely grant liberal discovery in antitrust cases. *See, e.g., Cyntegra, Inc. v. IDEXX Labs.*, 2007 WL 9701999, at *4 (C.D. Cal. June 29, 2007) ("In antitrust cases, courts have generally allowed liberal discovery.") (citation omitted). Defendants have presented no reason to depart from this liberal view of relevance for Topic 18.

### iii. Defendants' Remaining Objections to International Comparison Testimony Are Unsupported Boilerplate

Defendants' remaining objections to Topic 18 are that it is "unreasonably cumulative and burdensome to the extent the requested information is more reasonably available through other means, including Defendants' responses to Plaintiffs' requests for production and Defendants' reproduction of the DOJ Materials," and that it calls for legal conclusions or seeks expert testimony from non-experts. The latter are mere boilerplate objections with no specific explanation or

reasoning, and therefore unavailing. *See, e.g., A. Farber & Partners, Inc. v. Garber*, 234 F.R.D. 186, 188 (C.D. Cal. 2006) ("general or boilerplate objections . . . are improper—especially when a party fails to submit any evidentiary declarations supporting such objections").

As for Defendants' argument that the discovery is unreasonably cumulative or burdensome, Defendants do ***not*** contend Topic 18 overlaps with a Rule 30(b)(6) Topic from the Government Litigation or any other Rule 30(b)(6) Topic in the *Popp* deposition notice. Instead, Defendants' sole basis for these objections appears to be that Defendants cross-produced their ***document*** discovery from the Government Litigation. Defendants should not be allowed to hide behind their document dump from S.D.N.Y, to block Plaintiffs from eliciting Rule 30(b)(6) testimony that is highly relevant to Plaintiffs' claims. Document production is "not a substitute for providing an educated deponent for a corporate designee deposition." *Pioneer Drive, LLC v. Nissan Diesel Am., Inc.*, 262 F.R.D. 552 (D. Mont. 2009) (citing *Great Am. Ins. Co. of N.Y. v. Vegas Constr. Co., Inc.*, 251 F.R.D. 534, 541 (D. Nev. 2008)); *see also La. Pac. Corp. v. Money Market 1 Institutional Inv. Dealer*, 285 F.R.D. 481, 486-88 (N.D. Cal. 2012) (denying motion to quash Rule 30(b)(6) subpoena where movant contended other discovery, including millions of pages of documents, was sufficient). There should be little, if any, burden to educate a corporate witness on these core issues relating to Defendants' business, and even if Defendants could point to support for their burden objection, it would need to be weighed against the importance of the subject to Plaintiffs' allegations and to evaluating Defendants' allegations of procompetitive justifications. As in *Dentsply*, preparing a corporate witness to testify regarding Defendants' conduct outside the United States "will not in of itself generate burden and expense that will outweigh its likely benefit." *Dentsply*, 2000 WL 654286, at *7.

#### iv.  Conclusion as to Topic 18

Plaintiffs respectfully request that the Court order Defendants to prepare and produce a witness to testify regarding the international and United States market subjects, including ticketing fee levels and sell-through rates, set forth in Plaintiffs' Topic 18.

### c.  Defendants' Statement

Plaintiffs ask the Court to compel testimony comparing Defendants' U.S. primary ticketing operations to their international operations across "ticketing fee levels and sell-through rates" and other dimensions. The premise—that Defendants' international ticketing operations are a useful benchmark for U.S. liability or U.S. damages—is unsupported, and Topic 18 imposes a burden far disproportionate to its *de minimis* probative value. The Court should deny the motion.

#### i.  The U.S. and Non-U.S. Primary Ticketing Markets Are Structurally Different And Have Little Relevance To This Case

Plaintiffs' Complaint pleads a U.S. monopolization theory. The conduct alleged is U.S. conduct; the relevant markets alleged are U.S. markets; the damages sought are U.S. damages. International operations are not part of the case Plaintiffs have pleaded, and they are not part of the relevant markets the Court has been asked to define.

The reason for that pleading choice is that the U.S. and non-U.S. primary ticketing markets are structurally different in virtually every dimension that bears on competitive dynamics: in regulatory environment across a variety of jurisdictions such as the UK, EU, and other countries; in venue ownership and operation models; in artist relationships and tour structures; in distribution channels; in tax treatment; and in fee architecture and disclosure norms. Moreover, the U.S. live concert industry involves vastly different economics than live concerts in countries like the UK or elsewhere in the world. The U.S. live concert industry is the largest in the world, by

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

far, with higher revenues, higher ticket prices, and completely different cost structures than the live concert industries in other countries.  Plaintiffs' suggestion that international fee levels or sell-through rates serve as a "benchmark" for U.S. fees and sell-through assumes away every one of those structural differences.

Indeed, Plaintiffs' references to international markets in the Complaint (¶¶ 11, 117) are at best background scene-setting.  Plaintiffs have not pled, and have not articulated through their expert at class certification, a damages model that uses UK, EU, or any non-US country as a but-for benchmark for U.S. damages.  The reason is straightforward: the structural differences between the markets render any such comparison unreliable and of marginal relevance to any allegation in this case.  And as a result, Plaintiffs should not be permitted to use a generic Rule 30(b)(6) Topic as a vehicle to develop, mid-discovery, an entire damages theory their pleadings have not advanced and their expert has not endorsed.

All of the cases on which Plaintiffs rely involve requests for document discovery rather than 30(b)(6) testimony.[3]  *See In re Apple iPhone Antitrust Litig.*, No. 4:11-cv-06714, Dkt. 919 (N.D. Cal. Aug. 19, 2024) (Pls.' Ex. R) (addressing requests for document production); *FTC v. Amazon.com, Inc.*, 2024 WL 5238834, at *1 (W.D. Wash. Dec. 27, 2024) (same); *In re Urethane Antitrust Litig.*, 261 F.R.D. 570, 573-74 (D. Kan. 2009) (same); *Frame-Wilson v. Amazon.com, Inc.*, 2023 WL 4201679, at *3-4 (W.D. Wash. 2023) (same).  And one case doesn't even involve discovery into international markets.  *See Kellam Energy, Inc. v. Duncan*, 616 F. Supp. 215, 219 (D. Del. 1985) (denying defendant's request to limit discovery to three Delaware towns, and compelling production of documents covering portions of

_____

[3] While the requesting party in *United States v. Dentsply International, Inc.*, sought 30(b)(6) testimony, it agreed to "accept production of the requested information in the form most convenient to Dentsply, be it as an interrogatory answer, responsive documents, or the deposition testimony of a person who can provide the information requested." 2000 WL 654286, at *4 (D. Del. May 10, 2000).

Maryland, Delaware, and Virginia). The cases Plaintiffs principally rely on for their proposition that "discovery regarding international markets is relevant and discoverable in antitrust cases," *supra* at 52, involve either companies engaged in conduct on identical platforms across jurisdictions where the company changed its behavior in response to European investigations and regulations—*see In re Apple iPhone Antitrust Litig.*, No. 4:11-cv-06714, Dkt. 919 (N.D. Cal. Aug. 19, 2024) (Pls.' Ex. R) (requesting documents to assess Apple's conduct on the App Store in Europe under the Digital Markets Act, to assess validity of Apple's procompetitive justifications); *FTC v. Amazon.com*, 2024 WL 5238834 at *3-4 (requesting documents related to UK/EU/Germany "investigations involv[ing] conduct at issue in this case" to assess validity of "Amazon's asserted procompetitive justifications in the United States")—or involve narrow requests for sales data specifically to "conduct comparative analyses" and "analyz[e] class-wide impact and damages," *see Frame-Wilson*, 2023 WL 4201679, at *3-4. None of these cases support Plaintiffs' sweeping request for 30(b)(6) testimony comparing all "differences" between Defendants' business in the United States and outside the United States.

### ii. Topic 18 Imposes A Disproportionate Burden Under Rule 26(b)(1)

Rule 26(b)(1)'s proportionality limits apply with full force to corporate depositions. A 30(b)(6) deposition is a corporate undertaking that requires the corporation to educate the witness on each aspect of the noticed Topic. Topic 18 calls for a witness prepared to address "[t]he differences between Your Primary Ticketing Service business in the United States and outside of the United States, including" analyses of those differences, sell-through rates, fee structures, regulatory differences, and "any other relevant differences." Preparing a witness to testify about Defendants' international primary ticketing operations across multiple foreign jurisdictions, over a 15+-year period, on subject matter that bears no logical relation to Plaintiffs' U.S.-

only liability and damages theories, would impose a substantial cost on Defendants for de minimis probative value.  The Federal Rules do not require it.

Plaintiffs' principal authority, *United States v. Dentsply International, Inc.*, 2000 WL 654286 (D. Del. May 10, 2000), proves Defendants' point.  The *Dentsply* defendant sold the same dental products through distributors in the United States and abroad, which drove the court's finding that foreign discovery was relevant.  *See id.* at *3, *5, *7.  And the complaint in *Dentsply* (unlike the instant Complaint) included allegations that "both domestic and foreign artificial tooth manufacturers compete with *Dentsply* more successfully outside the United States." *Id.* at *1.  The situation here is the opposite.  The U.S. and non-U.S. primary ticketing markets differ in regulatory regime, venue ownership, distribution channels, artist relationships, fee architecture, and tax treatment, among other dimensions.   Without baseline comparability, foreign-market data cannot serve as a benchmark for U.S. fees, and *Dentsply* provides no warrant to compel testimony about it.

Plaintiffs' remaining authorities—*Urethane*, *Apple*, *Amazon*, and *Frame-Wilson*—fail for the reasons set forth above: each addressed document discovery rather than 30(b)(6) testimony, and each involved global conduct on identical platforms or products.  None supports compelling Rule 30(b)(6) testimony where the foreign and domestic operations are not structurally analogous.

### iii.  Conclusion as to Topic 18

Topic 18 is of marginal relevance at best, and the burden of preparing a witness to testify on Defendants' international operations across multiple jurisdictions and a 15+-year period would be substantial.  Plaintiffs' motion should be denied.

### VI.    PLAINTIFFS' CONCLUSION

For the foregoing reasons, Plaintiffs respectfully request that the Court issue the following orders:

1. **Topics 2, 3, 5, and 6**: Order Defendants to designate and produce one or more witnesses prepared to testify on Topics 2, 3, 5, and 6 as set forth in

-59-    Case No. 2:22-cv-00047-GW-KES

Plaintiffs' January 29, 2026 Rule 30(b)(6) Notice of Deposition;

2. **Topics 30 and 8(g)**: Order Defendants to designate and produce one or more witnesses prepared to testify on Topics 30 and 8(g) as set forth in Plaintiffs' January 29, 2026 Rule 30(b)(6) Notice of Deposition; and

3. **Topic 18:** Order Defendants to designate and produce one or more witnesses prepared to testify on Topic 18 as set forth in Plaintiffs' January 29, 2026 Rule 30(b)(6) Notice of Deposition.

## VII.   DEFENDANTS' CONCLUSION

For the reasons set forth above, the Court should deny Plaintiffs' motion in its entirety.  Specifically, Defendants respectfully request that the Court:

1. Deny Plaintiffs' motion to compel testimony on Topics 2, 3, 5, and 6;

2. Deny Plaintiffs' motion to compel testimony on Topics 8(g) and 30; and

3. Deny Plaintiffs' motion to compel testimony on Topic 18.

Defendants will produce one or more witnesses on the topics for which the parties have reached agreement, on a schedule the parties will set promptly following resolution of this motion.

DATED: May 8, 2026

Respectfully submitted,

By      /s/ *Timothy L. O'Mara*
LATHAM & WATKINS LLP
Timothy L. O'Mara (Bar No. 212731)
 *tim.o'mara@lw.com*
Andrew M. Gass (Bar No. 259694)
 *andrew.gass@lw.com*
Alicia R. Jovais (Bar No. 296172)
 *alicia.jovais@lw.com*
Samuel R. Jeffrey (Bar No. 347533)
 *sam.jeffrey@lw.com*
505 Montgomery Street, Suite 2000
San Francisco, California 94111-6538
Telephone: +1.415.391.0600
Facsimile: +1.415.395.8095

CAMPBELL FIRM, PC
Christopher B. Campbell (Bar No. 254776)
 *chris@thecampbellfirm.com*
455 Market Street, Suite 1940 #809197
San Francisco, California 94105
Telephone: +1.510.588.2200

*Counsel for Defendants Live Nation Entertainment, Inc. and Ticketmaster L.L.C.*

By      /s/ *Kevin Y. Teruya*
QUINN EMANUEL URQUHART & SULLIVAN, LLP
Kevin Y. Teruya (Bar No. 235916)
kevinteruya@quinnemanuel.com
Adam B. Wolfson (Bar No. 262125)
adamwolfson@quinnemanuel.com
William R. Sears (Bar No. 330888)
willsears@quinnemanuel.com
Jennifer D. English (Bar No. 273772)
jenniferenglish@quinnemanuel.com
Brantley I. Pepperman (Bar No. 322057)
brantleypepperman@quinnemanuel.com
865 South Figueroa Street, 10th Floor
Los Angeles, California 90017-2543
Telephone: (213) 443-3000
Facsimile: (213) 443-3100

KELLER POSTMAN LLC
Warren D. Postman (Bar No. 330869)
wdp@kellerpostman.com
1101 Connecticut Avenue, N.W., Ste. 1100
Washington, D.C. 20036
Telephone: (202) 918-1123

Jessica B. Beringer (*pro hac vice*)
Jessica.beringer@kellerpostman.com
Alexios J. Dravillas (*pro hac vice*)
ajd@kellerpostman.com
150 N. Riverside, Suite 4100
Chicago, Illinois 60606
Telephone: (312) 741-5220

*Co-Lead Class Counsel*

JOINT STIPULATION REGARDING PLS.' MOT. TO COMPEL RULE 30(B)(6) DEPOSITION TESTIMONY

## **SIGNATURE ATTESTATION**

I am the ECF user whose identification and password are being used to file the foregoing document. Pursuant to Civil Local Rule 5-4.3.4(a)(2)(i), I, Kevin Y. Teruya, attest that all other signatories listed, and on whose behalf the filing is submitted, concur in this filing's content and have authorized such filing.

Dated: May 8, 2026

_/s/ Kevin Y. Teruya_

Kevin Y. Teruya